1 | LEONARD TACHNER, A PROFESSIONAL LAW CORPORATION
Leonard Tachner, Esq. (State Bar No. 058436)
2 | 17961 Sky Park Circle, Suite 38-E
Irvine, California 92614-6364
3 | (949) 752-8525 Telephone
Email: ltachner@aol.com
4
5 | Attorney for Plaintiff

6 | J. Mark Holland (State Bar No. 140453)
J. Mark Holland & Associates
7 | 3 San Joaquin Plaza, Suite 210
Newport Beach, CA 92660
8 | (949) 718-6750 Telephone
Email: mholland@jmhlaw.com

9 | Attorney for Defendant

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES R. GLIDEWELL DENTAL CERAMICS, INC. DBA GLIDEWELL LABORATORIES, a California corporation, | Case No. SA CV11-1309 DOC(ANx) |
| Plaintiff | **JOINT 26(f) REPORT** |
| vs. | **[Fed. R. Civ. P. 26(f), L.R. 26-1]** |
| KEATING DENTAL ARTS, INC., a California corporation, | Sched. Conf.: December 12, 2011<br>Time/Place: 8:30 A.M.<br>Judge: Hon. David O. Carter<br>CrtRm: 9D |
| Defendant. | |

Pursuant to the Court's Scheduling Conference Order, the parties hereto represented by their respective counsel of record met and conferred telephonically. At the conference, counsel discussed the Order, the relevant Federal and Local Rules, and the preparation of this Joint Report. Counsel

specifically discussed the nature and the basis of the claims and defenses, the possibility for promptly settling or resolving the case, preservation of discoverable information, the specific items listed within the Court's order, and the items set forth in Federal Rule of Civil Procedure 26(f) and Local Rule 26-1. As a result of the conference, the parties report to the Court as follows:

**A.    ITEMS LISTED IN THE ORDER**

This first section of the Joint Report sets forth the items that the parties must list pursuant to the Court's Order.

1.    **A short factual summary of the case and of claims and defenses.**

**Plaintiff's Summary**: Plaintiff has brought this action against Defendant alleging infringement of its Federally registered trademark BRUXZIR® for dental bridges; dental caps; dental crowns; dental inlays; dental onlays and dental prostheses in international Class 10.  It is also alleged that Defendant, by use of a trademark KDZ BRUXER on identical goods, has violated § 43(a) of the federal Lanham Act by false designation of origin and violated California's Business and Professions Code by acts of unfair competition.

**Defendant's Summary**: Plaintiff's claims can and should be resolved on summary judgment, as soon as the Court can consider such a motion.  Two of the main reasons are summarized here:

(1) **Plaintiff has no right to exclude competitors from using the generic terms "BRUX" or "BRUXER" for dental appliances such as crowns**

For many years, the parties have each provided a variety of products to dentists, for the dentists' patients. Some of those products have been for patients who excessively grind their teeth. Within dentistry and the dental industry, this grinding is called BRUXISM, and the root of that generic term BRUX is at the heart of the current dispute.

Dental patients who BRUX (grind their teeth excessively) are sometimes called BRUXERS. Dentists learn these terms (BRUXISM, BRUX, BRUXER) in the first week or two of dental school. Not surprisingly, in addition to this generic use by dentists (and others in the industry) of the terms BRUX and BRUXER, there are many third-party trademarks for dental products that include the root BRUX, for products and services focused on treating BRUXISM. Examples include:

**BRUX-EZE** (U.S. Reg. 2,473,238; in use since **1985**)

**BRUXGUARD** (U.S. Reg. 2,251,807; in use since **1999**)

**DR. BRUX** (U.S. Reg. 3,775,126; in use since **2006**)

Plaintiff and Defendant only recently began using BRUX in connection with their products, long after several of those third parties began using "BRUX". Among other tooth conditions, BRUXISM commonly results in damage to patients' molars, and corresponding treatment commonly includes preparing and installing artificial crowns on the damaged teeth. Dentists typically take molds of their patient's teeth and use that information to order artificial crowns from Plaintiff, Defendant, or third parties (as discussed below, dentists typically write a custom order/prescription form for each patient and each crown, and fax it directly to the dental lab (such as Plaintiff or Defendant) from which they choose to order).

Due to the substantial forces that patients impose on these crowns (such as the forces that wore down or cracked their natural molars), the quality and integrity of the crown is critical. The price of such crowns is likewise commonly

fairly expensive.  Dentists' reputations are dependent on obtaining and installing crowns that not only will hold up to the patients' grinding and chewing, but also will not cause discomfort to the patient.  Accordingly, dentists typically are very careful about the crown products they order and the companies with which they place those orders.  It is not uncommon for a dentist to order ALL of his patients' crowns from one company (such as only from Defendant, or only from Plaintiff), and in such situations the "customers" KNOW from whom they are obtaining the product.  They cannot be confused.

Traditionally such crowns were made from gold, but because of the recent increase in the price of gold, these crowns now also are made from a material called Zirconia.  Plaintiff calls its product BruxZir (a combination of BRUX and ZIRCONIA).  Because Defendant Keating Dental Arts already was using the acronym "KDA" in its business, it adopted a similar acronym for its line of zirconia crowns:  "KDZ."  Defendant KDA applied with the U.S. Patent and Trademark Office to register three versions of its KDZ trademark, each designating a different version of zirconia crown:



| *KDA Trademarks* |
|---|
| KDZ BRUXER |
| KDZ MAX |
| KDZ ULTRA |

As presently advised, the first of these marks is the only one challenged by Plaintiff.  In addition to suing Defendant in this Court, Plaintiff simultaneously

filed an Opposition against Defendant's trademark application in the U.S. Patent and Trademark Office. Defendant has obtained a stay of that Opposition proceeding.

(2) **The is no likelihood of confusion among the professionals (dentists) who are the "customers" that "buy" the trademarked products, so there can be no trademark infringement.**

The dentists (the "customers" for these products) custom order these products directly from the Plaintiff, Defendant, or others. The dentists typically write a custom order/prescription form for each patient and each crown, and fax it directly to the dental lab (such as Plaintiff or Defendant) from which they choose to order. Defendant even provides to its dentists DEFENDANT's own order form, with Defendant's name and logo and product listings on it. In addition, the crowns are relatively expensive, and the dentists heavily rely upon the quality of the products, so they take substantial care to place the order from a dental lab that they trust. In other words, the dentists KNOW and trust the labs from whom they are ordering these products, and it is virtually impossible for them to be confused in that regard.

Finally, regarding Defendant's defense/counterclaim for misuse of trademark, Defendant submits that Plaintiff is knowingly and intentionally misusing its BRUXZIR trademark and abusing the legal process as well. Plaintiff attached to its Complaint Plaintiff's attorney May 31, 2011 letter to Defendant, but did NOT attach Plaintiff's separate communication dated August 9, 2011, in which Plaintiff attempted to use Plaintiff's **trademark** rights to force Defendant to BUY PRODUCT from Plaintiff, writing:

> "If you cancel your trademark application for KDZ Bruxer and use BruxZir materials and the BruxZir trademark instead, we will not pursue legal action."

As presently advised, Plaintiff owns NO patent rights to these products, so

the foregoing TRADEMARK demand constitutes misuse (a party's trademark rights entitle it to demand that others stop infringing those rights, but do NOT entitle the trademark owner to force others to buy the trademark owner's products). In any case, Defendant refused Plaintiff's unlawful demand, whereupon Plaintiff filed its Opposition against Defendant's trademark application, and simultaneously sued Defendant in this Court.

Plaintiff has also misused its BRUXZIR mark against a much smaller third party competitor who was using the trademark "R BRUX". In an April 18, 2011 email, Plaintiff threatened legal action over the following third party ad:



Plaintiff's email asserted that using just BRUX as part of the above mark infringed Plaintiff's BruxZir mark, writing: "The promotion of dental laboratory services by your lab of **Brux** crowns is using a similar mark where there is an

appreciable likelihood of confusion and a palming off goods by an unauthorized substitution of one brand for the brand ordered, which in this instance is a deliberate misappropriation of intellectual capital for commercial purposes that is actionable unfair competition under California law (California Business and Professions Code §17200)".

2. **A short synopsis of the principal issues in the case.**

**Plaintiff's Synopsis**: The principal issues are (a) whether Defendant's activities are likely to confuse or mislead the public as to the origin or sponsorship of Defendant's goods sold under the accused mark; (b) whether Defendant's alleged activities constitute Lanham Act false designation of origin or constitute unfair competition under California law; and (c) to what extent has Plaintiff been or is likely to be harmed by the alleged activities?

**Defendant's Synopsis re PLAINTIFF's Claims**: At least the following TWO independent issues can be dispositive of Plaintiff's claims, and Defendant expects to raise them in a summary judgment motion at the earliest opportunity.

(1) Whether Plaintiff has the right to stop competitors from using the generic terms BRUX, BRUXER, etc., as a part of a larger trademark (e.g., Defendant's KDZ BRUXER PLUS DESIGN), especially when other competitors have used BRUX for many years prior to Plaintiff?

(2) Whether there can be ANY likelihood of confusion (the test for trademark infringement) given:
- the significant differences between the marks themselves (Plaintiff's BruxZir mark and Defendant's KDZ BRUXER PLUS DESIGN mark)

- the only thing common to both of those marks is the generic term BRUX, which should continue to be available to ALL competitors
- the parties' customers for these expensive products are professional dentists who typically repeatedly (and sometimes exclusively) order these and other products from one of the parties and NOT the other party
- those dentists know exactly from whom they are ordering these products, because they write a "prescription" for the product (often on a form provided by the lab itself, such as Plaintiff or Defendant), and fax it directly to that lab (Defendant, Plaintiff, etc.).
- the products are relatively expensive, indicating that the dentists will pay close attention to their purchasing decision
- the dentists' buying decisions are critical to the dentists' professional success

**Defendant's Synopsis re DEFENDANT'S counterclaims**: The foregoing TWO independent issues similarly are dispositive of Defendant's soon-to-be-submitted counterclaim for non-infringement. As for Defendant's counterclaim for misuse of trademark (and/or that same misuse as a defense), the further principal issues include Plaintiff's (a) market power and (b) exclusionary behavior (such as that described above).

3. **Whether parties are likely to be added and whether the pleadings are likely to be amended.**

The parties do not presently anticipate adding any other parties to this action. Based on the results of its investigation, including discovery to be produced by Plaintiff, Defendant may amend its Answer to raise additional

affirmative defenses and/or add counterclaims for declaratory judgment of non-infringement and/or for misuse of trademark.

4. **A statement as to issues which any party believes may be determined by motion and a listing of then-contemplated law and motion matters.**

Plaintiff anticipates seeking summary judgment on the issue of trademark infringement. Defendant anticipates seeking summary judgment on at least the issues of non-infringement discussed above.

5. **A statement of what settlement discussions have occurred and what settlement procedure is recommended.**

The parties have previously discussed settlement, but were unable to reach agreement. While both parties remain interested in settlement, it is presently unclear as to whether settlement is likely.

The parties select Settlement Procedure No. 1, before a magistrate judge. The parties also hereby reserve the right to request the Court's approval to engage in an alternative settlement mechanism.

6. **A discovery plan, including any discovery phases, the order of discovery, and any limitations on discovery.**

The parties do not presently anticipate that phasing or modifications to the order of discovery will be necessary. At the present time, the parties do not believe that any changes are necessary to the limitations on discovery imposed

by the Federal Rules of Civil Procedure or the Local Rules of this District. The parties specifically reserve the right to move for a protective order to increase or limit the amount, scope and/or timing of any discovery and agree to leave open the possibility of revisiting this issue should changes to such limitations become necessary as this action proceeds.

To the extent not addressed below, the items set forth in Federal Rule of Procedure 26(f) and Local Rule 26-1 are addressed herein below.

### Initial Disclosures (Fed. R. Civ. P. 26(f)(3)(A))

The parties shall exchange initial disclosures on December 5, 2011.

### Topics for Discovery (Fed. R. Civ. P. 26(f)(3)(B))

Plaintiff anticipates conducting discovery primarily on the following topics:

(1) Defendant's selection and use of its trademark KDZ BRUXER,

(2) The use, recognition and strength of Plaintiff's registered trademark BRUXZIR®,

(3) The respective goods on which the respective trademarks are used,

(4) The impact of Defendant's alleged actions on Plaintiff and Plaintiff's trademark,

(5) The likelihood of confusion among the purchasing public,

(6) The goodwill associated with Plaintiff's mark,

(7) The motives and intent of Defendant in choosing its mark on these

particular goods,

(8) The extent that Defendant's alleged actions may have been willful, malicious and designed to harm Plaintiff,

(9) The extent to which Plaintiff may have suffered damages as a result of the alleged causes of action.

Defendant anticipates conducting discovery primarily on the topics and issues described in Defendant's summaries above.

The parties specifically reserve the right to add additional issues as they are discovered or developed in the course of discovery (written and oral) in this action.

### **Electronic Discovery (Fed. R. Civ. P. 26(f)(3)(C)**

The parties have agreed to work together on electronic discovery productions. Each party has taken steps to preserve all evidence relevant to the issues reasonably evidence in this action, including electronically stored information and to halt any document destruction program and any ongoing deletions of electronically stored information (i.e., electronic mail, voice mail, word processing documents).

The parties presently anticipate that all electronic documents will be produced in Adobe Acrobat or .tiff format, with the understanding that either party can reasonably request that specific electronic documents be produced in native format should the Acrobat or .tiff document be insufficient. The parties

agree to work in good faith to resolve any such issues with the understanding that discovery is currently ongoing and that as documents are collected and produced circumstances may arise that will require the parties to revisit and modify this procedure.

If a party believes that the requested preservation or production of electronically stored information is unduly burdensome, then both parties agree to meet and confer regarding cost shifting, and, if necessary, brief the issue for the Court. Currently, however, both sides have agreed to bear their own costs of production.

### **Privilege Issues (Fed. R. Civ. P. 26(f)(3)(D)**

The parties are presently discussing a Protective Order to protect the confidentiality of certain documents that shall be produced in this action. The parties have discussed a provision therein to specifically address privileged information that is inadvertently produced, and that such inadvertent production shall not be deemed a waiver of the attorney-client privilege, the work product doctrine, or any other recognized privilege or protection with respect to the information and documents, and that such documents shall be returned immediately to the producing party in accordance with the Protective Order.

The parties agree that work-product protection applies to protect drafts of any report or disclosure required under Rule 26(a), regardless of the form in which the draft is recorded. The following three categories of information,

however, remain discoverable: (a) compensation paid to an expert; (b) the facts and data an expert considered in forming opinions, including facts and data provided by an attorney to an expert; and (c) assumptions relied upon by an expert in forming opinions, including assumptions provided to an expert by an attorney.

7. **A statement of whether trial will be by jury or to the Court and a realistic estimated length of trial.**

The parties have requested a trial by jury and anticipate that it will last approximately 4 trial days.

8. **A statement of any other issues affecting the status or management of the case.**

The parties propose the following schedule to resolve the principal issues:

**Case Deadlines.**

| **Proceeding/Event** | **Proposed Date** |
|---|---|
| Opening expert reports | September 15, 2012 |
| Rebuttal expert reports | October 15, 2012 |
| Discovery cut-off date | October 29, 2012 |
| Final motion cut-off date | December 17, 2012 |
| Final Pretrial Conference | January 28, 2013 |
| Trial | February 26, 2013 |

The parties have agreed that documents to be served (not efiled) by or on a given day should, in addition to mail service or hand delivery, also be served via electronic mail (with the exception of exhibits or documents too large to send

through electronic mail). The parties have also agreed that any documents served via electronic mail shall be treated the same as documents served by U.S. mail for purposes of calculating responses pursuant to Federal Rules of Civil Procedure 5(b)(2)(E) and 6(d).

**B.  LOCAL RULE ISSUES**

Pursuant to Local Rule 26-1(a), the parties discussed at the Rule 26 (f) conference and agreed that this is not a complex case and that there is no need to utilize the procedures set forth in the Manual For Complex Litigation.

The remaining items of Local Rule 26-1 are already discussed herein.

Dated:  Monday, November 28, 2011

LEONARD TACHNER, A PROFESSIONAL LAW CORPORATION

By: __/s/ Leonard Tachner
    LEONARD TACHNER
    Attorney for Plaintiff
    James R. Glidewell Dental Ceramics,
    Inc. dba Glidewell Laboratories

J. MARK HOLLAND & ASSOCIATES

By: __/s/ J. Mark Holland
    J. MARK HOLLAND
    Attorneys for Defendant
    Keating Dental Arts, Inc.