J. MARK HOLLAND (140453)
**J. MARK HOLLAND & ASSOCIATES**
 a Professional Law Corporation
3 San Joaquin Plaza, Suite 210
Newport Beach, CA  92660
Telephone:  (949) 718-6750
Facsimile:  (949) 718-6756
Email: office@jmhlaw.com

Attorneys for Defendant and Counterclaim-Plaintiff
KEATING DENTAL ARTS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| JAMES R. GLIDEWELL DENTAL CERAMICS, INC., DBA GLIDEWELL LABORATORIES, a California corporation, <br><br> Plaintiff, <br><br> vs. <br><br> KEATING DENTAL ARTS, INC., a California corporation, <br><br> Defendants. <br> ――――――――――― <br> KEATING DENTAL ARTS, INC. a California corporation, <br><br> Plaintiff, <br><br> vs. <br><br> JAMES R. GLIDEWELL DENTAL CERAMICS, INC., DBA GLIDEWELL LABORATORIES, a California corporation, and DOES 1 THROUGH 5, inclusive, <br><br> Defendants. | Civil Action No. <br> SA-CV-ll-01309-DOC(ANx) <br><br> **MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF TRADEMARK BRUXZIR®, AND ON ALL THREE CAUSES OF ACTION IN THE COMPLAINT** <br><br> **HEARING DATE:** <br> **Monday, March 5, 2012** <br><br> **HEARING TIME:** <br> **10:00 a.m.** |

# TABLE OF CONTENTS

I.      TABLE OF AUTHORITIES ......................................................................... ii

II.     OVERVIEW ...............................................................................................4

III.    FACTUAL BACKGROUND ....................................................................2

IV.     ANALYSIS ...............................................................................................9

        A.   Summary Judgment is Appropriate Because There are No
             Genuine Issues of Material Fact Regarding the Genericness of
             BRUX and BRUXER in the Dental Profession/Industry .....................9

        B.   BRUX and/or BRUXER – by THEMSELVES – Cannot
             Function as Trademarks for Products "For Bruxers" ..........................10

             1.   Categories of Distinctiveness ............................................11

             2.   Burden of Proof ...................................................................12

             3.   Legal Standard for Finding a Mark Generic ....................13

             4.   The "Relevant Consuming Public" for these Goods and
                  Trademarks is Dentists and Other Dental Professionals .................14

             5.   Evidence of Genericness of BRUX and BRUXER ..........15

        C.   Glidewell's Expected Argument Regarding Whether BRUX and
             BRUXER can Function as Trademarks in Dental Commerce ............18

        D.   Multiple Competitors Using "Generic/Descriptive" Terms
             Within an Industry is Normal ..........................................................21

             6.   Apple's iPhone® trademark – the term "PHONE" remains
                  generic/descriptive and Available to All Competitors ....................21

             7.   Microsoft's Windows trademark – the term WINDOWS (By
                  Itself) was Held to be Likely Generic/Descriptive and Therefore Not
                  Protectible ...................................................................22

V.      Conclusion ..............................................................................................23

# I. TABLE OF AUTHORITIES

**CASES**

*Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 10 (2d Cir. 1976) ............................................................. 12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) ................................................ 10

*Anti-Monopoly, Inc. v. General Mills Fun Group*, 611 F.2d 296, 304 (9th Cir. 1979) .......................................................... 13

*Bayer Co. v. United Drug Co.*, 272 F. 505, 509 (S.D.N .Y. 1921) .......... 13

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265  (1986) ............................................................ 10

*Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 821 (9th Cir. 1996) ...................................................... 14, 15

*Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 172 (7th Cir. 1996) ............................................................... 12

*Filipino Yellow Pages, Inc. v. Asian Journal  Publ'ns*, 198 F.3d 1143, 1146 (9th Cir. 1999) ............................................... passim

*Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806 at 811 (2d Cir.1999) ............................................................ 19

*I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 36 (1st Cir. 1998) . 10

*Magic Wand, Inc. v. RDB, Inc.*, 940 F.2d 638,640 (Fed. Cir. 1991) ...... 14

*Microsoft Corp. v. Lindows.com, Inc.*, 2002 U.S. Dist. LEXIS 24616 (W.D. Wash. Mar. 15, 2002) ........................................... 22

*Nabisco, Inc. v. PF Brands. Inc.*, 191 F.3d 208, 215 (2d Cir. 1999) ..... 10

*Surgicenters of America, Inc. v. Medical Dental Surgeries Co.*, 601
    F.2d 1011, 1014 (9th Cir. 1979) .................................................. *passim*

*Vuitton Et Fils S.A. v. J. Young Enters, Inc.*, 644 F.2d 769, 776 (9th
    Cir. 1981) ........................................................................ 12

**STATUTES**

*15 U.S.C. § 1064(3)* ................................................................ 13

**RULES**

*Fed. R. Civ. P. 56(c)* .............................................................. 10

**TREATISES**

*J. Thomas McCarthy, McCarthy on Trademarks and Unfair*
    *Competition* ............................................................ 14, 15, 19

## II.   OVERVIEW

If a term lacks sufficient distinctiveness so that it is generic, the term "cannot be the subject of trademark protection under any circumstances." *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns*, 198 F.3d 1143, 1146 (9th Cir. 1999).  The terms most central to this dispute are BRUX and BRUXER, and as explained below, they are both generic for devices to treat the dental condition of bruxism.  Consequently, they cannot have any trademark protection under any circumstances.

Plaintiff Glidewell and Defendant KDA are competitors in the dental laboratory business.  Relevant to this lawsuit, they sell dental restorations such as crowns and bridges to dentists and other dental professionals.  Glidewell has alleged that Defendant KDA is infringing Glidewell's BruxZir® trademark by selling competing products under the trademark KDZ Bruxer™.

Even though the terms BRUX and BRUXER are NOT the actual trademark of either party, they provide the main "nexus" between the parties' trademarks and, more importantly, Glidewell has asserted that its trademark rights INCLUDE the exclusive right to use those words BRUX and BRUXER in ANY form as part of trademarks on the products at issue.

Glidewell did NOT register, and has not even TRIED to register, the terms BRUX or BRUXER.  Glidewell has not used those terms by themselves as trademarks, nor invested any money or efforts in promoting them as trademarks.  Instead, Glidewell effectively is asking this Court to enforce Glidewell's BruxZir trademark rights as if Glidewell ALSO owned those terms BRUX/BRUXER as trademarks.  Whatever rights Glidewell may have in its BruxZir® trademark, those rights do NOT include the right

1 to stop KDA from doing what companies in the dental industry have been
2 doing for decades, and what Glidewell itself did in forming Glidewell's
3 BruxZir® trademark:  using the generic terms BRUX or BRUXER within
4 trademarks for their own products "for bruxers."

5 Accordingly, KDA's instant motion is NOT about the validity of
6 Glidewell's trademark BruxZir (KDA reserves the right to challenge that at
7 a later time, if needed), but instead is about the SCOPE of rights that
8 Glidewell's may have in that trademark.  That scope cannot include the right
9 to exclude competitors from using the generic terms BRUX and/or
10 BRUXER.

11 ### III.    FACTUAL BACKGROUND

12 Brux.  Bruxer.  Bruxing.

13 Although these terms may not be familiar to persons outside the
14 dental profession, they have been in common use among dental
15 professionals and in the related dental "marketplace" for many decades.  As
16 a result, to the dentists and other professionals to whom Plaintiff and
17 Defendant sell the dental crowns and other products at issue in this lawsuit,
18 those terms are extremely commonplace.

19 The terms at issue (BRUX and BRUXER) are based on "**bruxism**," a
20 common dental condition describing patients who grind their teeth
21 unconsciously, sometimes to the point of wearing down or even cracking
22 their teeth.  In either case, dentists commonly replace the bruxism-damaged
23 tooth with a crown or other restoration.

24 Since as early as the 1950's, dental professionals have learned about
25 bruxism and its symptoms and treatments, and have understandably
26 developed other words based on bruxism, such as "bruxing" (grinding your
27 teeth), "bruxer" (a person who grinds their teeth), and "to brux" (to grind

28 **MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
OF NON-INFRINGEMENT OF TRADEMARK BRUXZIR**
Civ. Action No. SA-CV-ll-01309-DOC(ANx)                                             2

one's teeth).

As mentioned, bruxism and these related terms (brux/bruxer/etc.) have been part of the dental world's lexicon since at least the 1950's. Bruxism is commonly studied in the first two weeks of dental school (see, e.g., Adnan Decl., Ex. B). A book entitled "BRUXISM" lists more than 200 "bruxism" articles, patents, and the like, that were published between 1955 and 2007 (Adnan Decl., Ex. A), and "bruxism"-related patent applications list many others articles, including in the 1950's through the 1980's (Adnan Decl., Ex. J – entry re U.S. Pat. No. 4,995,404). *The American Heritage Dictionary of the English Language* (5th ed. 2011) defines "brux" as follows: "intr. v. **bruxed**, **brux·ing**, **brux·es.** To clench or grind one's teeth" (see Adnan Decl., Ex. M). Glidewell itself repeatedly states that its BruxZir brand products are "for bruxers" (see Adnan Decl., Ex. C).

The parties do NOT market or sell their relevant "bruxing" products to the general public. Even within the dental professionals' market in which the parties' sell, the parties have only used their "BRUX"-based trademarks for relatively short periods of time (Glidewell since 2009, and KDA since 2011). Their recent adoption of those marks occurred because of a developing trend in dental technology. Although dental crowns and other restorations have long been a treatment for bruxism, only recently have dental labs (such as the parties) have begun making those products from solid <u>zirconia</u>.

In the several decades prior to either party adopting its "BRUX"-based trademark, many third parties had adopted and used BRUX-related trademarks for various bruxism treatments. Some had even registered those trademarks with the U.S. Patent and Trademark Office (PTO) (see Adnan Decl., Ex. F). Many inventors of bruxism-related technology used those

terms within their patents and applications, and continue to do so (see Adnan Decl., Ex. J).

In choosing trademarks for their solid zirconia products for bruxers, the parties likewise both selected "BRUX"-related trademarks. Among other things, this helps ensure that their customers (dentists, etc.) realize that the products were "for bruxers." For its trademark, Glidewell took the generic term BRUX and combined it with the first three letters of "zirconia" (thus, Glidewell not only signals to its customers that it is a product "for bruxers," but ALSO includes "Zir" to signals that the products are made from zirconia.

For its trademark, KDA did just what Glidewell and those earlier "BRUX" trademark owners did – KDA included a generic "BRUX" term within a larger trademark. Specifically, KDA adopted as its "main" trademark for its zirconia products the letters KDZ using the "Z" to signal "zirconia") and stylized that main trademark in the following logo  . KDA adopted, applied to register, and now markets three models of that KDZ product line: KDA's basic model includes the generic term Bruxer (thus "KDZ Bruxer"), and the other two (not at issue in this lawsuit) are KDZ Ultra and KDZ Max. All three are shown in the following table:

| **_KDA Product Line_** | **_Serial No._** | **_Trademark Sought to be Registered by KDA_** |
|---|---|---|
| KDZ BRUXER | 85287029 | KDZ BRUXER |
| KDZ MAX | 85287084 | KDZ MAX |
| KDZ ULTRA | 85287720 | KDZ ULTRA |

Long before either party adopted their "brux" trademarks, other companies had already been using their OWN "BRUX" trademarks for their OWN products "for bruxers" for several **decades** (Adnan Decl., Ex. F). Some of those are reflected in the list below of applications and registrations of those marks with the PTO.  One (BRUX-EZE) has been used as a trademark since as early as 1985, some 24 years before Glidewell adopted BruxZir:

| Trademark | PRIORITY DATE (Earliest Filing Or Use Date) |
|---|---|
| BRUX-EZE | 1985 |
| BRUX-EZE | 1986 |
| BRUXCARE | 1997 |
| BRUXGUARD | 1997 |
| BRUXGUARD | 2003 |
| DR. BRUX | 2006 |
| BRUX-INDICATOR | 2006 |

As mentioned above, inventors similarly had been using (and are

continuing to use) those generic/descriptive "brux" terms in their "brux"-related patents and patent applications, for <u>decades</u> prior to Glidewell adopting its BruxZir mark. (Adnan Decl., Ex. J). In connection with filing their applications, some even listed of the many other "bruxism" publications that were not included in the BRUXISM book of Adnan Decl., Ex. A, including several more from the 1950's through 1980's. Below is a small sample:

| Issue Date | Patent No. | Selected "brux" excerpts |
|---|---|---|
| **1985** | 4,519,386 | "…at night, many patients unconsciously viciously ***brux*** their teeth …" |
| **1994** | 5,338,190 | "…The dental appliance can be a splint, such as for ***bruxism***, temporomandibular disorders, or mandibular repositioning appliances…"<br>"…The dental appliance can be utilized as a night guard, ***bruxism*** splint, T.M.D. appliance, or functional orthodontic appliances and can be made for either dental arch, upper or lower…"<br>"…The appliance does not wear as fast as a resilient splint (i.e. ***Brux***-eze); and therefore, is ideal for heavy ***bruxer*** or clencher…"<br>"…The appliance lasts longer for heavy ***bruxers*** and/or clenchers…" |
| **1996** | 5,553,626 | "…An anti ***bruxism*** device for stopping or at least diminishing ***bruxism*** comprises a splint adapted to be secured to a tooth of a user, and a biofeedback system mounted on the splint. The biofeedback system includes a detector for detecting ***bruxism***, and a stimulation device for stimulating the user responsive to detection of ***bruxism*** by the detector. The stimulation produced by the stimulation device causes the user to stop ***bruxating***. ***Bruxism*** is a function that could damage teeth and molars, and may affect the neuro-muscular system in a negative way, and could cause, for example, headaches…"<br>"…The invention concerns an anti-***bruxism*** device. ***Bruxism*** is a conscious or subconscious parafunction that takes place |

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF TRADEMARK BRUXZIR**
Civ. Action No. SA-CV-ll-01309-DOC(ANx)                                                    6

| Issue Date | Patent No. | Selected "brux" excerpts |
|---|---|---|
| | | during the day and/or at night, and consists of a static and/or dynamic contact between the chewing levels of the mandibular and upper jaw…" |
| **1999** | 5,911,576 | "…The symptoms of ***bruxism*** include: clicking or grinding noises detected by a sleeping partner, wear facets on a ***bruxist's*** tooth surfaces, jaw pain, headaches, damage to teeth or dental work, and over development of the jaw muscles. When ***bruxism*** is severe, it may be accurately diagnosed by the presence of jaw pain and over development of the jaw muscles. When ***bruxism*** is less severe, it may be difficult to diagnose. For example, wear facets are often detected by a dentist during a dental examination, but may have resulted from ***bruxing*** during a previous period of the patient's life. Because nocturnal ***bruxism*** is a subconscious activity, ***bruxists*** may not be aware of their ***bruxing*** and may not believe that they ***brux*** even when presented with strong circumstantial…" |

(*emphasis added*; a more complete list is in Adnan Decl., Ex. J.

Apparently, Glidewell somehow believes that, with sufficient advertising and promotion, it can "buy" the exclusive rights to "BRUX" and "BRUXER" and prevent competitors from doing what Glidewell itself did – take one of those generic "brux" terms and modify it into a trademark. Regardless of what Glidewell believes, trademark law (and basic fairness) says otherwise. As discussed below, not even the massive marketing efforts of Apple (for iPhone) and Microsoft (for Windows) gave those companies exclusive rights to their respective generic terms (PHONE and WINDOWS) (see discussion below, and Adnan Decl., Ex. G).

After introducing its BruxZir brand of zirconia restorations in 2009, Glidewell (who is the largest dental laboratory in the world; Adnan Decl., Ex. K) began saturating the dental world with advertising for those BruxZir products, but simultaneously used its market dominance and economic power to unlawfully stop its much smaller competitors from using the term

"brux" in their competing trademarks.  Even <u>without</u> taking any formal discovery yet, KDA has become aware of the examples of Glidewell's intimidation:

1. **Glidewell stopped AUTHENTIC Dental Labs from using "BRUX Crowns"**:  In April 2011, Glidewell's attorney's wrote to Authentic Dental Lab, and demanded that Authentic remove the following language from Authentic's website:  "<u>Brux</u> crowns are available with either Lava or Authentic Zirconia…" (emphasis added).  Glidewell's attorney wrote, "…[W]e must insist that you immediately cease use of the infringing marks in your promotions and elsewhere. Should you not terminate use of the mark, Glidewell Laboratories reserves its rights to take legal action to stop you from using the mark by seeking an injunction, monetary relief, and attorney fees…Additionally, if you wish to be on the list of BruxZir® authorized dental laboratories, call Glidewell Direct."  (Adnan Decl., Ex. H).

2. **Glidewell stopped RDENT Dental Labs from using "RBrux"**:  At the bottom of that same April 2011 letter to Authentic, the Glidewell attorney apparently forgot to delete the following language (which identifies his earlier demand letters to two OTHER "brux" competitors):  "[Copied from Assured DL website: http://www.rdentdentallaboratory.com/admin/files/111/pdf/RBrux.pdf]."  Of those two, Glidewell's threats succeeded not only in stopping RDent Dental Labs from using "RBrux," they "persuaded" Rdent to become "an Authorized Bruxzir Lab!" (according to RDent's webpage www.rdentdentallaboratory.com).

3. **Glidewell stopped ASSURED Dental Labs from using "Z-Brux"**:  The OTHER of those two additional was Assured Dental Lab

1   (indicated in the text: "[Copied from Assured DL website…").
2   Glidewell demanded that Assured stop using the trademark Z-BRUX,
3   and in the same email, suggested that Assured order product from
4   Glidewell.

5   As to Defendant KDA, Glidewell was even more explicit: "**If you**
6   cancel your trademark application for KDZ Bruxer and **use Bruxir**
7   **materials and the BruxZir trademark** instead, **we will not pursue legal**
8   **action**." (emphasis added; Adnan Decl., Ex. L). Glidewell expressly tied its
9   litigation threat against KDA to a demand that KDA buy unpatented
10  Glidewell materials. Besides violating more conventional trademark laws,
11  Glidewell's demand for this "tying" violates federal anti-trust law.

12  Just as Glidewell and its predecessors used the generic/descriptive
13  term BRUX when adopting their trademarks on products "for bruxers,"
14  competitors like KDA have the right to do so. KDA's creation and selection
15  of its trademark KDZ BRUXER is simply an exercise of that right.

16  As shown by the many companies within the dental industry who
17  have adopted BRUX-based trademarks, and as explained further below, this
18  is the nature of generic/descriptive terms like BRUX: the terms are
19  lawfully used by all competitors in the commercial marketplace, commonly
20  as part of a trademark, to help describe the product or suggest its
21  application. No one company or person can have exclusive rights to them.

22  ## IV.   ANALYSIS

23  *A. Summary Judgment is Appropriate Because There are No Genuine*
24  *Issues of Material Fact Regarding the Genericness of BRUX and*
25  *BRUXER in the Dental Profession/Industry*

26  Summary judgment is appropriate if "there is no genuine issue as to
27  any material fact and . . . the moving party is entitled to a judgment as a

28  **MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF TRADEMARK BRUXZIR**
Civ. Action No. SA-CV-ll-01309-DOC(ANx)                              9

matter of law." Fed. R. Civ. P. 56(c); see also, e.g., *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).   KDA's statement of uncontroverted facts and conclusions of law sets forth the material facts as to which KDA contends there is no genuine dispute.   A factual dispute which is neither "genuine" nor "material" will not survive a motion for summary judgment.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   To decide whether a factual dispute is "genuine," the Court must determine whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

Even accepting all reasonable inferences in favor of the nonmovant Glidewell (as the Court is required to do in ruling upon this motion), a reasonable jury could not find for Glidewell on the issue of genericity of BRUX and BRUXER.   Those terms are generic within the relevant buyers (dentists and other dental professionals) with respect to the relevant products (devices to treat bruxism), and KDA therefore is entitled to use them in its trademark and is entitled to judgment as a matter of law.

### B.  BRUX and/or BRUXER – by THEMSELVES – Cannot Function as Trademarks for Products "For Bruxers"

As mentioned above, if a term lacks sufficient distinctiveness so that it is generic, the term "cannot be the subject of trademark protection under any circumstances." *Filipino Yellow Pages*. Inc. v. Asian Journal  Publ'ns, 198 F.3d 1143, 1146 (9th Cir.  1999); see also *Nabisco, Inc. v. PF Brands. Inc.*, 191 F.3d 208, 215 (2d Cir. 1999) ("Distinctiveness is a crucial trademark concept, which places marks on a ladder reflecting their inherent strength or weakness."); *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 36 (1st Cir. 1998) (holding that

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF TRADEMARK BRUXZIR**
Civ. Action No. SA-CV-ll-01309-DOC(ANx)                                                       10

distinctiveness is a prerequisite for protection from trademark infringement and dilution).

Although Glidewell's registration is for BruxZir, KDA has never used that mark, and Glidewell instead is charging that KDA is not entitled to use the term BRUXER even as a part of the larger mark "KDZ BRUXER" (because to do so would somehow infringe Glidewell's trademark rights in BruxZir). However, because the terms BRUX and BRUXER are NOT sufficiently distinctive of any particular product "for bruxers," neither Glidewell nor any competitor in the dental industry/profession can have exclusive "trademark" rights to those terms. Said another way, the terms BRUX and/or BRUXER, by themselves, cannot be valid trademarks for ANYONE in the dental industry. This means that those terms cannot effectively be "owned" by Glidewell and enforced against KDA and third parties as Glidewell has been doing.

1. Categories of Distinctiveness

The degree of distinctiveness of a mark is directly related to the breadth of the protection it can command. Trademark law identifies four categories of terms with respect to their distinctiveness, in the following order of decreasing protection: (1) arbitrary or fanciful, (2) suggestive, (3) descriptive or (4) generic. *Filipino Yellow Pages*, 198 F.3d at 1146-47 (quoting *Surgicenters of America, Inc. v. Medical Dental Surgeries Co.*, 601 F.2d 1011, 1014 (9th Cir. 1979)). An arbitrary and fanciful term is one which is invented solely for its use as a trademark and is thus afforded the greatest protection. *Surgicenters*, 601 F.2d at 1015. A suggestive term requires some imagination or perception to determine the nature of the goods, as opposed to a descriptive term which specifically describes a characteristic or an attribute of an item or service. *Id.* at 1014-15. A

descriptive term generally does not enjoy trademark protection unless "it has acquired 'secondary meaning' in the minds of consumers, i.e., it has 'become distinctive of the [trademark] applicant's goods in commerce.'" *Filipino Yellow Pages*, 198 F.3d at 1147 (quoting *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 10 (2d Cir. 1976) (Friendly, J.)).   In contrast, a suggestive term is inherently distinctive and thus entitled to protection without proof of secondary meaning.  *Surgicenters*, 601 F.2d at 1015.  Finally, a generic term, "one that refers, or has come to be understood as referring, to the genus of which the particular product or service is a species," is not protectable even if it has acquired distinctiveness or secondary meaning.  *Id.* at 1014.  The lines between these four categories are not always clear. *Id.*

   2.  Burden of Proof

   The terms BRUX/BRUXER are NOT registered trademarks (and actually not trademarks at all), and consequently those terms do not enjoy the legal presumptions afforded to registered trademarks.  However, to the extent that there is ANY burden of proof on Defendant KDA (to "rebut" any presumption of validity of BRUX and/or BRUXER as trademarks for products relating to bruxism), KDA's motion and supporting materials have met that burden of proof.

   The burden of proof for rebutting a <u>registered</u> trademark's presumption of validity is preponderance of the evidence.  <u>See</u> *Vuitton Et Fils S.A. v. J. Young Enters, Inc.*, 644 F.2d 769, 776 (9th Cir. 1981); <u>see</u> <u>also</u> *Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 172 (7th Cir. 1996) ("The presumption ... evaporates as soon as evidence of invalidity is presented.... Its only function is to incite such evidence and when the function has been performed the presumption drops out of the case.") (citations omitted).

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF TRADEMARK BRUXZIR**
Civ. Action No. SA-CV-ll-01309-DOC(ANx)                                          12

However, the Ninth Circuit's has emphasized the lesser burden of proof when a party is challenging the validity of an <u>unregistered</u> trademark. <u>See</u> *Filipino Yellow Pages*. 198 F.3d at 1148, 1151 (comparing *Filipino Yellow Pages*, which deals with an unregistered mark, to *Surgicenters*, a registered mark).

In the present case, the marks that effectively are being asserted and being challenged as "generic" are NOT registered – they are the unregistered terms BRUX and BRUXER.  Thus the volume and quality of evidence that KDA must present is far less than was presented by the defendant in *Surgicenters*; KDA need only show the "modest evidence of genericness" that was shown in *Filipino Yellow Pages*, *id.* at 1151.  Among other things, in the Adnan Declaration and discussed herein, KDA has presented substantial evidence that, both prior to and since the time that Glidewell first announced its BruxZir product, the relevant public (dentists, etc.) understood and understand "brux" and/or "bruxer" to refer to aspects of bruxism (either the bruxing/grinding action itself, or the person doing the bruxing/grinding).

3.  Legal Standard for Finding a Mark Generic

When a word's primary significance is to describe the type of product rather than the producer or source, the word is a <u>generic</u> term with respect to that product.  <u>See</u> *Filipino Yellow Pages*, 198 F.3d at ll47 (quoting *Anti-Monopoly, Inc. v. General Mills Fun Group*, 611 F.2d 296, 304 (9th Cir. 1979)).  The Lanham Act itself contains a test for genericness: "The primary significance of the ... mark to the relevant public . .. shall be the test for determining whether the . .. mark has become the generic name of goods or services on or in connection with which it has been used."  15 U.S.C. § 1064(3) (emphasis added). This test is generally regarded as a codification of Judge Learned Hand's inquiry in *Bayer Co. v. United Drug Co.*, 272 F. 505, 509 (S.D .Y. 1921): "What do the buyers understand by the word for whose use the parties are contending?" *Magic Wand, Inc. v. RDB,*

1   *Inc.*, 940 F.2d 638,640 (Fed. Cir. 1991).  As explained herein, BRUX and

2   BRUXER are generic because the buyers (dental professionals; see below)

3   understand that BRUX and BRUXER describe something that relates to bruxism,

4   and are NOT describing a specific product or a specific source of a product.

5     The Ninth Circuit also has referred to the "who-are-you/what-are-you" test

6   in determining whether a term is generic.  *Filipino Yellow Pages*, 198 F.3d at

7   1147.  If a word answers the buyer's question "Who are you?" "Where do you

8   come from?" then the term can be a valid trademark, because a buyer understands

9   it to refer only to a particular source of the goods or services.  See *id.*;

10  *Surgicenters*, 60 l F.2d at lO16. On the other hand, when a word answers the

11  buyer's "What are you?" question, the word is generic as to those products and

12  cannot be a valid trademark because it is identified with all such goods or services

13  regardless of their producers.  See *id.*; see also 2 J. Thomas McCarthy, *McCarthy*

14  *on Trademarks and Unfair Competition*, §12:l.  Here, BRUX and BRUXER are

15  generic because they answer the "what are you" question – they tell the

16  dentists/buyers that the product is something that relates to bruxism.  They do

17  NOT tell the buyer "Who" is the source of that product.  Were that not true, the

18  word "BRUX" could indicate that the product came from any of the companies

19  who predated Glidewell's adoption of BruxZir, and Glidewell would be infringing

20  the rights of those third parties (e.g., buyers would think the BruxZir product came

21  from the same source as the long-established BRUX-EZE products).

22    4. The "Relevant Consuming Public" for these Goods and Trademarks is

23      Dentists and Other Dental Professionals

24    These various embodiments of the test for genericness indicate that the

25  proper focus of the Court's inquiry is "the relevant public" (a specific subset of all

26  possible consumers).  See, e.g., *Committee for Idaho's High Desert, Inc. v. Yost*,

27  92 F.3d 814, 821 (9th Cir. 1996) (affirming district court's identification of the

28  **MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF TRADEMARK BRUXZIR**

"relevant public"); *Surgicenters*, 601 F.2d at 1017 (identifying "consuming public").  In the present case, the terms BRUX and BRUXER (to which Glidewell aspires to exert "ownership") are used in dental school textbooks, by dentists and other dental professionals, by persons selling products to dentists, by writers and advertisers in dental publications, and by inventors of relevant dental products and services within the dental profession.  See, e.g., Adnan Decl., Exs. B, E, F, and J. Glidewell admits that the parties primarily sell to dentists, advertise in dental industry publications, and show their products at dental industry trade shows (Adnan Decl., Ex. D, including especially Glidewell's Complaint, par. 2).  Thus, the "relevant consuming public" for the goods associated with the contested trademark consists of dentists and other dental professionals and their staff.

   5.  Evidence of Genericness of BRUX and BRUXER

   Whether a trademark is generic is a question of fact.  *Yost*, 92 F.3d at 821. As noted above, summary judgment may be appropriate even as to questions of fact.  A court may rely on a variety of evidence in determining the validity of a mark.  Examples of such evidence include competitors' use, plaintiff's use, dictionary definitions, media usage, testimony of persons in the trade, and consumer surveys. See 2 McCarthy§ 12:13- 12:14.

   Here, KDA has presented evidence in at least four of those six categories, and arguably in additional categories.   That evidence is presented in the Adnan declaration and its exhibits, and demonstrates that BRUX and BRUXER are generic in the dental profession, for patients, treatments, products, and/or services related to bruxism:

   ▪ Adnan Decl. Ex. A is a copy of a book that lists over 200 articles and publications on BRUXISM.  The listings cover the years 1955-2007, and thus all of the items listed in that book predate Glidewell's adoption of its BruxZir trademark, some by

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF TRADEMARK BRUXZIR**
Civ. Action No. SA-CV-ll-01309-DOC(ANx)                                    15

1   more than 50 years.

2   ▪ Ex. B contains excerpts from a dental school textbook that was

3   originally published in 1985. The excerpts highlight the

4   substantial focus on bruxism, and the use of related terms such

5   as brux, bruxer, and bruxing.

6   ▪ Ex. C documents some of the many times that Plaintiff

7   Glidewell uses the generic terms "bruxer," "bruxers," and/or

8   "bruxism" **on Plaintiff Glidewell's own website**

9   (http://www.glidewelldental.com/).

10   ▪ Ex. E documents some of the many other third party uses of

11   "BRUX" on websites and/or in articles.

12   ▪ Ex. F lists various U.S. trademark applications and registrations

13   for marks containing "BRUX" and pertaining to the dental

14   profession.

15   ▪ Ex. J contains excerpts from U.S. patents and applications

16   directed to bruxism-related technology, including the extensive

17   use of BRUX, BRUXER, and similar terms.

18   The evidence may relate to the time period of the alleged infringement or

19   dilution or to the time when the mark's proponent introduced its designation onto

20   the market. *Id.* §12:13. Here, a substantial portion of KDA's evidence concerns

21   not only those time periods, but many decades preceding Glidewell's adoption of

22   BruxZir.

23   a. Competitors Use the Terms BRUX and BRUXER

24   The Ninth Circuit has accepted evidence of third party competitors' use of

25   the contested term to determine whether it is generic. See *Stuhlbarg*, 240 F.3d at

26   840 (terms at issue were "widely used by third parties in the safe industry").

27   KDA's evidence shows that these terms were used by the industry and the press

28   **MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF TRADEMARK BRUXZIR**
Civ. Action No. SA-CV-ll-01309-DOC(ANx)                    16

1  for many decades before Glidewell's 2009 adoption of BruxZir. This evidence

2  includes numerous third-party registered trademarks and applications for

3  trademarks using BRUX in trademarks for dental "bruxism" products (Adnan

4  Decl., Ex. F), and the terms brux, bruxer, and the like within third party patents

5  and patent applications relating to bruxism  (Adnan Decl., Ex. J). Competitor

6  websites commonly use the terms (Adnan Decl., Ex. E).  As shown in Adnan Decl.

7  Ex. H, Glidewell has recently stopped third parties from using at least the

8  following words to promote their bruxism products:  BRUX, RBRUX, and Z-

9  BRUX.

10              b. Plaintiff Glidewell Uses the Terms

11      The way in which a party claiming trademark protection uses the term is

12  also relevant to a determination of the mark's validity.  See *Surgicenters*, 601 F.2d

13  at 1017 n.l9 (letters by Surgicenter founder recognizing the term was used in a

14  generic sense).  Glidewell's own website uses BRUXER, BRUXERS, and

15  BRUXISM repeatedly, and NOT as a trademark.  Adnan Decl., Ex. C.  Among

16  other things, Glidewell repeatedly states that its BruxZir products are "for

17  bruxers."

18         c. Dictionary Definitions of the Terms BRUX and BRUXER

19      The use of a term in dictionaries is also indicative of the public's perception

20  of the term's meaning.  The Ninth Circuit has placed significant weight on a

21  term's dictionary definition, but has been careful to emphasize that such evidence

22  on its own is not determinative. See *Filipino Yellow Pages*, 198 F.3d at 1148

23  (quoting Surgicenters, 601 F.2d at 1015 n.ll) ("While not determinative, dictionary

24  definitions are relevant and often persuasive in determining how a term is

25  understood by the consuming public, the ultimate test of whether a trademark is

26  generic.").

27

28

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF TRADEMARK BRUXZIR**
Civ. Action No. SA-CV-ll-01309-DOC(ANx)                                      17

- The American Heritage Dictionary (5th ed. 2011) defines "brux" as follows: "intr. v. **bruxed**, **brux·ing**, **brux·es.** To clench or grind one's teeth."  (Adnan Decl., Ex. M).
- Dictionary.com (http://dictionary.reference.com/browse/brux):  verb (used without object), bruxed, brux·ing.  To clench and grind the teeth; gnash.
- YourDictionary.com (at www.yourdictionary.com/brux):  intransitive verb bruxed, brux·ing, brux·es: To clench or grind one's teeth.
- The Free Online Dictionary and Encyclopedia (at www.tfode.com/bruxer) defines bruxer as: Noun; bruxer (plural bruxers) - One who exhibits bruxism (grinding of the teeth).

### d. Media Usage of the Terms BRUX and BRUXER

The media usage of the terms BRUX and BRUXER is extensive (at least within dental channels of commerce and study).  An entire book called "BRUXISM" can be bought on Amazon.com (Adnan Decl., Ex. A).  Dental school textbooks use the terms when teaching dental students about bruxism (Adnan Decl., Ex. B).  Relevant third party websites and articles commonly use the terms (Adnan Decl., Ex. E).  Virtually all of the many articles that Glidewell has produced in its Initial Disclosures use the terms.

### *C. Glidewell's Expected Argument Regarding Whether BRUX and BRUXER can Function as Trademarks in Dental Commerce*

Based on informal discussion with Glidewell counsel, it appears that Glidewell will argue that (1) Glidewell was the first competitor to use "BRUX" within a trademark for a solid zirconia dental restoration, and that (2) Glidewell's subsequent extensive promotion of its mark BruxZir gives Glidewell exclusive rights for ANY use of "BRUX" (not just the use of BruxZir) in a trademark for solid zirconia dental restorations.

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF TRADEMARK BRUXZIR**
Civ. Action No. SA-CV-ll-01309-DOC(ANx)                                        18

For purposes of this motion only, KDA is not challenging whether Glidewell's actual trademark **BruxZir** functions as a trademark to identify a particular source of solid zirconia dental restorations.  Because KDA does NOT use that mark BruxZir and instead uses KDZ BRUXER, however, the most appropriate formulation of the current issue is whether the terms **BRUX** or **BRUXER** can function as a trademark to identify a particular source of a bruxism product, such as solid zirconia dental restorations.  In other words, even if the Court focuses only on the BRUXER portion of KDA's mark (which is improper, because the proper test is to consider the accused mark "as a whole" – thus KDZ BRUXER), Glidewell has to show that the relevant consuming public (dentists, etc.) would identify BRUX or BRUXER with a particular source of bruxism product.

"If a generic word could ever be infused with trademark significance, the word must have <u>ceased</u> to have <u>current</u> generic meaning." *Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806 at 811 (2d Cir.1999), 2 *McCarthy* §12:30-12:32 (emphasis added)).  Again, Glidewell is asking this Court to rule that Glidewell is the "holder" of exclusive trademark rights to BRUX and BRUXER.  All of the evidence shows that the relevant dentists/consumers have NOT changed their longstanding usage and understanding of those terms – the words have NOT "ceased to have current generic meaning."  Glidewell's use of BruxZir only began in 2009, and it has NEVER used the words BRUX or BRUXER by themselves as trademarks.  Instead, the uncontrovertible facts shows that the terms "BRUX/BRUXER" retain <u>at least</u> some generic meaning today, so that Glidewell cannot claim those terms (as opposed to claiming its ACTUAL trademark BruxZir) out of the public domain.

Even if the Court agreed that Glidewell's BruxZir mark has acquired secondary meaning, that does not mean that the BRUX and BRUXER terms (to

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF TRADEMARK BRUXZIR**
Civ. Action No. SA-CV-ll-01309-DOC(ANx)                                                    19

which Glidewell wants ownership) have developed any "secondary meaning". Even if Glidewell HAD somehow developed a huge amount of "secondary meaning" in the terms BRUX and BRUXER, <u>no</u> degree of secondary meaning will save a generic mark. <u>See</u> *Surgicenters*, 601 F.2d at 1016 (even if a product acquires "secondary meaning as indicating the origin of the goods, such circumstance could not 'take the common descriptive name of an article out of the public domain ... no matter how much money or effort it pours into promoting the sale of the merchandise.'") (quoting the "Matchbox Case," 280 F.2d 437, 440 (C.C.P.A. 1960)).

As a factual matter, Glidewell cannot do so because it has never used those terms as a trademark – it uses only BruxZir.  Further, because of the long history of those terms for bruxism products and services and technology within the dental profession/industry, Glidewell cannot be allowed to appropriate those terms to itself, even just for solid zirconia dental restorations.  Those zirconia restorations are just one of many products and technologies that are "for bruxers"; functionally equivalent restorations made from other materials have long been made "for bruxers," and Glidewell does not and cannot claim exclusive rights to the use of the material zirconia in restorations "for bruxers."

Glidewell has not bothered to adopt or even TRY to register the generic word it is attempting to enforce against its competitors (BRUX). Instead, Glidewell has relied on its dominant market and economic position to unlawfully and improperly assert that having a trademark "BRUXZIR" is equivalent to having a trademark "BRUX" <u>without any other letters</u>.  Using those tactics, Glidewell has unlawfully excluded competitors from legitimately competing in the marketplace – from using the generic words BRUX and BRUXER, etc. within those competitors' trademarks.  Such behavior should not be tolerated.

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF TRADEMARK BRUXZIR**
Civ. Action No. SA-CV-ll-01309-DOC(ANx)                                              20

1
2

### D. Multiple Competitors Using "Generic/Descriptive" Terms Within an Industry is Normal

3   This adoption of "generic/descriptive" terms by multiple competitors
4   within a given industry is normal.  It is illuminating to consider some other
5   real-world examples of how our legal system treats the use of such
6   generic/descriptive words as part of trademarks.  Two such examples are
7   Apple's <u>iPhone</u> trademark, and Microsoft's <u>Windows</u> trademark.  As
8   summarized below, the "legal/trademark" status of both "Phone" and
9   "Windows" within those marks is the same as
10  "BRUX/BRUXER/BRUXING" in the current lawsuit:  the terms are
11  generic/descriptive, and thus can be used by ALL competitors as part of
12  their trademarks within their respective industries.

13      6.  Apple's iPhone® trademark – the term "PHONE" remains
14          generic/descriptive and Available to All Competitors

15  Following the scheduling conference in this lawsuit, Glidewell's
16  counsel suggested that the parties' current dispute might be analogous to the
17  trademark "iPhone" (without doubt, Apple has used and promoted that
18  trademark and its related products to an astounding degree, and Glidewell's
19  counsel apparently contends that, at least within the dental industry,
20  Glidewell has achieved some similarly substantial degree of market
21  saturation with Glidewell's BruxZir trademark).  In that discussion,
22  Glidewell's counsel posited that, in view of Apple's HUGE iPhone brand
23  awareness throughout the world, surely no competitor would be permitted to
24  register or use a competing trademark that included the word "PHONE."

25  Presumably to the surprise of Glidewell's counsel, the public record
26  (as well as common sense) is to the contrary.  Regardless of whether Apple
27  would PREFER to have exclusive rights to use the word "PHONE" as a

28
**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF TRADEMARK BRUXZIR**
Civ. Action No. SA-CV-ll-01309-DOC(ANx)                                    21

trademark (or as any part of a trademark) for telephonic devices, Apple does NOT enjoy that right.  As the Court might expect, third parties competing with Apple have predated and have continued to adopt and use other "PHONE" marks (for examples, see Adnan Decl., Ex. G).  In other words, despite the untold millions of dollars Apple and its affiliates have spent promoting that trademark "iPhone," and the millions of iPhones that Apple has sold, Apple does NOT get to stop competitors from using "PHONE" in the trademarks of those competitors.

   7.  Microsoft's Windows trademark – the term WINDOWS (By Itself) was Held to be Likely Generic/Descriptive and Therefore Not Protectible

In another somewhat analogous situation, Microsoft asserted that is had the right to exclude third parties from using WINDOWS for operating system software.  As with Glidewell in the current lawsuit, Microsoft took the position that its MASSIVE marketing and use of that word WINDOWS was such that it precluded third parties from using that word in their own trademarks.  Microsoft had even succeeded in registering the trademark WINDOWS for its own operating system.  Subsequently, however, a court indicated that the term WINDOWS was generic and that the registration to Microsoft should NOT have been issued.

More specifically, in 2001, Microsoft challenged a competitor's use of "LINDOWS" for a combination operating system that would run both Linux software and Microsoft software.  In a 2002 order denying Microsoft's motion for a preliminary injunction, *Microsoft Corp. v. Lindows.com, Inc.*, 2002 U.S. Dist. LEXIS 24616 (W.D. Wash. Mar. 15, 2002), the court held that Microsoft was NOT likely to succeed at trial in showing that it had exclusive rights to the term WINDOWS (thus making it similarly unlikely that Microsoft had the right to stop the defendant's use of

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF TRADEMARK BRUXZIR**
Civ. Action No. SA-CV-ll-01309-DOC(ANx)                                          22

the different term LINDOWS).  The court cited many facts that are similar to those in the current dispute.  For example, the evidence showed that, <u>prior</u> to Microsoft's adoption of it, many software companies, developers, and reviewers had used the word WINDOWS in connection with their own or third party programs that displayed multiple "windows" on the user's computer monitor.  The court held that Microsoft had not demonstrated a likelihood of success on the merits - that Microsoft was not likely to be able to prove that its mark was NOT generic/descriptive, and indeed, that it was likely that Microsoft should not have been issued a trademark registration for WINDOWS in the first place.

## V.    CONCLUSION

Bruxism and related terms such as BRUX and BRUXER are generic within the dental profession, for that dental condition and for its related commercial activities.  Like many of their predecessors, the parties both used one of those generic terms as part of a larger trademark for their most recent bruxism treatments.

//

//

//

//

//

//

//

//

//

//

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF TRADEMARK BRUXZIR**
Civ. Action No. SA-CV-ll-01309-DOC(ANx)                                         23

1
2
3
4
5
6
7
8
9

Just as Glidewell and its predecessors used the generic/descriptive term BRUX when adopting their trademarks on products "for bruxers," competitors like KDA have the right to do so.  KDA's creation and selection of its trademark KDZ BRUXER is simply an exercise of that right.  To the extent that Glidewell has been succeeding and continues to <u>stop</u> competitors from using the signal "brux" in their trademarks, Glidewell enjoys an unfair and unlawful advantage – it prevents those competitors from drawing a desirable and lawful connection between their products and the intended users and uses of those products:  "<u>for bruxers</u>."

10
11

                                 Respectfully submitted,

12
13
14
15
16
17

Dated:  2012-02-13                /J. Mark Holland/
                                 J. Mark Holland
                                 **J. MARK HOLLAND & ASSOCIATES**
                                 Attorney for Defendant and Counterclaim-Plaintiff KEATING DENTAL ARTS, INC., a California corporation

18
19

Z:\Winword\KEAT\L3844\Pleadings\Motions-Related\KDA_Motion_for_PSJ\Motion_PSJ_Memo_in_Support_Glidewell_v_Keating_Dental_06.doc

20
21
22
23
24
25
26
27
28

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF TRADEMARK BRUXZIR**
Civ. Action No. SA-CV-ll-01309-DOC(ANx)          24