## I.    Background

Given that this motion comes at a very early stage of litigation, there are few relevant facts at issue and none of them are disputed.1

### a.  Plaintiff's Three Causes of Action in Its Complaint

Plaintiff James R. Glidewell Dental Ceramics ("Plaintiff") brings three causes of action based on the same acts by Defendant.   First, Plaintiff alleges that Defendant's trademark, KDZ BRUXER, infringes Plaintiff's federally-registered trademark, BRUXZIR, under the Lanham Act.  Compl. at 5-6.  Second, Plaintiff alleges that Defendant's acts giving rise to the infringement claim also constitute false designation of origin under the Lanham Act.  Finally, Plaintiff alleges that these acts constitute unfair competition under California Business & Professions Code 17200.

### b.  Definitions of Bruxism, Bruxers, and the Phrase "To Brux"

In addition to the two marks – Plaintiff's BRUXZIR and Defendant's KDZ BRUXER – Defendant has introduced a plethora of evidence to show that, since the 1950s, dental professionals, dictionaries, and other literature define the following terms as follows: (1) "bruxism" is a "condition in which the dental patient grinds or gnashes [her] teeth, sometimes unconsciously and/or at night"; (2) "bruxers" are people "suffering from or experiencing bruxism"; and (3) "to brux" means "to grind ones teeth." Statement of Uncontroverted Facts and Conclusions of Law at ¶ 20, ¶¶ 23-25.  <span style="color:red">Defendant's evidence is more thoroughly discussed below, and was unchallenged by Plaintiff.  In the Court's view, that uncontroverted evidence establishes that the terms BRUX and BRUXER are</span>

---

1 Plaintiff does not appear to contest any of Defendant's facts because Plaintiff has filed no Statement of Genuine Disputes of Material Fact by Opposing Party, as required by Local Rule 65-2.  See L.R. 56-2.2 (Any party who opposes the motion shall serve and file with the opposing papers a separate document containing a concise "Statement of Genuine Disputes" setting forth all material facts as to which it is contended there exists a genuine dispute necessary to be litigated.").

---

generic within the dental profession, for products that are "for bruxers."

**c.  Plaintiff's and ~~Defendants~~Defendant's Respective Industries and Products and Trademarks**

If a bruxer has a tooth that is ground down and/or cracked, dentists sometimes prepare and install a "dental crown" or "dental restoration (such as a bridge, etc.)." *Id.* at ¶ 29.  The parties in this lawsuit are dental laboratories who, among other things, receive and fill those crown/restoration orders from dentists. *Id.* at ¶ 31. Zirconia is a material used to make dental crowns. *Id.* at ¶ 35. In 2009, Plaintiff began marketing a zirconia crown under the BRUXZIR trademark.  *Id.* at ¶ 37.  In 2011, Defendant began marketing a zirconia crown. *Id.* at ¶ 39.  At some point in time, Defendant began using the mark KDZ BRUXER, although the record is silent regarding whether this trademark appeared on Defendant's zirconia crown. *Id.* at ¶ 40.  ~~Since 2011, Defendant has been "using the trademark KDZ and an associated logo for [Defendant's] zirconia crown products." *Id.* at ¶ 39.~~
In approximately April 2011, Defendant modified its marketing, and began "using the trademark KDZ in a stylized form within an associated oval logo for [Defendant's] zirconia crown products." *Id.* at ¶ 39.

**d.  Defendant's Trademark is TWO Separate Words, Not ONE as Plaintiff Stated in its Opposition**

In the discussion below concerning whether there is a likelihood of confusion between the parties' trademarks, the Court provides a more comprehensive analysis and comparison/contrast of the parties' respective trademarks.  However, because Plaintiff's Opposition repeatedly stated that Defendant's trademark was ONE word (KDZBRUXER), and because summary judgment requires that there be no genuine issue of material fact, the Court also summarizes there its findings that the Defendant's trademark instead is TWO separate words, and its holding that Plaintiff's Opposition fails to raise a genuine issue of material fact in that

regard.

**e.  Plaintiff's Assertion of Its BRUXZIR Trademark Against Defendant and Third Parties**

After the United States Patent and Trademark Office (USPTO) approved and then published Defendant's three "KDZ" trademark applications, Plaintiff filed an opposition to only the KDZ BRUXER application.  Defendant obtained a stay of that opposition, pending this litigation.

Prior to filing that opposition proceeding and this lawsuit, Plaintiff contacted Defendant several times to demand that Defendant stop using the KDZ BRUXER trademark.  In addition, prior to its assertions against Defendant, Plaintiff made similar demands against third party competitors in the dental laboratory industry.2 These third party trademarks included BRUX Crowns, RBrux, and Z-Brux, and Plaintiff's threats resulted in those trademark owners ceasing use of their respective marks.  Defendant did not agree to cease its use of KDZ BRUXER.

---

2 For example:

Uncontroverted Fact No. 5.          Glidewell has contacted third parties and demanded that those third parties stop using the term "BRUX" within those parties' trademarks for dental restorations.

Uncontroverted Fact No. 6.          Glidewell has represented to those same third parties that the basis for Glidewell's demand is Glidewell's rights in its trademark BruxZir.

Uncontroverted Fact No. 7.          Glidewell has contacted AUTHENTIC Dental Labs and demanded that it stop using the phrase "BRUX Crowns" for promoting its dental restorations.

Uncontroverted Fact No. 8.          AUTHENTIC Dental Labs responded to Glidewell's demand by stopping its use of the phrase "BRUX Crowns."

Uncontroverted Fact No. 9.          Glidewell has contacted RDENT Dental Labs and demanded that it stop using the term "RBrux" as a trademark for dental restorations.

Uncontroverted Fact No. 10.         RDENT Dental Labs responded to Glidewell's demand by stopping its use of the term "RBrux."

Uncontroverted Fact No. 11.         Also following Glidewell's demand, RDENT Dental Labs signed on as an Authorized BruxZir Lab.

Uncontroverted Fact No. 12.         Glidewell has contacted ASSURED Dental Labs and demanded that ASSURED Dental Labs stop using the term "Z-Brux" as a trademark for dental restorations.

Uncontroverted Fact No. 13.         ASSURED Dental Labs responded to Glidewell's demand by stopping its use of the term "Z-Brux."

---

**f.  Plaintiff's Was Not the First Use of "BRUX" in a Trademark within this Dental Marketplace, and Was Not the First Use of "BRUX" on a Dental Crown/Restoration**

Again, in the analysis below, the Court reviews the relevant evidence regarding the substantial use of BRUX in third party trademarks, which began long before Plaintiff and Defendant adopted their respective "BRUX" trademarks, and that one of those earlier third party trademarks (DR. BRUX) was registered with the USPTO for dental crowns, the very product at issue in this lawsuit.

## II.    Legal Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The court must view the facts and draw inferences in the manner most favorable to the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non- moving party has failed to present any genuine issue of material fact. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990). Once the moving party meets its burden, the opposing party must set out specific facts showing a genuine issue for trial; merely relying on allegations or denials in its own pleading is insufficient.  *See Anderson*, 477 U.S. at 248-49. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers.  *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982).  Rather, there must be specific,

admissible evidence identifying the basis for the dispute.  *Id.* The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Anderson*, 477 U.S. at 252.

## III.   Discussion

~~Because~~As further explained below, there are no "genuine issues of material fact" that would preclude summary judgment.  As noted above, Defendant offered a plethora of evidence regarding bruxism and the related terms BRUX and BRUXER within the marketplace that is relevant to this dispute, and Plaintiff did not controvert any of that evidence nor any of the Defendant's Statement of Uncontroverted Facts and Conclusions of Law.  Accordingly, the facts as so established are sufficient to meet Defendant's burden for the Court to grant the present motion.  As explained below, the Court's holds that those facts are sufficient (especially in view of certain of those facts having been integrated into this Order based on Defendant's Request for Reconsideration).

However, because the parties offered very little relevant case law to guide this Court in this Motion, the Court remedies this oversight by first providing an overview of the relevant trademark law.3 Next, the Court explains why Defendant has ~~not~~ shown that Plaintiff has failed to establish any genuine issue of material fact on at least one element of trademark infringement, namely, that: (1) plaintiff's mark is protected; or (2) there is a likelihood of confusion between the parties' marks~~.~~ (the Court holds that there is not a likelihood of confusion).  Finally, the

---

3 Defendant in particular focused most of its briefing on some of the relatively unusual aspects of this motion – the genericness of the base terms within the parties' respective marks and how the current facts support a finding that those base terms are in fact generic within the relevant marketplace– but did not in its original filings provide much analysis of how that genericness impacted the more conventional trademark infringement analysis that underlies the relief that Defendant is seeking with its current motion.  Defendant's Request for Reconsideration included a substantial effort to address that shortcoming, including incorporating certain additional facts into the overall analysis to better explain why Defendant's trademark does not infringe any rights of Plaintiff.

Court explains why Defendant alternatively has ~~not~~ shown that its use of ~~a portion of Plaintiff's mark~~ the generic term BRUXER satisfies the three elements of the classic fair use doctrine.

**a. Law Regarding Infringement of A Composite Mark by Another Composite Mark Where the Marks Share Only A Portion of Text**

A claim for trademark infringement exists if there is: (1) ownership of a protected mark; and (2) likelihood of confusion arising from defendant's use of the mark.[4] *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007); see also 15 U.S.C. § 1125(a). As further discussed below, the "generic" portions of each of the parties' marks (the "BRUX" in Plaintiff's BRUXZIR mark, and the "BRUXER" in Defendant's mark) impact the second of those elements, in a way that precludes any likelihood of confusion.

**i. The first element of a trademark infringement claim requires that plaintiff's mark be a protected trademark**

**1. Five categories of trademark**

There are five categories of trademarks: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful. *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 927 (9th Cir. 2005). The latter three categories are "automatically entitled to protection" because they are "inherently distinctive," meaning that they "serve to identify a particular source of a product." *Id.* A descriptive mark is protected if it has acquired distinctiveness by establishing "secondary meaning" in the marketplace; a descriptive mark defines "a particular characteristic of the product in a way that does not require any

---

[4] Of course, trademark law "also protects against other types of harm . . . when there is no likelihood of confusion." *Protectmarriage.com v. Courage Campaign*, 680 F. Supp. 2d 1225, 1228 (E.D. Cal. 2010). Although the parties' briefs fail to inform the Court as to what, exactly, Plaintiff's legal theories are, the Complaint appears to at least allege infringement based on likelihood of confusion. Furthermore, to the extent Plaintiff is also alleging unfair competition, the "test" for harm under the "unfair competition is exactly the same as for trademark infringement," namely, likelihood of confusion. *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988).

exercise of the imagination." *Id.* (emphasis added). Generic marks are not protected because they "identify the product, rather than the product's source." *Id.*

### 2. Ninth Circuit test to determine whether a mark is at least descriptive or merely generic

To determine whether a mark is generic or at least descriptive, the Ninth Circuit applies the "who-are-you/what-are-you" test. *Id.* A mark is at least descriptive, and thus potentially protected, if it "answers the buyer's questions 'Who are you?' 'Where do you come from?' 'Who vouches for you?'" *Id.* In contrast, a mark is generic "if it only answers the question 'What are you?'" *Id.*

### 3. Plaintiff's mark is evaluated as a whole when determining whether it is protected

Defendant has acknowledged that, for purposes of the present motion, Defendant is not challenging the validity of the Plaintiff's BRUXZIR trademark (among other things, Defendant is not asserting that Plaintiff's BRUXZIR trademark is generic, but instead that it incorporates a generic term BRUX, just as many other competitors in this marketplace have done). Similarly, for purposes of the present motion, Defendant is not challenging the facts that Plaintiff has made extensive sales of products under Plaintiff's BRUXZIR trademark ($67 million in dental crowns/restorations, and $5 million in other related products). Thus, the "protection" per se of Plaintiff's BRUXZIR mark is not at issue in the present motion – Defendant is conceding for purposes of this motion that the mark BRUXZIR is valid and not generic (as opposed to just the term generic BRUX, to which Plaintiff is asserting that it has exclusive rights, as discussed herein re BRUX Crowns, RBrux, Z-Brux, and KDZ BRUXER). The issue raised by Defendant is whether the scope of that protection of BRUXZIR can be so broad as to cover Defendant's trademark KDZ BRUXER. To help address that "scope of protection" issue, the Court reviews some of the principles relevant to trademark

protection generally.

The "validity of a trademark is to be determined by viewing the trademark as a whole." *California Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1455 (9th Cir. 1985).  Thus, even where a mark is a "composite" of generic terms, the mark's "validity is not judged by an examination of its parts." *Id.* (upholding preliminary injunction on plaintiff's claim that its mark, "California Cooler," was infringed by defendant's mark, "California Special Cooler," because plaintiff's mark was at least descriptive given that generic term for parties' products was "wine cooler" and "[w]ords which could not individually become a trademark may become one when taken together"); *see also* 2 McCarthy on Trademarks and Unfair Competition §–12:39 (4th ed.) ("[G]enericness of a composite is determined by examining the composite as a whole rather than examining its constituent parts individually.").

### 4.  There is a presumption of validity if plaintiff's mark is federally-registered

Again, Defendant has acknowledged that, for purposes of the present motion, Defendant is not challenging the validity of the Plaintiff's BRUXZIR trademark. However, to again confirm the general framework within which the Court is considering the present motion, the Court sets forth further principles relating to the validity of Plaintiff's trademark.

The plaintiff "bears the ultimate burden of proof in a trademark infringement action," and this includes the burden to show that the plaintiff's mark is valid. *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005). Where, as here, the plaintiff shows that the mark is federally-registered, the plaintiff meets its burden because a federally-registered mark is presumed to be protected, meaning that it presumed to be at least descriptive and with secondary meaning. See 15 U.S.C. § 1057(b) ("A certificate of registration of

a mark . . . shall be prima facie evidence of the validity of the registered mark");
*Yellow Cab*, 419 F.3d at 928 ("Federal registration of a mark constitutes prima
facie evidence of the validity of the mark."). The defendant may overcome the
presumption if it shows by "a preponderance of the evidence" that the plaintiff's
mark is not protected. See *Yellow Cab*, 419 F.3d at 928. Again, Defendant's
present motion does not challenge the "protection" per se of Plaintiff's BRUXZIR
mark, but instead whether the scope of that protection can be so broad as to cover
Defendant's trademark KDZ BRUXER.

### ii.  The second element of a trademark infringement claim requires the likelihood of confusion of the parties' marks

#### 1. The Ninth Circuit applies an eight-factor test

The Ninth Circuit considers eight factors to determine the likelihood of confusion
between the parties' marks: "[1] strength of the [plaintiff's] mark; [2] proximity of
the goods; [3] similarity of the marks; [4] evidence of actual confusion; [5]
marketing channels used; [6] type of goods and the degree of care likely to be
exercised by the purchaser; [7] defendant's intent in selecting the mark; and [8]
likelihood of expansion of the product lines." *Network Automation, Inc. v.
Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011). However, "the
list is not exhaustive," and "[o]ther variables may come into play depending on the
particular facts presented." *Id.*; *see also* 4 McCarthy on Trademarks and Unfair
Competition § 24:39 (4th ed.) (noting that factors are referred to as "Sleekcraft
factors" because they were announced in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d
341 (9th Cir. 1979)).

#### 2. The likelihood of confusion between the parties' marks is evaluated by comparing both marks as a whole

Under the "anti-dissection rule," the likelihood of confusion between two marks
"is determined by viewing the trademark as a whole, as it appears in the

marketplace." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1389, 1392 (9th Cir. 1993) (holding that district court committed "error" when it "analyzed the strength of [plaintiff's] mark by examining . . . the term 'Travel Planner,' standing alone" where plaintiff alleged that its mark "OAG TRAVEL PLANNER" was infringed by defendants' marks "THE TRAVEL PLANNER USA" and "USA TRAVEL PLANNER"); *see also China Healthways Institute, Inc. v. Wang*, 491 F.3d 1337, 83 U.S.P.Q.2d 1123 (Fed. Cir. 2007) ("It is incorrect to compare marks by eliminating portions thereof and then simply comparing the residue."); 4 McCarthy on Trademarks and Unfair Competition § 23:41 (4th ed.) ("Conflicting composite marks are to be compared by looking at them as a whole, rather than breaking the marks up into their component parts for comparison."); 15 U.S.C. § 1052(d) (referring to a whole "mark" and not portions of a mark when stating that no protection exists where "a mark . . . so resembles [another] a mark . . . as to be likely . . . to cause confusion"). The rationale behind the anti-dissection rule is that the "commercial impression of a trade-mark is derived from it as a whole, not from its elements separated and considered in detail." *Estate of P.D. Beckwith, Inc., v. Comm'r of Patents*, 252 U.S. 538, 545-46 (1920).

> ### 3. Plaintiff bears the burden to show likelihood of confusion

"[T]he burden of proving likelihood of confusion rests with the plaintiff." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122, 125 S. Ct. 542, 160 L. Ed. 2d 440, 72 U.S.P.Q.2d 1833 (2004).

## b. Defendant Has ~~Not~~ Met Its Summary Judgment Burden Regarding Plaintiff's Claim for Trademark Infringement

As noted previously, a claim for trademark infringement contains two elements: (1) ownership of a protected mark; and (2) likelihood of confusion arising from defendant's use of the mark. *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966,

969 (9th Cir. 2007).  Thus, to obtain summary judgment, Defendant must show that Plaintiff has not satisfied at least one of these two elements.  ~~Because~~In its Request for Reconsideration, Defendant ~~fails to even mention~~clarified that its original materials addressed these elements, ~~much less explain~~and further explained how its arguments relate to these elements, ~~the Court DENIES Defendant's motion~~and has met its burden in that regard.

### i.  Defendant has not shown that Plaintiff's mark is not protected

As noted previously, a mark is not protected if it is either: (1) generic; or (2) descriptive and does not contain secondary meaning. *See Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 927 (9th Cir. 2005). However, Defendant does not advance an argument based on this rule~~.~~.  As noted above, Defendant's present motion does not challenge the "protection" per se of Plaintiff's BRUXZIR mark, but instead whether the scope of that protection can be so broad as to cover Defendant's trademark KDZ BRUXER.

First, Defendant has expressly disavowed the argument that Plaintiff's mark is generic. See Reply at 1 (stating that Defendant is "not asserting that BRUXZIR is generic"). Second, Defendant does not present any evidence that Plaintiff's mark lacks secondary meaning, most likely because, even if such evidence existed, Defendant might not have such evidence at this early stage in litigation.5 Because Defendant advances neither of these arguments, Defendant has not shown that Plaintiff's mark is unprotected~~.~~ (and indeed, has admitted same for purposes

---

5 ~~Curiously,~~ Defendant's motion even includes details about Plaintiff's extensive advertising campaign using this BRUXZIR mark, evidence which, in some circuits, supports a finding of secondary meaning.  See *E.T. Browne Drug Co. v. Cococare Products, Inc.*, 538 F.3d 185, 200, 87 U.S.P.Q.2d 1655 (3d Cir. 2008) (noting that plaintiff could establish "secondary meaning by showing that [the mark] had appeared for a long period of time in a prevalent advertising campaign," but holding that advertising in the case at issue did not focus on that part of the composite mark that plaintiff claimed had acquired secondary meaning); see also 2 McCarthy on Trademarks and Unfair Competition § 15:51 (4th ed.) ("Evidence of the amount of money spent in promotion and advertising of the mark in issue is relevant to the issue of secondary meaning.").  Instead, Defendant argues that, even to the extent that secondary meaning does exist in Plaintiff's BRUXZIR trademark, that secondary meaning cannot be so broad as to support a finding that Defendant's KDZ BRUXER trademark infringes Plaintiff's trademark rights.

---

of the present motion).

Defendant ~~appears to seek~~instead seeks (among other things) a judicial declaration that "the terms BRUX, BRUXER, and BRUXING . . . are generic and/or descriptive for products and/or services that relate to and/or address the teeth-grinding condition known as bruxism." See Proposed Order at 5:18-20.6 Based on that finding (that BRUX and BRUXER are generic and commonly used in many other trademarks in this marketplace), Defendant seeks a judicial declaration that its KDZ BRUXER mark is not likely to cause confusion, and/or that its use of the generic term BRUXER within its KDZ BRUXER mark is fair use.

Based on Defendant ~~appears to believe~~original briefing, it appeared that Defendant believed that such a judicial declaration ~~will~~that "the terms BRUX, BRUXER, and BRUXING . . . are generic and/or descriptive for products and/or services that relate to and/or address the teeth-grinding condition known as bruxism") would entitle Defendant to summary judgment on all of Plaintiff's causes of action.7 See Def.'s Proposed Order (Dkt. ) at 3. ~~The Court is~~However, in the Court's original Order (posted 2012-03-27, denying Defendant's present motion) the Court indicated that it was rather baffled by Defendant's argument. First, as noted previously, the "validity of a trademark is to be determined by viewing the trademark as a whole." *California Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1455 (9th Cir. 1985). Defendant has expressly disavowed any argument that it is attacking the validity of Plaintiff's trademark as a whole,

---

6 The Court ~~gleans~~initially gleaned Defendant's intentions from its proposed order because Defendant's other original filings ~~fail~~failed to clearly state the relief Defendant desires. Defendant's Request for Reconsideration confirmed and further clarified this point.

7 The Court ~~is~~also expressed that it was mystified as why Defendant's Motion is titled as one for "partial" summary judgment given that Defendant appears to believe that granting its motion will end Plaintiff's case. Defendant's Request for Reconsideration further clarified Defendant's intentions in that regard – that Defendant wanted to make clear that Defendant's counterclaims would remain unresolved and still pending (thus, granting the present motion does not resolve the entire lawsuit).

---

and Defendant instead concedes that its Motion focuses only on the ~~four letters~~fact that ~~both~~ Defendant and Plaintiff's mark ~~share~~include one of those generic terms: BRUX~~. Thus,~~ and BRUXER.  Defendant ~~appears~~also presented uncontroverted evidence, however, both that (1) Plaintiff believes that it DOES have exclusive rights to ~~be asking this court to rule,~~those terms BRUX and BRUXER, and (2) Plaintiff in fact has asserted its BRUXZIR trademark against third parties to stop them from using BRUX, RBRUX, and Z-BRUX for competing zirconia dental crowns.  In view of the overwhelming and uncontroverted evidence before the Court, the Court now holds that Defendant's request in that regard was NOT an "abstract~~,~~" request regarding the use of BRUX on ~~whether BRUX could, hypothetically, be considered generic when applied to~~ "hypothetical products~~.  This kind of advisory opinion is exactly the sort of speculation in which a Court can not engage. Second, even if~~." Instead, the uncontroverted facts show that this is NOT a hypothetical situation:  Plaintiff has asserted its BRUXZIR trademark as a basis to stop third parties from using the generic terms BRUX and BRUXER for zirconia dental crown products "for bruxers."

Although Defendant also is seeking (and the Court is granting) a more specific holding that the ~~word~~words BRUX ~~is~~and BRUXER are generic as applied to the parties' respective zirconia crowns, such a holding ~~would~~does not by itself entitle Defendant to summary judgment on Plaintiff's claims.  A holding that part of ~~a~~Plaintiff's composite mark is generic does not establish that the mark as a whole is not protected because the "validity of a trademark is to be determined by viewing the trademark as a whole." *California Cooler*, 774 F.2d at 1455. ~~Thus, the very holding that Defendant desires does not entitle it to the relief it seeks. See Facebook, Inc. v. Teachbook.com LLC, -- F. Supp. --, 11-CV-3052, 2011 WL 4449686 at \*11 (N.D. Ill. Sept. 26, 2011) (denying motion to dismiss~~

where plaintiff contended that its entire federally registered mark, FACEBOOK, was infringed by defendant's mark, TEACHBOOK, and rejecting defendant's argument that the "infringement claim is based on the word BOOK, which . . . is a generic component of [plaintiff's] mark that is entitled to trademark protection"). Finally, However, Defendant is not asserting that Plaintiff's mark is invalid or not protected; Defendant instead is asserting that Plaintiff's mark is not infringed by Defendant's use of another generic word (BRUXER) within Defendant's KDZ BRUXER trademark.

Although none of the cases cited by Defendant hold that a court can or should grant summary judgment to a defendant simply because the shared portion of both parties' composite marks is generic as applied to their products., Defendant discusses several cases where the defendant challenges plaintiff's whole trademark as generic. See Mot. at 22-23 (discussing *Microsoft Corp. v. Lindows.com, Inc.*, C01-2115C, 2002 WL 31499324 (W.D. Wash. Mar. 15, 2002), in which defendant challenged plaintiff's trademark "WINDOWS" as generic). These cases are of little utility where, as here, Defendant does not challenge the validity of Plaintiff's whole trademark.  See *California Cooler*, 774 F.2d at 1455 (requiring the validity of a trademark to be determined by viewing the trademark as a whole"). In sum, because Defendant does not analyze Plaintiff's mark as a whole, Defendant has not shown that Plaintiff's mark is not protected.

ii.  Defendant has notIn sum, although Defendant's original briefing did not analyze Plaintiff's mark as a whole, Defendant had not shown that Plaintiff's mark was not protected.  Even Defendant's Request for Reconsideration does not assert that "Plaintiff's mark is not protected," but that Request does address the infringement (likelihood of confusion) element and does so with a comprehensive discussion of the various factors that the Ninth Circuit has indicated a court should use as guidelines for such analysis.

Again, Defendant's further analysis (and the Court's inclusion of same below) does not challenge the "protection" per se of Plaintiff's BRUXZIR mark, but instead whether the scope of that protection can be so broad as to cover Defendant's trademark KDZ BRUXER.   Accordingly, that further analysis of Plaintiff's "mark as a whole" is reflected in the discussion below showing that there is no "likelihood of confusion" between the marks when they each are considered "as a whole."

### ii.  Defendant has shown an absence of evidence that there is likelihood of confusion between the parties' marks

As noted previously, a court typically evaluates whether there is a likelihood of confusion between the parties' marks by applying eight factors, including the strength of the plaintiff's mark. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011). ~~Defendant does not~~ However, the Ninth Circuit has expressly stated that the "eight factors" are intended as an adaptable proxy for consumer confusion, not a rote checklist. See, e.g., *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir.2010) ("This eight-factor analysis is `pliant,' illustrative rather than exhaustive, and best understood as simply providing helpful guideposts."); *Dreamworks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir.1998) ("The factors should not be rigidly weighed; we do not count beans."); *Eclipse Assoc. Ltd. v. Data Gen. Corp.*, 894 F.2d 1114, 1118 (9th Cir. 1990) ("These tests were not meant to be requirements or hoops that a district court need jump through to make the determination.").

Even keeping in mind that the "eight factors" are not a rote checklist, the fact that Defendant's original briefing did not mention any of these factors, ~~and~~ expressly was unsatisfactory to the Court, as indicated in the Court's original denial of Defendant's motion.  However, as further explained below, Defendant's original briefing did include most or all of the uncontroverted evidence that supports the Court's present finding that there is not any likelihood of confusion between the marks.  The Court's original Order indicated that summary judgment should be denied on this basis alone (not expressly analyzing the "eight factors," given that it

is Defendant's burden to show that it is entitled to judgment as a matter of law. ~~However, even charitably construing Defendant's argument to be~~ As just mentioned, Defendant's Request for Reconsideration and supporting papers clarified the relevant analysis and the relationship of certain of the uncontroverted facts that were established by Defendant's original filing. Even in the Court's original Order denying the motion, the Court noted that Defendant's original arguments could be construed to include that the term BRUX is generic as applied to Plaintiff's product and thus Plaintiff's mark is weak~~, such a conclusion is insufficient without a~~. As set forth below, Defendant's Request for Reconsideration and supporting papers further clarified the relationship of the uncontroverted facts as they apply to that factor, and included an express discussion of the other seven factors. ~~These~~ (as well as highlighting some of the arguably at least "implicit" discussion of some of those factors that was included in Defendant's original filings). In addition, and as noted above, Defendant's Request confirmed that the Ninth Circuit's "eight factors" are not a rote checklist, and should be viewed as guideposts rather than rigidly weighed.

For clarity, the Court sets forth all eight factors and related analysis and material facts here:

### [1] strength of the mark

The uncontroverted facts establish that the terms BRUX and BRUXER are generic as applied to the relevant products. Among other ~~factors~~things (and just as the parties did here), many third parties have provided products "for bruxers" and have adopted "BRUX" trademarks for those "bruxer" products. Many of those third parties did so far in advance of the current parties' relatively recent usage,

some having used their BRUX trademarks for several decades.8  Many of those third parties registered their BRUX trademarks with the USPTO.  Defendant provided an exemplary list,9 which is a public record and also was uncontroverted by Plaintiff.

One of those federally-registered trademarks, DR. BRUX, was even registered for "dental crowns," the very products at issue in the present lawsuit.10   Plaintiff asserted incorrectly in its opposition brief that:

 "Until PLAINTIFF adopted and began using its trademark BRUXZIR®, no one had used the term BRUX or BRUXER in a trademark for a dental restoration product.  The various examples referred to in DEFENDANT'S Motion documents relate to products designed to inhibit or prevent nocturnal grinding of the teeth, not to crowns, bridges, etc." Opp. p. 14, l. 25 through p. 15, l. 2.

Plaintiff's assertion is false, based on the DR. BRUX registration.  Although Plaintiff's counsel attempted at oral argument to discuss details of an alleged investigation that Plaintiff and/or its counsel had undertaken of that DR. BRUX registration and its actual use, Plaintiff had not earlier mentioned that point in its Opposition or in any other manner, and at NO time did Plaintiff present any actual

---

8 Uncontroverted Fact No. 18:        For decades prior to Glidewell adopting its BruxZir trademark, other companies in the dental industry have been using the generic term BRUX within their own trademarks for their own products "for bruxers."

9 For example, Adnan Decl., Ex. F included the following registered "BRUX" trademarks:

| Trademark | PRIORITY DATE (Earliest Filing Or Use Date) |
|---|---|
| BRUX-EZE | 1985 |
| BRUX-EZE | 1986 |
| BRUXCARE | 1997 |
| BRUXGUARD | 1997 |
| BRUXGUARD | 2003 |
| DR. BRUX | 2006 |
| BRUX-INDICATOR | 2006 |

10 U.S. Trademark Reg. No. 3,775,126 for the trademark "DR. BRUX" was filed in May 2007, and alleges first use in October 2006, on (among many other goods) dental crowns.  KDA's Memo in Supp., p. 5, l. 24; Adnan Decl., p. 9-10.

---

evidence at any time that would establish a "genuine issue of material fact" on that point. Indeed, Defendant's counsel responded on this issue at oral argument both by objecting to Plaintiff's counsel's unsupported comments, and by providing to the Court and opposing counsel the relevant treatise excerpt from Professor McCarthy, indicating the weight to be given to such third party registrations. According to Prof. McCarthy, such registrations are normally presumed to be in use at the time of suit; the rule is that courts will not refuse to assume that a third party registration is "used." McCarthy on Trademarks and Unfair Competition § 11:89. Although courts do not normally assume that third party registrations are in extensive use, that is not necessary for the present decision. Given the many other BRUX trademarks that predate Plaintiff's and Defendant's respective BRUX marks, the DR. BRUX registration is sufficient to support the Court's presumption (unrebutted by Plaintiff) that the DR. BRUX mark was used in SOME degree, some three years prior to Plaintiff's adoption of BRUXZIR, on the same products: dental crowns.

Thus, despite extensive sales and advertising, Plaintiff's mark is weak, at least in the current context (in which the Defendant is using a substantially different mark, and the only "common" parts of the marks are each generic – BRUX/BRUXER – and therefore available for all competitors to use). In other words, although Plaintiff may be in a position to challenge and stop third parties who use Plaintiff's exact mark BRUXZIR (as well as some scope of marks that are relatively more similar to BRUXZIR than is Defendant's KDZ BRUXER), the differences in those marks (BRUXZIR vs. KDZ BRUXER) and the other factors and uncontroverted facts discussed herein preclude a finding that Plaintiff's mark is sufficiently "strong" to cover Defendant's KDZ BRUXER mark.

### [2] proximity of the goods

The uncontroverted facts establish that the relevant goods are at the very least

similar, and for purposes of its ruling (and consistently with the requirements for this Court's consideration of motions for summary judgment), the Court finds that in the light most favorable to Plaintiff, the goods are identical (notwithstanding any differences in quality and/or materials that may exist between the parties' respective goods).

### [3] similarity of the marks

The uncontroverted facts establish that there are significant differences between the marks,[11] and the Court finds that those differences by themselves are sufficient to avoid any likelihood of confusion among the relevant customers.

In addition, and although the Court's ruling today stands independently from this further point, Plaintiff apparently was so concerned about those substantial differences between the marks that Plaintiff repeatedly and misleading wrote in Plaintiff's opposition brief that Defendant's trademark was ONE word (KDZBRUXER), rather than TWO separate words (KDZ BRUXER).  Because summary judgment requires that there be no genuine issue of material fact, the Court expressly finds that the Defendant's trademark is two separate words (KDZ BRUXER), based on all the evidence presented to the Court (including U.S. government public records from Defendant's application to register the mark KDZ BRUXER with the USPTO, and all of Plaintiff's own relevant writings prior to filing that opposition brief).  The Court further holds that Plaintiff's Opposition fails to raise a genuine issue of material fact in that regard.

---

11 See, for example, Uncontroverted Fact No. 51:     There [sic] parties relevant trademarks differ in at least the following ways:
•       KDA adds the three letters "KDZ" as a separate word at the beginning of KDA's trademark KDZ BRUXER, whereas Glidewell's is a single word trademark BruxZir.
•       KDA's trademark has five syllables (K – D – Z – Brux - er), whereas Glidewell's has only two.
•       Glidewell's trademark is seven letters long, whereas KDA's total mark is nine letters, and the individual words within KDA's trademark are three letters and six letters long.
•       Glidewell's trademark uses a pair of letters in its trademark that is not found in KDA's trademark:  "ZI".

### [4] evidence of actual confusion

There is no evidence before the Court of any actual confusion.  As noted above, in response to Defendant's motion, Plaintiff had a duty to come forward with any such evidence and did not do so.  Accordingly, the Court holds that this factor weighs against any likelihood of confusion.

### [5] marketing channels used

The uncontroverted facts indicate that the marketing channels are at least similar.12   The Court finds that the marketing channels factor weighs at least slightly in favor of finding a likelihood of confusion.

### [6] type of goods and the degree of care likely to be exercised by the purchaser

There does not appear to be any dispute that these zirconia dental crowns are relatively expensive goods,13 and that the purchasers are dental professionals who are likely to exercise great care in making the relevant purchasing decisions.14  Among other things, and although this is not necessary for the Court's ruling, it

---

12 For example:
Uncontroverted Fact No. 1.          Plaintiff Glidewell and Defendant KDA are competitors in the dental laboratory business.
Uncontroverted Fact No. 2.          Glidewell and KDA sell dental restorations such as crowns and bridges,
Uncontroverted Fact No. 3.          Glidewell and KDA sell those dental restorations to dentists and other dental professionals.
Uncontroverted Fact No. 19.          The relevant market into which the parties sell the products at issue in this lawsuit is the dental profession or industry (dentists and their offices, dental surgeons, and the like.)
Uncontroverted Fact No. 31.          Both of the parties in this lawsuit are dental laboratories who, among other things, receive and fill those crown/restoration orders from dentists.
Uncontroverted Fact No. 32.          Neither of the parties markets its crowns or restorations to any appreciable degree to persons outside of the dental profession or industry.
Uncontroverted Fact No. 33.          Neither of the parties sells its crowns in any appreciable amount to persons outside of the dental profession or industry.
13 Plaintiff represents that, over the past two and one-half years, its BRUXZIR products have been its most successful restoration products in the company's forty-two year history, and that since beginning sales of those products in June, 2009, Glidewell Lab's gross sales of BRUXZIR® restorations has exceeded 67 million dollars in the United States and around the world..  Opp. at p. 5.
14 Again, see the preceding footnotes for uncontroverted facts confirming that the purchasers are dental professionals.  In addition, Glidewell admits that the parties primarily sell to dentists, advertise in dental industry publications, and show their products at dental industry trade shows (Adnan Decl., Ex. D, including especially Glidewell's Complaint, par. 2).

---

seems self-evident that dentists are careful in making these purchasing decisions, because the quality of the dental restoration product is critical to the purchaser's (i.e., the dentist's) success in his or her dental practice.  The dentist's purchase is being made on behalf of the dentist's patient (rather than for the dentist himself).15  Thus, the purchaser is likely to exercise GREAT care in selecting the restoration product/source, because if the dentist selects a restoration that is unsatisfactory, the dentist's customer presumably will be dissatisfied and potentially cause a negative impact on the dentist's reputation, not just for that patient but for any potential referrals from that patient and more generally/broadly.

### [7] defendant's intent in selecting the mark;

Even in the light most favorable to Plaintiff, Defendant's "intent" in selecting its KDZ BRUXER mark cannot be said to be to cause confusion; in any case, Plaintiff did not present any evidence on that issue.  Instead, Defendant's selection of a generic term (BRUXER) as part of its trademark KDZ BRUXER appears to the Court to be the same approach other competitors in this industry have used for decades,16 and indeed appears to be the same approach Plaintiff admits it used in selecting the generic term BRUX as part of Plaintiff's BRUXZIR trademark.  Opp. at p. 15, l. 4-6.

### [8] likelihood of expansion of the product lines.

This factor does not appear to weigh either way as to likelihood of confusion.  As noted above, the Court finds (for purposes of this Order) that in the light most

---

15 For example:
Uncontroverted Fact No. 29.          For bruxers with a tooth that is ground down and/or cracked, dentists sometimes prepare and install a dental crown or similar dental restoration (such as a bridge, etc.).
Uncontroverted Fact No. 30.          A common process used by dentists in connection with such crowns and restorations includes ordering the crown/restoration to be made by a dental laboratory.
Uncontroverted Fact No. 31.          Both of the parties in this lawsuit are dental laboratories who, among other things, receive and fill those crown/restoration orders from dentists.
16 See, for example, Uncontroverted Fact No. 18.     For decades prior to Glidewell adopting its BruxZir trademark, other companies in the dental industry have been using the generic term BRUX within their own trademarks for their own products "for bruxers."

favorable to Plaintiff, the goods are identical.  Accordingly, "expansion" of the parties' product lines does not appear to be relevant to the Court's considerations.  These other factors discussed above can significantly influence the outcome of this case.  See e.g., Dranoff-Perlstein Associates v. Sklar, 967 F.2d 852, 862 (3d Cir. 1992) (noting that the word "COLA" is generic as applied to certain beverages, but that the marks "TAKA COLA," "CLEO COLA," and "CUP–O–COLA" have been held to be confusingly similar to "COCA–COLA" and thus infringing, whereas the marks "DIXI–COLA," "RONRICOLA," and "POLAR COLA" have been held not to be confusingly similar to "COCA–COLA"). ~~Thus, Defendant has not~~Thus, taking into account all of the foregoing, including the further details and clarification presented in its Request for Reconsideration, the Court holds that Defendant has met its burden on summary judgment to show an absence of evidence that there is likelihood of confusion between the parties' marks.

**c. Alternatively, Defendant has ~~not~~ established a classic fair use defense**

Under the "classic fair use" doctrine, a defendant is not liable for trademark infringement where the defendant "use[s] a descriptive term in good faith in its primary, descriptive sense other than as a trademark." See *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1150-51 (9th Cir. 2002); 2 McCarthy on Trademark and Unfair Competition § 11:45 (4th ed.).  To establish a classic fair use defense, a defendant must prove that its use of the term present in the plaintiff's mark was: (1) not a use "as a trademark or service mark"; (2) done "fairly and in good faith"; and (3) "[o]nly to describe its goods or services."  *Cairns*, 292 F.3d at 1150-51.  ~~Although~~

First, it is uncontroverted that Defendant is not using Plaintiff's entire BRUXZIR trademark.  Instead, the only "commonality" between the parties' marks is the four letters "BRUX" that, by themselves form the generic term BRUX (as noted above).

Second, it is uncontroverted that Defendant actually is using a DIFFERENT generic term, BRUXER.  Although there are four letters common to those two words (BRUX and BRUXER), and there is an obvious relationship between the two words based on the condition of bruxism from which they both derive, the fact remains that Defendant is not using BRUX by itself, which distinguishes it from Plaintiff's use of BRUX in combination with the "ZIR" portion that signals consumers that the products are made from "zirconia."

Third, although Defendant argues that bruxer is a generic term as applied to certain products, Defendant also clarifies that it is "not arguing that [Defendant's] mark KDZ BRUXER is . . . generic." Reply at 1. ~~Thus, while it is~~In its original Order, the Court stated that the Court was unclear as to what Defendant's argument is, but that the argument apparently ~~is~~was not the classic fair use defense.

In its request for the Court's reconsideration of the matter, however, Defendant suggests that Defendant's initial filings may not have been sufficiently clear as to a material fact that is important to this point, and that consequently the Court may have failed to properly consider that material fact.  , although Defendant is "not arguing that [Defendant's ENTIRE] mark KDZ BRUXER is . . . generic" (Order, p. 11, l. 9-12), Defendant IS arguing that the BRUXER portion of Defendant's KDZ BRUXER mark is generic, and therefore Defendant's use of that generic term within Defendant's trademark IS "fair use" under the relevant case law. More specifically, Defendant adopted the generic term BRUXER within its KDZ BRUXER mark in the same "fair use" manner that Plaintiff and the many previous third party BRUX registrants (see above) had done with their respective marks. Plaintiff presented no evidence that Defendant's adoption of the BRUXER portion of its mark was done in any manner other than "fairly and in good faith", and that the BRUXER portion of Defendant's mark is NOT itself used as a trademark or

service mark, but instead "[o]nly to describe its goods or services."

As further evidence on this point, Defendant's application to register its KDZ BRUXER mark included a disclaimer of any exclusive right to use BRUXER apart from the mark KDZ BRUXER.  At oral argument, Defendant's counsel provided to the Court and opposing counsel a copy of Defendant's pending application to register KDZ BRUXER and Defendant's two recently-issued registrations for its two other "KDZ" trademarks, and pointed out and discussed the disclaimer language that was included in each of those and its impact.

The Court finds that factual support and analysis to be persuasive, and so holds alternatively that Defendant has established a classic fair use defense, and that such defense supports the Court's granting of summary judgment on the present motion.

### d.  Conclusion

In sum, Defendant has ~~not~~ met its burden on summary judgment.

- First, Defendant has ~~not~~ shown that, in the dental profession marketplace and for products "for bruxers," the terms BRUX and BRUXER are generic (as evidenced by the fact, among others, that many third parties have incorporated them into their own trademarks for products "for bruxers" for many decades prior to either Plaintiff or Defendant doing so).

- Second, Defendant has shown that Plaintiff believes that its BRUXZIR trademark gives Plaintiff the right to stop any third party competitor (including Defendant) from using those generic terms BRUX and/or BRUXER in any form for competing products "for bruxers," and that Plaintiff has exercised that "right" repeatedly to stop, among others, the use of the trademarks BRUX, RBrux, and Z-Brux by third party competitors.  The Court's holding in that regard

includes a finding that Plaintiff's rights in its BRUXZIR trademark are NOT so broad, and at the very least that Plaintiff's trademark rights do NOT include the right to have stopped the third party use of BRUX by itself.

- Third, and based in part on the Court's finding that BRUX and BRUXER are generic terms/words within the relevant marketplace, Defendant has shown that Plaintiff has failed to establish at least one element of trademark infringement re, namely, that: (1) Plaintiff's mark is protected; or (2) there is not a likelihood of confusion between the parties' marks. Second

Fourth, and alternatively to the Court's holding in the previous sentence, Defendant has not shown that its use of a the generic portion of Plaintiff's mark (which also is a generic portion of many other prior trademarks in the relevant marketplace) satisfies the three elements of the classic fair use doctrine.

To be clear, the Court is not holding that the facts of this case preclude summary judgment for Defendant. The Court is merely holding that Defendant's failure to cite to relevant law — that is, cases analyzing an infringement claim where plaintiff alleges that its composite mark is infringed by defendant's composite mark and the marks share only a portion of letters — prevents this Court from granting summary judgment. Given that the Court anticipates future filings by the parties, the Court provides the following advice. Future motions brought by either party should cite Ninth Circuit cases for basic propositions of law, such as the elements of a trademark infringement claim. Out-of-circuit cases are useful for factual analogies, especially where there are no factually analogous cases within the relevant circuit, but a citation to an out-of-circuit case for a well-settled proposition of law suggests that the relevant circuit's law is inconsistent with the cited authority. See Opp'n at 12 (citing First Circuit case stating the factors considered to determine likelihood of confusion); 4 McCarthy on Trademarks and Unfair Competition § 24:30 (4th ed.) ("[E]ach of the 13 federal circuit courts of appeal has developed its own version of the list [of factors showing likelihood of confusion]. . . . The litigating attorney is well advised to focus upon the list used in a particular circuit and not rely upon a list from a 'foreign' circuit."). In addition, the Court is not inclined to entertain future motions brought by either party that simply attach, as an exhibit, a list of cases finding various marks generic or descriptive. The Court doubts that the parties would appreciate an order that simply states "Motion DENIED" and attaches a list of cases, without analysis. The Court asks that the parties show it the same courtesy that the Court has shown them in this Order by citing relevant Ninth Circuit case law and, if a factual analogy or distinction is helpful, including a parenthetical to explain why the cited case is factually analogous to or distinguishable from the parties' position.

- In short, this is trademark law, not rocket science. In their future motions, the parties are highly encouraged to cite relevant case law and to analogize or distinguish factually similar cases., and therefore Defendant's trademark KDZ BRUXER constitutes fair use of the term BRUX and/or BRUXER.