Lynda J. Zadra-Symes (SBN 156,511)
Lynda.Zadra-Symes@kmob.com
Jeffrey L. Van Hoosear(SBN : 147,751)
Jeffrey.VanHoosear@kmob.com
David G. Jankowski (SBN 205,634)
David.iankowski@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Defendant/Counter-Plaintiff,
KEATING DENTAL ARTS, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JAMES R. GLIDEWELL DENTAL CERAMICS, INC. dba GLIDEWELL LABORATORIES,<br><br>            Plaintiff,<br><br>    v.<br><br>KEATING DENTAL ARTS, INC.<br><br>            Defendant.<br><br>AND RELATED COUNTERCLAIMS. | Civil Action No. SACV11-01309-DOC(ANx)<br><br>**DEFENDANT KEATING DENTAL ARTS, INC.'S OPPOSITION TO JAMES R. GLIDEWELL DENTAL CERAMICS, INC.'S *EX PARTE* APPLICATION TO AMEND SCHEDULING ORDER AND FOR ADDITIONAL DISCOVERY**<br><br>Honorable David O. Carter |

## TABLE OF CONTENTS

Page No.

I.    INTRODUCTION ............................................................................. 1

II.    FACTS ................................................................................................ 2

III.   GLIDEWELL IS NOT ENTITLED TO *EX PARTE* RELIEF ........................................................................................... 7

     A.   Glidewell Created the Allegedly Exigent Circumstances ............... 7

     B.   Glidewell has Failed to Show That it Could Not Request an Extension of Time Before Discovery Expired .................................. 8

IV.  GLIDEWELL HAS FAILED TO SHOW GOOD CAUSE TO AMEND THE SCHEDULING ORDER ............................. 10

     A.   Glidewell's Admitted Lack of Diligence Precludes A Finding of Good Cause To Amend ................................................... 11

     B.   Glidewell Has Had Sufficient Opportunity to Take Discovery on Each of Keating's Amendments to its Initial Disclosures ................................................................... 13

     C.   Keating's Counterclaim To Cancel Glidewell's Trademark Does Not Add New Issues Requiring Further Discovery ............... 14

     D.   Glidewell's Late Substitution of Counsel Does Not Justify Continuance Of The Scheduling Order Deadlines ........................ 16

V.   GRANTING GLIDEWELL'S APPLICATION WILL SUBSTANTIALLY PREJUDICE KEATING ......................................... 17

VI.  CONCLUSION ................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

<u>Page No(s).</u>

*Casey v. Alberston's Inc.*,
    362 F.3d 1254 (9th Cir. 2004) ................................................................. 11

*Chapman v. 7-Eleven, Inc. et al.*,
    2012 U.S. Dist. LEXIS 154903 ....................................................... 11, 12

*Cotton v. City of Eureka*,
    C 08-4386 SBA, 2010 U.S. Dist. LEXIS 65528 (N.D.
    Cal. June 19, 2010) ................................................................................. 10

*Dalia Rashdan v. Marc Geissberger, et al.*,
    2012 U.S. Dist. LEXIS 21595 (C.D. Cal. 2012) ........................... 10, 12, 16

*Interactive Health LLC v. King Kong USA, Inc.*,
    2008 U.S. Dist. LEXIS 123560 (C.D. Cal. July 24, 2008) ...................... 11

*Johnson v. Mammoth Recreations, Inc.*,
    975 F.2d 604 (9th Cir. 1992) ................................................................. 11

*Latshaw v. Trainer Wortham & Co.*,
    452 F.3d 1097 (9th Cir. 2006) ................................................................. 11

*Link v. Wabash R. Co.*,
    370 U.S. 626, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962) ........................ 11, 12

*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*,
    218 F.R.D. 667 (C.D. Cal. 2003) ............................................................. 12

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,
    883 F. Supp. 488 (C.D. Cal. 1995) ............................................................. 7

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
    507 U.S. 380, 113 S. Ct. 1489, 123 L.Ed. 2d 74 (1993) ........................ 11

*Quiksilver, Inc. v. Kymsta Corp.*,
    466 F.3d 749 (9th Cir. 2006) ................................................................. 14

*Spellbound Dev. Group, Inc. v. Pac. Handy Cutter, Inc.*,
    2011 WL 1810961 (C.D. Cal. May 12, 2011) .................................... 15, 16

## TABLE OF AUTHORITIES
(continued)

<u>Page No(s).</u>

*Tie Tech, Inc. v. Kinedyne Corp.*,
    296 F.3d 778 (9th Cir. 2002) ....................................................................... 14

*Wang Hartman Gibbs & Cauley, PC v. Silver Point Capital,*
    *L.P.*,
    2009 WL 3517674 (C.D. Cal. Oct. 26, 2009) .......................................... 16

*Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove,*
    *Inc.*,
    419 F.3d 925 ................................................................................................. 14

*Zivkovic v. S. Cal. Edison Co.*,
    302 F.3d 1080 (9th Cir. 2002) ..................................................................... 11

*Zobmondo Entm't, LLC v. Falls Media, LLC*,
    602 F.3d 1108 (9th Cir. 2010) ..................................................................... 14

Defendant Keating Dental Arts Inc. ("Keating") hereby submits this opposition to the *ex parte* application of Plaintiff James Glidewell Dental Ceramics Inc. ("Glidewell") to amend the Court's Scheduling Order to provide two additional months of discovery.

# I. <u>INTRODUCTION</u>

Glidewell is seeking *ex parte* relief asking for two additional months of discovery purportedly to address allegedly "late" disclosures of Keating in the form of a new counterclaim and two amended initial disclosures. In fact, it is apparent that Glidewell's application is motivated not by Keating's disclosures, but rather by Glidewell's sudden feelings of regret over the performance of its litigation counsel, Leonard Tachner, and its clear desire for a "do over" with new counsel.

In addition to serving the Court with this *ex parte* application, Glidewell's new counsel has served Keating ***this week*** with:

- Glidewell's First Amended Initial Disclosures, identifying twenty new fact witnesses; eight additional categories of documents; and ten areas for computation of damages;

- An (untimely) Rebuttal Report of Professor Franklyn to the opening expert report of Dr. Eggleston;

- An (untimely) Rebuttal Report of Professor Franklyn to the rebuttal expert report of Ms. Boatwright;

- An (untimely) Opening Report of Goldstein; and

- An (untimely) Expert Disclosure of Dr. Michael DiTolla (a Glidewell employee).

(*See* Jankowski Decl. ¶21.)[1]

---

[1] The Declaration of David G. Jankowski ("Jankowski Decl.") is filed concurrently herewith.

In fact, neither Keating's new counterclaim nor its amended initial disclosures added information that justifies adding two additional months of discovery. Keating's amended disclosures merely supplemented an earlier list of dentists who use the terms "bruxer" and "BruxZir," thus providing Glidewell with the same type of information it had known since August, long before discovery cutoff.

Furthermore, contrary to Glidewell's new characterization, Mr. Tachner has been active as litigation counsel for Glidewell during this case. He served Keating with broad-ranging discovery in the form of interrogatories, requests for production, requests for admission, and notices of deposition. Glidewell now attempts to rely on the purported lack of diligence and attention by Mr. Tachner, its own counsel, as grounds for its need for more time. Yet a party's dissatisfaction with its own litigation counsel that develops in the days before discovery cutoff is not a proper basis for seeking additional time for discovery.

Even if Mr. Tachner had not been diligent in litigating the case for Glidewell, that too would be fatal to Glidewell's application. The standards for *ex parte* relief and amending the Scheduling Order both require diligence on the part of the moving party. Because Glidewell cannot satisfy the requirements for *ex parte* relief or show good cause for amending the Scheduling Order, this Court should deny Glidewell's application in its entirety.

## II. **FACTS**

This trademark infringement lawsuit was filed by Glidewell, the largest dental laboratory in the U.S., with recent revenues exceeding $250 million per year. (Jankowski Decl., Ex. 13 at 4.) Keating Dental Arts is modest in size, and is one of many modest to small-sized dental laboratories that have received cease-and-desist letters from Glidewell based on the BruxZir mark. (*Id.*, Exs. 14–16.)

The Court issued its Scheduling Order on December 16, 2011, setting a discovery cutoff deadline of October 29, 2012. (Docket No. 15.) Glidewell's

counsel and Keating's prior counsel jointly proposed that date in the parties' Joint Report filed November 28, 2011. (*See* Docket No. 11.)  Despite being aware of this deadline for nearly eleven months, Glidewell did not inform Keating of its desire for an additional two months of discovery until October 29, 2012, the very last day of discovery.

Leonard Tachner, Glidewell's litigation counsel, served Keating with interrogatories in March 2012, and Keating served responses to those interrogatories in April 2012.  (*Id.*, Ex. 2.)  Mr. Tachner served Keating with a first Request for Production of Documents and Things in April 2012, and Keating served objections to those requests in May 2012.  (*Id.*, Ex. 3.)

Keating began producing documents in this case in May 2012. (Jankowski Decl. ¶ 2.)   The early documents included documents relating to Keating's marketing and sales of its KDZ Bruxer full contour zirconia crowns.  On August 13, 2012, Keating produced to Glidewell more than fifty prescription forms from Keating's dentist customers that included misspellings of the KDZ Bruxer name. (*Id.*)  The parties interpret these misspellings in different ways.  To Keating, the misspellings reflect the dentists' use of "bruxzir" or "BruxZir" (or variations thereon) as a generic reference to a monolithic zirconia crown for bruxers.  To Glidewell, the misspellings reflect the dentists' intention to order Glidewell's name brand product.  The parties' interpretations of these prescription forms were evident back in August when they first arose in the case.

On August 20, 2012, Mr. Tachner, on behalf of Glidewell, served an interrogatory response relying on a misspelling of KDZ Bruxer (as "BruxZir") by Keating's customer Dr. Thomas Nussear on a prescription form as an alleged example of confusion between Glidewell's mark and Keating's mark.[2]  (*Id.*, Ex. 3

---

[2]  Glidewell filed a redacted version of this prescription form with the Court when opposing Keating's motion for leave to file a Second Amended Answer and Counterclaims.  (See Docket No. 60-1 at p. 5 of 7)

at 8.)  Glidewell recently repeated this position on October 10, 2012 and October 15, 2012, in its responses to Keating's Second and Third Request for Production, respectively.  (*Id.*, Ex. 8 at 9 & Ex. 9 at 7.)

On August 23, 2012, Keating relied on these same prescription forms as evidence of genericness of the mark BruxZir, and it identified in its Amended Initial Disclosures thirteen dentists that had written "BruxZir" (or variations thereof) on their prescription forms to Keating.  (Graves Decl., Ex. A)[3]

On September 15, 2012, both parties timely submitted opening expert reports.  Keating submitted a report from Dr. David Eggleston, a practicing prosthodontist with over forty years of dental experience. (*See* Docket No. 62-6 (Ex. I to the Van Hoosear Decl.).)  Dr. Eggleston's report included his opinion that the terms "bruxer crown" and "BruxZir crown" are used generically in the dental industry to refer to a full contour zirconia crown.  Glidewell submitted a report from Professor David Franklyn, a law professor who teaches trademark law at University of San Francisco law school.  (Jankowski Decl., Ex. 4)

On September 21, 2012, Keating served its Supplemental Initial Disclosures by identifying eight additional dentists that had written "BruxZir" (or variations thereof) on their prescription forms to Keating.[4] (Jankowski Decl., Ex. 5)  Keating's September 21 supplementation also identified two additional witnesses: expert witness David Eggleston and Carol Frattura, the President and CEO of Showcase Dental Laboratories, a competitor of both Glidewell and Keating.  At the time Keating added Dr. Eggleston and Ms. Frattura to its initial disclosures, both persons were already known to Glidewell.  Dr. Eggleston submitted an opening expert report on September 15, 2012, and Ms. Frattura was the recipient of a cease-and-desist letter from Glidewell dated January 2012.

---

[3] The Graves Decl. was submitted with Glidewell's *ex parte* application.

[4] Glidewell's *ex parte* application wholly ignores these disclosures from Keating.

Keating located a copy of the letter through an on-line search of the Internet; Glidewell later produced the letter in the case. (Jankowski Decl. ¶ 17; Ex. 17.)

Also on September 21, 2012, Glidewell served Keating with a round of discovery targeted at Keating's counterclaim that the BruxZir mark is invalid for genericness or descriptiveness. (*See* Docket Nos. 62-1 and 62-2 (Exs. F and G to the Van Hoosear Decl.).)  This discovery included requests for production and requests for admission.  (*Id.*)

On September 27, 2012, Keating served Second Amended Disclosures that identified one additional witness: Dr. Thomas Nussear, a dentist who had written "BruxZir" on his prescription form to Keating.  (*See* Graves Decl., Ex. B.) Keating's Second Amended Disclosures further clarified that the dentists, like Dr. Nussear, would testify to their "use of bruxer crown" in the dental industry.  At the time Keating added Dr. Nussear to its initial disclosures, he was already known to Glidewell, as Glidewell had identified him as an alleged example of confusion in its response to Keating's interrogatories. (Jankowski Decl., Ex. 3 at 8.)

On October 15, 2012, Keating timely submitted a rebuttal expert report from Lori Boatright, an experienced practicing trademark attorney.  (Jankowski Decl., Ex. 10.)  Glidewell did not timely submit any expert reports to rebut the opening report of Dr. Eggleston.  (Jankowski Decl. ¶ 10.)

On October 19, 2012, Keating served Third Amended Initial Disclosures that identified two additional witnesses: Lori Boatwright and Scott Hudson.  (*See* Graves Decl., Ex. B.)  At the time Keating added these witnesses to its initial disclosures, they were already known to Glidewell. Ms. Boatright was known to Glidewell because she had submitted a rebuttal expert report (the reason for her inclusion). Mr. Hudson was known to Glidewell because he was the recipient of a cease-and-desist letter from Glidewell dated August 7, 2012.  (Jankowski Decl., Ex. 18.)  Glidewell did not produce this letter to Keating until October 11, 2012.

1   (Jankowski Decl. ¶ 18.)   Keating's Third Amended Initial Disclosures also
2   identified two new categories of documents relied upon by Dr. Eggleston and
3   already produced in the case: advertisements by third parties, including dental
4   laboratories that do business with Glidewell Laboratories, that show the offering
5   for sale, and sale, of commercially available products for the dental industry using
6   brand names that include "Brux," "Zir," or variations thereon that do not originate
7   from Glidewell.

8       During the month of October, the parties collectively took twelve
9   depositions in this case.   Mr. Tachner was the defending attorney in eight of the
10  depositions and he was the examining attorney in four of the depositions.
11  (Jankowski Decl. ¶ 19.)  During the deposition of Dr. Eggleston, which took place
12  on Monday, October 22, 2012, Mr. Tachner examined Dr. Eggleston on the bases
13  for his opinion that the terms "bruxer crown" and "BruxZir crown" are used by
14  those in the dental industry to refer to a full contour zirconia crown.  (*Id.*)

15      On Thursday, October 25, 2012, Mr. Tachner defended the deposition of
16  Keith Allred, Glidewell's Director of Professional Services and General Counsel,
17  who was providing testimony on behalf of Glidewell pursuant to Fed. R. Civ. P.
18  30(b)(6). (Jankowski Decl., Ex. 12 at 5–6.)  During the deposition, Mr. Allred
19  testified that he personally handled the filing and prosecution of trademark
20  applications for Glidewell, including the application on the mark BruxZir that
21  subsequently issued as the subject matter of this lawsuit. (*Id.*, Ex. 12 at 21–30.)

22      On Monday, October 29, 2012, new counsel for Glidewell contacted
23  counsel for Keating for the first time requesting an additional two months of
24  discovery.  Prior to that communication, Glidewell had never indicated that more
25  time might be needed.  (Jankowski Decl. ¶ 20.)
26  / / /

27

28  / / /

### III.  **GLIDEWELL IS NOT ENTITLED TO *EX PARTE* RELIEF**

*Ex parte* applications are to be used solely for extraordinary relief. Glidewell's request to unilaterally revise the Scheduling Order based on substitution of new counsel and the alleged lack of diligence of its prior counsel, Mr. Tachner, does not qualify for extraordinary relief.  The exacting standard for ex parte relief is set forth in *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995), which requires a showing that (1) the applicant would be irreparably prejudiced if its *ex parte* application to delay were heard according to regular noticed motion procedures and (2) that the applicant was without fault in creating the putative crisis that it urges requires ex parte relief. *Mission Power*, 883 F. Supp. At 492.

Glidewell's Application falls woefully short of meeting this standard. Glidewell has not even attempted to argue that it was without fault in creating the putative crisis that it urges requires *ex parte* relief.  Indeed, Glidewell admits that it has caused the crisis by choosing an attorney, Mr. Tachner, who Glidewell's new counsel now alleges did not diligently prepare Glidewell's case.   This purported excuse does not satisfy the *Mission Power* factors for *ex parte* relief.

### A.   **Glidewell Created the Allegedly Exigent Circumstances**

Glidewell waited until shortly before Midnight on the discovery cutoff date, October 29, 2012, to file its Application, the same day that it seeks to substitute in new litigation counsel into the case.  The only reason the circumstances are "exigent" is because Glidewell's new counsel appears to have identified discovery, on the very last day of discovery, that it would like to take that was not taken by Glidewell's old counsel.  It is difficult to imagine a more clear example of Glidewell creating its own emergency.

Through its original litigation counsel, Glidewell had a full opportunity to take extensive fact discovery in this case, and it did so.  Glidewell served Keating with twenty five interrogatories, two rounds of requests for production, and a

number of requests for admission.  Glidewell deposed Keating's President and Chief Executive Officer, its Chief Financial Officer, and its General Manager. Keating has expended significant financial resources responding to Glidewell's discovery and defending itself in this lawsuit.

Through its original litigation counsel, Glidewell has also had a full opportunity to take expert discovery in this case.  The expert report deadlines were agreed to by Glidewell and are set forth in the parties' November 28, 2011 Joint Report. (*See* Docket No. 11.)  Opening and rebuttal expert reports were due on September 15, 2012 and October 15, 2012, respectively.  Glidewell has been aware of these deadlines for over eleven months.  Both parties timely served expert reports on September 15, 2012.  Rather than an industry expert, Glidewell chose to serve an expert report of a legal expert, David Franklyn.  Mr. Franklyn's expert report, signed on September 15, 2012, specifically addressed the issues of genericness and descriptiveness that relate to Keating's affirmative defenses and counterclaim for cancellation of Glidewell's BruxZir trademark registration.  On October 22, Mr. Tachner deposed Dr. Eggleston on the opinion set forth in his opening report.  Keating timely served a rebuttal report of Ms. Boatright—a lawyer with experience in USPTO trademark practice and procedure—on October 15, 2012.  Glidewell's failure to submit a timely rebuttal report does not provide grounds for an extension of the Scheduling Order.[5]

**B.**   **Glidewell has Failed to Show That it Could Not Request an Extension of Time Before Discovery Expired**

In its Application, Glidewell fails to explain why it waited until the final day of discovery, after more than ten months of discovery had expired, to seek

---

[5] On October 29, 2012, shortly before Midnight, Glidewell's new counsel served Keating with three untimely rebuttal expert reports and an untimely expert disclosure from a Glidewell employee, Dr. Michael DiTolla. (Jankowski Decl. ¶ 21.)  Keating reserves its right to move at the appropriate time to exclude these reports as untimely.

extension of the deadlines set forth in the Court's Scheduling Order.

The Court's December 16, 2011 Scheduling Order is clear that discovery must be completed by the discovery cutoff date and that a continuance is unlikely.

> "The Court has established a cut-off date for discovery in this action. All discovery is to be completed on, or prior to, the cut-off date. Expert discovery must also be completed by the discovery cutoff date. Plan now to complete discovery on the schedule set; a continuance is *unlikely*."

(Emphasis in the original, page 2.)

> "A continuance of the Pretrial Conference at counsel's request or stipulation is *highly unlikely*.  Counsel should plan to do the necessary pretrial work on a schedule which will ensure its completion with time to spare before the Pretrial Conference. Failure to complete discovery work is not grounds for a continuance. The Court has a crowded docket and to displace another case already set for trial in favor of a case in which counsel have not been diligent in preparing their case would not be just."

(Emphasis in the original, page 3.)

In addition, in the Court's **Order Setting Scheduling Conference**, the Court stated:

> "The parties shall comply fully with the letter and spirit of Rule 26(a) and thereby obtain and produce most of what would be produced in the early stages of discovery, because at the Scheduling Conference the Court will impose tight deadlines to complete discovery." (page 2)

> "After the parties have selected these dates, ***continuances are rarely granted*** due to the Court's heavy case load and in fairness to other litigants before the Court."

(Emphasis in the original, page 3.)

The Court agreed to the October 29, 2012 discovery deadline proposed by Glidewell's counsel and Keating's former counsel in the Joint Rule 26(f) Report, granting the parties a generous ten months in which to conduct discovery, in addition to the time that had already elapsed since the parties' Rule 26(f) early meeting of counsel.

Here, Glidewell offers no reason why it could not request an extension before the discovery cutoff deadline.  Nor could it.  Glidewell has had ample opportunity to consider and make such requests.  Contrary to the assertions of Glidewell's new counsel, Glidewell's prior counsel has actively litigated this case and has served significant discovery requests, including on Keating's new counterclaim.  (Jankowski Decl., Exs. 1, 2, 13, 14; Docket Nos. 62-1 to 62-6.)

Glidewell's failure to plan ahead shows lack of diligence that bars modification of a court-ordered deadline even under the good cause standard that governs timely motions.  See *Dalia Rashdan (Mohamed) v. Geissberger*, 2012 U.S. Dist. LEXIS 21595, *6 (N.D. Cal. Feb. 17, 2012), citing *Cotton v. City of Eureka, No*. C 08-4386 SBA, 2010 U.S. Dist. LEXIS 65528, at *2 (N.D. Cal. June 19, 2010) (denying motion to extend discovery cut-off where defendant waited to the eleventh hour to seek to enforce subpoenas).

## IV.  GLIDEWELL HAS FAILED TO SHOW GOOD CAUSE TO AMEND THE SCHEDULING ORDER

"A Rule 16(b) scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril. . . . The district court's decision to honor the terms of its binding scheduling order does not simply exalt procedural technicalities over the merits of [Plaintiff's] case. Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.  Rule 16 was drafted to prevent this situation . . .'" (internal citation

1    omitted). *Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992);

2    *see also Chapman v. 7-Eleven, Inc.*, 2012 U.S. Dist LEXIS 154903 (C.D. Cal.

3    2012) (under Rule 16(b)(4), "[a] schedule may be modified only for good cause

4    and with the judge's consent.".)   "Rule 16(b)'s 'good cause' standard primarily

5    considers the diligence of the party seeking the amendment." *Johnson,* 975 F.2d

6    at 609.   In general, the "district court may modify the pretrial schedule 'if it

7    cannot reasonably be met **despite the diligence** of the party seeking the

8    extension." *Id.* (emphasis added) (quoting advisory committee notes to the 1993

9    amendments).  "[C]arelessness is not compatible with a finding of diligence . . . "

10   *Id.*  "If the moving party "was not diligent, the inquiry should end and the motion

11   to modify should not be granted." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080,

12   1087 (9th Cir. 2002) (quoting Johnson, 975 F.2d at 609).   See also, *Interactive

13   Health LLC v. King Kong United States, Inc.*, 2008 U.S. Dist. LEXIS 123560, *2

14   (C.D. Cal. July 24, 2008).

15   **A.**     **Glidewell's Admitted Lack of Diligence Precludes A Finding of Good

16           Cause To Amend**

17          Glidewell admits it has not been diligent (Glidewell's Memo. at 1), blaming

18   the lack of diligence on its original counsel, Mr. Tachner.  Yet relying on Mr.

19   Tachner's lack of diligence is fatal to Glidewell's application.  It has long been

20   the rule that the acts and omissions of an attorney are attributable to the client.

21   See *Link v. Wabash R. Co.*, 370 U.S. 626, 633, 82 S. Ct. 1386, 8 L. Ed. 2d 734

22   (1962); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380,

23   397, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993) (parties are "held accountable for

24   the acts and omissions of their chosen counsel"); *Casey v. Albertson's Inc.*, 362

25   F.3d 1254, 1260 (9th Cir. 2004) ("[a]s a general rule, parties are bound by the

26   actions of their lawyers"); *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097,

27   1101-102 (9th Cir. 2006) ("A party will not be released from a poor litigation

28   decision made because of inaccurate information or advice, even if provided by

-11-

an attorney."); *Dalia Rashdan*, 2012 U.S. Dist. LEXIS 21595 at *6 (finding that "Plaintiff has not comported herself diligently in prosecuting this action, and as such, has failed to demonstrate good cause for a modification to the court's pretrial scheduling order.").  Glidewell is bound by the acts of its lawyer, is considered to have notice of all facts known to the attorney, and is charged with knowledge of the case file—"including the case management dates set by the court." *Chapman*, 2012 U.S. Dist. LEXIS 154903 at *6 (citing *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 672-73 (C.D. Cal. 2003) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962)).

Glidewell voluntarily chose Mr. Tachner as its attorney in this action,[6] and Glidewell cannot now avoid the consequences of that choice.[7]  Moreover, Mr. Tachner has actively litigated this case, serving the usual discovery requests and taking and defending depositions.  To the extent that Glidewell now believes that Mr. Tachner failed to properly prepare its case during discovery, it could and should have made that assessment long ago when it still had time to substitute in new counsel that could conduct the discovery it deemed appropriate prior to the October 29, 2012, discovery cutoff.  "While [Plaintiff's prior counsel's] acts and omission may give rise to a claim of malpractice, they do not constitute good cause for purposes of a request to modify the Court's pretrial scheduling order." *Dalia Rashdan*, 2012 U.S. Dist. LEXIS 21595 at *10 (citing *Matrix Motor Co.*, 218 F.R.D. at 676-77; *see also Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1101 (9th Cir. 2006), (noting that an attorney's errors are "more appropriately addressed through malpractice claims" and not a motion to vacate

---

[6] Mr. Tachner has provided intellectual property legal services for Robin Carden, Glidewell's Vice President of Research and Development since the early 1990s. (Jankowski Decl., Ex. 7 at __.)  Mr. Tachner has provided intellectual property legal services for Glidewell since at least 2008.  (*Id.*)

[7] When Keating retained Knobbe Martens, and filed its counsel substitution on July 3, 2012, Glidewell could have retained a firm with more resources than Mr. Tachner (as Keating had done), but Glidewell failed to do so.

the judgment).

**B.    Glidewell Has Had Sufficient Opportunity to Take Discovery on Each of Keating's Amendments to its Initial Disclosures**

All of the purported "new material" which Glidewell cites in its Application was known to Glidewell with sufficient time for it to take discovery within the timeline set by the Court.  The only reason Glidewell is now arguing they need a chance to take discovery on these issues is because they failed to take discovery when it was proper.  This is not a sufficient reason to amend the Court's Scheduling Order.

As set forth above in the Facts section, Keating's First Amended Initial Disclosures, Supplemental Disclosures, Second Amended Disclosures, and Third Amended Initial Disclosures (collectively, "Amended Disclosures") identified twenty-six new witnesses.  Keating identified two of the witnesses because they are Keating's experts in the case (Dr. Eggleston and Ms. Boatright).  Keating identified two more of the witnesses because they are third party recipients of cease-and-desist letters from Glidewell for using marks with the term "Bruxer" that Glidewell deems confusingly similar to its mark.  Fourteen of the witnesses are dentists who are customers of Keating who have misspelled KDZ Bruxer on prescription forms that were produced to Glidewell in August 2012.[8]  Eight of the witnesses are dentists who are customers of Keating who misspelled KDZ Bruxer on prescription forms that were found by Keating in September 2012 and promptly produced to Glidewell (also in September 2012).[9]  Glidewell has indicated in its discovery responses that it was relying on these prescription forms

---

[8] Glidewell received notice of these fourteen dentists before it had noticed a single deposition in this case. (*See* Docket Nos. 62-3, 62-4, and 62-5.)

[9] Glidewell received notice of these eight dentists on the same day it noticed depositions for Keating's witnesses in this case. (*See* Docket Nos. 62-3, 62-4, and 62-5.)

as evidence of confusion. (Jankowski Decl., Ex. 3 at 8, Ex. 8 at 9 & Ex. 9 at 7.)

As is also set forth in the Facts section above, Keating's Amended Disclosures identified two new categories of documents in the form of advertisements by third parties, including dental laboratories that do business with Glidewell Laboratories, that show the offering for sale, and sale, of commercially available products for the dental industry using brand names that include "Brux," "Zir," or variations thereof. These third party documents were relied upon by Dr. Eggleston and were produced to Glidewell before Dr. Eggleston's deposition. To the extent Glidewell wished to take discovery on the documents or Dr. Eggleston's reliance upon them, it had the opportunity to do so.

**C.** **Keating's Counterclaim To Cancel Glidewell's Trademark Does Not Add New Issues Requiring Further Discovery**

Keating's counterclaim for cancellation of Glidewell's trademark registration for the mark BruxZir did not add new issues to the case calling for further discovery. Glidewell made this same argument in its unsuccessful opposition to Keating's Motion for Leave to File a Second Amended Answer and Counterclaims. As Keating explained in that Motion, the new counterclaim for cancellation is merely an additional remedy in the event Keating proves invalidity of Glidewell's mark, and in a trademark infringement action, the "validity of a trademark is 'a threshold issue' on which the plaintiff bears the burden of proof." *Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005 (quoting *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002)). As an accused infringer, Keating may defend itself by proving that a Federally registered mark is invalid by demonstrating that the term is generic, *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1114 (9th Cir. 2010), or descriptive without secondary meaning. *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 760 (9th Cir. 2006).

Glidewell's argument that it had no meaningful opportunity to propound

discovery concerning the new counterclaim is entirely without merit.  Glidewell in fact did propound discovery on the issue almost immediately after Keating filed its motion with the Court.  On September 21, 2012, Glidewell served its First Set of Requests for Admission and its Second Request for Production of Documents.  Even though these Requests were not timely served,[10]  Keating, in good faith, provided timely responses and produced responsive documents.  Each of these Sets of Requests addressed issues associated with the new counterclaim.  Furthermore, each deposition Glidewell took in this case took place **after** the Court granted Keating's Motion to Amend.   Thus, Glidewell had its full opportunity to address Keating's counterclaim at each deposition.

Glidewell's application argues that it did not know that it should have taken discovery on the issue of genericness or obtained surveys on that issue.  To the contrary, the discovery propounded by both parties shows that this is untrue.  Both parties included ***requests for surveys*** in their discovery requests to the other party.  (*See*, *e.g.*, Jankowski Decl., Ex. 8 at 11 and Ex. 13 at 6)  Glidewell retained a expert in trademark law, David Franklyn, who submitted his expert report on September 15 that specifically addresses the issues of genericness and descriptiveness and claims to have conducted extensive market research on those issues.  (Jankowski Decl., Ex. 4.)

Glidewell cites to two Central District of California cases for the broad proposition that adding a new counterclaim shortly before discovery cutoff warrants amendment of the scheduling order.  In fact, both cases are readily distinguishable.

In *Spellbound Dev. Group, Inc. v. Pac. Handy Cutter, Inc.*, 2011 WL 1810961 (C.D. Cal. May 12, 2011), the Plaintiff amended its complaint to add an

---

[10] These requests were served on Keating by mail on September 21, 2012, a week after the deadline set by the Court's Scheduling Order for serving written discovery requests.

1   additional defendant, and in answering the amended complaint the Defendant
2   added a counterclaim asserting a new patent that had just been granted shortly
3   before Plaintiff's amended complaint was filed.  The *Spellbound* Court agreed to
4   a schedule modification, explaining that "the counterclaim adds in an entirely
5   different patent to the case at a very late stage in the litigation process, and also
6   adds in an entirely new product." *Id.* at *3.  Here, in contrast, Keating's new
7   counterclaim involves genericness and descriptiveness issues that have been in the
8   case since its inception, and the factual issues for discovery are the same as those
9   involving Glidewell's claim of trademark infringement.

10          In *Wang Hartman Gibbs & Cauley, PC v. Silver Point Capital, L.P.*, 2009
11   WL 3517674 (C.D. Cal. Oct. 26, 2009), the plaintiff was granted leave to file a
12   First Amended Complaint and modification of its scheduling order because the
13   defendants produced documents during discovery that gave rise to an entirely new
14   cause of action.  It was this new discovery that led the court to grant the motion.
15   Even then, the *Wang Hartmann* Court cautioned that it was "a fairly close issue"
16   because some of the information leading to the new cause of action was
17   previously available.  *Id.* at *3.  Here, the issues and facts surrounding the new
18   counterclaim have been at issue in the case since the filing of the suit.

19   **D.     Glidewell's Late Substitution of Counsel Does Not Justify**
20   **        Continuance Of The Scheduling Order Deadlines**

21          Substitution of counsel on the discovery cutoff date is not sufficient
22   grounds to establish good cause.  *See*, *e.g.*, *Dalia Rashdan*, 2012 U.S. Dist.
23   LEXIS 21595 at *6.  Notably, on July 30, 2012, Keating substituted in Knobbe
24   Martens as new litigation counsel.  Keating did not seek an extension of the
25   discovery cutoff deadline.  Keating has also been very reasonable in not objecting
26   to Glidewell's untimely discovery responses throughout this case.
27   / / /
28   / / /

-16-

## V.  GRANTING GLIDEWELL'S APPLICATION WILL SUBSTANTIALLY PREJUDICE KEATING

Glidewell filed its Complaint in this action on August 30, 2011, and has been aware of the discovery cutoff deadline since at least December 16, 2011, when the Court issued its Scheduling Order.  Glidewell's counsel agreed to the October 29, 2011 discovery cutoff and expert report disclosure and rebuttal deadlines in the Joint Report filed November 28, 2011.

Glidewell is a much larger company than Keating.  Glidewell has actively pursued this case causing Keating to incur significant expenses in defending what it believes to be a meritless case.  If Glidewell is permitted another two months of discovery, this will cause Keating to incur much more unnecessary expense in defending this case that Glidewell has had ample time to prepare.  If Glidewell is permitted an additional two months of discovery, Glidewell has indicated that it intends to conduct trademark surveys.  This will require Keating to also incur significant expense in conducting surveys to rebut Glidewell's surveys.  Keating has been diligent and expended significant resources in discovery.  It should not be penalized by Glidewell's sudden lack of confidence in its litigation counsel.

## VI.  CONCLUSION

For the reasons discussed above, Keating respectfully requests that the Court deny Glidewell's *Ex Parte* Application.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: October 30, 2012____    By: /s/ David G. Jankowski
                                    Lynda J. Zadra-Symes
                                    Jeffrey L. Van Hoosear
                                    David G. Jankowski

                               Attorneys for Plaintiff,
                               KEATING DENTAL ARTS, INC.

14237293

-18-