Case 8:11-cv-01309-DOC-AN   Document 72-7   Filed 10/31/12   Page 1 of 6   Page ID #:1126

10/4/2012    James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.    Robin Carden
Confidential-Attorneys' Eyes Only-Subject to Protective Order

Page 1

THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

JAMES R. GLIDEWELL DENTAL CERAMICS,     )
INC., DBA GLIDEWELL LABORATORIES,       )
                                        )
          PLAINTIFF/COUNTER-DEFENDANT,  )CASE NO.
                                        )SACV11-01309-DOC
               v.                       )(ANx)
                                        )
KEATING DENTAL ARTS, INC.,              )
                                        )
          DEFENDANT/COUNTER-PLAINTIFF.  )
_____ )

***CONFIDENTIAL-ATTORNEYS' EYES ONLY***

***SUBJECT TO PROTECTIVE ORDER***


VIDEOTAPED DEPOSITION OF ROBIN CARDEN

TAKEN THURSDAY, OCTOBER 4, 2012

IRVINE, CALIFORNIA



Reported by Audra E. Cramer, CSR No. 9901

_____

DIGITAL EVIDENCE GROUP

1726 M Street NW, Suite 1010

Washington, DC  20036

(202) 232-0646

10/4/2012    James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.    Robin Carden
Confidential-Attorneys' Eyes Only-Subject to Protective Order

## Page 2

```
 1   VIDEOTAPED DEPOSITION OF ROBIN CARDEN, TAKEN ON BEHALF
 2   OF THE DEFENDANT/COUNTER-PLAINTIFF, AT 9:38 A.M.,
 3   THURSDAY, OCTOBER 4, 2012, AT 2040 MAIN STREET, IRVINE,
 4   CALIFORNIA, BEFORE AUDRA E. CRAMER, CSR NO. 9901,
 5   PURSUANT TO NOTICE.
 6
 7   APPEARANCES OF COUNSEL
 8   FOR PLAINTIFF/COUNTER-DEFENDANT:
 9       LEONARD TACHNER PLC
10       BY:  LEONARD TACHNER, ESQUIRE
11       17961 SKY PARK CIRCLE
         SUITE 38-E
12       IRVINE, CALIFORNIA 92614-6364
         (949) 752-8525
13       ltachner@aol.com
14
     FOR DEFENDANT/COUNTER-PLAINTIFF:
15       KNOBBE MARTENS OLSON & BEAR LLP
         BY:  DAVID G. JANKOWSKI, ESQUIRE
16            RUSTIN MANGUM, ESQUIRE
         2040 MAIN STREET
17       14TH FLOOR
         IRVINE, CALIFORNIA 92614
18       (949) 760-0404
         david.jankowski@knobbe.com
19       rustin.mangum@knobbe.com
20
21   ALSO PRESENT:
22       CHUCK GOSWITZ, VIDEOGRAPHER
```

## Page 3

```
 1              I N D E X
 2   WITNESS
 3   ROBIN CARDEN
 4
 5   EXAMINATION                PAGE
 6   MR. JANKOWSKI                7
     (P.M. SESSION)              97
 7
 8           E X H I B I T S
 9   NO.    PAGE     DESCRIPTION
10   Exhibit 51  14    KEATING DENTAL ARTS INC.'S
                       DEPOSITION NOTICE OF ROBIN
11                     CARDEN
     Exhibit 52  25    U.S. PATENT NO. 5,340,107
12   Exhibit 53  25    U.S. PATENT NO. 4,954,080
     Exhibit 54  41    U.S. PATENT NO. 5,895,696
13   Exhibit 55  48    U.S. PATENT NO. 6,884,181
     Exhibit 56  49    U.S. PATENT NO. 7,108,830
14   Exhibit 57  58    TWO-PAGE PRINTOUT (FRONT
                       AND BACK) FROM COMPOSITES
15                     WORLD
     Exhibit 58  63    THREE-PAGE ARTICLE "TALON
16                     RECEIVES ANOTHER PATENT FOR
                       METAL MATRIX FABRICATION"
17   Exhibit 36  78    GLIDEWELL LABORATORIES ORG
18                     CHART
19   Exhibit 59  109   U.S. PATENT APPLICATION
20                     PUBLICATION NO. 20090115084
21   Exhibit 60  116   U.S. PATENT APPLICATION
22                     PUBLICATION NO. 20110269618
```

## Page 4

```
 1   EXHIBITS (CONTINUED)
     NO.    PAGE     DESCRIPTION
 2   Exhibit 61  117   U.S. PATENT APPLICATION
                       PUBLICATION NO. 20120148988
 3   Exhibit 62  122   U.S. PATENT APPLICATION
                       PUBLICATION NO. 20120156650
 4   Exhibit 63  134   SIX-PAGE JUSTIA TRADEMARKS
                       DOCUMENT
 5   Exhibit 64  134   SIX-PAGE JUSTIA TRADEMARKS
                       DOCUMENT
 6   Exhibit 65  153   BRUXZIR MANUFACTURING
                       SNAPSHOT BATES GL-109 THRU
 7                     122
     Exhibit 66  157   44-PAGE GLIDEWELL
 8                     PRESENTATION
 9   Exhibit 67  170   DOCUMENT BATES KDA-2222
10                     THRU 2226
11   Exhibit 68  173   ARTICLE BATES KDA-2037 THRU
12                     2039
13   Exhibit 69  177   ONE-PAGE DOCUMENT BATES
14                     GL-124
15   Exhibit 70  179   TWO-PAGE DOCUMENT BATES
16                     GL-170 PAGE 1 OF 2 AND PAGE
17                     2 OF 2
18   Exhibit 23  187   PLAINTIFF'S ANSWERS TO
19                     DEFENDANT'S FIRST SET OF
20                     INTERROGATORIES
21   Exhibit 10  239   SIX-PAGE AUTHORIZED LABS
22                     DOCUMENT
```

## Page 5

```
 1   EXHIBITS (CONTINUED)
 2   NO.    PAGE     DESCRIPTION
 3   Exhibit 18  244   ONE-PAGE DOCUMENT BATES
 4                     GL-199
 5   Exhibit 45  252   TWO-PAGE DOCUMENT BATES
 6                     KDA-002770 THRU 2771
 7   Exhibit 47  259   DANI DENTAL ONE-PAGE
 8                     DOCUMENT BATES KDA-002758
 9   Exhibit 46  263   TWO-PAGE MINNESOTA RX FORM
10                     KDA-002832 THRU 2833
11   Exhibit 48  265   FIVE-PAGE CONTROL OF
12                     RECORDS DOCUMENT BATES
13                     GL-226
14   Exhibit 50  267   PLAINTIFF'S INITIAL
15                     DISCLOSURES UNDER FRCP RULE
16                     26(A)(1)(A)
17   Exhibit 35  272   12-PAGE GLIDEWELL
18                     LABORATORIES ORDER FORM
```

Case 8:11-cv-01309-DOC-AN   Document 72-7   Filed 10/31/12   Page 3 of 6   Page ID #:1128

10/4/2012          James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.          Robin Carden
                        Confidential-Attorneys' Eyes Only-Subject to Protective Order

**Page 114**

```
 1   have prepared this patent application; correct?
 2        A.   Yes.
 3        Q.   And then with an understanding that you were
 4   continuing to work on it, and the CIP application is
 5   addressing the fact that Glidewell is continuing to make
 6   progress on the processes; is that fair?
 7        A.   What's the question?
 8        Q.   That the CIP application is later in time and
 9   addresses this material plus improvements that were made
10   to the method.
11        A.   Yes.
12             MR. TACHNER:  We're still under confidentiality
13   here on that question?
14             MR. JANKOWSKI:  Sure, sure.
15             MR. TACHNER:  Would the court reporter note
16   that, please?
17   BY MR. JANKOWSKI:
18        Q.   Do you know when Mr. Moon stopped working with
19   Glidewell?
20        A.   Yes.
21        Q.   When was that?
22        A.   When?  Approximately -- sometime in 2010.
```

**Page 115**

```
 1        Q.   Do you have an understanding for why he left
 2   the employment of Glidewell?
 3        A.   Yes.  He wasn't doing his job.  I fired him.
 4        Q.   And at that point you would be firing him,
 5   because at that point you were now working for Glidewell
 6   and he was working underneath you?
 7        A.   Correct.
 8        Q.   One thing I notice in Exhibit 59 is that the
 9   correspondence address on the application is
10   Leonard Tachner.  Do you see that?
11        A.   Yes.
12        Q.   That's Mr. Tachner who's present at this
13   deposition; correct?
14        A.   Yes.
15        Q.   Now, you had been working with Mr. Tachner on
16   intellectual property matters for a long time --
17        A.   Yes.
18        Q.   -- by this point; correct?
19        A.   Yes.
20        Q.   Did you introduce Mr. Tachner to the Glidewell
21   people?
22        A.   Yes.
```

**Page 116**

```
 1        Q.   I notice that Mr. Tachner's name shows up as an
 2   attorney on some of your early patents.
 3        A.   Yeah, yeah.
 4        Q.   All the way back to Ceradyne in fact; correct?
 5        A.   Yes, uh-huh.  Jim Glidewell asked me who's the
 6   best in the area for advanced materials and ceramics,
 7   and I told him Leonard.
 8             MR. JANKOWSKI:  I'll have the court reporter
 9   mark as Exhibit 60 a published U.S. patent application.
10   It's Publication No. 20110269618.
11             (Whereupon, Exhibit 60 was marked
12             for identification.)
13   BY MR. JANKOWSKI:
14        Q.   Mr. Carden, do you recognize Exhibit 60?
15        A.   Yes, I do.
16        Q.   This is another patent application that's been
17   filed by Glidewell; correct?
18        A.   Yes, it has, but I might note, I think this has
19   turned into an actual patent now.
20        Q.   So what we have in front of us is an
21   application, but you believe this has actually matured
22   and issued as a U.S. patent?
```

**Page 117**

```
 1        A.   Yes.
 2        Q.   And you're a named inventor on what's shown as
 3   Exhibit 60; correct?
 4        A.   Yes.
 5        Q.   Filing for patents on the work that you're
 6   doing with Glidewell is important for the same business
 7   reasons we were talking about previously when you were
 8   doing work with Ceradyne and with Alyn Corporation and
 9   with --
10        A.   Talon.
11        Q.   And Talon; right?
12        A.   Yes.
13             MR. JANKOWSKI:  I'll have the court reporter
14   mark as Exhibit 61 a published U.S. patent application.
15   This is Publication No. 20120148988.
16             (Whereupon, Exhibit 61 was marked
17             for identification.)
18   BY MR. JANKOWSKI:
19        Q.   Mr. Carden, do you recognize Exhibit 61?
20        A.   Yes, I do.
21        Q.   And this is another patent application filed by
22   Glidewell; correct?
```

Case 8:11-cv-01309-DOC-AN   Document 72-7   Filed 10/31/12   Page 4 of 6   Page ID #:1129

10/4/2012        James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.        Robin Carden
Confidential-Attorneys' Eyes Only-Subject to Protective Order

```
 1   BruxZir with a Z material.  There's a specialized
 2   machine that has been invented for that.  It's been
 3   called -- it's called a Willy-Tec machine, W-i-l-l-y,
 4   dash, T-e-c, I think it is, without a K.  It's a C, I
 5   think.
 6        And that mimics the actual motion of the teeth
 7   and -- against another body.  Then after that's done, we
 8   may run 1.2 million cycles and then go ahead and pull
 9   the sample out and let's see what it's done.  So we're
10   down to measuring in nanometers of wear and so forth,
11   but...
12     Q.  So you're quickly simulating somebody living
13   and chewing for years?
14     A.  Yeah, yeah.  And I wasn't too concerned about
15   the wear of the zirconia material, because I worked with
16   it for so much, but again, the people that attacked us
17   were rival companies.  They attacked very quickly
18   because they had a sense of steels and metals, and when
19   you have something that's very hard -- or very strong,
20   let's say, very strong metal, the hardness follows with
21   it.  You have a soft material in a metal like a lead or
22   let's say the aluminum that's on like a beach chair.
                                                  Page 130
```

```
 1   You know, you break those real quick.  They're soft.
 2        But it's different in ceramics; it's very
 3   different.  You can have a diamond that's very, very
 4   hard, hardest material known.  Does it have high
 5   flexural strength?  No, not at all.  And then also
 6   materials that have high fracture toughness, K1C, are
 7   usually softer.  So in this case -- do take lead.  Lead
 8   is soft, but if you dropped a big -- you know, five
 9   pounds of lead off the building and threw it over with,
10   it's not going to break at the end.  So I knew that this
11   would be a great material for the mouth if done
12   correctly.
13     Q.  In fact, the testing to date has been very
14   positive?
15     A.  Very, very positive.  There's a huge article, a
16   two-year release, that it's the only material out of, I
17   think Rella Christensen said, almost 98 different types
18   of material that has survived chipping and wearing.  So
19   we got just stellar, stellar reports.  That was good.
20     Q.  Now, one of the roles I'm curious about that
21   you could have been playing back in 2009 was providing
22   guidance on intellectual property matters, given your
                                                  Page 131
```

```
 1   background --
 2     A.  Right.
 3     Q.  -- in intellectual property.  So were you as a
 4   member of the brain trust somebody who they looked to,
 5   to provide guidance --
 6     A.  I'm the guy.
 7     Q.  Pin intellectual property?
 8     A.  Keith controls the patents.  I review all of
 9   the patents.  Any patent that goes through, I'll review
10   it and do -- formally talk with the attorney, which is
11   mostly Leonard, and review that, the examiner's
12   feedback, and then make any adjustments, and go back and
13   forth and go from there on all the patents.
14     Q.  In fact, you're a named inventor on how many
15   patents is it now?  Over 30?
16     A.  I think close to about that, yeah.  I think --
17   I'm not sure -- I don't have the right number.  You have
18   to ask Leonard.  I'm not sure.
19     Q.  But it's a lot of patents?
20     A.  It's a lot, yeah.  It's a lot of stuff.
21     Q.  And as we were talking about this morning,
22   you've been dealing with patents since right out of
                                                  Page 132
```

```
 1   college almost at Ceradyne?
 2     A.  Yeah, right away.  I've been thrown in the ring
 3   and just started following it and also got formal
 4   training on patents and so forth.
 5     Q.  When you say "formal training," what do you
 6   mean by that?
 7     A.  Classes that I went to.  I went to a couple of
 8   classes, two with Ceradyne, and then I took some classes
 9   on my own, which -- looking at the valuation of a
10   patent, how to write a patent, things like that.
11     Q.  And who was giving the class?
12     A.  Some of the classes were IP systems.  You know,
13   you're going through and you get these things through
14   your e-mails a couple times, "Hey, patents IP."  Or
15   ceramics.  I know one was from ceramic -- was in the
16   ceramic industry, I think, on patents, and we took it.
17   I think one time, actually, ==Leonard taught some stuff a==
18   ==couple days to us at Ceradyne also.==
19     Q.  ==Oh, Mr. Tachner spoke to you at Ceradyne?==
20     A.  ==Yeah, about controlling your work through books==
21   ==and about when the patents -- and the patent laws change==
22   ==all the time.  So what was taught back then is==
                                                  Page 133
```

Pages 130 to 133

10/4/2012   James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.   Robin Carden
Confidential-Attorneys' Eyes Only-Subject to Protective Order

---

1   completely different today --
2   Q. Sure. Sure.
3   A. -- about timing and so forth.
4   MR. JANKOWSKI: Next I'd like to have the
5   court reporter mark the next two exhibits. First,
6   Exhibit 63 is a printout from justiatrademarks.com, and
7   it is associated with the trademark Talbor -- I'm
8   sorry -- the trademark Boralyn.
9        (Whereupon, Exhibit 63 was marked
10           for identification.)
11   MR. JANKOWSKI: Then Exhibit 64 is also from
12   Justia Trademarks, and it is associated with the
13   trademark Talbor.
14       (Whereupon, Exhibit 64 was marked
15           for identification.)
16  BY MR. JANKOWSKI:
17   Q. Mr. Carden, if you could briefly look at
18   Exhibits 63 and 64.
19   A. Yeas, uh-huh.
20   Q. You recognize the subject matter anyway of
21   Exhibits 63 and 64; correct?
22   A. Yes.

Page 134

1   Q. And these are printouts from a website
2   associated with the trademarks that I think we were
3   talking about this morning; associated with the MMC
4   products associated with your companies Alyn Corporation
5   and Talon Corporation [sic]; correct?
6   A. Uh-huh, yes.
7   Q. What was your connection in developing these
8   brand names for the corporations there?
9   A. Well, you can see the first one, Boralyn, has
10  my name in it. So we took my middle name, and we
11  added -- most of the metal matrix composites that we
12  were working with had boron carbide in it, so we put one
13  and two together, and we came up with the Boralyn,
14  100 percent my idea.
15       The second one, Talbor, we have --
16  Talon Composites was the name of the company, which I
17  came up with again, you know, boron carbide. So we had
18  the name of the company, Talon Composites, "Tal," and
19  then "bor," again for the boron carbide. So that was
20  100 percent my idea also.
21   Q. I did notice like in each of these,
22  Mr. Tachner's name is associated with these applications

Page 135

1   as well. At least it shows up in --
2   A. Yeah.
3   Q. Has Mr. Tachner assisted you with prosecution
4   of trademarks for Alyn Corporation and Talon
5   Corporation [sic]?
6   A. Yes, he was one of a couple of firms, yes, with
7   Alyn Corporation, yes. There's other firms.
8   Coopers Dunham was another one. So...
9   Q. So with that history in mind, fast-forwarding
10  into 2009 with the release of the BruxZir with a Z
11  product, did the brain trust turn to you also on the
12  question of a brand name and protection of the brand
13  name with trademarking and the like?
14   A. Nope. No.
15   Q. They did not consult with you at all?
16   A. No.
17   Q. Is that a little unusual? Do you have a sense
18  for why --
19   A. You know, it's not -- I'm a research and
20  development material specialist. I do not know how
21  brands, you know, in the dental industry associate with
22  names. And so it's a whole different industry, and I

Page 136

1   was glad that they took it, you know. They might have
2   said something to me in the hallway, "Hey, what do you
3   think of this, BruxZir with a Z?" or something like
4   that, but nothing ever -- anything in writing to me.
5   Q. Do you recall them asking your opinion of the
6   name or any names?
7   A. They might have. You know, they might have,
8   but I wasn't involved at all. I just wasn't involved.
9   Q. Were you interested at all? Were you curious,
10  or did you want to --
11   A. Oh, I was curious, yeah. I spent a lot of time
12  into it, and, you know -- just interested. Not
13  interested adding in adding my 2 percent, but interested
14  in the outcome. So...
15   Q. Do you have an understanding for when the name
16  BruxZir with a Z was chosen?
17   A. No.
18   Q. Do you have any understanding of who came up
19  with the name BruxZir with a Z?
20   A. I heard brief talks at lunch and so forth maybe
21  a couple years down the line, say around 2011 or
22  something like that, when they were talking, and they

Page 137

Pages 134 to 137

10/4/2012   James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.   Robin Carden
Confidential-Attorneys' Eyes Only-Subject to Protective Order

Page 279

1   STATE OF CALIFORNIA         )
2   COUNTY OF LOS ANGELES       )  SS.
3
4         I, AUDRA E. CRAMER, CSR No. 9901, in and for the State of California, do hereby certify:
5         That, prior to being examined, the witness named in the foregoing deposition was by me duly sworn to
6   testify the truth, the whole truth and nothing but the truth;
7         That said deposition was taken down by me in shorthand at the time and place therein named, and
8   thereafter reduced to typewriting under my direction,
9   and the same is a true, correct and complete transcript
10  of said proceedings;
11        I further certify that I am not interested in the
12  event of the action.
13        Witness my hand this 17th day of October,
14  2012.
15
16
17
18
19  _____
20  Certified Shorthand
21  Reporter for the
22  State of California