1  SNELL & WILMER L.L.P.
   Philip J. Graves (SBN 153441)
2  pgraves@swlaw.com
   Greer N. Shaw (SBN 197960)
3  gshaw@swlaw.com
   Christopher B. Pinzon (SBN 254110)
4  cpinzon@swlaw.com
   350 South Grand Avenue, Suite 2600
5  Two California Plaza
   Los Angeles, CA 90071
6  Telephone: (213) 929-2500
   Facsimile:  (213) 929-2525
7
   Attorneys for Plaintiff
8  James R. Glidewell Dental Ceramics, Inc.
   d/b/a Glidewell Laboratories
9

10           UNITED STATES DISTRICT COURT

11           CENTRAL DISTRICT OF CALIFORNIA

12                  SOUTHERN DIVISION

13  JAMES R. GLIDEWELL DENTAL          Case No. SACV11-01309-DOC(ANx)
    CERAMICS, INC.,
14                                     **JAMES R. GLIDEWELL DENTAL
                                       CERAMICS, INC.'S
15              Plaintiff,             MEMORANDUM OF POINTS AND
                                       AUTHORITIES IN SUPPORT OF
    vs.                                ITS MOTION FOR PARTIAL
16                                     SUMMARY JUDGMENT RE
                                       TRADEMARK MISUSE, UNFAIR
    KEATING DENTAL ARTS, INC.,         COMPETITION, UNCLEAN HANDS,
17                                     FAIR USE, AND ESTOPPEL**
              Defendant.
18

19                                     Hearing
    AND RELATED
20  COUNTERCLAIMS.                     Date:  December 17, 2012
                                       Time:  8:30 a.m.
21                                     Ctrm:  9D, Hon. David O. Carter

22                                     Pre-Trial Conf.:   January 28, 2013
                                       Jury Trial:        February 26, 2013
23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................. 1

II.   STATEMENT OF FACTS ................................................................... 2

     A.    Glidewell's Licensing of the BruxZir Mark ............................ 2

     B.    Glidewell's Alleged Improper Use of the ® Symbol ............... 4

     C.    Glidewell's Enforcement of Its Mark ...................................... 5

III.   ARGUMENT ...................................................................................... 5

     A.    Legal Standard for Summary Judgment Motions .................... 5

     B.    Keating's Third Counterclaim for Misuse of Trademark Fails to State a Legally Cognizable Claim ........................... 6

     C.    Keating Lacks Standing to Raise Its Second Counterclaim for Unfair Competition Under the UCL .................................. 8

         1.    The Alleged Attempted Tying Agreement Does Not Confer Standing ......................................................... 9

         2.    The Alleged Improper Usages of the ® Symbol Do Not Confer Standing ............................................... 10

         3.    The Alleged Enforcement of a Generic Mark Does Not Confer Standing ............................................... 11

     D.    Keating's Common Law Unfair Competition Claim Fails for Lack of any Supporting Evidence .............................. 11

     E.    Keating's Counterclaim for Unfair Competition and Affirmative Defense of Unclean Hands Defense Fail on the Merits ...................... 12

         1.    The Alleged Demand that Keating Purchase Glidewell Products Did Not Violate the UCL or Constitute Unclean Hands ........................................ 14

         2.    Glidewell's Alleged Enforcement of a Generic Mark Does Not Violate the UCL or Constitute Unclean Hands ........ 16

         3.    Glidewell's Alleged Misuse of the ® Symbol Does Not Violate the UCL or Constitute Unclean Hands ........ 18

     F.    Keating's Fifth Affirmative Defense of Fair Use Fails Because Keating is Using "Bruxer" as a Trademark ............................ 21

     G.    Keating's Third Affirmative Defense of Estoppel Fails .......... 23

IV.   CONCLUSION .................................................................................. 24

# TABLE OF AUTHORITIES

## CASES

Page

*Anderson v. Liberty Lobby, Inc.*
   477 U.S. 244 (1986).................................................................6

*Bank of the W. v. Superior Court*
   2 Cal. 4th 1254 (1992) ......................................................11, 12

*Celotex Corp. v. Catrett*
   477 U.S. 317 (1986).................................................................6

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*
   20 Cal.4th 163 (1999) ...............................................10, 12, 13

*Citizens Financial Group, Inc. v. Citizens Nat. Bank of Evans City*
   383 F.3d 110, 129 (3d Cir. 2004) ........................................13, 20

*Clorox Co. v. Sterling Winthrop, Inc.*
   117 F.3d 50 (2d Cir.1997) ......................................................17

*Coca-Cola Co. v. Overland, Inc.*
   692 F.2d 1250 (9th Cir. 1982) ................................................16

*Copelands' Enterprises, Inc. v. CNV, Inc.*
   945 F.2d 1563, 1566 (Fed. Cir. 1991) ....................................18

*Cordon v. Wachovia Mortg., a Div. of Wells Fargo Bank, N.A.*
   776 F.Supp.2d 1029 (N.D. Cal. 2011)......................................9

*Dollar Systems, Inc. v. Avcar Leasing Systems, Inc.*
   890 F.2d 165, 173 (9th Cir. 1989) ..........................................13

*Deere & Co. v. MTD Holdings, Inc.*
   2004 WL 1794507 (S.D.N.Y. 2004) .......................................17

*Dresser Indus., Inc. v. Heraeus Engelhard Vacuum, Inc.*
   267 F.Supp. 963 (W.D. Pa. 1967) ...........................................16

*Dunn Computer Corp. v. Loudcloud, Inc.*
   133 F.Supp.2d 823 (E.D. Va. 2001).........................................7

*Ellenburg v. Brockway, Inc.*
   763 F.2d 1091 (9th Cir.1985) ................................................13

*Esquire v. Esquire Slipper Mfg. Co.*
   243 F.2d 540 (1st Cir.1957)...............................................17, 18

*Estée Lauder, Inc. v. Fragrance Counter, Inc.*
   189 F.R.D. 269 (S.D.N.Y. 1999)............................................10

Glidewell MSJ re: Patent Misuse,
Unfair Competition, and Unclean Hands
CASE NO. SACV11-01309 DOC (ANx)

1

## TABLE OF AUTHORITIES
(continued)

2

**Page**

3  *Ford Motor Co. v. Obsolete Ford Parts, Inc.*
      318 F.Supp.2d 516 (E.D. Mich. 2004) ...................................................7
4
   *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*
5      618 F.3d 1025 (9th Cir. 2010) ..........................................................22

6  *Gateway, Inc. v. Companion Products, Inc.*
      320 F.Supp.2d 912 (D.S.D. 2002) ......................................................17
7
   *GoTo.com, Inc. v. Walt Disney Co.*
8      202 F.3d 1199 (9th Cir. 2000) .....................................................16, 24

9  *In re Rath*
      402 F.3d 1207 (Fed. Cir. 2005) ...........................................................6
10
   *In re Tobacco II Cases*
11     46 Cal.4th 298 (2009) ......................................................................12

12 *James Burrough Ltd. v. Lesher*
      309 F.Supp. 1154 (S.D. Ind. 1969) ....................................................17
13
   *Juno Online Services v. Juno Lighting, Inc.*
14     979 F. Supp. 684 (N.D. Ill. 1997) .................................................6, 15

15 *KEMA, Inc. v. Koperwhats*
      658 F.Supp.2d 1022 (N.D. Cal. 2009) ................................................13
16
   *Korea Supply Co. v. Lockheed Martin Corp.*
17     29 Cal.4th 1134 (2003) ....................................................................10

18 *Kwikset Corp. v. Superior Court*
      51 Cal.4th 310 (2011) .........................................................................9
19
   *Loblaw Companies Ltd. v. Azimi*
20     2001 WL 36028016 (N.D. Cal. 2001) ..................................................7

21 *M & F Fishing, Inc. v. Sea-Pac Ins. Managers, Inc.*
      202 Cal. App. 4th 1509 (2012) ............................................................8
22
   *Mattel, Inc. v. MGA Entm't, Inc.*
23     782 F. Supp.2d 911 (C.D. Cal. 2011) .............................................8, 21

24 *Morgan v. AT & T Wireless Services, Inc.*
      177 Cal.App.4th 1235 (2009) ............................................................13
25
   *New Kids on the Block v. News Am. Pub., Inc.*
26     971 F.2d 302 (9th Cir. 1992) .............................................................21

27 *Northwestern Corp. v. Gabriel Mfg. Co.*
      48 U.S.P.Q.2d 1902 (N.D. Ill.1998) ..............................................13, 14

28

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Pom Wonderful LLC v. Welch Foods, Inc.*,
  737 F.Supp.2d 1105 (C.D. Cal. 2010)..........................................13, 20

*Santander Consumer USA Inc. v. Walsh*,
  762 F. Supp. 2d 217 (D. Mass. 2010)....................................................7

*Sears, Roebuck & Co. v. Sears plc*,
  744 F.Supp. 1297 (D. Del. 1990) ........................................................15

*Selby v. Bank of Am., Inc.*,
  2010 WL 4347629 (S.D. Cal. 2010)......................................................9

*Susilo v. Wells Fargo Bank, N.A.*,
  796 F.Supp.2d 1177 (C.D. Cal. 2011) ...................................................8

*Thompson v. Residential Credit Solutions, Inc.*,
  2012 WL 260357 (E.D. Cal. 2012) ......................................................10

*TYR Sport, Inc. v. Warnaco Swimwear, Inc.*,
  709 F.Supp.2d 821 (C.D. Cal. 2010).............................................12, 13

*Weber v. National Football League*,
  112 F.Supp.2d 667 (N.D. Ohio 2000) .................................................17

## **STATE STATUTES**

15 U.S.C. § 1115(b)(4) ...................................................................21, 22

California Business & Professions Code § 17200.........................1, 8, 9, 12

California Business & Professions Code § 17204..............................8, 9

Fed. R. Civ. P. 56(a) ................................................................................5

Fed. R. Civ. P. 56(c) ................................................................................5

## **OTHER AUTHORITIES**

1 Callmann, Unfair Competition Trademarks & Monopolies
  (4th ed.1981) §§.2.02-2.03 ..............................................................11

3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition
  (4th ed. 2010) § 19:146...................................................................19

6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition
  (4th ed. 2010) § 31:44......................................................................6

6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition
  (4th ed. 2010) § 31:48....................................................................13

1

## TABLE OF AUTHORITIES
(continued)

**Page**

6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition
(4th ed. 2010) § 31:51..................................................................................15

6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition
(4th ed. 2010) § 31:91..................................................................................14

6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition
(4th ed. 2010) § 32:105...........................................................................23, 24

J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition (4th
ed. 2010) § 11:49......................................................................................22

Trademark Manual of Examining Procedure (October 2012) § 906.02.................19

# I. INTRODUCTION

This motion seeks partial summary judgment for Glidewell on Keating's Second Counterclaim for Unfair Competition, Third Counterclaim for Misuse of Trademark, Third Affirmative Defense of estoppel, Fourth Affirmative Defense of unclean hands, and Fifth Affirmative Defense of fair use.

Keating's Third Counterclaim for Misuse of Trademark fails because no such claim exists.  Trademark misuse has been recognized as equivalent to an unclean hands affirmative defense, but courts have universally rejected trademark misuse as an affirmative claim.

Keating's Second Counterclaim for Unfair Competition fails because Keating lacks standing.  Standing under California Business & Professions Code § 17200 et seq. (the "UCL") requires a showing of both injury in fact and economic loss. Keating has no evidence to establish either element, and thus it lacks standing.

Both Keating's unfair competition claim and its unclean hands defense fail on the merits.  As set forth below, none of the conduct Keating complains of rises to the level of illegality or anti-competitive conduct sufficient to establish an unfair competition claim or unclean hands affirmative defense.

Keating's fair use defense fails because Keating uses its KDZ Bruxer mark as a trademark, and not as a description of its goods.

Finally, Keating neither alleged fracts, nor furnished evidence, giving rise to an estoppel.

Accordingly, the Court should enter partial summary judgment in Glidewell's favor.

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

## II. STATEMENT OF FACTS[1]

Glidewell is a leading provider of dental restoration products to dentists. (Declaration of Jim Shuck, Exhibit G to the Appendix of Evidence ("Shuck Decl."), ¶ 4). Since their introduction in 2009, the BruxZir line of dental restoration products, including crowns and bridges, have been phenomenally popular, generating approximately $120 million in revenue over the past three and a half years. (Statement of Uncontroverted Facts and Conclusions of Law in Support of Glidewell's Motion for Partial Summary Judgment re: Trademark Misuse, Unfair Competition, and Unclean Hands ("SUF") 1).

Glidewell applied to register the BruxZir mark in June of 2009 in connection with "Dental Bridges; Dental Caps; Dental Crowns; Dental Inlays; Dental Onlays; [and] Dental Prostheses." (SUF 2). The registration was granted in January of 2010. (SUF 3).

Keating also sells zirconia dental crowns and bridges to dentists. (SUF 4).

Keating contends in its Second and Third Counterclaims, and its Fourth Affirmative Defense, that Glidewell has misused its trademark, engaged in unfair competition, and has unclean hands. Keating's allegations center around three claims: that Glidewell has tied its trademark licensing efforts to the purchase of other Glidewell products, that Glidewell has misused the ® registration symbol, and that Glidewell is enforcing a generic mark. Keating's Third Affirmative Defense of estoppel likewise concerns Glidewell's enforcement of its Bruxzir mark.

### A.   **Glidewell's Licensing of the BruxZir Mark**

Glidewell has actively policed the use of marks confusingly similar to its BruxZir mark. Specifically, Glidewell identified several marks using the terms

---

[1] This statement of facts is limited to the facts relevant to Keating's Trademark Misuse, Unfair Competition, and Unclean Hands claims. A more thorough statement of facts can be found in Glidewell's motion for partial summary judgment re: infringement.

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

- 2 -

Glidewell MSJ re: Patent Misuse,
Unfair Competition, Unclean Hands, Fair Use, and Estoppel
CASE NO. SACV11-01309 DOC (ANx)

1  "Brux" or "Bruxer" in connection with solid-zirconia dental restoration products as

2  confusingly similar to the BruxZir mark, and sent several cease and desist letters to

3  the companies offering products or services under those marks. (SUF 5). In such

4  instances Glidewell offers the infringer two options: it can either change its mark to

5  avoid any confusion with the BruxZir mark, or it can become a licensed, authorized

6  BruxZir lab. (SUF 6). To become an authorized BruxZir lab, the offending party

7  must use the actual BruxZir mark, as opposed to the confusingly similar mark, and

8  it must purchase BruxZir milling blanks to use in fabricating BruxZir dental crowns

9  and bridges. (SUF 7). Glidewell's BruxZir milling blanks are the raw zirconia

10 from which the dental restoration products are made. Whichever option the

11 infringing party chooses, it must change its confusingly similar mark: either to

12 something not confusing, or to the actual BruxZir mark in the event the infringing

13 party becomes an authorized lab. (SUF 7).

14    Examples of marks that Glidewell has deemed infringing when used in

15 connection with zirconia dental restoration products, and for which Glidewell sent

16 cease and desist letters, are: BRUXZIR, FULL ZIRCONIA (BRUXZIR), ZIR-

17 BRUXER CROWN, Z-BRUX , R-BRUX, BRUXER ALL ZIRCONIA, BRUXER

18 ALL-ZIRCONIA CROWN, BRUX CROWN, FULL SOLID BRUXER

19 ZIRCONIA, and BRUXER. (SUF 9). Each of these marks was being used in

20 connection with zirconia dental restoration products and thus was being used in

21 direct competition with Glidewell. (SUF 8). In each instance, Glidewell resolved

22 the infringement claim short of litigation. (SUF 10).

23    The one alleged instance of an improper tying arrangement concerns

24 Glidewell's initial communications with Keating. When Glidewell discovered

25 Keating's "KDZ Bruxer" mark, Glidewell's sales manager, Robin Bartolo, called

26 Sean Keating to discuss Glidewell's concerns. The parties did not come to any

27 resolution during the call, and afterwards Bartolo sent Mr. Keating a follow-up

28 letter. The letter stated, "If you cancel your trademark application for KDZ Bruxer

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

- 3 -

Glidewell MSJ re: Patent Misuse,
Unfair Competition, Unclean Hands, Fair Use, and Estoppel
CASE NO. SACV11-01309 DOC (ANx)

1   and use BruxZir materials and the BruxZir trademark instead, we will not pursue

2   legal action.  Additionally, Keating Dental Arts would be added to the list of

3   Authorized Labs with full participation in the national ads and Rx booklet mailers."

4   (Declaration of Robin Bartolo, Exhibit K to the Appendix of Evidence ("Bartolo

5   Decl.", ¶¶ 18-19; Appendix Ex. 25).  Keating contends that "and" in this statement

6   proves Glidewell was attempting an illegal tying agreement by requiring Keating to

7   not only change its mark to avoid a lawsuit, but also to purchase Glidewell's

8   products.  Keating also claims that in the phone conversation with Bartolo, Bartolo

9   stated that simply changing Keating's mark would not be enough to resolve

10   Glidewell's claim, but that Keating would have to become an authorized lab.

11        Bartolo testifies otherwise.  Bartolo testifies that in the phone conversation he

12   made the same demand to Keating that Glidewell makes to all infringers: change

13   the mark to cure the potential confusion *or* become a licensee and change the mark

14   to BruxZir.  (Bartolo Decl., ¶¶ 18-22).  Either way, Keating would have been

15   required to change the mark, but would not have been required to purchase

16   Glidewell milling blanks unless Keating chose to become a licensee.  Because in

17   this motion all inferences must be resolved in favor of the non-moving party,

18   however, we assume, without conceding, that Keating's account is correct.

19   **B.    Glidewell's Alleged Improper Use of the ® Symbol**

20        Glidewell's BruxZir mark is registered. (SUF 2, 3).  It is only registered,

21   however, in connection with crowns, bridges and other dental restoration products.

22   (SUF 2, 3).  Glidewell uses the mark in connection with other products as well,

23   including milling blanks and various pieces of lab equipment used in the

24   manufacture of dental restoration products.  (SUF 12).  Because the BruxZir mark

25   is not registered in connection with the milling blanks and lab products, Glidewell

26   uses either the ™ symbol, or no symbol, when using the BruxZir mark in

27   connection with those products.  (SUF 14).

28        At the deposition of Keith Allred, Glidewell's in-house counsel, Keating's

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

Glidewell MSJ re: Patent Misuse,
Unfair Competition, Unclean Hands, Fair Use, and Estoppel
CASE NO. SACV11-01309 DOC (ANx)

- 4 -

1   attorney confronted Allred with two instances on Glidewell's website where

2   Glidewell used the ® symbol in connection with milling blanks and lab equipment.

3   (SUF 12). Specifically, BruxZir's informational page concerning BruxZir milling

4   blanks used the registration symbol, and the informational page associated with the

5   BruxZir Mill[2] used the registration symbol.  (SUF 12).  The next day after Allred's

6   deposition, those portions of Glidewell's website were revised to conform with

7   Glidewell's usual practice of using the ™ symbol when using the BruxZir mark in

8   connection with milling blanks and lab equipment.  (SUF 15).  Glidewell

9   subsequently identified a third instance of use of the ® symbol in connection with

10  the BruxZir mill in an e-mail blast.  (SUF 13).

## C.      Glidewell's Enforcement of Its Mark

12          Keating contends Glidewell's BruxZir mark has become generic and that

13  Glidewell has improperly accused third parties of infringement for use of the terms

14  "Brux" and "Bruxer" in connection with solid zirconia crowns, which Keating

15  contends are also generic terms.[3]  No court has adjudicated the BruxZir mark

16  generic, however.  (SUF 20).

## III.  ARGUMENT

## A.      Legal Standard for Summary Judgment Motions

19          A party is entitled to summary judgment on all or part of a defense if "there

20  is no genuine dispute as to any material fact and the movant is entitled to judgment

21  as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56(c)

22  mandates the entry of summary judgment . . . against a party who fails to make a

23  showing sufficient to establish the existence of an element essential to that party's

24  case, and on which that party will bear the burden of proof at trial. . . . Of course, a

---

[2]   The BruxZir Mill is used to produce full contour crowns.

[3]   Keating's actual arguments and evidence in support of these positions are
      irrelevant to the arguments advanced in this motion.  Keating's arguments and
      evidence are discussed extensively in Glidewell's concurrently-filed Motion for
      Partial Summary Judgment re: Genericness.

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

Glidewell MSJ re: Patent Misuse,
Unfair Competition, Unclean Hands, Fair Use, and Estoppel
CASE NO. SACV11-01309 DOC (ANx)

- 5 -

1  party seeking summary judgment always bears the initial responsibility of

2  informing the district court of the basis for its motion, and identifying those

3  portions of 'the pleadings, depositions, answers to interrogatories, and admissions

4  on file, together with the affidavits, if any,' which it believes demonstrate the

5  absence of a genuine issue of material fact. But . . . we find no express or implied

6  requirement in Rule 56 that the moving party support its motion with affidavits or

7  other similar materials negating the opponent's claim." *Celotex Corp. v. Catrett*,

8  477 U.S. 317, 322-23(1986).  "A non-movant cannot avoid summary judgment by

9  presenting bald assertions or a mere scintilla of evidence in its favor." *Anderson v.*

10 *Liberty Lobby, Inc.*, 477 U.S. 244, 250-51 (1986).

**B.**   **Keating's Third Counterclaim for Misuse of Trademark Fails to State a**
12 **Legally Cognizable Claim**

13       The Court should enter partial summary judgment for Glidewell on Keating's

14 Third Counterclaim for Misuse of Trademark because no such affirmative claim

15 exists.  As Professor McCarthy explains, there is no affirmative claim for trademark

16 misuse: "Unclean hands, or trademark misuse, is purely an affirmative defense and

17 does not form the basis for an affirmative claim for recovery." 6 J. Thomas

18 McCarthy, McCarthy on Trademarks and Unfair Competition (4th ed. 2010)

19 § 31:44.[4]

20       The case law bears this statement out.  In *Juno Online Services v. Juno*

21 *Lighting, Inc.*, 979 F.Supp. 684 (N.D. Ill. 1997), the court refused to recognize an

22 independent claim for trademark misuse, explaining that the rationale for a *patent*

23 misuse claim does not apply to trademarks because trademarks do not confer a

24 monopoly:

25              Since the affirmative claim for patent misuse has a

26 _____

27 [4]  McCarthy on Trademarks and Unfair Competition has been described by the
   Federal Circuit as the "leading treatise" on the subject matter. *In re Rath*, 402
28 F.3d 1207, 1213 (Fed. Cir. 2005).

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

suspect history to begin with, and since plaintiff has failed to point the court to a single case in which an American court has used trademark misuse affirmatively, the court is quite skeptical to allow an affirmative claim for trademark misuse. The fear expressed in [patent misuse] cases such as *Morton Salt* is that the holder of a government monopoly will use the monopoly to the detriment of the public by destroying competition. By contrast, in trademark law, the mark holder usually does not have the ability to destroy competition. The holder can only keep competitors from using the mark and, in most circumstances, cannot keep them from selling a directly competing product. Therefore, there appears to be less of a justification for extending the trademark misuse doctrine than there is in the patent arena.

*Id.* at 690. The consistent refrain of courts is that no affirmative claim for trademark misuse exists. *Ford Motor Co. v. Obsolete Ford Parts, Inc.*, 318 F.Supp.2d 516, 521 (E.D. Mich. 2004) ("Plaintiff cites no case law to support its theory that trademark misuse can be an independent basis for relief. The court declines to announce or create an independent cause of action for trademark misuse and finds that Defendant's claim is more appropriately cast as a potential affirmative defense."); *Dunn Computer Corp. v. Loudcloud, Inc.*, 133 F.Supp.2d 823, 830 (E.D. Va. 2001) ("Trademark misuse is not an independent cause of action, but is, instead, only an affirmative defense to a trademark infringement claim."); *Loblaw Companies Ltd. v. Azimi*, 2001 WL 36028016 (N.D. Cal. 2001) (following *Juno Online Services* and concluding, "trademark misuse . . . could not be asserted as an independent claim, and . . . even its use as an affirmative defense was questionable."); *Santander Consumer USA Inc. v. Walsh*, 762 F.Supp.2d 217, 239 (D. Mass. 2010) (citing McCarthy and stating, "It is well settled that 'trademark misuse is purely an affirmative defense and does not form the basis for an affirmative claim for recovery.'"). Because there is no affirmative claim for trademark misuse, the Court should enter judgment for Glidewell on Keating's

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1   Third Counterclaim for Misuse of Trademark.

2   **C.**   **Keating Lacks Standing to Raise Its Second Counterclaim for Unfair**

3   **Competition Under the UCL**

4   Keating's Second Counterclaim for Unfair Competition under the UCL fails

5   because Keating has no standing under the UCL.[5]  As set forth below, Keating does

6   not even allege, much less have evidence, that it "suffered injury in fact and lost

7   money or property as a result of the unfair competition," which is the UCL's

8   standing requirement. Cal. Bus. & Prof. Code § 17204.  Accordingly, the Court

9   should enter partial summary judgment in favor of Glidewell on Keating's UCL

10  claim.

11  Prior to 2004, the UCL conferred standing broadly, authorizing "'any person

12  acting for the interests of itself, its members or the general public' (former § 17204)

13  to file a civil action for relief.  Standing to bring such an action did not depend on a

14  showing of injury or damage." *M & F Fishing, Inc. v. Sea-Pac Ins. Managers, Inc.*,

15  202 Cal. App. 4th 1509, 1525 (2012). "Proposition 64 changed the standing

16  requirements for a UCL claim to create a two-pronged test: A private person now

17  has standing to assert a UCL claim only if he or she (1) 'has suffered injury in fact,'

18  and (2) 'has lost money or property as a result of the unfair competition.'" *Id.*

19  (quoting Business & Professions Code § 17204); see also *Susilo v. Wells Fargo*

20  *Bank, N.A.*, 796 F.Supp.2d 1177, 1195-96 (C.D. Cal. 2011) ("To have standing to

21  bring suit pursuant to § 17200, a plaintiff must make a twofold showing: he or she

22  must demonstrate injury in fact and a loss of money or property caused by unfair

23  competition." Internal quotations omitted); *Mattel, Inc. v. MGA Entm't, Inc.*, 782

24  F.Supp.2d 911, 1012 (C.D. Cal. 2011) (same).

25  Because a showing of economic harm will usually satisfy the "injury in fact"

26  requirement, the California Supreme Court has reduced the test to a showing of

27

28  [5]   Keating's Second Counterclaim also includes a common law unfair competition claim. We address that claim in a subsequent section.

- 8 -

Glidewell MSJ re: Patent Misuse,
Unfair Competition, Unclean Hands, Fair Use, and Estoppel
CASE NO. SACV11-01309 DOC (ANx)

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1   economic harm and causation: "To satisfy the narrower standing requirements

2   imposed by Proposition 64, a party must now (1) establish a loss or deprivation of

3   money or property sufficient to qualify as injury in fact, i.e., economic injury, and

4   (2) show that that economic injury was the result of, i.e., caused by, the unfair

5   business practice or false advertising that is the gravamen of the claim." *Kwikset*

6   *Corp. v. Superior Court*, 51 Cal.4th 310, 322 (2011).  "There are innumerable ways

7   in which economic injury from unfair competition may be shown.  A plaintiff may

8   (1) surrender in a transaction more, or acquire in a transaction less, than he or she

9   otherwise would have; (2) have a present or future property interest diminished; (3)

10  be deprived of money or property to which he or she has a cognizable claim; or (4)

11  be required to enter into a transaction, costing money or property, that would

12  otherwise have been unnecessary." *Id.* at 323.

13        Keating lacks standing to assert any of the three alleged acts of unfair

14  competition described above because it has no evidence of economic injury.

15        **1.      The Alleged Attempted Tying Agreement Does Not Confer**

16                **Standing**

17        With respect to the purported effort by Glidewell to tie settlement of its

18  infringement claim against Keating to the purchase of Glidewell products, even if

19  one accepts at face value Keating's version of the evidence, Keating did not accept

20  the offer and thus was not harmed by it.  The only possible harm Keating could

21  assert is the attorney's fees expended in this litigation.  But as the Southern District

22  of California has explained, attorney's fees in litigation under section 17200 cannot

23  be the predicate injury under section 17204, "otherwise, any plaintiff filing suit

24  would be able to show injury." *Selby v. Bank of Am., Inc.*, 2010 WL 4347629 (S.D.

25  Cal. 2010); see also *Cordon v. Wachovia Mortg., a Div. of Wells Fargo Bank, N.A.*,

26  776 F.Supp.2d 1029, 1039 (N.D. Cal. 2011) ("Plaintiff fails to cite any authority

27  establishing that attorney's fees incurred in bringing a UCL claim are sufficient to

28  confer standing under § 17204.  Under Plaintiff's reasoning, a private plaintiff

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

- 9 -

Glidewell MSJ re: Patent Misuse,
Unfair Competition, Unclean Hands, Fair Use, and Estoppel
CASE NO. SACV11-01309 DOC (ANx)

1   bringing a UCL claim automatically would have standing merely by filing suit."); 

2   *Thompson v. Residential Credit Solutions, Inc.*, 2012 WL 260357 (E.D. Cal. 2012)

3   ("Plaintiff fails to cite any authority establishing that attorney's fees and costs

4   incurred in bringing a UCL claim are sufficient to confer standing."); see also *Estée*

5   *Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 273 (S.D.N.Y. 1999)

6   ("Absent proof of a sham, the bringing of litigation cannot, as a matter of law, form

7   the basis of an antitrust claim or misuse defense.").  In other words, if incurring

8   attorney's fees sufficed to convey standing, the enhanced standing requirements

9   enacted by the electorate through Proposition 64 would be obliterated.

10      Another reason the expenditure of attorney's fees cannot confer standing is

11   because the UCL affords no remedy for the recovery of attorney's fees.  Under the

12   UCL, "Prevailing plaintiffs are generally limited to injunctive relief and

13   restitution."  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20

14   Cal.4th 163, 179 (1999).  Attorney's fees would be *damages*, not restitution,

15   because those fees are not money that Glidewell took from Keating. *Korea Supply*

16   *Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1149 (2003) ("Any award that

17   plaintiff would recover from defendants would not be restitutionary as it would not

18   replace any money or property that defendants took directly from plaintiff.").

19      Because Glidewell's allegedly improper demand did not cause any economic

20   harm to Keating, Keating has no standing to raise the allegation as a UCL claim.

21   **2.   The Alleged Improper Usages of the ® Symbol Do Not Confer**

22   **Standing**

23      With respect to the allegedly improper use of the ® symbol in two instances

24   on Glidewell's website, Keating again cannot show economic injury.  Keating has

25   no evidence that *anyone* relied on those two alleged improper usages to its

26   economic detriment, much less that Keating has.

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

3.    **The Alleged Enforcement of a Generic Mark Does Not Confer Standing**

Finally, with respect to Glidewell's allegedly attempting to enforce a generic mark, Keating again cannot prove economic injury. Most of the evidence Keating relies on is evidence of Glidewell's enforcing its mark against third parties. Obviously, that does not harm Keating. And Glidewell's enforcement of its mark against Keating has only resulted in a lawsuit and attorney's fees, which, as noted above, cannot confer standing under the UCL.

In short, Keating has not alleged, nor does it have evidence of, any cognizable economic harm. Because Keating has not suffered economic harm as a result of Glidewell's alleged acts of unfair competition, Keating does not have standing to bring a claim, and the Court should enter partial summary judgment in favor of Glidewell on Keating's Second Counterclaim for Unfair Competition under the UCL.

D.    **Keating's Common Law Unfair Competition Claim Fails for Lack of any Supporting Evidence**

Keating's Second Counterclaim also includes a claim for common law unfair competition. That claim fails, however, because common law unfair competition is limited to passing off and fraudulent acts akin to passing off, of which Keating has no evidence.

> The common law tort of unfair competition is generally thought to be synonymous with the act of "passing off" one's goods as those of another. The tort developed as an equitable remedy against the wrongful exploitation of trade names and common law trademarks that were not otherwise entitled to legal protection. (See generally 1 Callmann, Unfair Competition Trademarks & Monopolies (4th ed.1981) §§ 2.01–2.03.) According to some authorities, the tort also includes acts analogous to "passing off," such as the sale of confusingly similar products, by which a person exploits a competitor's

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

- 11 -

Glidewell MSJ re: Patent Misuse,
Unfair Competition, Unclean Hands, Fair Use, and Estoppel
CASE NO. SACV11-01309 DOC (ANx)

reputation in the market.

*Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1263 (1992).  Although the tort is not absolutely restricted to "passing off," it must involve "fraud . . . in securing the trade of a rival dealer." *Cel-Tech, supra*, 20 Cal. 4th at 193.

Keating has not pled, nor does it have evidence of, any "passing off" by Glidewell, nor any comparable sort of fraud, nor any diversion of business from Keating to Glidewell.  Accordingly, Keating has no evidence of common law unfair competition, and Glidewell is entitled to partial summary judgment on that counterclaim.

## E.   Keating's Counterclaim for Unfair Competition and Affirmative Defense of Unclean Hands Defense Fail on the Merits

Even if Keating could overcome its lack of standing, Keating's UCL counterclaim fails on the merits, as does Keating's unclean hands affirmative defense.  Below we separately analyze the legal standard applying to the UCL claim and unclean hands defense, but because the same arguments defeat both claims, we analyze the two together.

"The UCL defines unfair competition as 'any unlawful, unfair or fraudulent business act or practice....'  (§ 17200.)  Therefore, under the statute there are three varieties of unfair competition: practices which are unlawful, unfair or fraudulent." *In re Tobacco II Cases*, 46 Cal.4th 298, 311 (2009) (internal quotations omitted). "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech, supra*, 20 Cal. 4th at 180 (1999) (internal quotations omitted).  "Conduct is 'unfair' if it 'threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.'" *TYR Sport, Inc. v.*

Glidewell MSJ re: Patent Misuse,
Unfair Competition, Unclean Hands, Fair Use, and Estoppel
CASE NO. SACV11-01309 DOC (ANx)

*Warnaco Swimwear, Inc.*, 709 F.Supp.2d 821, 838 (C.D. Cal. 2010) (citing *Cel-Tech*, *supra*, 20 Cal.4th at 187). "A fraudulent business practice is one in which members of the public are likely to be deceived." *Morgan v. AT & T Wireless Services, Inc.*, 177 Cal.App.4th 1235, 1254 (2009) (internal quotations omitted).

"The doctrine of unclean hands 'bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted.'" *Dollar Systems, Inc. v. Avcar Leasing Systems, Inc.*, 890 F.2d 165, 173 (9th Cir. 1989). However, '[t]he unclean hands maxim is not a search warrant authorizing the defendant to probe into all the possible types of inequitable conduct ever engaged in by the plaintiff. Plaintiff's inequitable conduct is the basis for a valid defense only if it relates in some way to the subject matter in litigation.' 6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition (4th ed. 2010) § 31:48." *Pom Wonderful LLC v. Welch Foods, Inc.*, 737 F. Supp. 2d 1105, 1109 (C.D. Cal. 2010). In applying the unclean hands doctrine, the relevant inquiry is "not [whether] the plaintiff's hands are dirty, but [whether] he dirtied them in acquiring the right he now asserts, or [whether] the manner of dirtying renders inequitable the assertion of such rights against the defendants." *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir.1985) (internal quotation omitted). Due to the severity of the unclean hands remedy—potentially permitting defendant to go on infringing a trademark and confusing the public—"courts require clear, convincing evidence of 'egregious' misconduct before invoking the doctrine of unclean hands." *Citizens Fin. Group, Inc. v. Citizens Nat. Bank of Evans City*, 383 F.3d 110, 129 (3d Cir. 2004).

Keating styles its Fourth Affirmative Defense "Misuse of Trademark/Unclean Hands/Unfair Competition." The defense of misuse of trademark, however, is redundant with unclean hands. *KEMA, Inc. v. Koperwhats*, 658 F.Supp.2d 1022, 1035-36 (N.D. Cal. 2009) (striking trademark misuse defense

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

- 13 -

Glidewell MSJ re: Patent Misuse, Unfair Competition, Unclean Hands, Fair Use, and Estoppel
CASE NO. SACV11-01309 DOC (ANx)

1  as redundant with unclean hands defense, and stating, "to the extent trademark

2  misuse ever exists as a separate affirmative defense, see, e.g., *Northwestern Corp.*

3  *v. Gabriel Mfg. Co.*, 48 U.S.P.Q.2d 1902, 1909 (N.D. Ill.1998) (noting 'because of

4  trademark misuse's fragmented case history, the Court is reticent to even

5  acknowledge the defense's existence'), in this case . . . it is duplicative of

6  [defendant's] separately-pleaded defense of unclean hands."). Also, we were

7  unable to find any authority recognizing an unfair competition affirmative

8  defense—it is solely an affirmative claim. Accordingly, we analyze the Fourth

9  Affirmative Defense as an unclean hands claim.

10   **1.    The Alleged Demand that Keating Purchase Glidewell Products**

11        **Did Not Violate the UCL or Constitute Unclean Hands**

12        Keating claims that Glidewell demanded that Keating purchase Glidewell

13  goods and become an authorized lab to avoid an infringement lawsuit. The only

14  possible prong of the UCL applicable here is the "unfair" prong, but the alleged

15  settlement demand does not rise to the level of an anti-trust violation as required to

16  constitute an "unfair" business practice, nor does it constitute unclean hands.

17        As Professor McCarthy explains, no reported decision has upheld an anti-

18  trust defense to trademark infringement: "While the courts have recognized the

19  theoretical possibility of the antitrust misuse-unclean hands defense, in no final

20  reported decision involving trademark infringement has a court actually refused to

21  enforce a trademark because it was used in violation of antitrust law. Similarly, in

22  private litigation, the courts have refused to invoke the sanction of forfeiture of a

23  trademark as a remedy for an antitrust violation." 6 J. Thomas McCarthy,

24  McCarthy on Trademarks and Unfair Competition (4th ed. 2010) § 31:91. The

25  reason is that trademarks, unlike patents, usually do not confer the type of market

26  leverage needed to corner the market: "The fear expressed in [patent misuse] cases

27  such as *Morton Salt* is that the holder of a government monopoly will use the

28  monopoly to the detriment of the public by destroying competition. By contrast, in

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1    trademark law, the mark holder usually does not have the ability to destroy

2    competition.  The holder can only keep competitors from using the mark and, in

3    most circumstances, cannot keep them from selling a directly competing product."

4    *Juno Online Services v. Juno Lighting, Inc.*, 979 F. Supp. 684, 690 (N.D. Ill. 1997).

5         That is the case here.  Assuming (for the purpose this motion only) that

6    Keating's account of Glidewell's demand were accurate, Keating has no evidence

7    that Glidewell had the market leverage to force Keating to become a licensee.  If

8    Keating had simply changed its mark without becoming a licensee, the only

9    leverage Glidewell would have is a lawsuit for past infringement damages.  But

10   neither the filing of a lawsuit, nor aggressive negotiating tactics in connection with

11   the lawsuit, rise to the level of antitrust or unclean hands.  See 6 J. Thomas

12   McCarthy, McCarthy on Trademarks and Unfair Competition (4th ed. 2010)

13   § 31:51 ("Merely filing the trademark infringement lawsuit itself cannot constitute

14   unclean hands. . . . [A]cts such as . . . oppressive negotiating tactics do not directly

15   relate to the trademark allegedly infringed and cannot form the basis for an unclean

16   hands defense."); *Sears, Roebuck & Co. v. Sears plc*, 744 F.Supp. 1297, 1309-10

17   (D. Del. 1990) (in trademark infringement lawsuit, defendant claimed unclean

18   hands because plaintiff filed suit for ulterior motives; summary judgment granted to

19   plaintiff because while bringing suit brought the trademark before the court, the act

20   of bringing suit was not misconduct "in procuring or using the [trademark] right

21   that was the subject matter of the litigation.").  Keating plainly has the resources to

22   litigate, moreover, as it has aggressively litigated this case and retained Knobbe

23   Martens, a large, prominent (and presumably expensive) law firm to represent it.

24   Thus Glidewell's alleged demand does not evidence a violation of the anti-trust

25   laws, and is not "unfair" conduct under the UCL, nor does it constitute unclean

26   hands.

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

## 2. Glidewell's Alleged Enforcement of a Generic Mark Does Not Violate the UCL or Constitute Unclean Hands

Glidewell's alleged enforcement of a generic mark does not violate the UCL because no court has held Glidewell's mark is generic. Moreover, because it is registered, it is presumptively distinctive and *not* generic. "Federal registration of a trademark endows it with a strong presumption of validity. The general presumption of validity resulting from federal registration includes the specific presumption that the trademark is not generic." *Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1254 (9th Cir. 1982) (citations omitted). Keating's claim that the mark is generic does not make it so, and Glidewell is free to enforce its registered, presumptively valid trademark. *Dresser Indus., Inc. v. Heraeus Engelhard Vacuum, Inc.*, 267 F.Supp. 963, 975-76 (W.D. Pa. 1967), *aff'd*, 395 F.2d 457 (3d Cir. 1968) ("[I]t is to be noted that the mere assertion of genericality by an infringer does not ipso facto terminate a trademark owner's rights to the mark."). Absent evidence that a court has declared Glidewell's mark to be generic, or evidence that Glidewell was intentionally and knowingly enforcing an invalid mark (evidence that Keating does not have), there is nothing illegal about Glidewell's enforcing its presumptively valid mark.

Nor does it rise to the level of unfair competition that Glidewell has identified certain marks containing "Brux" and "Bruxer" as confusingly similar to BruxZir. Glidewell is entitled to enforce its mark against other marks that are "confusingly similar to its own." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000). Glidewell uses the mark "BruxZir" in connection with zirconia dental restoration products. The evidence shows that Glidewell has only sought to prevent use of what it deems to be confusingly similar marks used by direct competitors in the market for zirconia dental restoration products. (SUF 8). This enforcement could hardly be considered aggressive, much less unlawful. But even if it is aggressive, there is nothing wrong with aggressive trademark policing.

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

*Deere & Co. v. MTD Holdings, Inc.*, 2004 WL 1794507 (S.D.N.Y. 2004) (holding no improper trademark enforcement where plaintiff claimed certain colors as trade dress and stating, "The evidence and allegations [defendant] has provided with respect to [plaintiff's] use of its green and yellow trademarks and [plaintiff's] efforts to protect those trademarks simply do not amount to antitrust violations or misuse.  Instead, 'they indicate plaintiff's intent to vigorously enforce its trademark rights against those it believes are infringing on those rights.'"); *Clorox Co. v. Sterling Winthrop, Inc.*, 117 F.3d 50, 61 (2d Cir. 1997) ("Efforts to protect trademarks, even aggressive ones, serve the competitive purpose of furthering trademark policies."); *Weber v. National Football League*, 112 F.Supp.2d 667, 673 (N.D. Ohio 2000) ("The weight of authority dictates that legal efforts to protect trademark rights simply do not constitute a restraint of trade in violation of antitrust laws.").

Indeed, courts have recognized that trademark holders *must* aggressively police their marks on pain of diluting or losing them:

> Aggressively promoting and protecting a trademark, however, does not constitute unclean hands.  Indeed, "[i]n view of the strength of the mark and the very substantial good will attaching to it, plaintiffs can be expected to be, and are entitled to be, aggressive in asserting their [trademark] rights against others." *James Burrough Ltd. v. Lesher*, 309 F.Supp. 1154, 1161–62 (S.D. Ind. 1969).  If such conduct constituted unclean hands, plaintiffs would have to choose between policing their mark through vigorous efforts, which may include threats of suit or actual suits, or allowing general use to cheapen and dilute their mark.  *Esquire v. Esquire Slipper Mfg. Co.*, 243 F.2d 540, 545 (1st Cir.1957).

*Gateway, Inc. v. Companion Products, Inc.*, 320 F.Supp.2d 912, 928 (D.S.D. 2002).

For example, in *Esquire, Inc. v. Esquire Slipper Mfg. Co.*, 243 F.2d 540 (1st Cir. 1957) the district court criticized the plaintiff for overzealous policing.  The holder of the mark "Esquire," in connection with magazines, attempted to enforce

Snell & Wilmer

L.L.P.

LAW OFFICES

350 South Grand Avenue, Suite 2600, Two California Plaza

Los Angeles, California 90071

(213) 929-2500

the mark against marks such as "Squires" in fields far flung from the magazine industry such as convalescent homes.  Nonetheless, both the trial court and court of appeals found no unclean hands because the trademark laws encourage aggressive policing:

> The plaintiff certainly went to the brink in policing its
> mark.  But it was on the horns of a dilemma.  If it sat back
> and did nothing, it might see its mark so cheapened by
> general use that it lost the last vestige of value to the
> plaintiff or to anyone else.  On the other hand, if it
> embarked on too vigorous a campaign to protect the value
> of its mark by threatening to sue, and in numerous cases
> bringing suit against those who ignored its threats, it ran
> the risk of being met with the defense of 'unclean hands.'

*Id.* at 545.  Glidewell's policing efforts are not nearly as aggressive as those in *Esquire.*  They are restricted to direct competitors.  (SUF 8).  Thus Glidewell's efforts do not rise to the level of unclean hands or unfair competition.

Additionally, the BruxZir mark simply is not generic, as set forth in Glidewell's concurrently filed Motion For Partial Summary Judgment as to Keating Dental Arts, Inc.'s Invalidity Defense And Counterclaim, so Glidewell has done nothing wrong in enforcing its mark.  Rather than burden the Court with repetition of those arguments, we refer the Court to that motion and its supporting memorandum and incorporate the arguments therein by reference.

### 3. Glidewell's Alleged Misuse of the ® Symbol Does Not Violate the UCL or Constitute Unclean Hands

Finally, Glidewell's alleged two instances of misuse of the ® symbol on its website do not rise to the level of unfair competition or unclean hands.  Use of the ® symbol in connection with unregistered goods is actionable only if the trademark holder intended to deceive.  *Copelands' Enterprises, Inc. v. CNV, Inc.*, 945 F.2d 1563, 1566 (Fed. Cir. 1991) ("The improper use of the registration symbol by an applicant will defeat applicant's right to registration only in those cases where it is

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1   conclusively established that the misuse of the symbol was occasioned by an intent
2   to deceive the purchasing public or others in the trade into believing that the mark
3   was registered."); see also 3 J. Thomas McCarthy, McCarthy on Trademarks and
4   Unfair Competition (4th ed. 2010) § 19:146 ("[I]n ex parte and interpartes
5   proceedings in the PTO, modern decisions have been extremely lenient in accepting
6   explanations for misuse of the statutory notice. . . . [A]nything less than an
7   intentional or deliberate act to deceive the public is regarded as not constituting
8   misuse of the trademark notice so as to bar relief.").

9         Here, Keating did not even plead, much less produce evidence, that
10   Glidewell misused the ® symbol with the fraudulent intent to deceive.  To the
11   contrary, Glidewell's in-house counsel admitted the few alleged instances of misuse
12   were inadvertent mistakes and not consistent with Glidewell's policy.  (SUF 14).
13   The two alleged instances of misuse on Glidewell's website were corrected the day
14   after Glidewell discovered them.  (SUF 15).   Moreover, as the Trademark Manual
15   of Examining Procedure specifically recognizes, the fact that the incorrect usage
16   was in connection with a mark that had already in fact been registered for use in
17   closely related goods forecloses, without more, a finding of intent to deceive: it lists
18   "[r]egistration of the mark for other goods" as a "[c]ommon reason[] for improper
19   use of the federal registration symbol that do[es] *not* indicate fraud."  Trademark
20   Manual of Examining Procedure (October 2012) § 906.02 (emphasis added).  (SUF
21   2-3, 12).  Here, of course, the BruxZir mark is registered for a class of dental
22   restoration products.  Thus, Glidewell's handful of oversights in incorrectly using
23   the ® symbol for different but related products are not actionable as either unfair
24   competition or as an unclean hands defense.

25         Additionally, the alleged instances of improper usage of the ® symbol simply
26   are not sufficiently egregious to support an unclean hands defense.  Because of the
27   potential threat to the public from allowing an unclean hands defense—permitting a
28   defendant to go on using a confusing trademark—courts require clear and

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

- 19 -

Glidewell MSJ re: Patent Misuse,
Unfair Competition, Unclean Hands, Fair Use, and Estoppel
CASE NO. SACV11-01309 DOC (ANx)

convincing evidence of egregious conduct before permitting an unclean hands defense:  "Because a central concern in an unfair competition case is protection of the public from confusion, courts require clear, convincing evidence of 'egregious' misconduct before invoking the doctrine of unclean hands. Furthermore, the extent of actual harm caused by the conduct in question, either to the defendant or to the public interest, is a highly relevant consideration." *Pom Wonderful LLC v. Welch Foods, Inc.*, 737 F.Supp.2d 1105, 1110  (C.D. Cal. 2010) (citing *Citizens Fin. Group, Inc. v. Citizens Nat. Bank of Evans City*, 383 F.3d 110, 129 (3d Cir. 2004)). The court described this as "a very high burden on defendants seeking to establish an unclean hands defense." *Id.* at 1114.

In *Pom Wonderful*, plaintiff accused defendant of false advertising under the Lanham Act.  Plaintiff claimed defendant's product "100% White Grape Pomegranate" juice was misleading because it contains very little pomegranate juice. *Id.* at 1108.  Defendant asserted unclean hands on the ground that plaintiff, which also produced pomegranate juice, deceived consumers by obscuring "from concentrate" on its labels, failed to disclose on its labels that the product contains water, and advertised that the pomegranate juice goes straight from "Tree to Bottle," when in fact there were several intervening steps.  Although the court recognized that plaintiff's label was misleading, it rejected the unclean hands defense because there was no evidence of harm:

> The Court finds that while Welch [defendant] has offered undisputed evidence of Pom's [plaintiff] misleading label, Welch has not demonstrated by clear and convincing evidence that Pom's conduct was "egregious." Welch has not offered evidence that Pom's deception was material, i.e. that it induced customers to purchase a product that they otherwise might not have purchased. Welch has not attempted to link Pom's inclusion of trace amounts of elderberry juice in its 100% Pomegranate Juice to consumer deception or harm.

*Id.* at 1113.

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1   So, too, here, there is simply no evidence that anyone was harmed or

2   deceived by the few instances of alleged improper usage of the ® symbol.

3   Accordingly, those instances are not egregious and are insufficient to establish an

4   unclean hands defense.

5   **F.    Keating's Fifth Affirmative Defense of Fair Use Fails Because Keating is**

6   **Using "Bruxer" as a Trademark**

7   Keating alleges, without alleging any factual basis, that its use of the KDZ

8   Bruxer mark constitutes fair use.  This is a frivolous allegation; Keating's use of the

9   KDZ Bruxer mark does not fall within the scope of any type of fair use recognized

10  in federal trademark law.

11  There are two types of fair use recognized under the Lanham Act.  *Mattel,*

12  *Inc. v. Walking Mountain Productions*, 353 F.3d 792, 809 (9th Cir. 2003).  First, the

13  courts recognize an affirmative defense of nominative fair use where the defendant

14  uses plaintiff's mark to refer to *plaintiff's* product.  Nominative fair use requires

15  three elements:

> First, the plaintiff's product or service in question must be
> one not readily identifiable without use of the trademark;
> second, only so much of the mark or marks may be used
> as is reasonably necessary to identify the plaintiff's
> product or service; and third, the user must do nothing
> that would, in conjunction with the mark, suggest
> sponsorship or endorsement by the trademark holder.

21  *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).

22  Keating's conduct does not and cannot constitute nominative fair use for at least the

23  reason that it is not using the KDZ Bruxer mark to refer to the products of another,

24  but rather to its own products.

25  Second, the courts recognize what is now referred to as a "classic fair use"

26  defense.  There are three elements to the defense: (1) defendant's use of the term is

27  not as a trademark or service mark; (2) defendant uses the term "fairly and in good

28  faith"; and (3) defendant uses the term "only to describe" its goods or services.  15

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

Glidewell MSJ re: Patent Misuse,
Unfair Competition, Unclean Hands, Fair Use, and Estoppel
CASE NO. SACV11-01309 DOC (ANx)

Snell & Wilmer

L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1 U.S.C. § 1115(b)(4). Thus, the "classic fair use" defense applies where a party uses

2 a descriptive term not as a trademark but instead to describe the defendant's goods.

3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition (4th ed.

4 2010) § 11:49. Keating's use of the term "bruxer" fails at least two of the above

5 elements: it is used as a trademark, and it is not used "only to describe" Keating's

6 goods.

7 　　"To determine whether a term is being used as a mark [for purposes of the

8 fair-use defense], we look for indications that the term is being used to associate it

9 with a manufacturer." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand*

10 *Mgmt., Inc.*, 618 F.3d 1025, 1040 (9th Cir. 2010) (internal quotes omitted). Courts

11 often have to look to circumstantial evidence of whether a term is being used as a

12 trademark. *E.g. Id.* ("Indications of trademark use include whether the term is used

13 as a symbol to attract public attention, which can be demonstrated by the lettering,

14 type style, size and visual placement and prominence of the challenged words."

15 (internal formatting and citations omitted)).

16 　　Here, however, Keating has admitted it is using the term "bruxer" as a

17 trademark: it applied to the Patent and Trademark Office to *register* the mark

18 "KDZ BRUXER," admitted that it uses the mark as a trademark, and repeatedly

19 referred to the KDZ BRUXER mark as a "trademark" throughout its Second

20 Amended Answer. (E.g. Second Amended Answer, Affirmative Defenses and

21 Counterclaims, Doc. No. 57-1 ("SAA") ¶ 13 ("Defendant admits that it has used in

22 commerce the term KDZ BRUXER as a trademark in connection with advertising

23 of, sale of, or offer to sell dental prostheses."); ¶ 41 (application for registration)).

24 This is fatal for Keating's fair use defense, and compels partial summary judgment

25 in favor of Glidewell.

26 　　Further, Keating is not using "bruxer" only in its descriptive sense. As

27 Keating acknowledges, the term "bruxer" is used to refer to "[a] person who suffers

28 from bruxism." (SAA ¶ 46). In turn, "bruxism" refers to a condition of a patient

Snell & Wilmer

L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1   who habitually grinds teeth.  (*Id.*).  Keating admits, however, that it uses the term

2   "bruxer" in connection with the sale of "crown[s] made from zirconia."  (SAA ¶

3   42).  The term "bruxer," therefore, simply does not describe Keating's product—

4   Keating's product is not a person who grinds teeth.  Instead, Keating's use of the

5   term "bruxer" suggests a crown that is sufficiently strong to withstand the grinding

6   of teeth, as is set forth in Glidewell's co-pending motions for partial summary

7   judgment.  (See Glidewell's Motion for Partial Summary Judgment re:

8   Infringement of a Federally Registered Mark (First Cause of Action) And Dismissal

9   of Defendant's Second Affirmative Defense and First Counterclaim at pp. 7-8;

10   Glidewell's Motion for Partial Summary Judgment as to Keating Dental Art, Inc.'s

11   Invalidity Defense and Counterclaim at pp. 14-19).  Not only does the nature of

12   Keating's use preclude a fair use defense because the term is not being used "only

13   to describe" Keating's goods, but Keating is, *in its trademark*, attempting to utilize

14   *the exact same meaning* associated with Glidewell's registered BruxZir mark. [*Id.*]

15        Keating is, therefore, using "bruxer" as a trademark and not in its descriptive

16   sense.  This shuts the door on Keating's Fifth Affirmative Defense.  There are no

17   cognizable grounds on which Keating might otherwise prove up its purported fair

18   use defense.  The Court should grant partial summary judgment in Glidewell's

19   favor on this issue.

20   **G.   Keating's Third Affirmative Defense of Estoppel Fails**

21        Keating's Third Affirmative Defense for Estoppel fails to state a defense of

22   estoppel.  Keating claims Glidewell is estopped from asserting trademark

23   infringement against any competitor's use of the terms "brux" or "bruxer" in a

24   trademark.  [SAA ¶ 33.]  Keating's reason: "Plaintiff intentionally chose to adopt,

25   use, and register the trademark BRUXZIR, and NOT the words BRUX or

26   BRUXER." [*Id.*]

27        This activity simply does not give rise to an estoppel.  In the context of

28   trademark law, "[a]n estoppel can be created by a plaintiff's knowing acquiescence

1  in defendant's activities, or by an unreasonable delay coupled with prejudice,

2  creating an estoppel by laches." 6 J. Thomas McCarthy, McCarthy on Trademarks

3  and Unfair Competition (4th ed. 2010) § 32:105. Keating has neither alleged nor

4  produced any evidence that Glidewell consented to Keating's use of BruxZir or

5  confusingly similar marks using "Brux" or "Bruxer." Nor could it, because

6  Glidewell has never given Keating such consent. (SUF 21). To the contrary,

7  Keating claims (incorrectly) that Glidewell has been *overzealous* in preventing third

8  parties from using such marks. Thus, Glidewell is not estopped by acquiescence.

9      Keating's novel theory of estoppel, which would appear to generally

10 preclude trademark owners from enforcing their marks against the confusingly

11 similar but non-identical marks of their competitors, finds no purchase in the law.

12 To the contrary, trademark holders are not restricted to enforcing the mark against

13 verbatim imitators, but are free to enforce the mark against other marks

14 "confusingly similar to its own." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d

15 1199, 1205 (9th Cir. 2000) (granting preliminary injunction that "GoTo" label

16 infringes "Go Network" logo). If the rule were to the contrary, unscrupulous

17 companies could trade on the secondary meaning of other companies' marks by

18 simply changing a few letters around. That is not the law. Of course, Keating is

19 free to argue that these terms do not have secondary meaning or that there is no risk

20 of confusion, but that is a defense on the merits, not an estoppel.

21     Accordingly, the Court should grant partial summary judgment in favor of

22 Glidewell on Keating's Third Affirmative Defense of Estoppel.

## IV. **CONCLUSION**

24     For the foregoing reasons, the Court should enter partial summary judgment

25 for Glidewell on Keating's Second Counterclaim for Unfair Competition, Third

26 Counterclaim for Misuse of Trademark, Third Affirmative Defense of estoppel,

27 Fourth Affirmative Defense of unclean hands, and Fifth Affirmative Defense of fair

28 use.

Glidewell MSJ re: Patent Misuse,
Unfair Competition, Unclean Hands, Fair Use, and Estoppel
CASE NO. SACV11-01309 DOC (ANx)

1

2  Dated: November 19, 2012          SNELL & WILMER L.L.P.

3

4                                    By: _____

5                                    Philip J. Graves
                                     Greer N. Shaw
6                                    Christopher B. Pinzon

7

8                                     Attorneys for Plaintiff
                                     James R. Glidewell Dental Ceramics, Inc.
9                                    dba GLIDEWELL LABORATORIES

16140014.3

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Glidewell MSJ re: Patent Misuse,
Unfair Competition, Unclean Hands, Fair Use, and Estoppel
CASE NO. SACV11-01309 DOC (ANx)

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

*Glidewell Laboratories v. Keating Dental Arts, Inc.*
**United States District Court, Central, Case No. SACV11-01309-DOC (ANx)**

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2012, I electronically filed the document described as **JAMES R. GLIDEWELL DENTAL CERAMICS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT RE TRADEMARK MISUSE, UNFAIR COMPETITION, UNCLEAN HANDS, FAIR USE, AND ESTOPPEL** with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

| | |
|---|---|
| David G. Jankowski | **Attorneys for Defendant Keating** |
| Jeffrey L. Van Hoosear | **Dental Arts, Inc.** |
| Lynda J Zadra-Symes | Tel:  (949) 760-0404 |
| Knobbe Martens Olson and Bear LLP | Fax: (949) 760-9502 |
| 2040 Main Street, 14th Floor | |
| Irvine, CA  92614 | Jeffrey.vanhoosear@kmob.com |
| | David.jankowski@kmob.com |
| | Lynda.zadra-symes@kmob.com |
| | litigation@kmob.com |

Dated: November 19, 2012          SNELL & WILMER L.L.P.


By: *s/Philip J. Graves*
_____
        Philip J. Graves
        Greer N. Shaw

        Attorneys for Plaintiff
        James R. Glidewell Dental Ceramics, Inc.
        dba GLIDEWELL LABORATORIES

16139994.1