SNELL & WILMER L.L.P.
Philip J. Graves (SBN 153441)
pgraves@swlaw.com
Greer N. Shaw (SBN 197960)
gshaw@swlaw.com
350 South Grand Avenue, Suite 2600
Two California Plaza
Los Angeles, California  90071
Telephone: (213) 929-2500
Facsimile:  (213) 929-2525

Attorneys for Plaintiff
James R. Glidewell Dental Ceramics, Inc.
d/b/a Glidewell Laboratories

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JAMES R. GLIDEWELL DENTAL CERAMICS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> KEATING DENTAL ARTS, INC., <br><br> Defendant. | Case No. SACV11-01309-DOC(ANx) <br><br> **JAMES R. GLIDEWELL DENTAL CERAMICS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT RE INFRINGEMENT OF A FEDERALLY REGISTERED MARK (FIRST CAUSE OF ACTION) AND DISMISSAL OF DEFENDANT'S SECOND AFFIRMATIVE DEFENSE AND FIRST COUNTERCLAIM** |
| AND RELATED COUNTERCLAIMS. | <u>Hearing</u> <br><br> Date:   December 17, 2012 <br> Time:   8:30 a.m. <br> Ctrm:  9D, Hon. David O. Carter <br><br> Pre-Trial Conf.:   January 28, 2013 <br> Jury Trial:         February 26, 2013 |

**<u>HIGHLY CONFIDENTIAL - FILED UNDER SEAL</u>**

**<u>(PURSUANT TO PROTECTIVE ORDER DATED JANUARY 30, 2012)</u>**

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................. 1

II.  STATEMENT OF FACTS ..................................................... 4

III. ARGUMENT ..................................................................... 6

A.   Governing Law .......................................................... 6

B.   Keating's Infringement of Glidewell's Registered BruxZir Mark ....... 7

1.   Glidewell Owns the BruxZir Trademark Registration for Use on Dental Crowns and Bridges ........................ 7

2.   Glidewell's BruxZir Mark is Valid ............................ 7

3.   Likelihood of Confusion ....................................... 7

a.   Strength of the BruxZir Mark ......................... 7

(i)   The BruxZir Mark is Conceptually Strong ........... 8

(ii)  The BruxZir Mark is Commercially Strong.......... 8

b.   Proximity of Glidewell's and Keating's Goods Marketed under the Pertinent Marks ........................... 12

c.   Similarity of the Marks ............................... 13

d.   Evidence of Actual Confusion ........................ 17

e.   Marketing Channels.................................... 21

f.   Type of Goods and Degree of Care.................... 22

g.   Keating's Intent in Selecting the Mark............... 23

h.   Likelihood of Expansion of the Product Lines........ 24

IV.  CONCLUSION .................................................................. 25

# TABLE OF AUTHORITIES

**Page**

## <u>CASES</u>

*Alfacell Corp. v. Anticancer Inc.,*
 71 U.S.P.Q.2d 1301 (T.T.A.B. 2004)................................................................22

*AMF Inc. v. Sleekcraft Boats,*
 599 F.2d 341 (9th Cir. 1979)...............................................................7, 14, 21

*Apple Computer, Inc. v. Formula International, Inc.,*
 725 F.2d 521 (9th Cir. 1984)................................................................16

*Blansett Pharmacal Co. v. Carmrick Laboratories, Inc.,*
 25 U.S.P.Q.2d 1473 (T.T.A.B. 1992)................................................22

*Brookfield Comms., Inc. v. West Coast Entertainment Corp.,*
 174 F.3d 1036 (9th Cir. 1999) ................................................................6

*Century 21 Real Estate Corp. v. Sandlin,*
 846 F.2d 1175 (9th Cir. 1988)............................................9, 12, 13, 20, 21

*Clamp Mfg. Co., Inc. v. Enco Mfg. Co., Inc.,*
 870 F.2d 512 (9th Cir. 1989)..............................................................16

*Conversive, Inc. v. Conversagent, Inc.,*
 433 F. Supp. 2d 1079 (C.D. Cal. 2006)...........................8, 12, 13, 16, 17, 23, 24

*Dreamwerks Prod. Grp., Inc. v. SKG Studio,*
 142 F.3d 1127 (9th Cir.1998) .............................................................7

*E. & J. Gallo Winery v. Gallo Cattle Co.,*
 967 F.2d 1280 (9th Cir. 1992).........................................................8, 23

*Entrepreneur Media, Inc. v. Smith,*
 279 F.3d 1135 (9th Cir.2002) ..........................................................14

*Fleischmann Distilling Corp. v. Maier Brewing Co.,*
 314 F.2d 149 (9th Cir. 1963) ............................................................15

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.,*
 618 F.3d 1025 (9th Cir. 2010) ............................................................9

*GoTo.com, Inc. v. Walt Disney Co.,*
 202 F.3d 1199 (9th Cir. 2000)......................................................7, 14

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery,*
 150 F.3d 1042 (9th Cir.1998) ..............................................................8

*KOS Pharmaceuticals, Inc. v. Andrx Corp.,*
 369 F.3d 700 (3d Cir. 2004) ............................................................22

GLIDEWELL'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT RE INFRINGEMENT

1

**TABLE OF AUTHORITIES**

2

(continued)

Page

3

*Lahoti v. Vericheck, Inc.,*
   636 F.3d 501 (9th Cir. 2011) ............................................................. 8, 9

4

*Morningside Group Ltd. v. Morningside Capital Group,* L.L.C.,
   182 F.3d 133 (2d Cir.1999) ................................................................. 17

5

*Official Airline Guides, Inc. v. Goss,*
   6 F.3d 1385 (9th Cir.1993) .................................................................. 14

6

7

*Pacific Telesis Group v. International Telesis Communications,*
   994 F.2d 1364 (9th Cir. 1993) ............................................................. 23

8

*PerfumeBay.com Inc. v. eBay Inc.,*
   506 F.3d 1165 (9th Cir.2007) .............................................................. 22

9

10

*Playboy Enterprises, Inc. v. Netscape Communications Corp.,*
   354 F.3d 1020 (9th Cir.2004) ................................................................ 7

11

*Rearden LLC v. Rearden Commerce, Inc.,*
   683 F.3d 1190 (9th Cir. 2012) .......................................................... 7, 13

12

13

*Schering Corp. v. Alza Corp.,*
   207 U.S.P.Q. 504 (T.T.A.B. 1980) ...................................................... 22

14

*Sicilia Di R. Biebow & Co. v. Cox,*
   732 F.2d 417 (5th Cir. 1984) ............................................................... 15

15

16

*Thane Intern., Inc. v. Trek Bicycle Corp.,*
   305 F.3d 894 (9th Cir.2002) ................................................................ 17

17

*Therasense, Inc. v. Becton, Dickinson & Co.,*
   649 F.3d 1276 (Fed. Cir. 2011) .......................................................... 24

18

19

*UMG Recordings, Inc. v. Mattel, Inc.,*
   100 U.S.P.Q.2d 1868 (T.T.A.B. 2011) ................................................ 15

20

*Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.,*
   419 F.3d 925 (9th Cir. 2005) ............................................................. 6, 7

21

22

23

**OTHER**

24

Trademark Manual of Examing Procedure §§ 1213.05 et seq. ................ 14

25

26

27

28

GLIDEWELL'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT RE INFRINGEMENT

# I. **INTRODUCTION**

In June 2009, plaintiff James R. Glidewell Dental Ceramics, Inc. ("Glidewell") began selling a new type of dental crown, made entirely of zirconia, a material with the tensile strength to stand up to highly demanding applications. Glidewell coined the term "BruxZir" as the mark under which to sell this new product, and obtained a registration on the mark on January 19, 2010.

In May 2011, after nearly two years of massive advertising and promotional activity by Glidewell under its BruxZir mark, defendant Keating Dental Arts, Inc. ("Keating") began selling a competing line of dental crowns and bridges under the brand "KDZ Bruxer," marketing its product to the same universe of consumers (dentists) through the same marketing channels as are used by Glidewell. Glidewell requested that Keating either stop using the KDZ Bruxer mark in connection with dental crowns and bridges or become an authorized Glidewell-licensed dental laboratory. After Keating refused, Glidewell filed suit, and now moves for partial summary judgment on the issue of infringement of its registered BruxZir mark.

The Court should grant partial summary judgment of infringement because (1) Glidewell's mark is valid for the reasons set forth in Glidewell's co-pending Motion for Partial Summary Judgment as to Keating's Invalidity Defense and Counterclaim ("MPSJ re Keating's Invalidity Defense"), and (2) the undisputed facts demonstrate that every one of the governing *Sleekcraft* factors favors the conclusion that confusion is likely:

**Strength of Glidewell's Mark**: The BruxZir mark is both conceptually and commercially strong. First, the mark is suggestive, and is therefore inherently distinctive. There is no such thing as a "BruxZir;" the term was coined by Glidewell to suggest a product strong enough for use by people who suffer from bruxism ("Brux") and that the product is made of zirconia ("Zir"). Some imagination or "multistage reasoning" is required to understand the significance of the mark; that is all that is required to render the mark suggestive.

GLIDEWELL'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT RE INFRINGEMENT

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1    Second, the mark is commercially strong.  Glidewell has invested nearly

2 REDACTED in promoting products under the mark over the past three years, through a

3 variety of marketing channels including the Internet, direct mailers, advertisements

4 in dental journals, trade shows, press releases, continuing education brochures,

5 videos and training sessions for dentists, samples, and specialized prescription

6 forms.  These efforts have been remarkably effective: nearly REDACTED      in

7 BruxZir-branded crowns and bridges have been sold in the past three years.

8 Glidewell's BruxZir branded products have received wide recognition and acclaim

9 in the dental industry as shown by numerous articles written about and awards won

10 by BruxZir-branded products, and direct evidence shows that dentists are highly

11 aware of the BruxZir brand.  Finally, the industry largely respects Glidewell's

12 mark; there are only two companies (besides Glidewell and Keating) currently

13 offering dental restoration products under any marks similar to BruxZir.

14    **Proximity of Goods Marketed under the Marks**:  Keating's KDZ Bruxer

15 crowns and bridges compete directly with Glidewell's BruxZir-brand crowns and

16 bridges.

17    **Similarity of the Marks**:  Keating has merely prefaced a root word

18 ("Bruxer") that is nearly identical to the entirety of Glidewell's mark ("BruxZir")

19 with a three-letter acronym ("KDZ") that is does not on its face serve any source-

20 identifying function.  The suggestive meaning of the marks is highly similar, with

21 the root of Keating's mark suggesting use for persons who suffer from bruxism and

22 the "Z" in KDZ suggesting zirconia.  There can be no dispute as to these facts;

23 Shaun Keating himself has admitted them.

24    **Evidence of Actual Confusion**:  Here there is extensive evidence of actual

25 confusion – in fact, REDACTED

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

REDACTED

**Marketing Channels**:  Glidewell's BruxZir-brand dental crowns and bridges and Keating's KDZ Bruxer dental crowns and bridges are marketed through the same channels.

**Type of Goods and Degree of Care**:  The goods at issue here are not such as to require a high degree of care in selecting between brands, and even if they were, the presence of actual confusion among sophisticated consumers <u>enhances</u> (rather than detracts from) the showing that confusion is likely.

**Keating's Intent in Selecting the KDZ Bruxer Mark**:  The undisputed evidence shows that Keating knew of Glidewell's BruxZir mark when it selected its KDZ Bruxer mark to promote its competing goods.  This is sufficient as a matter of law to support the conclusion that Keating intended to trade on Glidewell's mark.

**Likelihood of Expansion of the Product Lines**:  The product lines are already directly competitive, so this factor favors Glidewell.

Snell & Wilmer

L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1    While Glidewell need not demonstrate that all eight factors favor it in order

2    to obtain judgment, here they do.  The Court should grant Glidewell's Motion.

3                    ## II. <u>STATEMENT OF FACTS</u>

4    Glidewell is a leading provider of dental restoration products to dentists.

5    (Statement Of Uncontroverted Facts In Support Of James R. Glidewell Dental

6    Ceramics, Inc.'s Motion For Partial Summary Judgment Re Infringement of a

7    Federally Registered Mark (First Cause Of Action) and Dismissal Of Defendant's

8    Second Affirmative Defense and First Counterclaim ("SUF").  Among the products

9    that Glidewell sells are dental crowns and bridges.  (SUF 2).  A crown is a type of

10   dental restoration product that completely caps a tooth.  (SUF 3).  It is typically

11   bonded to the tooth using dental cement or resin.  (SUF 4).

12   In the past, crowns were principally fashioned either from gold (which has

13   favorable tensile characteristics but is considered aesthetically unappealing by

14   many people) or from porcelain veneers fused to a metal casting (which is

15   aesthetically appealing but tends to crack when subjected to heavy pressure or

16   grinding).  (SUF 5).  More recently, dental laboratories began to fashion crowns

17   made of a veneer fused or adhered to a hard ceramic such as zirconia.  (SUF 6).

18   However, these crowns too tended to crack when subjected to heavy grinding.

19   (SUF 7).

20   Beginning in 2005, Glidewell began developing a new type of crown, a solid

21   zirconia crown.  (SUF 8).  The advantages of this new monolithic zirconia (or "full

22   contour zirconia") crown were that it would be extremely hard – sufficiently hard to

23   be used in applications requiring a material with high tensile and compressive

24   strength, including treating patients with "bruxism," a parafunctional activity in

25   which a person repeatedly and habitually grinds his teeth – and that it could be

26   milled from a block of zirconia based on a digital representation of the patient's

27   mouth.  (SUF 9).  The disadvantage was that zirconia is an unattractive material,

28   due to its extreme whiteness and lack of translucency.  (SUF 10).  Ultimately,

Glidewell partially overcame the aesthetic challenges of the material, devising a process for fabricating a full contour zirconia crown that was sufficiently appealing that it could be used in a variety of applications. (SUF 11).

In early 2009, Glidewell conceived the name for its new line of monolithic zirconia dental restoration products: BruxZir. (SUF 12). The name was chosen in large part because it suggested the primary characteristics of the product: that it was sufficiently strong and durable to be used in a variety of applications, including treating patients with bruxism ("Brux"), and that the material from which the crown was fashioned is zirconia ("Zir"). (SUF 13). The product line was launched under the BruxZir mark in June 2009. (SUF 14). Since its introduction in 2009, the BruxZir line of restoration products (primarily dental crowns and bridges) has been phenomenally popular, generating nearly REDACTED in revenue from July 2009 through September 2012. (SUF 16). Glidewell has promoted the product line heavily, investing nearly REDACTED in advertising its products under the mark from June 2009 to June 2012. (SUF 17).

Glidewell applied to register the BruxZir mark on June 7, 2009 for use in connection with dental bridges, dental caps, dental crowns, dental inlays, dental onlays, and dental prostheses. (SUF 18). The mark was registered on the Principal Register on January 19, 2010, as Reg. No. 3,739,663. (SUF 19). Glidewell applied to register the mark in connection with dental ceramics on May 27, 2011; Keating filed an opposition to the application on December 7, 2011, and the case is currently suspended in the Trademark Trial and Appeal Board pending the outcome of this action. (SUF 20).

In May 2011, Keating began to offer competing full contour zirconia dental crowns and bridges under the brand "KDZ Bruxer." (SUF 21). Keating's product competes directly with Glidewell's BruxZir product – the products are offered to the same universe of consumers (dentists) through the same marketing channels (e.g., Internet, direct mail, ads in dental industry journals) and at similar price

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1   points ($99 v. $139).  (SUF 53-61).  Not surprisingly, in a sampling of 22 dentists

2   identified by Keating as KDZ Bruxer customers, nine – i.e., 41% – were former

3   Glidewell BruxZir customers.  (SUF 62).

4        On August 30, 2011, Glidewell filed suit against Keating, alleging claims for

5   infringement of its registered BruxZir mark, unfair competition under section 43(a)

6   of the Lanham Act, and unfair competition under California Business & Professions

7   Code section 17200.  (Dkt#1).  On October 26, 2012, Keating's Second Amended

8   Answer, Affirmative Defenses and Counterclaims was entered into the docket.

9   (Dkt#67)  Keating denies the material allegations of Glidewell's complaint, and

10  alleges (among other things) a Second Affirmative Defense that there is no

11  likelihood of confusion and a First Counterclaim for a declaratory judgment that its

12  KDZ Bruxer mark does not infringe Glidewell's BruxZir mark.  (Dkt#67)

13                          **III.  ARGUMENT**

14  **A.      Governing Law**

15       The elements of a claim for trademark infringement are: (1) ownership of a

16  valid, protectable mark; and (2) likelihood of confusion arising from defendant's

17  use of the mark.  *Brookfield Comms., Inc. v. West Coast Entertainment Corp.*, 174

18  F.3d 1036, 1047, 1053 (9th Cir. 1999).  A plaintiff may discharge its burden

19  regarding the first element by proving that it owns a federal registration for the

20  mark.  *Id.* at 1047.  Proof of registration shifts the burden of proof (not just

21  production) on the issue of validity to the defendant, by a preponderance of the

22  evidence.  *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419

23  F.3d 925, 928 (9th Cir. 2005).

24       The Ninth Circuit applies eight factors, known as the *Sleekcraft* factors,  in

25  determining whether a likelihood of confusion exists in a case for trademark

26  infringement: (1) strength of the mark; (2) proximity of the goods; (3) similarity of

27  the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type

28  of goods and the degree of care likely to be exercised by the purchaser; (7)

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

GLIDEWELL'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT RE INFRINGEMENT

1   defendant's intent in selecting the mark; and (8) likelihood of expansion of the

2   product lines. *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1209 (9th

3   Cir. 2012); *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979).

4   These factors are applied in a flexible fashion, not as a rote checklist; in other

5   words, "we do not count beans." *Dreamwerks Prod. Grp., Inc. v. SKG Studio,* 142

6   F.3d 1127, 1129 (9th Cir.1998).  However, evidence of actual confusion, at least on

7   the part of an appreciable portion of the actual consuming public, constitutes strong

8   support for a finding of "likelihood of confusion."  *See, e.g., Playboy Enterprises,*

9   *Inc. v. Netscape Communications Corp.,* 354 F.3d 1020, 1026 (9th Cir.2004).

10  **B.   Keating's Infringement of Glidewell's Registered BruxZir Mark**

11     **1.   Glidewell Owns the BruxZir Trademark Registration for Use on**

12        **Dental Crowns and Bridges**

13      It is undisputed that Glidewell owns the trademark registration for BruxZir

14  on the class of goods including dental crowns and bridges.  (SUF 20).  It is also

15  undisputed that Glidewell is the senior user, as it has been marketing its goods

16  under the BruxZir mark since June 2009, whereas Keating commenced marketing

17  its competing goods under its KDZ Bruxer mark in May 2011.  (SUF 21).

18     **2.   Glidewell's BruxZir Mark is Valid**

19      Glidewell's registration for the BruxZir mark shifts the burden of proof

20  regarding validity to Keating.  *Yellow Cab,* 419 F.3d at 928.  Glidewell addresses

21  this element of its claim in its co-pending MPSJ re Keating's Invalidity Defense,

22  which is incorporated herein by reference.

23     **3.   Likelihood of Confusion**

24        **a.   Strength of the BruxZir Mark**

25      The strength of a mark for the purpose of evaluating likelihood of confusion

26  is evaluated in terms of its conceptual strength and its commercial strength.

27  *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000).  A strong

28  trademark is entitled to a greater degree of protection than a weak mark.  *Id.*

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

GLIDEWELL'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT RE INFRINGEMENT

### (i)    The BruxZir Mark is Conceptually Strong

The strength of a mark depends, at least in part, on where it falls on the spectrum of conceptual strength, the guideposts of which are fanciful (the strongest), arbitrary, suggestive, descriptive and generic (the weakest). *E. & J. Gallo Winery v. Gallo Cattle Co.,* 967 F.2d 1280, 1291 (9th Cir. 1992).

For the reasons set forth in Glidewell's co-pending MPSJ re Keating's Invalidity Defense, Glidewell's BruxZir mark is suggestive. If a consumer "must use imagination or any type of multistage reasoning to understand the mark's significance," then the mark does not describe the product's features but rather suggests them. *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery,* 150 F.3d 1042, 1047 n. 8 (9th Cir.1998). The BruxZir mark is suggestive because it suggests (but does not directly describe) a particular quality or characteristic of the dental restoration products that Glidewell offers under the mark: it suggests that crowns marketed under the brand are strong because they are appropriate for patients who "brux," i.e., who grind their teeth, and also suggests that the crowns are made from zirconia, a particularly hard material. (SUF 13). Of course, Glidewell's crowns are not used only by people who suffer from bruxism; they are used by a variety of patients who choose to have monolithic zirconia crowns due to tooth damage caused by a variety of conditions. (SUF 9). Accordingly, Glidewell's BruxZir mark is suggestive. (SUF 13). It is therefore inherently distinctive; this factor weighs in favor of finding that confusion is likely. *Conversive, Inc. v. Conversagent, Inc.,* 433 F. Supp. 2d 1079, 1090 (C.D. Cal. 2006) (granting summary judgment in favor of registered mark).

### (ii)    The BruxZir Mark is Commercially Strong

A mark is commercially strong when it is widely recognized by relevant consumers in a particular market. *Lahoti v. Vericheck, Inc.,* 636 F.3d 501, 508 (9th Cir. 2011). Thus, a registrant's efforts to promote the mark in association with its goods or services can augment the strength of its mark as a source identifier. *Id.;*

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

GLIDEWELL'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT RE INFRINGEMENT

1  *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1179 (9th Cir. 1988)

2  ("Marks may be strengthened by extensive advertising, length of time in business,

3  public recognition, and uniqueness."). It is undisputed that the relevant consumers

4  for Glidewell's BruxZir-brand crowns and bridges are dentists. (SUF 25). Thus,

5  Glidewell's efforts to promote – and success in promoting – the BruxZir mark to

6  dentists is highly relevant to the strength of the mark. *Lahoti*, 636 F.3d at 508

7  (affirming the district court's finding that the mark at issue was commercially

8  strong due to the extensive advertising of the mark at issue); *Fortune Dynamic, Inc.*

9  *v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1034-35 (9th Cir. 2010);

10  *Century 21*, 846 F.2d 1175, 1179 (9th Cir. 1988) (holding that plaintiff Century 21

11  Real Estate Corp.'s mark was strong because plaintiff expended several million

12  dollars in advertising real estate services in connection with its mark and the mark

13  has been used in connection with numerous real estate sales).

14      Glidewell promotes its dental crowns and bridges under the BruxZir mark

15  through a broad range of channels, including the Internet (through Glidewell's blog

16  as well as www.BruxZir.com), direct mailers, trade shows, ads in dental industry

17  publications, press releases, continuing education brochures, videos and training

18  sessions for dentists, samples, and specialized prescription forms. (SUF 25-40).

19  Over the period June 2009 to June 2012, Glidewell spent approximately REDACTED

20  in promoting its products under the BruxZir mark through these channels. (SUF

21  27). About REDACTED of this was spent marketing Glidewell's BruxZir finished

22  crowns and bridges, and about REDACTED was spent marketing Glidewell's BruxZir

23  zirconia milling blanks. (SUF 28). About REDACTED was spent on direct mail

24  advertising, which was sent to roughly every dentist in the country, and another

25  roughly REDACTE was spent on advertising in dental industry publications, with the

26  remainder being allocated among Glidewell's other marketing channels. (SUF 29).

27      Glidewell's advertising of products under the BruxZir mark has

28  accomplished substantial market penetration. (SUF 30). For example, between

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

GLIDEWELL'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT RE INFRINGEMENT

October 2009 and November 2012, the www.BruxZir.com website received approximately 289,210 unique pageviews, of which 78% constituted U.S. traffic. (SUF 31).  As a point of reference, there are only approximately 125,000 dentists in the United States.  (SUF 32).  Glidewell's direct mail advertising of products under the BruxZir mark is sent every quarter to nearly the entire population of dentists in the country.  (SUF 33).  Glidewell's promotion of the BruxZir product line in dental industry publications is consistent, ongoing and pervasive – the advertisements run in numerous publications, including ADA News (once a month), Chairside Magazine, Dental Economics, Dental Lab Reports, Dentaltown, Dental Tribune, Dentistry Today, Inclusive Magazine, JDT, and LMT.  (SUF 35).  Glidewell selects these publications because of their wide readership and ability to reach thousands, if not hundreds of thousands, of dentists and dental laboratories.  (SUF 35).

In addition, Glidewell attends dozens of trade shows and conventions a year around the country, especially the American Dental Association conventions.  (SUF 37).  At these conventions and trade shows, Glidewell consistently, prominently displays the BruxZir product line in a variety of contexts, including on the booth, the signage, in brochures, and takeaways.  (SUF 38).  In addition, Dr. Michael DiTolla, Glidewell's Director of Clinical Education and Research, and Robin Carden, Glidewell's Vice President of Research and Development, make educational videos, write articles and give presentations concerning Glidewell's BruxZir-branded products.  (SUF 39).  Dr. DiTolla's presentations and videos are viewed by thousands of dentists every year.  (SUF 40).

Glidewell's BruxZir branded products have received wide recognition and acclaim in the dental industry.  (SUF 41).  Numerous articles have been written by third parties concerning the BruxZir products and referencing them by Glidewell's registered mark; a partial collection of 13 of these articles is submitted in support of this Motion.  (SUF 42).  In addition, Glidewell has received numerous awards recognizing the superiority of its BruxZir-brand dental crowns and bridges,

GLIDEWELL'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT RE INFRINGEMENT

1   including (1) the 2010 Best Product Innovation Award from Tosch Corporation, (2)

2   the Journal of Dental Technology's Wow! 2011 Products Awards, (3) Inside Dental

3   Technology 2011 iNavigator Top Pick, (4) 2011 Best Product from Clinician's

4   Report, (4) the Pride Institute's 2012 Best of Class Technology Award, and (5)

5   2012 semifinal candidate for Best New Material.  (SUF 43).

6        The commercial strength of the mark is also demonstrated by the volume of

7   goods sold under the mark.  BruxZir is the number one prescribed brand of full

8   zirconia dental crown in the country.  (SUF 44).  From June 2009 to September

9   2012, Glidewell has sold approximately REDACTED    dental crowns and bridges

10  under the mark.  (SUF 45).  In monetary terms, from July 2009 to September 2012

11  Glidewell sold nearly REDACTED    worth of dental crowns and bridges under the

12  BruxZir mark.  (SUF 46).

13       In addition, the very strong brand recognition that Glidewell has achieved

14  through its extensive advertising of its dental crowns and bridges under the BruxZir

15  mark is evidenced by third party recognition of the strength of the brand.  First, the

16  evidence shows that a large portion of dentists in the U.S. recognize the BruxZir

17  brand for dental crowns and bridges.  Dr. DiTolla travels extensively throughout the

18  country and has spoken with thousands of dentists over the past three years, and

19  based on his many interactions with fellow dentists opines that the BruxZir brand

20  has achieved wide recognition among dentists.  (SUF 47).  Moreover, third party

21  research supports this conclusion: in 2010, Dentsply, the second largest dental

22  company in the United States and a manufacturer of ceramic products, conducted

23  research to identify brands for fixed products (such as crowns and bridges) that

24  have a high degree of recognition among dentists and dental laboratories in the U.S.

25  (SUF 48).  The results indicated that Glidewell's BruxZir mark had a high degree of

26  recognition.   (SUF 49).

27       The commercial strength of the mark is further demonstrated by the fact that

28  it is relatively unique in its field.  A mark that has relatively unique linguistic

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

GLIDEWELL'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT RE INFRINGEMENT

1    recognition in a given field is a strong mark.  *Century 21*, 846 F.2d at 1179.  Here,

2    there are only five marks used in commerce that sound anything like BruxZir for

3    use in connection with either dental crowns or with constitutive materials: (1)

4    Glidewell's registered BruxZir mark; (2) Glidewell's unregistered BruxZir mark;

5    (3) Keating's KDZ Bruxer mark; (4) "GPS BruxArt" (a competitor's junior pending

6    mark); and (5) "BruxThetix" (another competitor's junior pending mark).  (SUF

7    50).  This is not a crowded field in which several companies are using a mark

8    similar to BruxZir to sell similar products or services; the BruxZir mark is

9    relatively unique in its field.  (SUF 51).  The fact that many companies have

10   abandoned confusingly similar marks when confronted with the BruxZir mark,

11   further indicates the industry's recognition of the strength of the mark.

12        In factual settings similar to that here, the Ninth Circuit has not hesitated to

13   affirm entry of summary judgment in favor of the registered mark.  For example, in

14   *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175 (9th Cir. 1988), the district

15   court granted summary judgment in favor of the registered "Century 21" mark, and

16   the Ninth Circuit affirmed.  In evaluating the strength of the mark, the court held

17   that a mark "may be strengthened by extensive advertising, length of time in

18   business, public recognition, and uniqueness," and found that evidence that Century

19   21 had "expended several million dollars" in advertising real estate services under

20   the mark and that the mark had been used in connection with real estate sales in

21   excess of one billion dollars supported the district court's determination that the

22   mark was strong.  *Id.* at 1179.  Accordingly, the mark is commercially strong.

23   (SUF 52).

24        **b.    Proximity of Glidewell's and Keating's Goods Marketed**

25              **under the Pertinent Marks**

26        "Directly competing goods are in the closest proximity under the likelihood

27   of confusion analysis."  *Conversive*, 433 F.Supp.2d at 1091.  If goods directly

28   compete, "confusion will usually arise . . . ."  *Id.*

GLIDEWELL'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT RE INFRINGEMENT

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1     This factor strongly demonstrates that buyers are likely to be confused,

2 because Keating's dental crowns and bridges <u>compete directly</u> with Glidewell's

3 dental crowns and bridges.  Both Glidewell and Keating sell dental crowns and

4 bridges throughout the United States.  (SUF 54).  Both Glidewell and Keating sell

5 full contour zirconia crowns and bridges under the competing marks.  (SUF 53).

6 Both Keating and Glidewell sell these crowns and bridges to the same universe of

7 potential buyers – dentists throughout the U.S.  (SUF 57).  Glidewell's crowns are

8 sold at a comparable price point to Glidewell's crowns – Glidewell's BruxZir

9 crowns are sold for $99, and Keating's KDA Bruxer crowns are sold for $139.

10 (SUF 59-60).  REDACTED

11

12

13     In fact, dentists consider Glidewell's BruxZir

14 crowns and Keating's KDZ Bruxer crowns to be directly competitive.  (SUF 61).

15 This is further borne out by the fact of the 22 dentists that Keating identified as

16 KDZ Bruxer customers in its Third Amended Disclosures, <u>nine</u> – i.e., <u>41%</u> – were

17 former BruxZir customers of Glidewell.  (SUF 62).  Accordingly, the evidence

18 leave no room for genuine dispute but that Glidewell's BruxZir crowns and bridges

19 and Keating's KDZ Bruxer crowns and bridges directly compete.  This factor

20 favors the conclusion that confusion is highly likely.  *Century 21*, 846 F.2d at 1179

21 (the fact that the goods marketed under the marks were "essentially the same"

22 supported summary judgment in favor of the registered mark); *Conversive,* 433

23 F.Supp.2d at 1091(finding that the fact that the "type of goods and services at

24 issue" were the same supported summary judgment in favor of the registered mark).

25     c.     <u>**Similarity of the Marks**</u>

26     To evaluate the similarity of the marks, courts look to the "sight, sound and

27 meaning" of the marks, and recognize that "any similarities weigh more heavily

28 than differences." *Rearden*, 683 F.3d at 1211.  When evaluating the similarities

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

GLIDEWELL'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT RE INFRINGEMENT

between marks, a lesser degree of similarity is required when the goods are directly competitive. *Sleekcraft,* 599 F.2d at 350; *Official Airline Guides, Inc. v. Goss,* 6 F.3d 1385, 1392 (9th Cir.1993) ("Related goods are more likely than non-related goods to confuse the public as to the producer of the goods. A diminished standard of similarity is therefore applied when comparing the marks of closely related goods."). Ultimately, "the greater the similarity between the two marks at issue, the greater the likelihood of confusion." *GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1206 (9th Cir.2000). In addition, "the marks should be considered as they appear in the marketplace." *Entrepreneur Media, Inc. v. Smith,* 279 F.3d 1135, 1144 (9th Cir.2002).

As shown above, Glidewell has expended substantial amounts promoting its dental crowns and bridges under the BruxZir mark, rendering this mark commercially strong and lessening the degree of similarity required to support a finding of likely confusion. When a mark is strong, "the fact that a consumer would likely notice the difference between two marks might not suffice for a finding that the marks are dissimilar." *Entrepreneur,* 279 F.3d at 1145 n.9. That is exactly the case here – while there are differences between the two marks, the strength of Glidewell's mark nevertheless renders confusion much more likely.

In any event, even were the law's thumb not planted firmly on Glidewell's side of the scale, the "sight" factor weighs strongly in favor of confusion. Glidewell's BruxZir mark is a standard suggestive word mark. It is not a composite mark, as it does not include two or more separable word elements or a design or logo. TMEP §§1213.05 et seq. (SUF 63). Keating's KDZ Bruxer mark is a composite mark, consisting of the separable components "KDZ" and "Bruxer." (SUF 66). While the Court is to consider both marks in their entirety, the anti-dissection rule does not preclude a fine analysis of the similarities and differences between the marks. Here, Keating has merely prefaced a root word ("Bruxer") that is nearly identical to the entirety of Glidewell's mark ("BruxZir") with a three-letter

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1    acronym ("KDZ") that does not on its face serve any source-identifying function.

2    (SUF 65).  Keating capitalizes the first letter of the "Bruxer" component of its

3    mark, just as Glidewell capitalizes the first letter of "BruxZir."  (SUF 64).  While

4    Keating has apparently attempted to highlight the "KDZ" portion of its mark in

5    some of its advertising, the fact that KDZ is an opaque acronym means that it

6    cannot merely rely on the prefix to differentiate; in any event, in the text of its

7    advertisements the term is no more prominent than the "Bruxer" root of its mark.

8    (SUF 66).  Thus, the two marks are substantially similar.  Indeed, if Keating's

9    addition of "KDZ" to the root "Bruxer" is likely to accomplish anything in this

10   context, it is to suggest to dentists some association or affiliation between Keating

11   and Glidewell.  *UMG Recordings, Inc. v. Mattel, Inc.*, 100 U.S.P.Q.2d 1868, 2011

12   WL 5014005 (T.T.A.B. 2011) (Applicant's MOTOWN METAL for toy cars in

13   Mattel's HOT WHEELS line was sufficiently similar to opposer's MOTOWN

14   music and recordings that confusion was likely).

15       The likelihood that the similarities of the marks will confuse is heightened by

16   the fact that buyers in the relevant market (i.e., dentists) are not likely to consider

17   the marks side by side as a shopper would two competing brands in a supermarket;

18   instead, they are likely to consider the marks separately at different points in time.

19   (SUF 67).  This fact tends to support the determination that confusion is likely,

20   (SUF 68), because subtle differences in the marks are less likely to be "in the

21   buyer's mind" when the buyer makes the decision to purchase Keating's dental

22   crowns under the KDZ Bruxer mark.  *Fleischmann Distilling Corp. v. Maier*

23   *Brewing Co.*, 314 F.2d 149, 161 (9th Cir. 1963) ("In determining whether there is a

24   likelihood of confusion we must remember that the members of the purchasing

25   public have only general impressions which must guide them in the selection of

26   products."); *Sicilia Di R. Biebow & Co. v. Cox*, 732 F.2d 417, 433 (5th Cir. 1984)

27   ("The inability [of consumers] to compare the products side by side and observe the

28   precise differences in appearance may increase the likelihood of confusion.  When

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

GLIDEWELL'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT RE INFRINGEMENT

1    making a decision to purchase the consumer must rely on memory rather than a

2    visual comparison.").

3         In addition, the meaning associated with a mark may also indicate a

4    likelihood of confusion. "Confusing similarity may exist if the two terms convey

5    the same idea or meaning." *Clamp Mfg. Co., Inc. v. Enco Mfg. Co., Inc.*, 870 F.2d

6    512, 518 (9th Cir. 1989). Here, the BruxZir mark and the KDZ Bruxer mark

7    suggest similar meanings. BruxZir suggests a product indicated for people who

8    suffer from bruxism, i.e., people who tend to grind their teeth ("Brux") and that the

9    product is made of zirconia ("Zir"). (SUF 70). Similarly, KDZ Bruxer suggests a

10   product indicated for people who suffer from bruxism ("Bruxer") and that the

11   product is made of zirconia (the "Z" in KDZ). (SUF 71). This is not open to

12   dispute: Sean Keating admitted at deposition that he chose the "Bruxer" mark

13   because dentists had been asking for a product for their bruxism patients – "KDZ

14   Bruxer is just – for your grinder patients . . . ." – and that the "Z" in KDZ "implies

15   zirconia." (SUF 69).

16        Cases are legion in which identity or substantial similarity in marks that share

17   only a suffix has been found sufficient to demonstrate a likelihood of confusion,

18   particularly where the goods branded under the marks are competitive. For

19   example, in *Apple Computer, Inc. v. Formula International, Inc.*, 725 F.2d 521 (9th

20   Cir. 1984), the district court preliminarily enjoined the defendant from selling its

21   computer kit under the mark "Pineapple," and the Ninth Circuit affirmed. The

22   court held that the district court had not abused its discretion in finding that "the

23   addition of the prefix "Pine" to the trademark "Apple" presented a likelihood of

24   confusion," particularly since the mark might "suggest that the computer kits are

25   manufactured by licensees or subsidiaries of Apple." *Id.* at 526. Notably, in the

26   *Apple* case the junior user's computer kits did not directly compete with Apple's

27   computers, whereas here Keating's dental crowns and bridges sold under its KDZ

28   Bruxer mark directly compete with those of Glidewell. *See also Conversive*, 433

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

F.Supp.2d at 1091 (finding CONVERSAGENT to be "phonetically and visually very similar" to CONVERSIVE AGENT).

### d.   Evidence of Actual Confusion

There is significant evidence of actual confusion, from the files of both Glidewell and Keating – in fact, evidence of REDACTED

.  "Evidence of actual confusion constitutes persuasive proof that future confusion is likely." *Thane Intern., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 902 (9th Cir.2002). "[T]he Second Circuit, in applying a factor similar to the Sleekcraft 'degree of care' factor, held that the likelihood of confusion is actually increased where there is evidence that sophisticated consumers are actually confused." *Conversive, Inc. v. Conversagent, Inc.*, 433 F. Supp. 2d 1079, 1092-93 (C.D. Cal. 2006) (*citing Morningside Group Ltd. v. Morningside Capital Group*, L.L.C., 182 F.3d 133 (2d Cir. 1999)). "The potential buyers of the parties' products are sophisticated business people rather than run-of-the-mill consumers; nevertheless, at least two of those potential buyers have found the parties' marks to be confusing." *Conversive, Inc.*, 433 F. Supp. 2d at 1092-93. Moreover, "the parties' marks and the products are so similar that 'initial interest confusion' —where a 'defendant uses [a] plaintiff's trademark in a manner calculated to capture initial consumer attention'—is very likely." *Conversive, Inc.*, 433 F. Supp. 2d at 1093.

REDACTED

*Snell & Wilmer*
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

REDACTED

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1    REDACTED

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

GLIDEWELL'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT RE INFRINGEMENT

1   REDACTED
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GLIDEWELL'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT RE INFRINGEMENT

1  relevant market was sufficient to support summary judgment for the plaintiff.

2  *Century 21*, 846 F.2d at 1179.  Here, there is a mountain of evidence of actual,

3  direct confusion.  The Court should grant summary judgment for Glidewell.

4            e.    **Marketing Channels**

5       "Convergent marketing channels increase the likelihood of confusion."

6  *Sleekcraft*, 599 F.2d at 353.  Here, the channels through which Glidewell's

7  BruxZir-brand dental crowns and bridges are marketed are nearly identical to those

8  through which Keating's KDZ Bruxer-brand dental crowns and bridges are

9  marketed. (SUF 88).  As noted above, Glidewell promotes its dental crowns and

10  bridges under the BruxZir mark through the Internet (through Glidewell's blog as

11  well as www.BruxZir.com), direct mailers, trade shows, ads in dental industry

12  publications, press releases, continuing education brochures, videos and training

13  sessions for dentists, samples, and specialized prescription forms.  (SUF 26).

14  REDACTED

15

16

17

18                    . In fact, not only do Glidewell and Keating promote

19  their competing products under their similar brands in the same marketing channels,

20  they do so in the same magazines – such as ADA News, Dental Economics,

21  Dentistry Today, and Dentaltown.  (SUF 90).  REDACTED

22

23

24

25

26

27                 This strongly supports a finding that confusion is likely.

28  *Century 21*, 846 F.2d at 1179 (the fact that the marketing channels were

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1   "substantially the same" supported summary judgment in favor of the registered

2   mark); *PerfumeBay.com Inc. v. eBay Inc.*, 506 F.3d 1165, 1174-75 (9th Cir.2007)

3   (courts consider the use of the Internet as a marketing and advertising channel "as

4   exacerbating the likelihood of confusion.").

### f.   Type of Goods and Degree of Care

6         Even sophisticated consumers, such as dentists, are not immune from

7   mistaking one mark for another.  *Schering Corp. v. Alza Corp.*, 207 U.S.P.Q. 504

8   (T.T.A.B. 1980) (finding that while physicians and pharmacists are knowledgeable

9   in their fields, they are not necessarily knowledgeable as to marks, thus not immune

10  from mistaking one mark for another); *Alfacell Corp. v. Anticancer Inc.*, 71

11  U.S.P.Q.2d 1301 (T.T.A.B. 2004) ("[T]here is no reason to believe that medical

12  expertise as to pharmaceuticals will ensure that there will be no likelihood of

13  confusion as to source or affiliation."); *Blansett Pharmacal Co. v. Carmrick*

14  *Laboratories, Inc.*, 25 U.S.P.Q.2d 1473 (T.T.A.B. 1992) (found likely confusion

15  between prescription drugs NALEX and NOLEX for nasal decongestants because

16  of similar goods marketed under marks which "look alike and sound alike."); *KOS*

17  *Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 716 n.13 (3d Cir. 2004)

18  ("medical expertise is not enough, in and of itself, to lessen the likelihood of

19  confusion in prescription drug cases.").

20        A dentist's selection of one full contour zirconia crown over another is not a

21  decision that inherently requires a high degree of care.  While there are aesthetic

22  differences between different brands of full contour zirconia crown, the properties

23  of these crowns are highly similar because all of these crowns are made of the same

24  material – zirconia.  (SUF 91).  The price differential between Glidewell's BruxZir-

25  brand crowns and Keating's KDZ Bruxer crowns ($99 v. $139) is not so great as to

26  reward focused attention on the brand under which the crowns are marketed,

27  particularly since in most instances a patient's insurance will cover the cost.  So,

28  this factor too suggests that confusion is likely.

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

GLIDEWELL'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT RE INFRINGEMENT

1    Moreover, even if there were evidence that a high degree of care were used

2    by dentists in selecting a particular brand of monolithic zirconia crown, that would

3    not be the end of the matter.  Where there is evidence that sophisticated consumers

4    are actually confused (as there is here), the likelihood of confusion based on the

5    degree of care factor is *enhanced*.  *Conversive,* 433 F.Supp.2d at 1093.  Moreover,

6    even where a high degree of care is exercised, initial interest confusion may still

7    exist.  *Id.*  That is exactly the situation here.  In any event, even if this factor

8    supported Keating (which it does not), it would not be sufficient to overcome

9    Glidewell's strong showing that confusion is likely.  *Pacific Telesis Group v.*

10   *International Telesis Communications*, 994 F.2d 1364, 1369 (9th Cir. 1993).

### g.    Keating's Intent in Selecting the Mark

12   Although proof of intent to deceive consumers is not necessary to establish

13   trademark infringement, intent is relevant because, "[w]here an alleged infringer

14   chooses a mark he knows to be similar to another, one can infer an intent to

15   confuse."  *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1293 (9th

16   Cir.1992) (*citing Sleekcraft*, 599 F.2d at 354).

17   The evidence indicates that Keating was aware of Glidewell's BruxZir mark

18   when it made the decision to begin selling competing products under the KDZ

19   Bruxer mark.        REDACTED

20                        By that time, Glidewell's BruxZir mark was

21   already well known in the industry; indeed, Glidewell had already spent about

22   REDACTED    promoting its goods under the BruxZir mark.  (SUF 95).

23   REDACTED

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1    REDACTED                        Given that the BruxZir mark was registered

2    on the Principal Register in January 2010, the trademark search report undoubtedly

3    contained a reference to Glidewell's BruxZir mark; no other inference is

4    reasonable.  Moreover, given the extensive advertising that Glidewell had already

5    conducted under its BruxZir mark, including in numerous dental journals, from

6    2009 through early 2011, there can be no genuine dispute but that Keating was

7    either already aware of Glidewell's BruxZir mark, or became aware of it through

8    the brand selection process, prior to selecting its KDZ Bruxer brand.

9    REDACTED

18   *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011)

19   ("Because direct evidence of deceptive intent is rare, a district court may infer

20   intent from indirect and circumstantial evidence.").  Here, substantial evidence of

21   Keating's intent to free-ride on Glidewell's good will in the BruxZir mark exists,

22   and Keating can point to nothing to tip the scales back in its favor.  The Court

23   should find that this factor favors Glidewell.

24               h.      **Likelihood of Expansion of the Product Lines**

25         This factor favors a finding of likely confusion because the product lines are

26   already identical.  *Conversive,* 433 F.Supp.2d at 1093.

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

GLIDEWELL'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT RE INFRINGEMENT

# IV.  CONCLUSION

For the reasons set forth above, this Court should grant partial summary judgment in favor of Glidewell.

Dated: November 19, 2012

SNELL & WILMER L.L.P.

By: _Deborah S. Mallgrave for_

Philip J. Graves
Greer N. Shaw
Attorneys for Plaintiff James R. Glidewell
Dental Ceramics, Inc. dba GLIDEWELL
LABORATORIES

16169622.2

GLIDEWELL'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT RE INFRINGEMENT

*Glidewell Laboratories v. Keating Dental Arts, Inc.*
**United States District Court, Central, Case No. SACV11-01309-DOC (ANx)**

**CERTIFICATE OF SERVICE**

I hereby certify that on November 19, 2012, I electronically filed the document described as **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FOR PARTIAL SUMMARY JUDGMENT RE INFRINGEMENT OF A FEDERALLY REGISTERED MARK (FIRST CAUSE OF ACTION) AND DISMISSAL OF DEFENDANT'S SECOND AFFIRMATIVE DEFENSE AND FIRST COUNTERCLAIM** with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

David G. Jankowski
Jeffrey L. Van Hoosear
Lynda J Zadra-Symes
Knobbe Martens Olson and Bear LLP
2040 Main Street, 14th Floor
Irvine, CA  92614

**Attorneys for Defendant Keating Dental Arts, Inc.**
Tel:  (949) 760-0404
Fax: (949) 760-9502

Jeffrey.vanhoosear@kmob.com
David.jankowski@kmob.com
Lynda.zadra-symes@kmob.com
litigation@kmob.com

Dated: November 19, 2012          SNELL & WILMER L.L.P.


By: *s/Philip J. Graves*
    Philip J. Graves
    Greer N. Shaw

    Attorneys for Plaintiff
    James R. Glidewell Dental Ceramics, Inc.
    dba GLIDEWELL LABORATORIES

Certificate of Service
SACV11-01309-DOC (ANx)