SNELL & WILMER L.L.P.
Philip J. Graves (SBN 153441)
pgraves@swlaw.com
Greer N. Shaw (SBN 197960)
gshaw@swlaw.com
350 South Grand Avenue, Suite 2600
Two California Plaza
Los Angeles, CA 90071
Telephone: (213) 929-2500

Attorneys for Plaintiff
James R. Glidewell Dental Ceramics, Inc.
d/b/a Glidewell Laboratories

Snell & Wilmer L.L.P. LAW OFFICES 350 South Grand Avenue, Suite 2600, Two California Plaza Los Angeles, California 90071 (213) 929-2500

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

JAMES R. GLIDEWELL DENTAL CERAMICS, INC.,

Plaintiff,

vs.

KEATING DENTAL ARTS, INC.,

Defendant.

AND RELATED COUNTERCLAIMS.

Case No. SACV11-01309-DOC(ANx)

**JAMES R. GLIDEWELL DENTAL CERAMICS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO KEATING DENTAL ARTS, INC.'S INVALIDITY DEFENSE AND COUNTERCLAIM**

Hearing

Date: December 17, 2012
Time: 8:30 a.m.
Ctrm: 9D, Hon. David O. Carter

Pre-Trial Conf.: January 28, 2013
Jury Trial: February 26, 2013

**HIGHLY CONFIDENTIAL - FILED UNDER SEAL**

**(PURSUANT TO PROTECTIVE ORDER DATED JANUARY 30, 2012)**

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 1

III. LEGAL ARGUMENT .......... 4

A. The BruxZir Mark Is Not Generic .......... 4

1. The BruxZir Mark Is Presumptively Inherently Distinctive .......... 5

2. The Evidence Establishes That The BruxZir Mark Is Not Generic .......... 6

a. Keating Personnel Have Admitted that the BruxZir Mark Is Not Generic .......... 7

b. Other Evidence Establishes that the BruxZir Mark Is Not Generic .......... 9

(i) Dentists' Testimony Establishes that the BruxZir Mark Is Not Generic .......... 9

(ii) Glidewell Testimony Establishes that the BruxZir Mark Is Not Generic .......... 10

(iii) Expert Testimony Establishes that the BruxZir Mark Is Not Generic .......... 12

3. That "Brux" May Be Generic Does Not Render "BruxZir" Generic .......... 13

B. The BruxZir Mark Is Suggestive and Therefore Inherently Distinctive .......... 14

1. The BruxZir Mark Is Suggestive Under the "Imagination" Test .......... 14

2. The "Competitors' Needs" Test Supports Suggestiveness .......... 17

C. If Descriptive, The BruxZir Mark Has Attained Secondary Meaning .......... 19

1. The BruxZir Mark Is Suggestive, Not Descriptive .......... 19

2. Even if Descriptive, the BruxZir Mark Is Distinctive Because It Has Attained Secondary Meaning .......... 20

a. Actual Purchasers Associate the BruxZir Mark With Glidewell .......... 20

b. Glidewell Has Extensively Advertised and Promoted the BruxZir Mark .......... 21

c. The Length and Manner of Use of the BruxZir Mark Supports Secondary Meaning .......... 23

d. Glidewell's Exclusive Use of the Claimed Trademark Supports Secondary Meaning .......... 24

**TABLE OF CONTENTS**
(continued)

**Page**

IV. CONCLUSION .......... 24

## TABLE OF AUTHORITIES

Page

### CASES

*Advertise.com, Inc. v. AOL Advertising, Inc.*, 616 F.3d 974 (9th Cir. 2010) .......... 13

*Aluminum Fabricating Co. v. Season-All Window Corp.*, 259 F.2d 314 (2d Cir. 1958) .......... 18

*Bada Co. v. Montgomery Ward & Co.*, 426 F.2d 8 (9th Cir. 1970) .......... 5

*Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112 (1st Cir. 2006) .......... 19

*Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir. 1999) .......... 16

*California Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451 (9th Cir. 1985) .......... 13

*Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135 (9th Cir. 2002) .......... 19

*Kendall-Jackson Winery, Ltd. v. E.&J. Gallo Winery*, 150 F.3d 1042 (9th Cir. 1998) .......... 14

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596 (9th Cir. 2005) .......... 5, 7

*Lahoti v. Vericheck, Inc.*, 586 F.3d 1190 (9th Cir. 2009) .......... 6

*Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337 (2d Cir. 1999) .......... 5

*Miss World (UK), Ltd. v. Mrs. America Pageants, Inc.*, 856 F.2d 1445 (9th Cir. 1987) .......... 17

*Nautilus Grp., Inc. v. ICON Health and Fitness, Inc.*, 372 F.3d 1330 (Fed. Cir. 2004) .......... 15, 16

*Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137 (9th Cir. 2011) .......... 15

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736 (2d Cir. 1998) .......... 7

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189 (1985) .......... 6, 7, 19

# TABLE OF AUTHORITIES
(continued)

Page

*Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749 (9th Cir. 2006) ... 6, 20

*Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126 (9th Cir. 2006) ... 5, 13

*Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535 (4th Cir. 2004) ... 5

*Rodeo Collection, Ltd. v. W. Seventh*, 812 F.2d 1215 (9th Cir. 1987) ... 17

*Rudolph Int'l v. Realys, Inc.*, 482 F.3d 1195 (9th Cir. 2007) ... 14

*Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175 (3rd Cir. 2010) ... 15

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902 (9th Cir. 1995) ... 14, 15

*Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625 (9th Cir. 2005) ... 15

*Thomas Pride Mills, Inc. v. Monsanto Co.*, 155 U.S.P.Q. (BNA) 205, *11 (N.D. Ga. 1967) ... 16

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992) ... 20

*Venetianaire Corp. of America v. A & P Import Co.*, 302 F. Supp. 156 (S.D.N.Y. 1969) ... 16

*Yellow Cab Co. of Sacramento v. Yellow Cab Co. of Elk Grove, Inc.*, 419 F.3d 925 (9th Cir. 2005) ... 4, 5, 6, 7, 20

*Zobmondo Enter., LLC v. Falls Media, LLC*, 602 F.3d 1108 (9th Cir. 2010) ... 4, 5, 6, 14, 15, 16, 17, 18, 19, 20

## STATUTES

15 U.S.C. § 1052(f) ... 20

## OTHER

2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 12:17.50, pp. 12-61 (2012) ... 7

## I.    INTRODUCTION

By affirmative defense and by counterclaim, Keating Dental Arts, Inc. ("Keating") challenges the validity of the BruxZir mark, owned by James R. Glidewell Dental Ceramics, Inc. ("Glidewell").  Keating says that the mark is generic and therefore unprotectable.  As a backstop, Keating says the mark is descriptive without secondary meaning, which would also render it unprotectable. The Court can and should reject both arguments, as a matter of law and in view of the overwhelming evidence.  The U.S. Patent and Trademark Office ("PTO") has already found the BruxZir mark to be neither generic nor descriptive, but rather suggestive and therefore inherently distinctive.  Keating has admitted as much.  The burden to overcome the resulting presumption of distinctiveness is heavy, and it is evident that Keating cannot carry it.  As detailed below, testimony from practicing dentists, Glidewell personnel, and experts firmly establishes that the BruxZir mark is suggestive and not generic.  As for descriptiveness, the evidence strongly supports secondary meaning.  The BruxZir mark does not exist in a crowded field of similar marks.  Glidewell has spent approximately three million dollars to market and promote the mark via a wide variety of communication channels.  Testimony from practicing dentists confirms that these efforts have established the BruxZir mark as a strong source identifier for Glidewell.  Because Keating cannot possibly carry its heavy burden to establish that the mark is invalid because it is either generic or descriptive without secondary meaning, the Court should grant summary judgment in Glidewell's favor as to Keating's First Affirmative Defense and Fourth Counterclaim of invalidity.

## II.    STATEMENT OF FACTS

Glidewell is a leading provider of dental restoration products to dentists. ("[Proposed] Statement of Uncontroverted Facts and Conclusions Of Law In Support Of Glidewell's Motion For Partial Summary Judgment Re Genericness ("SUF") 62).  Among the products that Glidewell sells are dental crowns and

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

bridges. (SUF 63). A crown is a type of dental restoration product that completely caps a tooth. (SUF 64). It is typically bonded to the tooth using dental cement or resin. (SUF 65).

In the past, crowns were principally fashioned either from gold (which has favorable tensile characteristics but is considered aesthetically unappealing by many people) or from porcelain veneers fused to a metal casting (which is aesthetically appealing but tends to crack when subjected to heavy pressure or grinding). (SUF 66). More recently, dental laboratories began to fashion crowns made of a veneer fused or adhered to a hard ceramic such as zirconia. (SUF 67). However, these crowns too tended to crack when subjected to heavy grinding. (SUF 68).

Beginning in 2005, Glidewell began developing a new type of crown, a solid zirconia crown. (SUF 69). The advantages of this new monolithic zirconia (or "full contour zirconia") crown were that it would be extremely hard – sufficiently hard to be used in applications requiring a material with high tensile and compressive strength, including treating patients with "bruxism," a parafunctional activity in which a person repeatedly and habitually grinds his teeth – and that it could be milled from a block of zirconia based on a digital representation of the patient's mouth. (SUF 70). The disadvantage was that zirconia is an unattractive material, due to its extreme whiteness and lack of translucency. (SUF 71). Ultimately, Glidewell partially overcame the aesthetic challenges of the material, devising a process for fabricating a full contour zirconia crown that was sufficiently appealing that it could be used in a variety of applications. (SUF 72).

In early 2009, Glidewell conceived the name for its new line of monolithic zirconia dental restoration products: BruxZir. (SUF 73). The name was chosen in large part because it suggested a primary characteristics of the product: that it was sufficiently strong and durable to be used in a variety of applications, including treating patients with bruxism ("Brux"), and that the material from which the crown

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

was fashioned is zirconia ("Zir"). (SUF 74). The product line was launched under the BruxZir mark in June 2009. (SUF 75). Since its introduction in 2009, the BruxZir line of restoration products (primarily dental crowns and bridges) has been phenomenally popular, generating nearly REDACTED in revenue from July 2009 through September 2012. (SUF 76). Glidewell has promoted the product line heavily, investing nearly REDACTED in advertising its products under the mark from June 2009 to June 2012. (SUF 77).

Glidewell applied to register the BruxZir mark on June 7, 2009 for use in connection with dental bridges, dental caps, dental crowns, dental inlays, dental onlays, and dental prostheses. (SUF 78). The mark was registered on the Principal Register on January 19, 2010, as Reg. No. 3,739,663. (SUF 79). As noted on the registration, the class of goods and services is "Dental bridges; Dental caps; Dental crowns; Dental inlays; Dental onlays; Dental prostheses." (SUF 80). Glidewell also applied to register the mark in connection with another class of goods – dental ceramics – on May 27, 2011; Keating filed an opposition to that application on December 7, 2011, and the case is currently suspended in the Trademark Trial and Appeal Board pending the outcome of this action. (SUF 81).

In May 2011, after nearly two years of massive advertising and promotional activity by Glidewell under its BruxZir mark, Keating began to offer competing full contour zirconia dental crowns and bridges under the brand "KDZ Bruxer." (SUF 82). Keating's product competes directly with Glidewell's BruxZir product – the products are offered to the same universe of consumers (dentists) through the same marketing channels (e.g., Internet, direct mail, ads in dental industry journals) and at similar price points ($99 v. $139). (SUF 83). Not surprisingly, in a sampling of 22 dentists identified by Keating as KDZ Bruxer customers, nine – i.e., 41% – were former Glidewell BruxZir customers. (SUF 84).

On August 30, 2011, Glidewell filed suit against Keating, alleging claims for infringement of its registered BruxZir mark, unfair competition under section 43(a)

Snell & Wilmer L.L.P. LAW OFFICES 350 South Grand Avenue, Suite 2600, Two California Plaza Los Angeles, California 90071 (213) 929-2500

of the Lanham Act, and unfair competition under California Business & Professions Code section 17200. (Dkt#1) On October 26, 2012, Keating's Second Amended Answer, Affirmative Defenses and Counterclaims was entered into the docket. (Dkt#67) Keating denies the material allegations of Glidewell's complaint, and alleges (among other things) a First Affirmative Defense that the BruxZir mark is "invalid and/or unenforceable" and a Fourth Counterclaim for cancellation of the BruxZir registration because the BruxZir mark allegedly is either generic or descriptive without secondary meaning. (Dkt#57-1; Dkt#67)

## III. LEGAL ARGUMENT

As its First Affirmative Defense, Keating posits that Glidewell's BruxZir mark is "invalid and/or unenforceable" because the mark "is generic and/or descriptive." (Dkt#57-1 at 4:13-23) As its Fourth Counterclaim, Keating seeks cancellation of Glidewell's Trademark Reg. No. 3,739,663 on the grounds that it is generic or "merely descriptive and has not achieved secondary meaning." (Dkt#57-1 at 17:1-27) As discussed in detail below, Glidewell's BruxZir mark is both presumptively and actually distinctive; that is, it is neither generic nor descriptive without secondary meaning. To the contrary, the PTO correctly determined that the mark is suggestive and therefore inherently distinctive. The Court should enter judgment in favor of Glidewell as to Keating's First Affirmative Defense and its Fourth Counterclaim.

### A. <u>The BruxZir Mark Is Not Generic</u>

To be valid and protectable, a mark must be "distinctive." *Zobmondo Enter., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010). "Distinctiveness measures 'the primary significance of the mark to the purchasing public.'" *Id.* There are five categories of trademarks: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful. *E.g.*, *Yellow Cab Co. of Sacramento v. Yellow Cab Co. of Elk Grove, Inc.*, 419 F.3d 925, 927 (9th Cir. 2005). "The latter three categories are deemed inherently distinctive and are automatically entitled to

Snell & Wilmer L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

protection because they naturally 'serve[] to identify a particular source of a product ....'" *Yellow Cab*, 419 F.3d at 927 (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005)). A generic mark carries no protection, while a descriptive mark, although not inherently distinctive, can receive protection if it has acquired distinctiveness by establishing "secondary meaning" in the marketplace. *See id.* Which category a mark belongs in is a question of fact. *Zobmondo Enter.*, 602 F.3d at 1113.

In determining distinctiveness, the Court is "'required to consider standards of meaning not [its] own, but prevalent among prospective purchasers of the article.'" *Zobmondo Enter.*, 602 F.3d at 1113 (quoting *Bada Co. v. Montgomery Ward & Co.*, 426 F.2d 8, 11 (9th Cir. 1970)). "'The fact-finder is not the designated representative of the purchasing public, and the fact-finder's own perception of the mark is not the object of the inquiry. Rather, the fact-finder's function is to determine, based on the evidence before it, what the perception of the purchasing public is.'" *Zobmondo Enter.*, 602 F.3d at 1113 (quoting *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 344 (2d Cir. 1999)).

**1. The BruxZir Mark Is Presumptively Inherently Distinctive**

"'[T]he fact that a mark is registered is *strong evidence* that the mark satisfies the statutory requirements for distinctiveness necessary for trademark protection.'" *Zobmondo Enter.*, 602 F.3d at 1121 (quoting *Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 542 (4th Cir. 2004) (emphasis added)). Accordingly, a "federal registration ... entitles the plaintiff to a '*strong presumption*' that the mark is a protectable mark." *Zobmondo Enter.*, 602 F.3d at 1113 (emphasis added); *see also, e.g.*, *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1135 (9th Cir. 2006) ("[R]egistered marks are endowed with a strong presumption of validity ..."). "[T]he burden on the defendant necessary to overcome that presumption at summary judgment is heavy.'" *Zobmondo Enter.*, 602 F.3d at 1115.

Moreover, "[w]here the PTO issues a registration without requiring proof of

Snell & Wilmer L.L.P. LAW OFFICES 350 South Grand Avenue, Suite 2600, Two California Plaza Los Angeles, California 90071 (213) 929-2500

secondary meaning, the presumption is that the mark is inherently distinctive." *Zobmondo Enter.*, 602 F.3d at 1113-14; *see also, e.g., Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 760 (9th Cir. 2006) ("Where, as here, the PTO issues a mark registration without requiring proof of secondary meaning, the registrant ... enjoys a 'presumption that the purchasing public perceives the ... mark to be inherently distinctive."). In other words, a registered mark issued by the PTO without a showing of secondary meaning is presumed to be at least suggestive. As the Ninth Circuit has explained, "'[d]eference to the PTO's classification decision is sensible because the PTO has special expertise that we lack on this fact-intensive issue.'" *Zobmondo Enter.*, 602 F.3d at 1121 (quoting *Lahoti v. Vericheck, Inc.*, 586 F.3d 1190, 1199 (9th Cir. 2009)).

Here, the BruxZir mark is a registered mark. (SUF 1). The mark was registered on the Principal Register on January 19, 2010, as Reg. No. 3,739,663. (SUF 2). The PTO issued the mark without requiring any showing of secondary meaning. (SUF 3). Under controlling Ninth Circuit law, this is "strong evidence" that the BruxZir mark is inherently distinctive for its registered class (Dental bridges; Dental caps; Dental crowns; Dental inlays; Dental onlays; Dental prostheses) – i.e., it is at least suggestive – and the mark enjoys a "strong presumption" of validity. Keating bears a "heavy" burden to overcome this presumption at summary judgment. As shown below, Keating has not developed sufficient evidence to overcome the presumption of inherent distinctiveness.

**2. <u>The Evidence Establishes That The BruxZir Mark Is Not Generic</u>**

First, Keating cannot show that the BruxZir mark is generic.

"Marks that constitute a common descriptive name are referred to as generic. A generic term is one that refers to the genus of which the particular product is a species." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985). "'To determine whether a term has become generic, we look to whether consumers understand the word to refer only to a particular producer's goods or whether the

Snell & Wilmer L.L.P. LAW OFFICES 350 South Grand Avenue, Suite 2600, Two California Plaza Los Angeles, California 90071 (213) 929-2500

consumer understands the word to refer to the goods themselves.'" *Yellow Cab*, 419 F.3d at 929 (quoting *KP Permanent Make-Up*, 408 F.3d at 604). If a buyer understands the terms as being identified with a particular producer's goods or services, it is not generic. *Id.*

In addition, the Ninth Circuit has held that "[t]he crucial date for the determination of genericness is the date on which the alleged infringer entered the market with the disputed mark or term." *Yellow Cab*, 419 F.3d at 928; *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 744 (2d Cir. 1998) (holding that the relevant date for judging genericness is the date upon which Perrier, the competitor, introduced its competing product into the market); *see also* 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 12:17.50, pp. 12-61 (2012) (hereinafter, "2 McCarthy") ("The Second and Ninth Circuits have held that the crucial date for the determination of genericness is the date on which the alleged infringer entered the market with the disputed mark or term.").

Here, according to Keating, "it adopted and began using" its KDZ Bruxer mark "[i]n approximately April 2011." (Dkt#57-1 at 13:11-12) Accordingly, Keating must show that, as of April 2011, the relevant consumers (dentists) understood the word BruxZir to refer to the genus of products composed of dental bridges; dental caps; dental crowns; dental inlays; dental onlays; and dental prostheses, and that these consumers did *not* understand the BruxZir mark to refer to only a particular producer's goods.

**a.** Keating Personnel Have Admitted that the BruxZir Mark Is Not Generic

To the extent they are based upon genericness, the Court may dispose of Keating's First Affirmative Defense and Fourth Counterclaim simply on the basis of Keating's admissions.

In particular, in its Petition for Cancellation, Keating admitted that the

Snell & Wilmer L.L.P. LAW OFFICES 350 South Grand Avenue, Suite 2600, Two California Plaza Los Angeles, California 90071 (213) 929-2500

BruxZir mark is at least "merely descriptive of the goods set forth in [Glidewell's] Registration." (SUF 4). To be sure, Keating first contended that the mark is generic. But this does not negate Keating's admission of descriptiveness. At a minimum, Keating's admission should preclude summary judgment *in favor of Keating* that the mark is generic.

In addition, Robert Brandon, Keating's General Manager,[1] admitted at deposition that, as of May 2011 (shortly after the date that, according to Keating, it adopted and began using its KDZ Bruxer mark), REDACTED

(SUF 5). REDACTED

(SUF 7). This evidence indicates that both Keating's senior management and its dentists customers knew as of at least May 2011 that the BruxZir mark did *not* generally refer to the genus of products composed of dental bridges; dental caps; dental crowns; dental inlays; dental onlays; and dental prostheses, but instead referred to specific goods from a specific source (Glidewell).

Moreover, Shaun Keating, Keating's founder and CEO, admitted at deposition that REDACTED

(SUF 8). This admission directly and fatally undercuts Keating's position that dentists understood (and understand) the word BruxZir to refer to the genus of products composed of dental bridges; dental caps; dental crowns; dental inlays; dental onlays; and dental prostheses, and that these consumers do *not* understand the BruxZir mark to refer to

[1] Brandon, who has been with Keating since February of 2003, was the person authorized to verify Keating's interrogatory responses. (SUF 6).

Snell & Wilmer L.L.P. LAW OFFICES 350 South Grand Avenue, Suite 2600, Two California Plaza Los Angeles, California 90071 (213) 929-2500

only a particular producer's goods.

Finally, internal Keating documents reveal that REDACTED For example, REDACTED (SUF 9). REDACTED (SUF 9) (emphasis added). REDACTED (SUF 10). REDACTED (SUF 11) (emphasis added).

**b.** Other Evidence Establishes that the BruxZir Mark Is Not Generic

In addition to Keating's admissions of nongenericness, other evidence establishes that the BruxZir mark is not generic.

**(i)** *Dentists' Testimony Establishes that the BruxZir Mark Is Not Generic*

Practicing dentists located throughout the country have testified that the BruxZir mark is not generic. (SUF 12). The testimony of Dr. Gregory Doneff, a dentist practicing in Georgia, is representative. Dr. Doneff testifies: "[s]ince learning about Glidewell Labs's BRUXZIR brand zirconia crowns and bridges in 2009 and through the date of this declaration, I have known, and through various communications with other dentists, I am aware that other dentists have known, that the BRUXZIR mark is a brand or trademark that signifies a single source of zirconia crowns and bridges and the zirconia material from which those products are made. Since learning about Glidewell Labs's BRUXZIR brand zirconia crowns and bridges in 2009 and through the date of this declaration, I have known, and through my various communications with other dentists, I am aware that other

Snell & Wilmer L.L.P. LAW OFFICES 350 South Grand Avenue, Suite 2600, Two California Plaza Los Angeles, California 90071 (213) 929-2500

dentists have known, that the BRUXZIR mark is a brand or trademark associated with Glidewell Labs." (SUF 13).

Dr. Doneff also testifies that: "Both before and after September 2010, I, and other dentists with whom I regularly communicate, use the term 'bruxer' exclusively to refer to a person who suffers from bruxism; i.e., habitual and destructive grinding of the teeth and clenching of the jaw. Both before and after September 2010, the terms 'bruxer,' 'bruxer crown,' 'bruxzir,' and 'bruxzir crown' are not terms that I, nor the dentists I communicate with, use to refer to zirconia crowns and bridges as a type or category of product. I have never used any of these terms to refer to zirconia crowns or bridges as a type or category of product, and I have never heard any other dentist use any of those terms for that purpose. Rather, both before and after I learned about Glidewell Labs's BRUXZIR brand zirconia crowns and bridges in 2009, when referring to zirconia crowns and bridges as a type or category of product generally, I, and the dentists that I communicate with, use the terms 'zirconia crowns,' 'all zirconia crowns,' 'monolithic zirconia crowns,' 'full zirconia crowns,' or 'solid zirconia crowns.'" (SUF 14).

The testimony of Dr. Doneff and the other dentists establishes that the relevant consumers – dentists – have, at all relevant times, understood the word BruxZir to refer exclusively to a particular producer's goods (Glidewell's BruxZir brand dental restoration products) and not to the genus of products comprising bridges, crowns, etc. When referring to the genus, these dentists do not use the terms "bruxer," "bruxer crown," "bruxzir," or "bruxzir crown." Rather, they use more general terminology, such "zirconia crowns," "solid zirconia crowns," etc.

**(ii)** *Glidewell Testimony Establishes that the BruxZir Mark Is Not Generic*

The testimony of Glidewell's employees also supports the conclusion that the BruxZir mark is not generic.

Jim Shuck, Glidewell's Vice President of Sales and Marketing, and a thirty-

Snell & Wilmer L.L.P. LAW OFFICES 350 South Grand Avenue, Suite 2600, Two California Plaza Los Angeles, California 90071 (213) 929-2500

six year veteran of the dental industry, testifies that "[t]he generic terms for a BruxZir brand crown are 'crown,' 'crown for bruxers,' or 'all zirconia crown.' I have also heard a 'solid zirconia crown,' and a 'full contour zirconia crown.' The term 'bruxzir' is not used by Glidewell – or, to my knowledge, widely or generally used by anyone else – to refer to solid zirconia crowns." (SUF 15).

Dr. Michel DiTolla, Glidewell's Director of Clinical Education & Research, and a practicing dentist since 1988, testifies that he directly interacts with two to three thousand dentists per year, the vast majority of which "have made statements ... indicating that they understand that BruxZir identifies Glidewell as the source of the crown products." (SUF 16). As Dr. DiTolla testifies, "when referring generally to a zirconia crown, dentists refer to the crown as a zirconia crown." (SUF 17). Dr. DiTolla further testifies that, in his 24 years as a dentist, he has never used the term "bruxer" to commonly refer to crowns, and that he has never heard any of the thousands of dentists he interacts with each year use the term "bruxer" to commonly refer to crowns. (SUF 18). Dr. DiTolla opines that "'bruxer' is not a commonly used term in the dental field for crowns. (SUF 19). Instead, "the term 'bruxer' refers to an individual who suffers from bruxism, a parafunctional activity in which a person repeatedly and habitually grinds his teeth." (SUF 19).

Still other witness testimony supports non-genericness. Rudy Ramirez, Glidewell's General Manager of the Fixed Prosthodontics, testifies that each of the more than 100 dentists that he has personally guided on tours of Glidewell's production facility have "expressed ... their awareness that Glidewell is the source for zirconia crowns and bridges produced and marketed under the BruxZir mark." (SUF 20). Robin Bartolo, Sales Manager for Glidewell Direct, who has actively participated in seventeen trade shows since January of 2009, attended by many thousands of dentists in total, testifies that: "through [his] various communications with dentists and dental lab representatives at trade shows, [he is] aware that dentists and dental lab representatives generally are aware that the BruxZir mark is

Snell & Wilmer L.L.P. LAW OFFICES 350 South Grand Avenue, Suite 2600, Two California Plaza Los Angeles, California 90071 (213) 929-2500

a brand or trademark that signifies a single source of zirconia crowns and bridges and the zirconia material from which those products are made." (SUF 21).

**(iii)** *Expert Testimony Establishes that the BruxZir Mark Is Not Generic*

Finally, expert testimony strongly indicates that the BruxZir mark is not generic.

First, Dr. Ronald Goldstein opines that "dentists do not refer to solid zirconia crowns as 'bruxers' or 'bruxer crowns,'" and that "dentists do not understand the mark BruxZir to refer to solid zirconia crowns from any source, but rather ... dentists understand the mark BruxZir to identify the source of solid zirconia crowns and material to make solid zirconia crowns – the solid zirconia crowns supplied by Glidewell." (SUF 22). The bases for this opinion, and details regarding Dr. Goldstein's expertise – including his 55 years of experience in dental practice, his research, his numerous conference appearances as speaker or keynote speaker, and his discussions with other dentists – are detailed in his declaration submitted with this memorandum.

Second, Professor David Franklyn – a tenured full professor of law who specializes in intellectual property and trademark law at the University of San Francisco School of Law, and who is Executive Director of the McCarthy Institute for Intellectual Property and Technology Law at USF School of Law as well as the Director of the Center for the Empirical Study of Trademark Law (CEST) in the McCarthy Institute – opines that "Glidewell's BruxZir mark is not generic but rather is a suggestive mark, and that, in any event, the BruxZir trade mark has strong brand recognition amongst United States dentists as a unique source identifier for full zirconia dental crowns made by Glidewell." (SUF 23). The bases for Professor Franklyn's opinion, detailed in his declaration submitted with this memorandum, include his exhaustive trademark and Internet search efforts, his review of the documentary evidence (including trademark search reports

Snell & Wilmer L.L.P. LAW OFFICES 350 South Grand Avenue, Suite 2600, Two California Plaza Los Angeles, California 90071 (213) 929-2500

commissioned by Keating's counsel), evidence supporting the fact that the BruxZir mark is suggestive, and his interviews of numerous dentists and leading practitioners in the field.

**3. <u>That "Brux" May Be Generic Does Not Render "BruxZir" Generic</u>**

In its Second Amended Answer and Counterclaims, and in prior briefing in this case, Keating has asserted that the BruxZir mark must be generic because the word "brux" has an established meaning in the dental field. (Dkt#57-1 at ¶¶ 46-49; 26-2) In particular, Keating posits that "to BRUX is to grind or gnash your teeth (if you suffer from bruxism)." (Dkt#57-1 at ¶ 48.) Keating goes on to identify a number of registered trademarks and trademark applications that comprise "BRUX" as a component element. (Dkt#57-1 at ¶ 49.) Although the import of this evidence is not entirely clear, it is clear the Court must focus the validity inquiry on the trademark as a whole. *Reno Air Racing*, 452 F.3d at 1135. It is also clear under Ninth Circuit law that a composite mark may be distinctive even though its components individually are not. *Id.* (citing *California Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1455 (9th Cir. 1985)). Put another way, "the combination of generic terms may, in some instances, result in a distinctive mark." *Advertise.com, Inc. v. AOL Advertising, Inc.*, 616 F.3d 974, 978 (9th Cir. 2010).

Here, Glidewell's registered trademark is BruxZir, not "brux." Keating's infringing trademark is DKZ Bruxer, not "brux." Whether "brux" alone might be subject to trademark protection, or might be immune from trademark infringement liability, are not at issue. Rather, the issue is whether, as of April 2011, dentists understood the word BruxZir to refer *not* to only a particular producer's goods, *but rather* to the genus of products composed of dental bridges; dental caps; dental crowns; dental inlays; dental onlays; and dental prostheses. As discussed above, the presumption of validity, taken together with Keating's admissions, the testimony of third-party dentists, the testimony of Glidewell's executives, and the

Snell & Wilmer L.L.P. LAW OFFICES 350 South Grand Avenue, Suite 2600, Two California Plaza Los Angeles, California 90071 (213) 929-2500

testimony of experts, all lead inexorably to the conclusion that BruxZir was not generic as of April 2011 and is not generic now. The Court can and should enter summary judgment in Glidewell's favor as to nongenericness.

**B. The BruxZir Mark Is Suggestive and Therefore Inherently Distinctive**

Rather than being a generic mark, the BruxZir mark is a suggestive mark. A suggestive mark is one for which "'a consumer must use imagination or any type of multistage reasoning to understand the mark's significance ... the mark does not *describe* the product's features, but *suggests* them.'" *Zobmondo Enter.*, 602 F.3d at 1114 (quoting *Kendall-Jackson Winery, Ltd. v. E.&J. Gallo Winery*, 150 F.3d 1042, 1047 n.8 (9th Cir. 1998)). "[A] mark can be suggestive and still convey information about a product." *Zobmondo Enter.*, 602 F.3d at 1119; *see, e.g.*, 2 McCarthy § 11:72 (listing marks that have been found "suggestive," including "CITIBANK" for an urban bank, "CLASSIC COLA" for a soft drink, "DIAL-A-MATTRESS" for mattress sales, and "FLORIDA TAN" for suntan lotion). Although the line between descriptive and suggestive marks can be difficult to draw, the Ninth Circuit has endorsed two "tests" to help determine whether a mark is suggestive or merely descriptive. Here, the BruxZir is suggestive under both tests.

**1. The BruxZir Mark Is Suggestive Under the "Imagination" Test**

The first, and most commonly-used, test is known as the "imagination" test. It asks whether "'imagination or a mental leap is required in order to reach a conclusion as to the nature of the product being referenced.'" *Zobmondo Enter.*, 602 F.3d at 1115 (quoting *Rudolph Int'l v. Realys, Inc.*, 482 F.3d 1195, 1198 (9th Cir. 2007)). The test "does not ask what information about the product *could* be derived from a mark, but rather whether 'a mental leap is *required*' to understand the mark's relationship to the product." *Id.* at 1116 (quoting *Rudolph Int'l*, 482 F.3d at 1198). "[I]f the mental leap between the word and the product's attribute is not almost instantaneous, this strongly indicates suggestiveness, not direct

Snell & Wilmer L.L.P. LAW OFFICES 350 South Grand Avenue, Suite 2600, Two California Plaza Los Angeles, California 90071 (213) 929-2500

descriptiveness." *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 911 (9th Cir. 1995).

Here, imagination or a mental leap is required in order to reach a conclusion as to the nature of the product being referenced by the BruxZir mark. The mark does not contain the words "crown," "bridge," "caps," "prostheses," or "restoration." It does not even contain the word "dental." The BruxZir mark is a combination of "brux" and "zir." "Brux" suggests to relevant consumers (dentists) that BruxZir brand products are strong and durable, and are suitable for use in dental applications requiring superior strength and durability, such as for treating patients with bruxism. (SUF 24). "Zir" suggests that the products comprise zirconia, a hard and durable material successfully used in dental products. (SUF 25). Thus, the BruxZir mark does not describe the product's features or nature, but merely suggests them. That it conveys some information about the product does not render the mark descriptive or preclude it from being suggestive. *Zobmondo Enter.*, 602 F.3d at 1114, 1119.

Courts have found composite marks to be suggestive. For example, in *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 632 (9th Cir. 2005), the mark "Surfvivor" was held to be suggestive because imagination was required to associate it with holder's beach-related goods. In *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1150 (9th Cir. 2011), the mark "ActiveBatch" was held suggestive because of the mental leap required to get from the mark to the product (software for job scheduling, event monitoring, and task management). *See also Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 186 (3rd Cir. 2010) (holding "ForsLean" to be a suggestive mark for weight loss products containing *coleus forskohlii*, because "while ForsLean is not a term that was created completely out of whole cloth, it certainly requires consumer 'imagination, thought, or perception' to determine the nature of the product"); *Nautilus Grp., Inc. v. ICON Health and Fitness, Inc.*, 372 F.3d 1330, 1343 (Fed.

Snell & Wilmer L.L.P. LAW OFFICES 350 South Grand Avenue, Suite 2600, Two California Plaza Los Angeles, California 90071 (213) 929-2500

Cir. 2004) (holding that the district court could reasonably find "BowFlex" to be a suggestive mark because the mental leap between "BowFlex" and the exercise equipment it describes was not "almost instantaneous"); *Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999) (holding that "MovieBuff" was a suggestive mark because it required a mental leap from the mark to the product, computer software for researching movies through a database); *Venetianaire Corp. of America v. A & P Import Co.*, 302 F. Supp. 156, 157 (S.D.N.Y. 1969) (holding that HYGIENT for a mattress cover filler was distinctive because HYGIENT, although "very similar to the word 'hygienic' – a term which would be an aptly descriptive characteristic of plaintiff's goods – the word 'hygient' is meaningless" and suggests what the product was); *cf. Thomas Pride Mills, Inc. v. Monsanto Co.*, 155 U.S.P.Q. (BNA) 205, *11 (N.D. Ga. 1967) (finding that ACRILAN used for acrylic carpeting was not generic because, "[w]hile 'Acrilan' and 'acrylic' have letters in common, Acrilan is not thereby, under established trademark law, constituted the legal equivalent of the generic term, acrylic fiber, or of the more precise term of acrylonitrile.... [S]ince 'Acrilan' was not in our language prior to its coinage by defendant, there is no question here of an attempt to appropriate the exclusive use of a word already in the vocabulary and in use to describe the product in question.").

In addition, the Ninth Circuit has noted that the facts that a mark cannot be found in dictionaries, and is without literal meaning, support suggestiveness. *See Zobmondo Enter.*, 602 F.3d at 1116. Here, multiple medical and dental dictionaries provide no definition for "bruxzir" (or for "bruxer," at least as meaning crowns). (SUF 26). "Bruxzir" is a coined word, without literal meaning.

The Ninth Circuit has also noted that evidence that the accused infringer includes explanatory language with its allegedly infringing mark supports finding the mark to be suggestive rather than descriptive or generic. *See Zobmondo Enter.*, 602 F.3d at 1120 n.12 (noting that accused infringer's use of explanatory language

Snell & Wilmer L.L.P. LAW OFFICES 350 South Grand Avenue, Suite 2600, Two California Plaza Los Angeles, California 90071 (213) 929-2500

with its mark "cuts against the [accused infringer's] argument that [the mark] is a well-established, culturally-pervasive concept"). Here, Keating's marketing materials for its KDZ Bruxer product commonly include explanatory words and other information so as to describe the product's nature and features clearly. For example, Keating's advertisement introducing the product states, under a large color photograph of several zirconia crowns and bridges, "Introducing the All-New KDZ Bruxer. The Best Full-Contour Zirconia Restorations Available." (SUF 27). The advertisement goes on to say that "KDZ Bruxer is the ideal combination of strength and esthetics for your posterior crowns and bridges." (SUF 28). If, as Keating as contended, the word "bruxer" generically describes zirconia crowns and bridges, there would be little need for Keating include such explanatory descriptions.

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

**2. The "Competitors' Needs" Test Supports Suggestiveness**

The second test for assessing suggestiveness, known as the "competitors' needs" test, "focusses on the extent to which a mark is actually needed by competitors to identify their goods or services." *Zobmondo Enter.*, 602 F.3d at 1117 (quoting *Rodeo Collection, Ltd. v. W. Seventh*, 812 F.2d 1215, 1218 (9th Cir. 1987)); *see also Miss World (UK), Ltd. v. Mrs. America Pageants, Inc.*, 856 F.2d 1445, 1449 (9th Cir. 1987). "If competitors have a great need to use a mark, the mark is probably descriptive; on the other hand, if 'the suggestion made by the mark is so remote and subtle that it is really not likely to be needed by competitive sellers to describe their goods or services[,] this tends to indicate that the mark is merely suggestive.'" *Zobmondo Enter.*, 602 F.3d at 1117 (quoting *Rodeo Collection*, 812 F.2d at 1218).

Evidence that competitors do not need to use the mark supports finding the mark suggestive. *See Zobmondo Enter.*, 602 F.3d at 1117 (noting that competitors' needs test "strongly favored" suggestiveness in view of, among other things, "significance evidence suggesting that [the mark holder's] competitors do not need

to use [the mark] to fairly describe their products"); *see also Aluminum Fabricating Co. v. Season-All Window Corp.*, 259 F.2d 314, 317 (2d Cir. 1958) (holding that "Season-all" did not render it difficult for competitors selling other storm doors and storm windows to adequately describe their products because there were a "wealth of synonyms and related words with which to describe" their own products).

Here, the BruxZir mark is suggestive because competitors do not need to use the term BruxZir (or confusingly similar variants, like KDZ Bruxer) to describe their zirconia crowns. For example, Drake Precision Laboratory advertises its zirconia crown using the mark ZIR-CAST. (SUF 29). Drake describes its product with some terms as "all-ceramic," "solid zirconia," "high translucency zirconia," "monolithic," "nonmetallic," etc. (SUF 30). Although Drake notes, as one of several product indications, that the product is "recommended for bruxers and grinders," Drake evidently has no need to use BruxZir or confusingly similar variants as its trademark. Similarly, Keating's own advertising materials demonstrate that Keating can, and does, describe its products using a variety of alternative words and phrases such as "dental zirconia," "medical grade zirconia ... for posterior single units and bridges," "full contour zirconia," "alternative to full-cast gold," "full-contour zirconia restoration," "for patients who grind or lack preparation space or porcelain," etc. (SUF 31). Just as does Drake, Keating could also describe its products as being suitable for treating patients with bruxism, among other things. There is no competitive need – at least no legitimate one – for Keating to use the term BruxZir or the confusingly similar variant, KDZ Bruxer, *as its mark*.

Moreover, evidence that the mark had never previously been used for the same or similar products before "suggests that competitors do not find the mark useful in describing their products." *Zobmondo Enter.*, 602 F.3d at 1120 (noting that expert's testimony on "lack of [prior] third party use tends to negate the inference ... that the mark is widely understood by consumers to refer to [the

Snell & Wilmer L.L.P. LAW OFFICES 350 South Grand Avenue, Suite 2600, Two California Plaza Los Angeles, California 90071 (213) 929-2500

product at issue]"). Here, prior to Glidewell's introduction of its BruxZir brand products, neither "bruxzir" nor "bruxer" had previously been used for the same or similar products. (SUF 32). This supports suggestiveness.

**C. <u>If Descriptive, The BruxZir Mark Has Attained Secondary Meaning</u>**

As discussed above, the fact that the BruxZir mark is registered and the PTO did not require any showing of secondary meaning is strong evidence that the mark is inherently distinctive (i.e., at least suggestive) and is neither generic nor descriptive. Beyond that, the overwhelming evidence conclusively establishes that the mark is suggestive. Nevertheless, in its First Affirmative Defense and it its Fourth Counterclaim, Keating posits that the mark, if not generic, is descriptive and without secondary meaning. (Dkt#57-1, ¶¶ 31, 74). Again, the evidence belies.

**1. <u>The BruxZir Mark Is Suggestive, Not Descriptive</u>**

A "merely descriptive" mark "describes the qualities or characteristics of a good or service." *Park 'N Fly*, 469 U.S. at 194. It "'define[s] qualities or characteristics of a product in a straightforward way that requires *no exercise of the imagination to be understood*.'" *Zobmondo Enter.*, 602 F.3d at 1114 (quoting *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141-42 (9th Cir. 2002) (emphasis added)). When the challenged mark is a registered mark, the "putative infringer's burden is not simply to show that the mark describes a feature of the trademark holder's product; rather, it must show that consumers regard the mark as *merely* descriptive of that product.'" *Zobmondo Enter.*, 602 F.3d at 1117 (quoting *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 119 (1st Cir. 2006)).

Here, as discussed above, the BruxZir mark is suggestive because it does not define qualities or characteristics of the BruxZir brand dental restoration products in a straightforward way that requires no exercise of the imagination to be understood. Instead, the mark suggests strength and a material (zirconia), and the consumer must exercise imagination or multistage reasoning to understand the mark's significance and the nature of the product.

Snell & Wilmer L.L.P. LAW OFFICES 350 South Grand Avenue, Suite 2600, Two California Plaza Los Angeles, California 90071 (213) 929-2500

**2. Even if Descriptive, the BruxZir Mark Is Distinctive Because It Has Attained Secondary Meaning**

Although descriptive marks are not inherently distinctive and are therefore not entitled to automatic trademark protection, "a merely descriptive mark can become protectable if it has acquired distinctiveness 'as used on or in connection with the applicant's goods in commerce.'" *Zobmondo Enter.*, 602 F.3d at 1113 (quoting 15 U.S.C. § 1052(f)). This acquired distinctiveness is referred to as "secondary meaning." *Id.* "Secondary meaning is used generally to indicate that a mark … 'has come through use to be uniquely associated with a specific source.'" *Quiksilver*, 466 F.3d at 760 (9th Cir. 2006) (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 766 n.4 (1992)). Determining whether a descriptive mark has secondary meaning requires consideration of (1) whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer; (2) the degree and manner of advertising under the claimed trademark; (3) the length and manner of use of the claimed trademark; and (4) whether the use of the claimed trademark has been exclusive. *E.g.*, *Yellow Cab*, 419 F.3d at 930. Each factor supports secondary meaning here.

**a.** Actual Purchasers Associate the BruxZir Mark With Glidewell

As discussed above, actual purchasers associate the BruxZir mark with Glidewell. These include Doctors Doneff, Bell, Newman, Luke, Cohen, Michiels, and Toca. (SUF 33). Again, Dr. Doneff's testimony is representative of the others. Dr. Doneff states: "Since learning about Glidewell Labs's BRUXZIR brand zirconia crowns and bridges in 2009 and through the date of this declaration, I have known, and through various communications with other dentists, I am aware that other dentists have known, that the BRUXZIR mark is a brand or trademark that signifies that Glidewell Labs is the source of zirconia crowns and bridges marketed under that trademark." (SUF 34). Dr. Doneff also states: "Since learning about Glidewell Labs's BRUXZIR brand zirconia crowns and bridges in 2009 and

Snell & Wilmer L.L.P. LAW OFFICES 350 South Grand Avenue, Suite 2600, Two California Plaza Los Angeles, California 90071 (213) 929-2500

through the date of this declaration, I have often used the term BRUXZIR to identify zirconia crowns and bridges manufactured by Glidewell Labs, because I understand that the BRUXZIR mark is a brand or trademark that signifies that Glidewell Labs is the source of zirconia crowns and bridges marketed under that trademark." (SUF 35).

Consistently with the testimony of these dentists, Dr. DiTolla testifies that he directly interacts with two to three thousand dentists per year, the vast majority of which "have made statements ... indicating that they understand that BruxZir identifies Glidewell as the source of the crown products." (SUF 36). Rudy Ramirez testifies that each of the more than 100 dentists that he has personally guided on tours of Glidewell's production facility have "expressed ... their awareness that Glidewell is the source for zirconia crowns and bridges produced and marketed under the BruxZir mark." (SUF 37). Robin Bartolo, who has actively participated in seventeen trade shows – attended by many thousands of dentists in total – since January of 2009, testifies that: "through [his] various communications with dentists and dental lab representatives at trade shows, [he is] aware that dentists and dental lab representatives generally are aware that the BruxZir mark is a brand or trademark that signifies a single source of zirconia crowns and bridges and the zirconia material from which those products are made." (SUF 38).

**b.** *Glidewell Has Extensively Advertised and Promoted the BruxZir Mark*

Glidewell has very extensively advertised and promoted the BruxZir mark. As part of the initial launch, Glidewell sent direct mail pieces for dentists, mailed samples of BruxZir brand products to current customers, sent email blasts to 125,000 dentists through the American Dental Association's dentist listing, produced and posted educational videos online, and announced continuing education programs for the product. (SUF 39). Since the introduction of BruxZir

Snell & Wilmer L.L.P. LAW OFFICES 350 South Grand Avenue, Suite 2600, Two California Plaza Los Angeles, California 90071 (213) 929-2500

brand products, Glidewell has consistently and regularly advertised the brand, in association with the Glidewell Labs name, in a wide variety of ways, including via the company's website (www.bruxzir.com) and blog, press releases, patient and doctor education brochures, videos, advertisements in dental publications, direct mailers, email blasts, and trade shows. (SUF 40).

BruxZir.com received approximately 289,210 unique pageviews between October 2009 and November 2012, with 78% of this volume from U.S. traffic. (SUF 41). Glidewell regularly and consistently advertises the BruxZir brand product line in dental industry publications, including *ADA News*, *Chairside Magazine*, *Dental Economics*, *Dental Lab Reports*, *Dentaltown*, *Dental Tribune*, *Dentistry Today*, *Inclusive Magazine*, the *Journal of Dental Technology*, and *Lab Management Today*. (SUF 42).

Glidewell consistently sends out e-mail blasts approximately quarterly to U.S. dentists and dental laboratories, advertising Glidewell's BruxZir branded product line. (SUF 43). These blasts are sent to Glidewell's internal e-mail list, which contains approximately 24,000 dentists, and to the American Dental Association's e-mail list, which has about 89,000 dentists. (SUF 44). Glidewell consistently conducts quarterly direct mail advertising for BruxZir branded crowns. For this direct mail advertising, Glidewell uses a list, purchased from the American Dental Association, of approximately 125,000 dentists. (SUF 45).

Glidewell personnel regularly and consistently dozens of trade shows and conventions a year around the country. (SUF 46). At these conventions and trade shows, which are attended by, in the aggregate, thousands of dentists, Glidewell consistently and prominently displays the BruxZir brand, in association with the Glidewell Labs name, in a wide variety of contexts, including on the booth, the signage, in brochures, takeaways, and product displays and demonstrations. (SUF 47).

As part of Glidewell's marketing efforts for the BruxZir brand, Glidewell's

Snell & Wilmer L.L.P. LAW OFFICES 350 South Grand Avenue, Suite 2600, Two California Plaza Los Angeles, California 90071 (213) 929-2500

Director of Clinical Education and Research, Dr. DiTolla, made a series of educational videos in 2009 and 2010, and he made a compendium of all videos with a new introduction in 2011. (SUF 48). The videos explain and illustrate various features and benefits of BruxZir brand products, and prominently feature the BruxZir brand in association with the Glidewell Labs name. (SUF 49). The videos are publicly available on Glidewell's website and YouTube channel, and the video pages have had approximately 30,000 unique pageviews between October 2009 and November 2012. (SUF 50).

Glidewell personnel, including Dr. DiTolla and Robin Carden (Vice President of Research and Development), regularly publish articles and give presentations that prominently feature the BruxZir brand in association with Glidewell. (SUF 51). The BruxZir brand and BruxZir brand products have garnered substantial third party recognition in the form of, for example, awards and laudatory press coverage. (SUF 52).

Glidewell's total marketing expenses for the BruxZir brand product line from June 2009 through June 2012 are approximately REDACTED, which represents approximately REDACTED of Glidewell's overall marketing budget. (SUF 53). Of this figure, REDACTED, was directed to advertising and marketing BruxZir brand finished crowns and bridges. (SUF 54).

Glidewell's extensive promotion of the BruxZir mark has been successful in cementing in the minds of dentists a strong association between the mark and Glidewell as the source of BruxZir brand dental restoration products. (SUF 55).

c. *The Length and Manner of Use of the BruxZir Mark Supports Secondary Meaning*

Glidewell has consistently used the BruxZir mark for crowns and bridges for over three years, since the launch of the product line in 2009. (SUF 56). As discussed above, Glidewell has extensively promoted the mark in a wide variety of communication channels. (SUF 57). In so doing, Glidewell has ensured that the

Snell & Wilmer L.L.P. LAW OFFICES 350 South Grand Avenue, Suite 2600, Two California Plaza Los Angeles, California 90071 (213) 929-2500

BruxZir mark is widely promoted in association with the Glidewell Labs name. (SUF 58). This sustained activity has effectively reached the relevant consumers (dentists) and caused them to associate the BruxZir mark with the source of BruxZir products, Glidewell. (SUF 59).

**d.** *Glidewell's Exclusive Use of the Claimed Trademark Supports Secondary Meaning*

As discussed in Professor Franklyn's declaration, the BruxZir mark does not exist in a crowded field of similar marks. (SUF 60). And, it is Glidewell's policy and practice to actively protect its mark by, for example, sending cease and desist letters to competitors using confusingly similar marks. (SUF 61). Glidewell's exclusive use of the BruxZir mark for dental restoration products supports the conclusion that the mark has attached secondary meaning.

## IV. CONCLUSION

For the foregoing reasons, Glidewell respectfully moves the Court to enter summary judgment in favor of Glidewell as to Keating's First Affirmative Defense and its Fourth Counterclaim (for cancellation of Registration No. 3,739,663).

Dated: November 19, 2012

SNELL & WILMER L.L.P.

By: [signature]
Philip J. Graves
Greer N. Shaw

Attorneys for Plaintiff
James R. Glidewell Dental Ceramics, Inc.
dba GLIDEWELL LABORATORIES

16138461.5

Snell & Wilmer L.L.P. LAW OFFICES 350 South Grand Avenue, Suite 2600, Two California Plaza Los Angeles, California 90071 (213) 929-2500

*Glidewell Laboratories v. Keating Dental Arts, Inc.*
**United States District Court, Central, Case No. SACV11-01309-DOC (ANx)**

**CERTIFICATE OF SERVICE**

I hereby certify that on November 19, 2012, I electronically filed the document described as **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FOR PARTIAL SUMMARY JUDGMENT RE INFRINGEMENT OF A FEDERALLY REGISTERED MARK (FIRST CAUSE OF ACTION) AND DISMISSAL OF DEFENDANT'S SECOND AFFIRMATIVE DEFENSE AND FIRST COUNTERCLAIM** with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

David G. Jankowski
Jeffrey L. Van Hoosear
Lynda J Zadra-Symes
Knobbe Martens Olson and Bear LLP
2040 Main Street, 14th Floor
Irvine, CA 92614

**Attorneys for Defendant Keating Dental Arts, Inc.**
Tel: (949) 760-0404
Fax: (949) 760-9502

Jeffrey.vanhoosear@kmob.com
David.jankowski@kmob.com
Lynda.zadra-symes@kmob.com
litigation@kmob.com

Dated: November 19, 2012

SNELL & WILMER L.L.P.

By: *s/Philip J. Graves*
Philip J. Graves
Greer N. Shaw

Attorneys for Plaintiff
James R. Glidewell Dental Ceramics, Inc. dba GLIDEWELL LABORATORIES

SNELL & WILMER L.L.P.
350 South Grand Avenue
Suite 2600
Two California Plaza
Los Angeles, California 90071