Lynda J. Zadra-Symes (SBN 156,511)
Lynda.Zadra-Symes@kmob.com
Jeffrey L. Van Hoosear (SBN 147,751)
Jeffrey.VanHoosear@kmob.com
David G. Jankowski (SBN 205,634)
David.jankowski@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Defendant/Counter-Plaintiff,
KEATING DENTAL ARTS, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JAMES R. GLIDEWELL DENTAL CERAMICS, INC. dba GLIDEWELL LABORATORIES, <br><br> Plaintiff, <br><br> v. <br><br> KEATING DENTAL ARTS, INC. <br><br> Defendant. <br><br> AND RELATED COUNTERCLAIMS. | Civil Action No. SACV11-01309-DOC(ANx) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT CANCELING GLIDEWELL'S TRADEMARK REGISTRATION** <br><br> Date: December 17, 2012 <br> Time: 8:30 a.m. <br> Location: Courtroom 9D <br><br> Honorable David O. Carter |

# TABLE OF CONTENTS

Page No.

I.     INTRODUCTION ................................................................. 1

II.    STATEMENT OF UNCONTROVERTED FACTS ............................. 2

       A.   Bruxing, Bruxism, and Bruxers ......................................... 2

       B.   Dental Laboratories and Dental Restorations
            ("Crowns") ................................................................. 3

       C.   Glidewell Develops An All-Zirconia Crown As A
            Replacement For Gold Crowns .......................................... 3

       D.   Glidewell Names Its All-Zirconia Crown "BruxZir" ............... 4

       E.   Glidewell Markets Its All-Zirconia Crown For Use
            With Bruxers ............................................................... 5

       F.   The Name BruxZir Is Pronounced The Same As
            "Bruxer" .................................................................... 6

       G.   Glidewell Uses BruxZir Generically ................................... 7

       H.   The Widespread Use of "Brux" and "Zir" In The
            Dental Industry ............................................................ 7

       I.   All-Zirconia Crowns Offered By Other Dental
            Laboratories ............................................................... 8

       J.   Glidewell's 180 "Authorized" Labs Sell "BruxZir"
            Crowns, Most of Which Do Not Identify Glidewell
            As A Source Or Affiliated Entity ...................................... 9

       K.   Dentists Use The Term BruxZir Generically ........................ 10

       L.   Keating Adopted Its KDZ Bruxer Mark In Good Faith ........... 11

       M.   Glidewell Has Presented No Credible Actual
            Confusion Evidence ...................................................... 11

       N.   The Trademark Office Did Not Fully Examine
            Glidewell's Trademark Application For BRUXZIR .................. 12

III.   SUMMARY JUDGMENT STANDARDS .................................... 13

IV.    BRUXZIR IS GENERIC AND/OR COMMONLY
       DESCRIPTIVE AND IS NOT ENTITLED TO
       TRADEMARK PROTECTION ................................................ 14

       A.   Glidewell's BRUXZIR mark identifies the product,
            not the producer .......................................................... 15

# TABLE OF CONTENTS
(continued)

Page No.

B.   Glidewell's BRUXZIR Mark Should Be Canceled Because It Is Phonetically Equivalent To And A Misspelling Of Bruxer ......................................... 17

C.   Alternatively, Glidewell's BRUXZIR Mark Is Merely Descriptive And Has Not Acquired Secondary Meaning ........................................................ 19

    1.   Glidewell's BRUXZIR Mark Merely Describes The Intended User And Characteristics of The Product ................................................... 19

    2.   Glidewell Has Failed To Submit Sufficient Evidence of Secondary Meaning To Establish A Protectable Trademark ................................ 20

    3.   Actual Purchasers Of Products Bearing "BRUXZIR" Mark Do Not Associate The Mark With Glidewell .......................................... 22

    4.   Glidewell Failed To Show Effectiveness of Its Advertising .............................................. 22

    5.   Glidewell Used "BRUXZIR" For Less Than Two Years And Encouraged Third Party Use ..................... 23

    6.   Glidewell's Use Of BruxZir/Bruxer Has Not Been Exclusive ........................................... 23

    7.   Glidewell's Sales Figures Do Not Establish Secondary Meaning ..................................... 24

    8.   Other Undisputed Evidence Shows No Secondary Meaning ..................................... 24

D.   Cancelation of the BRUXZIR Registration Is In Line With Trademark Public Policy ....................................... 24

V.   CONCLUSION ......................................................... 25

# TABLE OF AUTHORITIES

Page No(s).

*Advertise.com, Inc. v. AOL Advertising, Inc.,*
    616 F.2d 974 (9th Cir. Cal. 2010) ................................................. 14, 15, 20

*Am. Aloe Corp. v. Aloe Creme Labs., Inc.,*
    420 F.2d 1248 (7th Cir. 1970) ................................................... 17

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) .......................... 13

*Art Attacks Ink, LLC v. MGA Entm't Inc.,*
    581 F.3d 1138 (9th Cir. 2009) ...................................................... 21, 22, 23

*Aurora World, Inc. v. TY Inc.,*
    719 F. Supp. 2d 1115 (C.D. Cal. 2009)...................................................... 22

*Brookfield Commc'n v. West Coast Entmt. Corp.,*
    174 F.3d 1036 (9th Cir. 1999) ...................................................... 18

*C-Thru Ruler Co. v. Needleman,*
    190 U.S.P.Q. 93 (E.D. Pa. 1976)...................................................... 18

*Carter-Wallace, Inc. v. Procter & Gamble Co.,*
    434 F.2d 794 (9th Cir. 1970) ...................................................... 22

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) .......................... 13

*CG Roxane LLC v. Fiji Water Co. LLC,*
    569 F. Supp. 2d 1019 (N.D. Cal. 2008)................................................ 16, 22

*Cont'l Lab. Prods. v. Medax Int'l,*
    114 F. Supp. 2d 992 (S.D. Cal. 2000) ...................................................... 24

*Express, LLC v. Forever 21, Inc.,*
    2010 U.S. Dist. LEXIS 91705 (C.D. Cal. 2010) ...................................... 21

*Hunter Publ'g Co. v. Caulfield Publ'g Ltd.,*
    1 U.S.P.Q. 2d (BNA) 1996 (TTAB 1986)................................................ 19

TABLE OF AUTHORITIES
(continued)

Page No(s).

*In re 1800Mattress.com IP, LLC*,
    586 F.3d 1359, 92 U.S.P.Q. 2d (BNA) 1682 (Fed. Cir.
    2009) ........................................................................................ 15

*In re Abcor Development Corp. v.*
    , 588 F.2d 811, 200 U.S.P.Q. (BNA) 215 (CCPA 1978)
    (Rich, J. concurring) .................................................................. 17

*In re Bayer Aktiengesellschaft*,
    488 F.3d 960 (Fed. Cir. 2007) ................................................... 19

*In re Camel Mfg. Co., Inc.*,
    222 U.S.P.Q. (BNA) 1031 (TTAB 1984).................................... 19

*In re The Chamber of Commerce of the United States*,
    675 F.3d 1297 (Fed. Cir. 2012) ................................................. 20

*In re Hubbard Milling Co.*,
    6 USPQ2d 1239 (TTAB 1987) ................................................... 18

*In re Mortgage Bankers Association of America*,
    226 U.S.P.Q. (BNA) 954 (TTAB 1985)...................................... 18

*In re Noble Co.*,
    225 U.S.P.Q. (BNA) 749 (TTAB 1985)...................................... 24

*In re Phoseon Tech. Inc.*,
    103 U.S.P.Q. 2d (BNA) 1822 (TTAB 2012)............................... 23

*In re Planalytics, Inc.*,
    70 U.S.P.Q. 2d (BNA) 1453 (TTAB 2004).................................. 19

*In re Reckitt & Colman, North America Inc.*,
    18 U.S.P.Q. 2d (BNA) 1389 (TTAB 1991).................................. 15

*In re Reed Elsevier Props. Inc.*,
    482 F.3d 1376 (Fed. Cir. 2007) ................................................. 18

*In Re State Chemical Mfg. Co.*,
    225 U.S.P.Q. (BNA) 687 (TTAB 1985)....................................... 18

TABLE OF AUTHORITIES
(continued)

Page No(s).

*In re Vanilla Gorilla, L.P.*,
  80 U.S.P.Q. 2d 1637 (TTAB 2006) .................................................. 17, 18

*Int'l Jensen v. Metrosound U.S.A.*,
  4 F.3d 819 (9th Cir. 1993) ........................................................... 22

*Japan Telecom, Inc. v. Japan Telecom Am., Inc.*,
  287 F.3d 866 (9th Cir. 2002) ....................................................... 20

*Kellogg Co. v. Nat'l Biscuit Co.*,
  305 U.S. 111, 59 S. Ct. 109 (1938) .............................................. 23, 25

*KP Permanent Make-up, Inc. v. Lasting Impression I, Inc.*,
  408 F.3d 596 (9th Cir. 2005) ........................................................ 15

*Levi Strauss & Co. v. Blue Bell, Inc.*,
  778 F.2d 1352 (9th Cir. 1985) (en banc) ...................................... 21, 22, 23

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 106 S. Ct. 1348 89 L. Ed. 2d 538 (1986) ........................ 13

*Miller Brewing Co. v. G. Heileman Brewing Co.*,
  561 F.2d 75 (7th Cir. 1977) .......................................................... 17, 18

*Nupla Corp. v. IXL Mfg. Co.*,
  114 F.3d 191 (Fed. Cir. 1997) ........................................................ 18

*Rudolph Int'l, Inc. v. Realys, Inc.*,
  482 F.3d 1195 (9th Cir. 2007) ................................................... passim

*Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*,
  680 F. Supp. 2d 1107 (N.D. Cal. 2010) ........................................ 22, 23

*Seabrook Foods, Inc. v. Bar-Well Foods Ltd.*,
  568 F.2d 1342 (C.C.P.A. 1977) ....................................................... 24

*Seed Lighting Design Co. v. Home Depot*,
  2005 U.S. Dist. LEXIS 44741 (N.D. Cal. Aug. 3, 2005) ..................... 21

*Soweco, Inc. v. Shell Oil Co.*,
  617 F.2d 1178 (5th Cir. 1980) ........................................................ 17

# TABLE OF AUTHORITIES
(continued)

Page No(s).

*Surgicenters of America, Inc. v. Medical Dental Surgeries, Co.,*
    601 F.2d 1011 (9th Cir. 1979) ................................................. 14, 15, 20, 25

*Two Pesos, Inc. v. Taco Cabana, Inc.,*
    505 U.S. 763 (1992) ...................................................... 14, 20, 21

*Van Well Nursery, Inc. v. Mony Life Ins. Co.,*
    421 F. Supp. 2d 1321 (E.D. Wash. 2006) .................................................. 15

*Vision Sports, Inc. v. Melville Corp.,*
    888 F.2d 609 (9th Cir. 1989)................................................. 22

*William R. Warner & Co. v. Eli Lilly & Co.,*
    265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161 (1924) ................................... 20

*Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.,*
    419 F.3d 925 (9th Cir. 2005) ......................................... 14, 15, 21

## OTHER AUTHORITIES

15 U.S.C. § 1057 ............................................................... 14

15 U.S.C. § 1127 ............................................................... 14

Dorland's Illustrated Medical Dictionary (32nd Ed. 2012) .................................... 2

Fed. R. Civ. P. 56............................................................. 13

McCarthy on Trademarks, 4th Edition, § 12:38 ........................................ 17

Pursuant to the Court's Order dated May 1, 2012 (Doc. 52) and Rule 56 of the Federal Rules of Civil Procedure, Defendant Keating Dental Arts ("Keating") respectfully moves for summary judgment on its claim for cancelation of U.S. Trademark Registration No. 3,739,663 for the mark BRUXZIR, owned by Plaintiff James R. Glidewell Dental Ceramics, Inc., d/b/a Glidewell Laboratories ("Glidewell").   Attached as Appendix A is a list of supporting declarations with associated exhibits.

## I.  INTRODUCTION

BRUXZIR is pronounced "bruxer" and is registered for use in connection with dental devices that Glidewell advertises as "ideal for bruxers," people who "brux," i.e., grind their teeth. Glidewell's video promotions and videotaped witness testimony establish that the mark BRUXZIR is pronounced the same as "bruxer." Thus, BRUXZIR is the phonetic equivalent and/or corrupted spelling of "bruxer," the intended user of Glidewell's product.   The mark is therefore generic.  This is further supported by the undisputed evidence establishing that the relevant consumers—dentists and dental labs—identify "bruxzir" as a generic term for bruxer crowns made of zirconia.  Glidewell itself uses the term as a noun and a plural noun for zirconia crowns, which is further evidence of genericness.

At the very least, Glidewell's mark is merely descriptive and Glidewell has failed to prove secondary meaning in the mark, i.e. that relevant purchasers view the *primary significance* of the mark as identifying Glidewell.  Glidewell admits that brux means teeth grinding and "zir" means zirconia.  According to Glidewell's Marketing VP, that is precisely why Glidewell picked the mark ("because . . . if you see brux or you identify somebody with bruxism.  Think of zirconium.  So we put brux and zir together.")

Although, Glidewell's trademark registration provides *prima facie* evidence of secondary meaning, the undisputed evidence easily rebuts this presumption.  Glidewell had used its mark for less than two years when Keating

-1-

began selling its KDZ Bruxer product and Glidewell has failed to submit any survey evidence or other evidence sufficient to establish secondary meaning in the minds of the relevant consumers.

Cancelation of Glidewell's registration is in the public interest. Glidewell has grossly overreached in asserting its registration against competitors who use the generic terms "brux" and "bruxer" in their product names to describe features of their products. Keating is being damaged by Glidewell's improper assertion of its invalid U.S. Trademark Registration against Keating's KDZ Bruxer mark. Accordingly, Keating respectfully requests that the Court order that Glidewell's U.S. Trademark Registration No.3,739,663 be canceled.

## II. <u>STATEMENT OF UNCONTROVERTED FACTS</u>

### A. <u>Bruxing, Bruxism, and Bruxers</u>

The consuming public for the products at issue in this case are dentists and dental laboratories. (SOF ¶ 1.)  Dentists and other dental professionals refer to the subconscious grinding of teeth as "bruxing" and the associated medical condition as "bruxism."  (SOF ¶ 2.)  The term "bruxism" is defined in Dorland's Illustrated Medical Dictionary (32nd Ed. 2012) as "involuntary, nonfunctional, rhythmic, or spasmodic gnashing, grinding, and clenching of teeth." (SOF ¶ 3.) The term "brux" is defined as "to grind the teeth rhythmically or spasmodically." (SOF ¶ 4.)  Dentists are taught these terms during dental school, including Glidewell's in-house dentist, Dr. Michael DiTolla, and Keating's expert witness with over forty years of experience as a prosthodontist, Dr. David Eggleston.  (SOF ¶ 5.)

Dentists and other dental professionals refer to dental patients who suffer from bruxism as "bruxers."  (SOF ¶ 6.)  Peer-reviewed journal articles from the dental field have for decades used "bruxer" as a generic term for people suffering from bruxism. (SOF ¶ 7.)   United States patents and patent applications dating back to the 1980's use the term "bruxer" to identify people

1   suffering from bruxism. (SOF ¶ 8.)

2   **B.**   **Dental Laboratories and Dental Restorations ("Crowns")**

3   Crowns and bridges are dental restorations used by dentists to treat

4   patients with damaged or missing teeth.  (SOF ¶ 9.)  Dentists order crowns from

5   "dental laboratories" that manufacture the crowns for the dentists based on

6   specifications provided by the dentist.  (SOF ¶ 10.)  There are over 2,000 dental

7   laboratories in the U.S. servicing the needs of dentists. (SOF ¶ 11.)

8   Plaintiff Glidewell, founded in 1970, is by far the largest dental

9   laboratory in the U.S. (SOF ¶ 12.)  In 2002, Shaun Keating founded Keating

10  Dental Arts. (SOF ¶ 13.)  Prior to founding his company, Mr. Keating worked at

11  Glidewell for eighteen years, most of that time as a manager responsible for

12  over 200 employees. (SOF ¶ 14.)

13  For decades dental labs manufactured crowns made entirely or partially of

14  porcelain, a material that gives a tooth-like appearance.  (SOF ¶ 15.)  Dental

15  labs have also developed layered combinations of materials, to create stronger

16  crowns that look tooth-like, such as a porcelain-fused-to-metal ("PFM") crown,.

17  (SOF ¶ 16-17.)

18  Bruxers are notorious for breaking traditional porcelain crowns due to the

19  excessive forces they place on their teeth. (SOF ¶ 18.)  Such patients have

20  traditionally been provided with crowns made entirely out of metal, such as

21  gold, which is more durable and capable of withstanding the stresses associated

22  with chewing and grinding.   (SOF ¶ 19-20.)   To patients, gold is not

23  aesthetically pleasing because it does not look like a tooth and is a "last resort

24  for people with chewing problems."  (SOF ¶ 21-22.)

25  **C.**   **Glidewell Develops An All-Zirconia Crown As A Replacement For**

26      **Gold Crowns**

27  Because many patients are very resistant to receiving gold crowns, dental

28  professionals have sought to develop a crown that is strong like gold but that

looks like a natural tooth.  Glidewell's in-house dentist, Dr. DiTolla, for years asked his R&D department "for a cast gold material that's white like a tooth so patients will accept it." (SOF ¶ 23.)  Glidewell's Director of R&D repeated Dr. DiTolla's desire: "His [Dr. DiTolla's] saying was always, 'Why can't we make a full gold crown that is white?  Give me a white full gold crown.'" (SOF ¶ 24.)

Glidewell spent several years leading up to 2009 developing an all-zirconia crown.  (SOF ¶ 25.)  Zirconia is an extremely strong material that dental labs began using years earlier as a substitute for the invisible metal lower layer in PFM crowns.  (SOF ¶ 26.)  Although Zirconia is white, it does not appear "toothlike" so it is not nearly as aesthetic as porcelain.  (SOF ¶ 27.)

Glidewell's Director of R&D recalled that its first attempt at making an all-zirconia crown was a failure.  (SOF ¶ 28.)  Eventually Glidewell's R&D efforts resulted in an all-zirconia crown that it deemed aesthetic enough, and it decided to release the new crown as a new product.  (SOF ¶ 29.)

**D.    Glidewell Names Its All-Zirconia Crown "BruxZir"**

Glidewell's VP of Advertising, Jim Shuck, proposed "BruxZir" as the name of the new all-zirconia crown. (SOF ¶ 30.)  He explained that the name was chosen to combine **brux**ism and **zir**conia: "That's why we picked the name, because . . . if you see brux or you identify somebody with brux or bruxism, think of zirconium. So we put brux and zir together." (SOF ¶ 31.)

Glidewell's in-house dentist, Dr. DiTolla, immediately liked it because it described the functionality of the crown. (SOF ¶ 32.)  Back in June 2009 he responded to Mr. Shuck's proposed name as follows:

I like BruxZir for a couple of reasons . . .

It is catchy, clever and memorable. . . .

It also describes it's [sic] main indication as we see it today: an unbreakable crown for your patients who have broken or might break other restorations.  When you want gold and the patient wants white, BruxZir will make both of you happy.

-4-

No other crown has ever been marketed as the crown for bruxers, . . .

. . . The name BruxZir *sells the function of the crown* and not the esthetics. It doesn't try to be something that it's not. *It's a crown for bruxers*….We have so many "esthetic" restorations, *I would prefer to emphasize its physical advantages*. . . .

. . . And, yes, what should I use on a grinder?  BruxZir is a great answer.

(SOF ¶ 33 (emphasis added).)

In his deposition, Dr. DiTolla testified "[I]" I thought it was clever because of the "Zir" for zirconia"; that the dentist was going to know what was in there."  (SOF ¶ 34.)

Glidewell's Director of R&D, Mr. Friebauer, also liked the name: "[t]o me, it stands for bruxism and zirconia.  It makes sense to me" . . . (SOF ¶¶35-36.)  Glidewell's Sales Manager, Robin Bartolo, also liked the name: "So here you had something that looked like a tooth and yet was strong enough to withstand even patients that would brux at night or during the day.  So it was a great name to convey strength."  (SOF ¶ 37.)

Glidewell admits that the mark BRUXZIR was adopted, at least in part, to connote a product that is useful for bruxers. (SOF ¶ 38.)

**E.**    **Glidewell Markets Its All-Zirconia Crown For Use With Bruxers**

In June 2009, Glidewell began offering for sale the new all-zirconia crown under the name "BruxZir." (SOF ¶ 39.)  Glidewell prominently and widely promoted the new all-zirconia crown to its customers as "ideal" for bruxer patients in the marketing materials it sent to dentists.  (SOF ¶ 40.) Because the aesthetics of its new all-zirconia crown was poor compared to conventional porcelain crowns, Glidewell further marketed the crown as "More Brawn Than Beauty."  (SOF ¶¶ 41-42.)

Glidewell also promoted the use of its all-zirconia crown for bruxers in technical articles authored by its Vice President of R&D, Mr. Carden.  (SOF ¶

43.)  By way of example, an article authored by Mr. Carden states that "[p]rimary candidates [for all-zirconia restorations] include bruxers and grinders who do not desire cast gold or metal occlusal PFM restorations." (SOF ¶ 44.)

Glidewell also promoted the use of its all-zirconia crown as "ideal for bruxers" on its website. (SOF ¶ 45.)  The web site further explains that:

> When we launched BruxZir Solid Zirconia crowns & bridges in 2009, our intention was to provide a monolithic zirconia restoration **indicated for bruxers and grinders** as an esthetic alternative to posterior metal occlusal PFMs and full-cast metal restorations.  The result was a material we said was "More Braun than Beauty."

(SOF ¶ 46.)

## F.    The Name BruxZir Is Pronounced The Same As "Bruxer"

Glidewell's in-house dentist, Dr. DiTolla, has published many promotional videos available on the internet (through Glidewell's website or iTunes) that discuss dental techniques relating to the BruxZir product.  (SOF ¶ 47.)  In those videos, Dr. DiTolla pronounces the name BruxZir and the dental term bruxer identically.  (SOF ¶ 48.)  In their videotaped depositions in this case, Glidewell's witnesses' pronounced BruxZir and bruxer identically.  (SOF ¶ 49.)

Starting in early 2011, Glidewell sent a number of cease and desist letters to dental laboratories who uses the word "Bruxer," or variations thereon, in connection with all-zirconia crowns.  (SOF ¶ 50.)  In those communications, Glidewell's General Counsel, Keith Allred, asserted to the third parties that their names were confusingly similar to Glidewell's mark because BruxZir and bruxer sound the same.  (SOF ¶ 51.)  By way of example, on February 14, 2011, Mr. Allred sent the following message to Pittman Dental Lab, who had been advertising a BRUXER All Zirconia Crown: "BruxZir® / BRUXER: **sounds the same doesn't it?**  And, that is what gives rise to the matter of trademark infringement." (SOF ¶ 52)

Dentists outside of Glidewell also pronounce BruxZir and bruxer identically.  (SOF ¶ 53.)

**G.    Glidewell Uses BruxZir Generically**

In its promotional materials, Glidewell reinforces the use of "bruxzir" or "bruxer" crown as nomenclature for an all zirconia crown, not as a trademark indicating the source of the product. (SOF ¶ 54.)  For example, in Glidewell's promotional video, Dr. DiTolla compares a "bruxzir" or "bruxer" crown to a metal occlusal PFM [porcelain fused to metal] crown and a gold cast crown. (SOF ¶ 55.)  These are generic names for types of crowns with which dentists are very familiar. (SOF ¶ 56.). Glidewell also uses the word BRUXZIR as a noun and plural noun, which is further evidence of generic use. (SOF ¶ 57.)  Dr. DiTolla, states in Glidewell's promotional videos that one could even get "a couple of BruxZirs put in." (SOF ¶¶ 58.)   In continuing education lectures, given to dentists around the country, Dr. DiTolla uses the terms "BruxZir crown" and "full-contour zirconia" interchangeably for educational purposes. He states, "I want to drive it into them and make sure they walk away knowing that it's a solid zirconia crown."  (SOF ¶ 59.)

**H.    The Widespread Use of "Brux" and "Zir" In The Dental Industry**

In addition to Glidewell and Keating, many other companies have been using "Brux" to refer to dental products for use with bruxers and "Z" or "Zir" to refer to dental products associated with zirconia.  Examples include, Arthtek Bruxing Splint, GPS BruxArt, Brux XXX, BruxCure, BruxChecker, Brux-eze, BruxCare, Bruxguard, Dr. Brux, ZerisBRUX, ZirCAD   (zirconia blocks), ZirColor (coloring product for zirconia), ZirPress (for ceramic ingots), ZirLiner (zirconia bonding material), Zir-Cut   (zirconia polisher), ZirBlock (dental products), Zirprime (pre-sintered zirconia), Zir-Cut (burs for cutting Zr), Zir-Cut Diamond FG (specialty burs), Zir.Care (multipurpose stone), ZiReal (Zr dental posts) (SOF ¶ 60.)

I. **All-Zirconia Crowns Offered By Other Dental Laboratories**

In addition to Glidewell and Keating, many other dental laboratories have been offering all-zirconia crowns under a variety of names, including names with "Brux," "Zir," or variations thereon.  Examples include:

- \* Advanced Dental Lab — BruxZir
- \* Assured Dental Lab — Z-Brux
- \* Authentic Dental Lab — Brux
- \* Barth Dental Lab — Z-Brux
- Burbank Dental — Zir-Max
- California Dental Arts — ZirFit
- \* China Dental Outsourcing — Bruxer All Zirconia
- \* China Dental Outsourcing — All Zirconia for Bruxers
- Continental Dental — Full Zirconia for Bruxing Patients
- Cosmetic Dentistry of SA — Bruxer Crown
- Dani Dental — Full Zirconia (Bruxer)
- Diadem Precision Technology — Diazir
- Distinctive Dental — Zir-Tech
- Drake Dental — Zir-Cast
- Expertec — Full-Z
- \* Fusion Dental Lab — Full Solid Bruxer Zirconia
- GPS Dental Lab — GPS BruxArt
- Kastle Mills — ZirCrown
- Mascola Esthetics — Xtreme Bruxer
- \* Old Dominion Milling Corp. — Bruxzer
- \* Pittman Dental — ZirCAM
- \* Pittman Dental — Bruxer All-Zirconia Crown
- \* R-dent Dental Laboratory — R-Brux
- \* Showcase Dental Lab — Zir-Bruxer

- Somer Dental Labs — Full Contour Zir
- Summers Dental Lab — BruxThetix
- Sun Dental Labs — Suntech Full Zirconia
- Technics Dental Lab — Tech/ZIR FC
- Trachsel Dental — All Zirconia Bruxer
- York Dental Lab — Bruxer
- Zahn Dental — Zirlux

(SOF ¶ 61.)

Many dental laboratories prominently promote their all-zirconia crowns for use by bruxers. (SOF ¶ 62.)  Examples include:

- Barth Dental Labs — "ideal for bruxers"
- California Dental Arts — "Perfect for bruxers"
- China Dental Outsourcing — "primarily for bruxers and heavy biters"
- Drake Dental — "Recommended for Bruxers and Grinders"
- Expertec — "ideal for patients who brux"
- Infinity Dental Lab — "Bruxer Crowns"
- Sun Dental Labs — for "bruxers and grinders"
- York Dental Lab — "ideal restoration for bruxers"

(SOF ¶ 62.)

As noted above, Glidewell has sought to stop all other dental labs from using the word "Bruxer," or variations thereof, in the name of their all-zirconia crowns.  The dental labs in the list above marked with an asterisk received cease-and-desist letters from Glidewell and subsequently stopped using the name.  (SOF ¶ 63.)

**J.   Glidewell's 180 "Authorized" Labs Sell "BruxZir" Crowns, Most of Which Do Not Identify Glidewell As A Source Or Affiliated Entity**

Glidewell makes zirconia "blanks" (the raw material from which zirconia crowns may be made) that it sells to about 180 "authorized" dental laboratories

around the U.S. for use by those laboratories in making their own all-zirconia crowns. (SOF ¶ 64.) The "authorized" laboratories make and sell crowns using the BruxZir name, just like Glidewell does. (SOF ¶ 65.) Most of the "authorized" laboratories have web sites promoting their "BruxZir" crowns, often with the same language used in Glidewell's marketing materials. (SOF ¶ 66.) The vast majority of these laboratories do not identify Glidewell as an affiliated entity. (SOF ¶ 67.) Instead, they typically promote the BruxZir crown as their own crown coming from their own dental laboratory. (SOF ¶ 67.) Glidewell makes no effort to monitor the use of the BruxZir mark by its authorized labs, and it does not require those labs to identify Glidewell as an affiliated entity. (SOF ¶ 68.) This practice reinforces the understanding among dentists that "BruxZir" is a product available from multiple sources, not an indicator of a single source or producer. (SOF ¶ 69.)

## K.   Dentists Use The Term BruxZir Generically

In May 2011, Keating Dental Arts began offering for sale an all-zirconia crown called the "KDZ Bruxer." (SOF ¶ 70.) Over the following year Keating fulfilled over 5,000 prescription forms by supplying its dentist customers with the KDZ Bruxer product. (SOF ¶ 71.) Over that span, dentists (or their assistants) wrote the word "bruxzir," "bruxer," or variations thereof, on about fifty of the prescription forms requesting all-zirconia crowns. (SOF ¶ 72.) This corresponds to approximately 1% of the Keating prescription forms over that time period. (SOF ¶ 73.)

When receiving prescription forms with such misspellings, it was Keating's policy to call the dentist and confirm that they wanted Keating's all-zirconia crown, and not the crown from any other laboratory. (SOF ¶ 74.) In these instances, the dentist always confirmed that they wanted Keating's KDZ Bruxer all-zirconia crown. (SOF ¶ 75.)

/ / /

-10-

Many dentists in the industry refer to all-zirconia crowns as a "BruxZir," "bruxzir," or variations thereon. (SOF ¶ 76.)   Dentists who submitted prescription forms to Keating with such spellings wrote that word as a generic reference to an all-zirconia crown, not to identify Glidewell Laboratories as a source.  Keating is submitting thirteen declarations from dentists who submitted prescription forms to Keating with "bruxzir" or "BruxZir" written on them to explain this point.  (SOF ¶ 77.)

Showcase Dental Laboratory, a dental lab unaffiliated with Glidewell or Keating, has also received prescription forms from dentists ordering all-zirconia crowns that generically describe an all-zirconia crown as a "BruxZir," "bruxzir," or variation, thereof.  (SOF ¶ 78.)

**L.      Keating Adopted Its KDZ Bruxer Mark In Good Faith**

Based on the perceived demand for all-zirconia crowns of its dentists, Keating decided to formally add an all-zirconia crown to its KDZ line of products (which had been introduced in 2006).  (SOF ¶ 79.)  Because the new all-zirconia crown was specifically designed to replace gold crowns for bruxer patients, Mr. Keating wanted to call the new crown the "KDZ Bruxer." (SOF ¶ 80.)

Mr. Keating sought the advice of counsel, who performed a trademark search, to ensure his use of the name would not cause problems.  (SOF ¶ 82.)

**M.      Glidewell Has Presented No Credible Actual Confusion Evidence**

In its responses to Keating's interrogatories, Glidewell alleged details for two instances of alleged actual confusion:

(1)     In April 2012, a Glidewell employee named Nicole Fallon offered a $20 coupon to Dr. Jade Le's dental office in Florida to try a BruxZir restoration. An employee in Dr. Le's office asked if she could apply the coupon to a previous purchase the office had made of Keating's KDZ Bruxer crown.  (SOF ¶ 83.). Glidewell explained that Ms. Fallon made a telephone call to Dr. Le's office and offered a discount on BruxZir crowns.  (SOF ¶ 84.)

1    (2)    In May 2011, Dr. Thomas Nussear's dental office placed an order
2    with Keating for a KDZ Bruxer crown and wrote "BruxZir" on the prescription
3    form.  (SOF ¶ 83.)

4    Glidewell employees, and dental professionals generally, pronounce
5    BruxZir and Bruxer identically.  (SOF ¶ 85.)  The only "confusion" apparent
6    from the record associated with Ms. Fallon's phone call resulted from Ms.
7    Fallon's failure to unambiguously identify the product associated with her
8    coupon offer.  Likewise, Glidewell's identification of Dr. Nussear's prescription
9    form is not evidence of actual confusion.  (SOF ¶ 86.)  Keating is submitting a
10   declaration from Dr. Nussear in which he explains that he wrote "BruxZir" on
11   his prescription form as a generic reference to an all-zirconia crown. (SOF ¶
12   87.)  Dr. Nussear further explains that he did not intend to order a crown from
13   Glidewell, and he was not confused as to any affiliation between Keating and
14   Glidewell. (SOF ¶ 87.)

15   **N.**     **The Trademark Office Did Not Fully Examine Glidewell's**
16          **Trademark Application For BRUXZIR**

17   Glidewell filed to federally register a trademark in the mark BRUXZIR
18   for use in connection with "dental bridges; dental caps; dental crowns; dental
19   inlays; dental onlays; dental prostheses" on June 17, 2009.  (SOF ¶ 88.)  On
20   January 19, 2010, Glidewell's application issued as Trademark Registration No.
21   3,739,663. (SOF ¶ 89.)

22   During the examination process, the Trademark Examiner did not conduct
23   an Internet search and made no inquiry as to whether BRUXZIR had any
24   meaning in the dental industry.  (SOF ¶ 90.)  The Examiner should have
25   performed a search of the Internet for "crowns designed for bruxers." (SOF ¶
26   91.)  Had the Examiner learned that Glidewell pronounces BRUXZIR the same
27   as "bruxer," and promotes the same pronunciation in its marketing materials for
28   / / /

the BruxZir product, the mark would have been denied registration as either generic or merely descriptive. (SOF ¶ 92.)

Trademark Examiners are obligated to follow the Trademark Manual of Examining Procedure (TMEP) when examining applications. (SOF ¶ 93.)   In examining Glidewell's application for BRUXZIR, the Examiner should have asked if the mark had any particular meaning in relation to the goods or in the relevant trade or industry and should have requested additional information about the mark and the goods. (SOF ¶ 94.) In this case, the examining attorney did not make any such requests during Glidewell's trademark application (SOF ¶ 95.)  Nor did Glidewell offer any such information (SOF ¶ 96.)

## III.  SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the moving party, Keating has the burden of establishing the lack of a genuine issue of material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine issue of material fact exists only where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In other words, any dispute as to material facts must be genuine and not merely a theoretical possibility. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 106 S. Ct. 1348, 1356 89 L. Ed. 2d 538, 552 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323-25.  A dispute cannot be "genuine" unless it is supported by evidence sufficient to permit a reasonable jury to find in favor of the nonmoving party. *Anderson*, 477 U.S. at 247-48.

Because BRUXZIR is a registered trademark, "a presumption of validity

places the burden of proving genericness upon" Keating. *Advertise.com, Inc. v. AOL Advertising, Inc.*, 616 F.2d 974, 977 (9th Cir. Cal. 2010) (citing *Filipino Yellow Pages, Inc. v. Asian journal Publs. Inc.*, 198 F.3d 1143, 1146 (9th Cir. 1999). 15 U.S.C. § 1057(b). Keating may rebut this presumption by a preponderance of the evidence showing the mark is generic or lacks secondary meaning. *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005), *Surgicenters of America, Inc. v. Medical Dental Surgeries, Co.*, 601 F.2d 1011, 1014 (9th Cir. 1979). "The crucial date for the determination of genericness is the date on which the alleged infringer entered the market with the disputed mark or term. *Yellow Cab*, 419 F.3d at 928.

The evidence is more than sufficient to rebut the presumption of validity of Glidewell's BRUXZIR registration.

## IV.  **BRUXZIR IS GENERIC AND/OR COMMONLY DESCRIPTIVE AND IS NOT ENTITLED TO TRADEMARK PROTECTION**

15 U.S.C. § 1127 defines a trademark "as including 'any word, name, symbol, or device or any combination thereof' used by any person 'to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.'" *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (quoting 15 U.S.C. § 1127).

In determining whether a mark is entitled to trademark protection, the courts recognize four categories of terms: 1) generic; 2) descriptive; 3) suggestive; and 4) arbitrary or fanciful. *Rudolph Int'l, Inc. v. Realys, Inc.*, 482 F.3d 1195, 1196-98 (9th Cir. 2007) (affirming summary judgment of genericness), citing *Filipino Yellow Pages*, 198 F.3d at 1146.

A generic term, also known as a common descriptive term, refers to the type or species of the product at issue. Generic terms cannot be protected trademarks. Descriptive terms "generally do not enjoy trademark

protection" but may be protected if they acquire 'secondary meaning' in the minds of consumers, i.e., [they] become distinctive of the trademark applicant's goods in commerce.

*Rudolph*, at 1197-98 (internal citations omitted).  See also *Advertise.com* 616 F.3d at 977 (finding registered mark generic).  "To allow trademark protection for generic terms . . . even when [they] have become identified with a first user, would grant the owner of the mark a monopoly, since a competitor could not describe his goods as what they are." *Surgicenters*, 601 F.2d at 107.

## A.      Glidewell's BRUXZIR mark identifies the product, not the producer

The determination of whether a mark is generic depends on how the consuming public understands the meaning of the term. *Yellow Cab*, 419 F.3d at 929 ("To determine whether a term has become generic, we look to whether consumers understand the word to refer only to a particular producer's goods or whether the consumer understands the word to refer to the goods themselves." (quoting *KP Permanent Make-up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 604 (9th Cir. 2005)); see also *Rudolph*, 482 F.3d at 1198; *Filipino Yellow Pages*, 198 F.3d at 1148; *Surgicenters*, 601 F.2d at 1015 n.11; *Van Well Nursery, Inc. v. Mony Life Ins. Co.*, 421 F. Supp. 2d 1321, 1327-28 (E.D. Wash. 2006) ("Even the most distinctive symbols – coined words having no descriptive or suggestive quality – may become generic if they are adopted by the public as the name of the product rather than as the mark of the producer.") See also *In re Reckitt & Colman, North America Inc.*, 18 U.S.P.Q. 2d (BNA) 1389 (TTAB 1991) (PERMA PRESS generic for soil and stain removers for use on permanent press products). The test is whether the relevant public would understand the term to be generic. See *In re 1800Mattress.com IP, LLC*, 586 F.3d 1359, 92 U.S.P.Q. 2d (BNA) 1682, 1685 (Fed. Cir. 2009).  As the Ninth Circuit stated in *Rudolph*:

"The question of genericness is often answered by reference to the "who-

1    are-you/what-are-you" test: a valid trademark answers the former

2    question, whereas a generic product name or adjective answers the latter."

3    *Rudolph*, 482 F.3d at 1198, citing *Filipino Yellow Pages*, 198 F.3d at 1147 ("[I]f

4    the primary significance of the trademark is to describe the *type of product*

5    rather than the *producer*, the trademark [is] a generic term and [cannot] be a

6    valid trademark.") (emphasis in original); *CG Roxane LLC v. Fiji Water Co.*

7    *LLC*, 569 F. Supp. 2d 1019, 1026 (N.D. Cal. 2008) (granting  defendant's

8    motion for summary judgment holding that defendant had provided sufficient

9    evidence to overcome the presumption of trademark validity, prove genericness

10   and a lack of secondary meaning).

11       Glidewell admits that relevant consumers--dentists and dental labs--

12   understand the term "brux" to describe patients who brux, and/or as a derivation

13   of "bruxing," and that the term "zir" is understood by dentists as meaning

14   zirconia.  Glidewell admits that the term "bruxer" is generic for people who

15   suffer from bruxism.

16       The undisputed evidence, including Glidewell's videorecorded witness

17   testimony and promotional videos, establishes that the term "bruxzir" is

18   phonetically equivalent to "bruxer."  The undisputed evidence establishes that

19   the terms "bruxer" and "bruxzir" are widely used and understood by dentists to

20   denote bruxer crowns and/or bruxer crowns made of zirconia.

21       The term "bruxzir" does not serve to identify a particular source of

22   crown, but only the type of crown. This is further supported by Glidewell's own

23   promotional videos, in which Glidewell uses the term BruxZir (sounding

24   identical to "bruxer") as a noun for its all-zirconia crowns. In its videos,

25   Glidewell even states that one could get "a couple of BruxZirs put in." Such use

26   is evidence of genericness.  In addition, it is inevitable that dentists will call a

27   crown for bruxers "a bruxer crown" or a "bruxzir crown." See *In re Vanilla*

28   *Gorilla, L.P.*, 80 U.S.P.Q. 2d 1637, 1640 (TTAB 2006) ("[T]he users of

language have a universal habit of shortening full names . . . I regard it as inevitable that a gas monitoring badge will be called a gas badge.") (quoting *In re Abcor Development Corp. v.* , 588 F.2d 811, 200 U.S.P.Q. (BNA) 215, 219 (CCPA 1978) (Rich, J. concurring).

In addition, many of the labs that Glidewell has authorized to make and sell crowns made from its BruxZir material do not identify Glidewell as the source.  Instead, they often advertise as Glidewell's competitors.  This evidence reinforces the understanding among dentists that "BruxZir" is a product, not a producer.

Because the evidence establishes that dentists and dental labs use and understand the term BruxZir as a generic term to identify a crown for bruxers, not to identify Glidewell, it is not entitled to registration as a trademark because it primarily denotes the product, not the producer.

**B.**     **Glidewell's BRUXZIR Mark Should Be Canceled Because It Is Phonetically Equivalent To And A Misspelling Of Bruxer**

Courts have long held that the corrupted spelling or phonetic equivalent of a generic term is also generic. *See, e.g.*, *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1186 n.24 (5th Cir. 1980) ("Plaintiff's using the phonetic equivalent of the generic term 'larvicide' in its mark 'Larvacide,' i.e., misspelling it, does not render the mark protectable." (citing *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 79 (7th Cir. 1977)) ("Using the phonetic equivalent of a common descriptive word, *i.e.*, misspelling it, is of no avail."); *Am. Aloe Corp. v. Aloe Creme Labs., Inc.*, 420 F.2d 1248, 1253 (7th Cir. 1970) ("By using the phonetic equivalent of the generic name as the sole common and distinguishing mark of its products, defendant invited confusion."); *see* MCCARTHY ON TRADEMARKS, 4TH EDITION, § 12:38; *Rudolph*, 482 F.3d at 1198 (citing to *Nupla Corp. v. IXL Mfg. Co.,* 114 F.3d 191, 196 (Fed. Cir. 1997) (affirming summary judgment holding that plaintiff's registered mark CUSH-N-

-17-

GRIP is invalid as a generic misspelling of "cushion grip" for cushioned tool handles)); *Brookfield Commc'n v. West Coast Entmt. Corp.*, 174 F.3d 1036, 1058 fn. 19 (9th Cir. 1999) (citing to *Miller Brewing Co.*, 561 F.2d at 81 ("Lite Beer" phonetic equivalent to generic "light beer"; *C-Thru Ruler Co. v. Needleman*, 190 U.S.P.Q. 93 (E.D. Pa. 1976) (C-THRU held equivalent of "see-through" and, therefore, merely descriptive of transparent rulers and drafting aids); *In re Hubbard Milling Co.*, 6 USPQ2d 1239 (TTAB 1987) (MINERAL-LYX held generic for mineral licks for feeding livestock).

If a mark bears a misspelling and is phonetically identical to an otherwise descriptive or generic term, it is considered a "legal equivalent" and should be treated the same as would the ordinary spelling.   *In Re State Chemical Mfg. Co.*, 225 U.S.P.Q. (BNA) 687 (TTAB 1985) (FOM held to be legal equivalent of "foam"; referencing prior "legal equivalents" cases, namely, TINTZ for tints, ALKOL for alcohol, LITE for light, SAVON GAS for "save on gas"); see also *In re Vanilla Gorilla*, 80 U.S.P.Q. 2d at 1640 ("3-O's" merely descriptive of car wheel rims)

The "intended user" can also be the basis for refusal of registration on the grounds of genericness. In *In re Mortgage Bankers Association of America*, 226 U.S.P.Q. (BNA) 954 (TTAB 1985), the TTAB upheld refusal of registration of the mark CERTIFIED MORTGAGE BANKER for "educational services, namely providing qualifying examinations, testing and grading in the field of real estate finance," holding the mark so highly descriptive as to be incapable of functioning as a mark. Similarly, in *In re Reed Elsevier Props. Inc.*, 482 F.3d 1376 (Fed. Cir. 2007), the Federal Circuit affirmed the TTAB's refusal of registration of LAWYERS.COM on the grounds that it was generic for "providing an online interactive database featuring information exchange in the fields of law, legal news and legal services."

Glidewell admits its BruxZir crown is a "crown for bruxers" and is "ideal

for bruxers." BruxZir is pronounced identically to "bruxer" and is a corrupted spelling of the product's intended user—a bruxer. Accordingly, Glidewell's trademark is generic and should be canceled.

**C.** **Alternatively, Glidewell's BRUXZIR Mark Is Merely Descriptive And Has Not Acquired Secondary Meaning**

   **1.** **Glidewell's BRUXZIR Mark Merely Describes The Intended User And Characteristics of The Product**

At the very least, Glidewell's BRUXZIR Mark is merely descriptive because, as Glidewell admits, it identifies the intended user of the product—a bruxer. A term that identifies a group to whom the applicant directs its goods or services is, if not generic, at least merely descriptive. See *In re Planalytics, Inc.*, 70 U.S.P.Q. 2d (BNA) 1453 (TTAB 2004) (GASBUYER merely descriptive of risk management services in the field of pricing and purchasing natural gas); *Hunter Publ'g Co. v. Caulfield Publ'g Ltd.*, 1 U.S.P.Q. 2d (BNA) 1996 (TTAB 1986) (SYSTEMS USER found merely descriptive of a trade journal directed toward users of large data processing systems; evidence; *In re Camel Mfg. Co., Inc.*, 222 U.S.P.Q. (BNA) 1031 (TTAB 1984) (MOUNTAIN CAMPER held merely descriptive of retail mail-order services in the field of outdoor equipment and apparel). Trademark Manual of Examining Procedure (TMEP), § 1209.03(i).

Rather than immediately conveying a brand or product source, merely descriptive marks "immediately convey [] knowledge of a quality, feature, function or characteristic of the goods or services with which [they are] used." *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 963 (Fed. Cir. 2007) (emphasis omitted). To be determined merely descriptive and not entitled to registration, it is sufficient to find that the mark "immediately conveys information about one feature or characteristic of at least one of the designated" goods or services within the applicant's trademark applications. *In re The Chamber of Commerce*

*of the United States*, 675 F.3d 1297, 1298-1301 (Fed. Cir. 2012) (affirming TTAB decision that the term "National Chamber" was merely descriptive); *Advertise.com*, 616 F.3d at 982; *Japan Telecom, Inc. v. Japan Telecom Am., Inc.*, 287 F.3d 866 (9th Cir. 2002).  Simply combining two descriptive words does not make a mark registrable.  *Surgicenters*, 601 F.2d at 1011, citing *William R. Warner & Co. v. Eli Lilly & Co.*, 265 U.S. 526, 528, 44 S.Ct. 615, 68 L.Ed. 1161 (1924) ("The name "Coco-Quinine" is descriptive of the ingredients which enter into the preparation.  The same is equally true of the name "Quin-Coco.  A name which is merely descriptive of the ingredients, qualities or characteristics of an article of trade cannot be appropriated as a trademark and the exclusive use of it afforded legal protection.")

In addition to describing the intended user of the product--a bruxer--the undisputed evidence establishes that dentists and dental labs understand the term BRUXZIR to denote or at least describe full zirconia crown products that are ideal for bruxers. Glidewell's witnesses testified to such descriptive attributes of the "brux" and "zir" elements of the mark.  Thus, the evidence establishes that the mark BruxZir is merely descriptive.

### 2.  Glidewell Has Failed To Submit Sufficient Evidence of Secondary Meaning To Establish A Protectable Trademark

"When used to describe a product, [merely descriptive marks] do not inherently identify a particular source, and hence cannot be protected," unless they have acquired "distinctiveness which will allow them to be protected under the [Lanham] Act." *Two Pesos, Inc.*, 505 U.S. at 769. "This acquired distinctiveness is generally called secondary meaning." *Id*. (internal quotation marks omitted).

"To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Two Pesos,*

*Inc.*, 505 U.S. at 766 (citing *Inwood Labs., Inc. v. Ives Labs.*, Inc., 456 U.S. 844 (1982)).

The Ninth Circuit has enunciated a four-element test the finder of fact may consider to determine whether a mark has obtained secondary meaning, including: "(1) whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether use of the claimed trademark has been exclusive." *Yellow Cab*, 419 F.3d at 930 (citing *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985) (en banc)). In addition, the Ninth Circuit has considered "direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and the number of customers; established place in the market; and proof of intentional copying by the defendant." *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138 (9th Cir. 2009) (citing *Filipino Yellow Pages*, 198 F.3d at1151.

Finally, proof of secondary meaning entails rigorous evidentiary requirements. *Express, LLC v. Forever 21, Inc.*, 2010 U.S. Dist. LEXIS 91705 (C.D. Cal. 2010) (holding that express had failed to meet the burden necessary for secondary meaning and granting summary judgment to Forever 21); *Seed Lighting Design Co. v. Home Depot*, 2005 U.S. Dist. LEXIS 44741 (N.D. Cal. Aug. 3, 2005);

Here, the evidence submitted by Glidewell in support of the existence of secondary meaning is painfully lacking.

/ / /

/ / /

/ / /

/ / /

### 3. <u>Actual Purchasers Of Products Bearing "BRUXZIR" Mark Do Not Associate The Mark With Glidewell</u>

Because the chief inquiry is the attitude of the consumer "[a]n expert survey of purchasers can provide the most persuasive evidence of secondary meaning. *Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*, 680 F. Supp. 2d 1107, 1117 (N.D. Cal. 2010) (citing *Vision Sports, Inc. v. Melville Corp., 888 F.2d 609, 615 (*9th Cir. 1989)). This is simply a reflection that secondary meaning is, at its heart, an association in the mind of the consumer. For this reason, "courts generally credit customer surveys as the strongest evidence of secondary meaning." *Aurora World, Inc. v. TY Inc.*, 719 F. Supp. 2d 1115, 1151 (C.D. Cal. 2009) (citing *Levi Strauss*, 778 F.2d at1358 (en banc)).

Glidewell has failed to submit any survey evidence or other evidence showing an association of its BruxZir mark in the minds of the relevant consumers.

Therefore, this factor weighs against a finding of secondary meaning.

### 4. <u>Glidewell Failed To Show Effectiveness of Its Advertising</u>

Advertising, standing alone, does not establish secondary meaning. "The 'true test of secondary meaning' is the effectiveness of the advertising effort." *Art Attacks*, 581 F.3d at 1146 (citing *Int'l Jensen v. Metrosound U.S.A.*, 4 F.3d 819, 824 (9th Cir. 1993)) (affirming summary judgment for alleged infringer). "Naturally, a 'large expenditure of money does not in itself create legally protectable rights.'" *CG Roxane*, 569 F. Supp. 2d at 1031 (citing *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 800 (9th Cir. 1970).

Glidewell may allege that it spent millions on advertising the "BRUXZIR" mark. But Glidewell has failed to delineate the amount spent prior to Keating's first use of its allegedly infringing mark.  Even assuming, however, that the entire amount was spent prior to Keating's first use of its mark,

/ / /

Glidewell has failed to submit any evidence that its advertising was effective in establishing secondary meaning in the minds of the relevant consumers.

Therefore, this factor weighs against a finding of secondary meaning.

### 5.   Glidewell Used "BRUXZIR" For Less Than Two Years And Encouraged Third Party Use

Being first to market with a product does not render the product's name distinctive. *See In re Phoseon Tech. Inc.*, 103 U.S.P.Q. 2d (BNA) 1822 (TTAB 2012). Secondary meaning must be established through evidence existing at the time the alleged infringer began using the allegedly infringing mark. *Sand Hill Advisors*, 680 F. Supp. 2d at 1117 (citing *Levi Strauss & Co.*, 778 F.2d at 1358). "Consequently, only evidence showing use of the mark . . . prior to Defendant's [allegedly infringing] use of the mark is probative of secondary meaning." *Id.*

At the time Keating publicly announced its KDZ Bruxer product in March 2011, Glidewell has used the BRUXZIR mark for less than two years. Thus, Glidewell's use is certainly less than the "substantial period" of substantially exclusive use necessary to establish secondary meaning. *Art Attacks*, 581 F.3d at 1145. Moreover, In this very short time, numerous third parties were already using the terms "brux," "zir", "bruxer" and "bruxzir" in connection with full zirconia crowns. This short period, coupled with the evidence of non-exclusive use, renders it further unlikely that Glidewell developed any appreciable secondary meaning. *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 119, 59 S. Ct. 109 (1938); *Art Attacks*, 581 F.3d at 1146.

### 6.   Glidewell's Use Of BruxZir/Bruxer Has Not Been Exclusive

Length of use and exclusivity are closely tied: without exclusivity it is unlikely that a mark is associated with a single source and without time consumers may not associate a mark with a single source. *Art Attacks*, 581 F.3d at 1146 (holding a lack of secondary meaning despite five years of use because plaintiff failed to establish exclusivity).

-23-

The evidence establishes that several third parties have used the terms "bruxer" and "bruxzir" in connection with full zirconia crowns. The evidence also establishes that, at the time Keating entered the market with its KDZ Bruxer mark, Glidewell had used "BruxZir" for less than two years. Even in that short time, Glidewell has failed to establish exclusive use. In addition, the evidence of widespread generic and descriptive use of the phonetically equivalent term "bruxer" further undermines Glidewell's claim to secondary meaning.

### 7. Glidewell's Sales Figures Do Not Establish Secondary Meaning

Evidence of product success in the marketplace does not necessarily establish secondary meaning because such success may be easily attributable to the desirability of the product configuration rather than the source-designating capacity of the mark. *See Cont'l Lab. Prods. v. Medax Int'l*, 114 F. Supp. 2d 992, 1002 (S.D. Cal. 2000). "[S]ales figures alone are inadequate to establish a connection between the product and its source." *Id.* at 1002 (citing *Seabrook Foods, Inc. v. Bar-Well Foods Ltd.*, 568 F.2d 1342, 1345 (C.C.P.A. 1977).

Glidewell has produced no evidence that would establish a correlation between Glidewell's sales figures and the attainment of secondary meaning in the BRUXZIR mark in the minds of the relevant consumer.

### 8. Other Undisputed Evidence Shows No Secondary Meaning

Other factors also favor Keating. The undisputed evidence establishes that Keating adopted its KDZ Bruxer mark in good faith and Glidewell has failed to submit any credible evidence of confusion as to source.

### D. Cancelation of the BRUXZIR Registration Is In Line With Trademark Public Policy

Glidewell's trademark application for the mark BRUXZIR did not receive a full examination. See *In re Noble Co.*, 225 U.S.P.Q. (BNA) 749, 750 (TTAB 1985) ("The examining attorney may request that the applicant submit

additional explanation or materials to clarify the meaning of the mark or the nature of the goods or services.") Had the Trademark Examiner followed the normal examination procedure and conducted an Internet search for the term, reviewed Glidewell's videos showing the mark was pronounced the same as the generic term "bruxer," or asked the applicant if the mark had any meaning in the industry, the mark would have been rejected as generic or descriptive.

When a generic term is enforced as a mark, the public is harmed and the purposes of trademarks are subverted. *Kellogg Co.,* 305 U.S. at 122, ("Sharing in the goodwill of an article unprotected by patent or trade-mark is the exercise of a right possessed by all – and in the free exercise of which the consuming public is deeply interested."). Giving Glidewell exclusive rights to the term BruxZir is inappropriate because Glidewell's competitors cannot describe their goods as what they are, i.e. "bruxer crowns" or "crowns for bruxers." *Rudolph*, 482 F.3d 1195, 1199, n.2, citing *Surgicenters*, 601 F.2d at 1017; *Filipino Yellow Pages*, 198 F.3d at 1151.

By asserting trademark rights to the term BRUXZIR against terms that include or derive from the term "brux", Glidewell is attempting to unlawfully eliminate competition and increase its market share. This is counter to the purposes of enforcing trademarks and harms the public interest.

Accordingly, cancelation of Glidewell's U.S. Trademark Registration for the mark BruxZir complies with public policy.

## V. <u>CONCLUSION</u>

For the reasons discussed above, Keating respectfully requests that the court grant its motion for summary judgment canceling Glidewell's U.S. Trademark Registration No. 3,739,663 for the mark BRUXZIR.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: November 19, 2012     By: /s/ David G. Jankowski
                                 Lynda J. Zadra-Symes
                                 Jeffrey L. Van Hoosear
                                 David G. Jankowski

                             Attorneys for Plaintiff,
                             KEATING DENTAL ARTS, INC.

14178747
101812

-26-