Lynda J. Zadra-Symes (SBN 156,511)
Lynda.Zadra-Symes@kmob.com
Jeffrey L. Van Hoosear (SBN 147,751)
Jeffrey.VanHoosear@kmob.com
David G. Jankowski (SBN 205,634)
David.Jankowski@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Defendant/Counter-Plaintiff,
KEATING DENTAL ARTS, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| JAMES R. GLIDEWELL DENTAL CERAMICS, INC. dba GLIDEWELL LABORATORIES,<br><br>Plaintiff,<br><br>v.<br><br>KEATING DENTAL ARTS, INC.<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS. | Civil Action No. SACV11-01309-DOC(ANx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF KEATING DENTAL ARTS, INC.'S MOTION FOR SUMMARY JUDGMENT OF (1) NO INFRINGEMENT OF GLIDEWELL'S REGISTERED TRADEMARK, (2) NO VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, AND (3) NO UNFAIR COMPETITION UNDER CALIFORNIA LAW**<br><br>Date: December 17, 2012<br>Time: 8:30 a.m.<br>Location: Courtroom 9D<br><br>Honorable David O. Carter |

# TABLE OF CONTENTS

Page No.

I.  PROCEDURAL POSTURE ................................................................. 1

II.  INTRODUCTION ............................................................................ 1

III.  STATEMENT OF UNCONTROVERTED FACTS ........................ 3

    A.  Dentists and Dental Restorations ("Crowns") ..................... 3

    B.  Dental Laboratories ............................................................. 3

    C.  Bruxing Patients and the Development of Zirconia Crowns .................................................................................. 4

        1.  Keating's "KDZ Zirconia" Crown (2006) ................ 4

        2.  Glidewell's "BruxZir" Crown (2009) ....................... 5

        3.  Keating's KDZ Bruxer Crown and the KDZ Family (2011) ............................................................... 6

    D.  Glidewell's BRUXZIR Mark Is Weak At Best ................... 8

        1.  BruxZir Is Generic Or At Least Highly Descriptive ................................................................. 8

        2.  The Wide Use of "Brux" and "Zir" In The Dental Industry ........................................................... 8

        3.  All-Zirconia Crowns Offered By Other Dental Laboratories ................................................. 8

        4.  Glidewell's "Authorized" Labs Sell "BruxZir" Crowns, Most of Which Do Not Identify Glidewell As An Affiliated Entity ............................. 9

        5.  Dentists Use The Term "BruxZir" Generically ................... 9

    E.  Glidewell Has Produced No Evidence Of Actual Confusion As To Source Of Goods Or Affiliation Between Glidewell And Keating ...................................... 11

    F.  Glidewell's Attempts To Prevent Others From Using "Bruxer" In Connection With All-Zirconia Crowns ................ 12

IV.  THIS COURT SHOULD GRANT SUMMARY JUDGMENT OF NO INFRINGEMENT OF GLIDEWELL'S REGISTERED TRADEMARK ........................ 12

    A.  Glidewell Does Not Have A Protectable Trademark in BRUXZIR ................................................................. 13

## TABLE OF CONTENTS
(continued)

Page No.

B. Even If Glidewell Is Assumed To Have A Protectable Trademark, No Reasonable Jury Could Find A Likelihood Of Confusion ................................................................. 14

    1.    Strength of Glidewell's Mark ................................................. 14

    2.    Proximity of Relatedness of Goods ...................................... 16

    3.    Similarity of the Marks ......................................................... 16

    4.    Actual Confusion .................................................................. 19

    5.    Marketing Channels .............................................................. 20

    6.    Types of Goods and Degree of Consumer Care ................... 20

    7.    Keating's Intent .................................................................... 21

    8.    Likelihood of Expansion ...................................................... 22

    9.    Summary of *Sleekcraft* Factors ........................................... 22

C. Keating's Use Of "Bruxer" In the Mark "KDZ Bruxer" Is Protected By The Classic Fair Use Defense ................. 22

V. THIS COURT SHOULD GRANT SUMMARY JUDGMENT OF NO VIOLATION OF SECTION 43(A) OF THE LANHAM ACT .......................................................... 24

VI. THIS COURT SHOULD GRANT SUMMARY JUDGMENT OF NO UNFAIR COMPETITION UNDER CALIFORNIA LAW .................................................................. 24

VII. CONCLUSION ....................................................................... 25

<u>TABLE OF AUTHORITIES</u>

<u>Page No(s).</u>

*Accuride Int'l, Inc. v. Accuride Corp.*,
    871 F.2d 1531 (9th Cir. 1989) .................................................................... 21

*Alchemy II, Inc. v. Yes! Entertainment Corp.*,
    844 F. Supp. 560 (C.D. Cal. 1994) ........................................................... 18

*Am. Cyanamid Corp. v. Connaught Labs., Inc.*,
    800 F.2d 306 (2d Cir. 1986) ..................................................................... 18

*AMF, Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979). (*Id.* at 10.) .......................................... passim

*Applied Info. Scis. Corp. v. eBay, Inc.*,
    511 F.3d 966 (9th Cir. 2007) .................................................................... 12

*Boston Duck Tours, LP v. Super Duck Tours*,
    LLC, 531 F.3d 1 (1st Cir. 2008) ............................................................... 18

*Brockmeyer v. Hearst Corp.*,
    248 F. Supp. 2d 281 (S.D.N.Y 2003) ....................................................... 17

*Brookfield Commc'n, Inc. v. W. Coast Entm't Corp.*,
    174 F.3d 1036 (9th Cir. 1999) ...................................................... 16, 20, 24

*Cairns v. Franklin Mint Co.*,
    24 F. Supp. 2d 1013 (C.D. Cal.1998) ....................................................... 20

*Cairns v. Franklin Mint Co.*,
    292 F.3d 1139 (9th Cir. 2002) .......................................................... 22, 23

*California Security Alarms v. Escobar's Security Plus Alarm*
    *Systems*,
    1996 U.S. Dist. LEXIS 14913 (N.D. Cal. 1996) ...................................... 18

*Cohn v. Petsmart, Inc.*,
    281 F.3d 837 (9th Cir. 2002) .................................................................... 19

*Denbicare U.S.A. Inc. v. Toys "R" Us, Inc.*,
    84 F.3d 1143 (9th Cir. 1996) .................................................................... 25

## TABLE OF AUTHORITIES
(continued)

Page No(s).

*Dreamwerks Production Group, Inc. v. SKG Studio*,
    142 F.3d 1127 (9th Cir. 1998) ............................................................ 14, 16

*Echo Drain v. Newsted*,
    307 F. Supp. 2d 1116 (C.D. Cal. 2003) .............................................. 16, 20

*Edge Wireless, LLC v. U.S. Cellular Corp.*,
    312 F. Supp. 2d 1325 (D. Or. 2003) ........................................................ 20

*Entrepreneur Media, Inc. v. Smith*,
    279 F.3d 1135 (9th Cir. 2002) .................................................................. 22

*Fleischmann Distilling Corp. v. Maier Brewing Co.*,
    314 F.2d 149 (9th Cir. 1963) .................................................................... 16

*Glow Indus. v. Lopez*,
    252 F. Supp. 2d 962 (C.D. Cal. 2002) ...................................................... 15

*Instant Media, Inc. v. Microsoft Corp.*,
    2007 WL 2318948 (N.D.Cal. Aug. 13, 2007) .......................................... 15

*Japan Telecom, Inc. v. Japan Telecom America Inc.*,
    287 F.3d 866 (9th Cir. 2002) .................................................................... 25

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
    408 F.3d 596 (9th Cir.2005) ...................................................................... 23

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
    543 U.S. 111, 125 S. Ct. 542, 160 L. Ed. 2d 440 (2004) ................... 14, 23

*M2 Software, Inc. v. Madacy Entm't*,
    421 F.3d 1073 (9th Cir. 2005) .................................................................. 20

*Miller Brewing Co. v. G. Heileman Brewing Co.*,
    561 F.2d 75 (7th Cir. 1977) ...................................................................... 13

*Murray v. Cable NBC*,
    86 F.3d 858 (9th Cir. 1996) ...................................................................... 22

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
    638 F.3d 1137 (9th Cir. 2011) .................................................................. 14

**TABLE OF AUTHORITIES**
(continued)

Page No(s).

*Network Automation, Inc. v. Hewlett-Packard Co.*,
    2009 U.S. Dist. LEXIS 125835 (C.D. Cal. Sept. 14, 2009) ...................... 15

*Nutri/System, Inc. v. Con-Stan Indus., Inc.*,
    809 F.2d 601 (9th Cir. 1987) .................................................................... 20

*Official Airline Guides v. Goss*,
    6 F.3d 1385 (9th Cir. 1993) ...................................................................... 21

*One Indus., LLC v. Jim O'Neal Distrib., Inc.*,
    578 F.3d 1154 (9th Cir. 2009) .................................................................. 15

*Playboy Enters. v. Netscape Communs. Corp.*,
    55 F. Supp. 2d 1070 (C.D. Cal. 1999) ...................................................... 20

*Reno Air Racing v. McCord*,
    452 F.3d 1126 (9th Cir. Nev. 2006) .......................................................... 16

*Self-Insurance Inst. of America, Inc. v. Software & Information*
    *Indus. Ass'n*,
    208 F. Supp. 2d 1058 (C.D. Cal. 2000) .................................................... 17

*Smithkline Beckman Corp. v. Proctor & Gamble Co.*,
    591 F. Supp. 1229 (N.D.N.Y. 1984) ........................................................ 18

*Surgicenters of Am., Inc. v. Med. Dental Surgeries, Co.*,
    601 F.2d 1011 (9th Cir. 1979) .................................................................. 13

*Universal City Studios, Inc. v. Nintendo Co.*,
    746 F.2d 112 (2d Cir. 1984) ..................................................................... 20

*Universal Money Centers v. AT & T*,
    22 F.3d 1527 (10th Cir. Kan. 1994) ......................................................... 20

*Water Pik, Inc. v. Med-Systems, Inc.*,
    848 F. Supp. 2d 1262 (D.Col. 2012) ........................................................ 18

*William R. Warner & Co. v. Eli Lilly & Co.*,
    265 U.S. 526, 44 S. Ct. 615 (1924) .......................................................... 13

*Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*,
    419 F.3d 925 (9th Cir. 2005) .................................................................... 13

## TABLE OF AUTHORITIES
(continued)

Page No(s).

## OTHER AUTHORITIES

15 U.S.C. § 1057 ................................................................................ 13

15 U.S.C. § 1114 ................................................................................ 24

McCarthy on Trademarks and Unfair Competition, 4th
    Edition, § 23:41 ....................................................................... 16

McCarthy on Trademarks and Unfair Competition, 4th
    Edition, § 23:49 ............................................................... 14, 18

Pursuant to the Court's May 1, 2012 Order (Docket No. 52) and Fed. R. Civ. P. 56, Keating Dental Arts ("Keating") hereby submits this memorandum in support of its motion for summary judgment of (1) No Infringement of Glidewell's Registered Trademark, (2) No Violation Of Section 43(a) of the Lanham Act, and (3) No Unfair Competition Under California Law.  Attached as Appendix A is a list of supporting declarations with associated exhibits.

## I.  PROCEDURAL POSTURE

In February 2012, Keating filed a Motion for Partial Summary Judgment of Non-Infringement. (Docket No. 26.)  The Court denied that Motion for, *inter alia*, failing to address the Ninth Circuit's eight factor test for determining a likelihood of confusion announced in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979).  (*Id.* at 10.)  In May 2012, the Court denied Keating's motion for reconsideration and directed Keating to file another motion for summary judgment of noninfringement.  (Docket No. 52.)  This motion follows.

## II.  INTRODUCTION

Keating and Glidewell Laboratories ("Glidewell") compete by selling dental restorations, such as crowns and bridges, to dentists across the country.  In 2006, Keating began offering a "KDZ Zirconia" crown consisting of a porcelain layer atop a base of zirconia, an extremely strong material used in dental restorations.  In May 2011, Keating expanded its zirconia crown product offerings to three, one of which—the physically strongest—was called the "KDZ Bruxer," an all-zirconia crown made for use with "bruxers," people who subconsciously grind their teeth and are prone to breaking conventional crowns.

Shortly thereafter, Glidewell sent Keating a cease-and-desist letter for its KDZ Bruxer product based on Glidewell's federal registration in the mark "BRUXZIR," which Glidewell uses (in the form "Brux*Zir*") to market its own all-zirconia crown.  Glidewell subsequently filed this lawsuit, bringing claims for (1) infringement of its registered trademark, (2) false designation of origin

-1-

under the Lanham Act, and (3) unfair competition under California law.

Glidewell's claims all fail as a matter of law because (1) Glidewell has no protectable trademark rights in the BRUXZIR mark and, (2) even if Glidewell's mark is assumed to be valid, no reasonable jury could find that a likelihood of confusion exists among dentists or dental labs, the relevant consumer population, regarding the "KDZ Bruxer" mark and the "BruxZir" mark. Glidewell's claims also fail because Keating's use of the generic term "Bruxer" within its mark is protected by the fair use doctrine.

Glidewell has no trademark rights in BRUXZIR because it is a phonetic equivalent to "bruxer," the intended users of the product.  BRUXZIR is also an improper trademark because it identifies the nature and intended use for the product, a crown for bruxers made of zirconia, rather than the source of the product.  BRUXZIR answer the question "what" rather than "who," and thus is an invalid mark.  Indeed, dentists have come to consider the terms "BruxZir" and "bruxzir" as generic names for all-zirconia crowns.

Even if the mark is assumed valid, analysis of the *Sleekcraft* factors shows that no reasonable jury could find a likelihood of confusion.  Any protection provided by BRUXZIR is very narrow due to the widespread use of "Brux" and "Zir" by others in the dental industry.  The KDZ Bruxer and BruxZir marks as used in commerce are dissimilar when considered in their entirety.  Dentists are highly educated professionals responsible for the health of their patients; they are discerning customers and not easily confused.  Keating chose the KDZ Bruxer mark in good faith after conferring with counsel. Despite using the marks in direct competition nationwide for a year and a half, Glidewell has no examples of actual confusion between the marks.

Glidewell's Lanham Act claim and unfair competition claim are based on the same facts as its infringement claim, and all three claims fall together. Keating respectfully requests that the Court grant this motion in its entirety.

### III.  <u>STATEMENT OF UNCONTROVERTED FACTS</u>

**A.    <u>Dentists and Dental Restorations ("Crowns")</u>**

Crowns and bridges are dental restorations used by dentists to treat patients with damaged or missing teeth.  (SOF ¶ 1.)[1]  Dentists order crowns from "dental laboratories" that manufacture the crowns based on specifications provided by the dentist.  (SOF ¶ 2.)  Crowns and other dental restorations are regulated medical products, and dentists order them from dental laboratories by submitting a prescription form signed by the dentist.  (SOF ¶ 3.)  Finished crowns are not staple goods; they are personalized to the patient with custom-shaping and coloring to fit the needs of a particular tooth for a particular patient. (SOF ¶ 4.)

Dentists are highly educated and trained professionals in the business of patient care.  They are responsible for, among other things: (1) assessing whether a patient needs a crown; (2) assessing the type of crown that is best for the patient; (3) creating specifications for the crown personalized to the patient; (4) placing an order with a dental laboratory to have the personalized crown made; (5) ensuring the crown received from the laboratory is correct and high quality; and (6) and affixing crowns in the mouths of their patients.  (SOF ¶ 5.) Dentists strive to provide excellent patient care, and in this regard they are careful in choosing the dental laboratories with whom they work.  (SOF ¶ 6.)

**B.    <u>Dental Laboratories</u>**

There are over 2,000 dental laboratories in the U.S. servicing the needs of dentists.  (SOF ¶ 7.)   Plaintiff Glidewell, founded in 1970, is by far the largest dental laboratory in the U.S.   In 2002, Shaun Keating founded Defendant Keating Dental Arts.  (SOF ¶ 8.)  Prior to founding his company, Mr. Keating worked for 18 years at Glidewell. (SOF ¶ 9.)

---

[1] Cites to the record are to the enumerated statements in Keating's Statement of Undisputed Facts ("SOF ¶ __.").

For decades dental labs primarily manufactured crowns made entirely or partially of porcelain, a material that gives a tooth-like appearance.  (SOF ¶ 10.) Dental labs have also developed layered combinations of materials, to create stronger crowns that look tooth-like.  (SOF ¶ 11.)  An example of a layered crown developed years ago is a porcelain-fused-to-metal ("PFM") crown, which includes a top porcelain layer—visible in the mouth for aesthetics—atop a lower hidden metal layer for strength.  (SOF ¶ 12.)

## C.   **Bruxing Patients and the Development of Zirconia Crowns**

When it comes to dental restorations, a particularly challenging group of patients for dentists are "bruxers," patients who subconsciously grind their teeth. (SOF ¶ 13.)  Bruxers are notorious for breaking traditional porcelain crowns due to the excessive forces they place on their teeth. (SOF ¶ 14.)  Bruxers who have broken porcelain crowns have often had the broken crowns replaced by gold crowns, which are strong and nearly unbreakable.  (SOF ¶ 15.)  Despite their excellent functional qualities, gold crowns are typically not popular with patients because they do not look like natural teeth. (SOF ¶ 16.)

Zirconia is an extremely strong material that dental labs began using as a substitute for the invisible metal lower layer in PFM crowns.  (SOF ¶ 17.) Although Zirconia is white, it does not have the appropriate reflective properties to appear tooth-like, so it is not nearly as aesthetic as porcelain.  (SOF ¶ 18.)

### 1.   **Keating's "KDZ Zirconia" Crown (2006)**

In 2006, Keating began selling a layered crown with a porcelain top layer and a zirconia base, which it variously called "KDZ," "KDZ Zirconia," or "KDZ CAD/CAM Zirconia." (SOF ¶ 19.)  That year (three years before Glidewell came out with its later all-zirconia crown under the "BruxZir" name), Keating Dental Arts gained national recognition as "Best Crown and Bridge Laboratory" from Dental Town, a dental industry community. (SOF ¶ 20.) Below is an excerpt from a Keating brochure from that time.



(SOF ¶ 21.)

Mr. Keating chose to call his new zirconia product "KDZ" as a reference to "Keating Dental Zirconia." (SOF ¶ 22.) Keating has been selling its layered KDZ crown continuously from 2006 to the present. (SOF ¶ 23.) This layered KDZ crown has been, and remains, Keating's most popular crown made with zirconia. (SOF ¶ 24.)

### 2.   Glidewell's "BruxZir" Crown (2009)

In June 2009, Glidewell began offering for sale an all-zirconia crown[2] under the name "BruxZir." (SOF ¶ 25.) Below is an excerpt from a Glidewell marketing document.



(SOF ¶ 26.)

Glidewell's mark for the new crown was a composite of "Brux," with a capital B, and "Zir," with a capital Z. The "Zir" has an italicized font, and the

---

[2] All-zirconia crowns are also referred to in the dental industry as "full contour zirconia crowns" and "monolithic zirconia crowns."

"Z" partially obscures the "x" giving the impression that the "Zir" letters are in front of the word "Brux." (SOF ¶ 27.) Glidewell's advertising consistently uses this stylized version of its mark. (*Id.*)

Glidewell markets its BruxZir all-zirconia crowns at industry tradeshows, on its internet website, in dental magazines, in brochures mailed to dentists, and through e-mail blasts sent to dentists. (SOF ¶ 28.)

### 3.   <u>Keating's KDZ Bruxer Crown and the KDZ Family (2011)</u>

In 2010, Keating began selling a prototype all-zirconia crown as a substitute for a gold crown in response to requests from its dentist customers. (SOF ¶ 29.) Dentists began asking for all-zirconia crowns at least part because the cost of gold had been increasing significantly in recent years. (SOF ¶ 30.) Glidewell and Keating each sent letters to their respective dentist/customers to promote all-zirconia crowns as a cheaper replacement for gold. (SOF ¶ 31.)

In 2010 and early 2011, Keating did not advertise an all-zirconia crown, though it sold such crowns to its existing customers who requested them. (SOF ¶ 32.) Based on the perceived demand for all-zirconia crowns of its dentists, Keating decided to formally add an all-zirconia crown to its product offerings. (SOF ¶ 33.)

For his new all-zirconia crown, Mr. Keating decided to keep using the "KDZ" prefix that he had been using continuously since 2006 with his layered ceramic/zirconia product. (SOF ¶ 34.) To avoid confusion with his new all-zirconia offering, Mr. Keating decided to rebrand his existing layered "KDZ Zirconia" crown as the "KDZ Ultra" crown. (SOF ¶ 35.) Keating further added another new product made with zirconia to its offerings, which Mr. Keating named the "KDZ Max." (SOF ¶ 36.)

Because the new all-zirconia crown was specifically designed to replace gold crowns for bruxer patients, Mr. Keating wanted to call the new crown the "KDZ Bruxer." (SOF ¶ 37.) On this point, Mr. Keating explained: "We've had

our dentists for years always saying, 'What can I use for my grinding patients, my bruxism patients?' And gold is through the roof right now. And every day I'm getting calls, 'What can I do for my bruxer patients? I can't afford the gold." (SOF ¶ 38.)

Mr. Keating sought the advice of counsel to ensure his use of the name would not cause problems. (SOF ¶ 39.) A trademark search was performed by counsel and, after receiving the advice of his counsel, Mr. Keating proceeded to name the new crown the "KDZ Bruxer." (SOF ¶ 40.)

On March 31, 2011 Keating sent a letter to all of its dentist/customers referencing the increase in the cost of gold and offering a KDZ "family":

- KDZ Bruxer ("Solid Zirconia for bruxer & grinder patients");
- KDZ Ultra (a rebranding of the existing KDZ Zirconia product); and
- KDZ Max (a ceramic pressed onto a zirconia base).

(SOF ¶ 41.)

In May 2011, Keating began marketing its new KDZ family using the following stylized marks, which it has been using continuously since:

  

(SOF ¶ 42.)

The most prominent part of Keating's mark for its new crown is the prefix "KDZ." Following is a second word in a smaller font, sometimes in all caps and sometimes lower case with a capital first letter. (SOF ¶ 43.) Keating presents its KDZ Bruxer product as originating from Keating Dental Arts, with no affiliation to Glidewell or any other dental laboratory. The advertisement that Glidewell attached as Exhibit B to the Complaint is typical: "Introducing the all-new KDZ Bruxer. The best full-contour zirconia solution available. ***Exclusively from Keating Dental Arts***." (SOF ¶ 44 (emphasis added).)

Keating markets its KDZ Bruxer all-zirconia crowns at industry tradeshows, on its internet website, in dental magazines, and in brochures mailed to dentists.  (SOF ¶ 45.)  Dentists interpret the "KDZ" in Keating's marks as a reference to "Keating Dental Zirconia."  (SOF ¶ 46.)

**D.    Glidewell's BRUXZIR Mark Is Weak At Best**

   **1.    BruxZir Is Generic Or At Least Highly Descriptive**

Glidewell named its all-zirconia crown "BruxZir" because it is a zirconia crown for bruxers.  (SOF ¶ 47.)  Since 2009, Glidewell has marketed its all-zirconia crown at dentists and dental labs for use with bruxer patients.  (SOF ¶ 48.)  The name BruxZir is pronounced identically as "bruxer," the term for a person with bruxism. (SOF ¶ 49.)

   **2.    The Wide Use of "Brux" and "Zir" In The Dental Industry**

In addition to Glidewell and Keating, many other companies have been using "Brux" to refer to dental products for use with bruxers and "Z" or "Zir" to refer to dental products associated with zirconia.  Examples include: Arthtek Bruxing Splint; GPS BruxArt; Brux XXX; BruxCure; BruxChecker; Brux-eze; BruxCare; Bruxguard; Dr. Brux; ZerisBRUX; ZirCAD   (zirconia blocks); ZirPress (for ceramic ingots); ZirLiner (zirconia bonding material); Zir-Cut (zirconia polisher); ZirBlock (dental products); Zirprime (pre-sintered zirconia); Zir-Cut (burs for cutting Zirconia); Zir-Cut Diamond FG (specialty burs); Zir.Care (multipurpose stone); ZiReal (Zr dental posts); and ZirColor (coloring for zirconia).  (SOF ¶ 50.)

   **3.    All-Zirconia Crowns Offered By Other Dental Laboratories**

In addition to Glidewell and Keating, many other dental laboratories have been offering all-zirconia crowns under a variety of names, including names with "Brux," "Zir," or variations thereon.  Examples include: Barth Dental Lab ("Z-Brux"); Burbank Dental ("Zir-Max"); California Dental Arts ("ZirFit"); Continental Dental ("Full Zirconia for Bruxing Patients"); Cosmetic Dentistry

of SA ("Bruxer Crown"); Dani Dental ("Full Zirconia (Bruxer)"); Diadem Precision Technology ("Diazir"); Distinctive Dental ("Zir-Tech"); Drake Dental ("Zir-Cast"); Expertec ("Full-Z"); GPS Dental Lab ("GPS BruxArt"); Kastle Mills ("ZirCrown"); Mascola Esthetics ("Xtreme Bruxer); Pittman Dental ("ZirCAM"); Somer Dental Labs ("Full Contour Zir"); Summers Dental Lab ("BruxThetix"); Sun Dental Labs ("Suntech Full Zirconia"); Technics Dental Lab ("Tech/ZIR FC"); Trachsel Dental ("All Zirconia Bruxer"); York Dental Lab ("Bruxer"); and Zahn Dental ("Zirlux").  (SOF ¶ 51.)

### 4. Glidewell's "Authorized" Labs Sell "BruxZir" Crowns, Most of Which Do Not Identify Glidewell As An Affiliated Entity

Glidewell makes zirconia "blanks" (the raw material from which zirconia crowns may be made) that it sells to about 180 "authorized" dental laboratories for use by those laboratories in making their own all-zirconia crowns.  (SOF ¶ 52.)  The "authorized" laboratories make and sell crowns using the BruxZir name, just like Glidewell does. (SOF ¶ 53.)  Most of the "authorized" laboratories have web sites promoting their "BruxZir" crowns, often with the same language used in Glidewell's marketing materials.  (SOF ¶ 54.)  The vast majority of these laboratories do not identify Glidewell as an affiliated entity. (SOF ¶ 55.)  Instead, they typically promote the BruxZir crown as their own crown coming from their own dental laboratory.  (*Id*.)  Glidewell does not monitor the use of the BruxZir mark by its authorized labs, and it does not require those labs to identify Glidewell as an affiliated entity.  (SOF ¶ 56.)

### 5. Dentists Use The Term "BruxZir" Generically

Up through May 2012, Keating had fulfilled over 5,000 prescription forms by supplying its dentist customers with the KDZ Bruxer product.  (SOF ¶ 57).  Over that span, dentists (or their assistants) wrote the word "BruxZir," "bruxir," or variations thereof, on about 75 of the prescription forms requesting Keating's all-zirconia crown.  (SOF ¶ 58.)  The number of prescription forms

received with these spellings constitutes about 1.5% of the total number of prescription forms received by Keating for its all-zirconia crown.  (SOF ¶ 59.)

When receiving prescription forms with such misspellings, Keating implemented a policy of calling the dentist to confirm that the dentist wanted Keating's all-zirconia crown, and not the crown from another laboratory.  (SOF ¶ 60.)  In each instance, the dentist confirmed that they wanted Keating's KDZ Bruxer all-zirconia crown. (SOF ¶ 61.)  Keating is submitting declarations from thirteen dentists (identified in the list below) stating that they wrote "BruxZir," "bruxir," or variations thereof on their prescription forms as a generic reference to an all-zirconia crown, not because they wanted a crown from Glidewell or were otherwise confused that Glidewell and Keating were affiliated (SOF ¶ 62.):

Belton Decl. ¶¶ 9-11; Ex. A;         Brady Decl. ¶¶ 9-11; Ex. A;

Campbell Decl. ¶¶ 10-12; Ex. A;      Colleran Decl. ¶¶ 10-12; Ex. A;

Jacquinot Decl. ¶¶ 9-10; Ex. A;      Murphy Decl. ¶¶ 9-11; Ex. A;

Myers Decl. ¶¶ 9-10 ; Ex. B;         Nussear Decl. ¶¶ 9-11; Ex. A;

Richardson Decl. ¶¶10-12; Ex. A;     Scott Decl. ¶¶ 9-11; Ex. A;

Stephens Decl. ¶¶ 10-12; Ex. A;       Sweet Decl. ¶¶ 8-10; Ex. A;

Tobin Decl. ¶¶ 9-11; Ex. A.

Keating is not the only dental laboratory that receives prescription forms from dentists with "BruxZir," "bruxir," or variations thereon written out as a generic reference to an all-zirconia crown.  Showcase Dental Laboratory, a dental lab unaffiliated with Glidewell or Keating, has also received prescription forms from dentists that generically describe an all-zirconia crown as a "BruxZir," "bruxir," or variation thereon.  (SOF ¶ 63.)

Glidewell itself uses the term BruxZir generically. (SOF ¶ 64.)

/ / /

/ / /

/ / /

-10-

**E.     Glidewell Has Produced No Evidence Of Actual Confusion As To Source Of Goods Or Affiliation Between Glidewell And Keating**

Keating served Glidewell with an interrogatory asking Glidewell to identify any examples of actual confusion on the part of third parties regarding a relationship between Keating and Glidewell or Keating's KDZ Bruxer and Glidewell's BruxZir.  (SOF ¶ 65.)  Glidewell's interrogatory response alleged details for two such instances:

- In April 2012, a Glidewell employee named Nicole Fallon offered a $20 coupon to Dr. Jade Le's dental office in Florida to try a BruxZir restoration.  An employee in Dr. Le's office asked if she could apply the coupon to a previous purchase the office had made of Keating's KDZ Bruxer.  (SOF ¶ 66.)

- In May 2011, Dr. Thomas Nussear's dental office placed an order with Keating for a KDZ Bruxer crown and wrote "BruxZir" on the prescription form.  (*Id.*)

Keating served Glidewell with a follow up interrogatory asking Glidewell to identify all facts relating to the alleged instance of confusion involving Dr. Jade Le's dental office.  (SOF ¶ 67.)  In response, Glidewell further explained that Ms. Fallon made a telephone call to Dr. Le's office and offered a discount on BruxZir crowns.  (*Id.*)

Glidewell employees, and dental professionals generally, pronounce BruxZir and Bruxer identically.  (SOF ¶ 68.)  The only confusion apparent from the record associated with Ms. Fallon's phone call resulted from Ms. Fallon's failure to unambiguously identify the product associated with her coupon offer.

Likewise, Glidewell's identification of Dr. Nussear's prescription form is not evidence of actual confusion.  Keating is submitting a declaration from Dr. Nussear in which he explains that he wrote "BruxZir" on his prescription form as a generic reference to an all-zirconia crown.  In the declaration, Dr. Nussear

explains that he did not intend to order a crown from Glidewell, and he was not confused as to any affiliation between Keating and Glidewell. (SOF ¶ 69-70.)

## F.   Glidewell's Attempts To Prevent Others From Using "Bruxer" In Connection With All-Zirconia Crowns

On January 19, 2010, Glidewell received a federal registration in its trademark "BRUXZIR." (SOF ¶ 71.)  Since that time, Glidewell has relied upon that registration as grounds for threatening trademark infringement suits against any other dental laboratory using "Brux" or "Bruxer" in a mark for an all-zirconia crown. (SOF ¶ 72.)  Specifically, Glidewell sent cease-and-desist letters to at least the following dental labs: Assured Dental Lab ("Z-Brux"); Authentic Dental Lab ("Brux"); China Dental Outsourcing ("Bruxer All Zirconia"); Fusion Dental Lab ("Full Solid Bruxer Zirconia"); Old Dominion Milling Corp. ("Bruxzer"); Pittman Dental ("Bruxer All-Zirconia Crown"); R-dent Dental Laboratory ("R-Brux"); and Showcase Dental Lab ("Zir-Bruxer"). (SOF ¶ 73.) In each instance, the dental laboratory chose to change its name rather than face the risk of a lawsuit in Federal court versus Glidewell. (SOF ¶ 74.)

## IV.  THIS COURT SHOULD GRANT SUMMARY JUDGMENT OF NO INFRINGEMENT OF GLIDEWELL'S REGISTERED TRADEMARK

To prevail on its claim for infringement of its registered mark, Glidewell must show (1) ownership of a protected mark; and (2) that Keating is using a colorable imitation of the protected mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services such that Keating's use is likely to cause confusion among customers of the goods or services. *Applied Info. Scis. Corp. v. eBay, Inc*., 511 F.3d 966, 969 (9th Cir. 2007); 15 U.S.C. § 1114(1)(a).

Here, Glidewell's trademark infringement claim fails both because Glidewell cannot show that its registered mark BRUXZIR is a protected mark, and further because—if Glidewell's mark is assumed to be valid—Glidewell

1   cannot show that Keating's use of its own mark, "KDZ Bruxer," is likely to

2   cause confusion among customers with the BRUXZIR mark.

3   **A.     Glidewell Does Not Have A Protectable Trademark in BRUXZIR**

4          The trademark holder "bears the ultimate burden of proof in a trademark

5   infringement action," including the burden to show that it has a valid mark.

6   *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925,

7   928 (9th Cir. 2005). Because Glidewell has a federally-registered mark, it

8   preliminarily meets its burden because a federally-registered mark is presumed

9   to be protected.  *See* 15 U.S.C. § 1057(b) ("A certificate of registration of a

10  mark . . . shall be prima facie evidence of the validity of the registered mark");

11  *see also Yellow Cab*, 419 F.3d at 928.  However, Keating may overcome this

12  presumption by showing by "a preponderance of the evidence" that Glidewell's

13  mark is not protected.  *Yellow Cab*, 419 F.3d at 928.

14         Glidewell should not have received a federal registration in the mark

15  "BRUXZIR" for use with zirconia crowns for bruxers, as the name identifies the

16  product, not the producer.  *Yellow Cab*, 419 F.3d at 929.  Nor does combining

17  two descriptive terms in and of itself make a mark registrable.  *Surgicenters of*

18  *Am., Inc. v. Med. Dental Surgeries, Co.*, 601 F.2d 1011, 1014 (9th Cir. 1979),

19  citing *William R. Warner & Co. v. Eli Lilly & Co.*, 265 U.S. 526, 528, 44 S. Ct.

20  615 (1924).  The registration is further improper because BruxZir is pronounced

21  the same as bruxer.  *See*, *e.g.*, *Miller Brewing Co. v. G. Heileman Brewing Co.*,

22  561 F.2d 75, 79 (7th Cir. 1977) ("Using the phonetic equivalent of a common

23  descriptive word, *i.e.*, misspelling it, is of no avail.").  Had the Trademark

24  Examiner learned these important facts from Glidewell or from his or her own

25  research, Glidewell's application for registration would have been rejected.

26  / / /

27  / / /

28  / / /

-13-

**B.    Even If Glidewell Is Assumed To Have A Protectable Trademark, No Reasonable Jury Could Find A Likelihood Of Confusion**

"[T]he burden of proving likelihood of confusion rests with the plaintiff." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122, 125 S. Ct. 542, 160 L. Ed. 2d 440 (2004).  If Glidewell's BRUXZIR mark is assumed valid, its infringement claim still fails as a matter of law because no reasonable jury could find a likelihood of confusion.

The Ninth Circuit directs district courts to consider the following eight "*Sleekcraft* factors" when assessing the likelihood of confusion between marks: "[1] strength of the [plaintiff's] mark; [2] proximity of the goods; [3] similarity of the marks; [4] evidence of actual confusion; [5] marketing channels used; [6] type of goods and the degree of care likely to be exercised by the purchaser; [7] defendant's intent in selecting the mark; and [8] likelihood of expansion of the product lines." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011); *see also AMF, Inc.*, 599 F.2d 341 (first identifying the factors).  However, "the list is not exhaustive," and "[o]ther variables may come into play depending on the particular facts presented." *Id.*; *see also* MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, 4TH EDITION, § 24:39.  The Court need not "rigidly weigh[]" these factors, nor need it consider all of them. *Dreamwerks Production Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).

As discussed below, consideration of these factors reveals that no reasonable jury could find a likelihood of confusion in this case.

**1.    Strength of Glidewell's Mark**

"Trademarks are classified along a spectrum of increasing distinctiveness: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful. Generic and descriptive marks are deemed weak; arbitrary marks are considered strong. However, even 'strong' marks will be deemed 'weak' if they exist in a 'crowded

field' of similar marks." *Instant Media, Inc. v. Microsoft Corp*., 2007 WL 2318948 at *12 (N.D.Cal. Aug. 13, 2007) (internal quotations omitted).  Here, Glidewell's mark is extremely weak, to the extent is has any strength at all.

Many companies in the dental industry have used "Brux" to refer to products for use with bruxers and "Z" or "Zir" to refer to products associated with zirconia, including zirconia crowns.  This greatly narrows the scope of any trademark rights that could exist in the mark BRUXZIR for dental crowns.  *See Network Automation, Inc. v. Hewlett-Packard Co*., 2009 U.S. Dist. LEXIS 125835, *24 (C.D. Cal. Sept. 14, 2009) (plaintiff's "Network Automation" mark is generic, or at least extremely weak).  *One Indus., LLC v. Jim O'Neal Distrib., Inc*., 578 F.3d 1154, 1164 (9th Cir. 2009) ("In a crowded field of similar marks, each member of the crowd is relatively weak in its ability to prevent use by others in the crowd.") (citation omitted); *Glow Indus. v. Lopez*, 252 F. Supp. 2d 962, 990 (C.D. Cal. 2002) (noting the weakness of Glow, Inc.'s mark, which competes in a crowded field of beauty products using the word "glow" in some manner as a trademark.)

Any scope is further narrowed because Glidewell's own promotional videos use the term generically, and because Glidewell allows about 180 competing dental laboratories to sell crowns under the "BruxZir" name without identifying an affiliation to Glidewell.  These practices of Glidewell have contributed to the genericization of the mark, and dentists widely view "BruxZir" and "bruxzir" as a generic reference to an all-zirconia crown.

Trademark holders often provide evidence of the strength of their marks by providing survey results of the relevant purchasing public.  Here, Glidewell has presented no such evidence.

For the reasons above, this factor weighs in favor of a finding of no likelihood of confusion.

/ / /

## 2. Proximity of Relatedness of Goods

The proximity or relatedness of goods is relevant to determine whether the products "are likely to be connected in the mind of a prospective purchaser." *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 159 (9th Cir. 1963). Here, there is no genuine issue of material fact that the products offered for sale by Glidewell under the mark BRUXZIR and by Keating under the mark "KDZ Bruxer" are identical: all-zirconia dental restorations.

## 3. Similarity of the Marks

"The similarity of the marks will always be an important factor. Where the two marks are entirely dissimilar, there is no likelihood of confusion." *Brookfield Commc'n, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999). In determining whether marks are similar, courts consider their sight, sound and meaning. *Id.*; *see also Dreamwerks Production Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1131 (9th Cir. 1998). "In analyzing this factor, 'the marks must be considered in their entirety and as they appear in the marketplace.'" *Brookfield Commc'n*, 174 F.3d at 1054 (citations omitted). According to the "anti-dissection" rule, courts may not dissect marks to examine and compare their component parts. MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, 4TH EDITION, § 23:41. "[A] court does not consider the similarity of the marks in the abstract, but rather in light of the way the marks are encountered in the marketplace and the circumstances surrounding the purchase." *Reno Air Racing v. McCord*, 452 F.3d 1126, 1137 (9th Cir. Nev. 2006) (citation and internal quotation marks omitted).

***Sight***: Keating's mark, as used in commerce, includes two separate words: "KDZ Bruxer" or "KDZ BRUXER." In contrast, Glidewell's mark is presented in commerce as a single word comprising a mixture of capital and small letters and two different fonts: Brux*Zir*. *See Echo Drain v. Newsted*, 307 F. Supp. 2d 1116, 1126 (C.D. Cal. 2003) (fact that "Echo Drain" is two words

-16-

1 and "Echobrain" is one word helps support finding that marks look different).

2 Furthermore, in Glidewell's mark the "Zir" portion cuts off the edge of

3 the "x" giving the appearance that the "Zir" letters appear forward of the word

4 "Brux."

5 

6 Keating's mark uses block letters side-by-side, often presented as part of a

7 design that includes the name within an oval:

8

9

10

11 These additional elements help distinguish the parties' marks as used in

12 commerce. *See Self-Insurance Inst. of America, Inc. v. Software & Information*

13 *Indus. Ass'n*, 208 F. Supp. 2d 1058, 1071 (C.D. Cal. 2000) (parties' "SIIA"

14 marks look dissimilar because they include additional elements that are visually

15 distinct, such as an eagle whose wing surrounds part of plaintiff's mark).

16 ***Sound***:  The second part of Keating's mark is pronounced identically

17 with Glidewell's mark in its entirety.  The first part of Keating's mark, "KDZ,"

18 has no similarly sounding counterpart in Glidewell's mark.

19 ***Meaning***:  The purchasing public—dentists—interpret Glidewell's mark

20 and the *second part* of Keating's mark as a reference to the product itself: an all-

21 zirconia dental restoration strong enough for bruxers.  Dentists interpret the first

22 part of Keating's mark, "KDZ," to mean "Keating Dental Zirconia," thus

23 identifying the source of the goods: Keating Dental Arts.  *See Brockmeyer v.*

24 *Hearst Corp.*, 248 F. Supp. 2d 281, 296 (S.D.N.Y 2003) (the meaning of

25 defendant's "O" is a reference to Oprah Winfrey, while plaintiff's mark

26 "<<O>>" does not reference a particular personality).

27 The only commonality between the marks is that they include the well-

28 known dental term "Brux" and the letter "Z."  The appearance of "Z" and

-17-

"Brux" are both fully explainable wholly aside from issues of identifying source, because both identify characteristics shared by the parties' products: they are all-zirconia crowns for *brux*ers.

　　　　When the commonality between composite marks is a term, or letters, that are generic or highly descriptive, courts find the likelihood of confusion reduced.  *California Security Alarms v. Escobar's Security Plus Alarm Systems*, 1996 U.S. Dist. LEXIS 14913 (N.D. Cal. 1996) (finding the parties' marks dissimilar where the commonality, "Security," describes the parties' services); *Alchemy II, Inc. v. Yes! Entertainment Corp*., 844 F. Supp.  560, 569 (C.D. Cal. 1994) (finding the marks "Teddy Ruxpin" and "TV Teddy" dissimilar where the commonality, "Teddy," describes the parties' products: plush, talking teddy bears);  *Boston Duck Tours, LP v. Super Duck Tours*, LLC, 531 F.3d 1, 25 (1st Cir. 2008) (finding the marks "Boston Duck Tours" and  "Super Duck Tours" dissimilar where the commonality, "Duck Tours" describes the parties' services); *Am. Cyanamid Corp. v. Connaught Labs., Inc.*, 800 F.2d 306, 309 (2d Cir. 1986) (finding the marks  HibVAX and HIB-IMUNE dissimilar where the commonality, "Hib," describes the parties' Haemophilus influenza type b vaccine); *Water Pik, Inc. v. Med-Systems, Inc*., 848 F. Supp. 2d 1262, 1272 (D.Col. 2012) (finding the marks Sinu*Cleanse* and SinuSense dissimilar where the commonality, "sinu," is ubiquitous in the sinus irrigation market); *Smithkline Beckman Corp. v. Proctor & Gamble Co*., 591 F. Supp.  1229, 1238 (N.D.N.Y. 1984) (finding the marks ECOTRIN and ENCAPRIN dissimilar where the commonality, "RIN," is derivative of the generic term "aspirin"). *See also* McCarthy on Trademarks and Unfair Competition, 4th Edition, § 23:49 (when the common element of two trademarks is a generic term, the likelihood of confusion is reduced, as the public has come to expect that element on different products).

　　　　This factor weighs in favor of a finding of no likelihood of confusion.

### 4. **Actual Confusion**

A "lack of evidence about actual confusion after an ample opportunity for confusion can be a powerful indication that the junior trademark does not cause a meaningful likelihood of confusion." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843 (9th Cir. 2002).  Glidewell began using the mark BRUXZIR in commerce in June 2009.  Keating began using the mark "KDZ Bruxer" in commerce about two years later, in May 2011.  In this lawsuit Glidewell has identified with particularity two incidents that it characterizes as confusion between the marks. The first of those incidents, involving Keating's customer Dr. Nussear, was not an example of confusion between the marks.  Dr. Nussear has submitted a declaration to correct Glidewell's misunderstanding regarding the writing of "BruxZir" that he placed on a Keating prescription form.

Glidewell is likely to argue that the other prescription forms received by Keating from dentists who wrote "BruxZir," "bruxzir," or variations thereof on the Keating Rx forms are also evidence of confusion between the marks.  Yet the record shows that those dentists, like Dr. Nussear, wrote "BruxZir" as a generic reference to an all-zirconia crown, not as a request for Glidewell's all-zirconia crown.  Dentists are highly educated professionals who manage challenging professional practices.  When a dentist sends a prescription form to Keating requesting an all-zirconia crown, that is precisely what the dentist wants: Keating's all-zirconia crown.  As corroboration to Dr. Nussear's explanation, eleven additional dentists who wrote "BruxZir," or variations thereof, on Keating prescription forms have submitted declarations to explain what they wrote, none of whom were confused between the parties' marks.

Regarding the second incident, Glidewell has failed to demonstrate that Ms. Fallon's communications with the dental office of Dr. Jade Le are evidence of actual confusion regarding the parties' marks, as opposed to evidence of confusion over the nature of the coupon offer being offered by Ms. Fallon.

The fact that Glidewell can point to a modest number of incidents of confusion in the abstract is inadequate.  Relevant confusion is that which affects purchasing decisions, not confusion generally.  *See Echo Drain v. Newsted*, 307 F. Supp. 2d 1116, 1126–27 (C.D. Cal. 2003).  Nor does a showing of some confusion automatically create a triable issue of fact.  *See*, *e.g.*, *Universal Money Centers v. AT & T*, 22 F.3d 1527, 1535 (10th Cir. Kan. 1994); *Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 118 (2d Cir. 1984).

Finally, Glidewell chose not to provide survey evidence of confusion.  For a company like Glidewell with enormous resources, the absence of survey evidence itself may be used to infer that the results of the survey would be unfavorable.  *See Playboy Enters. v. Netscape Communs. Corp.*, 55 F. Supp. 2d 1070, 1084 (C.D. Cal. 1999); *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1041–42 (C.D. Cal.1998) ("[A] plaintiff's failure to conduct a consumer survey, assuming it has the financial resources to do so may lead to an inference that the results of such a survey would be unfavorable.")

## 5.   **Marketing Channels**

"Convergent marketing channels increase the likelihood of confusion." *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1083 (9th Cir. 2005) (quoting *Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 606 (9th Cir. 1987)).  Keating and Glidewell each market their products through Internet websites, magazine advertisements, mailings to dentists, and trade shows.  Here, there is no genuine issue of material fact that the marketing channels used by Glidewell and Keating overlap.

## 6.   **Types of Goods and Degree of Consumer Care**

"It is generally assumed that consumers with expertise or who are buying expensive products or services exercise a greater degree of care when doing so and are thus less easily confused." *Edge Wireless, LLC v. U.S. Cellular Corp.*, 312 F. Supp. 2d 1325, 1333 (D. Or. 2003) (citing *Brookfield Comm's*, 174 F.3d

at 1060).   The relevant consumers in this case are dentists who are highly educated and specially trained professionals.   The products in this case are dental restorations, regulated medical products that impact the well-being of patients if not designed, manufactured, or affixed properly.   Dentists necessarily put great care into the treatment of their patients, and they correspondingly put great care into the selection of a dental laboratory to manufacture dental restorations for their patients.   *See Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1537 (9th Cir. 1989) (holding factor weighed heavily against a finding of likelihood of confusion where purchasers were highly specialized professionals expected to exercise a high degree of care).   Thus, this factor weighs in favor of a finding of no likelihood of confusion.

### 7.   **Keating's Intent**

"When an alleged infringer knowingly adopts a mark similar to another's, courts will presume an intent to deceive the public."   *Official Airline Guides v. Goss*, 6 F.3d 1385, 1395 (9th Cir. 1993).   Here, the undisputed evidence shows that Mr. Keating did not have bad intent when he chose the KDZ Bruxer name. First, Mr. Keating chose to use the prefix "KDZ" to designate a zirconia crown from Keating Dental Arts, a nomenclature he had begun in 2006, years before Glidewell began using the name "BruxZir."   Second, Mr. Keating chose the KDZ Bruxer name as one of a family of new "KDZ" product names (with "KDZ Ultra" and "KDZ Max") that Keating Dental Arts was releasing at the same time.   Third, Mr. Keating added the term "Bruxer" to his new all-zirconia crown because he saw bruxers as the target patient for the new crown, based on the requests he received from his dentist customers.   Finally, Mr. Keating checked with intellectual property counsel to clear the mark KDZ Bruxer before he decided to go public with the name.   Only after getting the green light from counsel did Mr. Keating use the new mark in Keating's advertising.   Thus, this factor weighs in favor of a finding of no likelihood of confusion.

### 8.  Likelihood of Expansion

"Inasmuch as a trademark owner is afforded greater protection against competing goods, a 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." *Sleekcraft*, 599 F.2d at 354.  Here, the subject products already compete in the same market and are advertised in overlapping marketing channels.  Thus, this factor is not relevant.

### 9.  Summary of *Sleekcraft* Factors

To prevail on the ultimate question toward which the *Sleekcraft* analysis is directed—the likelihood of confusion of consumers—Glidewell must show sufficient evidence to permit a rational trier of fact to find that confusion is "probable," not merely "possible."  *Murray v. Cable NBC*, 86 F.3d 858, 861 (9th Cir. 1996).  As shown above, Glidewell cannot make such a showing. Keating's use of the KDZ Bruxer mark has not been "likely to confuse an appreciable number of people as to the source of the product." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1151 (9th Cir. 2002).  The only *Sleekcraft* factors that weigh in favor of Glidewell are that the products are identical and marketed in overlapping marketing channels.   Yet, because this direct competition has been ongoing for nearly a year and a half with no incidents of actual confusion reinforces that no reasonable jury could find a likelihood of confusion between the BruxZir mark and the KDZ Bruxer mark, considered in their entirety as used in commerce.

## C.  Keating's Use Of "Bruxer" In the Mark "KDZ Bruxer" Is Protected By The Classic Fair Use Defense

Under the "classic fair use" doctrine, a party is not liable for trademark infringement where it "use[s] a descriptive term in good faith in its primary, descriptive sense other than as a trademark." *Cairns v. Franklin Mint Co*., 292 F.3d 1139, 1150-51 (9th Cir. 2002).  To establish this defense, Keating must

prove that its use of "Bruxer" is: (1) not a use "as a trademark or service mark"; (2) done "fairly and in good faith"; and (3) "[o]nly to describe its goods or services." *Cairns*, 292 F.3d at 1150-51.

Moreover, "[t]he fair use defense only comes into play once the party alleging infringement has shown by a preponderance of the evidence that confusion is likely." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 608–09 (9th Cir.2005) (citing *KP Permanent Make-Up*, 543 U.S. at 118 ("burden of proving likelihood of confusion rests with the plaintiff, and the fair use defendant has no freestanding need to show confusion unlikely").

Here, as discussed at length above, there is no likelihood of confusion that results from Keating's use of the product name "KDZ Bruxer."  However, even if it is assumed that Glidewell can demonstrate by a preponderance of the evidence that confusion is likely (which it cannot), Glidewell's trademark infringement claim and its related Lanham Act and California unfair competition claims all fail because Keating's use of the term "Bruxer" is protected by the classic fair use defense.

First, Keating is not using the term "Bruxer" in its mark as an indication of source.  Indeed, Keating disclaimed the term "Bruxer" in its pending trademark application for the KDZ Bruxer mark.  Rather, Keating uses the term "Bruxer" to *describe the goods* to which the KDZ Bruxer mark is applied: an all-zirconia dental restoration strong enough for bruxer patients.

As discussed above, Mr. Keating made his decision to use the term "Bruxer" in good faith in mid-2011 after conferring with counsel.  Finally, as discussed at length above, application of the *Sleekcraft* factors demonstrates that there is no likelihood of confusion from Keating's use of KDZ Bruxer. Accordingly, the classic fair use defense applies, and Glidewell's trademark infringement claim fails as a matter of law.

/ / /

## V.   THIS COURT SHOULD GRANT SUMMARY JUDGMENT OF NO VIOLATION OF SECTION 43(A) OF THE LANHAM ACT

Glidewell's claim of false designation of origin (Second Cause of Action) is based on the same allegations as its claim of infringement of its registered trademark (First Cause of Action):

- "Defendant Keating's use of the ***infringing trademark*** induces purchasers and others to believe, contrary to the fact, that the products sold by Defendant Keating are rendered, sponsored or otherwise approved by, or connected with Plaintiff Glidewell." (Complaint (Docket No. 1) at ¶ 22 (emphasis added).)

- "Defendant Keating's unauthorized use of the infringing trademark in connection with the advertising, sale and provision of Defendant Keating's dental products constitutes use of a false designation of origin and a false description with the meaning of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. §1125(a)." (*Id*. at ¶ 23.)

Accordingly, in this case the analysis for Glidewell's claim of false designation of origin under Section 43(a) of the Lanham Act (15 U.S.C. § 1125) is the same as the analysis for infringement of a registered trademark under 15 U.S.C. § 1114. *See Brookfield Communs.*, 174 F.3d at 1046-47 & n. 8 (applying same analysis to claims under Sections 1114 and 1125).

## VI.   THIS COURT SHOULD GRANT SUMMARY JUDGMENT OF NO UNFAIR COMPETITION UNDER CALIFORNIA LAW

Glidewell's claim of unfair competition (Third Cause of Action) is based on the same allegations as its trademark infringement claim:

- "Defendant Keating's activities, as described above [in the First and Second Causes of Action], constitute unfair competition in violation of California Business & Professions Code § 17200, et seq.  As alleged above, Defendant Keating ***has infringed*** and intends to ***continue***

*infringing* Plaintiff Glidewell's trademark." (Complaint (Docket No. 1) at ¶ 26 (emphasis added).)

- "Defendant Keating's activities are likely to **confuse or mislead** the public as to the origin of sponsorship of Defendant Keating's goods." (*Id*. at ¶ 27 (emphasis added).)

- "[] Keating has attempted and is attempting to trade on the goodwill associated with Plaintiff Glidewell's trademark." (*Id*. at ¶ 28.)

Accordingly, in this case the analysis for Glidewell's claim of unfair competition under California law is the same as the analysis for its claim of infringement of its registered trademark.  *See Denbicare U.S.A. Inc. v. Toys "R" Us, Inc.*, 84 F.3d 1143, 1152 (9th Cir. 1996) ("Since dismissal of [plaintiff's] Lanham Act claim was proper, dismissal of its § 17200 claim was proper as well."); *Japan Telecom, Inc. v. Japan Telecom America Inc*., 287 F.3d 866, 875 (9th Cir. 2002) (same).

## VII.  <u>CONCLUSION</u>

For the reasons presented above, Keating respectfully requests that the Court grant this motion for summary judgment in its entirety.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: November 19, 2012    By: /s/ David G. Jankowski

Lynda J. Zadra-Symes
Jeffrey L. Van Hoosear
David G. Jankowski

Attorneys for Plaintiff,
KEATING DENTAL ARTS, INC.

14179606

-25-