Lynda J. Zadra-Symes (SBN 156,511)
Lynda.Zadra-Symes@kmob.com
Jeffrey L. Van Hoosear (SBN 147,751)
Jeffrey.VanHoosear@kmob.com
David G. Jankowski (SBN 205,634)
David.iankowski@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Defendant/Counter-Plaintiff,
KEATING DENTAL ARTS, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JAMES R. GLIDEWELL DENTAL CERAMICS, INC. dba GLIDEWELL LABORATORIES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KEATING DENTAL ARTS, INC.<br><br>　　　　Defendant.<br><br>AND RELATED COUNTERCLAIMS. | Civil Action No. SACV11-01309-DOC(ANx)<br><br>**KEATING DENTAL ARTS, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT CANCELING GLIDEWELL'S TRADEMARK REGISTRATION**<br><br>HEARING:<br>Date:  December 17, 2012<br>Time:  8:30 a.m.<br>Crtrm: 9D<br><br>Honorable David O. Carter |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56-1, Defendant Keating Dental Arts, Inc. ("Keating") submits this Statement of Uncontroverted Facts and Conclusions of Law in support of its Motion for Summary Judgment canceling Plaintiff James R. Glidewell Dental Ceramics, Inc. dba Glidewell Laboratories' ("Glidewell") Trademark Registration.

## I. <u>MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE</u>

### A. <u>Bruxing, Bruxism, and Bruxers</u>

1. The consuming public for the commercial products at issue in this case are dentists and dental laboratories. (Jankowski Decl., Ex. 3, at 7 (Request for Admission No. 6; Mangum Decl., Ex. 50 (Shuck Dep. Tr.), at 138:9 – 141:19).

2. Dentists and other dental professionals refer to the subconscious grinding of teeth as "bruxing" and the associated medical condition as "bruxism." (Eggleston Decl. ¶ 16; Eggleston Decl., Ex. 65, at 11:20-22, 12:3-4; Mangum Decl., Ex. 50 (Shuck Dep. Tr.), at 33:13-21, 41:19-20, 42:19 – 43:3, 199:21 – 200:2; Jankowski Decl., Ex. 4 (DiTolla Dep. Tr.), at 81:16-17, 184:16 – 185:7).

3. The term "bruxism" is defined in Dorland's Illustrated Medical Dictionary (32nd Ed. 2012) as "involuntary, nonfunctional, rhythmic, or spasmodic gnashing, grinding, and clenching of teeth. (Eggleston Decl., Ex. 65, at 12:12-14).

4. The term "brux" is defined as "to grind the teeth rhythmically or spasmodically." (Eggleston Decl., Ex. 65, at 12:14-15).

5. Dentists are taught these terms during dental school, including Glidewell's in-house dentist, Dr. Michael DiTolla, and Keating's expert witness with over forty years of experience as a prosthodontist, Dr. David Eggleston.

(Eggleston Decl., Ex. 65, at 12:18-20; Jankowski Decl., Ex. 4 (DiTolla Dep. Tr.), at 184:4 – 185:7).

6.     Dentists and other dental professionals refer to dental patients who suffer from bruxism as "bruxers." (Jankowski Decl., Ex. 4 (DiTolla Dep. Tr.), at 186:20-21; Mangum Decl., Ex. 50 (Shuck Dep. Tr.), at 199:21 – 200:2; Eggleston Decl. ¶ 16; Eggleston Decl., Ex. 65, at 12:3-4, 14:7-8; Jankowski Decl., Ex. 1 at 5 (Interrogatory No. 2); Jankowski Decl., Ex. 3, at 8 (Request for Admission No. 9); Campbell Decl. ¶ 10, 12; Colleran Decl ¶ 7; Jacquinot Decl. ¶ 11; Myers Decl. ¶ 11; Nussear Decl. ¶ 11; Scott Decl. ¶ 11; Stephens Decl. ¶ 10,12; Sweet Decl. ¶ 8).

7.     By way of example, peer-reviewed journal articles from the dental field have for decades used "bruxer" as a generic term people suffering from bruxism. (Eggleston Decl., Exs. 68-78).

8.     United States patents and patent applications dating back to the 1980's use the term "bruxer" to identify people suffering from bruxism. (Request for Judicial Notice Ex. A-E).

**B.     <u>Dental Laboratories and Dental Restorations ("Crowns")</u>**

9.     Crowns and bridges are dental restorations used by dentists to treat patients with damaged or missing teeth. (Eggleston Decl., ¶ 9; Jankowski Decl., Ex. 4 (DiTolla Dep. Tr.), at 135:17-21).

10.     Dentists order crowns from "dental laboratories" that manufacture the crowns for the dentists based on specifications provided by the dentist. (Eggleston Decl. ¶ 9; Brady Decl. ¶ 2; Campbell Decl. ¶ 2; Colleran Decl. ¶ 2; Jacquinot Decl. ¶ 2; Murphy Decl. ¶ 2; Myers Decl. ¶ 2; Nussear Decl. ¶ 2; Scott Decl. ¶ 2; Stephens Decl. ¶ 2; Sweet Decl. ¶ 2; Tobin Decl. ¶ 2).

11.     There are over 2,000 dental laboratories in the U.S. servicing the needs of dentists. (Jankowski Decl., Ex. 5 (Bartolo Dep. Tr.), at 17:7 – 18:2).

12.     Plaintiff Glidewell, founded in 1970, is by far the largest dental

laboratory in the U.S., employing about 3,300 employees. (Jankowski Decl., Ex. 6 (Allred Dep. Tr.), at 51).

13.    In 2002, Shaun Keating founded Keating Dental Arts. (Mangum Decl., Ex. 54 (Keating Dep. Tr.), at 20:4-11; Keating Decl. ¶ 3).

14.    Prior to founding his company, from 1984 to 2002, Mr. Keating worked at Glidewell Laboratories. For most of that time, he was the crown and bridge manager and was responsible for approximately 200 employees. (Keating Decl. ¶ 2).

15.    For decades dental labs primarily manufactured crowns made entirely or partially of porcelain, a material that gives a tooth-like appearance. (Jankowski Decl., Ex. 4 (DiTolla Dep. Tr.), at 34:22 – 42:22; Eggleston Decl. ¶ 14).

16.    Dental labs have also developed layered combinations of materials, to create stronger crowns that look tooth-like. (Jankowski Decl., Ex. 4 (DiTolla Dep. Tr.), at 34:22 – 42:22; Eggleston Decl. ¶ 15).

17.    An example of a layered crown developed years ago is a porcelain-fused-to-metal ("PFM") crown, which includes a top porcelain layer—visible in the mouth for aesthetics—atop a lower hidden metal layer for strength. (Eggleston Decl. ¶ 15; Jankowski Decl., Ex. 4 (DiTolla Dep. Tr.), at 35:15-22; Mangum Decl., Ex. 50 (Shuck Dep. Tr.), at 235:3-10).

18.    Bruxers can be a particularly challenging group of patients for dentists because they are notorious for breaking traditional porcelain crowns due to the excessive forces they place on their teeth. (Mangum Decl., Ex. 50 (Shuck Dep. Tr.), at 33:13 – 34:17; Jankowski Decl., Ex. 4 (DiTolla Dep. Tr.), at 80:10 – 81:10; Eggleston Decl. ¶ 17).

19.    Such patients have traditionally been provided with crowns made entirely out of metal, such as gold. (Mangum Decl., Ex. 50 (Shuck Dep. Tr.), at 33:13 – 34:17; Jankowski Decl., Ex. 4 (DiTolla Dep. Tr.), at 80:10 – 81:10;

Eggleston Decl. ¶ 17).

20.     Gold is superior to porcelain for bruxers in that it is more durable and capable of withstanding the stresses associated with chewing and teeth grinding. (Eggleston Decl. ¶ 14; Jankowski Decl., Ex. 4 (DiTolla Dep. Tr.), at 41:11 – 42:9; Mangum Decl., Ex. 52 (Friebauer Dep. Tr.), at 63:21 – 64:20).

21.     To patients gold is far inferior to porcelain in that it is not aesthetically pleasing because it does not look like a tooth. (Jankowski Decl., Ex. 4 (DiTolla Dep. Tr.), at 42:5-16, 52:4-8, 53:4-7, 112:14-19, 170:1-13).

22.     Because of its poor aesthetics, gold is a "last resort for people with chewing problems." (Mangum Decl., Ex. 52 (Friebauer Dep. Tr.), at 64:3-12).

C.     **Glidewell Develops An All-Zirconia Crown As A Replacement For Gold Crowns**

23.     Because many patients are very resistant to receiving gold crowns, dental professionals have sought to develop a crown that is strong like gold but that looks like a natural tooth. Glidewell's in-house dentist, Dr. DiTolla, for years asked his R&D department "for a cast gold material that's white like a tooth so patients will accept it." (Jankowski Decl., Ex. 4 (DiTolla Dep. Tr.) at 112:14-21.)

24.     Glidewell's Director of R&D repeated Dr. DiTolla's desire: "His [Dr. DiTolla's] saying was always, 'Why can't we make a full gold crown that is white? Give me a white full gold crown.'" (Mangum Decl., Ex. 52 (Friebauer Depo. Tr.) at 63:13-19.)

25.     To address Dr. DiTolla's request, Glidewell spent several years leading up to 2009 developing an all-zirconia crown. (Jankowski Decl., Ex. 4 (DiTolla Dep. Tr.) at 61:7-17; Mangum Decl., Ex. 51 (Carden Dep. Tr.) at 102:14-22.)

26.     Zirconia is an extremely strong material that dental labs began using years earlier as a substitute for the metal lower layer in PFM crowns. "

1  (Mangum Decl., Ex. 52 (Friebauer Depo. Tr.) at 50:11-52:6.)

2    27.    Although Zirconia is white, it does not have the appropriate
3  reflective properties to appear tooth-like, so it is not nearly as aesthetic as
4  porcelain. (Jankowski Decl., Ex. 4 (DiTolla Dep. Tr.) at 35:15-36:2; 61:7-13.)

5    28.    A big challenge facing Glidewell in creating an all-zirconia crown
6  was making it sufficiently aesthetic, and Glidewell's Director of R&D recalled
7  that its first attempt was a failure: "I remember our first full crown was so ugly,
8  we all thought that it can't be more ugly than gold, but it was more ugly.
9  Unbelievable." (Mangum Decl., Ex. 52 (Friebauer Depo. Tr.) at 62:2-12.)

10   29.    Eventually Glidewell's R&D efforts resulted in an all-zirconia
11 crown that it deemed aesthetic enough, and it decided to release the new crown
12 as a new product. (Jankowski Decl., Ex. 4 (DiTolla Dep. Tr.) at 62:5-8.)

13 **D.    Glidewell Names Its All-Zirconia Crown "BruxZir"**

14   30.    Glidewell's Vice President of Advertising, Jim Shuck, proposed
15 "BruxZir" as the name of the new all-zirconia crown. (Jankowski Decl., Ex. 4
16 (DiTolla Dep. Tr.) at 75:7-16; Mangum Decl., Ex. 50 (Shuck Dep. Tr.) at 15:8-
17 15.)

18   31.    As Mr. Shuck explained, the name was chosen to combine
19 **brux**ism and **zir**conia: "That's why we picked the name, because . . . if you see
20 brux or you identify somebody with brux or bruxism, think of zirconium. So we
21 put brux and zir together." (Mangum Decl., Ex. 50 (Shuck Dep. Tr.) at 41:1-13;
22 *see also* (Mangum Decl., Ex. 52 (Friebauer Dep. Tr.) at 72:1-4.)

23   32.    Glidewell's in-house dentist, Dr. DiTolla, found the name
24 "memorable" and immediately liked it because it described the functionality of
25 the crown. (Jankowski Decl., Ex. 18; Ex. 4 (DiTolla Dep. Tr.) at 85:15-87:5.)

26   33.    Back in June 2009 Dr. DiTolla responded to Mr. Shuck's proposed
27 name as follows:

28     I like BruxZir for a couple of reasons . . .

It is catchy, clever and memorable. . . .

It also describes it's [sic] main indication as we see it today: an unbreakable crown for your patients who have broken or might break other restorations. When you want gold and the patient wants white, BruxZir will make both of you happy.

No other crown has ever been marketed as the crown for bruxers, . . .

. . . The name BruxZir *sells the function of the crown* and not the esthetics. It doesn't try to be something that it's not. *It's a crown for bruxers*....We have so many "esthetic" restorations, *I would prefer to emphasize its physical advantages*. . . .

. . . And, yes, what should I use on a grinder? BruxZir is a great answer.

*Id.*

34.    In his deposition, Dr. DiTolla testified "[I]" I thought it was clever because of the "Zir" for zirconia"; that the dentist was going to know what was in there." (Jankowski Decl., Ex. 4 (DiTolla Dep. Tr.) at 73:8-10.)

35.    Glidewell's Director of R&D, Mr. Friebauer, also provided a favorable response to the name suggestion of BruxZir by replying by email, "And it all makes sense." (Jankowski Decl., Ex. 18.)

36.    Mr. Friebauer further explained that "[t]o me, it stands for bruxism and zirconia. It makes sense to me." (Mangum Decl., Ex. 52 (Friebauer Dep. Tr.) at 72:1-4.)

37.    Glidewell's Sales Manager, Robin Bartolo, also liked the name: "So here you had something that looked like a tooth and yet was strong enough to withstand even patients that would brux at night or during the day. So it was a great name to convey strength." (Jankowski Decl., Ex. 5 (Bartolo Dep. Tr.) at 71:19-72:5.)

38.    Glidewell admits that the mark BRUXZIR was adopted, at least in part, to connote a product that is useful for bruxers and that the product is composed of zirconia. (Jankowski Decl., Ex. 3 at 6.)

**E.     Glidewell Markets Its All-Zirconia Crown For Use With Bruxers**

39.     In June 2009, Glidewell began offering for sale the new all-zirconia crown under the name "BruxZir." (Mangum Decl., Ex. 50 (Shuck Dep. Tr.) at 15:21-16:3; Ex. 51 (Carden Dep. Tr.) at 97:18-21.)

40.     Glidewell prominently and widely promoted the new all-zirconia crown to its customers as "ideal" for bruxer patients in the marketing materials it sent to dentists. (Mangum Decl., Ex. 50 (Shuck Dep. Tr.) at 87:18-88:7; 176:19-178:22; Jankowski Decl., Ex. 8; Ex. 10 at 3, 12, 23, 26; Ex. 11 at 1, 3, 5-6; Ex. 12; Ex. 13; Eggleston Decl., Exs. 79-84.)

41.     Because the aesthetics of its new all-zirconia crown was poor compared to conventional porcelain crowns, Glidewell further marketed the crown as "More Brawn Than Beauty." (Jankowski Decl., Ex. 4 (DiTolla Dep. Tr.) at 76:3-17; 122:8-15; 143:21-144:10; Ex. 7 at 1-2, 4, 7-13, 15, 17, 20; Ex. 8 at 1, 4-9; Ex. 9 at 1; Ex. 10 at 1, 12, 23, 26; Ex. 11 at 2, 4; Mangum Decl., Ex. 50 (Shuck Dep. Tr.) at 178:11-22.)

42.     Below is an excerpt from a Glidewell marketing document.



(Jankowski Decl., Ex. 10 at 1)

43.     Glidewell also promoted the use of its all-zirconia crown for bruxers in technical articles authored by its Vice President of R&D, Mr. Carden. (Jankowski Decl., Exs. 15, 16, 17).

44.     By way of example, an article authored by Mr. Carden states that "[p]rimary candidates [for all-zirconia restorations] include bruxers and grinders who do not desire cast gold or metal occlusal PFM restorations." (Jankowski

Decl., Ex. 16 at 3).

45. Glidewell also promoted the use of its all-zirconia crown as being indicated, or "ideal," for bruxers on its website. (Jankowski Decl., Ex. 9 at 2; Eggleston Decl., Exs. 80, 81, 82, 83, 84.)

46. The web site further explains that:

> When we launched BruxZir Solid Zirconia crowns & bridges in 2009, our intention was to provide a monolithic zirconia restoration ***indicated for bruxers and grinders*** as an esthetic alternative to posterior metal occlusal PFMs and full-cast metal restorations. The result was a material we said was "More Braun than Beauty."

(Jankowski Decl., Ex. 9 at 2.)

## F. The Name "BruxZir" Is Pronounced The Same As "Bruxer"

47. Glidewell's in-house dentist, Dr. DiTolla, has published many promotional videos available on the internet (through Glidewell's website or iTunes) that discuss dental techniques relating to the BruxZir product. Glidewell has also produced a DVD of videos relating to the BruxZir product which it mailed to dentists around the country. (Mangum Decl., Ex. 50 (Shuck Dep. Tr.) at 73:16-74:18; 128:9-20.)

48. In those videos, Dr. DiTolla pronounces the name BruxZir and the dental term bruxer identically. (Eggleston Decl., Ex. 65 at 16; Van Hoosear Decl., Ex. V-4.)

49. In their videotaped depositions in this case, Glidewell's witnesses' pronounced BruxZir and bruxer identically. (Van Hoosear Decl., Exs. V-1, V-2, V-3.)

50. Starting in early 2011, Glidewell sent a number of cease and desist letters to dental laboratories who uses the word "Bruxer," or variations thereon, in connection with all-zirconia crowns. (Jankowski Decl., Ex. 6 (Allred Dep. Tr.) at 213:19-264:13 & Exs. 19-34.)

51. In those communications, Glidewell's General Counsel, Keith

Allred, asserted to the third parties that their names were confusingly similar to Glidewell's mark because BruxZir and bruxer sound the same. (Jankowski Decl., Ex. 6 (Allred Dep. Tr.) at 220:5-12; 229:5-8; Ex. 24 at 5; Ex. 25 at 1; Ex. 30 at 4; Frattura Decl. ¶ 15.)

52.   By way of example, on February 14, 2011, Mr. Allred sent the following message to Pittman Dental Lab, who had been advertising a BRUXER All Zirconia Crown: "BruxZir® / BRUXER: **sounds the same doesn't it?** And, that is what gives rise to the matter of trademark infringement." (Jankowski Decl., Ex. 25 at 1 (emphasis added)).

53.   Dentists outside of Glidewell also pronounce BruxZir and bruxer identically. (Eggleston Decl., Ex. 65 at 14; Stephens Decl. ¶ 12; Scott Decl. ¶ 11; Colleran Decl. ¶ 12; Jacquinot Decl. ¶ 11; Nussear Decl. ¶ 11.)

**G.   Glidewell Uses "BruxZir" Generically**

54.   In its promotional materials, Glidewell reinforces the use of "bruxir" or "bruxer" crown as nomenclature for an all zirconia crown, not as a trademark indicating the source of the product. (Boatright Decl., Ex. A ¶ 51.)

55.   For example, in Glidewell's promotional video, Dr. DiTolla compares a "bruxir" or "bruxer" crown to a metal occlusal PFM [porcelain fused to metal] crown and a gold cast crown. (Boatright Decl., Ex. A ¶ 27 (First video link); Eggleston Decl., Ex. 65, at 17:3-8).

56.   These are generic names for types of crowns with which dentists are very familiar. (Eggleston Decl., Ex. 65, at 16:10 – 17:12; Jankowski Decl., Ex. 4 (DiTolla Dep. Tr.), at 35:15-22; Mangum Decl., Ex. 50 (Shuck Dep. Tr.), at 235:3-10; Mangum Decl., Ex. 50 (Shuck Dep. Tr.), at 33:13 – 34:17; Jankowski Decl., Ex. 4 (DiTolla Dep. Tr.), at 80:10 – 81:10; Eggleston Decl. ¶ 17).

57.   Glidewell also uses the word BRUXZIR as a noun and plural noun, which is further evidence of generic use. (Van Hoosear Decl., Ex. V-4;

(Compendium Clips) ("this Bruxzir is 100% zirconia" and "one question I get about Bruxzirs is . . ." and "We do 15,000, say, BruxZirs a week."); Van Hoosear Decl., Ex. V-1 (Shuck Dep. Video Clips); Van Hoosear Decl., Ex. V-2 (DiTolla Dep. Video Clips); Van Hoosear Decl., Ex. V-3 (Carden Dep. Video Clips); Jankowski Decl., Ex. 6 (Allred Dep. Tr.), at 195:22 – 196:1.

58.     Dr. DiTolla, states in Glidewell's promotional videos that one could even get "a couple of BruxZirs put in." (Boatright Decl., Ex. A ¶ 51).

59.     Dr. DiTolla gives continuing education lectures to dentists around the country. His most requested lecture is on monolithic restorations, and during his lecture he uses the terms "BruxZir crown" and "full-contour zirconia" interchangeably for educational purposes. He states, "I want to drive it into them and make sure they walk away knowing that it's a solid zirconia crown." (Jankowski Decl., Ex. 4 (DiTolla Dep. Tr.), at 224:13 – 226:6).

**H.    The Widespread Use of "Brux" and "Zir" In The Dental Industry**

60.     In addition to Glidewell and Keating, many other companies have been using "Brux" to refer to dental products for use with bruxers and "Z" or "Zir" to refer to dental products associated with zirconia. Examples include:

- Arthtek Bruxing Splint (Eggleston Decl., Ex. 121)
- GPS BruxArt (Eggleston Decl., Ex. 114)
- BruxChecker (Eggleston Decl., Ex. 122)
- Brux-eze (Eggleston Decl., Ex. 124)
- BruxCare (Eggleston Decl., Ex. 125)
- Bruxguard (Eggleston Decl., Ex. 126)
- Dr. Brux (Eggleston Decl., Ex. 123)
- ZirCAD (zirconia blocks) (Eggleston Decl., Ex. 129)
- ZirColor (coloring product for zirconia) (Eggleston Decl., Ex. 135)
- ZirPress (for ceramic ingots) (Eggleston Decl., Ex. 130)
- ZirLiner (zirconia bonding material) (Eggleston Decl., Ex. 131)

1    • Zir-Cut (zirconia polisher) (Eggleston Decl., Ex. 127)

2    • ZirBlock (dental products) (Eggleston Decl., Ex. 128)

3    • Zirprime (pre-sintered zirconia) (Eggleston Decl., Ex. 132)

4    • Zir.Care (multipurpose stone) (Eggleston Decl., Ex. 133)

5    • ZiReal (Zr dental posts) (Eggleston Decl., Ex. 134)

6    **I.    All-Zirconia Crowns Offered By Other Dental Laboratories**

7         61.    In addition to Glidewell and Keating, many other dental

8    laboratories have been offering all-zirconia crowns under a variety of names,

9    including names with "Brux," "Zir," or variations thereon. Examples include:

10   • *Advanced Dental Lab — BruxZir (Jankowski Ex. 31)

11   • *Assured Dental Lab — Z-Brux (Jankowski Ex. 28)

12   • *Authentic Dental Lab — Brux (Jankowski Ex. 27)

13   • *Barth Dental Lab — Z-Brux (Jankowski Exs. 34 & 37)

14   • Burbank Dental — Zir-Max (Eggleston Decl., Ex. 99)

15   • California Dental Arts — ZirFit (Eggleston Decl., Ex. 103)

16   • CDLLab – ZerisBRUX (Eggleston Decl., Ex. 109)

17   • *China Dental Outsourcing — "Bruxer All Zirconia" (Jankowski Ex.
18     29)

19   • *China Dental Outsourcing — All Zirconia for Bruxers (Jankowski
20     Ex. 39)

21   • Continental Dental — Full Zirconia for Bruxing Patients (Eggleston
22     Decl., Ex. 112)

23   • Cosmetic Dentistry of SA — Bruxer Crown (Eggleston Decl., Ex.
24     119)

25   • Dani Dental — Full Zirconia (Bruxer) (Jankowski Ex. 43)

26   • Diadem Precision Technology — Diazir (Eggleston Decl., Ex. 101)

27   • Drake Dental — Zir-Cast (Eggleston Decl., Ex. 96)

28   • Expertec — Full-Z (Eggleston Decl., Ex. 93)

- *Fusion Dental Lab — "Full Solid Bruxer Zirconia" (Jankowski Ex. 24)
- GPS Dental Lab — GPS BruxArt (Eggleston Decl., Ex. 114)
- Infinity Dental Lab — Bruxer Crowns (Eggleston Decl., Ex. 108)
- Kastle Mills — ZirCrown (Eggleston Decl., Ex. 100)
- Mascola Esthetics — Xtreme Bruxer (Eggleston Decl., Ex. 110)
- *Old Dominion Milling Corp. — Bruxzer (Jankowski Ex. 32)
- *Pittman Dental — ZirCAM All-Zirconia (Eggleston Decl., Ex. 106)
- *Pittman Dental — Bruxer Crown (Eggleston Decl., Ex. 120)
- *R-dent Dental Laboratory — R-Brux (Eggleston Decl., Ex. 117)
- *Showcase Dental Lab — Zir-Bruxer (Jankowski Exs. 30 & 38)
- Somer Dental Labs — Full Contour Zir (Eggleston Decl., Ex. 104)
- Summers Dental Lab — BruxThetix (Eggleston Decl., Ex. 113)
- Sun Dental Labs — Suntech Full Zirconia (Eggleston Decl., Ex. 94)
- Technics Dental Lab — Tech/ZIR FC (Eggleston Decl., Ex. 105)
- Trachsel Dental — All Zirconia Bruxer (Jankowski Ex. 42)
- York Dental Lab — Bruxer (Eggleston Decl., Ex. 111)
- Zahn Dental — Zirlux (Eggleston Decl., Ex. 102)

62.    These dental laboratories prominently promote their all-zirconia crowns for use by bruxers. Examples include:

- Barth Dental Labs — "ideal for bruxers." (Jankowski Ex. 37)
- California Dental Arts — "Perfect for bruxers" (Eggleston Decl., Ex. 103)
- China Dental Outsourcing — "primarily for bruxers and heavy biters" (Jankowski Ex. 39)
- Drake Dental — "Recommended for Bruxers and Grinders" (Eggleston Decl., Ex. 96)
- Expertec — "ideal for patients who brux" (Eggleston Decl., Ex. 93)

- Infinity Dental Lab — "Bruxer Crowns" (Eggleston Decl., Ex. 108)
- Sun Dental Labs — for "bruxers and grinders" (Eggleston Decl., Ex. 94)
- York Dental Lab — "ideal restoration for bruxers" (Eggleston Decl., Ex. 111)

63.     As noted above, Glidewell has sought to stop all other dental labs from using the word "Bruxer," or variations thereof, in the name of their all-zirconia crowns. The dental labs in the list above marked with an asterisk received cease-and-desist letters from Glidewell. (Jankowski Decl., Ex. 6 (Allred Dep. Tr.) at 213:19-264:13 & Exs. 24-34).

**J.     Glidewell Labs Do Not Identify Glidewell As Source**

64.     Glidewell makes zirconia "blanks" (the raw material from which zirconia crowns may be made) that it sells to about 180 "authorized" dental laboratories around the U.S. for use by those laboratories in making their own all-zirconia crowns.  (Mangum Decl., Ex. 51 (Carden Dep. Tr.), at 141: 17 – 142:5, 201:16 – 202:5, 208:4 – 209:2; Jankowski Decl., Ex.  4 (DiTOlla Dep. Tr.), at 98:3-13, 129:9-14).

65.     The "authorized" laboratories make and sell crowns using the BruxZir name, just like Glidewell does.  (Eggleston Decl., Ex 67 at 4:22 – 5:15; Eggleston Decl., Ex. 136).

66.     Most of the "authorized" laboratories have web sites promoting their "BruxZir" crowns, often with the same language used in Glidewell's marketing materials.  (Eggleston Decl., Ex 67 at 4:22 – 5:15; Eggleston Decl., Ex. 136).

67.     The many labs that Glidewell has authorized to make and sell crowns made from its BruxZir material (including at least one who previously received cease and desist letters) do not identify Glidewell as the source. (Eggleston Decl., Ex. 136; Eggleston Decl., Ex. 137).

68.     Glidewell does not monitor the use of the BruxZir mark by its authorized labs, and it does not require those labs to identify Glidewell as an affiliated entity.  (Jankowski Decl., Ex. 6 (Allred Dep. Tr.), at 141:10 – 143:8; Jankowski Decl., Ex. 5 (Bartolo Dep. Tr.), at 178:11-22, 135:11 – 134:19).

69.     This practice reinforces the understanding among dentists that "BruxZir" is a product available from multiple sources, not an indicator of a single source or producer. (Eggleston Decl., Ex. 67, at 3:7 – 5:15).

**K.     Dentists Use The Term "BruxZir" Generically**

70.     In May 2011, Keating Dental Arts began offering for sale an all-zirconia crown called the "KDZ Bruxer." (Mangum Decl., Ex. 53 (Brandon Dep. Tr.) at 63:8-15; Keating Decl. Ex. F.)

71.     Over the following year Keating fulfilled over 5,000 prescription forms by supplying its dentist customers with the KDZ Bruxer product. (Mangum Decl., Ex. 53 (Brandon Dep. Tr.) at 60:13-17; 66:3-7; 68:6-8.)

72.     Over that span, dentists (or their assistants) wrote the word "bruxzir," "bruxer," or variations thereof, on about seventy-five of the prescription forms requesting all-zirconia crowns. (Mangum Decl., Ex. 53 (Brandon Dep. Tr.) at 56:23-57:6.)

73.     This corresponds to approximately 1.5% of the prescription forms over that time period. (Mangum Decl., Ex. 53 (Brandon Dep. Tr.) at 68:9-11.)

74.     When receiving prescription forms with such misspellings, it was Keating's policy to call the dentist and confirm that they wanted Keating's all-zirconia crown, and not the crown from any other laboratory. (Mangum Decl., Ex. 53 (Brandon Dep. Tr.) at 68:12-18.)

75.     In these instances, the dentist always confirmed that they wanted Keating's KDZ Bruxer all-zirconia crown. (Mangum Decl., Exs. 59, 61, 62.)

76.     Many dentists in the industry refer to all-zirconia crowns as a "BruxZir," "bruxzir," or variations thereon. (Eggleston Decl., Ex. 65 at 16-18;

Ex. 66 at 3-7.)

77.    Dentists who submitted prescription forms to Keating with such spellings wrote that word as a generic reference to an all-zirconia crown, not to identify Glidewell Laboratories as a source. Keating is submitting thirteen declarations from dentists who submitted prescription forms to Keating with "BruxZir" written on them to explain this point. (Belton Decl., ¶¶ 9-11; Brady Decl., ¶¶ 9-11; Campbell Decl., ¶¶ 10-12; Colleran Decl. ¶¶ 10-12; Jacquinot Decl., ¶¶ 9-10; Murphy Decl., ¶¶ 9-11; Myers Decl., ¶¶ 9-10; Nussear Decl., ¶¶ 9-11; Richardson Decl., ¶ 10-12; Scott Decl., ¶¶ 9-11; Stephens Decl., ¶¶ 10-12; Sweet Decl., ¶¶ 8-10; Tobin Decl., ¶¶ 9-11.)

78.    Showcase Dental Laboratory, a dental lab unaffiliated with Glidewell or Keating, has also received prescription forms from dentists ordering all-zirconia crowns that generically describe an all-zirconia crown as a "BruxZir," "bruxzir," or variation, thereof. (Frattura Decl., ¶¶ 7-9, 18; Ex. A.)

**L.    Keating Adopted Its KDZ Bruxer Mark In Good Faith**

79.    Based on the perceived demand of its dentist customers for all-zirconia crowns, Keating decided to formally add an all-zirconia crown to its KDZ line of products (which had been introduced in 2006). (Mangum Decl., Ex. 54 (Keating Dep. Tr.), at. 43:15 – 45:12).

80.    Because the new all-zirconia crown was specifically designed to replace gold crowns for bruxer patients, Mr. Keating wanted to call the new crown the "KDZ Bruxer." (Mangum Decl., Ex. 54 (Keating Dep. Tr.), at. 43:15 – 45:12).

81.    On March 31, 2011 Keating sent a letter to all of its dentist/customers referencing the increase in the cost of gold and offering a KDZ family of products consisting of:

- KDZ Bruxer ("Solid Zirconia for bruxer & grinder patients")
- KDZ Ultra (a rebranding of the existing KDZ Zirconia product)

1    (Keating Decl. ¶ 12) and

2    • KDZ Max (a ceramic pressed onto a zirconia base)

3    (Keating Decl. Ex. F).

4    82. Mr. Keating sought the advice of counsel, Mr. Gourde, who

5    performed a trademark search, to ensure his use of the name would not cause

6    problems. (Mangum Decl., Ex. 54 (Keating Dep. Tr.), at 43:15 – 45:12; Keating

7    Decl. ¶ 10).

8    **M.    Glidewell Has Presented No Credible Evidence Of Actual Confusion**

9    83. In its responses to Keating's interrogatories, Glidewell alleged

10   details for two instances of alleged actual confusion.

11   • In April 2012, a Glidewell employee named Nicole Fallon offered a

12      $20 coupon to Dr. Jade Le's dental office in Florida to try a BruxZir

13      restoration. An employee in Dr. Le's office asked if she could apply

14      the coupon to a previous purchase the office had made of Keating's

15      KDZ Bruxer. (Jankowski Decl., Ex. 1 (Interrogatory Nos. 7 & 8).

16   • In May 2011, Dr. Thomas Nussear's dental office placed an order with

17      Keating for a KDZ Bruxer crown and wrote "BruxZir" on the

18      prescription form. (Jankowski Decl., Ex. 1 (Interrogatory Nos. 7 & 8).

19   84. In response to Keating's follow up interrogatory, Glidewell

20   explained that Ms. Fallon made a telephone call to Dr. Le's office and offered a

21   discount on BruxZir crowns. (Jankowski Decl., Ex. 2 (Interrogatory No. 23);

22   Jankowski Decl., Ex. 1 (Interrogatory Nos. 7 & 8)).

23   85. Glidewell employees, and dental professionals generally,

24   pronounce "BruxZir" and "Bruxer" identically. (Van Hoosear Decl., Exs. V-1,

25   V-2, V-3; Eggleston Decl., Ex. 67 at 1:26 – 2:3; Eggleston Decl., Ex. 66 at 3:10

26   – 4:5; Eggleston Decl., Ex. 65 at 12:5, 14:9-22).

27   86. In response to Keating's follow up interrogatory, Glidewell pointed

28   again to Dr. Nussear's "Rx Order Form" (prescription form). (Jankowski Decl.,

-16-

Ex. 2 (Interrogatory No. 22); Jankowski Decl., Ex. 1 (Interrogatory Nos. 7 & 8))

87.     Dr. Nussear wrote "BruxZir" on his prescription form as a generic reference to an all-zirconia crown. (Nussear Decl. ¶¶ 9 & 11). Furthermore, Dr. Nussear neither intended to order a crown from Glidewell, nor was he confused as to any affiliation between Keating and Glidewell. (Nussear Decl. ¶ 10).

**N.      The Trademark Office Did Not Fully Examine Glidewell's Trademark Application For "BruxZir"**

88.     Glidewell filed to federally register a trademark in the mark BRUXZIR for use with dental restorations on June 17, 2009. (Boatright Decl., Ex. B).

89.     On January 19, 2010, Glidewell's issued as Trademark Registration No. 3,739,663. (Boatright Decl., Ex. B).

90.     During the examination process, the Trademark Examiner did not conduct an Internet search and made no inquiry as to whether BRUXZIR had any meaning in the dental industry. (Boatright[1] Decl., Ex. B; Boatright Decl., Ex. A ¶¶ 39, 34, 42, 44-47).

91.     The Examiner should have performed a search of the Internet for "crowns designed for bruxers." (Boatright Decl., Ex. A ¶ 42).

92.     Had the Examiner learned that Glidewell pronounces BRUXZIR the same as "bruxer," and promotes the same pronunciation in its marketing materials for the BruxZir product, the mark would have been denied registration as either generic or merely descriptive. (Boatright Decl., Ex. A ¶ 38).

93.     Trademark Examiners are obligated to follow the Trademark Manual of Examining Procedure (TMEP) when examining applications. (Boatright Decl., Ex. A ¶ 44).

---

[1] Plaintiff's expert, Lori Boatright submitted an expert report in rebuttal to the expert report of Glidewell's legal expert, David Franklyn. Boatright Decl., Ex.A.

94.     In examining Glidewell's application for BRUXZIR, the Examiner should have asked if the mark had any particular meaning in relation to the goods or in the relevant trade or industry and should have requested additional information about the mark and the goods. (Boatright Decl., Ex. A ¶¶ 44, 34).

95.     In this case, the examining attorney did not make any such requests during Glidewell's trademark application. (Boatright Decl., Ex. A ¶ 44-47).

96.     Nor did Glidewell offer any such information. (Boatright Decl., Ex. A ¶¶ 38, 39; Boatright Decl., Ex. B; Jankowski Decl., Ex. 6 (Allred Dep. Tr.), at 111:15 – 113: 12).

## II.  CONCLUSIONS OF LAW

### A.     Summary Judgment Standard

1.     Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ. P. 56(c).

2.      A genuine issue of material fact exists only where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

3.     The movant has the burden of establishing the lack of a genuine issue of material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

4.      To defeat summary judgment, the opposing party bears the burden of setting forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

5.     Without evidence that is both sufficient for a jury to return a verdict for the nonmoving party and "significantly probative," no triable issues exist, and summary judgment should result. *Anderson*, 477 at 249.

6.     The Court can resolve factual issues on summary judgment if no

reasonable jury could reach a contrary conclusion. *Id*. at 248.

**B.** **The Presumption of Validity of Glidewell's Trademark Registration Can Be Rebutted By A Preponderance of Evidence**

7.      Because BRUXZIR is a registered trademark, "a presumption of validity places the burden of proving genericness upon" Keating. *Advertise.com, Inc. v. AOL Advertising, Inc.*, 616 F.2d 974, 977 (9th Cir. 2010) (citing *Filipino Yellow Pages, Inc. v. Asian journal Publ'ns Inc.*, 198 F.3d 1143, 1146 (9th Cir. 1999). 15 U.S.C. § 1057(b).

8.      Keating may rebut this presumption by a preponderance of the evidence showing the mark is generic or lacks secondary meaning. *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005) ("The defendant may, of course, overcome the presumption 'by a showing by a preponderance of the evidence that the term was or has become generic.'"); *Surgicenters of Am., Inc. v. Med. Dental Surgeries, Co.*, 601 F.2d 1011, 1014 (9th Cir. 1979).

9.      "The crucial date for the determination of genericness is the date on which the alleged infringer entered the market with the disputed mark or term. *Yellow Cab*, 419 F.3d at 928.

**C.** **"BruxZir" is Generic and/or Commonly Descriptive and is Not Entitled to Trademark Protection**

11.     15 U.S.C. § 1127 defines a trademark "as including 'any word, name, symbol, or device or combination thereof' used by any person 'to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.'" *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (quoting 15 U.S.C. § 1127).

12.     In determining whether a mark is entitled to trademark protection, the courts recognize four categories of terms: 1) generic; 2) descriptive; 3)

suggestive; and 4) arbitrary or fanciful. *Rudolph Int'l, Inc. v. Realys, Inc.*, 482 F.3d 1195, 1196-98 (9th Cir. 2007) (affirming summary judgment of genericness), citing *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1146 (9th Cir. 1999) (citing *Surgicenters*, 601 F.2d at 1014.

13.     A generic term, also known as a common descriptive term, refers to the type or species of the product at issue. Generic terms cannot be protected trademarks. Descriptive terms "generally do not enjoy trademark protection" but may be protected if they acquire 'secondary meaning' in the minds of consumers, i.e., [they] become distinctive of the trademark applicant's goods in commerce. *Rudolph*, at 1197-98 (internal citations omitted).     See also *Advertise.com* 616 F.3d at 977 (finding registered mark generic).

14.     "To allow trademark protection for generic terms . . . even when [they] have become identified with a first user, would grant the owner of the mark a monopoly, since a competitor could not describe his goods as what they are." *Surgicenters*, 601 F.2d at 107.

**1.     Glidewell's "BruxZir" Mark Identifies The Product, Not The Producer**

15.     The determination of whether a mark is generic depends on how the consuming public understands the meaning of the term. *Yellow Cab*, 419 F.3d at 929 ("To determine whether a term has become generic, we look to whether consumers understand the word to refer only to a particular producer's goods or whether the consumer understands the word to refer to the goods themselves." (quoting *KP Permanent Make-up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 604 (9th Cir. 2005)); see also *Rudolph*, 482 F.3d at 1198; *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1148 (9th Cir. 1999) ("[T]he 'ultimate test' of genericness [sic] is 'how a term is understood by the consuming public.'" (quoting *Surgicenters*, 601 F.2d at 1015 n.11; *Van Well Nursery, Inc. v. Mony Life Ins. Co.*, 421 F. Supp. 2d 1321, 1327-

28 (E.D. Wash. 2006) ("Even the most distinctive symbols – coined words having no descriptive or suggestive quality – may become generic if they are adopted by the public as the name of the product rather than as the mark of the producer.") See also *In re Reckitt & Colman, North America Inc.*, 18 U.S.P.Q.2d (BNA) 1389 (TTAB 1991) (PERMA PRESS generic for soil and stain removers for use on permanent press products).

16.     The test is whether the relevant public would understand the term to be generic. See *In re 1800Mattress.com IP LLC*, 586 F.3d 1359, 92 U.S.P.Q.2d (BNA) 1682, 1685 (Fed. Cir. 2009).

17.     As the Ninth Circuit stated in *Rudolph*:

> "The question of genericness is often answered by reference to the "who-are-you/what-are-you" test: a valid trademark answers the former question, whereas a generic product name or adjective answers the latter."

*Rudolph*, 482 F.3d at 1198, citing *Filipino Yellow Pages*, 198 F.3d at 1147 ("[I]f the primary significance of the trademark is to describe the *type of product* rather than the *producer*, the trademark is a generic term and cannot be a valid trademark.") (emphasis in original); *Anti-Monopoly, Inc. v. General Mills Fun Group*, 611 F.2d 296, 301 (9th Cir. 1979) ("At its simplest, the [genericness] doctrine states that when a trademark primarily denotes a product, not the product's producer, the trademark is lost.").

### 2.     Glidewell's "BruxZir" Mark Should Be Canceled Because It Is Phonetically Equivalent To And A Misspelling Of "Bruxer"

18.     Courts have long held that the corrupted spelling or phonetic equivalent of a generic term is also generic. *See, e.g.*, *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1186 n.24 (5th Cir. 1980) (citing *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 79 (7th Cir. 1977); *Am. Aloe Corp. v. Aloe Creme Labs., Inc.*, 420 F.2d 1248, 1253 (7th Cir. 1970); *see* MCCARTHY ON

TRADEMARKS, 4TH EDITION, § 12:38; *Rudolph Int'l v. Realys Inc*., 482 F.3d 1195, 1198 (9th Cir. 2007) (citing to *Nupla Corp. v. IXL Mfg. Co.,* 114 F.3d 191, 196 (Fed. Cir. 1997); *Brookfield Communications v. West Coast Entertainment*, 174 F.3d 1036, 1058 fn. 19 (9th Cir. 1999) (citing to *Miller Brewing Co. v. G. Heileman Brewing Co*., 561 F.2d 75, 81 (7th Cir. 1977); *C-Thru Ruler Co. v. Needleman*, 190 U.S.P.Q. (BNA) 93 (E.D. Pa. 1976); *In re Hubbard Milling Co.*, 6 U.S.P.Q.2d (BNA) 1239 (TTAB 1987).

19.    If a mark bears a misspelling and is phonetically identical to an otherwise descriptive or generic term, it is considered a "legal equivalent" and will be treated the same as would the ordinary spelling.   *In Re State Chemical Manufacturing Co*., 225 U.S.P.Q. (BNA) 687 (TTAB 1985) (FOM held to be legal equivalent of "foam" despite differences in appearance and spelling; referencing prior "legal equivalents" cases, namely, TINTZ for tints, ALKOL for alcohol, LITE for light, SAVON GAS for "save on gas"); see also *In re Vanilla Gorilla*, 80 U.S.P.Q. 2d (BNA) 1637, 1640 (TTAB 2006) ("3-O's" merely descriptive of car wheel rims)

20.    The "intended user" can also be the basis for refusal of registration on the grounds of genericness. In *In re Mortgage Bankers Association of America*, 226 U.S.P.Q. (BNA) 954 (TTAB 1985); *In re Reed Elsevier Properties Inc.*, 482 F.3d 1376 (Fed. Cir. 2007).

**D.     <u>Alternatively, Glidewell's BRUXZIR Mark Is Merely Descriptive And Has Not Acquired Secondary Meaning</u>**

**1.     <u>Glidewell's BRUXZIR Mark Merely Describes The Intended User And Characteristics of The Product</u>**

21.    A term that identifies a group to whom the applicant directs its goods or services is merely descriptive. See *In re Planalytics, Inc.*, 70 U.S.P.Q.2d (BNA) 1453 (TTAB 2004); *Hunter Publ'g Co. v. Caulfield Publ'g Ltd.*, 1 U.S.P.Q.2d (BNA) 1996 (TTAB 1986); *In re Camel Mfg. Co., Inc.*, 222

U.S.P.Q. (BNA) 1031 (TTAB 1984).   Trademark Manual of Examining Procedure (TMEP), § 1209.03(i).

22.   Rather than immediately conveying a brand or product source, merely descriptive marks "immediately convey[] knowledge of a quality, feature, function or characteristic of the goods or services with which [they are] used." *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 963 (Fed. Cir. 2007) (emphasis omitted).

23.   To be determined merely descriptive and not entitled to registration, it is sufficient to find that the mark "immediately conveys information about one feature or characteristic of at least one of the designated" goods or services within the applicant's trademark applications. *In re The Chamber of Commerce of the United States*, 675 F.3d 1297, 1298-1301 (Fed. Cir. 2012); *Advertise.com*, 616 F.3d at 982; *Japan Telecom, Inc. v. Japan Telecom Am., Inc.*, 287 F.3d 866 (9th Cir. 2002).

24.   Simply combining two descriptive words does not make a mark registrable. *Surgicenters*, 601 F.2d 1011, 9th Cir. (1979), citing *Warner & Co. v. Lilly & Co.*, 265 U.S. 526, 528, 44 S.Ct. 615, 68 L.Ed. 1161 (1924).

**2.**   **Glidewell Has Failed To Satisfy Its Burden Of Proof of Establishing Secondary Meaning**

25.   "When used to describe a product, [merely descriptive marks] do not inherently identify a particular source, and hence cannot be protected," unless they have acquired "distinctiveness which will allow them to be protected under the [Lanham] Act." *Two Pesos, Inc.*, 505 U.S. at 769. "This acquired distinctiveness is generally called secondary meaning." *Id*. (internal quotation marks omitted).

26.   "To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Two Pesos,*

*Inc.*, 505 U.S. at 766 (citing *Inwood Labs., Inc. v. Ives Labs.*, Inc., 456 U.S. 844 (1982)).

27.    The Ninth Circuit has enunciated a four-element test the finder of fact may consider to determine whether a mark has obtained secondary meaning, including: "(1) whether actual purchasers of the product bearing the claimed trademark associated the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether use of the claimed trademark has been exclusive." *Yellow Cab*, 419 F.3d at 930 (citing *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985) (en banc)).

28.    In addition, the Ninth Circuit has considered "direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and the number of customers; established place in the market; and proof of intentional copying by the defendant." *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138 (9th Cir. 2008) (citing *Filipino Yellow Pages,.Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999).

29.    Proof of secondary meaning entails rigorous evidentiary requirements. *Express, LLC v. Forever 21, Inc.*, 2010 U.S. Dist. LEXIS 91705 (C.D. Cal. 2010); *Seed Lighting Design Co. v. Home Depot*, 2005 U.S. Dist. LEXIS 44741 (N.D. Cal. 2005).

30.    Because the chief inquiry is the attitude of the consumer "[a]n expert survey of purchasers can provide the most persuasive evidence of secondary meaning. *Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*, 680 F. Supp. 2d 1107, 1117 (N.D. Cal. 2010) (citing *Vision Sports, Inc. v. Melville Corp., 888 F.2d 609, 615 (*9th Cir. 1989)).

31.    Courts "generally credit customer surveys as the strongest evidence of secondary meaning." *Aurora World, Inc. v. TY Inc.*, 719 F. Supp. 2d 1115,

1   1151 (C.D. Cal. 2009) (citing *Levi Strauss*, 778 F.2d at1358 (en banc)).

2       32.    Advertising, standing alone, does not establish secondary meaning.

3   "The 'true test of secondary meaning' is the effectiveness of the advertising

4   effort. *Art Attacks*, 581 F.3d at 1146 (citing *Int'l Jensen v. Metrosound U.S.A.*, 4

5   F.3d 819, 824 (9th Cir. 1993)) (affirming summary judgment for alleged

6   infringer).

7       33.    "Naturally, a 'large expenditure of money does not in itself create

8   legally protectable rights.'" *CG Roxanne LLC v. Fiji Water Co. LLC*, 569 F.

9   Supp. 2d 1019, 1031 (N.D. Cal. 2008) (citing *Carter-Wallace, Inc. v. Procter &*

10  *Gamble Co.*, 434 F.2d 794, 800 (9th Cir. 1970).

11      34.    Being first to market with a product does not render the product's

12  name distinctive. *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 119 (1938);

13  *See In re Phoseon Tech. Inc.*, 103 U.S.P.Q.2d (BNA) 1822 (TTAB 2012).

14      35.    Secondary meaning must be established through evidence existing

15  at the time the alleged infringer began using the allegedly infringing mark. *Sand*

16  *Hill Advisors*, 680 F. Supp. 2d at 1117 (citing *Levi Strauss & Co. v. Blue Bell,*

17  *Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985)). "Consequently, only evidence

18  showing use of the mark . . . prior to Defendant's [allegedly infringing] use of

19  the mark is probative of secondary meaning." *Id.*

20      36.    Length of use and exclusivity are closely tied: without exclusivity

21  it is unlikely that a mark is associated with a single source and without time

22  consumers may not associate a mark with a single source. *Art Attacks*, 581 F.3d

23  at 1146.

24      37.    Evidence of product success in the marketplace does not

25  necessarily establish secondary meaning because such success may be easily

26  attributable to the desirability of the product configuration rather than the

27  source-designating capacity of the mark. *Cont'l Lab. Prods. v. Medax Int'l*, 114

28  F. Supp. 2d 992, 1002 (S.D. Cal. 2000) (citing *Duraco Prods., Inc. v. Joy*

*Plastic Enters., Ltd.*, 40 F.3d 1431, 1452-53 (3d Cir. 1994). "[S]ales figures alone are inadequate to establish a connection between the product and its source." *Id.* at 1002 (citing *Seabrook Foods, Inc. v. Bar-well Foods Ltd.*, 568 F.2d 1342, 1345 (C.C.P.A. 1977).

**E.  Cancelation of the BRUXZIR Registration Is In Line With Trademark Public Policy**

38.  In responding to a trademark application, the examining attorney may request that the applicant submit additional explanation or materials to clarify the meaning of the mark or the nature of the goods or services. Trademark Manual of Examining Procedure (TMEP) Section 1209.02; See *In re Noble Co.*, 225 U.S.P.Q. (BNA) 749, 750 (TTAB 1985)")

39.  When a generic term is enforced as a mark, the public is harmed and the purposes of trademarks are subverted. *Kellogg Co. v. National Biscuits Co.*, 305 U.S. 111, 122, 59 S.Ct. 109 (1938) ("Sharing in the goodwill of an article unprotected by patent or trade-mark is the exercise of a right possessed by all – and in the free exercise of which the consuming public is deeply interested.").

40.  Granting trademark protection to a generic mark effectively grants the trademark owner a monopoly "since a competitor could not describe his goods as what they are." *Rudolph*, 482 F.3d 1195, 1199, n.2, quoting *Surgicenters*, 601 F.2d at 1017; *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999).

/ / /

/ / /

/ / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: November 19, 2012      By: /s/ David G. Jankowski
                                   Lynda J. Zadra-Symes
                                   Jeffrey L. Van Hoosear
                                   David G. Jankowski

                              Attorneys for Plaintiff,
                              KEATING DENTAL ARTS, INC.

14179111
101812