SNELL & WILMER L.L.P.
Philip J. Graves (SBN 153441)
pgraves@swlaw.com
Greer N. Shaw (SBN 197960)
gshaw@swlaw.com
350 South Grand Avenue, Suite 2600
Two California Plaza
Los Angeles, California 90071
Telephone: (213) 929-2500
Facsimile: (213) 929-2525

Attorneys for Plaintiff
James R. Glidewell Dental Ceramics, Inc.
d/b/a Glidewell Laboratories

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| JAMES R. GLIDEWELL DENTAL CERAMICS, INC. dba GLIDEWELL LABORATORIES, a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>KEATING DENTAL ARTS, INC., a California corporation<br><br>Defendant. | Case No. SACV11-01309-DOC(ANx)<br><br>**GLIDEWELL LABORATORIES' OPPOSITION TO DEFENDANT KEATING DENTAL ARTS, INC.'S MOTION FOR SUMMARY JUDGMENT OF (1) NO INFRINGEMENT OF GLIDEWELL'S REGISTERED TRADEMARK, (2) NO VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, AND (3) NO UNFAIR COMPETITION UNDER CALIFORNIA LAW**<br>Hearing |
| AND RELATED COUNTERCLAIMS. | Date:   December 17, 2012<br>Time:  8:30 a.m.<br>Ctrm:  9D, Hon. David O. Carter<br><br>Pre-Trial Conf.:   January 28, 2013<br>Jury Trial:          February 26, 2013 |

## HIGHLY CONFIDENTIAL - FILED UNDER SEAL

## (PURSUANT TO PROTECTIVE ORDER DATED JANUARY 30, 2012)

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

16196448.3

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................... 1

II.   ARGUMENT ....................................................................................... 2

A.    Glidewell's BruxZir Mark is Valid ...................................... 2

B.    Likelihood of Confusion ........................................................ 2

1.    Strength of the BruxZir Mark ..................................... 2

a.    The BruxZir Mark is Conceptually Strong ...................... 2

b.    The BruxZir Mark is Commercially Strong...................... 3

(i)    Keating Fails to Demonstrate Absence of a Genuine Issue of Fact regarding Commercial Strength ...................................................... 4

(ii)   The Evidence Shows that the BruxZir Mark is Commercially Strong.......................................... 9

(iii)  Keating's Authority is Easily Distinguishable..... 12

2.    Proximity of Glidewell's and Keating's Goods ....................... 14

3.    Similarity of the Marks ................................................ 14

4.    Evidence of Actual Confusion.................................... 17

5.    Marketing Channels ..................................................... 19

6.    Type of Goods and Degree of Care ............................ 20

7.    Keating's Intent in Selecting the Mark...................... 21

8.    Likelihood of Expansion of the Product Lines.......................... 23

9.    Conclusion: Confusion is Likely ............................... 23

C.    Keating's Fair Use Defense is Frivolous ............................. 23

D.    The Court should Deny Keating's Request for Summary Judgment on Glidewell's Second and Third Causes of Action .......... 25

III.  CONCLUSION ................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Alfacell Corp. v. Anticancer Inc.*,
71 U.S.P.Q.2d 1301 (T.T.A.B. 2004)...................................................................20

*AMF, Inc. vs. Sleekcraft Boats*,
599 F.2d 343 (9th Cir. 1979) ...............................................................14, 20, 21

*Apple Computer, Inc. v. Formula International, Inc.*,
725 F.2d 521 (9th Cir. 1984) ..............................................................................16

*Auburn Univ. v. Moody*,
2008 U.S. Dist. LEXIS 89578, at *20-21 (M.D. Ala. 2008)...............................9

*Brookfield Commc'ns, Inv. v. W. Coast Entm't Corp.*,
174 F.3d 1036 (9th Cir. 1999) ............................................................................19

*Brother Records, Inc. v. Jardine*,
318 F.3d 900 (9th Cir. 2003)..............................................................................23

*Century 21 Real Estate Corp. v. Sandlin*,
846 F.2d 1175 (9th Cir. 1988) ..........................................9, 12, 14, 19, 20

*Citibank, N.A. v. Citibanc Grp., Inc.*,
724 F.2d 1540 (11th Cir. 1984)............................................................................3

*Clamp Mfg. Co., Inc. v. Enco Mfg. Co., Inc.*,
970 F.2d 512 (9th Cir. 1989) ..............................................................................16

*Columbia Pictures Indus., Inc. v. Krypton Broadcasting of
Birmingham, Inc.*,
259 F.3d 1186 (9th Cir. 2001) ............................................................................23

*Conversive, Inc. v. Conversagent, Inc.*,
433 F. Supp. 2d 1079 (C.D. Cal. 2006).........................................3, 14, 16, 19, 21

*E. & J. Gallo Winery & Consorzio del Gallo Nero*,
782 F. Supp. 457 (N.D. Cal. 1991)........................................................................3

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
967 F.2d 1280 (9th Cir.1992) ............................................................................21

*Earthquake Sound Corp. v. Bumper Indus.*,
352 F.3d 1210 (9th Cir. 2003) ............................................................................16

*Electropix v. Liberty Livewire Corp.*,
178 F. Supp. 2d 1125 (C.D. Cal. 2001)............................................................5, 7

*Fair Housing Council of Riverside County, Inc. v. Riverside Two*,
249 F.3d 1132 (9th Cir. 2001) ..............................................................................1

**TABLE OF AUTHORITIES**
(continued)

Page

*Fleischmann Distilling Corp. v. Maier Brewing Co.*,
314 F.2d 149 (9th Cir. 1963) ............................................................... 15

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
618 F.3d 1025 (9th Cir. 2010) .............................................................. 24

*Glow Industries, Inc. v. Lopez*,
252 F. Supp. 2d 962 (C.D. Cal. 2002) .................................................. 13

*In re Nat'l Data Corp.*,
753 F.2d 1056 (Fed. Cir. 1985) ............................................................ 24

*Instant Media, Inc. v. Microsoft Corp.*,
2007 U.S. Dist. LEXIS 61443, at *35-36 (N.D. Cal. 2007) ............... 12

*KOS Pharmaceuticals, Inc. v. Andrx Corp.*,
369 F.3d 700 (3d Cir. 2004) .......................................................... 16, 20

*Lahoti v. Vericheck, Inc.*,
636 F.3d 501 (9th Cir. 2011) ..................................... 3, 5, 8, 9, 11, 12, 14

*Morningside Grp., Ltd. v. Morningside Capital Grp., L.L.C.*,
182 F.3d 133 (2d Cir. 1999) ........................................................... 6, 11

*Mrs. U.S. Nat'l Pageant, Inc. v. Miss U.S.A. Org., LLC*,
2012 U.S. Dist. LEXIS 97147, at * 31-38 (W.D.N.Y. 2012) ........... 6, 7

*Nautilus Grp., Inc. v. Icon Health & Fitness, Inc.*,
372 F.3d 1330 (Fed. Cir. 2004) ..................................................... 11, 14

*Network Automation, Inc. v. Hewlett-Packard Co.*,
2009 U.S. Dist. LEXIS 125835, at *16, *24 (C.D. Cal. 2009) ........... 13

*Official Airline Guides, Inc. v. Goss*,
6 F.3d 1385 (9th Cir.1993) ................................................................... 14

*One Indus., LLC v. Jim O'Neal Distib., Inc.*,
578 F.3d 1154 (9th Cir. 2009) .............................................................. 13

*Pacific Telesis Group v. International Telesis Communications*,
994 F.2d 1364 (9th Cir. 1993) .............................................................. 21

*Perfumebay.com Inc. v. Ebay, Inc.*,
506 F.3d 1165 (9th Cir. 2007) .............................................................. 14

*Pneutek, Inc. v. Scherr*,
211 U.S.P.Q. 824 (T.T.A.B. 1981) ......................................................... 8

*Rearden LLC v. Rearden Commerce, Inc*,
683 F.3d 1190 (9th Cir. 2012) .............................................................. 14

# TABLE OF AUTHORITIES
(continued)

Page

*Sabinsa Corp. v. Creative Compounds, LLC*,
609 F.3d 175 (3rd. Cir. 2010) ................................................................. 3

*Scarves By Vera, Inc. v. Todo Imports Ltd.*,
544 F.2d 1167 (2d Cir. 1976) ................................................................. 5

*Schering Corp. v. Alza Corp.*,
207 U.S.P.Q. 504 (T.T.A.B. 1980) ........................................................ 20

*Schwarzkopf v. John H. Breck, Inc.*,
340 F.2d 978 (C.C.P.A. 1965) .............................................................. 24

*Sicilia Di R. Biebow & Co. v. Cox*,
732 F.2d 417 (5th Cir. 1984) ............................................................... 16

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
739 F.2d 1415 (9th Cir. 1984) ......................................................... 23, 24

*Sleeper Lounge Co. v. Bell Mfg. Co.*,
253 F.2d 720 (9th Cir. 1958) ............................................................... 24

*Thane Intern., Inc. v. Trek Bicycle Corp.*,
305 F.3d 894 (9th Cir.2002) ................................................................ 17

*Therasense, Inc. v. Becton, Dickinson & Co.*,
649 F.3d 1276 (Fed. Cir. 2011) ............................................................ 23

*UGG Holdings, Inc. v. Severn*,
2005 U.S. Dist. LEXIS 45783 at *23 (C.D. Cal. Feb. 23, 2005) ....... 3, 12, 19, 21

*UMG Recordings, Inc. v. Mattel, Inc.*,
100 U.S.P.Q.2d 1868, 2011 WL 5014005 (T.T.A.B. 2011) .............. 15

*Univ. of Georgia Athletic Ass'n v. Laite*,
756 F.2d 1535 (11th Cir. 1985) ............................................................. 9

*Villiarimo v. Aloha Island Air, Inc.*,
281 F.3d 1054 (9th Cir. 2002) ............................................................. 18

*Wella Corp. v. Cal. Concept Corp.*,
558 F.2d 1019 (C.C.P.A. 1977) ........................................................... 15

**FEDERAL STATUTES**

15 U.S.C. § 1115(b)(4) ........................................................................ 23

**FEDERAL RULES**

Fed. R. Evid. 802, 901 .......................................................................... 4

# I. **INTRODUCTION**[1]

Defendant Keating Dental Arts, Inc. ("Keating") contends that it is entitled to summary judgment against Plaintiff James R. Glidewell Dental Ceramics, Inc. ("Glidewell") principally on the ground that Glidewell's BruxZir mark is weak. Keating's argument fails with its premise: Glidewell's BruxZir is both conceptually and commercially strong. The mark is conceptually strong because it is suggestive, and it is commercially strong in large part due to Glidewell's substantial and sustained marketing campaign directed to promoting dental restoration product, principally crowns, bridges and zirconia milling blanks, under the mark. The commercial dominance of the BruxZir mark is undisputed: Glidewell has spent nearly REDACTED advertising goods under the mark and garnered sales of nearly REDACTED under the mark in the past 3 ½ years, and has amassed an impressive array of industry awards and recognition for its BruxZir-branded goods. Keating's "evidence" to the contrary, principally comprised of dozens of unauthenticated hearsay-ridden web-pages printed out from third party websites that Keating believes reflect a "crowded field," withers upon examination to just <u>two</u> arguable instances of uses of similar marks, a number far too low to overcome Glidewell's evidence of commercial strength.

The remainder of Keating's motion is anticlimactic. Keating <u>admits</u> that the goods are identical and the marketing channels overlap, thereby conceding two factors that reduce the required showing of similarity between the marks. Keating's showing regarding the differences between the marks is perfunctory, and relies on its false premise that the BruxZir mark is generic or highly descriptive, which it is

---

[1] Glidewell relies herein on arguments and evidence submitted in support of its co-pending Motion for Partial Summary Judgment re: Infringement of a Federally Registered Mark (First Cause of Action) And Dismissal of Defendant's Second Affirmative Defense and First Counterclaim (Dkt. #81-1) ("MSJ re Infringement") and Glidewell's Motion for Partial Summary Judgment as to Keating Dental Art, Inc.'s Invalidity Defense and Counterclaim (Dkt. #82-1) ("MSJ re Validity"), pursuant to *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136-37 (9th Cir. 2001).

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929.2500

16196448.3

1 | not.                                    REDACTED

Keating's irrelevant assertion that dentists exercise care in treating

6 | their patients, and its failure to explain why it adopted its mark in the fact of

7 | obvious knowledge of Glidewell's senior BruxZir mark, leave the field clear for

8 | Glidewell to proffer actual evidence concerning the degree of consumer care and

9 | Keating's deceptive intent, which Glidewell does.  On the whole, Keating fails even

10 | to generate a genuine issue of fact in its favor, much less to overcome any issue of

11 | material fact favoring Glidewell.  The Court should deny Keating's motion.

12 | ## II. ARGUMENT

13 | ### A.   Glidewell's BruxZir Mark is Valid

14 | Keating contends that Glidewell's BruxZir mark is invalid.  For the reasons

15 | set forth in Glidewell's co-pending MSJs re Validity and Infringement, as well as

16 | Glidewell's co-pending Opposition to Keating's Motion for Summary Judgment

17 | Cancelling Glidewell's Trademark Registration ("Opposition to Keating's

18 | Cancellation MSJ"), which are incorporated herein by reference, Keating's

19 | arguments fail to foreclose a genuine issue of fact in Glidewell's favor.  Notably,

20 | Glidewell's BruxZir mark is registered (SGI 93), and is therefore presumed to be

21 | inherently distinctive – suggestive, at least – absent proof to the contrary by

22 | Keating.  Keating fails to proffer proof, such as a consumer survey, sufficient to

23 | carry its burden of persuasion on this issue.  Keating is therefore not entitled to

24 | summary judgment on this issue.

25 | ### B.   Likelihood of Confusion

26 | #### 1.   Strength of the BruxZir Mark

27 | ##### a.   The BruxZir Mark is Conceptually Strong

28 |

Snell & Wilmer
L.L.P.
LAW OFFICES
150 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

16196448.3

1       For the reasons set forth in Glidewell's co-pending MSJ re Validity,

2   Glidewell's BruxZir mark is suggestive.  Because Glidewell's BruxZir mark is

3   registered, "mark is 'presumed to be distinctive and should be afforded the utmost

4   protection.'" *E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F. Supp. 457,

5   462 (N.D. Cal. 1991); *UGG Holdings, Inc. v. Severn*, 2005 U.S. Dist. LEXIS 45783

6   at \*23 (C.D. Cal. Feb. 23, 2005).  This is undoubtedly correct, as the BruxZir mark

7   is at least suggestive and would therefore be inherently distinctive even if it lacked

8   the benefit of federal registration.  A mark is suggestive if "consumer response

9   requires any sort of 'multistage reasoning process' to identify the characteristic of

10  the product which the mark suggests." *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 506

11  (9th Cir. 2011).  The BruxZir mark is suggestive because a dentist must engage in

12  multiple cognitive steps to progress from the mark itself to the characteristics of the

13  product that it suggests: that crowns marketed under the brand are strong because

14  they are appropriate for patients who "brux," i.e., who grind their teeth, and also

15  that the crowns are made from zirconia, a particularly hard material.  (SGI 97).

16  Accordingly, Glidewell's BruxZir mark is suggestive. *Lahoti*, 636 F.3d at 508-09

17  (finding VERICHECK mark suggestive for check verification services);

18  *Conversive, Inc. v. Conversagent, Inc.*, 433 F. Supp. 2d 1079, 1090 (C.D. Cal.

19  2006) (holding the marks CONVERSIVE and CONVERSIVE AGENT suggestive

20  for software that simulates an online dialogue); *Sabinsa Corp. v. Creative*

21  *Compounds, LLC*, 609 F.3d 175, 186 (3rd. Cir. 2010) (holding the FORSLEAN

22  mark suggestive for weight loss products containing coleus foskohlii); *Citibank,*

23  *N.A. v. Citibanc Grp., Inc.*, 724 F.2d 1540, 1545 (11th Cir. 1984) (holding

24  CITIBANK suggestive because it at best "suggests a modern or urban bank").  (SGI

25  144)  Because the mark is inherently distinctive, this factor weighs in favor of

26  finding that confusion is likely. *Lahoti*, 636 F.3d at 508-09.

27        **b.**    **The BruxZir Mark is Commercially Strong**

28

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

OPPOSITION TO DEFENDANT'S MSJ RE (1) NO INFRINGEMENT, (2)
NO VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, & (3) NO
UNFAIR COMPETITION UNDER CALIFORNIA LAW
CASE NO. SACV11-01309 DOC (ANX)

- 3 -

16196448.3

### (i) Keating Fails to Demonstrate Absence of a Genuine Issue of Fact regarding Commercial Strength

Keating attacks the commercial strength of Glidewell's BruxZir mark, contending that the mark is weak because "many" companies have used "Brux" and "Z" or "Zir" to refer to products for use by bruxers and products associated with zirconia, respectively. Keating, however, lacks evidence of such widespread use, which does not in fact exist. In any event, Glidewell does not contend that *any* use of "Brux" or "Zir" infringes Glidewell's BruxZir mark; rather, Glidewell contends that Keating's use of a *particular* brand – KDZ Bruxer – infringes that mark.

As an initial matter, none of Keating's evidence of these "crowding" uses is admissible. Keating's "crowding" facts are set forth at paragraphs 50-51 of its SUF. Keating's evidence of these crowding uses consists entirely of a series of third party webpages printed out and submitted as Keating's Exhibits 24, 27-29, 31, 34, 37, 39, 42, 43, 93, 94, 96, 99-103, 105-106, 108-114, 119-137. However, none of these websites are authenticated, and all of them constitute inadmissible hearsay. Fed. R. Evid. 802, 901; *Orr v. Bank of Am.*, 285 F.3d 764, 773-79 (9th Cir. 2002). Keating could have overcome these deficiencies by taking discovery from some or all of these third parties prior to the close of discovery, but chose not to do so. It cannot now be permitted to remedy its oversight by skirting the rules of evidence.

In any event, even if Keating's evidence were admissible, it would not suffice to justify summary judgment, for several reasons. First, Keating offers no evidence regarding how these marks are promoted in the marketplace or that any of these marks have any commercial strength or impact at all; no evidence that any goods offered under these marks are promoted through any channels other than the Internet; and no evidence regarding how long any products have been promoted under any of these marks. In attempting to demonstrate that a mark has been weakened by substantial third party use, it is not enough for the defendant to merely

16196448.3

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600  Two California Plaza
Los Angeles, California 90071
(213) 929-2500

present the allegedly crowding uses; he must present evidence that the uses have impaired the strength of the plaintiff's mark. *Lahoti*, 636 F.3d at 508-9 (evidence of three uses in the same field insufficient to demonstrate a crowded field where, e.g., there was no evidence that any of these users had used the identical mark to compete with the plaintiff or had impaired the strength of plaintiff's mark); *Scarves By Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167, 1173-74 (2d Cir. 1976) (rejecting argument that third-party registrations impaired the strength of plaintiff's mark because "[t]he significance of third-party trademarks depends wholly upon their usage. Defendant introduced no evidence that these trademarks were actually used by third parties, that they were well promoted or that they were recognized by consumers."); *Electropix v. Liberty Livewire Corp.*, 178 F. Supp. 2d 1125, 1130 (C.D. Cal. 2001) (evidence of over 200 uses of the LIVEWIRE mark insufficient to undermine strength of mark, where many of the companies did not use the identical mark and only two used the mark in the same or a similar industry). This, Keating has failed to do. Thus, Keating's assertion that the market is crowded is unsupported by evidence sufficient to even create a genuine issue of fact, much less to foreclose one.

Second, Keating fails to proffer evidence of a sufficient number of "crowding" uses to undermine the strength of the BruxZir mark. Keating's "many" examples of companies that offer "dental products for use with bruxers" or "associated with zirconia" turn out to comprise 40 companies and dentists offering 43 products under names that fit the criteria that Keating apparently believes are relevant. (Def't's SUF 50-51) In order for this evidence of "other uses" to bear on the issue at hand, the "crowding" marks would have to be confusingly similar to Glidewell's BruxZir mark. *Electropix*, 178 F. Supp. 2d at 1130. However, of these 44 uses, <u>none</u> of the 16 identified in Keating's SUF 50 includes any combination of "Brux" and either "Zir" or "Z," and of those 16 only one ("BruxArt") involves a

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

16196448.3

product that competes with those covered by Glidewell's BruxZir registration.
(Deft's SUF 50, Exs. 114, 121-135 )  These 16 uses are therefore irrelevant to the
strength of the BruxZir mark.  Moreover, of the remaining 28 purported uses
reflected in Keating's SUF 51:

- Eleven – exemplified by "Zir-Max" – contain only a "Zir" or "Z"
fragment without any "Brux" component, or a "Brux" element with a distinguishing
suffix ("BruxThetix"), and are therefore phonetically dissimilar.

- Six – "Z-Brux" (Assured Dental Lab), "Brux" (Authentic Dental),
"Bruxer All Zirconia" (China Dental Outsourcing), "Full Solid Bruxer Zirconia"
(Fusion Dental Lab), "Bruxer Crown" (Pittman Dental), "Full Contour Zir" (Somer
Dental Labs) – were discontinued after the dental labs that used those names
received cease and desist letters from Glidewell's General Counsel.  (SGI _ [Supp.
Allred Decl., also cite to Keating's Ex#])  This fact tends to support, not undermine,
Glidewell's showing that BruxZir is a strong mark.  *Morningside Grp., Ltd. v.
Morningside Capital Grp., L.L.C.*, 182 F.3d 133, 139 (2d Cir. 1999) (holding that
evidence of third party use of similar marks that are later discontinued do "not
weaken the mark—instead it strengthens it, because the successful policing of a
mark adds to its strength to the extent that it prevents weakening of the mark's
distinctiveness in the relevant market").  In addition, Pittman Dental's reference to
a "Bruxer Crown" appeared in a Twitter post advertising a different product (a
"custom Bruxer bur block") and was not an effort to market, promote or advertise
any sort of crown; it is therefore irrelevant.

- Three – "Full Zirconia for Bruxing Patients" (Continental Dental),
"All Zirconia Bruxer" (Trachsel Dental) and "Bruxer" (York Dental Lab) – have
been discontinued, and in any event all of these labs are or shortly will be
Glidewell-authorized laboratories.  (SGI 51)  These uses therefore do not constitute
"crowding" uses; to the contrary, they indicate commercial strength.  *Id.*; *Mrs. U.S.*

16196448.3

*Nat'l Pageant, Inc. v. Miss U.S.A. Org.*, LLC, 2012 U.S. Dist. LEXIS 97147, at *
31-38 (W.D.N.Y. 2012).

- Several (e.g., "All Zirconia for Bruxers") appear not to reflect a
trademark usage at all but rather a description of or reference to a full contour
zirconia crown.

Thus, none of these purported uses are probative of whether the commercial
strength of the BruxZir mark has been impaired; certainly, Keating has offered no
evidence (such as evidence of advertising expenditures promoting goods under
those marks) that would support a finding to that effect. *Electropix*, 178 F. Supp.
2d at 1130; *Mrs. U.S. Nat'l Pageant,* 2012 U.S. Dist. LEXIS 97147, at * 31-38.

After the chaff is cleared away, Keating is left with only six examples of
marks that might arguably have supported its argument, had Keating proffered
sufficient evidence of the commercial impact of these marks: "Z-Brux" (Barth
Dental Labs), "Bruxer Crown" (Cosmetic Dentistry of SA), "Full Zirconia
(Bruxer)" (Dani Dental), "GPS BruxArt" (GPS Dental Lab), "Bruxer Crowns"
(Infinity Dental Lab), and "Xtreme Bruxer" (Mascola Esthetics). Of these:

- Cosmetic Dentistry of SA appears to be a dental office rather than a
dental laboratory, and advertises to patients rather than to dentists. (SGI 51, Ex.
119) This "use" is therefore not in the relevant market. Moreover, it appears from
context that Cosmetic Dentistry is using the term "'Bruxer' crown" in a descriptive
sense rather than in a trademark sense, i.e., to denote a source of goods.

- Infinity Dental Lab also appears to be using the term "'Bruxer'
crowns" in a descriptive rather than a trademark sense. This is consistent with the
fact that "Bruxer" is in quotes; the right quote mark in Keating's Ex. 108 appears to
have been unintentionally deleted.

- Keating's evidence concerning Dani Dental's use of the term "Full
Zirconia (Bruxer)" consists of a preprinted prescription form that includes a box

OPPOSITION TO DEFENDANT'S MSJ RE (1) NO INFRINGEMENT, (2)
NO VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, & (3) NO
UNFAIR COMPETITION UNDER CALIFORNIA LAW
CASE NO. SACV11-01309 DOC (ANX)

- 7 -

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

next to the term "Full Zirconia (Bruxer)."  This prescription form is deficient for at least two reasons: (i) it says little concerning whether or how this company markets any of its goods to dentists, and (ii) it appears that this entry is used descriptively to refer to a full zirconia crown that could be used for a patient with bruxism rather than in a trademark sense.  Consistent with this, it does not appear that Dani Dental in fact advertises any product under the brand "Full Zirconia (Bruxer)" or any similar mark.  (SGI 51, Ex. 43)

•  Keating's evidence concerning Mascola's use of the term "Xtreme Bruxer" is similarly deficient: it consists of a preprinted prescription form that says little concerning whether or how Mascola markets any goods to dentists.

So, in the end, Keating is left with <u>two</u> marks that appear to be trademark uses directed to the relevant market:  "Z-Brux" by Barth Dental Labs, and "GPS BruxArt" by GPS Dental Lab.  Glidewell sent Barth Dental Labs a cease and desist letter concerning the "Z-Brux" brand on September 26, 2012, and expects this use to be discontinued shortly.  (SGI 51, Ex. 34)  In any event, two uses in the relevant market, unsupported by any evidence of advertising, sales or actual impairment of the commercial strength of the BruxZir mark, falls far short of the showing required to justify summary judgment (or even overcome Glidewell's motion for partial summary judgment) on the basis of a "crowded market."  *E.g., Lahoti*, 636 F.3d at 508-09 (three "crowding" uses insufficient to overcome commercial strength) (Supp. Goldstein Decl. ¶ 24).

Keating also apparently thinks it significant that approximately 180 Glidewell-authorized dental laboratories offer crowns made with BruxZir zirconia milling blocks purchased from Glidewell under the BruxZir mark without identifying Glidewell.  There is, however, no requirement that the authorized labs identify an affiliation to Glidewell, *Pneutek, Inc. v. Scherr*, 211 U.S.P.Q. 824 (T.T.A.B. 1981), and Keating offers no authority to the contrary.  Here, too, the

OPPOSITION TO DEFENDANT'S MSJ RE (1) NO INFRINGEMENT, (2) NO VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, & (3) NO UNFAIR COMPETITION UNDER CALIFORNIA LAW
CASE NO. SACV11-01309 DOC (ANX)

16196448.3

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1  evidence that Keating believes undermines the BruxZir mark actually demonstrates

2  its strength. *Univ. of Georgia Athletic Ass'n v. Laite*, 756 F.2d 1535, 1545 (11th

3  Cir. 1985); *Auburn Univ. v. Moody*, 2008 U.S. Dist. LEXIS 89578, at *20-21 (M.D.

4  Ala. 2008). Accordingly, Keating fails to show that the BruxZir mark is weak.

### (ii)    The Evidence Shows that the BruxZir Mark is Commercially Strong

7  There is copious evidence of the commercial strength of Glidewell's BruxZir

8  mark. A mark is commercially strong when it is widely recognized by relevant

9  consumers in a particular market. *Lahoti* 636 F.3d at 508. Thus, a registrant's

10  efforts to promote the mark in association with its goods or services can augment

11  the strength of its mark as a source identifier. *Id.*; *Century 21 Real Estate Corp. v.*

12  *Sandlin*, 846 F.2d 1175, 1179 (9th Cir. 1988) ("Marks may be strengthened by

13  extensive advertising, length of time in business, public recognition, and

14  uniqueness."). It is undisputed that the relevant consumers for Glidewell's

15  BruxZir-brand crowns and bridges are dentists. (SGI 1, 99). Thus, Glidewell's

16  efforts to promote – and success in promoting – the BruxZir mark to dentists is

17  highly relevant to the strength of the mark. *Lahoti*, 636 F.3d at 508; *Century 21*,

18  846 F.2d at 1179.

19  Glidewell promotes its dental crowns and bridges under the BruxZir mark

20  through a broad range of channels, including the Internet (through Glidewell's blog

21  as well as www.BruxZir.com), direct mailers, trade shows, ads in dental industry

22  publications, press releases, continuing education brochures, videos and training

23  sessions for dentists, samples, and specialized prescription forms. (SGI 100). Over

24  the period June 2009 to June 2012, Glidewell spent approximately REDACTED in

25  promoting its products under the BruxZir mark through these channels. (SGI 101).

26  About REDACTED of this was spent marketing Glidewell's BruxZir finished crowns

27  and bridges, and about REDACTED was spent marketing Glidewell's BruxZir

28

OPPOSITION TO DEFENDANT'S MSJ RE (1) NO INFRINGEMENT, (2)
NO VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, & (3) NO
UNFAIR COMPETITION UNDER CALIFORNIA LAW
CASE NO. SACV11-01309 DOC (ANX)

16196448.3

Snell & Wilmer
L.L.P.
LAW OFFICES
150 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

zirconia milling blanks. (SGI 102). About REDACTED was spent on direct mail advertising, which was sent to roughly every dentist in the country, and another roughly REDACTED was spent on advertising in dental industry publications, with the remainder being allocated among Glidewell's other marketing channels. (SGI 103).

Notably, Glidewell's promotion of its BruxZir mark is overwhelming for its industry, in which no other dental laboratories spend more than about $150,000 per year in marketing and advertising. (SGI 101) This is confirmed by Keating's own admission that Glidewell is:

REDACTED

(SGI_ [SK Tr. 91:7-25])

Keating's perception of Glidewell's marketing prowess is correct: Glidewell's advertising of products under the BruxZir mark has accomplished substantial market penetration. (SGI 104). For example, between October 2009 and November 2012, the www.BruxZir.com website received over twice as many unique pageviews as there are dentists in the United States. (SGI 105-106). Glidewell's direct mail advertising of products under the BruxZir mark is sent every quarter to nearly the entire population of dentists in the country. (SGI 107). Glidewell's promotion of the BruxZir product line in dental industry publications is consistent, ongoing and pervasive. (SGI 108). In addition, Glidewell attends dozens of trade shows and conventions a year around the country, especially the American Dental Association conventions. (SGI 111). At these conventions and trade shows, Glidewell consistently, prominently displays the BruxZir product line in a variety of contexts, including on the booth, the signage, in brochures, and takeaways. (SGI 112). In addition, Dr. Michael DiTolla, Glidewell's Director of Clinical Education and Research, and Robin Carden, Glidewell's Vice President of Research and Development, make educational videos, write articles and give

OPPOSITION TO DEFENDANT'S MSJ RE (1) NO INFRINGEMENT, (2)
NO VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, & (3) NO
UNFAIR COMPETITION UNDER CALIFORNIA LAW
CASE NO. SACV11-01309 DOC (ANX)

16196448.3

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1    presentations concerning Glidewell's BruxZir-branded products. (SGI 113-114).

2    Glidewell's BruxZir-branded products have received wide recognition in the

3    dental industry. (SGI 115). Numerous articles have been written by third parties

4    concerning the BruxZir products and referencing them by Glidewell's registered

5    mark. (SGI 116). In addition, Glidewell has received numerous awards

6    recognizing the superiority of its BruxZir-brand dental crowns and bridges. (SGI

7    117).

8    The commercial strength of the mark is also demonstrated by the volume of

9    goods sold under the mark. *Lahoti*, 636 F.3d at 509. Again, Keating admits the

10   truth: when comparing Keating's sales to Glidewell's, Shaun Keating observed that

11   "[Glidewell doesn't] set the bar. They are the bar." (Deposition of Shaun Keating,

12   Tr. 92:1-13) BruxZir is the number one prescribed brand of full zirconia dental

13   crown in the country. (SGI 118). From June 2009 to September 2012, Glidewell

14   has sold approximately REDACTED dental crowns and bridges under the mark. (SGI

15   119). In monetary terms, from July 2009 to September 2012 Glidewell sold nearly

16   REDACTED worth of dental crowns and bridges under the BruxZir mark. (SGI

17   120).

18   In addition, the very strong brand recognition that Glidewell has achieved

19   through its extensive advertising of its dental crowns and bridges under the BruxZir

20   mark is evidenced by third party recognition of the strength of the brand. *Nautilus*

21   *Grp., Inc. v. Icon Health & Fitness, Inc.*, 372 F.3d 1330, 1343 (Fed. Cir. 2004). A

22   large portion of dentists in the U.S. recognize the BruxZir brand for dental crowns

23   and bridges, as shown by, among other things, third party research. (SGI 121-123).

24   Moreover, the fact that many companies have abandoned confusingly similar marks

25   when confronted with the BruxZir mark (SGI 51), further indicates the industry's

26   recognition of the strength of the mark. *Morningside Grp.*, 182 F.3d at 139.

27   The commercial strength of the mark is further demonstrated by the fact that

28

OPPOSITION TO DEFENDANT'S MSJ RE (1) NO INFRINGEMENT, (2)
NO VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, & (3) NO
UNFAIR COMPETITION UNDER CALIFORNIA LAW
CASE NO. SACV11-01309 DOC (ANX)

16196448.3

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

it is relatively unique in its field. *Century 21*, 846 F.2d at 1179. As shown above, Keating has come forward with only two actual examples of arguably similar marks used in connection with crowns, neither of which is supported by any proof that either of those marks have any market strength of their own. So, even were Keating's evidence on this point admissible, it would fail to prove a crowded field for the reasons set forth above. (SGI 50-51).

In factual settings similar to that here, the Ninth Circuit and its subordinate district courts have not hesitated to affirm entry of summary judgment in favor of the registered mark. *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1179 (9th Cir. 1988) (holding that evidence that Century 21 had "expended several million dollars" in advertising real estate services under the mark and that the mark had been used in connection with real estate sales in excess of one billion dollars supported the district court's determination that the mark was strong); *Lahoti,* 636 F.3d at 509 ("the district court found that Vericheck had a longstanding use of the mark, promoted it through trade shows and promotional incentives, expanded its territory and client list and increased its sales. The district court's conclusion that the mark is strong is valid."); *UGG Holdings*, 2005 U.S. Dist. LEXIS 45783 at *23 (holding the UGG mark to be "extremely strong" where the plaintiff has spent more than $8 million advertising the brand and received extensive media coverage). Here, Glidewell's REDACTED in advertising, the extensive exposure in the dental industry generated by Glidewell's advertising, trade show attendance and numerous industry awards, as well as Keating's admission that Glidewell is         REDACTED                          REDACTED                          similarly demonstrate the strength of the BruxZir mark. Accordingly, the mark is commercially strong. (SGI 126)

### (iii)   Keating's Authority is Easily Distinguishable

Keating's authority on this point is easily distinguished. In *Instant Media, Inc. v. Microsoft Corp.*, 2007 U.S. Dist. LEXIS 61443, at *35-36 (N.D. Cal. 2007),

16196448.3

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1  the court held that the mark "I'M" was weak when used with internet software

2  because the field of trademarks using variations of "IM" was crowded due to the

3  over 600 registered marks containing a form of IM, I'M, or I AM, including

4  approximately 185 in the same International Classes for which the plaintiff

5  registered its mark. This case says nothing regarding the strength of the BruxZir

6  mark, as to which Keating points to only a handful of even arguably pertinent uses.

7  In *Network Automation, Inc. v. Hewlett-Packard Co.*, 2009 U.S. Dist. LEXIS

8  125835, at *16, *24 (C.D. Cal. 2009), the court determined that the "Network

9  Automation" mark was weak because the plaintiff admitted that it purely described

10  the product, and that it was widely used in a generic sense. *Id.* at *16. In contrast,

11  here the BruxZir mark does not describe Glidewell's full contour zirconia crown,

12  and Keating fails to meet its heavy burden on summary judgment of proving that

13  the mark is generic (in fact, the uncontroverted evidence proves the converse).

14  In *Glow Industries, Inc. v. Lopez*, 252 F. Supp. 2d 962 (C.D. Cal. 2002), the

15  senior mark was commercially weak both because it had "a relatively limited sales

16  presence in a handful of states and on the Internet," it "had developed the market

17  for its product using relatively low budget marketing techniques," and it competed

18  in "an exceedingly crowded field" of beauty products using registered marks that

19  were phonetically identical as well as an unspecified additional quantum of

20  trademark applications and unregistered trade usages. *Id.* at 973, 990. Here, the

21  facts are directly opposite: Glidewell has overwhelming evidence of commercial

22  strength, and Keating proffers no such evidence for its KDZ Bruxer mark.

23  Finally, in *One Indus., LLC v. Jim O'Neal Distib., Inc.*, 578 F.3d 1154, 1164-

24  1165 (9th Cir. 2009), the Court held that the strength of mark factor weighed in

25  favor of finding a likelihood of confusion even though there were four other

26  companies in the motocross industry, including plaintiff, that were "crowding" the

27  market with similar "O" symbols on their motocross apparel and equipment.

28

OPPOSITION TO DEFENDANT'S MSJ RE (1) NO INFRINGEMENT, (2)
NO VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, & (3) NO
UNFAIR COMPETITION UNDER CALIFORNIA LAW
CASE NO. SACV11-01309 DOC (ANX)

16196448.3

### 2. **Proximity of Glidewell's and Keating's Goods**

"Directly competing goods are in the closest proximity under the likelihood of confusion analysis." *Conversive,* 433 F. Supp.2d at 1091. If goods directly compete, "confusion will usually arise . . . ." *Id.* <u>Keating admits that its dental crowns and bridges directly compete with Glidewell's dental crowns and bridges.</u> (Dkt# 86, p. 16:5-7) Thus, this factor indicates that confusion is likely. *Lahoti,* 636 F.3d at 508; *Century 21,* 846 F.2d at 1179; *Conversive,* 433 F. Supp.2d at 1091.

### 3. **Similarity of the Marks**

To evaluate the similarity of the marks, courts look to the "sight, sound and meaning" of the marks, and recognize that "any similarities weigh more heavily than differences." *Rearden LLC v. Rearden Commerce, Inc.,* 683 F.3d 1190, 1211 (9th Cir. 2012). When evaluating the similarities between marks, a lesser degree of similarity is required when the goods are directly competitive. *AMF, Inc. vs. Sleekcraft Boats,* 599 F.2d 343, 350 (9th Cir. 1979); *Official Airline Guides, Inc. v. Goss,* 6 F.3d 1385, 1392 (9th Cir.1993). In addition, when a mark is strong, a lesser degree of similarity will suffice to establish likely confusion. *E.g., Perfumebay.com Inc. v. Ebay, Inc.,* 506 F.3d 1165, 1174 (9th Cir. 2007).

Keating makes several arguments in an effort to distinguish the parties' marks, none of which bear scrutiny. First, the context in which the two marks are presented in the market is important. As shown above, the products sold under the marks directly compete, and Glidewell's BruxZir mark is an extremely strong mark based on, e.g., Glidewell's massive advertising effort and the commercial acclaim garnered by BruxZir crowns. Accordingly, less similarity is required in order to find that confusion is likely. *Official Airline Guides,* 6 F.3d at 1392; *Nautilus Grp.,* 372 F.3d at 1335.

In any event, the marks at issue here are quite similar. Keating makes much of the particular font used in advertisements displaying Glidewell's BruxZir mark.

OPPOSITION TO DEFENDANT'S MSJ RE (1) NO INFRINGEMENT, (2)
NO VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, & (3) NO
UNFAIR COMPETITION UNDER CALIFORNIA LAW
CASE NO. SACV11-01309 DOC (ANX)

16196448.3

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1    However, it fails to proffer any evidence that the partial difference in fonts or that a

2    sliver of the "Z" overlaps the "x" is actually likely to impact the consciousness of

3    the relevant consumers.  Similarly, while Keating includes a background oval

4    surrounding its mark, this generic design feature fails to differentiate Keating's

5    brand from Glidewell's mark.  (SGI 43)  *Wella Corp. v. Cal. Concept Corp.*, 558

6    F.2d 1019, 1022-23 (C.C.P.A. 1977).  Keating has merely prefaced a root word

7    ("Bruxer") that is nearly identical to the entirety of Glidewell's mark ("BruxZir")

8    with a three-letter acronym ("KDZ") that does not on its face serve any source-

9    identifying function.  (SGI 139).  Keating capitalizes the first letter of the "Bruxer"

10   component of its mark, just as Glidewell capitalizes the first letter of "BruxZir."

11   (SGI 138).  While Keating has apparently attempted to highlight the "KDZ" portion

12   of its mark in some of its advertising, the fact that KDZ is an opaque acronym

13   means that it cannot merely rely on the prefix to differentiate; in any event, in the

14   text of its advertisements the term is no more prominent than the "Bruxer" root of

15   its mark.  (SGI 140).  Indeed, if Keating's addition of "KDZ" to the root "Bruxer"

16   is likely to accomplish anything in this context, it is to suggest to dentists some

17   association or affiliation between Keating and Glidewell.  *UMG Recordings, Inc. v.*

18   *Mattel, Inc.*, 100 U.S.P.Q.2d 1868, 2011 WL 5014005 (T.T.A.B. 2011).

19        The likelihood that the similarities of the marks will confuse is heightened by

20   the fact that buyers in the relevant market (i.e., dentists) are not likely to consider

21   the marks side by side as a shopper would two competing brands in a supermarket;

22   instead, they are likely to consider the marks separately at different points in time.

23   (SGI 141).  This fact tends to support the determination that confusion is likely,

24   (SGI 142), because subtle differences in the marks are less likely to be "in the

25   buyer's mind" when the buyer makes the decision to purchase Keating's dental

26   crowns under the KDZ Bruxer mark.  *Fleischmann Distilling Corp. v. Maier*

27   *Brewing Co.*, 314 F.2d 149, 161 (9th Cir. 1963) ("In determining whether there is a

28

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

OPPOSITION TO DEFENDANT'S MSJ RE (1) NO INFRINGEMENT, (2)
NO VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, & (3) NO
UNFAIR COMPETITION UNDER CALIFORNIA LAW
CASE NO. SACV11-01309 DOC (ANX)

- 15 -

16196448.3

1    likelihood of confusion we must remember that the members of the purchasing

2    public have only general impressions which must guide them in the selection of

3    products."); *Sicilia Di R. Biebow & Co. v. Cox*, 732 F.2d 417, 433 (5th Cir. 1984)

4    ("The inability [of consumers] to compare the products side by side and observe the

5    precise differences in appearance may increase the likelihood of confusion.").

6         In addition, the meaning associated with a mark may also indicate a

7    likelihood of confusion. "Confusing similarity may exist if the two terms convey

8    the same idea or meaning." *Clamp Mfg. Co., Inc. v. Enco Mfg. Co., Inc.*, 870 F.2d

9    512, 518 (9th Cir. 1989). Here, the BruxZir mark and the KDZ Bruxer mark

10   suggest similar meanings. BruxZir suggests a product indicated for people who

11   suffer from bruxism, i.e., people who tend to grind their teeth ("Brux") and that the

12   product is made of zirconia ("Zir"). (SGI 144). Similarly, KDZ Bruxer suggests a

13   product indicated for people who suffer from bruxism ("Bruxer") and that the

14   product is made of zirconia (the "Z" in KDZ). (SGI 143, 145).

15        Cases are legion in which identity or substantial similarity in marks that share

16   only a suffix has been found sufficient to demonstrate a likelihood of confusion,

17   particularly where the goods branded under the marks are competitive. *Earthquake*

18   *Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1217-18 (9th Cir. 2003) (finding

19   that EARTHQUAKE and CARQUAKE were confusingly similar when both used

20   for auto audio equipment); *Apple Computer, Inc. v. Formula International, Inc.*,

21   725 F.2d 521, 526 (9th Cir. 1984) (holding that "the addition of the prefix 'Pine' to

22   the trademark 'Apple' presented a likelihood of confusion," particularly since the

23   mark might "suggest that the computer kits are manufactured by licensees or

24   subsidiaries of Apple."); *KOS Pharmaceuticals, Inc. v. Andrix Corp.*, 369 F.3d 700

25   (3d Cir. 2004) (finding that the marks ADVICOR and ALTOCOR are confusingly

26   similar when both used for prescription cholesterol reducing drugs); *Conversive*,

27   433 F.Supp.2d at 1091 (finding CONVERSAGENT to be "phonetically and

28

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

16196448.3

visually very similar" to CONVERSIVE AGENT).

Keating cites a raft of cases in which courts have found confusion unlikely when it is based on generic or highly descriptive common elements of two composite marks. These cases are inapposite, for the primary reason that "Brux" is neither generic nor highly descriptive in the market for full contour zirconia crowns.

### 4.   Evidence of Actual Confusion

"Evidence of actual confusion constitutes persuasive proof that future confusion is likely." *Thane Int'l., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 902 (9th Cir.2002). The evidence of actual confusion in this case is pervasive. REDACTED

OPPOSITION TO DEFENDANT'S MSJ RE (1) NO INFRINGEMENT, (2)
NO VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, & (3) NO
UNFAIR COMPETITION UNDER CALIFORNIA LAW
CASE NO. SACV11-01309 DOC (ANX)

- 17 -

16196448.3

REDACTED

Moreover, for all of these examples of apparent confusion, including those by the twelve dentists who are cooperating with Keating, proof that the dentists

OPPOSITION TO DEFENDANT'S MSJ RE (1) NO INFRINGEMENT, (2)
NO VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, & (3) NO
UNFAIR COMPETITION UNDER CALIFORNIA LAW
CASE NO. SACV11-01309 DOC (ANX)

16196448.3

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

Snell & Wilmer

L.L.P.

LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1  knew they were ordering KDZ Bruxer crowns rather than BruxZir crowns would

2  not end the matter.  Given the dominance of the BruxZir mark in the market for

3  dental restoration products, and the fact that the marks are not compared side by

4  side, it is likely that Keating has benefited from "initial interest confusion," where

5  the infringing mark captures initial attention from consumers who then realize that

6  the product is different from that sold under the dominant brand but go ahead and

7  purchase the product anyway.  *Brookfield Commc'ns, Inv. v. W. Coast Entm't*

8  *Corp.*, 174 F.3d 1036, 1062 (9th Cir. 1999); *Conversive, Inc.*, 433 F. Supp. 2d at

9  1093.  (Supp. Goldstein Decl. ¶ 25).  In effect, the similarity of the junior mark to

10  the senior mark garners it unearned credibility, which then translates into actual

11  sales.  Keating's dentist declarations do not even address the possibility of initial

12  interest confusion; they therefore fail to foreclose a finding of confusion even as to

13  those twelve dentists.

14      Where there are even a handful of instances of actual confusion, the courts

15  have not hesitated to grant summary judgment in favor of the senior mark.  For

16  example, in *Century 21*, a single instance of actual confusion by a consumer in the

17  relevant market was sufficient to support summary judgment for the plaintiff.

18  *Century 21*, 846 F.2d at 1179.  Similarly, in *UGG Holdings*, the court found there

19  to be "abundant evidence of actual consumer confusion" where there was evidence

20  of 19 instances of confusion.  *UGG Holdings*, 2005 U.S. Dist. LEXIS 45783 at

21  *25-26.  Here, there is a mountain of evidence of actual, direct confusion, including

22  one dentist characterizing Keating's branding as "sneaky" and several instances of

23  Keating employees feeling it necessary to "explain" the differences between KDZ

24  Bruxer crowns and BruxZir crowns and reminding dentists that BruxZir is a

25  proprietary name or the "tradename" of another company.  (SGI 149, 159)  This

26  evidence of actual confusion precludes summary judgment for Keating.

27      **5.    Marketing Channels**

28

OPPOSITION TO DEFENDANT'S MSJ RE (1) NO INFRINGEMENT, (2)
NO VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, & (3) NO
UNFAIR COMPETITION UNDER CALIFORNIA LAW
CASE NO. SACV11-01309 DOC (ANX)

- 19 -

16196448.3

"Convergent marketing channels increase the likelihood of confusion." *Sleekcraft*, 599 F.2d at 353. Here, Keating admits that the marketing channels used by Glidewell and Keating to promote their goods under their respective BruxZir and KDZ Bruxer marks overlap. (Dkt# 86, p. 20:20-23) Indeed, they are nearly identical. (SGI 100, 164-166). This strongly supports a finding that confusion is likely. *Century 21*, 846 F.2d at 1179.

### 6.   Type of Goods and Degree of Care

Keating contends that dentists are unlikely to be confused because they are highly educated and specially trained professionals. However, even sophisticated consumers, such as dentists, are not immune from mistaking one mark for another. *Schering Corp. v. Alza Corp.*, 207 U.S.P.Q. 504 (T.T.A.B. 1980) (finding that while physicians and pharmacists are knowledgeable in their fields, they are not necessarily knowledgeable as to marks, thus not immune from mistaking one mark for another); *Alfacell Corp. v. Anticancer Inc.*, 71 U.S.P.Q.2d 1301 (T.T.A.B. 2004) ("[T]here is no reason to believe that medical expertise as to pharmaceuticals will ensure that there will be no likelihood of confusion as to source or affiliation."); *KOS Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 716 n.13, 717 (3d Cir. 2004).

The issue is not whether dentists put great care into the treatment of their patients, but rather the degree of care that dentists apply to selecting one full contour zirconia crown over another. Keating submits no evidence that might answer that question. But Glidewell does: a dentist's selection of one full contour zirconia crown over another is not a decision that inherently requires a high degree of care. (SGI 166) While there are aesthetic differences between different brands of full contour zirconia crown, the properties of these crowns are highly similar because all of these crowns are made of the same material – zirconia. (SGI 166). The price differential between Glidewell's BruxZir-brand crowns and Keating's

OPPOSITION TO DEFENDANT'S MSJ RE (1) NO INFRINGEMENT, (2) NO VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, & (3) NO UNFAIR COMPETITION UNDER CALIFORNIA LAW CASE NO. SACV11-01309 DOC (ANX)

16196448.3

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1    KDZ Bruxer crowns ($99 v. $139) is not so great as to reward focused attention on

2    the brand under which the crowns are marketed.  (SGI 166)  So, this factor too

3    suggests that confusion is likely.

4        Moreover, even if there were evidence that a high degree of care were used

5    by dentists in selecting a particular brand of monolithic zirconia crown, that would

6    not be the end of the matter.  Where there is evidence that sophisticated consumers

7    are actually confused (as there is here), the likelihood of confusion based on the

8    degree of care factor is <u>enhanced</u>.  *Conversive*, 433 F.Supp.2d at 1093.  Moreover,

9    even where a high degree of care is exercised, initial interest confusion may still

10   exist.  *Id.*  That is exactly the situation here.  In any event, even if this factor

11   supported Keating (which it does not), it would not be sufficient to overcome

12   Glidewell's strong showing that confusion is likely.  *Pacific Telesis Group v.*

13   *International Telesis Communications*, 994 F.2d 1364, 1369 (9th Cir. 1993).

14        **7.    Keating's Intent in Selecting the Mark**

15        Although proof of intent to deceive consumers is not necessary to establish

16   trademark infringement, intent is relevant because, "[w]here an alleged infringer

17   chooses a mark he knows to be similar to another, one can infer an intent to

18   confuse."  *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1293 (9th

19   Cir.1992) (*citing Sleekcraft*, 599 F.2d at 354).  This rule also applies where the

20   junior user continues to use a mark that it previously selected after having been

21   informed of the senior mark.  *UGG Holdings*, 2005 U.S. Dist. LEXIS 45783 at *27.

22        The evidence indicates that Keating was aware of Glidewell's BruxZir mark

23   when it made the decision to begin selling competing products under the KDZ

24   Bruxer mark.  It is undisputed that Keating selected its KDZ Bruxer mark in the

25   winter or spring of 2011.  (SGI 168).  By that time, Glidewell's BruxZir mark was

26   already well known in the industry; indeed, Glidewell had already spent about

27   REDACTED    promoting its goods under the BruxZir mark.  (SGI 170).  In

28

OPPOSITION TO DEFENDANT'S MSJ RE (1) NO INFRINGEMENT, (2)
NO VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, & (3) NO
UNFAIR COMPETITION UNDER CALIFORNIA LAW
CASE NO. SACV11-01309 DOC (ANX)

- 21 -

16196448.3

Snell & Wilmer
L.L.P.
LAW OFFICES
150 South Grand Avenue, Suite 2600   Two California Plaza
Los Angeles, California 90071
(213) 929-2500

Snell & Wilmer

L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1   connection with its brand selection process, Keating, among other things, (1)

2   commissioned a trademark search report, (2) performed an "extensive review of

3   dental journal advertisements by other dental labs," (3) conducted an "informal

4   trademark search for 'KDZ' and 'bruxer,'" and (4) an "informal survey current

5   Keating clients in March/April 2011 . . . ." (SGI 171).  At least Robert Brandon,

6   Keating's General Manager of the Laboratory, reviewed the search report during

7   the brand selection process. (SGI 172).  Given that the BruxZir mark was

8   registered on the Principal Register in January 2010, the trademark search report

9   undoubtedly contained a reference to Glidewell's BruxZir mark.  Moreover, given

10  the extensive advertising that Glidewell had already conducted under its BruxZir

11  mark, from 2009 through early 2011, there is overwhelming evidence that Keating

12  was either already aware of Glidewell's BruxZir mark, or became aware of it

13  through the brand selection process, prior to selecting its KDZ Bruxer brand.

14        Moreover, it is undisputed that Keating was informed of the Glidewell

15  BruxZir mark by no later than August 9, 2011, and despite its knowledge of

16  Glidewell's senior mark continued to promote its competing crowns and bridges

17  under the KDZ Bruxer brand. (SGI 37)

18        Nevertheless, Keating contends that it acted with no bad intent.  First,

19  Keating states that it began using the "KDZ" prefix with different suffixes on

20  different types of products in 2006.  Glidewell assumes for the purpose of this

21  motion that that is true; it is also irrelevant.  Second, Keating states that it chose the

22  "KDZ Bruxer" name as part of a family of new "KDZ" product names.  Again,

23  while this may be true, it fails to negative bad intent; could I really call my new soft

24  drink "Phil's Coca-Cola" if I just released two other "Phil's" soft drinks at the same

25  time?  Third, Keating states that it appended "Bruxer" to "KDZ" because bruxers

26  were the target patient for the new crown.  However, the evidence to which Keating

27  cites here fails to carry the point; this is not in fact what Shaun Keating says.

28

OPPOSITION TO DEFENDANT'S MSJ RE (1) NO INFRINGEMENT, (2)
NO VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, & (3) NO
UNFAIR COMPETITION UNDER CALIFORNIA LAW
CASE NO. SACV11-01309 DOC (ANX)

16196448.3

1    Finally, Keating notes that it sought advice of counsel in connection with the

2    selection of the KDZ Bruxer brand. However, Keating fails to reveal what that

3    advice was; accordingly, it cannot hide behind its counsel's skirt. *Columbia*

4    *Pictures Indus., Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186,

5    1196 (9th Cir. 2001).

6          Evidence of intent to deceive the public is generally circumstantial.

7    *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011).

8    Here, substantial evidence of Keating's intent to free-ride on Glidewell's good will

9    in the BruxZir mark exists, and Keating points to nothing to tip the scales back in

10   its favor. This factor favors Glidewell.

11       **8.**    **Likelihood of Expansion of the Product Lines**

12          As the parties already directly compete, this factor is unimportant.

13       **9.**    **Conclusion: Confusion is Likely**

14          Thus, the *Sleekcraft* factors strongly support a finding that confusion is

15   likely. The Court should deny Keating's request for summary judgment.

16  **C.**    **Keating's Fair Use Defense is Frivolous**

17          Keating claims that it is entitled to use "Bruxer" even if its use causes

18   consumer confusion because the use is protected by the "classic" fair use defense.

19   There are three elements to the "classic" fair-use defense: (1) defendant's use of the

20   term is not as a trademark or service mark; (2) defendant uses the term "fairly and

21   in good faith;" and (3) defendant uses the term "only to describe" its goods or

22   services. 15 U.S.C. § 1115(b)(4). Thus, the "classic fair use" defense applies

23   where a party uses a descriptive term not as a trademark but instead to describe its

24   own goods. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1423

25   (9th Cir. 1984); *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 908 (9th Cir.

26   2003). Keating's use of the term "Bruxer" fails at least two of the above elements:

27   it is used as a trademark, and it is not used "only to describe" Keating's goods.

28

OPPOSITION TO DEFENDANT'S MSJ RE (1) NO INFRINGEMENT, (2)
NO VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, & (3) NO
UNFAIR COMPETITION UNDER CALIFORNIA LAW
CASE NO. SACV11-01309 DOC (ANX)

16196448.3

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

"To determine whether a term is being used as a mark [for purposes of the fair-use defense], we look for indications that the term is being used to associate it with a manufacturer." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1040 (9th Cir. 2010). Courts often have to look to circumstantial evidence of whether a term is being used as a trademark. *Id.* ("Indications of trademark use include whether the term is used as a symbol to attract public attention, which can be demonstrated by the lettering, type style, size and visual placement and prominence of the challenged words.").

Here, Keating has <u>admitted</u> that uses the term "bruxer" as a trademark: it applied to the Patent and Trademark Office to *register* the mark "KDZ BRUXER," admitted that it uses the mark as a trademark, and repeatedly referred to the KDZ BRUXER mark as a "trademark" in its Second Amended Answer. (Dkt. #57-1 ("SAA") ¶ 13 ["Defendant admits that it has used in commerce the term KDZ BRUXER as a trademark in connection with advertising of, sale of, or offer to sell dental prostheses."], ¶ 41). This is fatal for Keating's fair use defense. *Sierra On-Line,* 739 F.2d at 1423; *Henry Heide, Inc. v. George Ziegler Co.*, 354 F.2d 574, 577 (7th Cir. 1965).

Keating tries to escape the consequences of its admissions by contending that it disclaimed "Bruxer" in its trademark application for KDZ Bruxer. But that fact is irrelevant because a disclaimer does not remove the disclaimed term from the mark. *Sleeper Lounge Co. v. Bell Mfg. Co.*, 253 F.2d 720, 724 n.1 (9th Cir. 1958); *Schwarzkopf v. John H. Breck, Inc.*, 340 F.2d 978, 979-80 (C.C.P.A. 1965) (same). If a party could escape infringement simply by disclaiming descriptive words, this would become a common tactic to enable infringement. The courts, however, have rejected such tactics. *In re Nat'l Data Corp.*, 753 F.2d 1056, 1059 (Fed. Cir. 1985). Keating's unilateral disclaimer of "Bruxer," therefore, does not convert its infringement into fair use.

OPPOSITION TO DEFENDANT'S MSJ RE (1) NO INFRINGEMENT, (2)
NO VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, & (3) NO
UNFAIR COMPETITION UNDER CALIFORNIA LAW
CASE NO. SACV11-01309 DOC (ANX)

16196448.3

Further, Keating is not using "Bruxer" only in its descriptive sense. As Keating acknowledges, the term "Bruxer" is used to refer to "[a] person who suffers from bruxism." (SAA ¶ 46). In turn, "bruxism" refers to a condition of a patient who habitually grinds teeth. (*Id.*). Keating uses the term "bruxer," however, in connection with the sale of "crown[s] made from zirconia." (SAA ¶ 42). Thus the term "Bruxer" simply does not describe Keating's product – Keating's product is not a person who grinds teeth. Instead, Keating's use of the term "Bruxer" suggests a crown that is sufficiently strong to withstand the grinding of teeth, as explained in Glidewell's co-pending MSJ re Validity, at pages 14-19. Thus, Keating is, *in its trademark*, attempting to utilize *the exact same meaning* associated with Glidewell's registered BruxZir mark. (*Id.*) This is the opposite of fair use. The Court should therefore reject Keating's fair use defense.

**D.** **The Court should Deny Keating's Request for Summary Judgment on Glidewell's Second and Third Causes of Action**

Keating contends that the Court should grant summary judgment on Glidewell's Second and Third Causes of Action for same reasons it advanced for summary judgment as to Glidewell's First Cause of Action. For the same reasons set forth above, Keating fails. Thus, the Court should deny Keating's request.

## III. CONCLUSION

This Court should deny Keating's Motion for Summary Judgment of No Infringement in its entirety.

Dated: November 26, 2012               SNELL & WILMER L.L.P.


By: /Deborah S. Mallgrave for

Philip J. Graves
Greer N. Shaw
Attorneys for Plaintiff
James R. Glidewell Dental Ceramics, Inc.
dba Glidewell Laboratories

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

OPPOSITION TO DEFENDANT'S MSJ RE (1) NO INFRINGEMENT, (2)
NO VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, & (3) NO
UNFAIR COMPETITION UNDER CALIFORNIA LAW
CASE NO. SACV11-01309 DOC (ANX)

16196448.3

*Glidewell Laboratories v. Keating Dental Arts, Inc.*
**United States District Court, Central, Case No. SACV11-01309-DOC (ANx)**

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2012, I electronically filed the document described as **JAMES R. GLIDEWELL DENTAL CERAMICS, INC. MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT KEATING DENTAL ARTS, INC.'S MOTION FOR SUMMARY JUDGMENT OF (1) NO INFRINGEMENT OF GLIDEWELL'S REGISTERED TRADEMARK, (2) NO VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, AND (3) NO UNFAIR COMPETITION UNDER CALIFORNIA LAW** with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

David G. Jankowski
Jeffrey L. Van Hoosear
Lynda J Zadra-Symes
Knobbe Martens Olson and Bear LLP
2040 Main Street, 14th Floor
Irvine, CA 92614

**Attorneys for Defendant Keating Dental Arts, Inc.**
Tel: (949) 760-0404
Fax: (949) 760-9502

Jeffrey.vanhoosear@kmob.com
David.jankowski@kmob.com
Lynda.zadra-symes@kmob.com
litigation@kmob.com

DatedNovember 26, 2012          SNELL & WILMER L.L.P.

By: *s/Philip J. Graves*
Philip J. Graves
Greer N. Shaw

Attorneys for Plaintiff
James R. Glidewell Dental Ceramics, Inc.
dba GLIDEWELL LABORATORIES

16139994.1

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071