SNELL & WILMER L.L.P.
Philip J. Graves (SBN 153441)
pgraves@swlaw.com
Greer N. Shaw (SBN 197960)
gshaw@swlaw.com
350 South Grand Avenue, Suite 2600
Two California Plaza
Los Angeles, CA 90071
Telephone: (213) 929-2500

Attorneys for Plaintiff
James R. Glidewell Dental Ceramics, Inc.
d/b/a Glidewell Laboratories

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| JAMES R. GLIDEWELL DENTAL CERAMICS, INC., | Case No. SACV11-01309-DOC(ANx) |
| Plaintiff, | **JAMES R. GLIDEWELL DENTAL CERAMICS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT CANCELLING GLIDEWELL'S TRADEMARK REGISTRATION** |
| vs. | |
| KEATING DENTAL ARTS, INC., | |
| Defendant. | |
| AND RELATED COUNTERCLAIMS. | Hearing |
| | Date:  December 17, 2012 |
| | Time:  8:30 a.m. |
| | Ctrm:  9D, Hon. David O. Carter |
| | Pre-Trial Conf.:   January 28, 2013 |
| | Jury Trial:          February 26, 2013 |

## HIGHLY CONFIDENTIAL - FILED UNDER SEAL

## (PURSUANT TO PROTECTIVE ORDER DATED JANUARY 30, 2012)

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600   Two California Plaza
Los Angeles, California 90071
(213) 929-2500

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ....................................................................................1

II.  LEGAL ARGUMENT ..........................................................................2

   A.   Keating Must Establish the Absence of Genuine Issues of Material Fact .......................................................................................2

   B.   The BruxZir Mark Is Presumptively Inherently Distinctive.................2

   C.   The BruxZir Mark Is Not Generic .........................................................5

      1.   The BruxZir Mark Identifies a Source, Not A Genus of Products...........................................................................................5

         a.   Keating Has Admitted that the BruxZir Mark Is Not Generic..........................................................................6

         b.   Other Evidence Establishes that the Mark Is Not Generic.......................................................................7

            (i)   Dentists' Testimony Establishes that the BruxZir Mark Is Not Generic...................................7

            (ii)  Glidewell Testimony Establishes that the BruxZir Mark Is Not Generic...................................8

            (iii) Expert Testimony Establishes that the BruxZir Mark Is Not Generic...................................9

      2.   Glidewell's Purported "Generic Use" Does Not Render "BruxZir" Generic ...................................................................10

      3.   The Use of "BruxZir" by Glidewell's "Authorized" Labs Does Not Render "BruxZir" Generic .........................................12

      4.   That Other Dental Laboratories Offer Zirconia Crowns Does Not Render the BruxZir Mark Generic ...........................13

      5.   That "Brux" and "Zir" May Be Used In the Dental Industry Does Not Render "BruxZir" Generic .........................15

   D.   The BruxZir Mark Is Suggestive and Therefore Inherently Distinctive ..........................................................................................16

      1.   The BruxZir Mark Is Suggestive Under the "Imagination" Test.....................................................................................17

      2.   The "Competitors' Needs" Test Supports Suggestiveness.......19

   E.   If Descriptive, The BruxZir Mark Has Attained Secondary Meaning................................................................................................20

      1.   The BruxZir Mark Is Suggestive, Not Descriptive...................21

**TABLE OF CONTENTS**
(continued)

Page

2. Even if Descriptive, the BruxZir Mark Is Distinctive Because It Has Attained Secondary Meaning ..........................22

    a. Actual Purchasers Associate the BruxZir Mark With Glidewell ..........................................................22

    b. Glidewell Has Extensively Advertised and Promoted the BruxZir Mark.............................................23

    c. The Length and Manner of Use of the BruxZir Mark Supports Secondary Meaning...............................24

    d. Glidewell's Exclusive Use of the BruxZir Mark Supports Secondary Meaning..........................................24

    e. Consumer Confusion and Keating's Intentional Copying Support Secondary Meaning ..........................25

III. CONCLUSION ..............................................................25

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Advertise.com, Inc. v. AOL Advertising, Inc.*,
616 F.3d 974 (9th Cir. 2010) ...................................................................16

*Alphaville Design, Inc. v. Knoll, Inc.*,
627 F. Supp. 2d 1121 (N.D. Cal. 2009).............................................22

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).................................................................................2

*Brookfield Comm'ns, Inc. v. W. Coast Entm't Corp.*,
174 F.3d 1036 (9th Cir. 1999) ...............................................................21

*Caesars World, Inc. v. Milanian*,
247 F. Supp. 2d 1171 (D. Nev. 2003) ..............................................11

*California Cooler, Inc. v. Loretto Winery, Ltd.*,
774 F.2d 1451 (9th Cir. 1985) ...............................................................15

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)................................................................................2

*Committee for Idaho's High Desert v. Yost*,
92 F.3d 814 (9th Cir. 1996) ...........................................................7, 23

*Fair Housing Council of Riverside County, Inc. v. Riverside Two*,
249 F.3d 1132 (9th Cir. 2001) ................................................................4

*Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*,
198 F.3d 1143 (9th Cir. 1999) .........................................................22, 25

*In re DC Comics, Inc.*,
689 F. 2d 1042 (C.C.P.A. 1982).........................................................11

*In re Sones*,
590 F.3d 1282 (Fed. Cir. 2009) ...........................................................21

*Lahoti v. Vericheck, Inc.*,
636 F.3d 501 (9th Cir. 2011) ..........................................................17, 18

*Maljack Prods., Inc. v. GoodTimes Home Video Corp.*,
81 F.3d 881 (9th Cir. 1996) ........................................................5, 12, 22

*Nautilus Group, Inc. v. ICON Health & Fitness, Inc.*,
372 F.3d 1330 (Fed. Cir. 2004) ...........................................................17

*Network Automation, Inc. v. Advanced Sys. Concepts*,
638 F.3d 1137 (9th Cir. 2011) ...............................................................17

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*,
164 F.3d 736 (2d Cir. 1998) .....................................................................5

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*,
469 U.S. 189 (1985)..........................................................................5, 21

# TABLE OF AUTHORITIES
(continued)

**Page**

*Quiksilver, Inc. v. Kymsta Corp.*,
466 F.3d 749 (9th Cir. 2006) ........................................................................ 3, 22

*Reno Air Racing Ass'n, Inc. v. McCord*,
452 F.3d 1126 (9th Cir. 2006) ..................................................................... 3, 15

*Sabinsa Corp. v. Creative Compounds, LLC*,
609 F.3d 175 (3d Cir. 2010) .............................................................................. 17

*Sanders v. Parker Drilling Co.*,
911 F.2d 191 (9th Cir. 1990) .............................................................................. 3

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization*,
59 F.3d 902 (9th Cir. 1995) .............................................................................. 17

*Surfvivor Media, Inc. v. Survivor Prods.*,
406 F.3d 625 (9th Cir. 2005) ........................................................................... 17

*Yamaha Int'l Corp. v. Hoshino Gakki Co.*,
840 F.2d 1572 (Fed Cir. 1988) ......................................................................... 23

*Yellow Cab Co. of Sacramento v. Yellow Cab Co. of Elk Grove, Inc.*,
419 F.3d 925 (9th Cir. 2005) .............................................. 2, 4, 5, 14, 16, 22

*Zobmondo Enter., LLC v. Falls Media, LLC*,
602 F.3d 1108 (9th Cir. 2010) ............................. 2, 3, 16, 17, 18, 19, 20, 21, 22

## STATE STATUTES

15 U.S.C. § 1052(f) .......................................................................................... 22

15 U.S.C. § 1055 ............................................................................................... 12

15 U.S.C. § 1127 ............................................................................................... 12

Federal Rule of Civil Procedure 56(c) ............................................................... 2

## OTHER AUTHORITIES

2 J. Thomas McCarthy, McCarthy on Trademarks and
Unfair Competition § 11:72 (4th ed. 2012) .................................................... 16

2 J. Thomas McCarthy, McCarthy on Trademarks and
Unfair Competition § 12:17.50, pp. 12-61 (4th ed. 2012) ................................ 5

2 J. Thomas McCarthy, McCarthy on Trademarks and
Unfair Competition § 12:8 (4th ed. 2012) ...................................................... 11

2 J. Thomas McCarthy, McCarthy on Trademarks and
Unfair Competition § 15:8 (4th ed. 2012) ...................................................... 22

2 J. Thomas McCarthy, McCarthy on Trademarks and
Unfair Competition § 18:45 (4th ed. 2012) .................................................... 12

2 J. Thomas McCarthy, McCarthy on Trademarks and
Unfair Competition § 18:45.50 (4th ed. 2012) ............................................... 12

1

## I. INTRODUCTION

2     REDACTED

3

4                                      The Court should deny Keating's motion on this

5    admission alone. Beyond this, there is a "strong presumption" of inherent

6    distinctiveness. Keating bears a "heavy burden" to prove otherwise, and Keating

7    cannot carry it. Ample evidence establishes that the mark is not generic, and

8    Keating has submitted no *admissible* evidence to the contrary. Keating has no

9    survey, and even the thirteen dentists who submitted declarations for Keating – and

10   who presumably went as far as they could to aid Keating while still being truthful –

11   do not state that they regarded "bruxzir" or "bruxer" to be generic terms for zirconia

12   crowns as of the relevant time period, April 2011. Their views as of later points are

13   irrelevant to proving genericness, as are the unauthenticated, hearsay webpages

14   Keating relies upon to prove third parties' use of "bruxer" and "bruxzir."

15        Keating's backup, that the BruxZir mark is descriptive without secondary

16   meaning, fares no better. The evidence proves that the mark is suggestive, not

17   descriptive, because dentists must use multistep reasoning to draw conclusions

18   about the product from the mark. Even if the mark were descriptive, there is

19   overwhelming evidence of secondary meaning. This includes direct consumer

20   testimony, evidence that Glidewell has expended millions of dollars to promote the

21   mark over several years, evidence that Glidewell – aside from infringers who

22   promptly changed their marks after notice of infringement – has been the exclusive

23   user of the mark, and the fact that Keating intentionally copied the mark.

24        Whether a mark is generic, descriptive, or suggestive, and whether the mark

25   has attained secondary meaning, are issues of fact. At a minimum, Keating has

26   failed to show that there are no genuine issues of material fact such that Keating is

27   entitled to summary judgment as a matter of law. For these reasons, detailed below,

28   the Court must deny Keating's motion.

MPA IN OPP. TO DEFENDANT'S MSJ FOR
CANCELLATION OF REGISTERED TRADEMARK
CASE NO. SACV11-01309-DOC(ANx)

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600,  Two California Plaza
Los Angeles, California 90071
(213) 929-2500

## II.   LEGAL ARGUMENT

**A.   <u>Keating Must Establish the Absence of Genuine Issues of Material Fact</u>**

In order to obtain summary judgment in its favor, Keating must establish that "there is no genuine issue as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  If there is sufficient evidence as to any material issue favoring Glidewell for a jury to return a verdict for Glidewell, then it would be reversible error to grant summary judgment for Keating.  *See, e.g., Zobmondo Enter., LLC v. Falls Media, LLC*, 602 F.3d 1108 (9th Cir. 2010) (reversing summary judgment cancelling mark as descriptive without secondary meaning, because genuine issues of material fact existed as to whether mark was suggestive or merely descriptive); *Yellow Cab Co. of Sacramento v. Yellow Cab Co. of Elk Grove, Inc.*, 419 F.3d 925 (9th Cir. 2005) (reversing summary judgment finding mark to be generic, because genuine issues of material fact existed as to whether mark had become generic through widespread use in the marketplace and also whether the mark, if descriptive, had acquired secondary meaning).

**B.   <u>The BruxZir Mark Is Presumptively Inherently Distinctive</u>**

To be valid and protectable, a mark must be "distinctive." *Zobmondo Enter.*, 602 F.3d at 1113.  There are five categories of marks: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful. *E.g., Yellow Cab*, 419 F.3d at 927. "The latter three categories are deemed inherently distinctive and are automatically entitled to protection because they naturally 'serve[] to identify a particular source of a product ....'" *Id.* (citation omitted).  A generic mark carries no protection, while a descriptive mark, although not inherently distinctive, can receive protection if it has acquired distinctiveness in the marketplace ("secondary meaning"). *See id.*

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

In determining distinctiveness, the Court is "'required to consider standards of meaning not [its] own, but prevalent among prospective purchasers of the article.'" *Zobmondo Enter.*, 602 F.3d at 1113 (citation omitted). "'The fact-finder is not the designated representative of the purchasing public, and the fact-finder's own perception of the mark is not the object of the inquiry. Rather, the fact-finder's function is to determine, based on the evidence before it, what the perception of the purchasing public is.'" *Id.* (citation omitted).

"'[T]he fact that a mark is registered is *strong evidence* that the mark satisfies the statutory requirements for distinctiveness necessary for trademark protection.'" *Zobmondo Enter.*, 602 F.3d at 1121 (citation omitted; emphasis added). Accordingly, a "federal registration ... entitles the plaintiff to a '*strong presumption*' that the mark is a protectable mark." *Id.* at 1113 (emphasis added); *see also, e.g.*, *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1135 (9th Cir. 2006). "[T]he burden on the defendant necessary to overcome that presumption at summary judgment is heavy.'" *Zobmondo Enter.*, 602 F.3d at 1115.

Moreover, "[w]here the PTO issues a registration without requiring proof of secondary meaning, the presumption is that the mark is inherently distinctive." *Zobmondo Enter.*, 602 F.3d at 1113-14; *see also Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 760 (9th Cir. 2006). In other words, a registered mark issued by the PTO without a showing of secondary meaning is presumed to be at least suggestive. As the Ninth Circuit has explained, "'[d]eference to the PTO's classification decision is sensible because the PTO has special expertise that we lack on this fact-intensive issue.'" *Zobmondo Enter.*, 602 F.3d at 1121 (citation omitted).

Classification of a mark is a question of fact. *Zobmondo Enter.*, 602 F.3d at 1113. This question may be resolved as a matter of law if reasonable minds cannot differ and the evidence permits only one conclusion. *See Quiksilver*, 466 F.3d at 759; *Sanders v. Parker Drilling Co.*, 911 F.2d 191, 194 (9th Cir. 1990). However, if genuine issues of fact exist as to whether a mark is generic, summary judgment

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1  cancelling the mark for genericness is erroneous. *Yellow Cab*, 419 F.3d 929-30.

2  Here, the BruxZir mark is a registered mark. (SAF 79).[1] The mark was

3  registered on the Principal Register on January 19, 2010, as Reg. No. 3,739,663.

4  (SAF 79). The PTO issued the mark without requiring any showing of secondary

5  meaning. (SAF 85). Under Ninth Circuit law, this is "strong evidence" that the

6  BruxZir mark is inherently distinctive for its registered class (Dental bridges;

7  Dental caps; Dental crowns; Dental inlays; Dental onlays; Dental prostheses) – i.e.,

8  it is at least suggestive – and the mark enjoys a "strong presumption" of validity.[2]

9  Keating bears a "heavy" burden to overcome this presumption at summary

10  judgment. As shown below and as discussed in detail in Glidewell's briefs in

11  support of its recently filed motions for partial summary judgment, Keating has not

12  developed sufficient evidence to overcome the presumption of inherent

13  distinctiveness.[3] At a minimum, there are genuine issues of material fact as to

14  whether the BruxZir mark is generic, such that summary judgment in Keating's

15

16  [1] Concurrently with this brief, Glidewell has filed a Statement of Genuine Disputes
of Material Fact, and Statement of Additional Material Facts, in Response to

17  Defendant Keating Dental Arts, Inc.'s Proposed Statement of Uncontroverted Facts
in Support of its Motion for Summary Judgment Cancelling Glidewell's Trademark

18  Registration, hereinafter "SAF." Citations herein to the SAF refer to the second
portion of the document, under the heading "II. Additional Material Facts Relevant

19  to the Issues Raised in Keating's Motion for Summary Judgment Cancelling
Glidewell's Trademark Registration."

20  [2] Here, Keating attacks the trademark Examiner, asserting that the Examiner "did
not fully examine" Glidewell's application because the Examiner "did not conduct

21  an Internet search and made no inquiry as to whether BRUXZIR had any meaning
in the dental industry," and because "[t]he Examiner should have performed a

22  search of the Internet for 'crowns designed for bruxers.'" (Dkt. #85 at 12:15-25).
Later, Keating asserts that the Examiner failed to "follow[] the normal examination

23  procedure," which required "conduct[ing] an Internet search for the term." (Dkt.
#85 at 25:3). Yet, neither its brief nor the "expert" report of Lori Boatright cites

24  any authority (such as might be found in the Trademark Manual of Examining
Procedure) indicating that the Examiner should have taken such steps.

25  [3] Glidewell relies herein on arguments and evidence submitted in support of its co-
pending Motion for Partial Summary Judgment re: Infringement of a Federally

26  Registered Mark (First Cause of Action) And Dismissal of Defendant's Second
Affirmative Defense and First Counterclaim (Dkt. #81; 81-1) ("MSJ re

27  Infringement") and Glidewell's Motion for Partial Summary Judgment as to
Keating Dental Art, Inc.'s Invalidity Defense and Counterclaim (Dkt. #82; 82-1)

28  ("MSJ re Validity"), pursuant to *Fair Housing Council of Riverside County, Inc. v.
Riverside Two*, 249 F.3d 1132, 1136-37 (9th Cir. 2001).

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1   favor must be denied.

2   **C.     The BruxZir Mark Is Not Generic**

3        **1.     The BruxZir Mark Identifies a Source, Not A Genus of Products**

4        "Marks that constitute a common descriptive name are referred to as generic.

5   A generic term is one that refers to the genus of which the particular product is a

6   species." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985).

7   "'Whether a mark is generic is a question of fact.'" *Yellow Cab*, 419 F.3d at 929

8   (citation omitted). "'To determine whether a term has become generic, we look to

9   whether consumers understand the word to refer only to a particular producer's

10  goods or whether the consumer understands the word to refer to the goods

11  themselves.'" *Yellow Cab*, 419 F.3d at 929 (citation omitted).  If a buyer

12  understands the term as being identified with a particular producer's goods or

13  services, it is not generic.  *Id.*  This so even if consumers do not know the identity

14  of the source.  *E.g.*, *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d

15  881, 887 (9th Cir. 1996) (mark may be distinctive even if source is anonymous).

16       "The crucial date for the determination of genericness is the date on which

17  the alleged infringer entered the market with the disputed mark or term." *Yellow*

18  *Cab*, 419 F.3d at 928; *see also Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*,

19  164 F.3d 736, 744 (2d Cir. 1998); *see also* 2 J. Thomas McCarthy, McCarthy on

20  Trademarks and Unfair Competition § 12:17.50, pp. 12-61 (4th ed. 2012).  Here,

21  according to Keating, "it adopted and began using" its KDZ Bruxer mark "[i]n

22  approximately April 2011."  (SAF 86).  Accordingly, Keating must show that, as of

23  April 2011, the relevant consumers (dentists) understood "bruxzir" to refer to the

24  genus of products comprising zirconia dental restoration products, and that they did

25  *not* understand the BruxZir mark to refer to only a particular producer's goods.

26  Keating argues that "Glidewell's BRUXZIR mark identifies the product, not the

27  producer." (Dkt. #85, at 15:9).  The evidence establishes otherwise.

28

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

Case 8:11-cv-01309-DOC-AN  Document 114  Filed 11/26/12  Page 11 of 31  Page ID #:4342

1    **a.    Keating Has Admitted that the BruxZir Mark Is Not Generic**

2    In its Petition for Cancellation, Keating admitted that the BruxZir mark is at

3    least "merely descriptive of the goods set forth in [Glidewell's] Registration."

4    (SAF 4). To be sure, Keating first contended that the mark is generic. But this

5    does not negate Keating's admission of descriptiveness. At a minimum, Keating's

6    admission should preclude summary judgment of genericness.

7    REDACTED

8

9

10

11

12

13                                                                    Thus, both

14    Keating's senior management and its dentists customers knew as of at least May

15    2011 that the BruxZir mark did *not* generically refer to the genus of dental

16    restoration products, but instead referred to specific goods from a specific source.

17    REDACTED

18

19                                                This admission directly and

20    fatally undercuts Keating's position that the mark is generic.

21    Finally, internal Keating documents reveal that its personnel regard BruxZir

22    as a proprietary trademark rather than a generic term.  REDACTED

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

MPA IN OPP. TO DEFENDANT'S MSJ FOR
CANCELLATION OF REGISTERED TRADEMARK
CASE NO. SACV11-01309-DOC(ANx)

- 6 -

REDACTED

**b.** Other Evidence Establishes that the Mark Is Not Generic

    **(i)** *Dentists' Testimony Establishes that the BruxZir Mark Is Not Generic*

With its motion Keating submitted declarations from thirteen dentists to support the assertion that "[m]any dentists in the industry refer to all-zirconia crowns as a 'BruxZir,' 'bruxzir,' or variations thereon," and also to explain that, in submitting prescription forms to Keating asking for such products, they "wrote that word as a generic reference to an all-zirconia crown." (Dkt. #85, at 1-4). This testimony is not probative of genericness because none of these doctors testify that they regarded "bruxzir" or "bruxer" as being generic terms for zirconia crowns *as of the relevant time period*, April 2011. Instead, their declarations each reveal that, to the extent they regarded these terms as generic, they did so later. (SAF 87).

In addition, the existence of "'another term of reasonable conciseness and clarity by which the public [could] refer[]'" to the goods supports nongenericness. *Committee for Idaho's High Desert v. Yost*, 92 F.3d 814, 822 (9th Cir. 1996) (citation omitted)). Here, none of the thirteen dentists use the terms "bruxzir crown" or "bruxer crown" in their declarations to describe zirconia crowns; instead they use "full contour zirconia crown," "monolithic zirconia crown," and/or "all zirconia crown." (SAF 88). If "bruxzir crown" or "bruxer crown" truly were generic, as Keating contends, these dentists would not have used different terms.

Keating also submitted a declaration from Carol Frattura of Showcase Dental Laboratory, purportedly to establish that Showcase "has also received prescription forms from dentists ordering all-zirconia crowns that generically describe an all-zirconia crown as a 'BruxZir,' 'bruxzir,' or variation, thereof." (Dkt. #85 at 11:8-11; *see also* Dkt. #96). But the prescription forms attached to Frattura's declaration are not probative of genericness of "bruxzir" or "bruxer." The majority post-date April 2011. (SAF 89). One is undated. (SAF 90). The remainder show

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1  that dentists used terms other than bruxzir or "bruxer" when ordering zirconia

2  crowns prior to April 2011. (SAF 91). This supports Glidewell, not Keating.

3      In addition, Glidewell's evidence shows that dentists located throughout the

4  country do not regard BruxZir as generic. Indeed, multiple dentists have testified

5  that they have known, both before and after April 2011, and through various

6  communications with other dentists, are aware that other dentists have known, that

7  the BruxZir mark is a brand or trademark that signifies a single source of zirconia

8  crowns and bridges. (SAF 13). These dentists also attest to the fact that, both

9  before and after April 2011, they, and other dentists with whom they regularly

10  communicate, used the term 'bruxer' exclusively to refer to a person who suffers

11  from bruxism (i.e., habitual and destructive grinding of the teeth and clenching of

12  the jaw) and not to refer to zirconia crowns and bridges as a type or category of

13  product. (SAF 14). Glidewell uses the "BruxZir" mark to sell crowns and bridges,

14  not people suffering from bruxism. When referring to zirconia crowns and bridges

15  as a type or category of product generally, these dentists, and the dentists that they

16  communicate with, use 'zirconia crowns,' 'all zirconia crowns,' 'monolithic

17  zirconia crowns,' 'full zirconia crowns,' or 'solid zirconia crowns.'" (SAF 14).

18          **(ii)**  *Glidewell Testimony Establishes that the BruxZir Mark Is*

19              *Not Generic*

20      As discussed in greater detail in Glidewell's MSJ re Validity (Dkt. #82-1 at

21  10:26-12:2), the testimony of Glidewell's employees also supports finding the

22  BruxZir mark nongeneric. This includes the testimony of Jim Shuck, Glidewell's

23  Vice President of Sales and Marketing, who testifies that "[t]he generic terms for a

24  BruxZir brand crown are 'crown,' 'crown for bruxers,' or 'all zirconia crown.' I

25  have also heard a 'solid zirconia crown,' and a 'full contour zirconia crown.' The

26  term 'bruxzir' is not used by Glidewell – or, to my knowledge, widely or generally

27  used by anyone else – to refer to solid zirconia crowns." (SAF 15). According to

28  Dr. Michel DiTolla, Glidewell's Director of Clinical Education & Research, the

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1   vast majority of the two to three thousand dentists with whom he interacts per year

2   "have made statements … indicating that they understand that BruxZir identifies

3   Glidewell as the source of the crown products." (SAF 16). According to Rudy

4   Ramirez, Glidewell's General Manager of the Fixed Prosthodontics, each of the

5   more than 100 dentists that he has personally guided on tours of Glidewell's

6   production facility have "expressed … their awareness that Glidewell is the source

7   for zirconia crowns and bridges produced and marketed under the BruxZir mark."

8   (SAF 20).

9                    **(iii)**   *Expert Testimony Establishes that the BruxZir Mark Is*

10                                *Not Generic*

11   Dr. Ronald Goldstein opines that "dentists do not refer to solid zirconia

12   crowns as 'bruxers' or 'bruxer crowns,'" and that "dentists do not understand the

13   mark BruxZir to refer to solid zirconia crowns from any source, but rather …

14   dentists understand the mark BruxZir to identify the source of solid zirconia crowns

15   and material to make solid zirconia crowns – the solid zirconia crowns supplied by

16   Glidewell." (SAF 22). The bases for this opinion, and details regarding Dr.

17   Goldstein's expertise – including his 55 years of experience in dental practice, his

18   research, his numerous conference appearances as speaker or keynote speaker, and

19   his discussions with other dentists – are detailed in his declaration submitted with

20   Glidewell's MSJ re Validity (Exhibit O to Appendix of Evid., Dkt. #90).

21   Similarly, Professor David Franklyn – a tenured full professor of law who

22   specializes in intellectual property and trademark law at the University of San

23   Francisco School of Law – opines that "Glidewell's BruxZir mark is not generic

24   but rather is a suggestive mark, and that, in any event, the BruxZir trade mark has

25   strong brand recognition amongst United States dentists as a unique source

26   identifier for full zirconia dental crowns made by Glidewell." (SAF 23). The bases

27   for Professor Franklyn's opinion, detailed in his declaration submitted with

28   Glidewell's MSJ re Validity (Exhibit N to Appendix of Evid., Dkt. #90), include

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

MPA IN OPP. TO DEFENDANT'S MSJ FOR
CANCELLATION OF REGISTERED TRADEMARK
CASE NO. SACV11-01309-DOC(ANx)

his exhaustive trademark and Internet search efforts, his review of the documentary evidence (including trademark search reports commissioned by Keating's counsel), evidence supporting the fact that the BruxZir mark is suggestive, and his interviews of numerous dentists and leading practitioners in the field.

### 2.   Glidewell's Purported "Generic Use" Does Not Render "BruxZir" Generic

Keating contends that "Glidewell uses BruxZir generically," arguing first that, "[i]n its promotional materials, Glidewell reinforces the use of 'bruxzir' or 'bruxer' crown as nomenclature for an all zirconia crown, not as a trademark indicating the source of the product.  For example, in Glidewell's promotional video, Dr. DiTolla compares a 'bruxzir' or 'bruxer' crown to a metal occlusal PFM [porcelain fused to metal] crown and a gold cast crown." (Dkt. #85 at 7:4-8)  But even if true, such activity does not support genericness.  Use of the BruxZir mark in Glidewell's *own* promotional materials reinforces that there is a single source (Glidewell) of the BruxZir brand products discussed therein, particularly given that the mark is presented in association with the Glidewell Labs name.  (SAF 92).  It is implausible that a dentist would watch a Glidewell video and conclude that the BruxZir products promoted therein were anything other than Glidewell's products.  Moreover, because trademarks generally are supposed to be used as adjectives, Glidewell's use of such phrases as "BruxZir crown" in its own promotional materials is proper and not a generic use.

Keating next asserts that, "[i]n continuing education lectures, given to dentists around the country, Dr. DiTolla uses the terms 'BruxZir crown' and 'full-contour zirconia' interchangeably for educational purposes ... [because he] want[s] to drive it into them and make sure they walk away knowing that it's a solid zirconia crown.'" (Dkt. #85 at 7:13-17)  Again, this supports non-genericness.  If "bruxzir" or "bruxer" were generic for zirconia crowns, there would be no need to emphasize that BruxZir brand crowns are solid zirconia crowns.  In any event, the

MPA IN OPP. TO DEFENDANT'S MSJ FOR
CANCELLATION OF REGISTERED TRADEMARK
CASE NO. SACV11-01309-DOC(ANx)

1   BruxZir mark is used in these lectures in association with the Glidewell name,

2   reinforcing that the mark is associated with a particular source. (SAF 93).

3        Finally, Keating argues that "Glidewell also uses the word BRUXZIR as a

4   noun and plural noun .... Dr. DiTolla states, in Glidewell's promotional videos

5   that one could even get 'a couple of bruxzirs put in.'" (Dkt. #85 at 7:13-17; *id.*at

6   16:22-25) But if this made the BruxZir mark generic, then "Ford" would be generic

7   because of television commercials exhorting consumers to "put a Ford in the

8   driveway this holiday season," and "Coke" would be generic because of

9   advertisements exhorting consumers to "have a Coke and a smile." This would be

10  absurd. That a product may be called by its given name does not negate its function

11  as a mark or render it generic, so long it is used to identify a product of a single

12  source. *See In re DC Comics, Inc.*, 689 F. 2d 1042, 1054 (C.C.P.A. 1982). As

13  McCarthy states: "The fact that buyers often call for or order a product by a term

14  does not necessarily evidence that the term is a 'generic name.' For example, if at a

15  lunch counter one says, 'I'll have a cheeseburger and a COKE.' Or if a new care

16  buyer brags to a neighbor, 'I've just been polishing up my new FORD!' Does the

17  neighbor respond, 'FORD? A FORD what?' The generic names 'cola' and 'car' are

18  understood and so, dropped in common speech. Such usage does not evidence

19  genericness of COKE or FORD—quite the contrary. It shows that the terms are

20  such strong, well-known trademarks that they need no generic name to convey the

21  message. The generic name is understood by all and dropped off." McCarthy

22  § 12.8. Here, the BruxZir mark "is like Coca-Cola to dentists as it is a source

23  identifier for products offered by the predominant supplier of solid zirconia crowns

24  and material used to make solid zirconia crowns." (SAF 94). In any event,

25  "occasional generic usage does not destroy a trademark. Indeed, often the use of a

26  trademark as a generic noun illustrates the power of a trademark." *Caesars World,*

27  *Inc. v. Milanian*, 247 F. Supp. 2d 1171, 1194 (D. Nev. 2003) Here, even if Dr.

28  DiTolla occasionally used "BruxZir" as a noun in Glidewell's videos, the context

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1    dispels any possible confusion as to whether there is a single source.

2         **3.    The Use of "BruxZir" by Glidewell's "Authorized" Labs Does Not**
3               **Render "BruxZir" Generic**

4         Keating also points out that Glidewell has authorized approximately 180

5    third party labs to sell crowns under the "BruxZir" mark, which Keating contends

6    "reinforces the understanding among dentists that 'BruxZir' is a product available

7    from multiple sources, not an indicator of a single source or producer." (Dkt. #85

8    at 10:11-13; *id.*at 17:5-9)  Not so, for several reasons.

9         First, Keating cites no authority holding that authorized uses of a trademark

10   render the mark generic or otherwise invalid.  Nor could it; "[w]here a registered

11   mark ... is ... used legitimately by related companies, such use shall inure to the

12   benefit of the registrant ..., and such use shall not affect the validity of such mark

13   or of its registration ...."  15 U.S.C. § 1055; 3 McCarthy § 18:45.50 ("[P]roperly

14   licensed use by licensees will serve to fortify the legal and commercial strength of

15   the licensed mark."); *id.*at § 18:45 ("[T]here is no necessity for the name of the

16   licensor to appear on licensed uses of a mark owned by the licensor.  That is,

17   licensed uses may properly contain only the licensed mark and the name of the

18   licensee.").  "The term 'related company' means any person whose use of a mark is

19   controlled by the owner of the mark with respect to the nature and quality of the

20   goods or services on or in connection with which the mark is used." 15 U.S.C.

21   § 1127.  Here, Glidewell permits the authorized labs to use the BruxZir mark and

22   Glidewell exercises control over the nature and quality of crowns they sell under

23   the BruxZir brand.  (SAF 95).  The authorized labs' use of the mark "inure[s] to the

24   benefit" of Glidewell, and it "shall not affect the validity of [the] mark or of its

25   registration."  15 U.S.C. § 1055.

26        Second, a mark is not generic if the relevant consumers regard it as being

27   associated with a single source, even if they do not know the identity of that source.

28   *E.g.*, *Maljack*, 81 F.3d at 887.  Here, all or virtually all of the authorized lab web

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

MPA IN OPP. TO DEFENDANT'S MSJ FOR
CANCELLATION OF REGISTERED TRADEMARK
CASE NO. SACV11-01309-DOC(ANx)

1   pages submitted by Keating show that the authorized labs use the BruxZir mark in a

2   manner so as to indicate that it is associated with a single source of goods.  (SAF

3   96).  For example, many, such as OralDesigns, expressly identify themselves as an

4   "Authorized BruxZir Laboratory," thereby conveying that they have been

5   "authorized" by a single source.  (SAF 97). Others, such as Continental Dental Labs

6   of California, expressly identify Glidewell as the source, such as by stating that

7   "BruxZir® is a registered trademark of Glidewell Laboratories."  (SAF 98).  All or

8   virtually all of the labs use the "®" symbol with the BruxZir mark, thereby

9   indicating to consumers that the mark is owned by a single source.

10        Finally, Keating submits no evidence proving that the absence of the

11   Glidewell name from an authorized lab's website has actually caused any dentists

12   to conclude that the lab's BruxZir brand products have no association with

13   Glidewell.  This is likely because Glidewell actively informs dentists of this

14   association by (a) maintaining a public list of authorized labs on its website;

15   (b) sending, on a quarterly basis, an "Rx booklet" to approximately 120,000

16   dentists across the country, listing all the authorized labs and encouraging the

17   dentists to use them to obtain BruxZir brand products; and (c) doing periodic "E-

18   blasts" and letter campaigns  to "to bring the awareness of the BruxZir brand and its

19   benefits and what makes it better."  (SAF 99).

20        **4.**    **That Other Dental Laboratories Offer Zirconia Crowns Does Not**

21              **Render the BruxZir Mark Generic**

22        Keating lists in its brief "other dental laboratories" that purportedly "have

23   been offering all-zirconia crowns under a variety of names, including names with

24   "Brux," "Zir," or variations thereon."  (Dkt. #85 at 8:2-4; *see also* Dkt. #85 at 8:5-

25   9:18)  Keating's supporting "evidence" does not support genericness.

26        First, according to Keating's own brief, more than half of the listed labs do

27   not use "bruxzir" or "bruxer" at all, whether alone or in combination with other

28   words.  These include Assured Dental Lab (Z-Brux), Authentic Dental Lab (Brux),

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1  Barth Dental Lab (Z-Brux), Burbank Dental (Zir-Max), California Dental Arts

2  (ZirFit), CDLLab (ZerisBRUX), Continental Dental (Full Zirconia for Bruxing

3  Patients), Diadem Precision Technology (Diazir), Drake Dental (Zir-Cast),

4  Expertec (Full-Z), GPS Dental Lab (GPS BruxArt), Kastle Mills (ZirCrown),

5  Pittman Dental (ZirCAM All-Zirconia), R-dent Dental Laboratory (R-Brux), Somer

6  Dental Labs (Full Contour Zir), Summers Dental Lab (BruxThetix), Sun Dental

7  Labs (Suntech Full Zirconia), Technics Dental Lab (Tech/ZIR FC), and Zahn

8  Dental (Zirlux).  (Dkt. #85 at 8:5-9:7)  This evidence says nothing about whether

9  "bruxzir" or "bruxer" are or have ever been generic terms.

10      Second, the proffered evidence as to the majority of the remaining labs is not

11  probative of genericness of "bruxzir" or "bruxer" *as of April 2011*, the "crucial date

12  for the determination of genericness." *Yellow Cab*, 419 F.3d at 928.   The proffered

13  evidence, aside from being unauthenticated hearsay,[4] either post-dates April 2011

14  or is undated. *See* Dkt. #91-31 (Advanced Dental Lab (BruxZir), Mar. 2012); Dkt.

15  #91-29 (China Dental Outsourcing (Bruxer All Zirconia), May 2011); Dkt. #91-39

16  (China Dental Outsourcing (All Zirconia for Bruxers), Sept. 2012); Dkt. #93-55

17  (Cosmetic Dentistry of SA (Bruxer Crown), Sept. 2012); Dkt. #93-44 (Infinity

18  Dental Lab (Bruxer Crowns), Sept. 2012); Dkt. #91-32 (Old Dominion Milling

19  Corp. (Bruxzer), Aug. 2012); Dkt. #91-30 & 91-38 (Showcase Dental Lab (Zir-

20  Bruxer), Jan. 2012); Dkt. #93-47 (York Dental Lab (Bruxer), Aug. 2012); Dkt. #91-

21  43 (Dani Dental (Full Zirconia (Bruxer)), undated ); Dkt. #93-56 (Pittman Dental

22  (Bruxer Crown), undated); Dkt #91-42 (Trachsel Dental (All Zirconia Bruxer),

23  undated).  Keating's failure to substantiate that any of these labs were using

24  "bruxzir" or "bruxer" as of or prior to April 2011 renders this evidence worthless

25  for proving that these terms are generic.

26

27  [4] Along with this opposition brief, Glidewell has filed a detailed statement of
objections to Keating's evidence, including the many webpage print-outs offered to

28  establish that "many other dental laboratories have been offering all-zirconia
crowns under a variety of names."  (Dkt. #85 at 8:2-3)

MPA IN OPP. TO DEFENDANT'S MSJ FOR
CANCELLATION OF REGISTERED TRADEMARK
CASE NO. SACV11-01309-DOC(ANx)

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1    Finally, the proffered evidence as to the remaining two labs is insufficient to

2 support summary judgment for Keating. As to Mascola Esthetics (Xtreme Bruxer),

3 Keating has submitted only a prescription form that its expert purportedly pulled

4 from the internet. *See* Dkt. #93 at ¶ 64; Dkt. #93-46. For the reasons stated in

5 Glidewell's concurrently filed statement of evidentiary objections, this "evidence"

6 is inadmissible hearsay that also lacks authentication. Even aside from that

7 problem, it is not probative of when Mascola Esthetics began using "Xtreme

8 Bruxer," for how long it used "Xtreme Bruxer," and whether such use evidences

9 generic use rather than intentional infringement. REDACTED

10

11

12

13    This is not probative of whether Fusion

14 Dental Lab used "bruxer" generically or instead intentionally infringed Glidewell's

15 mark. Likewise, it says nothing about whether *dentists* regarded "bruxzir" or

16 "bruxer" as generic terms for zirconia crowns as of April 2011.

17    **5.**    **That "Brux" and "Zir" May Be Used In the Dental Industry Does**

18        **Not Render "BruxZir" Generic**

19    Keating next argues that "many other companies have been using 'Brux' to

20 refer to dental products for use with bruxers and 'Z' or 'Zir' to refer to dental

21 products associated with zirconia." (Dkt. #85, at 7:19-21) The import of this

22 assertion, even if established with admissible evidence, is unclear. The evidence at

23 most supports Glidewell's argument (set forth below) that the BruxZir mark is

24 suggestive. In any event, the Court must focus the validity inquiry on the

25 trademark as a whole. *Reno Air Racing*, 452 F.3d at 1135. A composite mark may

26 be distinctive even though its components individually are not. *Id.* (citing

27 *California Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1455 (9th Cir.

28 1985)). Put another way, "the combination of generic terms may, in some

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1    instances, result in a distinctive mark." *Advertise.com, Inc. v. AOL Advertising,*
2    *Inc.*, 616 F.3d 974, 978 (9th Cir. 2010).

3        Here, Glidewell's registered trademark is BruxZir, not "brux" or "zir."
4    Keating's infringing trademark is KDZ Bruxer, not "brux" or "zir." Whether
5    "brux" or "zir" alone might be subject to protection, or might be immune from
6    infringement liability, are not at issue. Rather, the issue is whether, as of April
7    2011, dentists understood the word "bruxzir" to refer *not* to only a particular
8    producer's goods, *but rather* to the genus of products comprising such goods. As
9    discussed above, the presumption of validity, taken together with Keating's
10   admissions, the testimony of third-party dentists, the testimony of Glidewell's
11   executives, the testimony of experts, and other documentary evidence – and the
12   absence of any survey evidence indicating genericness – all lead inexorably to the
13   conclusion that BruxZir was not generic as of April 2011 and is not generic now.
14   At a minimum, this evidence creates a genuine issue of material fact that precludes
15   summary judgment for Keating. *Yellow Cab*, 419 F.3d 929-930.

16   **D.**    **The BruxZir Mark Is Suggestive and Therefore Inherently Distinctive**

17       Rather than being generic, the BruxZir mark is suggestive. A suggestive
18   mark is one for which "'a consumer must use imagination or any type of multistage
19   reasoning to understand the mark's significance ... the mark does not *describe* the
20   product's features, but *suggests* them.'" *Zobmondo Enter.*, 602 F.3d at 1114
21   (citation omitted). "[A] mark can be suggestive and still convey information about
22   a product." *Id.* at 1119; *see, e.g.*, 2 McCarthy § 11:72 (listing marks that have been
23   found "suggestive," including "CITIBANK" for an urban bank, "CLASSIC
24   COLA" for a soft drink, "DIAL-A-MATTRESS" for mattress sales, and
25   "FLORIDA TAN" for suntan lotion). Although the line between them can be
26   difficult to draw, the Ninth Circuit has endorsed two "tests" to help determine
27   whether a mark is suggestive or descriptive. Both support suggestiveness here.
28

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

### 1.   The BruxZir Mark Is Suggestive Under the "Imagination" Test

The first, and most commonly-used, test is known as the "imagination" test, which asks whether "'imagination or a mental leap is required in order to reach a conclusion as to the nature of the product being referenced.'" *Zobmondo Enter.*, 602 F.3d at 1115 (citation omitted). The test "does not ask what information about the product *could* be derived from a mark, but rather whether 'a mental leap is *required*' to understand the mark's relationship to the product." *Id.* at 1116. If the mental leap "is not almost instantaneous, this strongly indicates suggestiveness, not direct descriptiveness." *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 911 (9th Cir. 1995). For example, in *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 506 (9th Cir. 2011), the court affirmed a finding that VERICHECK was suggestive, observing that "consumers must separate 'veri' from 'check' and reason that 'veri' is short for verification services.'" *See also Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1150 (9th Cir. 2011) (ACTIVEBATCH suggestive for job scheduling, event monitoring, and task management software); *Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 186 (3d Cir. 2010) (FORSLEAN suggestive for weight loss products containing *coleus forskohlii*); *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 632 (9th Cir. 2005) (SURFVIVOR suggestive for beach-related goods); *Nautilus Group, Inc. v. ICON Health & Fitness, Inc.*, 372 F.3d 1330, 1343 (Fed. Cir. 2004) (BOWFLEX suggestive for exercise equipment).

Here, imagination or a mental leap is required to get from the BruxZir mark to a conclusion about the nature of the product. The mark does not contain the words "crown," "bridge," "caps," "prostheses," or "restoration." It does not even contain the word "dental." The BruxZir mark is a combination of "brux" and "zir." "Brux" suggests that BruxZir brand products are strong and durable, and are suitable for use in dental applications requiring superior strength and durability, such as for treating patients with bruxism. (SAF 24). "Zir" suggests that the

1   products comprise zirconia, a hard and durable material successfully used in dental

2   products. (SAF 25). To understand the mark's relationship to the product, dentists

3   must first separate "brux" from "zir." They must then reason that "brux" suggests

4   strength and possible uses for the product (e.g., treating patients with bruxism).

5   They must also reason that "zir" is short for zirconia. They must then reason that

6   "zir" suggests the product's material. As with the mark considered in *Lahoti*, the

7   BruxZir mark does not describe the product's features or nature, but merely

8   suggests them, requiring multi-step reasoning by the consumer. That it might

9   convey some information about the product does not render it descriptive or

10   preclude it from being suggestive. *Zobmondo Enter.*, 602 F.3d at 1114, 1119.

11       In addition, the fact that a mark cannot be found in dictionaries, and is

12   without literal meaning, supports suggestiveness. *See Zobmondo Enter.*, 602 F.3d

13   at 1116. Here, the Court will search the record in vain for any dictionary defining

14   "bruxzir" or "bruxer" as meaning zirconia dental restoration products. Indeed,

15   multiple medical and dental dictionaries of record provide *no* definition for

16   "bruxzir" or for "bruxer" at all, much less a definition matching Keating's proposed

17   meaning. (SAF 26). "Bruxzir" is a coined word, without literal meaning.

18       Evidence that the accused infringer includes explanatory language with its

19   allegedly infringing mark also supports finding the mark to be suggestive rather

20   than descriptive or generic. *See Zobmondo Enter.*, 602 F.3d at 1120 n.12 (noting

21   that accused infringer's use of explanatory language with its mark "cuts against the

22   [accused infringer's] argument that [the mark] is a well-established, culturally-

23   pervasive concept"). Here, Keating's marketing materials for its KDZ Bruxer

24   product commonly include explanatory information that describes the product's

25   nature and features. For example, Keating's advertisement introducing the product

26   states: "Introducing the All-New KDZ Bruxer. The Best Full-Contour Zirconia

27   Restorations Available." (SAF 27). The advertisement goes on to say that "KDZ

28   Bruxer is the ideal combination of strength and esthetics for your posterior crowns

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1  and bridges." (SAF 28). If the word "bruxer" generically described zirconia

2  crowns and bridges, such descriptions would not be necessary.

### 2. The "Competitors' Needs" Test Supports Suggestiveness

4  The second test, known as the "competitors' needs" test, "focusses on the

5  extent to which a mark is actually needed by competitors to identify their goods or

6  services." *Zobmondo Enter.*, 602 F.3d at 1117 (citation omitted) . "If competitors

7  have a great need to use a mark, the mark is probably descriptive; on the other

8  hand, if 'the suggestion made by the mark is so remote and subtle that it is really

9  not likely to be needed by competitive sellers to describe their goods or services[,]

10  this tends to indicate that the mark is merely suggestive.'" *Id.* Evidence that

11  competitors do not need to use the mark can "strongly favor" suggestiveness. *Id.*

12  Here, competitors do not need to use the term "bruxzir" (or "bruxer") to

13  identify their zirconia crowns. The Frattura declaration (discussed above) describes

14  Showcase Dental as a "direct competitor" of Keating and Glidewell. (SAF 100).

15  The declaration does not say that Showcase needs to use "bruxer" or "bruxzir," and

16  in fact it establishes the opposite by pervasively using "full contour zirconia crown"

17  and "all-zirconia crown," rather than "bruxer crown" or "bruxzir crown," to

18  describe zirconia crown products. (SAF 102). REDACTED

23  Shortly after, Showcase publicly announced its name change: "We have

24  hereby changed the name of our product to reflect the shape and product make-up:

25  'Full Contour Zirconia.'" (SAF 104). Quite evidently, Showcase has no need to

26  use "bruxzir" or "bruxer" *as part of its trademark.*

27  Another example is Drake Precision Laboratory, which advertises its zirconia

28  crown using the mark ZIR-CAST. (SAF 29). Drake use descriptors such as "all-

1  ceramic," "solid zirconia," "high translucency zirconia," "monolithic,"

2  "nonmetallic," etc. (SAF 30). Although Drake notes, as one of several product

3  indications, that the product is "recommended for bruxers and grinders," Drake

4  evidently has no need to use "bruxzir" or "bruxer" *as part of its trademark.*

5       Similarly, Keating's advertising materials show that Keating can, and does,

6  describe its products using a variety of alternative words and phrases such as

7  "dental zirconia," "medical grade zirconia … for posterior single units and

8  bridges," "full contour zirconia," "alternative to full-cast gold," "full-contour

9  zirconia restoration," "for patients who grind or lack preparation space or

10  porcelain," etc. (SAF 31). Like Drake, Keating could also describe its products as

11  being suitable for treating patients with bruxism, among other things. And, like

12  Showcase, Keating could identify its products as "full contour zirconia" crowns.

13  There is no competitive need – at least no legitimate one – for Keating to use the

14  term BruxZir or the confusingly similar variant, KDZ Bruxer, *as its mark.*

15       Moreover, evidence that the mark had never previously been used for the

16  same or similar products before "suggests that competitors do not find the mark

17  useful in describing their products." *Zobmondo Enter.*, 602 F.3d at 1120 (noting

18  that expert's testimony on "lack of [prior] third party use tends to negate the

19  inference … that the mark is widely understood by consumers to refer to [the

20  product at issue]"). Here, prior to Glidewell's introduction of its BruxZir brand

21  products, neither "bruxzir" nor "bruxer" had previously been used for the same or

22  similar products. (SAF 32). This supports suggestiveness.

23  **E.**    **If Descriptive, The BruxZir Mark Has Attained Secondary Meaning**

24       That the BruxZir mark is registered and the PTO did not require any showing

25  of secondary meaning is strong evidence that the mark is distinctive. Additionally,

26  the evidence conclusively establishes that the mark is suggestive. Nevertheless,

27  Keating argues that if the mark is not generic, then it is "merely descriptive and has

28  not acquired secondary meaning." (Dkt. #85 at 19:4-5). Again, the evidence

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

MPA IN OPP. TO DEFENDANT'S MSJ FOR
CANCELLATION OF REGISTERED TRADEMARK
CASE NO. SACV11-01309-DOC(ANx)

1   belies.

2          1.      **The BruxZir Mark Is Suggestive, Not Descriptive**

3          Keating's primary argument in favor of descriptiveness is that the BruxZir

4   mark "identifies the intended user of the product—a bruxer." (Dkt. #85 at 19:9-10)

5   The requisite factual premise for this – that "bruxzir" is necessarily phonetically

6   equivalent to "bruxer" – is disputed. (SAF 105). Beyond that, Keating's legal

7   underpinning is § 1209.03(i) of the Trademark Manual of Examining Procedure

8   (TMEP) and a handful of Trademark Trial and Appeal Board decisions applying

9   that section. (Dkt. #85 at 19:11-20) But although the TMEP may be "instructive,"

10  it is "'not established law'" and it is not binding upon the Court. *In re Sones*, 590

11  F.3d 1282, 1288 (Fed. Cir. 2009). Keating does not cite any authority establishing

12  TMEP § 1209.03(i) as binding law, and it is doubtful that Keating could do so in

13  view of, for example, *Brookfield Comm'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d

14  1036 (9th Cir. 1999). There, the Ninth Circuit considered plaintiff's MOVIEBUFF

15  mark for "computer software providing data and information in the field of the

16  motion picture and television industries," the intended users of which were "movie

17  buffs," i.e., both entertainment industry personnel and "the broader consumer

18  market" of people interested in "information such as movie credits, box office

19  receipts, films in development, film release schedules, entertainment news, and

20  listings of executives, agents, actors, and directors." *Id.* at 1042. The court noted

21  that it "is not descriptive because it does not describe either the software product or

22  its purpose. Instead, it is suggestive … because it requires a mental leap from the

23  mark to the product." *Id.* at 1058.

24          Rather than applying a nonbinding TMEP section, the Court should apply

25  controlling precedent. As the Supreme Court has said, a "merely descriptive" mark

26  "describes the qualities or characteristics of a good or service." *Park 'N Fly*, 469

27  U.S. at 194. According to the Ninth Circuit, a mark is "merely descriptive" if it

28  "'define[s] qualities or characteristics of a product in a straightforward way that

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1  requires no exercise of the imagination to be understood.'" *Zobmondo Enter.*, 602

2  F.3d at 1114 (citation omitted). As discussed above, imagination and multistep

3  reasoning are required to understand the BruxZir mark, rendering it suggestive.

> **2.** **Even if Descriptive, the BruxZir Mark Is Distinctive Because It**
> **Has Attained Secondary Meaning**

6  "[A] merely descriptive mark can become protectable if it has acquired

7  distinctiveness 'as used on or in connection with the applicant's goods in

8  commerce.'" *Zobmondo Enter.*, 602 F.3d at 1113 (quoting 15 U.S.C. § 1052(f)).

9  This acquired distinctiveness is referred to as "secondary meaning." *Id.*

10  "Secondary meaning is used generally to indicate that a mark ... 'has come through

11  use to be uniquely associated with a specific source.'" *Quiksilver*, 466 F.3d at 760

12  (9th Cir. 2006) (citation omitted). It is not required that consumers know the

13  identity of the source; a single but anonymous source will suffice. *E.g.*, *Maljack*

14  *Prods.*, 81 F.3d at 887; *Alphaville Design, Inc. v. Knoll, Inc.*, 627 F. Supp. 2d 1121,

15  1128 (N.D. Cal. 2009); 2 McCarthy § 15:8 (4th ed. 2012). "'The question of

16  secondary meaning is one of fact.'" *Yellow Cab*, 419 F.3d at 929 (citation omitted).

17  Determining whether a descriptive mark has secondary meaning requires

18  consideration of (1) whether actual purchasers of the product bearing the mark

19  associate the mark with the producer; (2) the degree and manner of advertising

20  under the mark; (3) the length and manner of use of the mark; and (4) whether the

21  use of the mark has been exclusive. *Id.* at 930. Additional pertinent factors include

22  the mark holder's amount of sales and number of customers, and intentional

23  copying by the infringer. *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns,*

24  *Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999). All support secondary meaning here.

> **a.** Actual Purchasers Associate the BruxZir Mark With Glidewell

26  Keating points to the absence of "survey evidence or other evidence showing

27  an association of [the] BruxZir mark in the minds of the relevant consumers." (Dkt.

28  #85, at 22:12-14) But the absence of a formal survey is not determinative of

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

secondary meaning, which may be proven by other evidence such as consumer testimony and evidence of extensive advertising. *Committee for Idaho's High Desert*, 92 F.3d at 822; *Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572, 1583 (Fed Cir. 1988). As discussed in Glidewell's MSJ re Validity, Glidewell *has* submitted evidence that actual purchasers associate the BruxZir mark specifically with Glidewell. (Dkt. #82-1 at 20:18-21:20) This supports secondary meaning.

**b.** Glidewell Has Extensively Advertised and Promoted the BruxZir Mark

As also discussed in Glidewell's MSJ re Validity, Glidewell extensively advertised and promoted the BruxZir mark. (Dkt. #82-1 at 21:21-23:22) This includes a multifaceted initial product launch in 2009 and, since then, a consistent and regular campaign to promote the mark and associated products in a wide variety of ways, including via the company's website (www.bruxzir.com) and blog, press releases, patient and doctor education brochures, videos, advertisements in dental publications, direct mailers, email blasts, and trade shows. *Id.* A significant portion of this activity occurred prior to the time that Keating began infringing. By April 2011, Glidewell had already spent approximately REDACTED in direct marketing costs for BruxZir brand crowns. (SAF 106). By the end of March 2011, Glidewell had already attended in excess of 30 trade shows and conventions around the country, at which it consistently and prominently displayed the BruxZir brand, in association with the Glidewell Labs name, on the booth and signage, and in brochures, takeaways, product displays, and demonstrations. (SAF 107). In 2009 and 2010, Glidewell posted on its website a series of videos explaining and illustrating the features and benefits of the BruxZir brand products, and also prominently featuring the BruxZir brand in association with the Glidewell Labs name. (SAF 108). Through April 2011, the BruxZir brand products had attracted substantial third party recognition in the form of, for example, laudatory articles. (SAF 109).

1          Glidewell's extensive promotion of the BruxZir brand products had been

2  very successful even as of April 2011. Glidewell's total sales of BruxZir brand

3  crowns and bridges were approximately REDACTED     for July-December of 2009,

4  and in excess of REDACTED   for 2010. (SAF 110). Total sales of BruxZir brand

5  finished crowns and bridges through April 2011 totaled more than REDACTED

6  (SAF 111). During the period from June 2009 to April 2011, Glidewell sold

7  BruxZir brand crown and bridge products to approximately REDACT customers in

8  total. (SAF 112). A brand recognition study performed by Dentsply – the second

9  largest dental company in the United States – in 2010 indicated that the BruxZir

10  mark had attained a high degree of recognition among dentists and dental labs in

11  the U.S. (SAF 113). As of April 2011, Glidewell's extensive promotion of the

12  BruxZir mark had been successful in cementing in the minds of dentists a strong

13  association between the mark and Glidewell as the source of BruxZir brand dental

14  restoration products. (SAF 55).

15          **c.**      The Length and Manner of Use of the BruxZir Mark Supports

16                  Secondary Meaning

17          Glidewell has consistently used the BruxZir mark for crowns and bridges for

18  over three years, since the launch of the product line in 2009. (SAF 56). As

19  discussed above, Glidewell has extensively promoted the mark in a wide variety of

20  communication channels. (SAF 57). In so doing, Glidewell has ensured that the

21  BruxZir mark is widely promoted in association with the Glidewell Labs name.

22  (SAF 58). This sustained activity has effectively reached the relevant consumers

23  (dentists) and caused them to associate the BruxZir mark with the source of BruxZir

24  products, Glidewell. (SAF 59).

25            **d.**      Glidewell's Exclusive Use of the BruxZir Mark Supports

26                  Secondary Meaning

27          Without citing any evidence, Keating asserts that "[t]he evidence establishes

28  that several third parties have used the terms 'bruxer' and 'bruxzir' in connection

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1  with full zirconia crowns." (Dkt #85 at 24:1-2) Glidewell showed, above, that

2  Keating has failed to prove that any of the entities listed on pages 8 and 9 of its

3  brief were using "bruxer" and "bruxzir" as marks at the relevant time (April 2011).

4  As discussed in Professor Franklyn's declaration, the BruxZir mark does not exist

5  in a crowded field of similar marks. (SAF 60). The authorized labs' use inures to

6  Glidewell's benefit. And, it is Glidewell's policy and practice to actively protect its

7  mark by, for example, sending cease and desist letters to competitors using

8  confusingly similar marks. (SAF 61). Glidewell's exclusive use of the BruxZir

9  mark supports the conclusion that the mark has attained secondary meaning.

10           **e.**    Keating's Intentional Copying Support Secondary Meaning

11           As detailed in Glidewell's concurrently filed Opposition to Defendant

12  Keating Dental Arts, Inc.'s Motion for Summary Judgment of (1) No Infringement

13  of Glidewell's Registered Trademark, (2) No Violation of Section 43(a) of The

14  Lanham Act, and (3) No Unfair Competition Under California Law, Keating

15  intentionally copied Glidewell's BruxZir mark. This supports finding secondary

16  meaning. *Filipino Yellow Pages*, 198 F.3d at 1151.

17                         **III.    CONCLUSION**

18           The evidence discussed above is, at a minimum, sufficient to create a genuine

19  issue of material fact concerning whether the BruxZir mark is generic and, if

20  descriptive, whether it has acquired secondary meaning. The Court should deny

21  Keating's motion for summary judgment cancelling Glidewell's trademark.

22  Dated: November 26, 2012          SNELL & WILMER L.L.P.

23

24                                    By: _Deborah L. Mulgrau for_

25                                    Philip J. Graves
                                       Greer N. Shaw

26                                    Attorneys for Plaintiff
27                                    James R. Glidewell Dental Ceramics, Inc.
                                       dba GLIDEWELL LABORATORIES

28  16186815.6

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

*Glidewell Laboratories v. Keating Dental Arts, Inc.*
**United States District Court, Central, Case No. SACV11-01309-DOC (ANx)**

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2012, I electronically filed the document described as **JAMES R. GLIDEWELL DENTAL CERAMICS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT CANCELLING GLIDEWELL'S TRADEMARK REGISTRATION** with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

David G. Jankowski
Jeffrey L. Van Hoosear
Lynda J Zadra-Symes
Knobbe Martens Olson and Bear LLP
2040 Main Street, 14th Floor
Irvine, CA  92614

**Attorneys for Defendant Keating Dental Arts, Inc.**
Tel:  (949) 760-0404
Fax: (949) 760-9502

Jeffrey.vanhoosear@kmob.com
David.jankowski@kmob.com
Lynda.zadra-symes@kmob.com
litigation@kmob.com

DatedNovember 26, 2012          SNELL & WILMER L.L.P.

By: *s/Philip J. Graves*
Philip J. Graves
Greer N. Shaw

Attorneys for Plaintiff
James R. Glidewell Dental Ceramics, Inc.
dba GLIDEWELL LABORATORIES

16139994.1