Lynda J. Zadra-Symes (SBN 156,511)
Lynda.Zadra-Symes@kmob.com
Jeffrey L. Van Hoosear (SBN 147,751)
Jeffrey.VanHoosear@kmob.com
David G. Jankowski (SBN 205,634)
David.Jankowski@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Defendant/Counter-Plaintiff,
KEATING DENTAL ARTS, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JAMES R. GLIDEWELL DENTAL CERAMICS, INC. dba GLIDEWELL LABORATORIES,<br><br>Plaintiff,<br><br>v.<br><br>KEATING DENTAL ARTS, INC.<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS. | Civil Action No. SACV11-01309-DOC(ANx)<br><br>**KEATING'S OPPOSITION TO GLIDEWELL'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE INFRINGEMENT OF A FEDERALLY REGISTERED MARK (FIRST CAUSE OF ACTION) AND DISMISSAL OF DEFENDANT'S SECOND AFFIRMATIVE DEFENSE AND FIRST COUNTERCLAIM**<br><br>Date: December 17, 2012<br>Time: 8:30 a.m.<br>Location: Courtroom 9D<br><br>Honorable David O. Carter |

# TABLE OF CONTENTS

Page No.

I.  SUMMARY OF ARGUMENT ................................................................ 1

II.  GLIDEWELL FAILS TO ESTABLISH INFRINGEMENT
AS A MATTER OF LAW ................................................................... 2

A.  The BruxZir Mark Is Invalid ................................................. 2

B.  The BruxZir Mark Is Weak At Best ...................................... 2

    1.  Glidewell Fails to Provide Admissible
Probative Evidence that BRUXZIR is a Strong
Mark To Dentists .......................................................... 2

        a.  Evidence Identified During Discovery ................. 2

        b.  Untimely Evidence Cited In Glidewell's
Motion ................................................................... 4

    2.  The BruxZir Mark is Conceptually Weak ..................... 5

    3.  The BruxZir Mark is Commercially Weak .................... 7

        a.  BruxZir is Merely One of a Large Menu
of Crown Options Offered To Dentists
By Dental Labs ..................................................... 7

        b.  Glidewell is One of Many Dental Labs
Presenting BruxZir As A Type of Crown ............ 8

        c.  These Competing "Authorized" Dental
Labs Are Not Monitored Or Controlled
By Glidewell ....................................................... 10

        d.  Glidewell Has Abandoned Its BruxZir
Mark By Naked Licensing The Name To
Its "Authorized" Labs ........................................ 11

        e.  Dentists Use "BruxZir" as a Generic
Reference to a Type of Crown, Namely
an All-Zirconia Crown ....................................... 12

    4.  Summary of the Weakness of Glidewell's Mark ......... 13

C.  The BruxZir And KDZ Bruxer Marks Are Dissimilar ........ 13

D.  Glidewell Has Provided No Evidence Of Actual
Confusion ............................................................................. 16

<u>TABLE OF CONTENTS</u>
(continued)

<u>Page No.</u>

      1.     Glidewell Provides No Expert Reports or Surveys To Establish A Likelihood of Confusion ............................................................ 17

      2.     Ms. Fallon Provides No Admissible Evidence of Confusion .................................................. 17

           a.     Glidewell's Presentation of Ms. Fallon During Discovery ........................................ 17

           b.     Glidewell's "New" Presentation of Ms. Fallon .................................................... 19

           c.     Glidewell Is Bound By Its Discovery Responses .................................................. 20

           d.     Ms. Fallon Is Not Evidence of Trademark Confusion ................................................. 20

      3.     Glidewell Mischaracterizes Keating's Prescription Forms And Internal Work Orders As Evidence of Actual Confusion ......................................... 21

   E.     Glidewell Fails To Properly Account For Dentists' Degree Of Care ................................................. 23

   F.     Glidewell Wrongly Infers Bad Intent By Keating ......................... 24

   G.     The Remaining Factors Do Not Establish A Likelihood of Confusion ................................................ 25

III.    CONCLUSION ........................................................ 25

## TABLE OF AUTHORITIES

Page No(s).

*Apple Computer, Inc. v. Formula Int'l, Inc.*,
    725 F.2d 521 (9th Cir. 1984) ............................................................ 15

*Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*,
    289 F.3d 589 (9th Cir. 2002) ..................................................... 11, 12

*Cairns v. Franklin Mint Co.*,
    24 F. Supp. 2d 1013 (C.D. Cal. 1998) ...................................... 7, 17

*Chesebrough-Pond's, Inc. v. Faberge, Inc.*,
    666 F.2d 393 (9th Cir. 1982) ............................................................ 25

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
    251 F.3d 1252 (9th Cir. 2001) ........................................................... 5

*Cohn v. Petsmart, Inc.*,
    281 F.3d 837 (9th Cir. 2002) ............................................................ 14

*Conversive, Inc. v. Conversagent, Inc.*,
    433 F. Supp. 2d 1079 (C.D. Cal. 2006) ........................................ 16

*Echo Drain v. Newsted*,
    307 F. Supp. 2d 1116 (C.D. Cal. 2003) .................................. 21, 22

*Japan Telecom, Inc. v. Japan Telecom Am. Inc.*,
    287 F.3d 866 (9th Cir. 2002) ............................................................ 20

*M2 Software, Inc. v. Madacy Entertainment*,
    421 F.3d 1073 (9th Cir. 2005) ......................................................... 24

*Moore Business Forms, Inc. v. Ryu*,
    960 F.2d 486, 489 (5th Cir. 1992) ................................................. 12

*Moose Creek, Inc. v. Abercrombie and Fitch Co.*,
    331 F.Supp. 2d 1214 (C.D. Cal. 2004) ........................................ 14

*Norm Thompson Outfitters, Inc. v. General Motors Corp.*,
    448 F.2d 1293 (9th Cir. 1971) ......................................................... 14

TABLE OF AUTHORITIES
(continued)

Page No(s).

*Playboy Enters. v. Netscape Communs. Corp.*,
    55 F. Supp. 2d 1070 (C.D. Cal. 1999) .................................................... 7, 17

*Pump, Inc. v. Collins Management*, Inc., 746 F. Supp. 1159, 1170
    (D. Mass. 1990) ................................................................................. 21

*Reno Air Racing Ass'n. v. McCord*,
    452 F.3d 1126 (9th Cir. 2006) .......................................................... 14

*Self-Insurance Inst. of America, Inc. v. Software & Information*
    *Indus. Ass'n*,
    208 F. Supp. 2d 1058 (C.D. Cal. 2000) ............................................ 15

*SG Services Inc. v. God's Girls Inc.*,
    2007 U.S. Dist. LEXIS 61970 (C.D. Cal. 2007) ................................ 15

*Stanfield v. Osborne Indus., Inc.*,
    52 F.3d 867 (10th Cir. 1995) ............................................................ 12

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) ........................................................ 25

*Walter v. Mattel, Inc.*,
    210 F.3d 1108 (9th Cir. 2000) .......................................................... 14

OTHER AUTHORITIES

McCarthy on Trademarks and Unfair Competition, 4th
    Edition, § 18:48 ............................................................................... 11

McCarthy on Trademarks and Unfair Competition, 4th
    Edition, § 23:41 ............................................................................... 13

McCarthy on Trademarks and Unfair Competition, 4th
    Edition, § 23:47 ............................................................................... 14

Defendant Keating Dental Arts, Inc. ("Keating") hereby submits its opposition to Plaintiff James R. Glidewell Dental Ceramics, Inc. dba Glidewell Laboratories' ("Glidewell") Motion for Partial Summary Judgment re Infringement of Federally Registered Trademark (First Cause of Action) and Dismissal of Defendant's Second Affirmative Defense and Counterclaim.

This brief relies upon the supporting Declaration of Robert Brandon ("Brandon ¶ _") and 2nd Declaration of David G. Jankowski ("2nd Jankowski ¶ _") filed concurrently herewith.  It further relies upon the declarations and exhibits filed on Monday, November 19, 2012 in connection with Keating's Motions for Summary Judgment.

## I.  **SUMMARY OF ARGUMENT**

Glidewell fails to establish Keating's infringement of the mark "BruxZir" as a matter of law.  Consideration of the Ninth Circuit's *Sleekcraft* factors shows that Glidewell has failed to establish that the most important factors weigh in its favor.  (1) Glidewell's mark provides weak trademark protection to the extent it provides any at all.  (2) The parties' marks considered in their entirety as used in commerce are distinct under the "sight," "sound," and "meaning" test.  (3) Glidewell has no admissible evidence of actual confusion between the marks.  (4) Dentists use a discerning standard of care for the products at issue.  (5) Keating chose the mark for its all-zirconia crown for bruxers in good faith after consulting with trademark counsel.  The final *Sleekcraft* factor is irrelevant in this case.  Only two factors favor Glidewell: similarity of the goods and marketing channels used.  These two factors alone cannot support a finding of infringement as a matter of law.

During discovery Glidewell made no effort to develop survey information on its mark or confusion relating thereto.  In a tacit recognition of this critical omission, Glidewell's motion relies heavily on inadmissible hearsay statements and untimely expert opinion developed after the end of discovery.  Most

-1-

egregiously, Glidewell's presentation of its only fact witness with purported knowledge of an incident of actual confusion completely changed after discovery to incorporate new details and changed circumstances calculated to favor Glidewell's motion.  All of this late information and changed presentation of facts is inadmissible, and Keating is filing evidentiary objections concurrently with this opposition.

## II.  GLIDEWELL FAILS TO ESTABLISH INFRINGEMENT AS A MATTER OF LAW

### A.  The BruxZir Mark Is Invalid

Keating has presented undisputed facts demonstrating that the BruxZir mark is invalid as a matter of law.  (*See* Keating's Mtn. to Cancel Glidewell's Registration (Docket Nos. 83, 85, 87.)

### B.  The BruxZir Mark Is Weak At Best

Glidewell argues that its mark is conceptually strong and commercially strong.  (Memo. at 7–12.)  It is wrong on both.

#### 1.  Glidewell Fails to Provide Admissible Probative Evidence that BRUXZIR is a Strong Mark To Dentists

Glidewell's motion relies critically on its argument that BRUXZIR is a strong mark.  Yet it fails to provide the Court with admissible probative evidence of how the relevant consumer population, dentists, views that term.

##### a.  Evidence Identified During Discovery

During discovery, Glidewell informed Keating that it intended to rely upon the following evidence to support the alleged strength of its mark: (1) testimony from two Glidewell employees (Rudy Ramirez, General Manager of Fixed Prosthodontics, and Dr. DiTolla, in-house dentist; (2) less than two dozen documents referencing the mark, many authored by Glidewell, and (3) an email from third party Catherine Bonser to Jim Shuck (Glidewell's V.P. of Marketing) regarding brand research that included a BruxZir brand (App.Evid.

Ex. 6).[1]  (*See* 2nd Jankowski, Ex. 139 (Glidewell's Initial Disclosures) at 1–4.) This evidence fails to show strength of the BRUXZIR mark.

First, the testimony of Mr. Ramirez and Dr. DiTolla are not probative of the strength of the mark.  As representatives of the plaintiff, their testimony is not objective.  Their testimony also relies extensively on inadmissible hearsay regarding alleged statements of third party dentists.  Even if the hearsay statements are considered—and they should not be—those statements are not probative of the understanding of dentists generally because the "sampling" of dentists suffers from a selection bias.  Mr. Ramirez discusses conversations with dentists during tours of Glidewell's facility.  (App.Evid., Ex. H ¶¶ 7–9.)  Dr. DiTolla discusses communications with dentists during tours of Glidewell's facility, in connection with articles appearing in Glidewell's publication *Chairside*, and in connection with videos and lectures during which he promotes Glidewell's products.  (App.Evid., Ex. I ¶¶ 4–11.)  These are not the proper circumstances, or the proper audience, for an objective survey probative of the strength of the mark among dentists generally.

Second, Glidewell cannot rely upon Ms. Bonser or her "brand research." Glidewell did not identify Ms. Bonser during discovery as a witness in this case, and it failed to produce testimony or documentation of her alleged brand research.  The only document produced during discovery is a one-page email purportedly authored by Ms. Bonser that, by itself, is inadmissible hearsay. (App.Evid., Ex. 6.) Keating served subpoenas seeking a deposition of Ms. Bonser and documents from her employer regarding the alleged brand research. (2nd Jankowski, Exs. 142 & 143.)  Her employer produced no documents and notified Keating that Ms. Bonser would not be appearing to testify. (*Id.*, Ex. 144.)

---

[1] Documents within the "Appendix of Evidence" filed concurrently with Glidewell's motion are cited to herein as "App.Evid., Ex. __."

Notably, during discovery Glidewell <u>failed</u> to identify: (1) any **third party dentists** to testify regarding their understanding of the mark; (2) any **survey data** on third party dentists' understanding of the mark; or (3) any **expert witnesses** to testify about survey data on dentists' understanding of the mark.

### b.   Untimely Evidence Cited In Glidewell's Motion

In a tacit admission of the inadequacy of its case at the close of discovery, Glidewell seeks to rely on a veritable flood of untimely evidence developed by its new litigation counsel.  This includes:

- Seven declarations from dentist/customers of Glidewell first noticed by Glidewell as witnesses in this case **twelve minutes before Midnight on Discovery Cutoff, October 29, 2012** (Dr. Doneff; Dr. Newman; Dr. Cohen; Dr. Luke; Dr. Bell; Dr. Toca; Dr. Michiels (App.Evid. Exs. A–F & Q)) (*see* 2nd Jankowski, Ex. 146);

- Expert opinion from Glidewell's in-house dentist, Dr. DiTolla, notice of which was received by Keating **nine minutes before Midnight on Discovery Cutoff, October 29, 2012** (*id*., Ex. 147); and

- Three expert reports received by Keating **seven minutes before Midnight on Discovery Cutoff, October 29, 2012** (Franklyn rebuttal to Boatright; Franklyn rebuttal to Eggleston; Goldstein report (*id*., Ex. 148).

For many reasons the Court should not rely on any of this untimely evidence.  The dentists/declarants are long-time Glidewell customers testifying about experiences in the past.  To the extent Glidewell wanted to rely on these witnesses, it could and should have identified them long ago.  Because of their untimely disclosure, Keating had no opportunity to depose these witnesses.  The statements of the dentists/declarants are also inadmissible to the extent they rely on hearsay statements of other dentists.  The statements of the dentists/declarants are also not probative of the understanding of dentists generally,

because this "sampling" of dentists who are Glidewell customers suffers from a selection bias.

Regarding expert disclosures, the Court set forth a schedule for the exchange of expert reports, with opening reports due on September 15, 2012 and rebuttal reports due on October 15, 2012.  Professor Franklyn submitted an opening expert report on September 15, 2012.  He chose not to submit a rebuttal report on October 15, 2012.  Glidewell and its new litigation counsel now seek to rely on expert opinions provided long after these Court-ordered deadlines.  To the extent Glidewell wanted to rely upon Professor Franklyn, Dr. Goldstein, or Dr. DiTolla as experts, it needed to submit timely reports by the deadlines set by the Court.  Because of their untimely disclosure, Keating had no opportunity to depose these witnesses on their expert disclosures.  Furthermore, opinions set forth in these untimely reports regarding the understanding of dentists are not probative because they fail to follow rigorous standards required for admissible survey data. *See*, *e.g.*, *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263, (9th Cir. 2001).

## 2.    The BruxZir Mark is Conceptually Weak

Glidewell argues that the BruxZir mark is conceptually strong because it is "suggestive" of an all-zirconia crown for bruxers, requiring imagination or multistage reasoning.  (Memo. at 8.)  Yet Glidewell cites to no admissible probative evidence that dentists viewing the mark find it suggestive.  Glidewell cites to SUF 13, which includes statements from (a) Mr. Shuck (Glidewell's V.P. of Marketing; a non-dentist), (b) Dr. Goldstein (untimely expert opinion); (c) Prof. Franklyn (a non-dentist providing untimely expert opinion); and (d) Mr. Ramirez (Glidewell's General Manager, a non-dentist).  With the exception of Dr. Goldstein, the statements above are not probative because they do not address the perspective of the relevant consumer population, dentists.

/ / /

Even if Dr. Goldstein's untimely expert opinion is considered (which it should not be), it does not support Glidewell's position.  Dr. Goldstein states that "dentists would be able to identify the material in the product—zirconia— through the use of "Zir" as the second half of the brand name BruxZir."  (App. Evid., Ex. O ¶ 17.)  Dr. Goldstein thus agrees that dentists would immediately understand that "Zir" means zirconia, without imagination or multistage reasoning.  Dr. Goldstein further admits that the presence of "Brux" will cause dentists to think of bruxism.  (*Id.*)  Dr. Goldstein does not state that imagination or multistage reasoning is needed for dentists to think of bruxers, because no such reasoning is necessary.  Indeed, Glidewell's in-house dentist, Dr. DiTolla, admits that "bruxer" is used throughout dentistry to refer to someone with bruxism. (Jankowski, Ex. 4 at 187:13–16.)

Glidewell further argues that BruxZir is suggestive because, as a factual matter, its all-zirconia crowns may be used for applications other than bruxer patients. (Memo. at 8; SUF.)  This argument is flawed.  What matters is what is in the mind of the customer population.  The name "tennis shoes" is generic because customers associate the name with a type of product; it is irrelevant that tennis shoes may be used for activities other than tennis.

Because of their education and training, dentists immediately recognize the descriptive information in "Brux" and "Zir" without the need for imagination or multistage reasoning.  (*See* Jacquinot ¶ 11; Myers ¶ 11; Stephens ¶ 12; Sweet ¶ 8.)  Tellingly, even the untimely declarations of Glidewell's friendly dentist-customers do not dispute this fact.  (App.Evid., Exs. A–F & Q.)

Finally, in assessing the conceptual strength of its mark, Glidewell wholly disregards that BruxZir is pronounced the same as "bruxer."  Phonetic equivalence is evidence for conceptual weakness, even genericness, because a dentist hearing the name "BruxZir" spoken is likely to conceptualize the well known dental word "bruxer."

### 3.      The BruxZir Mark is Commercially Weak

Glidewell argues that its mark is commercially strong due to its extensive marketing to dentists across the U.S.  (Memo. at 8–12.)  Once again, Glidewell misses the point.  Effort to promote a mark, by itself, does not indicate strength of a mark.  What matters is ***how the relevant customer population views the mark***.  A marketing campaign can be substantial without achieving success in getting the relevant customers viewing the mark as a source of goods.  Such is the case here.

The most probative evidence that Glidewell could rely upon to show the commercial strength of its mark would be a rigorous objective survey of dentists across the U.S.  Glidewell chose not to develop this type of evidence.   For an enormous company like Glidewell, the lack of a survey, by itself, may be used to draw an inference that the results of such a survey would have been unfavorable to Glidewell.  *Playboy Enters. v. Netscape Communs. Corp.*, 55 F. Supp. 2d 1070, 1084 (C.D. Cal. 1999); *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1041–42 (C.D. Cal. 1998).

Documents from Glidewell and other dental labs reveal that the term BruxZir is used in a manner that suggests a ***type of product*** (an all-zirconia dental restoration) rather than a source of goods.

### a.      BruxZir is Merely One of a Large Menu of Crown Options Offered To Dentists By Dental Labs

Dental labs provide dentists with dozens of different crown options for them to consider for use with their patients.  This is true for Glidewell, Keating, and most if not all of the other thousands of dental labs in the U.S.   The documents that dentists receive from dental labs identify BruxZir crowns as a type of crown they may order.

Here is a presentation of dental restoration that Glidewell offers to its dentists on its prescription form:

**PORCELAIN FUSED TO METAL**

❑ Non-Precious˟      ❑ Noble      ❑ WHN
❑ Captek YHN      ❑ OcclusalGold YHN

**FULL-CAST RESTORATIONS**

❑ Noble-Cast 45 YN (40% Au)      ❑ Non-Precious
❑ Noble-Cast 60YHN (57.5% Au)˟      ❑ White Noble
❑ Noble-Cast 67 YHN (64% Au)      ❑ WHN (45% Au)
❑ OcclusalGold YHN (73.8% Au)      ❑ Post & Core
❑ JRVT YHN (77% Au)

**ZIRCONIA RESTORATIONS**

❑ BruxZir Solid Zirconia      ❑ Prismatik CZ˟
❑ Lava      ❑ NobelProcera Zirconia

**ALL-CERAMIC RESTORATIONS**

❑ IPS e.max CAD˟ (Posterior)   ❑ IPS e.max veneer
❑ IPS e.max Press˟ (Anterior)
❑ Vivaneers No-Prep Veneers˟ ❑ IPS Empress

(2nd Jankowski, Ex. 138.)  Porcelain-fused-to-metal ("PFM") crowns are very popular with dentists, and Glidewell identifies different types of PFM crowns for its customers at the top of its listing.  Full-cast crowns, such as gold, appear next in Glidewell's listing. Glidewell presents its Zirconia restorations next, with a few different crown types: BruxZir Solid Zirconia, Prismatik CZ, Lava, and NovelProcera Zirconia.  Nowhere on this prescription form does Glidewell use a ® or otherwise indicate that "BruxZir" is a trademark.

      **b.**    <u>**Glidewell is One of Many Dental Labs Presenting**</u>
            <u>**BruxZir As A Type of Crown**</u>

In addition to Glidewell, about 180 dental labs across the U.S. offer their dentist-customers BruxZir type crowns. (Jankowski, Ex. 4 at 211:18–21.)  These labs are owned independently of Glidewell and they compete with Glidewell (and Keating) to win the business of dentists.   Glidewell refers to these competitors as "authorized" BruxZir laboratories.  (*Id*., Ex. 6 at 141:12–22.)  To become "authorized," a dental   lab buys ceramic zirconia from Glidewell to use in making its all-zirconia dental restorations. (*Id*., Ex. 5 at 58:2–59:7.)  In effect, Glidewell uses "Authorized Laboratory" as a synonym for "zirconia customer."

These labs dental purchase ceramic zirconia from Glidewell in the form of "milling blanks." (*Id.*, Ex. 5 at 93:2–13.)  The labs receive the milling blanks and process them to manufacture all-zirconia crowns for their dentist customers. (*Id.*, Ex. 5 at 44:22–45:5.)  These 180 labs promote "BruxZir" crowns as a ***type of crown*** that they offer.  (*See* Eggleston, Exs. 136 & 137 (showing web pages and Rx forms for the 180 labs.)

By way of example, labs provide Rx forms with check boxes dentists may use to select different crown types, one of which is a type labeled as "BruxZir," "BRUXZIR," or "Bruxzir" (*see* Eggleston, Exs. 136 & 137):

- Apex Dental Milling (KDA-002867 (box marked "BruxZir"));
- Artiste Dental Lab (KDA-002877 (box marked "BRUXZIR"));
- BDL Prosthetics (KDA-002885 (box marked "BruxZir");
- Continental Dental (KDA-002917 (box marked "BRUXZIR"));
- Eliason Dental Lab (KDA-002990 (box marked "BruxZir"));
- Ideal Dental Lab (KDA-003021 (box marked "BruxZir"));
- Midtown Dental Lab (KDA-003155 (box marked "Bruxzir")); and
- Thoele Dental Lab (KDA-003269 (box marked "BruxZir")).

Other labs, like Glidewell itself, provide Rx forms that list the crown type as BruxZir, together with further explanation that the crown-type is an all-zirconia crown (*see* Eggleston, Exs. 136 & 137):

- Beverly Hills Dental Studios (KDA-002888 ("Full Zirconia"));
- G&H Dental Arts (KDA-003002 ("Zirconia"));
- Gnathodontics (KDA-003004 ("solid zirconia"));
- Green Dental Labs (KDA-003011 ("(Total Zirconia Crown)"));
- Las Vegas Dental Studio (KDA-003140 ("Monolithic Zirconia");
- Natural Arts Dental Labs (KDA-003167 ("100% Z")); and
- Trachsel Dental Studio (KDA-003275 ("All Zirconia")).

/ / /

The above dental labs are not using the term "BruxZir" as a brand of all-zirconia crown.  In addition to BruxZir crowns, they also offer the other common crown types, such as gold crowns and PFM crowns.

Many dental labs also provide their dentist-customers with descriptions of BruxZir that further reinforce the understanding that BruxZir is a type of crown (*see* Eggleston, Exs. 136 & 137):

- Bigler Dental Ceramics (KDA-004796 ("BruxZir Solid Zirconia is a full contoured zirconia crown or bridge with no porcelain overlay. . . . Once sintered, the nearly 'bulletproof' BruxZir crown is stained and glazed to the finished product."));

- Dental Arts Labs (KDA-002942 ("BruxZir Solid Zirconia is a full contoured zirconia restoration with no porcelain overlay."));

- MobileTek Dental Labs (KDA-003161 ("BruxZir Solid Zirconia is indicated for crowns, bridges, implants, inlays and onlays.  It is an esthetic alternative to PFM metal occlusal/lingual or full-cast restorations."));

- Scrimpshire Dental Studio (KDA-003237 ("Solid zirconia crowns and bridges, milled to full contour using the latest CADCAM technology, Bruxzir restorations provide a precision fit. . . .")); and

- Wornson Polzin Dental Lab (KDA-003291 ("BruxZir is a full contoured zirconia crown or bridge with no porcelain overlay.")).

These dental labs are not using the term "BruxZir" as a brand and generally do not use a ® symbol on the term to indicate it is a trademark.

c.  **These Competing "Authorized" Dental Labs Are Not Monitored Or Controlled By Glidewell**

Glidewell's Sales Manager for Glidewell Direct, Mr. Bartolo, is responsible for managing Glidewell's relationship with the "authorized" labs. (Jankowski, Ex. 5 at 46:3–47:7, 52:20–53:15, 59:12–60:1.)   Mr. Bartolo testified that there are no written contracts between Glidewell and its authorized labs, and that Glidewell does not inspect the premises of their facilities.  (*Id*. at

-10-

63:16–19.)  He explained that the key to become an authorized lab is to buy Glidewell's zirconia milling blanks.  (*Id*. at 58–59; 98–99.)  Glidewell does not review samples of finished BruxZir crowns unless asked to do so by the labs, and that "we don't have a monitoring system."  (*Id*. at 64.)  Authorized labs do not need to achieve any particular level of quality to become or remain an authorized lab.  (*Id*. at 64–65.)  Mr. Bartolo does not recall a lab being removed from the list of authorized labs for any reason other than for a failure to continue its purchasing of zirconia blanks from Glidewell.  (*Id*. at 60–61.)  Authorized labs are not required to provide Glidewell with data on product defects or product returns.  (*Id*. at 69.)

Glidewell's failure to control the quality of BruxZir crowns made by its authorized laboratories stands in stark contrast to the demanding quality control it demands from its own business operations for making BruxZir crowns. Glidewell's Director of R&D and Education, Mr. Friebauer, testified that to ensure crowns were high quality new hires at Glidewell received six months of training with models before working on production crowns. (Mangum, Ex. 52 at 19–21.)  Mr. Friebauer improved the educational program so new hires could be trained in three months.  (*Id*. at 34–35.)   Regarding BruxZir crowns, Mr. Friebauer stated, "Quality control is always there.  There's nothing going out without quality control.  That is a must have."  (*Id*. at 54.)

### d. Glidewell Has Abandoned Its BruxZir Mark By Naked Licensing The Name To Its "Authorized" Labs

"Naked licensing" occurs when the licensor "fails to exercise adequate quality control over the licensee." *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc*., 289 F.3d 589, 596 (9th Cir. 2002).  Naked licensing may result in a trademark's ceasing to function as a symbol of quality and a controlled source. *Id*. (citing MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, 4TH EDITION § 18:48).  Naked licensing is "inherently deceptive and constitutes

abandonment of any rights to the trademark by the licensor." *Barcamerica 289 F.3d* at 598. "Consequently, where the licensor fails to exercise adequate quality control over the licensee, 'a court may find that the trademark owner has abandoned the trademark, in which case the owner would be estopped from asserting rights to the trademark.' " *Id.* at 596 (quoting *Moore Business Forms, Inc. v. Ryu*, 960 F.2d 486, 489 (5th Cir. 1992)).

Here, Glidewell's failure to control or monitor the quality of the all-zirconia crowns sold by its authorized labs under the BruxZir mark is a clear case of naked licensing.

The absence of an agreement between Glidewell and the other labs with provisions restricting or monitoring the quality of goods or services produced under the BruxZir trademark supports a finding of naked licensing. *Id.* at 597; *see also Stanfield v. Osborne Indus., Inc.*, 52 F.3d 867, 871 (10th Cir. 1995) (granting summary judgment where license agreement lacked right to inspect or supervise licensee's operations and gave the licensee sole discretion to design the trademark).  Absent an express contract right to inspect and supervise a licensee's operations, courts require that the licensor demonstrate ***actual control*** through inspection or supervision. *See Stanfield*, 52 F.3d at 871 ("The absence of an express contractual right of control does not necessarily result in abandonment of a mark, as long as the licensor in fact exercised sufficient control over its licensee.").  Here, based on the testimony of Glidewell's witnesses, Glidewell exerts no such control.

e.    **Dentists Use "BruxZir" as a Generic Reference to a Type of Crown, Namely an All-Zirconia Crown**

Keating has submitted an expert report from (Eggleston, Ex. 65) and declarations from thirteen dentists that have written "BruxZir," or variations thereof on prescription forms as a generic reference to an all-zirconia crown. (*See* Belton, Brady, Murphy, Nussear, Scott, Tobin ¶¶ 9-11; Campbell,

-12-

Colleran, Richardson, Stephens ¶¶ 10-12; Jacquinot, Myers, Sweet ¶¶ 9-10.) Keating has also submitted a declaration from a dental lab unaffiliated with Glidewell or Keating, Showcase Dental Laboratory, that also receives (and fills) orders from dentist-customers who write "BruxZir" on prescription forms as a generic reference to an all-zirconia crown. (*See* Frattura ¶¶ 6–9&18.)

### 4. <u>Summary of the Weakness of Glidewell's Mark</u>

Glidewell has failed to provide probative admissible evidence that dentists recognize BRUXZIR as a trademark, much less as a strong one. Conceptually, the mark is weak at best because it immediately conveys to dentists a description of the product: an all-zirconia crown for bruxers, i.e., a bruxer crown.   Commercially, Glidewell and many other dental labs use the word BruxZir to convey ***what*** the product is, rather than ***who*** is the source of the product.   Keating has provided substantial evidence that dentists understand the term as a reference to a type of crown, rather than as a source.   Accordingly, Glidewell has failed to show that this *Sleekcraft* factor weighs in its favor.

## C.   <u>The BruxZir And KDZ Bruxer Marks Are Dissimilar</u>

Glidewell argues that the "similarity of the marks" factor weighs strongly in favor of a likelihood of confusion because of (1) the great strength of Glidewell's mark, and (2) the great similarity of the parties' marks, when assessed using "sight" and "meaning." (Memo. at 13-14.)  Glidewell's analysis is flawed on both the law and the facts.

First, as discussed at length above, Glidewell has not made a showing that its mark is strong, and accordingly it is not entitled to sweep in great latitude of dissimilar marks as likely to result in confusion.

Second, Glidewell's analysis is flawed because it fails to properly treat Keating's mark ***in its entirety*** as used in commerce, in violation of the anti-dissection rule.  MCCARTHY § 23:41.  "[A] court does not consider the similarity of the marks in the abstract, but rather in light of the way the marks are

encountered in the marketplace and the circumstances surrounding the purchase." *Reno Air Racing Ass'n. v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006); *Moose Creek, Inc. v. Abercrombie & Fitch Co*., 331 F. Supp. 2d 1214, 1227 (C.D. Cal. 2004). Keating's mark includes a first part ("KDZ") that provides an express indicator of source (Keating Dental Zirconia) and a second part (Bruxer) that provides an express description of the goods associated with the mark (a crown for bruxers).

Regarding the "KDZ" portion of Keating's mark, Glidewell argues that it serves no source-identifying function. (Memo. at 14–15.) It provides no evidence to support this argument, and there is none. The undisputed evidence, including evidence submitted by Glidewell with its motion, shows that Keating has since at least 2006 continuously used KDZ as a house mark for a family of zirconia-based products. (App. Evid., Ex. 76 (showing KDZ family ads reviewed by Dr. DiTolla).) Indeed, Keating began using KDZ *before* Glidewell began using BruxZir. (Docket 88-1 ¶¶ 19 & 25.) Keating's KDZ house mark greatly reduces, if not eliminates entirely, any likelihood of confusion. *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842 (9th Cir. 2002) (no confusion where distinctive house mark displayed and accused mark used as "tagline"); *Walter v. Mattel, Inc*., 210 F.3d 1108, 1109 (9th Cir. 2000) (no confusion in light of dissimilarity between products and defendant prominently displayed house mark); *Norm Thompson Outfitters, Inc. v. General Motors Corp*., 448 F.2d 1293, 1298 (9th Cir. 1971) (likelihood of confusion mitigated where existence of house mark accompanied the slogan at issue); *see also* MCCARTHY § 23:47 (existence of a house mark "has the potential to reduce or eliminate likelihood of confusion.").

Regarding the "Bruxer" portion of Keating's mark, the likelihood of confusion is greatly reduced because Keating is using the proper spelling of a term well known to dentists that Keating—and others—are allowed to use to

-14-

describe the nature and intended user of their products.  In this regard, Keating has provided extensive evidence of third party dental labs describing their all-zirconia crowns as a good choice for bruxers.  (Docket 87-1 ¶¶ 40–46, 61–62.) In its pending trademark application for its "KDZ Bruxer" mark, Keating expressly disclaimed the word "Bruxer" because it is used to describe a characteristic of the product.  (Boatright, Ex. A at ¶¶ 40, 45, 53, 60; Ex. C.)

Glidewell further fails to consider Keating's mark in its entirety by wholly ignoring the distinctive and prominent "oval" that surrounds the words KDZ and Bruxer/Ultra/Max in Keating's KDZ family of marks.  *See Self-Insurance Inst. of America, Inc. v. Software & Information Indus. Ass'n*, 208 F. Supp. 2d 1058, 1071 (C.D. Cal. 2000) (parties' "SIIA" marks look dissimilar when considered in their entirety due to visual elements around the marks); *SG Services Inc. v. God's Girls Inc.*, CV 06-989 AHM (CTx), 2007 U.S. Dist. LEXIS 61970 at *16 (C.D. Cal. 2007) (marks dissimilar in part because plaintiff's mark features an image of a woman's head, while defendant's logo has no bodily image).

While Glidewell argues that court cases are "legion" in which similar marks share only a suffix (Memo. at 16), it cites to only two such cases, each of which is readily distinguishable.  In *Apple Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521 (9th Cir. 1984), the Ninth Circuit held that the district court did not err in granting a preliminary injunction to prohibit the defendant from copying or distributing computer programs with copyrights registered to plaintiff Apple Computer and from using the trademark "Pineapple" on its computer programs. *Id*. at 526.  The defendant argued that the trial court abused its discretion on the trademark issue by failing to consider the eight *Sleekcraft* factors. *Id*.  The Ninth Circuit disagreed due to the early stage of the proceeding, limiting its appellate review to whether the trial court applied the proper legal standard to the entering of the injunction. *Id*.   This case is also readily

-15-

distinguishable because the word "Apple" applied to computers is **arbitrary**, and thus is afforded extremely strong trademark protection.  Here, the shared word "Bruxer" is generic, or at least highly descriptive, of the goods associated with the mark, and thus is afforded little trademark protection, if any.

In *Conversive, Inc. v. Conversagent, Inc*., 433 F. Supp. 2d 1079, 1094 (C.D. Cal. 2006), the district court granted summary judgment of trademark infringement as a matter of law.  The district court found that the marks CONVERSAGENT and CONVERSIVE AGENT weighed in favor of a likelihood of confusion, noting the phonetic and visual similarity of the marks, including that "both contain the elements 'convers' and 'agent' in the same order." *Id*. at 1091.  This case is readily distinguishable from the present case for many reasons, including that (1) the start of defendant's mark is identical to plaintiff's mark ("convers"); (2) defendant's mark appears similar to plaintiff's mark **when considered in its entirety**; (not so for Keating's mark considered in its entirety); (3) defendant's mark does not include a house mark (like Keating's "KDZ"); and (4) defendant's mark does not include other distinguishing visual elements (like Keating's distinctive oval).

Glidewell has failed to show that this *Sleekcraft* factor weighs in its favor.

**D.**   **Glidewell Has Provided No Evidence Of Actual Confusion**

Glidewell argues that there is "pervasive" evidence of actual confusion from both parties' files, including "at least 87 instances" from Keating's own files. (Memo. at 17.)  Glidewell is wrong, relying on gross mischaracterizations of Keating's business records and witnesses and, from its own files, relying on a "smoking gun" document never produced during discovery and a changed story by the employee the purportedly authored the document.

More specifically, Glidewell argues it has two distinct kinds of evidence demonstrating "actual confusion" between the parties' marks. First, it relies on an exchange of communications between Nicole Fallon, a Glidewell employee

-16-

in Orange County, California, and a dental office three thousand miles away in Florida, associated with a Dr. Jade Le, a customer of both Glidewell and Keating.  Second, it relies on a number of prescription forms (and associated internal work orders) from Keating's business records that show Keating's dentist-customers writing "BruxZir," "Bruxir" or variations thereof, when ordering all-zirconia crowns.  Under a proper review of the admissible record, there is no evidence of actual confusion between the parties' marks.

### 1.   Glidewell Provides No Expert Reports or Surveys To Establish A Likelihood of Confusion

Glidewell commissioned no proper surveys of dentists to establish a likelihood of confusion.  The absence of survey evidence itself may be used to infer that the results of the survey would be unfavorable.  *Playboy Enters.*, 55 F. Supp. 2d at 1084; *Cairns*, 24 F. Supp. 2d at 1041–42.

In its initial disclosures, Glidewell identified two persons as having knowledge relating to the likelihood of public confusion, both of whom are Glidewell employees: Robin Bartolo (Sales Manager for Glidewell Direct) and Wolfgang Friebauer (Glidewell's Director of R&D).  (2nd Jankowski, Ex. 139.) When deposed, neither witness had personal knowledge of actual confusion between the parties' marks or products. (Jankowski, Ex. 5 at 76:19–78:13; Mangum, Ex. 52 at 72:15–74:5.)

### 2.   Ms. Fallon Provides No Admissible Evidence of Confusion

The alleged incident of actual confusion featured most prominently by Glidewell is based on communications between the dental lab of Dr. Jade Le and Glidewell employee Nicole Fallon. (*See* App.Evid., Ex. M).  In fact, Ms. Fallon's declaration sets forth only one version of the communications, a version that flatly contradicts the version Glidewell presented during discovery.

### a.   Glidewell's Presentation of Ms. Fallon During Discovery

During discovery, Keating served Glidewell with two interrogatories

-17-

(Nos. 7 and 12) seeking information regarding incidents of actual confusion between the parties' marks and products.  The entirety of Glidewell's response on August 20, 2012 as it related to Ms. Fallon was the following:

> On one occasion this April a Glidewell Laboratories employee (Nicole Fallon) was offering a $20.00 coupon to try BRUXZIR® restoration to Michelle Carlisle of Dr. Jade Le's dental Offices in Bonita Springs, Florida.  Michelle asked if they could apply the $20.00 coupon to purchases they had previously made and sent a copy of an invoice to show the alleged earlier purchase.  It was a Keating Dental Arts Inc.'s invoice for a KDZ Bruxer crown dated February 9, 2012.

(Jankowski, Ex. 1 at 7–10 (responses to Rogs 7 & 12).)  Keating served a follow up interrogatory asking for "all factual information" relating to the incident with Ms. Fallon, including how and why contact was initiated and any resolution that resulted.  Glidewell's October 10, 2012 response was the following:

> An employee of Plaintiff randomly called Dr. Le's office to offer a discount on BRUXZIR Crowns and was asked whether the discount could apply to a previous order that had actually been submitted to Defendant for a KDZ Bruxer Crown.

(Jankowski, Ex. 2 at 7 (response to Rog 23).)

Keating also served a follow up request for production that requested "All documents and things referring or relating to Dr. Jade Le's Dental Offices in Bonita Springs, Florida regarding an order or purchase of a BURXZIR [sic] or a KDZ BRUXER."  Glidewell's October 10, 2012 response was a single word, "None." (2nd Jankowski, Ex. 141).

Based on the above, Glidewell admitted during discovery that Ms. Fallon initiated the communication with Dr. Le's office through a random contact to offer a discount coupon.  Glidewell further admitted that Ms. Fallon offered a discount coupon to Michelle Carlisle, not to Dr. Jade Le.  Glidewell further admitted that the offer from Ms. Fallon to Ms. Carlisle was made over the telephone.  Glidewell further admitted (through silence in its interrogatory

-18-

responses) that Ms. Fallon did not communicate directly with Dr. Jade Le regarding this incident.  Glidewell further admitted that it had no documents relating to the communications between Ms. Fallon and Dr. Le's dental office.

Keating also deposed a Rule 30(b)(6) witness on this topic, Mr. Shuck, regarding what happened with Ms. Fallon:

> Q. Can you explain what happened here?
>
> A. I can't.  I don't know exactly what happened, but it sounds like she offered her a $20 coupon to try BruxZir, and apparently that's an account that must split labs and use both of us, and they say we've already done that."

(Mangum, Ex. 50 at 195:5–9.)

### b.   Glidewell's "New" Presentation of Ms. Fallon

After discovery cutoff and the appearance of Glidewell's new litigation counsel, Ms. Fallon's recounting of the discussion with Dr. Le's dental lab changed in the following material ways:

- Ms. Carlisle now became the person who initiated the contact.  (*See* App.Evid., Ex. M at ¶ 4 ("Ms. Michelle Carlisle . . . called me to request a Glidewell discount. . . .").)

- Now she begins speaking directly to Dr. Jade Le in addition to speaking with Ms. Carlisle.  (*Id.* at ¶ 5 ("Dr. Le joined the phone conversation . . . .")

- Now she states Dr. Le makes an express statement of confusion between the parties' marks.  (*Id.* ¶ 5 ("Dr. Le . . . said that she thought 'BruxZir' and 'Bruxer,' from Keating, 'were the same thing.'").)

- Now Ms. Fallon has a fax containing a copy of the Keating invoice from Dr. Le. (*Id.* ¶ 4; App.Evid., Ex. 1.)

- Now Ms. Fallon memorialized her conversation with Ms. Carlisle and Dr. Le in a "note report" that "accurately reflects" her conversation and "was maintained in the ordinary course of Glidewell's business."

-19-

(*Id*. ¶¶ 9–10; App.Evid., Ex. 2.)

Despite purportedly being part of Glidewell's business records in existence since April 2012, Glidewell did not produce Exhibits 1 and 2 referenced in Ms. Fallon's declaration until Friday, November 16, 2012, several weeks *after* the close of discovery and *three days before* Glidewell filed its motion. (2nd Jankowski, Ex. 154.)  Keating has had no opportunity to examine Ms. Fallon or other witnesses about these documents.

### c.      <u>Glidewell Is Bound By Its Discovery Responses</u>

Glidewell cannot inform Keating during discovery that it has no documents corroborating Ms. Fallon's incident, and then rely on documents produced after discovery cutoff for that express purpose.  Nor can Glidewell set forth one account of Ms. Fallon's incident during discovery and then rely upon a version after discovery cutoff contradicting its earlier account.  Ms. Fallon's statements on Dr. Le's purported confusion are also inadmissible hearsay.

### d.      <u>Ms. Fallon Is Not Evidence of Trademark Confusion</u>

Even if the Court were to allow Glidewell to rely on Ms. Fallon's hearsay statements attributable to Ms. Carlisle, the only "confusion" that is apparent from Glidewell's original account is that Dr. Le's employee, Ms. Carlisle, was confused *as to the nature of the coupon offer* being made by Ms. Fallon. Because that communication was over the telephone, Ms. Fallon's pronunciation of "BruxZir" was indistinguishable from the term "bruxer," providing further reason for why Glidewell's registered mark should be afforded little trademark protection, if any.

This type of confusion, regarding the nature of Ms. Fallon's coupon offer to Ms. Carlisle, is at most a clerical error on the part of Ms. Carlisle. *See Japan Telecom, Inc. v. Japan Telecom Am., Inc*., 287 F.3d 866, 874 (9th Cir. 2002) (low volume of misdirected mailings as likely due to clerical error as confusion between marks).

Furthermore, it is insufficient for Glidewell to show confusion in the abstract.  Relevant confusion is that which **affects purchasing decisions**.  *See Echo Drain v. Newsted*, 307 F. Supp. 2d 1116, 1126–27 (C.D. Cal. 2003).  Here, Dr. Le had been an existing Glidewell customer for several years prior to the incident with Ms. Fallon.[2]  By Glidewell's own admission, Ms. Fallon contacted Dr. Le's office as part of a random call to Glidewell customers offering discount coupons for the BruxZir product.  The fact that Dr. Le was clearly aware of Glidewell and its products when she chose to purchase a Keating all-zirconia crown shows that Dr. Le is not confused as to the difference between the KDZ Bruxer and Glidewell.  Had Dr. Le wanted Glidewell's all-zirconia crown at that time, she would ordered a crown from Glidewell at that time.

Even if Glidewell had admissible evidence showing confusion on the part of Dr. Le—which it does not—the Court may deem one claim of confusion by a friendly dentist as insufficient to show actual confusion.  *Echo Drain*, 307 F. Supp. At 1126 (four letters from friends of Echo Drain are not probative of actual confusion); *Pump, Inc. v. Collins Management*, Inc., 746 F. Supp. 1159, 1170 (D. Mass. 1990) (testimony from friends is less probative of actual confusion).

### 3.  Glidewell Mischaracterizes Keating's Prescription Forms And Internal Work Orders As Evidence of Actual Confusion

After getting sued by Glidewell in the present lawsuit, Keating initiated a policy of calling dentists who wrote "BruxZir," or variations thereof, on their prescription forms submitted to Keating to (1) educate the dentists as to the existence of "BruxZir" as a trademark of a competing dental lab, and (2) to confirm that the dentists wanted Keating's all-zirconia crown, and not another dental lab's product.  (Brandon ¶ 3.)  Keating implemented this policy because

---

[2] The internal work order referenced by Ms. Fallon as Exhibit 2 shows that Dr. Le has been a Glidewell customer since October 6, 2008.

it had been sued by Glidewell, and it wanted to ensure that it did not mistakenly fulfill any prescriptions from dentists wanting to purchase an all-zirconia crown from Glidewell.   (*Id.* ¶ 4.)   Glidewell mischaracterizes this policy as an admission by Keating as to the validity of Glidewell's mark and as evidence of actual confusion on the part of Keating's customers.   (Memo. at 18–20.) Glidewell is wrong on both.

As part of its policy, Keating had its employees inform dentists who wrote "BruxZir" or variations thereof on a prescription form that a competing dental lab claimed the name BruxZir as a trademark. (Brandon Decl. ¶ 3.)  That is a factual statement, not an admission as to the validity of Glidewell's mark.

The prescription forms are not evidence of confusion.  The dentists at issue were well-known customers of Keating who knew exactly what they were ordering.  The table below lists the twelve dentists Glidewell relies upon in its brief as evidence of confusion (Memo. at 18–20).  The table shows when the dentist became a Keating customer and when they first purchased an all-zirconia crown from Keating.  (Brandon Decl. ¶¶ 6–10.)  It also shows the number of orders for all-zirconia crowns before and after the dentist received a confirmation phone call under the post-lawsuit policy.  (*Id.*)

| Dentist Initials | Date Dentist Became a Keating Customer | Earliest Invoice for All-Zirconia Crown from this Dentist | Date of KDA Prescription Form Cited by Glidewell | Orders for All-Zirconia Crowns Before/After the Confirming Call | |
|---|---|---|---|---|---|
| | | | | Before | After |
| GT | Aug. 9, 2011 | Aug. 18, 2011 | Oct. 18, 2011 | 4 | 4 |
| JC | < Oct. 2006 | Feb. 4, 2011 | Oct. 17, 2011 | 11 | 16 |
| JJ | Apr. 26, 2010 | Aug. 22, 2011 | Oct. 19, 2011 | 2 | 10 |
| MR | July 31, 2007 | May 6, 2011 | Oct. 21, 2011 | 39 | 11 |
| MS | Oct. 19, 2011 | Oct. 27, 2011 | Oct. 20, 2011 | 1 | 2 |
| MK | < Oct. 2006 | Dec. 9, 2010 | Oct. 21, 2011 | 10 | 15 |
| BJ | Sep. 18, 2008 | Aug. 1, 2011 | Oct. 21, 2011 | 11 | 6 |
| SS | < Oct. 2006 | July 21, 2011 | Oct. 24, 2011 | 8 | 8 |
| TB | < Oct. 2006 | Jan. 17, 2011 | Oct. 26, 2011 | 36 | 38 |
| RM | < Oct. 2006 | Sept. 1, 2011 | Oct. 29, 2011 | 5 | 13 |
| WB | Oct. 24, 2006 | Aug. 26, 2011 | Mar. 8, 2012 | 27 | 0 |

| SR | June 19, 2007 | Apr. 20, 2011 | May 2, 2012 | 39 | 0 |
|----|---------------|---------------|-------------|----|----|

These dentists are long-standing Keating customers with a history of ordering from Keating, including ordering all-zirconia crowns.  Under its post-lawsuit policy, Keating telephoned each of these dentists to explain to the dentist that a competing dental lab claimed the name BruxZir as a trademark, and the dentist was asked whether they wanted to order Keating's all-zirconia crown or a different product.  (Brandon ¶ 3.)  Each of these dentists confirmed that they had intended to order Keating's all-zirconia crown, and that they were not confused.  (*Id*. ¶ 5.)  Indeed, dentists who wrote "BruxZir" on their prescription forms did so as a generic reference to an all-zirconia crown, not because they were confused about an affiliation with Glidewell.  (Belton, Brady, Murphy, Nussear, Scott, Tobin Decls. ¶¶ 9-11; Campbell, Colleran, Richardson, Stephens Decls. ¶¶ 10-12; Jacquinot, Myers, Sweet Decls. ¶¶ 9-10.)

The fact that Keating has had to inform its dentist-customers that its competitor has a registered mark in BruxZir emphasizes that these dentists were not aware that the name was serving as a trademark.  If Glidewell has to rely on its competitors to tell customers that Glidewell's mark is a trademark, the term is not functioning as an indication of source.  Keating's Rx forms thus show the invalidity of Glidewell's mark, not confusion between the marks.

Glidewell has failed to show that this *Sleekcraft* factor weighs in its favor.

**E.**    **Glidewell Fails To Properly Account For Dentists' Degree Of Care**

Glidewell's motion argues that the standard of care applied by dentists is low, relying primarily on the price differential of the product, $99 for Glidewell vs. $139 for Keating, which Glidewell argues is "not so great as to reward focused attention on the brand under which the crowns are marketed." (Memo. at 22.)  Glidewell is wrong, both because all customers care about a 40% difference in price, and further because dentists are concerned about the quality of crowns they purchase—price notwithstanding—because ultimately they are

the ones responsible for the health and well-being of the users of the crowns, their patients.  (Docket 88-1 ¶¶ 5–6)  Glidewell's argument that the standard of care is low is not only self-serving—chosen to make a likelihood of confusion easier to show—it is also demeaning to the professionalism of dentists.

Glidewell's only factual support comes from a hearsay statement by its in-house dentist, Dr. DiTolla that "many dentists may regard them [all-zirconia crowns] as interchangeable."  (App.Evid., Ex. I ¶ 21.)  Dr. DiTolla's statement overlooks that dentists do not view dental labs as interchangeable, and that they order crowns from dental labs with which they have had a good experience with product quality and customer service, and they avoid dental labs with which they have had a bad experience.  (Docket 88-1 ¶¶ 5–6.)

Glidewell has failed to show that this *Sleekcraft* factor weighs in its favor.

## F.    <u>Glidewell Wrongly Infers Bad Intent By Keating</u>

Glidewell argues that Keating is using the mark "KDZ Bruxer" in bad faith for the purpose of free-riding on Glidewell's good will.  (Memo. at 24.)  To the contrary, Keating followed a reasonable approach in selecting a mark for its product that includes a clear indicator of Keating Dental Arts as the source ("KDZ") together with a follow up term ("Bruxer") that describes the primary intended user (a bruxer).  Notably, other dental labs have also sought to use the term "Bruxer" in their names for all-zirconia crowns for bruxers, all of whom have been accused by Glidewell of bad faith.  (*See* Jankowski, Ex. 24 (Fusion Dental ("Full Solid Bruxer Zirconia")); Ex. 25 (Pittman Dental ("Bruxer All-Zirconia Crowns")); Ex. 29 (China Dental ("Bruxer All Zirconia")); Ex. 30 (Showcase Dental ("Zir-Bruxer Crown")).)

Glidewell portrays Keating's conduct prior to choosing a name as nefarious, including the retention of counsel to conduct a trademark search.  Yet this shows Keating's good faith in striving to use a name that would not infringe other's rights.  *See M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d 1073,

-24-

1085 (9th Cir. 2005) (intent factor favors defendant relying on counsel even though a trademark search was performed that uncovered plaintiff's mark).  In a desperate attempt to make Keating look bad, Glidewell suggests that Keating either destroyed or withheld a prejudicial document showing the results of a trademark search.  To the contrary, while Keating did discuss the results of a search performed by its counsel, it did not receive a copy of search results, and thus it has no document to produce.

Finally, Glidewell errs by directing the Court to rely on *Therasense, Inc. v. Becton, Dickinson & Co*., 649 F.3d 1276, 1290 (Fed. Cir. 2011).  *Therasense* is a patent case that is not applicable to analysis of this factor.

Glidewell has failed to show that this *Sleekcraft* factor weighs in its favor.

**G.    The Remaining Factors Do Not Establish A Likelihood of Confusion**

The eighth *Sleekcraft* factor (expansion of the product lines) is irrelevant because each of the product lines is nationwide.  The two remaining factors, proximity of the goods and marketing channels used, are the only two factors that conceivably could weigh in favor of Glidewell.  These factors alone do not support a finding of infringement as a matter of law.  *See*, *e.g*., *Chesebrough-Pond's, Inc. v. Faberge, Inc*., 666 F.2d 393, 398 (9th Cir. 1982) (affirming district court conclusion of no likelihood of confusion between marks "Macho" and "Match" despite identical product lines and marketing channels).

### III.  CONCLUSION

For the reasons presented above, Keating respectfully requests that the Court deny Glidewell's motion for summary judgment of infringement.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated: Nov. 26, 2012          By: /s/ David G. Jankowski
                                  Lynda J. Zadra-Symes
                                  Jeffrey L. Van Hoosear
                                  David G. Jankowski

                              Attorneys for Plaintiff,
                              KEATING DENTAL ARTS, INC.

14377801