Lynda J. Zadra-Symes (SBN 156,511)
Lynda.Zadra-Symes@kmob.com
Jeffrey L. Van Hoosear (SBN 147,751)
Jeffrey.VanHoosear@kmob.com
David G. Jankowski (SBN 205,634)
David.jankowski@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Defendant/Counter-Plaintiff,
KEATING DENTAL ARTS, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JAMES R. GLIDEWELL DENTAL CERAMICS, INC. dba GLIDEWELL LABORATORIES, <br><br> Plaintiff, <br><br> v. <br><br> KEATING DENTAL ARTS, INC. <br><br> Defendant. <br><br> AND RELATED COUNTERCLAIMS. | Civil Action No. SACV11-01309-DOC(ANx) <br><br> **KEATING'S OPPOSITION TO GLIDEWELL'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO KEATING'S INVALIDITY DEFENSE AND COUNTERCLAIM** <br><br> Honorable David O. Carter |

## <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

I.    INTRODUCTION.................................................................................. 1

II.   SUMMARY JUDGMENT STANDARDS ............................................. 3

III.  KEATING HAS PRESENTED MORE THAN
      SUFFICIENT EVIDENCE TO REBUT THE
      PRESUMPTION OF VALIDITY ........................................................ 3

      A.    Keating's Evidence Meets The Preponderance of
            Evidence Standard ...................................................................... 3

      B.    The Undisputed Evidence Shows Glidewell's Mark Is
            Generic ........................................................................................ 5

            1.    Glidewell Ignores Undisputed Evidence That
                  BruxZir Is Phonetically Equivalent To And A
                  Misspelling of Bruxer.................................................... 5

            2.    Glidewell Admits Its BruxZir Crowns Are For
                  Bruxers .......................................................................... 6

            3.    Glidewell Has Failed To Establish That The
                  Primary Significance Of Its Mark Is To Identify
                  Glidewell........................................................................ 6

                  a.    Glidewell Failed To Produce A Survey ...................... 7

                  b.    Keating Has Provided Substantial
                        Evidence That Dentists Use The Word
                        "BruxZir" As A Generic Reference To A
                        Type of Crown ............................................................ 8

                  c.    Glidewell's Testimony And Use
                        Establishes Genericness Of The Mark ........................ 9

            4.    Keating's Alternative Argument of Mere
                  Descriptiveness Does Not Constitute An
                  Admission Of Non-Genericness.......................................... 10

            5.    Keating's Awareness of Glidewell's Trademark
                  Registration Is Not Evidence Of Distinctiveness
                  In Glidewell's Mark........................................................... 11

                  a.    Glidewell Mischaracterizes Keating's
                        Prescription Forms And Internal
                        Documents As Admissions of Validity...................... 11

                  b.    Shaun Keating testimony ........................................... 12

                  c.    Bob Brandon testimony.............................................. 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS
(continued)

Page No.

d.   Keating Internal Documents Do Not Establish That Glidewell's Mark Is Protectable ................................................. 13

6.   Glidewell's Declarations of Undisclosed Witnesses Are Inadmissible ................................. 13

a.   Glidewell's Reliance On Previously Undisclosed Dentist Testimony Is Improper ......................................................... 13

i.   Glidewell's Dentist Witness Testimony Is Not Probative ............................ 14

ii.   Glidewell's Expert Testimony Is Not Probative ......................................... 15

b.   Glidewell Did Not Timely Disclose Dr. Goldstein And He Did Not Submit A Timely Expert Report ................................. 16

c.   Professor Franklyn's Testimony Is Inadmissible Legal Opinion And His Untimely Report and Testimony Regarding Undisclosed Dentists Is Inadmissible .................................................. 16

d.   Glidewell's Witness Testimony And Glidewell's Marketing Practices Establish That BruxZir Identifies The Product, Not Glidewell As The Source .................... 18

e.   Undisputed Evidence Of Widespread Third Party Use Establishes Genericness Of Glidewell's Mark ................................. 19

C.   Alternatively, The Undisputed Evidence Shows Glidewell's Mark Is Merely Descriptive and Lacks Secondary Meaning ................................................. 20

1.   If not Generic, BruxZir Is Merely Descriptive, Not Suggestive – No Mental Leap Is Required; Competitors' Need To Use Brux And Bruxer .................... 20

2.   Glidewell Has Failed To Prove Secondary Meaning ................................................. 22

3.   Glidewell's Untimely Disclosed Dentist Witnesses' Testimony Is Inadmissible And Should Be Disregarded .................................. 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>TABLE OF CONTENTS</u>
(continued)

<u>Page No.</u>

4.   Glidewell's Advertising Teaches That BruxZir Is A Type Of Material, Not A Source ................................... 23

5.   Glidewell's Length and Manner Of Use of BruxZir Disproves Secondary Meaning ............................. 24

6.   Glidewell's Use Of The Mark Has Not Been Exclusive............................................................................... 25

IV.   CONCLUSION ......................................................................... 25

<u>TABLE OF AUTHORITIES</u>

<u>Page No(s).</u>

*1st Source Bank v. First Resource Federal Credit Union*,
    167 F.R.D. 61 (N.D. Ind. 1996)................................................................. 17

*America Online, Inc. v. AT&T Corp.*,
    243 F.3d 812 (4th Cir. 2001) ......................................................................... 4

*Avery Dennison Corp. v. Acco Brands, Inc.*,
    CV99-1877, 1999 U.S. Dist. LEXIS 21464 (C.D. Cal.
    Oct. 12, 1999) .............................................................................................. 11

*Cairns v. Franklyn Mint Co.*,
    24 F.Supp. 2d 1013 (C.D. Cal. 1998)........................................................... 7

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986) .............................. 3

*CG Roxane LLC v. Fiji Water Co. LLC*,
    569 F. Supp. 2d 1019 (N.D. Cal. 2008)................................................. 10, 20

*Classic Foods Int'l Corp. v. Kettle Foods, Inc.*,
    468 F. Supp. 2d 1181 (C.D. Cal. 2007)...................................................... 10

*Colt Defense LLC v Bushmaster Firearms, Inc.*,
    486 F.3d 701 (1st Cir. 2007) ........................................................................ 8

*Cont'l Airlines Inc. v. United Air Lines Inc.*,
    53 U.S.P.Q.2d (BNA) 1385, 1999 WL 1288981
    (TTAB 1999) ................................................................................................. 6

*Filipino Yellow Pages, Inc. v. Asian Journal Publs., Inc.*,
    198 F.3d 1143 (9th Cir. 1999)................................................... 7, 10, 20, 22

*Fu v. Owens*,
    622 F.3d 880 (8th Cir. 2010) ...................................................................... 17

*Hodgdon Powder Co., Inc. v. Alliant Techsystems, Inc.*,
    512 F. Supp. 2d 1178 (D. Kan 2007) ......................................................... 15

*In Hyuk Suh v. Choon Sik Yang*,
    987 F. Supp. 783 (N.D. Cal. 1997)............................................................... 7

TABLE OF AUTHORITIES

(continued)

Page No(s).

*In re Mortgage Bankers Association of America*,
  226 U.S.P.Q. (BNA) 954 (TTAB 1985).............................................. 19

*In re Phoseon Tech. Inc.*,
  103 U.S.P.Q. 2d (BNA) 1822 (TTAB 2012)............................................ 24

*In re Recorded Books Inc.*,
  42 U.S.P.Q.2d (BNA) 1275, 1997 WL 196608
  (TTAB 1997) ........................................................................ 14

*In re Reed Elsevier Props. Inc.*,
  482 F.3d 1376 (Fed. Cir. 2007) ..................................................... 19

*In re State Chemical Mfg. Co.*,
  225 U.S.P.Q. (BNA) 687 (TTAB 1985)................................................ 19

*Interactive Health LLC v. King Kong USA, Inc.*,
  CV06-1902, 2008 U.S. Dist. LEXIS 123559 (C.D. Cal.
  July 24, 2008) ..................................................................... 11

*Japan Telecom, Inc. v. Japan Telecom Am., Inc.*,
  287 F.3d 866 (9th Cir. 2002) ........................................... 3, 9, 22, 23

*Jarritos, Inc. v. Reyes*,
  345 Fed. Appx. 215 (9th Cir. 2009) .............................................. 17

*Keebler Co. v. Rovira Biscuit Corp.*,
  624 F.2d 366, 207 U.S.P.Q. (BNA) 465 ........................................... 15

*Kellogg Co. v. National Biscuit Co.*,
  305 U.S. 11, 59 S. Ct. 109, 83 L. Ed. 73 ......................................... 7

*Levi Strauss & Co. v. Blue Bell, Inc.*,
  778 F.2d 1352 (9th Cir. 1985) (en banc) .................................... 22, 24

*M2 Software, Inc. v. Madacy Entertainment*,
  421 F.3d 1073 (9th Cir. 2005) .................................................... 15

*Maloney v. Scottsdale Ins. Co.*,
  256 Fed. Appx. 29 (9th Cir. 2007) ............................................... 10

TABLE OF AUTHORITIES
(continued)

Page No(s).

*Miller Brewing Co. v. Falstaff Brewing Corp.*,
    655 F.2d 5, 211 U.S.P.Q. (BNA) 665 (1st Cir. 1982) ............................... 14

*Miller Brewing Co. v. G. Heileman Brewing Co.*,
    561 F.2d 75 (7th Cir. 1977) ........................................................................ 5

*Miller Brewing Co. v. Jos. Schlitz Brewing Co.*,
    605 F.2d 990 (7th Cir. 1979) ..................................................................... 15

*Nupla Corp. v. IXL Mfg. Co.*,
    114 F.3d 191 (Fed. Cir. 1997) ..................................................................... 6

*PaperCutter, Inc. v. Fay's Drug Co.*,
    900 F.2d 558 (2d Cir. 1990) ...................................................................... 22

*Playboy Enters. V. Netscape Commc'ns. Corp.*,
    55 F. Supp. 2d 1070 (C.D. Cal. 1999) ........................................................ 7

*Retail Servs., Inc. v. Freebies*,
    364 F.3d 535 (4th Cir. 2004) ........................................................... 4, 6, 22

*Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*,
    680 F. Supp. 2d 1107 (N.D. Cal. 2010) .............................................. 22, 24

*Sengoku Works Ltd. v. RMC Int'l., Ltd.*,
    96 F.3d 1217 (9th Cir. 1996) ...................................................................... 4

*Shakur v. Schriro*,
    514 F.3d 878 (9th Cir. 2008) ...................................................................... 3

*Soweco, Inc. v. Shell Oil Co.*,
    617 F.2d 1178 (5th Cir. 1980) .................................................................... 5

*Surfvivor Media, Inc. v. Survivor Prods.*,
    406 F.3d 625 (9th Cir. 2005) .................................................................... 20

*Talking Rain Beverage Co. v. S. Beach Beverage Co.*,
    349 F.3d 601 (9th Cir. 2003) ...................................................................... 4

## TABLE OF AUTHORITIES
(continued)

Page No(s).

*Tie Tech, Inc. v. Kinedyne Corp.*,
   296 F.3d 778 (9th Cir. 2002) ........................................................ 4

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
   505 U.S. 763, 112 S. Ct. 2753 (1992) ........................................ 22

*Vuitton et Fils S.A. v. J. Young Enters., Inc.*,
   644 F.2d 769 (9th Cir. 1981) ........................................................ 4

*Watts v. United States*,
   703 F.2d 346 (9th Cir. 1983) ........................................................ 3

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001) .................................................... 17

*Zobmondo Entm't, LLC v. Falls Media, LLC*,
   602 F.3d 1108 (9th Cir. 2010) .......................................... 4, 6, 22

## OTHER AUTHORITIES

15 U.S.C. § 1115 ........................................................................... 3

11 *Moore's Federal Practice* § 56.13[1] (3rd ed. 2009) ................. 3

Fed. R. Civ. P. 8............................................................................ 10

Fed. R. Evid. 407 ......................................................................... 13

McCarthy on Trademarks, 4th Edition, § 12:13 ......................... 9

McCarthy on Trademarks, 4th Edition, § 12:14 ......................... 7

McCarthy on Trademarks, 4th Edition, § 12:47 ....................... 14

McCarthy on Trademarks, 4th Edition, § 15:5 ......................... 22

Defendant Keating Dental Arts, Inc. hereby submits its opposition to Plaintiff James R. Glidewell Dental Ceramics, Inc. dba Glidewell Laboratories' ("Glidewell") Motion for Partial Summary Judgment as to Invalidity Defense and Counterclaim.

## I.  **INTRODUCTION**

Glidewell admits that its BruxZir crown is "a crown for bruxers," that "it stands for bruxism and zirconia," and "if you see brux or you identify somebody with bruxism.  Think of zirconium.  So we put brux and zir together."  But Glidewell did not disclose that to the trademark Examiner.  Nor did Glidewell disclose that "BruxZir" is phonetically equivalent to "bruxer," the generic term for the intended user of Glidewell's BruxZir crowns.  The trademark examiner—who is not a dentist—did not do a routine Internet search and did not follow the usual practice of asking if the term had any meaning in the industry.  The undisputed evidence of widespread use in the dental industry of "brux," "bruxer," and "zir" is more than sufficient to rebut the presumption of validity, and also establishes that Glidewell's mark should be canceled as a matter of law.  Because Glidewell chose a misspelling of a generic term for its mark, no amount of advertising or sales can save the mark.

Moreover, Glidewell did not conduct a survey and did not produce any other evidence establishing that, in the minds of a significant number of relevant consumers, the *primary significance* of the mark is to signify Glidewell and not the product itself.  Glidewell instead resorts to mischaracterizing the testimony of Keating's witnesses and providing late declarations from dentists who are Glidewell customers and were first disclosed **seventeen minutes before Midnight on Discovery Cutoff, October 29, 2012**.  Keating had no opportunity to depose these witnesses. Furthermore, Glidewell submitted only one timely expert report—from a law Professor named David Franklyn.  Glidewell did not submit any timely rebuttal reports on the October 15, 2012 deadline.  Despite

the Court's order denying Glidewell's request for extension of discovery and other deadlines, Glidewell's motion relies upon declarations from Professor Franklyn and a dentist, Dr. Goldstein, based upon untimely rebuttal reports submitted two weeks after the October 15 deadline, and minutes before Midnight on the Discovery Cutoff. The Franklyn and Goldstein declarations are therefore inadmissible. The opinions set forth in the declarations regarding dentists' perceptions are also inadmissible because they constitute hearsay and fail to follow rigorous standards required for admissible survey data. The Franklyn declaration also directly contradicts his prior deposition testimony, in which he stated that he had ***"not spoken to any dentists about anything other than my own teeth and my own bruxer crown."***.[1]

At the very least, Glidewell's mark is merely descriptive (rather than suggestive) and not protectable without secondary meaning. No mental leap of imagination is required. Dentists immediately know that brux means brux or bruxism and zir means zirconia, and that is precisely the reason Glidewell chose the mark. Moreover, Glidewell has failed to establish secondary meaning by failing to submit a secondary meaning survey, failing to timely identify any dentist witnesses to support secondary meaning in its mark, and failing to submit any evidence regarding the effect of its advertising and sales on the relevant consumers, dentists. Glidewell's declarations from seven previously undisclosed dentists are not admissible and entitled to no evidentiary weight. None of the dentists' names were disclosed to Keating until seventeen minutes before Midnight on the Discovery Cutoff date, they are all Glidewell customers and have, some have as recently as last month, toured Glidewell's facility. Such evidence, in addition to being untimely, falls far short of the rigorous secondary

---

[1] Keating objects to the Declaration and Report of Dr. Goldstein and Declaration and Reports of David Franklyn in separate Objections submitted herewith.

meaning evidence that Glidewell is required to establish to prove a protectable mark.

Keating has presented undisputed facts demonstrating that the BruxZir mark is invalid as a matter of law. (*See* Keating's Mtn. to Cancel Glidewell's Registration (Docket Nos. 83, 85, 87). This evidence is more than sufficient to rebut the presumption of validity. Indeed, it is sufficient to show that Glidewell's mark is not entitled to trademark protection and should be canceled.

Accordingly, Keating respectfully requests that the Court deny Glidewell's motion.

## II.  SUMMARY JUDGMENT STANDARDS

For those issues on which Glidewell bears the burden of proof, Glidewell must present evidence satisfying its burden of proof, and must show that the evidence is so powerful that no reasonable jury would be free to disbelieve it. *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008); *Watts v. United States*, 703 F.2d 346, 347 (9th Cir. 1983); 11 *Moore's Federal Practice* § 56.13[1] at 56-166 (3rd ed. 2009). For those issues on which Keating bears the burden of proof, Glidewell must demonstrate that the record lacks any substantial evidence in Keating's favor on those issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986). As Keating is the non-movant, the Court must draw all inferences in Keating's favor. *Japan Telecom, Inc. v. Japan Telecom Am., Inc.*, 287 F.3d 866, 872 (9th Cir. 2002). Glidewell cannot meet its burden on this motion.

## III.  KEATING HAS PRESENTED MORE THAN SUFFICIENT EVIDENCE TO REBUT THE PRESUMPTION OF VALIDITY

### A.  Keating's Evidence Meets The Preponderance of Evidence Standard

When a trademark has been registered, the defendant has the burden of proving that its registration is defective or subject to a defense. The defendant must show such defect or defense by a preponderance of the evidence. 15

U.S.C. § 1115(b);  *Sengoku Works Ltd. v. RMC Int'l., Ltd.*, 96 F.3d 1217, 1219-20 (9th Cir. 1996); *Vuitton et Fils S.A. v. J. Young Enters., Inc.*, 644 F.2d 769, 775-76 (9th Cir. 1981); *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002).  Keating has presented more than sufficient evidence to rebut the presumption.

As the Ninth Circuit stated in *Zobmondo Entm't*:

> "[A]ssuming the defendant can demonstrate through law, undisputed facts, or a combination thereof that the mark is invalid, the evidentiary bubble [created by the federal registration] bursts and [Glidewell] cannot survive summary judgment.  In the face of sufficient and undisputed facts demonstrating [invalidity], the registration loses its evidentiary significance."

*Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1115 (9th Cir. 2010), citing *Tie Tech*, 296 F.3d at 783 ("In trademark terms, the registration is not absolute but is subject to rebuttal"); see also *Talking Rain Beverage Co. v. S. Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003); *America Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 818 (4th Cir. 2001); *Retail Servs., Inc. v. Freebies*, 364 F.3d 535, 543 (4th Cir. 2004) (If sufficient evidence of genericness is produced to rebut the presumption, the presumption is "neutralize[d]" and essentially drops from the case, although the evidence giving rise to the presumption remains), citing *America Online*, 243 F.3d at 818.

The presumption afforded a registered trademark assumes that the PTO has properly examined the trademark.  See *Zobmondo Entm't*. ("[d]eference to the PTO's classification decision is sensible because the PTO has special expertise that we lack on this fact-intensive issue.").  602 F.3d at 1115.  Such deference necessarily assumes that the trademark examiner has reviewed facts upon which to render a deferential classification of suggestiveness rather than genericness or mere descriptiveness.

-4-

No such facts were before the Examiner of Glidewell's application for the mark BruxZir.  Indeed, the Examiner failed to follow the usual procedure, as recommended in the Trademark Manual of Examining Procedure, §§ 814 and 1209.2, to ask if the term had any meaning in the industry.  (Keating SOF ¶ 90-91, 94; Boatright Decl., Ex. A ¶ 44.).  Nor did Glidewell voluntarily offer any such information.  (Keating SOF ¶ 94.).

As the Examiner is not a dentist, she could not have known that, to the relevant purchasing public—dentists—"brux" means teeth grinding and "zir" means zirconia.  (Keating SOF ¶¶ 4-5, 60.)  Nor was she aware that the mark sounds phonetically identical to "bruxer," the intended user of Glidewell's dental crowns (Keating SOF ¶¶ 47-53, 6-8), among the goods listed in Glidewell's application, and as referenced in Glidewell's marketing materials ("ideal for bruxers.").  (Keating SOF ¶¶ 40, 44-46.)

**B.**   **The Undisputed Evidence Shows Glidewell's Mark Is Generic**

**1.**   **Glidewell Ignores Undisputed Evidence That BruxZir Is Phonetically Equivalent To And A Misspelling of Bruxer**

Notably, Glidewell ignores the undisputed evidence of phonetic equivalency of its mark with the term "bruxer," which Glidewell admits is the generic name for a person who bruxes and the intended user of Glidewell's BruxZir crowns.  (Keating SOF ¶ 39-46.)  As the phonetic equivalency of the generic name for the intended user of its BruxZir product, the mark is generic as a matter of law.  *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1186 n.24 (5th Cir. 1980) ("Plaintiff's using the phonetic equivalent of the generic term 'larvicide' in its mark 'Larvacide,' i.e., misspelling it, does not render the mark protectable." (citing *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 79 (7th Cir. 1977)) ("Using the phonetic equivalent of a common descriptive word, *i.e.*, misspelling it, is of no avail.").

/ / /

The evidence submitted with Keating's motion establishes beyond any doubt that the BruxZir mark is pronounced identically to "bruxer."  (Keating SOF ¶ 47-53.)  This includes Glidewell's own promotional videos, and video recorded witness testimony.  (Keating SOF ¶ 47-49.)  Glidewell put "brux" and "zir" together so that dentists would know immediately what it was, **"a crown for bruxers."** (Keating SOF ¶ 33.)

Glidewell's adoption of a misspelling of "bruxer" for its mark, and assertion of its BruxZir mark against competitors using "brux" and "bruxer" is evidence  of genericness because it deprives competitors of the right to identify their products as intended for bruxers.  *Nupla Corp. v. IXL Mfg. Co.*, 114 F.3d 191, 196 (Fed. Cir. 1997); *Cont'l Airlines Inc. v. United Air Lines Inc.*, 53 U.S.P.Q.2d (BNA) 1385, 1999 WL 1288981 (TTAB 1999); *Retail Servs.*, 364 F.3d 535.

### 2.    Glidewell Admits Its BruxZir Crowns Are For Bruxers

Glidewell's admits that its BruxZir crowns are intended for bruxers. (Keating SOF ¶ 39-46.)  In addition, Glidewell's marketing materials repeatedly state that its crowns are "ideal for bruxers."  (Keating SOF ¶ 40, 45-46.)

Glidewell's witnesses admitted that they chose the mark specifically because dentists recognized the meaning of "brux" and "zir" and because the product was intended for bruxers.  (Keating SOF ¶ 30-38.)

### 3.    Glidewell Has Failed To Establish That The Primary Significance Of Its Mark Is To Identify Glidewell

As Glidewell admits, in determining whether a mark is distinctive and entitled to trademark protection, the Court is "required to consider standards of meaning not [its] own, but prevalent among prospective purchasers of the article."  *Zobmondo Entm't*, 602 F.3d at 1113 (citation omitted).  "[I]f the primary significance of the trademark [to the prospective purchaser] is to describe the type of product rather than the producer, the trademark [is] a

generic term and [cannot be] a valid trademark. *Filipino Yellow Pages, Inc. v. Asian Journal Publs., Inc.*, 198 F.3d 1143, 1147 (9th Cir. 1999) (citation omitted).

Glidewell must "show that the *primary significance* of the term in the minds of the consuming public is not the product but the producer." This it has not done. *Filipino Yellow Pages*, 198 F.3d at 1147; *Kellogg Co. v. National Biscuit Co.*, 305 U.S. 11, 118-119, 59 S. Ct. 109, 83 L. Ed. 73.

### a.   Glidewell Failed To Produce A Survey

Surveys are commonly used to probe customer perceptions as to the generic-trademark dividing line. MCCARTHY ON TRADEMARKS, 4TH EDITION, § 12:14 et seq. Glidewell did not identify any survey evidence during discovery indicating that the primary significance of its mark in the minds of relevant purchasers is to identify Glidewell, rather than its product. Keating requested such evidence, but Glidewell stated it had "None." (2nd Jankowski Decl., Ex. 141. Moreover, Glidewell's legal expert, Professor Franklyn, also testified that he was not aware of any survey of dentists and had not spoken to any dentists in connection with this case. (**"I have not spoken to any dentists about anything other than my own teeth and my own bruxer crown."**) (2nd Jankowski Decl., Ex. 153 (Franklyn Dep. Tr.), at 133:6-8)

Although not required, survey evidence has become "de rigueur" in cases involving genericness of trademarks. *In Hyuk Suh v. Choon Sik Yang*, 987 F. Supp. 783, 791 (N.D. Cal. 1997). The absence of a survey from Glidewell, particularly in view of Glidewell's financial ability to conduct a survey, raises the inference that such a survey would not have been favorable to Glidewell. *See Playboy Enters. V. Netscape Commc'ns. Corp.*, 55 F. Supp. 2d 1070, 1084 (C.D. Cal. 1999); *Cairns v. Franklyn Mint Co.*, 24 F.Supp. 2d 1013, 1041-42 (C.D. Cal. 1998) ("[A] plaintiff's failure to conduct a consumer survey,

/ / /

-7-

assuming it has the financial resources to do so may lead to an inference that the results of such a survey would be unfavorable.").

In view of the overwhelming evidence showing widespread third party use of "brux," "bruxer" and "zir," the phonetic equivalency of "BruxZir" and "bruxer", as well as Glidewell's own generic use of its mark and uncontrolled use of the mark by competitor dental labs (Keating SOF ¶¶ 60-61, 47-53, 54-59, 64-69), Keating does not need to produce a survey in order to prove that Glidewell's mark is generic. *Nartron Corp.*, 305 F.3d 397, cert. denied, 123 S. Ct. 1486, 155 L.Ed. 2d 227 (2003) ("Thus, the overwhelming evidence in this case obviates the need for [defendant] to have conducted a consumer survey.") *Colt Defense LLC v Bushmaster Firearms, Inc.*, 486 F.3d 701 n.4 (1st Cir. 2007) (term was found to be a generic name without the need for a survey).

**b.** **Keating Has Provided Substantial Evidence That Dentists Use The Word "BruxZir" As A Generic Reference To A Type of Crown**

Keating has submitted a timely expert report from Dr. Eggleston (Eggleston Decl., Ex. 64) and declarations from thirteen dentists that have written "BruxZir," or variations thereof on prescription forms as a generic reference to an all-zirconia crown. (*See* Belton Decl., ¶ 9-11; Brady Decl., ¶ 9-11; Campbell Decl. 9-12; Colleran Decl. ¶ 10-12; Jacquinot Decl. ¶ 9-10; Murphy Decl. ¶ 9-11; Myers Decl. ¶ 9-10; Nussear Decl. ¶ 9-11; Richardson Decl. ¶ 10-12; Scott Decl. ¶ 9-11; Stephens Decl. ¶ 10-12; Sweet Decl. ¶ 8-10; Tobin Decl. ¶ 9-11). Keating has also submitted a declaration from a third party dental lab unaffiliated with Glidewell or Keating, Showcase Dental Laboratory, that also receives (and fills) orders from dentist-customers who write "BruxZir" on prescription forms as a generic reference to an all-zirconia crown. (*See* Frattura Decl., ¶¶ 6-9, 18.) Keating has also submitted substantial evidence

/ / /

showing widespread third party use of the terms "bruxer" and "brux" in connection with dental crowns.  (Keating SOF ¶¶ 60-62.)

### c.   <u>Glidewell's Testimony And Use Establishes Genericness Of The Mark</u>

Glidewell relies upon the declarations of its employees Jim Shuck, Dr. Micael DiTolla, and Rudy Ramirez.  [Mot. 10-11].  Keating has objected to these declarations (*see* Keating Objections to Evidence submitted herewith).

Such self-serving declarations from Glidewell's employees are entitled to little weight.  They do not establish, as required by law, that the *primary significance* of the mark in the minds of the relevant purchasing public is to identify Glidewell as the source of the product.  *Japan Telecom*, 287 F.3d at 873.

Mr. Shuck testifies about Glidewell's sales and advertising expenses. And states that "the term 'bruxzir' is not used by Glidewell—or, to my knowledge, widely or generally used by anyone else – to refer to sold zirconia crowns.  [Mot. At 11, SUF 15).  Not only does this testimony lack foundation and constitute hearsay and speculation, it is directly contrary to the undisputed evidence.  Glidewell's own videos use the term 'bruxzir' pronounced identically to 'bruxer' to refer to sold zirconia crowns, often as a noun for the product, not to identify Glidewell as the source.  (Keating SOF ¶¶ 47-48, 57.)  In addition, presentations by Glidewell employees establish Glidewell's own generic use of the term "BruxZir."  Dr. DiTolla even states "one can even get a couple of BruxZirs put in".  (Keating SOF ¶ 58.)  Such evidence of the owner's generic use "is strong evidence of genericness."  MCCARTHY ON TRADEMARKS, 4TH EDITION, § 12:13.

Furthermore, Glidewell has focused its advertising and promotion on teaching the dental community that the BruxZir mark *is not an indication of Glidewell as the source*.  (Keating SOF ¶¶ 54-59, 64-69.)  Glidewell and many

other dental labs use the word BruxZir to convey **what** the product is rather than **who** is the source of the product.  (Keating SOF ¶¶ 64-69.)  The undisputed evidence indicates that, when applied to a dental restoration, the term BruxZir immediately conveys to dentists a zirconia product made to be used with bruxers.  (Belton Decl.; Brady Decl.; Campbell Decl.; Colleran Decl.; Jacquinot Decl.; Murphy Decl.; Myers Decl.; Nussear Decl.; Scott Decl.; Stephens Decl.; Sweet Decl.; Tobin Decl.;  Keating SOF ¶¶ 72-73, 75-78; Eggleston Decl., Ex 65 at 12, 14-18; Eggleston Decl., Ex. 66 at 3-5; Eggleston Decl., Ex. 67 at 3-7; Frattura Decl. at ¶¶ 7-9, 18.)

### 4.    Keating's Alternative Argument of Mere Descriptiveness Does Not Constitute An Admission Of Non-Genericness

Highlighting the weakness of its non-genericness argument, Glidewell relies on Keating's Petition for Cancelation in which Keating made the alternative argument, that—if not generic—Glidewell's mark is at least merely descriptive.  Alternative arguments do not constitute admissions.  *Maloney v. Scottsdale Ins. Co.*, 256 Fed. Appx. 29, 31 (9th Cir. 2007); Fed. R. Civ. P. 8(d)(2)-(3).  Indeed, it is common in trademark genericness cases to make an alternative argument of descriptiveness without secondary meaning.  The court's ability to find a mark generic is certainly not abrogated by an alternative argument that the mark is descriptive.  *See CG Roxane LLC v. Fiji Water Co. LLC*, 569 F. Supp. 2d 1019 (N.D. Cal. 2008) (holding mark generic after considering alternative genericness and descriptiveness arguments); *Classic Foods Int'l Corp. v. Kettle Foods, Inc.*, 468 F. Supp. 2d 1181 (C.D. Cal. 2007) (holding mark generic after considering alternative genericness and descriptiveness arguments); *Filipino Yellow Pages*, 198 F.3d 1143 (holding mark generic after considering alternative genericness and descriptiveness arguments).

/ / /

**5.** **Keating's Awareness of Glidewell's Trademark Registration Is Not Evidence Of Distinctiveness In Glidewell's Mark**

Glidewell grossly mischaracterizes the testimony of Keating's witnesses to argue that their awareness of Glidewell's registration and actions since the filing of the suit somehow is evidence of the validity of Glidewell's mark. (Mot., pp. 7-9).   Under Fed. R. Evid. 407, evidence of actions taken by defendants taken to reduce potential liability cannot be relied upon as an admission. *Interactive Health LLC v. King Kong USA, Inc.*, CV06-1902, 2008 U.S. Dist. LEXIS 123559, *20 (C.D. Cal. July 24, 2008) (excluding evidence offered by plaintiffs of defendants' sale of different products in lieu of accused models); *Avery Dennison Corp. v. Acco Brands, Inc.*, CV99-1877, 1999 U.S. Dist. LEXIS 21464, 22 (C.D. Cal. Oct. 12, 1999) (excluding evidence offered by plaintiffs of defendant's change in its packaging).

**a.** **Glidewell Mischaracterizes Keating's Prescription Forms And Internal Documents As Admissions of Validity**

After being sued by Glidewell in this lawsuit, Keating initiated a policy of calling dentists who wrote "BruxZir" or variations thereof on their prescription forms submitted to Keating to (1) educate the dentists as to the existence of BruxZir as a trademark of a competing dental lab, and (2) to confirm that the dentists wanted Keating's all-zirconia crown, and not another dental lab's product.  (Keating SOF ¶¶ 72-75.)  Keating implemented this policy because it had been sued by Glidewell, and it wanted to ensure that it did not mistakenly fulfill any prescriptions from dentists wanting to purchase an all-zirconia crown from Glidewell.  (Mangum Decl., Ex. 53 (Brandon Dep. Tr.), at 47:12 – 48-20). In its motion, Glidewell mischaracterizes Keating's policy as an admission by Keating as to the validity of Glidewell's mark.  (Mot. at 7-9)  As part of its policy, Keating had its employees inform each dentist who wrote "BruxZir," or variations thereof, on their prescription forms that a competing dental lab has a

-11-

registered mark in the name BruxZir.  (Keating SOF ¶ 74.)  That is a factual statement, not a party admission as to the validity of Glidewell's registration.

Every time, the dentists confirmed they were indeed ordering Keating's product and were not confused in any way.  (Keating SOF ¶ 75.)  Indeed, the fact that Keating had to tell the dentists that a competitor owned the mark "BruxZir" just emphasizes that those dentists were not aware it was a trademark.

If Glidewell has to rely on its competitors to tell customers that Glidewell's mark is a trademark, the term is obviously not functioning as an indication of source.  Such evidence only establishes the invalidity of Glidewell's mark.  The undisputed evidence establishes that dentists view the term generically as the name of the product and not as an indication that Glidewell is the source.

### b.  Shaun Keating testimony

Glidewell severely mischaracterizes Shaun Keating's deposition testimony.  (Mot. p. 8).  On the pages cited, Mr. Keating actually testifies that "BruxZir" is not seen by dentists as referring to Glidewell but rather to a "full contoured monolithic zirconia crown for bruxers."  (App. Ev., 85; 2nd Jankowski Decl., Ex. 145 (Keating Dep Tr.) at 113:12 – 115:5).  Indeed, a reading of the complete testimony makes it abundantly apparent that Mr. Keating, when he stated the word is not "used in any other way in the industry" was referencing his preceding testimony that the mark was a generic term in the industry for full monolithic zirconia crowns.  *Id.*  His response related to the entire line of questions, not just the one immediately preceding it.  This is especially apparent as Mr. Keating had just made a clear statement contrary to the assertion Glidewell now makes in its motion.  *Id.*

### c.  Bob Brandon testimony

Glidewell is also severely mischaracterizing Mr. Brandon's testimony.  Although Mr. Brandon did testify that he knew that BruxZir was a trade name

-12-

of Glidewell, he also stated he could not testify as to what Dr. Nussear understood when he ordered a BruxZir zirconia crown from Keating.  Mr. Brandon stated that he should have called the doctor to clarify because Keating was "getting sued over it."  (Mangum Decl., Ex 53 (Brandon Dep. Tr.), at 48:17-20).  So Mr. Brandon's comment was directed to Keating's policy after this suit was filed of calling dentists who wrote "bruxzir" on their prescription forms.  It did not relate to any action by Keating in May 2011 as Glidewell is now claiming.

### d. Keating Internal Documents Do Not Establish That Glidewell's Mark Is Protectable

Keating references two documents that Keating's personnel generated referencing the BruxZir mark as a "proprietary name."  (Mot. p. 9).  Again, these documents, generated on October 18, 2011 and March 8, 2012, respectively, reference Keating's policy after this suit was filed of calling dentists to confirm that they wished to order a Keating KDZ Bruxer crown.  It does not establish that Glidewell has a protectable trademark.  Rather as mentioned above, such efforts of subsequent remedial measures taken by a defendant to reduce potential liability are inadmissible.  Fed. R. Evid. 407.

### 6. Glidewell's Declarations of Undisclosed Witnesses Are Inadmissible

### a. Glidewell's Reliance On Previously Undisclosed Dentist Testimony Is Improper

During discovery, Glidewell failed to identify (1) any third party dentists to testify regarding their understanding of the BruxZir mark; (2) any survey data regarding third party dentists' understanding of the mark; or (3) any expert witnesses to testify about survey data or dentists' understanding of the mark.

Glidewell now relies upon the following untimely evidence in support of its motion:

-13-

- Seven declarations from dentist/customers of Glidewell first noticed by Glidewell as witnesses in this case **seventeen minutes before Midnight on Discovery Cutoff, October 29 2012** (Dr. Doneff; Dr. Newman; Dr. Cohen; Dr. Luke; Dr. Bell; Dr. Toca; Dr. Michiels (*see* App. Evid. Exs. A-F & Q).

- Expert opinion from Glidewell's in-house dentist, Dr. DiTolla, notice of which was received by Keating **nine minutes before Midnight on Discovery Cutoff, October 29, 2012**; and

- Three expert reports received by Keating **seven minutes before Midnight on Discovery Cutoff, October 29, 2012** (Franklyn rebuttal to Boatright rebuttal; Franklyn rebuttal to Eggleston; Goldstein report

For many reasons the Court should not rely on any of this untimely evidence.  To the extent Glidewell wanted to rely upon these witnesses, it could and should have identified them long ago.

### i.   <u>Glidewell's Dentist Witness Testimony Is Not Probative</u>

In any event, the seven dentist declarations and expert declarations Glidewell relies upon in its motion [p. 9-10] are woefully insufficient to support the validity of its mark.  Evidence that a minority of persons use that term to identify and distinguish one source cannot transform the term into a trademark.  Any such evidence that some buyers associate the term with a single source will not change the result.  Since, under the primary significance test, majority usage defines the result, minority use of a term as a trademark cannot change generic significance.  MCCARTHY ON TRADEMARKS, 4TH EDITION, § 12:47 at 12-163.  *In re Recorded Books Inc.*, 42 U.S.P.Q.2d (BNA) 1275, 1997 WL 196608 (TTAB 1997) ("applicant's evidence is [not] sufficient to show that the average purchaser—as opposed to a small subset of purchasers—views RECORDED BOOKS as a trademark for applicant's goods."); *Miller Brewing Co. v. Falstaff*

-14-

*Brewing Corp.*, 655 F.2d 5, 9, 211 U.S.P.Q. (BNA) 665, 668 (1st Cir. 1982); *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 374-275, 207 U.S.P.Q. (BNA) 465 (1st Cir. 1980 ("No amount of purported proof that a generic term has acquired secondary meaning associating it with a particular producer can transform the term into a registrable trademark. *Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990, 995, (7th Cir. 1979).

The dentists/declarants are also inadmissible to the extent they rely on hearsay statements of other dentists. (*See* Keating Objections to Evidence submitted herewith). The statements of the dentists/declarants are also not probative of the understanding of dentists generally, because this 'sampling' of dentists who are Glidewell customers suffers from a selection bias.

Glidewell has not satisfied its ultimate burden of proving its mark is protectable.

### ii.    Glidewell's Expert Testimony Is Not Probative

With regard to expert disclosures, opening reports were due on September 15, 2012 and rebuttal reports were due on October 15, 2012. Glidewell's legal expert, Professor Franklyn, submitted an opening expert report on September 15, 2012, but he did not submit a rebuttal report on October 15, 2012. Glidewell now seeks to rely on several new expert reports produced long after the deadlines. To the extent Glidewell wanted to rely upon the rebuttal reports of Professor Franklyn, DiTolla and Goldstein, it needed to submit timely reports by the deadlines. Keating had no opportunity to depose these witnesses on their late expert disclosures. Furthermore, opinions set forth in these untimely reports regarding dentists' understandings or perceptions are not probative because they fail to follow rigorous standards required for admissible survey data. *See* 6 McCarthy § 32:158 at 32-341; *M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d 1073, 1087 (9th Cir. 2005); *Hodgdon Powder Co., Inc. v. Alliant Techsystems, Inc.*, 512 F. Supp. 2d 1178 (D. Kan 2007).

-15-

**b.**      **Glidewell Did Not Timely Disclose Dr. Goldstein And He Did Not Submit A Timely Expert Report**

Glidewell's untimely disclosed dentist expert, Dr. Goldstein, was not disclosed to Keating until shortly before Midnight on the discovery cutoff, and he did not submit any timely report.  Accordingly, particularly in view of the Court's order denying extension of the case deadlines, Dr. Goldstein's testimony is inadmissible.  In any event, Dr. Goldstein's testimony is not probative on the issue of validity of Glidewell's mark.  Dr. Goldstein states that "dentists would be able to identify the material in the product—zirconia— through the use of "Zir" as the second half of the brand name BruxZir."  (App. Evid., Ex. O, ¶ 17).  Dr. Goldstein thus agrees that dentists would immediately understand that "Zir" means zirconia, without imagination or multistage reasoning.  Dr. Goldstein further admits that the presence of "Brux" will cause dentists to think of bruxism.  (*Id.*).  Dr. Goldstein does not state that imagination or multistage reasoning is needed for dentists to think of bruxers, because no such reasoning is necessary.  Glidewell's in-house dentist, Dr. DiTolla (whose expert designation was also untimely), admits that the terms bruxer and bruxism are taught in dental school, and Dr. Goldstein likewise knows that dentists recognize the term immediately.  (Keating SOF ¶ 5; App. Evid., Ex. O, ¶ 14.)

**c.**      **Professor Franklyn's Testimony Is Inadmissible Legal Opinion And His Untimely Report and Testimony Regarding Undisclosed Dentists Is Inadmissible**

Glidewell relies on the Declaration of David Franklyn, a law professor. In his declaration, Professor Franklyn repeats language from his untimely rebuttal reports where he claims to have interviewed 10 dentist witnesses who were not previously disclosed during the discovery period or in Franklyn's initial report dated September 15, 2012, or in his deposition on October 12, 2012. At his deposition, Franklyn testified repeatedly that he had never spoken

-16-

to a dentist or dental lab and had no experience in the dental industry.  Indeed, the only person Mr. Franklyn spoke to prior to submitting his September 15, 2012 report was Leonard Tachner, Glidewell's counsel.  (2nd Jankowski Decl., Ex. 153 (Franklyn Dep. Tr.), at 29:11-17; 44-45; 96-97; 106-107; 133:6-8; 151-152).  Glidewell has not even attempted to show that Professor Franklyn's untimely rebuttal reports were substantially justified or harmless as required by Fed. R. Civ. P. 37(c)(1).  (See Keating's Objections to Evidence submitted herewith).  Thus, the Franklyn Declaration is entirely improper and should be excluded.

Moreover, the Franklyn Declaration repeats verbatim the text of his late rebuttal reports submitted October 29, 2012.  Both the Franklyn Declaration and his rebuttal reports are inadmissible as untimely served, particularly in view of the Court's denial of Glidewell's Ex Parte Application to Amend Scheduling Order and extend discovery.  Also, reports not timely provided under Rule 26(a) are automatically excluded. See *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); *Jarritos, Inc. v. Reyes*, 345 Fed. Appx. 215, 217 (9th Cir. 2009) (excluding expert witness reports produced after the discovery deadline, even though they were central to party's case and exclusion was highly prejudicial to proponent); *1st Source Bank v. First Resource Federal Credit Union*, 167 F.R.D. 61, 64 (N.D. Ind. 1996); see also *Fu v. Owens*, 622 F.3d 880, 883-84 (8th Cir. 2010).

In addition, Professor Franklyn's testimony regarding previously undisclosed dentists' recent understanding of the mark BruxZir lacks any foundation, is blatant hearsay and is far outside the scope of his one and only timely report served September 15.  Professor Franklyn's testimony should also be excluded because his legal opinions and conclusory testimony are inadmissible under Fed. R. Evid. 702. (See Keating's Objections to Evidence submitted herewith).

**d.** **Glidewell's Witness Testimony And Glidewell's Marketing Practices Establish That BruxZir Identifies The Product, Not Glidewell As The Source**

Glidewell has spent millions of dollars teaching the dental community that the BruxZir mark *is not an indication of Glidewell as the source*. Glidewell has done this, and continues to do this, in two ways: (1) through its sales of zirconia; and (2) through its naked licensing of the BruxZir mark for use with all-zirconia crowns sold by 180 dental laboratories that compete with Glidewell and Keating.

When applied to a dental restoration, the term BruxZir immediately conveys to dentists a zirconia product made to be used with bruxers. Glidewell has spent millions of dollars teaching dentists that BruxZir identifies *a type of crown*, rather than a source of crowns. This is reinforced by Glidewell's "authorized lab" program, which presents dentists with a large number of different dental laboratories competing to sell them their own BruxZir crowns. (Keating SOF ¶¶ 64-69). Just as dentists interpret a "gold crown" to mean a crown made from gold, and an "e.max crown" to mean a crown made from e.max, they interpret a "BruxZir crown" to mean a crown made from BruxZir (a ceramic zirconia).

There are presently about 180 dental labs across the U.S. that offer all-zirconia crowns for sale using Glidewell's mark BruxZir. (Keating SOF ¶¶ 64-66.) These labs are owned independently of Glidewell, and they compete with Glidewell (and Keating) to win the business of dentists. (Mangum Decl., Ex 50 (Shuck Dep. Tr.), at 130:7-15) To become "authorized," a dental lab needs to do only one thing: buy ceramic zirconia from Glidewell to use in making its all-zirconia dental restorations. Glidewell's General Counsel, Keith Allred, confirmed that the 180 authorized labs are authorized to use Glidewell's federally registered trademark on the crowns that the 180 labs sell. (Jankowski

-18-

Decl., Ex. 6 (Allred Dep. Tr.) at 141–142.)  Glidewell does not monitor the authorized labs and does not perform any quality control over the crowns produced by the labs which the labs advertise as "BruxZir" crowns, without identifying Glidewell.  (Keating SOF ¶ 68)

This reinforces for dentists receiving the materials that BruxZir is a name that identifies a *type of ceramic zirconia*, not a name that identifies a source of all-zirconia crowns.  Indeed, the materials teach the dentists the opposite: that they can order a crown made of BruxZir zirconia from any of a long list of authorized laboratories.  From the perspective of a dentist, the BruxZir name is not used in these materials to identify Glidewell as the source of the crown.

### e.    Undisputed Evidence Of Widespread Third Party Use Establishes Genericness Of Glidewell's Mark

In addition to the third party uses of "brux" referenced in Keating's Second Amended Answer and Counterclaims, and prior briefing, Keating has submitted with its Motion for Summary Judgment requesting cancellation of Glidewell's registration, extensive undisputed evidence of widespread third party use of the terms "bruxer," "brux," "zir" and "bruxzir."  (Keating SOF 60-63, 76-78).  Glidewell focuses only on the admittedly generic word "brux".  (Mot. At 13-14).  Yet Glidewell has admitted that both "brux" and "zir" are immediately understood by dentists as meaning "brux" or "bruxism" and "zir" means "zirconia."  (Keating SOF 30-38).  Glidewell has also admitted that "bruxer" is the generic term for the user of the crowns bearing the mark. (Keating SOF ¶¶ 43-46), and that Glidewell adopted the mark at least in part to connote a product useful for bruxers (Keating SOF ¶38).  Thus the mark is generic as a matter of law.  *In re Reed Elsevier Props. Inc.*, 482 F.3d 1376 (Fed. Cir. 2007); *In re State Chemical Mfg. Co.*, 225 U.S.P.Q. (BNA) 687 (TTAB 1985); *In re Mortgage Bankers Association of America*, 226 U.S.P.Q. (BNA) 954 (TTAB 1985).

-19-

Glidewell has submitted no survey to rebut Keating's genericness evidence, its expert rebuttal reports and declarations are inadmissible, and the declarations of previously undisclosed dentist witnesses/Glidewell customers are also inadmissible. By contrast, Keating has submitted extensive undisputed evidence showing the generic use by dentists and dental labs of "brux" and "zir" as well as generic use of "bruxer" and "bruxzir."

Accordingly, summary judgment of genericness is appropriate and Glidewell's motion should be denied.

**C.     Alternatively, The Undisputed Evidence Shows Glidewell's Mark Is Merely Descriptive and Lacks Secondary Meaning**

**1.     If not Generic, BruxZir Is Merely Descriptive, Not Suggestive – No Mental Leap Is Required; Competitors' Need To Use Brux And Bruxer**

A term is suggestive if "imagination" or a "mental leap" is required in order to reach a conclusion as to the nature of the product being referenced. *Filipino Yellow Pages*, 198 F.3d at 1147. A term is descriptive if it communicates about a product without requiring any imagination on the consumer's part. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 632 (9th Cir. 2005). Even if a word describes a single characteristic or property of a product, it can still be a descriptive mark. *CG Roxane*, 569 F. Supp. 2d at 1030.

Contrary to Glidewell's argument [Mot. At 14-18], no imagination or mental leap is necessary with BruxZir. Glidewell admits that dentists know what "brux" and "bruxer" means. They learn it early in dentistry school. Brux and Bruxer are both in the medical dictionary. Glidewell also admits that dentists know what Zir means. "It's "a crown for bruxers," (Keating SOF ¶ 33-34), "if you see brux or you identify somebody with brux or bruxism, think of zirconium. So we put brux and zir together." (Keating SOF ¶ 31). Glidewell's own witnesses testified that Glidewell specifically chose the mark because brux

stands for bruxism and zir for zirconia (Keating SOF 33-37).  Dentists would know what was in the product and what it was for.  On top of that, the word is pronounced exactly the same as "bruxer," the type of patient who would use the product. (Keating SOF ¶¶ 37-53).

Next, Glidewell argues that because the mark does not include the words "crown" or "dental," it must be suggestive rather than descriptive.  (Mot. p. 15).  This shows a lack of understanding of suggestiveness/descriptiveness classifications.  By way of example, the word "gold" is obviously descriptive (and even generic) for gold crowns, and porcelain-fused-to-metal is also descriptive (and even generic) of PFM crowns.  Nor does it matter that Glidewell's crowns may be used for patients other than bruxers.  A mark need not describe *every* use or user of a product to be descriptive of that product

Contrary to Glidewell's claims, the evidence shows that not only do Glidewell's competitors need to use the terms brux and bruxer, they actually use the terms currently. Glidewell points to Drake's mark "ZIR-CAST" as a competitive product. Even this single example actually does use half of the mark—"Zir".  Moreover, Glidewell ignores the evidence of widespread competitors' use of brux, bruxer and zir, even those to which Glidewell itself sent cease and desist letters.  (SOF ¶ 60-63). Therefore, contrary to Glidewell's arguments, the "Competitors' Needs" test does not support a finding of suggestiveness because Glidewell's competitors do indeed need and use the terms at issue to describe their own products.

Glidewell did not coin the word "bruxer," which has existed for decades as a generic term identifying the intended user of Glidewell's products. Rather, Glidewell knowingly adopted a misspelling of a generic word for its mark.  Thus, at a minimum, Glidewell's mark is merely descriptive.

/ / /

/ / /

-21-

## 2.    **Glidewell Has Failed To Prove Secondary Meaning**

"Saying that a trademark has acquired "secondary meaning" is shorthand for saying that a descriptive mark has become sufficiently distinctive to establish "a mental association in buyers' minds between the alleged mark and a single source of the product." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769, 112 S. Ct. 2753 (1992); *Japan Telecom*, 287 F.3d at 875 ("To take a descriptive term out of the public domain, a plaintiff must demonstrate that the relevant buying public accords it secondary meaning"); *Retail Servs.*, 364 F.3d at 539; McCarthy on Trademarks, 4th Edition, § 15:5.    Glidewell   "is not entitled to a presumption of secondary meaning unless the Trademark Examiner required proof of secondary meaning as part of the application for registration of the mark.    *Zobmondo Entm't*, 602 F.3d at 1114, citing *PaperCutter, Inc. v. Fay's Drug Co.*, 900 F.2d 558, 564 (2d Cir. 1990) ("[The] burden [to prove secondary meaning] does not shift upon a decision of the [PTO] to register the mark, absent evidence that the [PTO] registered the mark upon finding that it had acquired secondary meaning.)    The Trademark Examiner did not require such proof.  Thus, because, at a minimum, Glidewell's mark is merely descriptive, Glidewell must satisfy its burden of proving secondary meaning in the mark.  When descriptive marks are especially "weak," as here, the law requires a "strong showing of strong secondary meaning." *Japan Telecom*, 287 F.3d at 873 (citing *Filipino Yellow Pages*, 198 F.3d at 1151).

The critical date for establishing secondary meaning is May 2011, when Keating first entered the market with its KDZ Bruxer product. *Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*, 680 F. Supp. 2d 1107, 1117 (N.D. Cal. 2010) (citing *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985) (en banc)).    Glidewell's advertising and marketing efforts and expenses after that date are irrelevant. *Id.*

### 3. <u>Glidewell's Untimely Disclosed Dentist Witnesses' Testimony Is Inadmissible And Should Be Disregarded</u>

Glidewell relies upon declarations of seven dentists (Memo p. 20; SUF 33), all Glidewell customers who have as recently as October 2012 toured Glidewell's facility  None of these witness names were disclosed to Keating during discovery.  Glidewell has offered no excuse for its failure to disclose the witness names, nor for its legal expert Professor Franklyn's failure to disclose them in his expert report or during his deposition.  Accordingly, for this and other reasons stated in Keating's Objections to Evidence, the dentists' testimony is inadmissible, particularly in view of the Court's denial of Glidewell's *Ex Parte* Application to extend discovery.

In any event, none of these witnesses provide any evidence of their perception that, as of May 2011, the primary significance of Glidewell's BruxZir mark was to indicate Glidewell as the exclusive source of dental crowns bearing that mark.  Moreover, the dentists' testimony is based on their existing relationship with Glidewell and is therefore not persuasive evidence that a significant number of consumers have formed a similar mental association.  *Japan Telecom*, 287 F.3d at 874-75 (finding unpersuasive six declarants who were familiar with plaintiff: "Every small business with a descriptive name can point to at least a few former customers who remember its name . . .  None of that means that the relevant buying public makes the same association.")  In addition, the dentists' statements that they have spoken to other (unspecified) dentists who identify BruxZir with Glidewell lack foundation and constitute hearsay.  *Id.* at n. 1.

### 4. <u>Glidewell's Advertising Teaches That BruxZir Is A Type Of Material, Not A Source</u>

As discussed above, Glidewell's marketing efforts have actually served to disprove secondary meaning in the mark.  Glidewell's advertising and

promotion teaches the dental community that the BruxZir mark *is not an indication of Glidewell as the source*.  Glidewell has done this, and continues to do this, in two ways: (1) through its sales of zirconia; and (2) through its naked licensing of the BruxZir mark for use with all-zirconia crowns sold by 180 dental laboratories that compete with Glidewell and Keating.

In addition, Glidewell's own promotional materials and Dr. DiTolla's videos compare "bruxzir" or "bruxer" crown to a gold crown and porcelain fused to metal crown.  (Keating SOF 55).  These are generic names for types of crowns with which dentists are very familiar.  (Keating SOF 56).  Glidewell also uses the word BRUXZIR as a noun and plural noun, which is further evidence of generic use.  (Keating SOF 57).  Dr. Ditolla even states in his videos that one could even get "a couple of Bruxzirs put in."  (Keating SOF 58) and uses "BruxZir crown" and "full-contour zirconia" interchangeably for educational purposes.  (Keating SOF 59).

## 5. <u>Glidewell's Length and Manner Of Use of BruxZir Disproves Secondary Meaning</u>

Being first to market with a product does not render the product's name distinctive.  *See In re Phoseon Tech. Inc.*, 103 U.S.P.Q. 2d (BNA) 1822 (TTAB 2012).  Secondary meaning must be established through evidence existing at the time the alleged infringer began using the allegedly infringing mark.  *Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*, 680 F. Supp. 2d 1107, 1117 (N.D. Cal. 2010) citing *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985) ("Consequently, only evidence showing use of the mark . . . prior to Defendant's [allegedly infringing] use of the mark is probative of secondary meaning.")

At the time Keating began selling its KDZ Bruxer product in May 2011, Glidewell had used the BRUXZIR mark for less than two years.  Moreover, in this very short time, numerous third parties were already using the terms "brux,"

-24-

"zir," "bruxer" and "bruxzir" in connection with all zirconia crowns. This short period, coupled with the evidence of non-exclusive use, renders it further unlikely that Glidewell developed any appreciable secondary meaning. See *Nartron Corp.*, 305 F.3d at 405, cert denied, 538 U.S. 907, 123 S.Ct. 1486, 155 L.Ed.2d 227 (2003).

### 6.   Glidewell's Use Of The Mark Has Not Been Exclusive

Glidewell relies on the Franklyn declaration for the statement that "BruxZir mark does not exist in a crowded field of similar marks." (Mot. At 24). Even if admissible (which is denied), Professor Franklyn's declaration ignores the undisputed evidence of widespread third party use and registration of marks including "brux," "zir" and "bruxer" and "bruxzir". He also ignored the evidence of phonetic equivalence of the mark BruxZir with bruxer, the intended user of Glidewell's crowns. At his deposition, Professor Franklyn testified that he had no dental industry experience, had not read any dental industry journals and had never spoken to a dentist in connection with this case. (*see* Objections to Franklyn Evidence submitted herewith; 2nd Jankowski Decl., Ex. 153).

Glidewell's reliance on its cease and desist letters for evidence of secondary meaning is also misplaced. (Mot. at 24). Glidewell's own cease and desist letters state that "BRUXZIR and BRUXER sound the same." (Keating SOF 52). The undisputed evidence establishes that Glidewell's use of its mark has not been exclusive, even in the short time between launch of its BruxZir crowns in June 2009 and Keating's first sales of KDZ Bruxer crowns in May 2011.

### IV.  CONCLUSION

For the foregoing reasons, Keating respectfully requests that the Court deny Glidewell's motion and, instead, enter judgment in favor of Keating on Keating's Motion for Summary Judgment of Cancelation of Glidewell's Trademark Registration.

-25-

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  November 26, 2012_   By:  /s/ Lynda J. Zadra-Symes
Lynda J. Zadra-Symes
Jeffrey L. Van Hoosear
David G. Jankowski
Attorneys for Defendant and Counterclaimant,
KEATING DENTAL ARTS, INC.

14377971
112012

-26-