1   LEONARD TACHNER, A PROFESSIONAL LAW CORPORATION
    Leonard Tachner, Esq. (State Bar No. 058436)
2   17961 Sky Park Circle, Suite 38-E
    Irvine, California 92614-6364
3   (949) 752-8525 Telephone
    (949) 955-2415 Telefax
4
    Attorney for Plaintiff/Counter-Defendant
5   James R. Glidewell Dental Ceramics, Inc. dba
    Glidewell Laboratories
6

7

8                   **UNITED STATES DISTRICT COURT**
                    **CENTRAL DISTRICT OF CALIFORNIA**
9

10

11   _____         Case No. SACV11-01309-DOC(ANx)
                                    )
12   JAMES R. GLIDEWELL DENTAL      )
     CERAMICS, INC. DBA             )
13   GLIDEWELL LABORATORIES, a      )    **EXPERT REPORT OF DAVID J.**
     California corporation,        )    **FRANKLIN with APPENDIX I**
14                                  )
              Plaintiff             )
15                                  )
                                    )
         vs.                        )
16                                  )
     KEATING DENTAL ARTS, INC., a   )
17   California corporation,        )
                                    )
18                                  )
              Defendant.            )
19                                  )
     _____    )
20

21

22

23

24

25

26

27

28

**EXHIBIT 149**
-71-

Expert Report of David J. Franklyn

In the matter of:  James R. Glidewell Dental Ceramics, Inc. (hereinafter "Glidewell") v. Keating Dental Arts, Inc. (hereinafter "Keating"), pending in the United States District Court for the Central District of California, Case No. SACV11-01309-DOC(ANx).

1.  I am a tenured, full professor of law, specializing in intellectual property and trademark law, at the University of San Francisco School of Law ("USF").  I am the Executive Director of the McCarthy Institute for Intellectual Property and Technology Law at USF and Director of the Center for the Empirical Study of Trademark Law (CEST) in the McCarthy Institute.  I am the Director of the Masters of Law Program for U.S. and foreign lawyers in Intellectual Property Law at USF.  I teach and write primarily about trademark law.  I am editor in chief and co-author of McCarthy's Desk Encyclopedia of Intellectual Property Law.  I have consulted and/or served as an expert witness in dozens of trademark cases.  I am a licensed attorney.  I have written law review articles about trademark law published in the Harvard Journal of Law and Technology (forthcoming), Hastings Law Review, Wisconsin Law Review, Southern California Law Review and the Case Western Law Review.  A copy of my CV is attached.

2.  My hourly rate in this matter is $600.  In past two years, I have testified in an arbitration matter, Paramount v. Sun Pacific Inc., in Bakersfield California.  I have also been deposed in that matter and in Herbalife vs. Addidas (Fed. Dist. Oregon) and  Habush v. Cannon, a right of publicity case in state court in Wisconsin.

3.  I was retained in this matter by counsel for the plaintiff, Glidewell Laboratories, to render opinions as to whether (1) Plaintiff's registered mark BruxZir  is predominantly seen as the generic name for the service of making solid zirconia dental crowns and bridges, or for the material from which those crowns and/or bridges are made, by relevant consumers in the

1

EXHIBIT 149

relevant markets or submarkets in the United States; (2) whether Plaintiff's registered trademark BruxZir is a strong mark in the relevant markets in which Plaintiff uses it; (3) whether there is a close overlap between the markets in which Plaintiff uses its BruxZir mark and the markets in which the Defendant uses its KDZ Bruxer mark; (4) whether the Defendant's mark, KDZ Bruxer, is likely to cause relevant consumers in the relevant markets to be confused as to its possible affiliation with Plaintiff's registered mark BruxZir.

4.  If called to testify in this matter, I will testify as follows:

5.  I was provided with the following documents by counsel:   Pleadings, Defendant's Motion For Summary Judgment; Plaintiff's Opposition For Summary Judgment; Court's Order Denying Motion For Summary Judgment; Discovery Responses of Plaintiff; Discovery Responses of Defendant; Defendant's Motion For Leave to Amend; Draft of Plaintiff's Opposition To Motion.

6.  In addition to reviewing these documents, I conducted, or caused to be conducted under my supervision, the following searches of the United State Patent and Trademark data bases and on the internet:

    a.  I visited and reviewed the websites of Plaintiff and Defendant on several occasions between August 15, 2012 and September 15, 2012;

    b.  I conducted internet searches for brux, bruzir, bruxism, bruxer, bruxer crown, bruxing , zir, zirconia, and solid zirconia and zirconia crown between August 15, 2012 and September 15, 2012.

    c.  The following Primary United States Patent and Trademark TESS (Trademark Electronic Search System) Searches were conducted between August 15, 2012 and September 15, 2012. TESS searches are routinely conducted to determine whether a particular mark is

2

**EXHIBIT 149**

-73-

available for registration or has already been registered by another entity.  TESS searches are also useful in determining the universe of registered marks in a particular market or submarket.  I also conducted, or caused to be conducted, Trademark Document Retrieval ("TDR") and/or Google searches where appropriate, in an attempt to find additional market and brand information regarding Zirconia based dental crowns, bridges and appliances. The primary searches were designed to elicit results regarding the marks at issue in this case and the constituent parts of the BruxZir mark.

1) **PRIMARY TESS SEARCH 1 - "BruxZir":** The first search conducted was for the term "BruxZir" in the most broad terms TESS will allow to search for a word mark or in Boolean terms "(BruxZir)[COMB]." The only results were the pending and registered Glidewell marks.

2) **PRIMARY TESS SEARCH 2 - "BRUXER":** The second search was for the term "Bruxer" in the most broad terms TESS will allow  to search for a word mark,  or in Boolean terms "(Bruxer)[COMB]." The only result was for Keating Dental Arts' pending mark.

3) **PRIMARY TESS SEARCH 3 - "*BRUX*":** The third search executed was the more broad search of the root "Brux" (with root expanders) , or in Boolean "(*BRUX*)[COMB]." There are 51 Pending/Registered/Dead ("PRD") records on the USPTO's Trademark Electronic Search System  ("TESS") that use the root *brux*  within the wordmark component of their trade or service mark. Twenty (20) of these PRD records are related to the dental field.  Nine (9) of the records are abandoned/dead. Only six records (6) are generally related to tooth repair/prosthesis/crowns/bridges, etc. two of the marks are owned by Plaintiff Glidewell, one is owned by Defendant Keating Dental Labs, Inc., two pending (and junior to the Glidewell and Keating marks) are

3

EXHIBIT 149

-74-

owned by competitors to both Glidewell and Keating, and one (Dr. Brux) while it
would appear to be a genuinely competing mark is in fact presently being used for
mouth guards for individuals who suffer from bruxism.

4) <u>PRIMARY TESS SEARCH 4 - "*ZIR":</u>The fourth search executed was a search of the
suffix "zir" (with a leading root expander) , or in Boolean "(*ZIR)[COMB]." This
returned 61 results, many of which are various forms of "dental ceramics" and
include the pending and registered BruxZir marks.  Notably, none of the search results
are homophones/phonetically similar to "BruxZir" or "Bruxer" aside from the
Glidewell marks.

5) <u>PRIMARY TESS SEARCH 5 - "*ZIR*":</u>The fifth search executed was a search of the
root "zir" (with a leading and trailing root expanders) , or in Boolean
"(*ZIR*)[COMB]." This returned 489 results, 101 of which are various forms of "dental
ceramics" or associated services and include the pending and registered BruxZir
marks. Notably, none of the search results are homophones/phonetically similar to
"BruxZir" or "Bruxer" aside from the Glidewell marks.

d.  The following Secondary United States Patent and Trademark TESS (Trademark Electronic
Search System) Searches were conducted between August 15, 2012 and September 15,
2012. These searches were designed to elicit results within the relevant International
Codes/Goods and Services descriptions based on the Primary TESS Search Results for the
various permutations of the root "brux," namely, bruxer, bruxzir,  bruxing, and bruxism
within International Classes 005, 010,  040, and 044. These International Classes were
chosen as they encompass the trademarks and service mark classes observed in the Primary
Searches for Brux, Zir, Bruxer and BruxZir, above.

4

EXHIBIT 149
-75-

1) <u>**SECONDARY TESS SEARCH 1 - "BRUXER" BASED SEARCHES:**</u> The first secondary search executed was a search of the TESS database for marks that use the term "bruxer" within their Goods and Services Description.

The first sub - search in Boolean was  ((IC WITH"005") SAME BRUXER) [GS]- which equates to a mark with international code "005" with the word "Bruxer" in the goods and services description. No results.

The second sub - search in Boolean was ((IC WITH"010") SAME BRUXER) [GS]- which equates to a mark with  international code "010" with the word "Bruxer" in the goods and services description. No results.

The third sub - search in Boolean was ((IC WITH"040") SAME BRUXER) [GS]- which equates to a mark with international code "040" with the word "Bruxer" in the goods and services description. No results.

The fourth sub-search in Boolean was ((IC WITH"044") SAME BRUXER) [GS]- which equates to a mark with international code "044" with the word "Bruxer" in the goods and services description. No results.

2) <u>**SECONDARY TESS SEARCH 2 -  "BRUXZIR" BASED SEARCHES:**</u> The second secondary search executed was a search of the TESS database for marks that use the term "bruxzir" within their Goods and Services Description. If the term "bruxzir" had become generic for a zirconia crown or bridge, one would expect (particularly in light of the number of "*brux*" and "*zir*" based hits for dental related goods and services) for the term to be observed within the goods and services description. It did not.

5

**EXHIBIT 149**

-76-

The first sub - search in Boolean was ((IC WITH"005") SAME BRUXZIR) [GS]- which equates to a mark with international code "005" with the word "Bruxzir" in the goods and services description. No results.

The second sub-search in Boolean was ((IC WITH"010") SAME BRUXZIR) [GS]- which equates to a mark with international code "010" with the word "Bruxzir" in the goods and services description. No results.

The third sub-search in Boolean was ((IC WITH"040") SAME BRUXZIR) [GS]- which equates to a mark with international code "040" with the word "Bruxzir" in the goods and services description. No results.

The fourth sub-search in Boolean was((IC WITH"044") SAME BRUXZIR) [GS]- which equates to a mark with international code "044" with the word "Bruxzir" in the goods and services description. No results.

3) <u>SECONDARY TESS SEARCH 3 - "BRUXING" BASED SEARCHES</u>: The third secondary search executed was a search of the TESS database for marks that use the term "bruxing" within their Goods and Services Description. If the term "bruxzir" had become generic for a zirconia crown or bridge, one would expect for the term "bruxing" to be observed within the goods and services description for companies that make crowns and bridges in relation to a zirconia crown or bridge (particularly in light of the number of "*brux*" and "*zir*" based hits for dental related goods and services) and the term "bruxing" is not part of any standard goods and services definition. Other than the abandoned mark for "Enamelsafe" applied for by Dental Technologies, Inc., which explicitly refers to "bruxing guards," it did not.

6

**EXHIBIT 149**

The first sub search in Boolean was ((IC WITH"005") SAME BRUXING) [GS]- which equates to a mark with international code "005" with the word "Bruxing" in the goods and services description. No results.

The second sub-search in Boolean was ((IC WITH"010") SAME BRUXING) [GS]- which equates to a mark with international code "010" with the word "Bruxing" in the goods and services description and turned up five results. None of the resulting search hits were related to zirconia bridges or crowns, rather they were trademarks for goods related to the treatment of the condition bruxism - namely devices that measure the patient's teeth grinding, mouth guards, and electronic anti-grinding devices. Additionally, none of the trademarks were even remotely phonetically similar to the term "bruxzir" or "bruxer" other than "Bruxometer."

The third sub-search in Boolean was (IC WITH"040") SAME BRUXING) [GS]- which equates to a mark with international code "040" with the word "Bruxing" in the goods and services description.  No results.

The fourth sub-search in Boolean was ((IC WITH"044") SAME BRUXING) [GS]- which equates to a mark with international code "044" with the word "Bruxing" in the goods and services description.  No results.

4) <u>**SECONDARY TESS SEARCH 4- "BRUXISM" BASED SEARCHES:**</u> The fourth secondary search executed was a search of the TESS database for marks that use the term "bruxism" within their Goods and Services Description. If the term "bruxzir" had become generic for a zirconia crown or bridge, one would expect  for the term "bruxism" to be observed within the goods and services description for companies that make crowns and bridges in relation to a zirconia crown or bridge (particularly in

7

**EXHIBIT 149**
-78-

light of the number of "*brux*" and "*zir*" based hits for dental related goods and services and crowns/bridges particularly) and the term "bruxing" is not part of any standard goods and services definition. Again, it did not. The resulting records all dealt with the treatment/prevention of bruxism as a condition via mouth guards, splints, electronic devices, etc.

The first sub-search in Boolean was ((IC WITH "005") SAME BRUXISM)[GS] which equates to a mark with the international code "005" with the word "bruxism" in the goods and services description. I turned up one result, that was abandoned, for the use of Cannabis Sativia L for the treatment of bruxism.

The second sub-search in Boolean was ((IC WITH "010") SAME BRUXISM)[GS] which equates to a mark with the international code "010" with the word "bruxism" in the goods and services description. I turned up one result. None of the resulting search hits were related to zirconia bridges or crowns, rather they were trademarks for goods related to the treatment of the condition bruxism - namely devices that measure the patient's teeth grinding, mouth guards, and electronic anti-grinding devices. Additionally, none of the trademarks were even remotely phonetically similar to the term "bruxzir" or "bruxer" other than "Therabrux," and "Brux-Eze" - both of which were treatment devices.

The third sub-search in Boolean was ((IC WITH "040") SAME BRUXISM)[GS] which equates to a mark with the international code "040" with the word "bruxism" in the goods and services description. No results.

8

**EXHIBIT 149**
-79-

The fourth sub-search in Boolean was ((IC WITH "044") SAME BRUXISM)[GS] which equates to a mark with the international code "044" with the word "bruxism" in the goods and services description. I turned up 1 record, "SnorePro" for "creating and fitting of apparatus for use in the prevention of . . . bruxism . . .; treatment of . . . bruxism."

e.   I have also reviewed numerous web searches to determine whether or not monolithic or solid zirconia crowns are referred to as "bruxer crowns." The first use in commerce of the BruxZir mark is claimed to be June 6, 2009, and the BruxZir mark was applied to the packaging of a zirconia crown as of at least June 17, 2009 (per documents filed with the USPTO).

A search of online dental magazines i.e. Dental Economics and Dentistry Today refer to zirconia crowns as "zirconia crowns" or "all zirconia crowns" as opposed to bruxor/bruxer/ bruxzir crowns. Similarly the American Dental Association's website does not refer to an all zirconia crown with any form of the root "brux."

When one types the search term "bruxer crown" into Google, at least as of September 15, 2012, the search engine automatically corrects the search to "bruxzir crown" and all but one of the first five pages of results are clearly referring to the Glidewell BruxZir product. When you force Google to search instead for a "bruxer crown" one of the first search results that comes up is Barth Dental Laboratories which offers a "Z Brux Crown" and makes reference to a March 2011 article in Dental Economics by Dr. Gordon Christensen which discusses (according to Barth's website) "solid zirconia bruxor crowns." However a simple web search for the article notes that Glidewell is the initiator of the solid zirconia tooth restoration, the article is in fact largely about BruxZir and at no point during the article is any

9

EXHIBIT 149

-80-

zirconia crown or bridge referred to as a bruxer, bruxor, or is the root "brux" used anywhere other than in the BruxZir product's name.  Furthermore, the splash page for Barth Dental Laboratories advertizes $40 off your first "bruxzir" crown, one must asume that Barth is either such a new BruxZir certified lab that their webpage has numerous typos on it while they come up to speed, or they are attempting to freeride on the advertizing generated by the network of over 170 BruxZir certified labs. Additional hits are found for the York Dental Lab "Bruxer" crown, which, apparently, is such a new product it does not appear on York's "Crown & Bridge RX" form currently available from the site.  Mascola Esthetics Dental Lab which uses  Cercon Zirconia to make the "Xtreme Bruxer," but of course, according to the internet archive the page first appeared May 15, 2011.  Showcase Dental Lab had a "Zir-Bruxer," however there is no evidence that the product predated the BruxZir product as a February 2, 2011 snapshot of their homepage shows that the site was still under construction. R-Dent Dental Labs apparently made a "R-Brux" crown, though there is no residual evidence of its existence other than a single mention within a YouTube video entitled "How to adjust the  Bruxzir Crown" dated February 18, 2011, a further review of the website shows that they are in fact a licensed BruxZir lab, suggesting that R-Dent was attempting to differentiate its finished product created from BruxZir block from the roughly 170 other labs nation-wide  that are constructing  bridges from the same material.

7.   In my opinion, Plaintiff's BruxZir mark was not the generic name *ab initio,* and has not subsequently become the generic name, for either Plaintiff's service of making solid zirconia crowns or for Plaintiff's provision of the material out of which such crowns are made by approved labs for dentists.

**EXHIBIT 149**

-81-

8. A mark is categorized as "generic," and thus not entitled to legal protection, under U.S. trademark law, when it is seen by a majority of relevant consumers in the relevant market(s) as the generic name for a particular service or good.  See e.g., *King-Seeley Thermos Co. v. Aladdin Indus., Inc.*, 321 F.2d 577, 580 (2d Cir. 1963).

9. Here, the relevant services are Glidewell's service of constructing (to order for particular dentists) solid zirconia dental crowns or bridges, or provisioning solid zirconia block material to approved labs, to be milled into custom made zirconia crowns.

10. Here, the relevant products are the particular all zirconia crowns that Glidewell labs fabricates for dentists and the particular zirconia material that Glidewell sells to approved labs to custom-make their own solid zirconia crowns for particular patients. According to the Glidewell "BruxZir" website there are currently 172 labs in the United States who use Glidewell "BruxZir" materials in the fabrication of solid zirconia crowns; 26 of whom have an authorized BruxZir Zirconia Milling Systems on-site. Additionally, there are three international labs that service the United States with BruxZir based custom-made solid zirconia crowns. There are also 6 similarly situated labs in Canada and 3 international outsourcing labs.

11. The relevant consumers for restorations are dentists for Glidewell's fabricated crowns and approved labs for material.

12. The relevant markets are the markets for either (1) Glidewell's custom-made crowns or bridges or (2) for Glidewell's zirconia material which is supplied to approved labs who in turn use it to make solid crowns or bridges.

13. The Plaintiff's registered trademark "BruxZir" is, in my opinion, a suggestive mark because it suggests a particular quality or characteristic of the goods and services Glidewell provides.  A

11

**EXHIBIT 149**

-82-

mark is categorized as either fanciful, arbitrary, suggestive, descriptive or generic. See *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976). Plaintiff's mark is suggestive because it suggest some connection between the service of zirconia crown manufacturer for patients who suffer from "bruxism" – which is the condition of grindings ones teeth. Glidewell's crowns are not used only by people who suffer from this condition; they are used by a variety of patients who choose to have solid zirconia crowns due to tooth damage caused by conditions other than bruxism or for purely cosmetic reasons.

14. A search of the internet and of the USPTO data bases reveals that the generic name for solid zirconia crowns is "solid zirconia," "full contour zirconia," "total zirconia," or "monolithic zirconia." See, e.g. http://www.ada.org/productguide/c/125/Crown-and-Bridge  A search of the internet and of the USPTO data bases reveals that the generic name for the material out of which such crowns are made is "zirconia" or "zirconia crowns." See, e.g. Primary TESS Search 3 and 4, *supra*; *see also* http://www.ada.org/productguide/c/125/Crown-and-Bridge. Further investigation suggests that the only individuals who are attempting to refer to an all-zirconia crown or bridge are those that have either a vested interest in free riding on the BruxZir name due to their position as a market leader, or are in fact selling a finished product made from BruxZir materials.

15. It is my understanding that the Defendant in this matter, Keating Dental Labs, has argued that Plaintiff's registered trademark BruxZir is generic because it is phonetically equivalent to the word "bruxer," and "bruxer," in turn, is the slang term used by dentists to refer to people who have the condition of bruxism (teeth grinding).

16. In my opinion, this argument is not consistent with the way in which Plaintiff's mark BruxZir is used or perceived in the relevant marketplace. Firstly, there is no phonetic equivalence because

12

**EXHIBIT 149**
-83-

BruxZir has a distinct Z sound not present in bruxer. Secondly, Plaintiff's mark, BruxZir, cannot be judged solely on its phonetic (audible) meaning or connotation. Under United States trademark law, a mark should be judged based on its "sight, sound and meaning." See *In re National Data Corp.*, 753 F.2d 1056, 1058, 224 U.S.P.Q. (BNA) 749, 751 (Fed. Cir. 1985) Plaintiff's mark BruxZir does not appear, on sight, to be equivalent to the slang term "bruxer." Plaintiff's mark BruxZir also does not mean the same thing as the slang term "bruxer." Plaintiff's mark is a composite of the root pre-fix "brux" and the root pre-fix "zir." Brux is taken from "bruxism" and "zir" is taken from "zirconium." Dentists familiar with Plaintiff's services and products would likely predominantly perceive its mark BruxZir as a combination of these two roots (brux and zir) because it involves the use of solid *zir*conia to treat the results of teeth that have been ground by *brux*ism. Dentists familiar with Plaintiff's goods and services would not be likely to predominantly perceive its mark BruxZir as the equivalent of the word "bruxer" – i.e., as the slang term for people who suffer *from bruxism.*

17. In my *search*es of the USPTO data bases and of the relevant markets on the internet, I found no use of BruxZir as a slang term by dentists for people who suffer from bruxism.

18. Moreover, even if BruxZir were perceived by most dentists most of the time as the phonetic equivalent of BruxZir, which it apparently is not, that would not render BruxZir a generic mark. To be rendered generic, it would have to be shown that dentists predominantly view BruxZir as the name for either the service of making solid zirconia crowns or for the material that is used to make those crowns.

19. In my searches detailed in paragraph 4 above, I found no use of the words "BruxZir" or "bruxer" as the generic name of either custom-made solid zirconia crowns or as the generic name of the material that is used to make such crowns. (See Primary TESS Searches 1 and 2; Secondary TESS

**EXHIBIT 149**

Searches 1 and 2, *supra*.)  Indeed, I found no use of these terms as generic names for any type of crown or bridge or related materials within the standard or custom goods and services descriptions. Instead the related terms "brux," "bruxism" and "bruxing" have been used predominantly to describe the treatment/prevention of bruxism as a condition via mouth guards, splints, electronic devices, etc. (See e.g., Primary TESS Search 3 and Secondary TESS Searches 3 and 4, *supra*. )

20. It is further my opinion that Plaintiff's registered mark "BruxZir" is a strong mark  -- both linguistically and from a market penetration perspective – for the goods and services that Glidewell provides.  A strong mark is entitled to greater protection under U.S. trademark law. See e.g., *Nike, Inc. v. Just Did It Enterprises*, 6 F.3d at 1231 (C.A.7 (Ill.), 1993), quoting *Squirtco v. Seven-Up Co.*, 628 F.2d at 1091 (8th Cir.1980).

21. BruxZir is strong linguistically in the relevant markets and sub-markets.  A search of the USPTO data bases for registered, pending, cancelled, or abandoned marks indicates there are only five marks used in commerce that sound anything like BruxZir for use in connection with either dental crowns or with constitutive materials.  The five marks are: 1) Plaintiff's registered mark, 2) Plaintiff's pending mark, 3) Defendant's challenged mark "KDZ Bruxer," 4) "GPS BruxArt" ( a competitor's junior pending mark), and 5) "BruxThetix" (another competitor's junior pending mark).  This is not a crowded field in which several companies are using a mark similar to BruxZir to sell similar products or services.  A mark that has relatively unique linguistic recognition in a given field is a strong mark.

22. BruxZir also is strong from a market penetration perspective.  A mark is strong from a market penetration perspective when it is widely recognized by relevant consumers in a particular market.  See e.g., *Duncan Mcintosh Co. v. Newport Dunes Marina LLC,* 324 F.Supp.2d 1083-1084

**EXHIBIT 149**

(C.D. Cal., 2004) quoting *Int'l Jensen,* 4 F.3d at 823*; Vision Sports,* 888 F.2d at 613*; California Cooler, Inc. v. Loretto Winery, Ltd.,* 774 F.2d 1451, 1455 (9th Cir.1985). Google, for example, is both linguistically strong and strong from a market perspective in the search engine services market. Google's market recognition strength derives from the fact that it enjoys over 70% of the U.S. search market. Glidewell is the dominant provider of solid zirconia crowns and of the material used to make them. Since its inception, it has spent about three million dollars in advertising its products and services under the BruxZir mark. Plaintiff's responses to discovery. It has a dominant market share in the relevant markets. By all indications, the BruxZir mark is extremely well known by dentists in the United States. Indeed, within the dental market, it would likely meet the requirements for being a nationally famous mark. It is therefore my opinion that BruxZir is a strong trademark, both linguistically and from a market penetration perspective.

23. It is further my opinion that Plaintiff Glidewell and Defendant Keating are both selling goods and services in the same or highly overlapping markets. As stated above, Glidewell is the market leader in provision of custom-made solid zirconia crowns. A review of Keating's website reveals that it is in the same market.

24. Finally, it is my opinion that dentists looking for makers of solid zirconia crowns are likely to be confused as to the possible affiliation between BruxZir and KDZ Bruxer. Although dentists are presumably sophisticated consumers, the marks at issue here are highly similar and the services are very close if not identical. The addition of the KDZ pre-fix by Keating is not, in my view, sufficient to foreclose the risk of significant confusion as to an affiliation between these two competitors. This is so because of the similarity of the dominant aspects of the two marks – BruxZir and Bruxer. Moreover, Keating's use of the "Z" in their KDZ Bruxer mark reinforces the

15

**EXHIBIT 149**

-86-

potential erroneous affiliation with the BruxZir mark. One would have thought Keating Dental

Arts would call their zirconia crowns "KDA Bruxer" at best, so as to show that they come from

Keating Dental Arts. By adding a Z, the Keating mark causes a mental association with the Z in

Glidewell's BruxZir mark. As it stands, there is a significant risk that Keating will be able to trade

on the good will and fame of Glidewell – which has developed the BruxZir mark as the sterling

brand for solid zirconia crowns in the minds of dentists. Defendant has produced orders from

dentists showing numerous examples of actual confusion. This is relevant to show confusion is

not only possible, but is occurring. It is not, as Keating suggests, evidence that BruxZir is

predominantly seen as the generic name for solid zirconia crowns in the relevant marketplace.

25. Keating has several other marks it could use to name its goods and services without choosing to

use the name Bruxer for solid zirconia crowns. Indeed, the other major competitors in this field

do not use bruxer or any variation of the word "brux" as part of their marks for solid zirconia

crowns or for the material used to make such crowns. There is therefore no need in the

relevant market to copy or imitate the mark BruxZir linguistically to compete.

Respectfully submitted this 15th day of September 2012.


David J. Franklyn
Professor of Law
Director, McCarthy Institute for Intellectual Property and Technology Law
University of San Francisco School of Law

16

**EXHIBIT 149**

## APPENDIX I

**David J. Franklyn**

I.     515 Barbara Way

II.    Hillsborough, California 94010

(415) 422-6229 (work); (650) 274-4970 (cell); franklyn@usfca.edu

## ACADEMIC APPOINTMENTS

University of San Francisco School of Law, 2000-present

   Professor of Intellectual Property Law

   *Director, J. Thomas McCarthy Institute for Intellectual Property and Technology Law*

   *Director, Center for Empirical Study of Trademark Law (CEST)*

   *Director, Domestic and International LL.M. Program in Intellectual Property Law*


   Subjects Taught:  Trademark Law; Copyright Law; International Intellectual Property Law; International Trademark and Copyright Law; Intellectual Property Survey; Intellectual Property Theory Seminar, Right of Publicity, Moral Philosophy Seminar


University of California, Hastings College of Law, Visiting Professor of Law, January 2006-May 2007; January 2007-June 2007

**EXHIBIT 149**

-88-

Salmon P. Chase College of Law, Northern Kentucky University

    Associate Professor of Law, 1999 - 2000

    Assistant Professor of Law, 1996 - 2000

    Lukowsky Award for Outstanding Professor of the Year, 1999

University of Cincinnati College of Law

    Visiting Assistant Professor of Law, August 1999-December 1999

## PUBLICATIONS/RESEARCH

A Property Theory of Trademark Law (essay in progress)

Trademarks as Keywords:  Beyond Confusion (essay in progress)

An Empirical Study of Trademarks as Keywords:  Confusion, Dilution and Diversion (multi-scale empirical research underway in Europe and U.S.)

An Empirical Study of the Right of Publicity and the First Amendment (review of all U.S. right of publicity cases involving first amendment/free speech issues since 1980 to determine common decisional factors)

MCCARTHY'S ENCYCLOPEDIA OF INTELLECTUAL PROPERTY LAW, editor-in-chief and coauthor with J. Thomas McCarthy and Roger Schechter (3rd Ed 2005)

Debunking Dilution Doctrine:  Justifying the Anti-Free-Rider Principle in American Trademark Law, 56 HASTINGS LAW JOURNAL 117 (2004)

Owning Words in Cyberspace:  The Accidental Trademark Regime, 2001 WISCONSIN LAW REVIEW 1251 (2001)

18

**EXHIBIT 149**

-89-

The Apparent Manufacturer Doctrine, Trademark Licensors & the Third Restatement of Torts, 49 CASE WESTERN RESERVE LAW REVIEW 762 (1999)

Toward A Coherent Theory of Strict Tort Liability for Trademark Licensors, 72 SOUTHERN CALIFORNIA LAW REVIEW 1 (1998)

The Third Restatement of Torts: Symposium Introduction, 26 NORTHERN KENTUCKY LAW REVIEW 531 (1999)

## OTHER WORKS IN PROGRESS

Trademark Use, Collateral Value and Market Allocation in Keyword Advertising Cases

The First Amendment as a Market Allocation Device in Right of Publicity Cases

Towards a Comprehensive Theory of Add-On Value, Collateral Rights and Free-Riding in Intellectual Property Law

## EDUCATION

University of Michigan Law School, J.D., 1990, cum laude, Order of the Coif (graduated in top 10% of class)

Evangel College (Springfield Mo), B.A., 1983, magna cum laude, History, Philosophy, Religion; Outstanding Philosophy Graduate; Baccalaureate Speaker, 1983

## PROFESSIONAL EXPERIENCE

19

EXHIBIT 149
-90-

**Franklyn IP Consulting**, San Francisco, Ca, 2000-present

I have served as a consultant and/or expert witness in numerous IP cases, on behalf of several individuals and corporations, including, among others:

**Representative Clients**:

BUGATTI

RAYTHEON (defense contractor)

FORAY TECHNOLGIES

FLOWIL, INTERNATIONAL (Sylvania lighting mark)

HERBALIFE

ALLERGEN (BOTOX)

MAUI PINEAPPLE

CONVERSE

BELVADERE VODKA

MOET HENNESEY

MICROSOFT

SONIA DAKAR COSMETICS

KING OF THAI NOODLES

LSI INDUSTRIES

PIZZA MAN

GoGo SPORTS

LEVI STRAUSS

NIKE

NISSAN

20

**EXHIBIT 149**

-91-

VOLKSWAGEN USA

ION MEDIA NETWORKS

PURITY COSMETICS

ESTATE OF SIR ARTHUR CONNAN DOYLE (protecting SHERLOCK
HOLMES)

ESTATE OF WILLIAM CASTE (producer of Rosemary's Baby)

HARD ROCK CAFÉ

ING FERTILITY

FIRST NIAGRA INSURANCE

CRISTOFF (against TASTERS CHOICE (owned by NESTLE))

ART ATTACKS INC. (against MGA TOYS in BRATZ dolls litigation)

DIOPTI CS MEDICAL PRODUCTS

WINDOW WORLD

BAD BOY INC

SILVERS (against Google)

DUFF (against True Religion Jeans)

SUNDBERG

ISABELA'S KITCHEN

BIG ISLAND CANDIES

BLUE SHIELD OF CALIFORNIA

IGB ENERGY GROUP

HOOD RIVER DISTILLERIES

THE ROLL GROUP/Paramount Citrus (CUTIES brand oranges)

GERAWAN FARMS (PRIMA brand fruit)


**<u>Nature of Work</u>**:

21

**EXHIBIT 149**

-92-

I have written expert reports, been deposed, drafted briefs, designed surveys, filed trademark applications, drafted license agreements, drafted settlement agreements, prepared counsel for oral argument and offered counsel on litigation strategy in trademark, trade secret, copyright and right of publicity cases.

**Law Firm Experience**

Mayer Brown, Litigation Attorney, Chicago, IL, 1991-1996

United States District Court for the Eastern District of Michigan
   Law Clerk to the Honorable John Feikens, 1990 -1991

Sonnenschein, Nath & Rosenthal, Chicago, Summer Associate, 1990

O'Melveny & Myers, Los Angeles, Summer Associate, 1989

Mayer Brown, Chicago, Summer Associate, 1988

**Prior Teaching Experience**

Pater Noster High School, *Teacher & Dean of Students*, Los Angeles, 1984-87

**PRESENTATIONS AND CONFERENCES**

The McCarthy Institute Goes to New York City.  Planned, organized and spoke at conference to be hosted by Time Warner and Co-Sponsored by

22

**EXHIBIT 149**
-93-

Microsoft at Time Warner in New York, February 9, 2012 (covering

gTLDS, DMCA, SOPA, PIPA, etc.)


Speaker, Organizer, Moderator, Sponsor, The McCarthy Institute Goes to

Redmond:  Trademark Law and its Challenges in 2011, Redmond,

Washington,

Co-Hosted with Microsoft's Trademark Department at Microsoft; panels on

dilution; keyword advertising; Chinese trademark law; ICANN's planned

roll-out of new gTLds; keynote address by J. Thomas McCarthy; Horacio

Gutierrez (Head of IP-Global, Microsoft; and Judge Kong, Chief Judge,

Chinese Supreme Court for IP).  I presented my current empirical research

on keyword advertising, trademarks, and consumer perceptions of the on-

line advertising environment; February 2011


Hosted Horacio Gutierrez (Head of IP-Global; Microsoft) in a discussion on

IP in The Cloud, USF Law School, October 2010.


Keywords, Trademarks and Consumer Perceptions:  What do Consumers

Really Want When They Use Trademark as Keyword Search Terms?  USF

School of Law Presentation with McCarthy Institute Academic Affiliates,

Professors David Hyman (U of Illinois School of Law) and Ben Edelman,

Harvard Business School, November 2010.


The Right of Publicity in Film – co-presenter with top in-house IP attorneys

at PIXAR and LUCAS FILM at ABA meeting in San Francisco, August

2010

**EXHIBIT 149**

-94-

The Effect on Trademark Owners of ICANN's planned roll-out of new top-level generic domain names (gTLDs), sponsored by the Center for Domain Name Abuse (CADA) meeting, San Francisco, June 2, 2010

Trademark Year in Review 2010, Los Angeles Intellectual Property Lawyer's Meeting, Los Vegas, Nevada, May 2010

Trademark Year in Review 2010, San Francisco Intellectual Property Lawyer's Meeting, Napa, California, May 2010

Trademark Year in Review, Cal. Bar Assoc. IP Section Annual Meeting, San Diego, California, November 14, 2009

The Brand as Property:  Trademark Law and its Challenges in the New Era, November 4, 2009, organizer, moderated and speaker; international trademark law symposium co-sponsored by McCarthy Institute, Microsoft, WIPO and Unitalen (a prominent Chinese IP law firm).

Trademark Use, Wonder Doctrine or Wrong Turn? Vail Colorado IP Lawyers Association Retreat, January 2009

INTA 2009 May Meeting, Seattle, Panelist on Trademark and Internet Blogging

EXHIBIT 149

Speaker, Moderator and Organizer of Symposium on Derivative Works and Fair Use in  Copyright Law, scheduled for November 1, 2008, McCarthy Institute for IP and Tech Law, USF School of Law

Guest Lecturer on International Trademark and Copyright Law, St. Charles University, Prague, July 2008

Speaker, California Bar Association Meeting, Intellectual Property Section, November, 2008

Speaker, International Association of Trademark Lawyers, Meeting in Aspen Colorado, January 2009

Trademark Year in Review, California Intellectual Property Lawyer's Association, Santa Barbara, May 2008

Network Neutrality – What is It?, Symposium planner and moderator, University of San Francisco School of Law, January 2008

Trademark Year in Review, San Francisco Intellectual Property Lawyers Association, Napa, California, May 2007

Trademark Year in Review, Silicon Valley Intellectual Property Lawyers Association, Palo Alto, November 2006

Trademark Trends, California Intellectual Property Lawyers Conference, Santa Barbara, November 2006

25

**EXHIBIT 149**

-96-

The Google Library Project:  Fair Use or Misappropriation, USF Law
School, October 2006

International IP:  Who Should be Responsible for Top-Level Domain Name
Governance, Speaker and Panel Moderator, Bay Area High Tech
Conference, Stanford Law School, April 2005

Trademark and Copyright Update 2005, Andrews IP Conference, San
Francisco, CA, October 2005

The Anti-Free-Rider Impulse in Intellectual Property Law, Katz-Kiley
Distinguished IP Lecturer, University of Houston Law School, November
2004

Trends in Trademark Law, Northern and Southern California Associations
of Intellectual Property Attorneys, Palm Springs, June 2005

Trademark Year in Review 2005, Cooley, Gotlieb, San Francisco, June 2005

The Right of Publicity and First Amendment; panelist with Judge Alex
Kozinski; Northern California Chapter of the Copyright Society of America,
May 2005

Trademark Update:  2004 Year in Review, San Francisco Intellectual
Property Annual Meeting, Lake Tahoe, California, June 2004

EXHIBIT 149

Toward a New Understanding of Dilution and the Anti-Free Rider Impulse,
Silicon Valley Intellectual Property Lawyer's Association, October 2003

Exploring the Anti-Free-Rider Impulse in American Dilution Law**,** Salmon
P. Chase College of Law Lecture Series, September 2003

Symposium on Comparative Analysis of Business Method and Software
Patenting in the European Union and the United States, moderator and
organizer; co-sponsored by the McCarthy IP Institute and Kilburn & Strode,
a London IP firm, June 2003

Symposium on Biotech Patent Issues, moderator and organizer; co-
sponsored by the McCarthy IP Institute and Morrison & Forester, March
2003

Victoria's Secret and Dastar:  Remaking Trademark Law, Los Angeles
Association of IP Attorneys, June 2003

The Right of Publicity and the First Amendment, 2002 IP Symposium,
Golden Gate University, October 2002

First Amendment Limits on the Right of Publicity, ABA Intellectual
Property Section Annual Meeting in Philadelphia, June 2002

The Boundaries of Language Commodification On-Line, Northern Kentucky
Law Review Symposium on Trademark and Cyberlaw Issues, February
2001

27

**EXHIBIT 149**
-98-

Symposium on Intellectual Property Law, sponsored by The Northern Kentucky Law Review, moderator and coordinator, February 2000

Symposium on the Third Restatement of Torts, Northern Kentucky Law Review, moderator, February 1999

Symposium on the Regulation of Media Violence & the First Amendment, moderator; sponsored by The Northern Kentucky Law Review, November 1999

Trends in Mass Tort Litigation, Panel on Mass Tort Litigation Joint Meeting of ABA Products Liability and Litigation Sections, Dallas, Texas, April 1999

28

**EXHIBIT 149**

PROOF OF SERVICE

I am a resident of the state of California, I am over the age of 18 years, and I am not a party to this lawsuit.  My business address is 17961 Sky Park Circle, Suite 38-E, Irvine, California 92614.  On September 17, 2012, I served the following document(s) in the manner indicated:

1.      EXPERT REPORT OF DAVID J. FRANKLIN with APPENDIX I

☒      via email.

·  ☒      by placing the document(s) listed above in a sealed envelope to the person at the address set forth below by postage prepaid United States First Class United States mail on the same date set out below.

Lynda J. Zadra-Symes
Jeffrey L. Van Hoosear
Knobbe, Martens, Olson & Bear, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed September 17, 2012 at Irvine, California.

By:     /s/ Jodie Miller

Jodie Miller

Case No.: SACV11-01309-DOC(ANx)
CERTIFICATE OF SERVICE

**EXHIBIT 149**
-100-