Lynda J. Zadra-Symes (SBN 156,511)
Lynda.Zadra-Symes@kmob.com
Jeffrey L. Van Hoosear (SBN 147,751)
Jeffrey.VanHoosear@kmob.com
David G. Jankowski (SBN 205,634)
David.Jankowski@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Defendant/Counter-Plaintiff,
KEATING DENTAL ARTS, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JAMES R. GLIDEWELL DENTAL CERAMICS, INC. dba GLIDEWELL LABORATORIES, | Civil Action No. SACV11-01309-DOC(ANx) |
| Plaintiff, | **KEATING'S OPPOSITION TO GLIDEWELL'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE** |
| v. | **TRADEMARK MISUSE, UNFAIR COMPETITION, UNCLEAN HANDS, FAIR USE, AND ESTOPPEL** |
| KEATING DENTAL ARTS, INC. | |
| Defendant. | |
| AND RELATED COUNTERCLAIMS. | Honorable David O. Carter |

# TABLE OF CONTENTS

Page No.

I.    SUMMARY OF THE ARGUMENT ........................................................... 1

II.   FACTUAL BACKGROUND .................................................................... 2

III.  LEGAL STANDARDS ........................................................................... 6

IV.   ASIDE FROM KEATING'S COUNTERCLAIM FOR UNFAIR COMPETITION UNDER CALIFORNIA COMMON LAW, THE COURT SHOULD DENY GLIDEWELL'S MOTION IN ITS ENTIRETY ....................................... 7

      A.    This Court Should Recognize Keating's Misuse of Trademark Claim As Legally Cognizable ........................................ 7

      B.    Keating Has Standing to Bring An Unfair Competition Claim Under California's Unfair Competition Law ................................................................. 9

      C.    Keating Has Evidence That At A Minimum Creates A Genuine Issue Of Material Fact Regarding The Merits Of Its Claim Of Unfair Competition Under The UCL ........................................ 10

      D.    Keating Has Evidence That At A Minimum Creates A Genuine Issue Of Material Fact Regarding The Merits Of Its Affirmative Defense of Unclean Hands ........................................................... 12

      E.    Keating Has Evidence That At A Minimum Creates A Genuine Issue Of Material Fact Regarding The Merits Of Its Affirmative Defense of Fair Use ................................................................... 15

      F.    Keating Has Evidence That At A Minimum Creates A Genuine Issue Of Material Fact Regarding The Merits Of Its Affirmative Defense of Estoppel ................................................................... 17

V.    CONCLUSION ..................................................................................... 19

# TABLE OF AUTHORITIES

Page No.

*Abercrombie & Fitch Co. v. Hunting World, Inc.*,
    537 F.2d 4 (2d Cir. 1976) ........................................................................... 16

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .................................................................................... 6

*Armstrong Paint & Varnish Works v. Nu-Enamal Corp.*,
    305 U.S. 315 335-36 (1938) ...................................................................... 16

*Carmen v. S.F. Unified Sch. Dist.*,
    237 F.3d 1026 (9th Cir. 2001) .................................................................... 6

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) .............................................................................. 10

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .................................................................................... 6

*Chevron Corp. v. Pennzoil Co.*,
    974 F.2d 1156 (9th Cir. 1992) .................................................................... 6

*Cox v. Ocean View Hotel Corp.*,
    533 F.3d 1114 (9th Cir. 2008) .................................................................. 17

*Dollar Systems, Inc. v. Avcar Leasing Systems*, Inc., 890 F.2d 165,
    173 (9th Cir. 1989) ..................................................................................... 13

*Del. & Hudson Canal Co. v. Clark*,
    80 U.S. 311 (1872) ..................................................................................... 16

*Juno Online Services L.P. v. Juno Lighting, Inc.*,
    979 F. Supp. 684 (N.D. Ill. 1997) ............................................................... 7

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
    543 U.S. 111, 125 S. Ct. 542 (2004) ........................................................... 8

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ................................................................................ 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>TABLE OF AUTHORITIES</u>
(continued)

<u>Page No.</u>

*Leathersmith of London, Ltd. v. Alleyn*,
  695 F.2d 27 (1st Cir. 1982) ........................................................ 16

*Microware Systems Corp. v. Apple Computer, Inc.*,
  238 F.3d 989 (8th Cir. 2001) ..................................................... 16

*Musick v. Burke*,
  913 F.2d 1390 (9th Cir. 1990) ...................................................... 6

*Pom Wonderful LLC v. Welch Foods, Inc.*,
  737 F. Supp. 2d 1105 (C.D. Cal. 2010) ..................................... 13

*S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde &
  Co., Inc.*,
  690 F.2d 1235 (9th Cir. 1982) ...................................................... 6

*Shakur v. Schriro*,
  514 F.3d 878 (9th Cir. 2008) ....................................................... 6

*Soweco, Inc. v. Shell Oil Co.*,
  617 F.2d 1178 (5th Cir. 1980) .................................................... 16

*TYR Sport, Inc. v. Warnaco Swimwear, Inc.*,
  709 F. Supp. 2d 821 (C.D. Cal. 2010)................................... 10, 11

*United States v. Diebold, Inc.*,
  369 U.S. 654 (1992) ..................................................................... 6

*United States v. Georgia-Pacific Co.*,
  421 F.2d 92 (9th Cir. 1970) ........................................................ 17

*Watts v. United States*,
  703 F.2d 346 (9th Cir. 1983) ........................................................ 6

*White Swan v. Nature Co.*,
  No. 93-35213, 1994 U.S. App. LEXIS 17791 (9th Cir.
  July 15, 1994) ............................................................................. 16

TABLE OF AUTHORITIES
(continued)

Page No.

OTHER AUTHORITIES

15 U.S.C. § 2 .......................................................................................... 12

15 U.S.C. § 1115 .................................................................................... 15

15 U.S.C. § 1127 .................................................................................... 15

11 *Moore's Federal Practice* § 56.13[1] (3rd ed. 2009) ....................................... 6

Fed. R. Civ. P. 56 .................................................................................... 5, 6

William E. Ridgway, *Revitalizing the Doctrine of Trademark Misuse*, 21 BERKELEY TECH. L.J. 1547 (2006) .......................................... 7

Defendant Keating Dental Arts, Inc. ("Keating") hereby submits its opposition to Plaintiff James R. Glidewell Dental Ceramics, Inc. dba Glidewell Laboratories' ("Glidewell") Motion for Partial Summary Judgment re Trademark Misuse, Unfair Competition, Unclean Hands, Fair Use and Estoppel.

This opposition is supported by the Declaration of Diane Mallos Donich ("Donich Decl."), the Second Declaration of David Jankowski ("2nd Jankowski Decl."), as well as certain declarations and exhibits filed by Keating on Monday, November 19, 2012 in connection with its Motions for Summary Judgment. Keating relies upon and incorporates by reference its Statement of Uncontroverted Facts and Conclusions of Law in Support of Its Motion for Summary Judgment Canceling Glidewell's Trademark Registration [Doc. 87-1] ("Canceling SOF") and its Statement of Uncontroverted Facts and Conclusions of Law in Support of Motion for Summary Judgment of Noninfringement of Glidewell's BruxZir Trademark [Doc. 88-1] ("Noninfringement SOF").

## I.  SUMMARY OF THE ARGUMENT

Glidewell's motion for summary judgment is premature in seeking to dispose on summary judgment counterclaims and affirmative defenses of Keating that require a trier of fact. Glidewell, for example, seeks to dispose of Keating's affirmative defenses of unclean hands, fair use, and estoppel. Yet Keating has ample evidence that supports each of these defenses that a reasonable juror may rely upon to find that the defense applies in this case. While Glidewell may believe it has rebuttal evidence to counter Keating's evidence, it is not appropriate for the Court to resolve such disputes on summary judgment.

Glidewell also challenges Keating's standing to bring an unfair competition claim under California's unfair competition law. In fact, Keating has ample evidence that support Keating's claim Glidewell has engaged in

/ / /

-1-

unlawful and unfair business practices, and further that Keating has suffered economic harm derived from those business practices.

Glidewell also challenges Keating's counterclaim for trademark misuse as not legally cognizable as an affirmative claim.  Yet Glidewell has been misusing its trademark to prevent Keating, and others, from using a long-standing generic word widely used by the dental community to describe the primary users of the products at issue.  While district courts have not rushed to embrace trademark misuse as a cause of action, the present case exemplifies why such a claim is appropriate.

The portions of Glidewell's motion challenging Keating's affirmative defenses are also in violation of Local Rule 7.3 because Glidewell did not raise these challenges or any potential resolution regarding Keating's affirmative defenses.  These portions of Glidewell's motion may also be denied for failure to comply with the Local Rules of this Court.

Finally, Keating does not oppose the portion of Glidewell's motion that seeks dismissal of Keating's unfair competition claim <u>under California common law</u>.  Keating's interests are fully protected by its other counterclaims and affirmative defenses, and Keating does not object to the Court granting that part of Glidewell's motion.

## II.  <u>FACTUAL BACKGROUND</u>

Glidewell chose the mark BruxZir for its all zirconia crown because it was a zirconia crown for bruxers (Canceling SOF ¶¶ 30-38, 45-46) and Glidewell has advertised heavily to dentists nationwide that the crown is "ideal for bruxers."  (*Id.* ¶ 40.)

Glidewell admits that brux is a generic term for the act of grinding one's teeth.  (Jankowski Decl. [Doc. 91] Ex. 1 at 5.)  Glidewell further admits that "the term 'bruxer' refers to an individual who suffers from bruxism, a parafunctional activity in which a person repeatedly and habitually grinds his

-2-

teeth."  (Appendix of Evid. [Doc. 90] Ex. I at ¶ 12.)  Glidewell's promotional videos and video recorded testimony also establish that the terms BruxZir and bruxer are pronounced identically by Glidewell's employees.  (Canceling SOF ¶¶ 47-53.)

Glidewell's employees admitted the name BruxZir was adopted because it readily told dentists that the crown was made of zirconia and was to be used for cases of bruxism, or for bruxers.  (Canceling SOF ¶¶ 30-37.)

Many other labs that sell zirconia crowns, advertise that these crowns are for bruxers.  (Canceling SOF ¶ 62.) Dentists use the terms "bruxzir" or "bruxer" to reference zirconia crowns for bruxers.  (Canceling SOF ¶¶ 70-78.)

Glidewell's trademark application for the mark BruxZir did not disclose the meaning of the term in the dental industry.  (Canceling SOF ¶¶ 88-96.)  Nor did Glidewell disclose that BruxZir was phonetically identical to the generic word 'bruxer', the intended user of the product.  (*Id.*)

Glidewell admits that it has been improperly using the ® sign in connection with zirconia material, for which it does not have a trademark registration.  (Statement of Uncontroverted Facts [Doc. 79-2] ¶¶ 18-19.)  While Glidewell claims only three such instances have occurred and that these uses were "inadvertent," the evidence is to the contrary.  Just in the few screenshots of glidewelldental.com which Glidewell produced in this case, there is evidence of Glidewell's improper use of ® with products for which Glidewell does not have a registration, such as "BruxZir® Mill," "BruxZir® Coloring Liquid Kit," "BruxZir® Milling Blanks," and "BruxZir® Processing Equipment."  (2nd Jankowski Decl., Exs. 155-158.)  Additionally, in email blasts Glidewell has produced in this case, the ® is used in connection with "BruxZir® Milling System" and in connection with their recycling program for milling blanks: "It Pays to Recycle BruxZir® Solid Zirconia."  Glidewell also misuses the ® on

/ / /

1 stickers used to identify "authorized" labs which state, "Authorized BruxZir®
2 Laboratory." (Jankowski Decl., Ex. 7 at 16, 18-19.)

3        Even though Glidewell admits that brux and bruxer are generic terms
4 used in connection with bruxers, the intended user of the BruxZir product,
5 Glidewell sent cease and desist letters to its competitors demanding that they
6 cease use of such generic and/or descriptive terms, brux and bruxer, in
7 connection with their competing crowns. (Noninfringement SOF ¶ 71-73.)

8        In its cease and desist letters, Glidewell admits that the terms BRUXER
9 and BRUXZIR "sound the same." (Canceling SOF ¶¶ 51-52.)

10        Glidewell admits that it asserted its registration against the following:

11        • Z-Brux

12        • R-Brux

13        • Bruxer

14        • Bruxer Crown

15        • Bruxer All Zirconia

16        • Full Solid Bruxer Zirconia

17        • Zir-Bruxer

18 (Glidewell's Statement of Uncontroverted Facts [Doc. 79-2] ¶ 9.)] In each case,
19 Glidewell sent a cease and desist letter to the lab threatening to pursue legal
20 action. (Noninfringement SOF ¶ 72-73.)

21        In at least one case, Glidewell sent a fake notice that a lawsuit had been
22 filed against the lab when in fact no such suit was ever filed. (Jankowski Decl.
23 [Doc. 91] Ex. 6 (Allred Dep. Tr.) at 221:5-222:16; Ex. 24.) In each cease and
24 desist letter, Glidewell claimed to have been using the mark BruxZir "for
25 years." This was an untrue statement for many of the letters which were sent out
26 less than two years after Glidewell began using the BruxZir mark. (*See*
27 Jankowski Decl. [Doc. 91] Exs. 24-29.) Glidewell's use began only in June
28 2009. (Canceling SOF ¶ 39.)

-4-

In at least the present case with Keating, Glidewell sent a letter demanding that Keating not only change the name of its product, but also buy Glidewell's product in order to avoid litigation. (Jankowski Decl. [Doc. 91] Ex. 19.)

Glidewell received several responses from dental labs disputing Glidewell's claims and referencing evidence that dentists have used "bruxer" for many years to refer to dental crowns. (Jankowski Decl. [Doc. 91] Exs. 24-25, 30, 32-33.)

Glidewell already enjoys a dominant market share in the dental lab industry. Glidewell is the largest dental laboratory in the United States. (Noninfringement SOF ¶8.) To illustrate the contrast in size between Glidewell and other labs, Showcase Dental Laboratories, one of the labs that received a cease and desist letter from Glidewell, filled 348 orders for their all zirconia crown during the months of September and October 2012. (Frattura Decl. [Doc. 96] ¶ 5). Glidewell's own lab, on average, sells 120,000 units over the same two-month period. (Jankowski Decl. [Doc. 91] Ex. 4 (DiTolla Dep. Tr.) 233:10-15.) When Glidewell's "authorized" labs are included in the numbers, Glidewell accounts for 240,000 all zirconia crowns over a two month period. (*Id.*)

Keating launched its KDZ Bruxer product in May 2011. (Canceling SOF ¶ 70.) Keating chose "KDZ" to associate this product with another Keating zirconia product, the "KDZ" or "KDZ Zirconia," which Keating had sold continuously since 2006. (Noninfringement SOF ¶¶ 33-38.) Mr. Keating chose the term "Bruxer" because his dentist clients kept asking him for a product they could use with their bruxer patients. (Noninfringement SOF ¶¶ 29-40.) At the time that Keating launched the KDZ Bruxer, it renamed its previous "KDZ" product (that it had been selling since 2006) as the "KDZ Ultra" and also added another product, the "KDZ Max" to this family of products. (*Id.*) Dentists

-5-

recognize the "KDZ" mark as indicating zirconia products from Keating.  (*Id.* ¶ 46.)

Keating disclaimed "Bruxer" in its trademark application.  (Boatright Decl. [Doc. 94] Ex. A at ¶¶ 40, 45, 53, 60; Ex. C.)

Glidewell filed the present action in August 2011.  Although Keating decided to defend the litigation, it recognized that litigation can be unpredictable so it significantly scaled back on its advertisement and promotion of its new KDZ Bruxer product.  (Donich Decl. ¶ 3.) Initially, the sales of Keating's KDZ Bruxer product grew rapidly, but shortly after Glidewell filed this lawsuit, the sales of Keating's KDZ Bruxer product stagnated and even declined.  (Donich Decl. ¶4 & Ex. A.)

### III. LEGAL STANDARDS

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A district court is to be cautious in granting summary judgment, affording due respect for a party's right to have its factually grounded claims and defenses tried to a jury.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The court must view the facts and draw inferences in the manner most favorable to the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1962).  For issues on which the movant bears the burden of proof, the movant must present evidence satisfying its burden, and must show that the evidence is so powerful that no reasonable jury would be free to disbelieve it.  *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008); *Watts v. United States*, 703 F.2d 346, 347 (9th Cir. 1983); 11 *Moore's Federal Practice* § 56.13[1] at 56-166 (3rd ed. 2009).  Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for

trial.  *See Liberty Lobby*, 477 U.S. at 248-49.  A "material fact" is one that "might affect the outcome of the suit under the governing law . . . ." *Id*. at 248.

## IV.  ASIDE FROM KEATING'S COUNTERCLAIM FOR UNFAIR COMPETITION UNDER CALIFORNIA COMMON LAW, THE COURT SHOULD DENY GLIDEWELL'S MOTION IN ITS ENTIRETY

### A.    This Court Should Recognize Keating's Misuse of Trademark Claim As Legally Cognizable

Glidewell cites to no cases from the Ninth Circuit, or any other circuit, holding that a misuse of trademark claim cannot be legally cognizable.  Nor does Glidewell cite to any cases from the Central District of California for this broad proposition.  Instead, Glidewell relies on district court cases that have chosen not to recognize such a claim, most notably *Juno Online Services L.P. v. Juno Lighting, Inc.*, 979 F. Supp. 684, 690 (N.D. Ill. 1997).  While the *Juno* court opted not to recognize trademark misuse as a cognizable claim in the case before it, the court acknowledged that such a claim may be proper under certain facts.  "Perhaps a court may choose to recognize a new cause of action in a situation in which the mark holder does attempt to destroy its competitors through the use of its mark." *Juno Online Services L.P. v. Juno Lighting, Inc.*, 979 F. Supp. 684, 690 (N.D. Ill. 1997).  Likewise, legal scholars have advocated for courts to recognize trademark misuse as a cognizable cause of action. *See* William E. Ridgway, *Revitalizing the Doctrine of Trademark Misuse*, 21 Berkeley Tech. L.J. 1547 (2006).

Here, the court is faced with facts for which a trademark misuse claim is proper.  Glidewell has been attempting to destroy competition for all-zirconia crowns by relying on its trademark registration to prevent competitors from using generic and descriptive terms, such as "brux" and "bruxer" to identify and describe their products.  (Noninfringement SOF ¶ 71-73.)  In the case of Keating specifically, Glidewell has attempted to require it to buy Glidewell

products in order to avoid a lawsuit.  (Jankowski Decl. [Doc. 91] Ex. 19.)  When encountering competitor dental labs using "Bruxer" in the name of their all-zirconia crowns, Glidewell has tried to get the competitor to purchase zirconia from Glidewell.  (Jankowski Decl., Ex. 19, 24-34.)   In one such instance, Glidewell falsely informed the competitor that it had filed a lawsuit against them, which was a false statement.  (Jankowski Decl. [Doc. 91] Ex. 6 (Allred Dep. Tr.) at 221:5-222:16; Ex. 24.)

As the largest dental lab in the United States, Glidewell's volume of sales of all zirconia crowns far exceeds that of other labs.  (*Compare* Frattura Decl. [Doc. 96] ¶ 5 *with* Jankowski Decl. [Doc. 91] Ex. 4 (DiTolla Dep. Tr.) 233:10-15.)  Glidewell knows that other dental laboratories lack the resources to bear the litigation costs associated with contesting a trademark infringement claim in federal court.  Glidewell has used this awareness to stop other labs from using marks containing terms such as "Bruxer" and "Brux" to refer to their all-zirconia crowns for bruxers, thereby hampering their ability to compete with Glidewell in the market share for all-zirconia crowns.

Glidewell has widely promoted its all-zirconia crowns as "ideal for bruxers," and the record is clear that Glidewell's intent when launching the product was to provide a crown "indicated for bruxers." (Canceling SOF ¶¶ 30-46.) As the Supreme Court has explained, the Lanham Act was not meant "to deprive commercial speakers of the ordinary utility of descriptive words." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122, 125 S. Ct. 542, 550 (2004).  The Court also discussed "the undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first." *Id.*   That is exactly what Glidewell is trying to do with its BruxZir mark.

/ / /

/ / /

-8-

In explaining its efforts to prevent others from using the descriptive terms "brux" and "bruxer," Glidewell claimed it has the right to do so because it was the first to offer a crown indicated for bruxers and to indicate that in the name of their product. (Mangum Decl. [Doc. 92] Ex. 50 (Shuck Dep. Tr.) 41:1-42:3; 86:8-87:7; 176:19-178:22.) This admission illustrates that Glidewell is attempting to use its trademark registration to gain something akin to patent rights, seeking to prevent competitors from selling all-zirconia crowns for use with bruxers or in brux cases. This is counter to the trademark law policy of promoting competition.

If Glidewell can become the only provider of all zirconia crowns that is able to use "brux" or "bruxer" in the name to describe to dentists that its product is a crown indicated for bruxers, dentists will only find Glidewell when searching for such a crown. This is Glidewell's strategy: to illegally destroy competition and increase its market share through misuse of its improperly issued trademark registration.

For these reasons, Keating respectfully submits that the facts of this case support its claim for trademark misuse.

**B.**   **Keating Has Standing to Bring An Unfair Competition Claim Under California's Unfair Competition Law**

Glidewell argues that Keating lacks standing to bring an unfair competition claim under California's Unfair Competition Law ("UCL"). (Memo. at 8–11.) Glidewell is wrong.

To satisfy the standing requirements of California's UCL, a party need only "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e. economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011). Keating has evidence supporting both prongs.

-9-

Keating has evidence of an economic loss qualifying as an injury in fact that has resulted from Glidewell's unfair business practices.  Specifically, Keating has produced financial records showing that sales of its KDZ Bruxer product climbed steadily after it launched the product in May 2011 until shortly after Glidewell initiated this lawsuit, after which time its sales stagnated and declined.   (Donich Decl. ¶ 4, Ex. A.)   Due to Glidewell's trademark enforcement practices, including this lawsuit, Keating scaled back its advertising of the KDZ Bruxer product to mitigate any liability for the product. (Donich Decl. ¶ 3.)  Keating has also lost business from dentists who stopped ordering Keating's KDZ Bruxer product once they learned that Keating was defending a lawsuit brought against it based on the KDZ Bruxer product. (Brandon Decl. ¶¶ 9-10 (showing two dentists who stopped ordering all-zirconia crowns after hearing about Glidewell's enforcement action).)

This evidence bestows Keating with standing to make its unfair competition claim under Cal. Bus. & Prof. Code § 17200.

**C.**     **Keating Has Evidence That At A Minimum Creates A Genuine Issue Of Material Fact Regarding The Merits Of Its Claim Of Unfair Competition Under The UCL**

Glidewell's motion includes a lengthy section that argues that Keating's unclean hands counterclaim fails on the merits.  (Memo. at 12–21.)  In this section, Glidewell appears to try to anticipate and address in advance all of Keating's arguments and evidence in support of this counterclaim.  Glidewell's effort is in vain.

California's UCL applies to business practices that are either "unlawful" or "unfair."  "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180

-10-

(1999).  "Conduct is 'unfair' if it threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *TYR Sport, Inc. v. Warnaco Swimwear, Inc.*, 709 F. Supp. 2d 821, 838 (C.D. Cal. 2010).

As discussed above, Keating has standing to bring its unfair competition claim under the UCL against Glidewell and, at a minimum, a triable issue of fact remains such that summary judgment on Keating's counterclaim is inappropriate.

If this Court recognizes Keating's action for trademark misuse as a legally cognizable claim, then Glidewell's business practices giving rise to that cause of action is an unlawful practice sufficient for a claim under the California UCL.  Even if this Court does not recognize Keating's action for trademark misuse, Glidewell's business practices still satisfy the "unfair" prong of the law because they violate "the policy or spirit" of the trademark and antitrust laws and threaten and harms competition.  *See id.* Glidewell's actions harm competition by preventing competitors from describing their product by using a descriptive term for the intended users of the product in the product name.

Among other things, the evidence shows that Glidewell sent Keating a cease-and-desist letter that included not only a demand that Keating change its name, but also a demand that Keating begin purchasing zirconia from Glidewell. The evidence further shows that Glidewell also sent numerous cease-and-desist letters to other competing dental labs seeking to prevent lawful competition by asserting its improperly registered mark against competitors using the generic terms "brux" and "bruxer" to identify their product.  In some of those letters, Glidewell made false statements to coerce the competitors using the generic terms "brux" and "bruxer" into ceasing use of their marks.  These include the false claim that Glidewell had filed a lawsuit against the competitor, and that it

-11-

had been using its BruxZir mark for years.  (Jankowski Decl. [Doc. 91] Ex. 6 (Allred Dep. Tr.) at 221:5-222:16; Exs. 24-29.)  This evidence is sufficient for a jury to reasonably find that Glidewell has committed unfair competition by improperly asserting its trademark registration to prevent lawful competition.

The evidence further shows that Glidewell adopted the term "zir" in BruxZir to indicate zirconia, a characteristic of the dental crown, and it adopted the term "brux" in BruxZir to identify brux, or bruxism, a condition for which zirconia crowns are commonly prescribed.  (Canceling SOF ¶¶ 30-38.)  As dentists and dental labs routinely refer to patients who have bruxism as bruxers, the terms brux and bruxer are words that describe the class of intended users. Glidewell has sent cease and desist letters to dental labs that use "brux" or "bruxer" in a descriptive sense to identify their product as one indicated for use with bruxers.  Keating is one of these labs.

The evidence shows that Glidewell's actions have been designed to deter competing labs from accurately describing their products so that more dentists will be directed to Glidewell, or Glidewell's "authorized" labs, for all zirconia crowns for bruxers.  At a minimum, Glidewell's actions threaten or harm competition and violate at least the spirit of the anti-trust laws found in 15 U.S.C § 2 which proscribes any "attempt to monopolize . . . any part of the trade or commerce among the several States."  Glidewell's actions harm competition by preventing competitors from describing their product by using admittedly descriptive terms for the intended users of the product in the product name.

**D.** **Keating Has Evidence That At A Minimum Creates A Genuine Issue Of Material Fact Regarding The Merits Of Its Affirmative Defense of Unclean Hands**

Glidewell's motion also argues that Keating's affirmative defense of unclean hands fails on the merits.  (Memo. at 12–21.)  Again, Glidewell appears to be trying to anticipate and address in advance all of Keating's arguments and

-12-

evidence in support of this affirmative defense.  Again, Glidewell's effort is in vain.

 "The doctrine of unclean hands 'bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted.'"  *Pom Wonderful LLC v. Welch Foods, Inc.*, 737 F. Supp. 2d 1105, 1109 (C.D. Cal. 2010) (quoting *Dollar Systems, Inc. v. Avcar Leasing Systems*, Inc., 890 F.2d 165, 173 (9th Cir. 1989)).  Glidewell dirtied its hands in its prosecution of the trademark BruxZir by not informing the trademark examiner of the meaning of the mark within the dental industry, i.e., that the mark was phonetically equivalent to the intended user—bruxer—and that dentists understood brux to refer to bruxism and zir to refer to zirconia.  (Canceling SOF ¶¶ 88-96.)

While it is the trademark examiner's responsibility to request the meaning of a mark from the applicant and a trademark applicant has no affirmative duty to disclose a mark's meaning to the trademark examiner, Glidewell had reason to know that the examiner did not understand the meaning of the term and knew that the examiner did not inquire as to the meaning.  Mr. Allred testified that it took only about three months for the application of the BruxZir mark to obtain allowance, which he admits is "pretty fast." (Jankowski Decl. [Doc. 91] Ex. 6 (Allred Dep. Tr.) 117:1-18.)

Because the Trademark Examiner failed to inquire about the meaning of BruxZir, Glidewell's in-house counsel Mr. Allred, who was experienced in prosecuting trademarks, knew that the examiner did not fully understand the meaning or significance of the mark or its parts, and he further knew that the mark had not been properly analyzed prior to its registration.  (Canceling SOF ¶¶ 88-96.)  Mr. Allred knew that "BruxZir" and "bruxer" were pronounced the same, and he used that fact against Glidewell's competing dental labs in his

cease-and-desist letters.   Yet Mr. Allred never informed the Trademark Examiner that the words were pronounced the same.   Glidewell knew, or should have known, that had the meaning and significance of "brux," "bruxer," and "zir" been presented to the Trademark Examiner, and the identical pronunciation between "BruxZir" and "bruxer," the Trademark Office would likely not have allowed the registration.   Glidewell chose to remain silent in order to have the presumption of a valid mark that comes with registration. After receiving the registration, Glidewell began aggressively asserting it against Keating and other competing dental labs who wished to use the generic terms "brux" and "bruxer" to describe their products.

In addition, Glidewell has made false statements in its cease and desist letters to competitors claiming in at least one letter to have filed a lawsuit against the competitor, when it had not.   In other cases, it claimed to have been using the BruxZir mark for years, which also was not true.   Such statements were made to coerce its competitors into ceasing use of their marks.

Glidewell has also made an improper use of the BruxZir® designation, applying it to products for which it does not have a registration.   For example, Glidewell sells zirconia "blanks" to dental labs across the country using the mark BruxZir.   While Glidewell has applied for a registration for this use of the mark, the Trademark Office has not yet granted Glidewell a registration for use with dental ceramics.   Glidewell has repeatedly designated its zirconia blanks with the circle ® designation in its marketing materials, despite the lack of a registration.   Similarly, Glidewell sells equipment to dental labs, including milling machines and sintering ovens for use with all-zirconia crowns, under the BruxZir mark.   Glidewell does not have a registration for this use of the mark, yet it has repeatedly designated this equipment with the circle ® designation in its marketing materials.   Glidewell has done the same wrongful marking for other products associated with its all-zirconia crowns, including coloring agents.

-14-

In effect, Glidewell has taken its sole trademark registration in BruxZir, which is limited to use with dental restoration products, and treated the ® as if it could be applied to any Glidewell product named "BruxZir."   This conduct falsely informs the dental industry that Glidewell has a registration in the name on all of these product types.

For at least all of the above reasons, Glidewell should not be afforded any relief from this Court because it comes to this Court with unclean hands.

Procedurally, the portion of Glidewell's motion directed at this affirmative defense is in violation of Local Rule 7.3 because Glidewell did not discuss this challenge, and any potential resolution, during the parties' meet-and-confer on the motion.  (2nd Jankowski Decl. ¶ 22 & Ex. 159.)  Accordingly, the Court may further deny this aspect of Glidewell's motion on procedural grounds.

**E.** **Keating Has Evidence That At A Minimum Creates A Genuine Issue Of Material Fact Regarding The Merits Of Its Affirmative Defense of Fair Use**

As provided in the Lanham Act ("the Act"), and as Glidewell acknowledges, the classic fair use defense contains three elements: defendant's use must be 1) other than as a trademark, 2) fair and in good faith, and 3) only to describe the defendant's goods and services.   15 U.S.C. § 1115(b)(4).   To understand whether a term is being used "as a trademark," however, one must look at the definition of "trademark" as stated in the Act.   A trademark is "any word, name, symbol, or device" which a person uses "to *identify and distinguish* . . . goods . . . from those manufactured or sold by others and to indicate the source of the goods."  15 U.S.C. § 1127 (2006) (emphasis added).

Given the definition of a "trademark," the requirement that a fair use be "otherwise than as a mark" does not mean that the descriptive terms at issue cannot be included as part of a name or mark.  Rather, it emphasizes that the use

-15-

of the descriptive terms must be to describe the characteristics or qualities of the goods instead of to "identify and *distinguish*" the goods and services as those of the defendant.  This distinction is important for it reconciles the concept of protecting descriptive terms that have acquired secondary meaning (distinctiveness), *see Armstrong Paint & Varnish Works v. Nu-Enamel Corp.*, 305 U.S. 315  335-36 (1938), with the concept that a merchant has the right to use descriptive terms fairly to describe its goods and services.  *See Del. & Hudson Canal Co. v. Clark*, 80 U.S. 311, 327 (1872); *see also White Swan v. Nature Co.,* No. 93-35213, 1994 U.S. App. LEXIS 17791, *3 (9th Cir. July 15, 1994) (finding use of "Hummingbird Seed Mix" to be a fair use even though "Hummingbird Garden" was a registered mark for the same product).  Other circuits have reached similar conclusions.  *See Microware Systems Corp. v. Apple Computer, Inc.*, 238 F.3d 989 (8th Cir. 2001) *aff'g* 126 F. Supp. 2d 1207 (S.D. Iowa 2000) (holding Apple's use of "Mac OS 9" was a fair use against the trademark "OS-9" for software products); *Leathersmith of London, Ltd. v. Alleyn*, 695 F.2d 27 (1st Cir. 1982) (finding "TANTALUS Custom Leathersmiths & Bookbinders" was a fair use against asserted trademark "Leathersmith"); *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178 (5th Cir. 1980) (holding use of "larvicide" in the names and marks "Rabon Oral Larvicide" and "Shell Poultry Spray & Larvicide" to be a fair use, notwithstanding the existence of an incontestable registration for the term "Larvacide" for a grain fumigant); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir. 1976) (finding boots with names "Camel Safari," "Hippo Safari," and "Chukka Safari" to be fair uses against "Safari" trademark for outer garments, sporting goods, and apparel).  In each case, the asserted mark was used as part of the allegedly infringing mark, but each was found to be a fair use.  So long as the use is other than as a mark (not used to identify *and distinguish*), fair and in good faith, only to describe the defendant's goods and services, it is a fair use.

In the present case, Keating's use of "Bruxer" is other than as a mark because it is not being used to identify *and distinguish*. "Bruxer" alone does not distinguish Keating's product from the product of any other dental lab that offers a crown meant to be used for bruxers. It only describes the class of intended consumers which makes it a descriptive term in Keating's mark. The only way Keating's mark distinguishes the product as being from Keating is through the preceding initials "KDZ." Keating has, in fact, disclaimed the term "bruxer" in its trademark application as being descriptive and is thus claiming no trademark rights in the term. (Boatright Decl. [Doc. 94] Ex. A at ¶¶ 40, 45, 53, 60; Ex. C.) Furthermore, the use of "Bruxer" is in good faith as Mr. Keating chose the term because his dentist clients kept asking him for a product they could use with their bruxer patients. (Noninfringement SOF ¶¶ 29-40.)

Procedurally, the portion of Glidewell's motion directed at this affirmative defense is in violation of Local Rule 7.3 because Glidewell did not discuss this challenge, and any potential resolution, during the parties' meet-and-confer on the motion. (2nd Jankowski Decl. ¶ 22 & Ex. 159.) Accordingly, the Court may further deny this aspect of Glidewell's motion on procedural grounds.

## F.  Keating Has Evidence That At A Minimum Creates A Genuine Issue Of Material Fact Regarding The Merits Of Its Affirmative Defense of Estoppel

"Equitable estoppel prevents a party from assuming inconsistent positions to the detriment of another party." *United States v. Georgia-Pacific Co.*, 421 F.2d 92, 96 (9th Cir. 1970). "The doctrine of equitable estoppel provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1123 (9th Cir. 2008).

-17-

Glidewell has extensively advertised that its all zirconia crown is "ideal for bruxers" and "indicated for bruxers."  When Glidewell first launched its BruxZir product, it made it very clear that the primary intended user of the crown was a bruxer patient.  In fact Glidewell stated on its website and in an email it sent to approximately 100,000 dentists around the country, "When we launched Bruxzir Solid Zirconia crowns & bridges in 2009, *our intention was to provide a monolithic zirconia restoration indicated for bruxers and grinders* as an esthetic alternative to posterior metal occlusal PFMs and full-cast metal restorations." (Jankowski Decl., Ex. 7 at 2 (emphasis added); Mangum Decl., Ex. 50 at 52:18-53:22.)   Explaining the meaning of the BruxZir mark, Mr. Shuck, Glidewell's Vice President of Marketing stated, "That's why we picked the name, because . . . if you see brux or you identify somebody with brux or bruxism, think of zirconia.  So we put brux and zir together." (Canceling SOP ¶ 31.)

The dental industry, including Keating, accepted and relied upon these assertions from Glidewell, which is evidenced by the numerous all zirconia crowns that are advertised as being for bruxers, many using the terms "brux" and "bruxer" in the name.  (Canceling SOP ¶ 62.)  As other labs had done, Keating also developed an all zirconia crown for bruxer patients.  (Noninfringement SOP ¶ 29-35.)   After seeking advice of counsel, Keating decided to describe its new crown as being for bruxers by indicating this target user "bruxer" in its name.  (Noninfringement SOP ¶ 37-40.)

Glidewell realizes that if "bruxer" is in fact a class of intended users as they have previously claimed in widespread advertising, then their case against Keating, and any other lab using a form of "brux" to describe an all zirconia crown, must fail.  If "bruxer" is a class of intended users, then as discussed above, "Bruxer" is highly descriptive and not entitled to trademark registration without evidence of secondary meaning (which Glidewell has failed to submit).

-18-

Likewise, "BruxZir" as a phonetic equivalent of bruxer and is also not entitled to trademark registration.

In actions to enforce its BruxZir trademark, Glidewell is now taking the position that its competitors' use of "bruxer" is not a descriptive use but rather an infringing one.  In order to substantiate their claims, Glidewell is retreating from its earlier position that an all zirconia crown is "ideal for bruxers" and trying to assert that it is used for much more.  (*See, e.g.,* Glidewell's Statement of Uncontroverted Facts [Doc. 81-2] ¶¶ 9, 11; Jankowski Decl. [Doc. 91] Ex. 6 (Allred Dep. Tr.) 245:18-246:1.)   These arguments ignore the extensive evidence that when Glidewell began using the name BruxZir, the primary class of intended users was bruxers.  Bruxers remain a primary class of intended users for Glidewell's all-zirconia crown today, and Glidewell should be estopped from claiming otherwise and enforcing its mark against parties, like Keating, that are only using the generic term "bruxer" or "brux" to describe a class of intended users for their product.

Procedurally, the portion of Glidewell's motion directed at this affirmative defense is in violation of Local Rule 7.3 because Glidewell did not discuss this challenge, and any potential resolution, during the parties' meet-and-confer on the motion.  (2nd Jankowski Decl. ¶ 22 & Ex. 159.)  Accordingly, the Court may further deny this aspect of Glidewell's motion on procedural grounds.

## V.  <u>CONCLUSION</u>

Keating does not oppose Glidewell's motion seeking dismissal of Keating's counterclaim for unfair competition under California common law.

/ / /

/ / /

/ / /

/ / /

-19-

1  Aside from this one exception, for the reasons discussed above, Keating

2  respectfully requests that the Court deny Glidewell's motion.

3                              Respectfully submitted,

4                              KNOBBE, MARTENS, OLSON & BEAR, LLP

5

6

7  Dated: Nov. 26, 2012_____  By: /s/ Lynda J. Zadra-Symes_____
                                     Lynda J. Zadra-Symes
8                                    Jeffrey L. Van Hoosear
                                     David G. Jankowski
9
                                Attorneys for Defendant and Counterclaimant
10                              KEATING DENTAL ARTS, INC.

14378001

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-20-