1  Lynda J. Zadra-Symes (SBN 156,511)
   Lynda.Zadra-Symes@kmob.com
2  Jeffrey L. Van Hoosear (SBN 147,751)
   Jeffrey.VanHoosear@kmob.com
3  David G. Jankowski (SBN 205,634)
   David.Jankowski@kmob.com
4  KNOBBE, MARTENS, OLSON & BEAR, LLP
   2040 Main Street
5  Fourteenth Floor
   Irvine, CA 92614
6  Phone: (949) 760-0404
   Facsimile: (949) 760-9502
7
   Attorneys for Defendant/Counter-Plaintiff,
8  KEATING DENTAL ARTS, INC.

9

10            IN THE UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12                    SOUTHERN DIVISION

13  JAMES R. GLIDEWELL DENTAL          ) Civil Action No.
    CERAMICS, INC. dba GLIDEWELL       ) SACV11-01309-DOC(ANx)
14  LABORATORIES,                      )
                                       ) **REPLY MEMORANDUM OF**
15              Plaintiff,             ) **POINTS AND AUTHORITIES IN**
                                       ) **SUPPORT OF KEATING**
16         v.                          ) **DENTAL ARTS, INC.'S MOTION**
                                       ) **FOR SUMMARY JUDGMENT**
17  KEATING DENTAL ARTS, INC.          ) **OF (1) NO INFRINGEMENT OF**
                                       ) **GLIDEWELL'S REGISTERED**
18              Defendant.             ) **TRADEMARK, (2) NO**
                                       ) **VIOLATION OF SECTION 43(a)**
19  _____        ) **OF THE LANHAM ACT, AND (3)**
    AND RELATED COUNTERCLAIMS.         ) **NO UNFAIR COMPETITION**
20                                     ) **UNDER CALIFORNIA LAW**
                                       )
21                                     ) Date: December 17, 2012
                                       ) Time: 8:30 a.m.
22                                     ) Location: Courtroom 9D
                                       )
23                                     ) Honorable David O. Carter
                                       )
24                                     )
                                       )
25  _____        )

26

27

28

## TABLE OF CONTENTS

Page No.

I.  SUMMARY OF THE ARGUMENT ..................................................... 1

II.  LEGAL STANDARD .......................................................................... 3

III.  KEATING'S REPLY ARGUMENT ................................................. 4

    A.  Glidewell's BruxZir Mark Is Invalid .............................................. 4

    B.  No Reasonable Jury Could Find A Likelihood Of Confusion ................................................................................................ 5

        1.  Glidewell Fails To Show That BruxZir Is A Strong Mark ............................................................................. 6

            a.  The BruxZir Mark Is Conceptually Weak ................... 6

            b.  The BruxZir Mark Is Commercially Weak .................................................................................... 7

        2.  Proximity of Relatedness of Goods ..................................... 14

        3.  Glidewell Fails To Show Similarity of the Marks ................................................................................... 14

        4.  Glidewell Fails to Present Even A Single Incident of Actual Confusion .............................................. 16

        5.  Marketing Channels ............................................................. 19

        6.  Glidewell Fails to Apply an Appropriate Degree of Consumer Care .................................................. 20

        7.  Glidewell Has Not Rebutted Keating's Showing of Good Intent ....................................................... 20

        8.  Likelihood of Expansion ..................................................... 22

        9.  Summary of Sleekcraft Factors ........................................... 22

    C.  Keating Has Satisfied the Requirements of the Fair Use Defense .............................................................................. 22

    D.  Glidewell Has Failed To Rebut Keating's Showing That Summary Judgment Is Appropriate On Its Second and Third Causes of Action .............................................. 24

IV.  CONCLUSION ................................................................................. 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

Page No(s).

*Abercrombie & Fitch Co. v. Hunting World, Inc.*,
    537 F.2d 4 (2d Cir. 1976) .......................................................................... 23

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986) ............................. 3

*Apple Computer, Inc. v. Formula Int'l, Inc.*,
    725 F.2d 521 (9th Cir. 1984) .................................................................... 16

*Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*,
    289 F.3d 589 (9th Cir. 2002) .................................................................... 12

*Cairns v. Franklin Mint Co.*,
    24 F. Supp. 2d 1013 (C.D. Cal. 1998) ........................................................ 7

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S.Ct. 2518, 91 L.Ed. 2d 265 (1986) ............................. 3

*Cohn v. Petsmart, Inc.*,
    281 F.3d 837 (9th Cir. 2002) .................................................................... 14

*Conversive, Inc. v. Conversagent, Inc.*,
    433 F. Supp. 2d 1079 (C.D. Cal. 2006) .................................................... 16

*Echo Drain v. Newsted*,
    307 F. Supp. 2d 1116 (C.D. Cal. 2003) .................................................... 18

*Halo Mgmt., LLC v. Interland, Inc.*,
    308 F. Supp. 2d 1019 (N.D. Cal. 2003) .................................................... 11

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
    543 U.S. 111, 125 S. Ct. 542, 160 L. Ed. 2d 440 (2004) ........................... 5

*Leathersmith of London, Ltd. v. Alleyn*,
    695 F.2d 27 (1st Cir. 1982) ...................................................................... 23

*M2 Software, Inc. v. Madacy Entertainment*,
    421 F.3d 1073 (9th Cir. 2005) .................................................................. 21

1

<u>TABLE OF AUTHORITIES</u>
(continued)

2

<u>Page No(s).</u>

3

*Microware Systems Corp. v. Apple Computer, Inc.,*
    238 F.3d 989 (8th Cir. 2001) .................................................................. 23

4

5

*Moore Business Forms v. Ryu,*
    960 F.2d 486 (1992) ............................................................................... 12

6

7

*Musick v. Burke,*
    913 F.2d 1390 (9th Cir. 1990) ................................................................. 3

8

*One Indus., LLC v. Jim O'Neal Distrib., Inc.,*
    578 F.3d 1154 (9th Cir. 2009) ............................................................... 13

9

10

*Playboy Enters. v. Netscape Communs. Corp.,*
    55 F. Supp. 2d 1070 (C.D. Cal. 1999) ............................................. 7, 17

11

12

*S. A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co.,*
    690 F.2d 1235 (9th Cir. 1982) ................................................................. 3

13

14

*Self-Insurance Inst. of America, Inc. v. Software & Information Indus. Ass'n,*
    208 F. Supp. 2d 1058 (C.D. Cal. 2000) ................................................. 15

15

16

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization,*
    59 F.3d 902 (9th Cir. 1995) ..................................................................... 5

17

18

19

*SG Services Inc. v. God's Girls Inc.,*
    2007 U.S. Dist. LEXIS 61970 (C.D. Cal. 2007) ................................... 15

20

21

*Soweco, Inc. v. Shell Oil Co.,*
    617 F.2d 1178 (5th Cir. 1980) ............................................................... 23

22

23

*Tie Tech, Inc. v. Kinedyne Corp.,*
    296 F.3d 778 (9th Cir. 2002) ............................................................. 4, 5

24

25

*United States v. Diebold, Inc.,*
    369 U.S. 654, 82 S.Ct. 993, 8 L.Ed. 2d 176 (1962) ............................... 3

26

27

28

TABLE OF AUTHORITIES
(continued)

Page No(s).

*White Swan v. Nature Co.*,
No. 93-35213, 1994 U.S. App. LEXIS 17791 (9th Cir.
July 15, 1994 (unpublished)) ...................................................................... 23

*Zobmondo Entm't, LLC v. Falls Media, LLC*,
602 F.3d 1108 (9th Cir. 2010) ...................................................................... 4

OTHER AUTHORITIES

Fed. R. Civ. P. 56 ...................................................................................................... 3

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, 4TH
EDITION, § 18:48 .......................................................................................... 12

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, 4TH
EDITION, § 23:41 .......................................................................................... 14

RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 14 cmt. .............................. 24

# I.  <u>SUMMARY OF THE ARGUMENT</u>

Keating has demonstrated that no reasonable jury could find that an appreciable number of dentists are likely to confuse Keating's use in commerce of its KDZ Bruxer mark with Glidewell's BruxZir mark.  Glidewell agrees there are no disputed issues of material fact that preclude the Court from granting summary judgment on this issue.

Glidewell spends half of its opposition arguing the strength of the BruxZir mark and challenging the sufficiency of Keating's evidence on this one *Sleekcraft* factor.  Yet, despite claiming millions of dollars spent in a nationwide advertising effort, Glidewell offers the Court no surveys or other objective evidence of how disinterested dentists around the U.S. view the term BruxZir. It instead offers (1) testimony from seven of its own dentist customers, "surprise" witnesses never identified during discovery, (2) an expert opinion from Professor Franklyn, a law professor who formed his opinion on the strength of the mark without speaking to a single dentist, (3) an opinion from Dr. Goldstein, an expert never disclosed during discovery, and (4) testimony from several Glidewell employees relating opinions and alleged conversations with dentists touring Glidewell's facility or asking questions after Glidewell presentations.  This reliance on untimely testimony, biased witnesses, and hearsay statements underscores Glidewell's failure during discovery to develop any probative evidence supporting its claim that its mark is strong.

Glidewell fails to rebut the dissimilarities between the marks.  It dismisses the "KDZ" portion of Keating's mark, violating the anti-dissection rule—a clear error of law—and fails to dispute Keating's evidence that dentists recognize KDZ as an indicator of Keating as the source.  Glidewell also ignores the distinctive oval design used with the KDZ family marks.  To Glidewell, the marks are similar only because "Bruxer," an identifier of the primary intended user for Keating's crown, is similar to "BruxZir."

-1-

Glidewell has no evidence of even a single incident of actual confusion. Instead, it offers up Nicole Fallon, a Glidewell employee who randomly called a dentist office in Florida with a coupon offer, failing to properly identify herself as calling from Glidewell. Glidewell presents the Court with a changed version of Ms. Fallon's story, complete with a never-disclosed hearsay conversation with the dentist (including the new claim that Keating is "sneaky") and two corroborating documents, purportedly from Glidewell's business records, never produced during discovery. Glidewell also relies on its misinterpretation of prescription forms received by Keating from dentists who wrote the term "BruxZir," or a variation thereof, on the forms as generic references to an all-zirconia crown. Glidewell has not a shred of evidence that any of these dentists were confused, instead offering attorney argument.

Keating provided evidence that dentists are discerning customers when purchasing dental restorations for use with their patients. Curiously, Glidewell disputes this, arguing that its own customers are not discriminating. Glidewell provides no testimony from its dentist declarants on this point, relying wholly on attorney argument and self-serving statements from its own employees.

Glidewell has no evidence that Keating chose its mark in bad faith. Instead, it infers bad faith based entirely on the circumstantial evidence that Glidewell had an earlier registration. This does not rebut Keating's evidence of good faith, including its choice of a mark, which includes many dissimilarities from Glidewell's mark that identify Keating as a source, such as the "KDZ" identifier and its distinctive oval design unlike anything used by Glidewell.

Glidewell agrees that the three causes of action in its Complaint all rise and fall together on the foundational issue of whether its registered BruxZir mark is both valid and infringed by Keating's mark as used in commerce. Because Keating has shown that there is no infringement as a matter of law, the Court should grant Keating's motion in its entirety.

## II. <u>LEGAL STANDARD</u>[1]

Summary judgment is proper if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A district court is to be cautious in granting summary judgment, affording due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2518, 2555, 91 L.Ed. 2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14, 91 L.Ed. 2d 202 (1986). The court must view the facts and draw inferences in the manner most favorable to the non-movant. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed. 2d 176 (1962). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-movant bears the burden on a claim, the movant can meet its burden by pointing out that the non-moving party has failed to present a genuine issue of material fact as to an element of its case. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the movant meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248-49. A "material fact" is one that might affect the outcome of the suit under the governing law. *Id*. at 248. A non-movant cannot create a genuine issue simply by making assertions in its papers. *S. A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, it must provide specific, admissible evidence that identifies the basis for the dispute. *Id*. In this regard, "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [movant]." *Liberty Lobby*, 477 U.S. at 252.

---

[1] Keating inadvertently omitted the legal standard section from its opening memorandum, and provides it now for the Court's consideration.

### III.  <u>KEATING'S REPLY ARGUMENT</u>

**A.**    **Glidewell's BruxZir Mark Is Invalid**

Keating has presented the Court with evidence in support of the present motion, in support of Keating's co-pending motion for summary judgment seeking cancellation of Glidewell's mark (Docket No. 83), and in support of Keating's opposition to Glidewell's pending motion for summary judgment of validity (Docket No. 118), demonstrating that the term BruxZir in the minds of dentists is generic for an all-zirconia crown, or at a minimum highly descriptive of such a crown without any secondary meaning of Glidewell as a source of goods.  Keating has also provided the Court with evidence that "bruxer" is a well known term in the dental industry for the primary indicated user of an all-zirconia crown, and further that "BruxZir" and "bruxer" are pronounced identically by Glidewell and others.  Keating has further provided expert opinion that the Trademark Office never would have allowed the BruxZir mark to register had the significance of the BruxZir term, its pronunciation, and the meaning of its component parts "Brux" and "Zir" been explained to the Trademark Examiner.  Keating has further provided evidence that Glidewell and one-hundred so-called "authorized" dental labs have been pervasively using the term BruxZir generically for an all-zirconia crown without any explicit or implicit association with Glidewell.

All of this evidence easily overcomes the presumption of validity bestowed by Glidewell's federal registration of the BruxZir mark.  Glidewell's registration is "merely evidence 'of registration,' nothing more." *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002); *see also Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1115 (9th Cir. 2010) ("Federal registration in itself does not mean that [the plaintiff] can necessarily survive summary judgment solely on the basis of its registration. '[A]ssuming the defendant can demonstrate through law, undisputed facts, or a combination

thereof that the mark is invalid, the evidentiary bubble [created by the federal registration] bursts and the plaintiff cannot survive summary judgment.'" (quoting *Tie Tech*, 296 F.3d at 783)).

Other than the mere fact of its registration, the only admissible evidence on the validity of its mark that Glidewell presents to the Court is statements from its own employees.   Such statements, from interested witnesses, are insufficient to overcome summary judgment.   *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 910 (9th Cir. 1995) ("Trademark law is skeptical of the ability of an associate of a trademark holder to transcend personal biases to give an impartial account of the value of the holder's mark. 'Attestations from person in close association and intimate contact with (the trademark claimant's) business do not reflect the views of the purchasing public.'").

Because Glidewell's mark is generic, or at best highly descriptive, the mark is invalid in view of Glidewell's failure to present admissible evidence of secondary meaning outside of testimony from its own employees.   Because the mark is invalid, Glidewell cannot establish infringement of the mark and the Court may grant Keating's motion in its entirety on this basis alone.

**B.   <u>No Reasonable Jury Could Find A Likelihood Of Confusion</u>**

"[T]he burden of proving likelihood of confusion rests with the plaintiff." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc*., 543 U.S. 111, 121-122, 125 S. Ct. 542, 550, 160 L. Ed. 2d 440 (2004).   As shown in Keating's opening papers, Glidewell cannot present admissible evidence on the Ninth Circuit's *Sleekcraft* factors that meets this burden.   Its opposition fares no better, relying heavily on attorney argument, untimely testimony from seven Glidewell dentist-customers, untimely expert opinions from Glidewell's in-house dentist and one other dentist, and self-serving statements from its employees, including extensive reliance on hearsay regarding alleged conversations with dentists.

1.      **Glidewell Fails To Show That BruxZir Is A Strong Mark**

Glidewell argues that the BruxZir mark is strong both conceptually and commercially.  Yet it presents no probative evidence to support either.

a.      **The BruxZir Mark Is Conceptually Weak**

Glidewell argues that the mark BruxZir is suggestive, requiring dentists to engage in multistage reasoning to identify the characteristics of the product that are being suggested.  (Opp'n at 3.)   Yet Glidewell cites to no admissible probative evidence that dentists viewing the mark find it suggestive.  Glidewell relies on party statements from Mr. Shuck and Mr. Ramirez (Glidewell's VP of Marketing and General Manager, respectively), untimely expert opinion from Dr. Goldstein, and conclusory expert opinion from Mr. Franklyn, a law professor.  With the exception of Dr. Goldstein, the testimony of these witnesses is not probative because it fails to provide the perspective of dentists.

Even if Dr. Goldstein's untimely expert opinion is considered (and it should not be), it fails to establish that BruxZir is suggestive.  Dr. Goldstein agrees that dentists would immediately understand that "Zir" means zirconia, without imagination or multistage reasoning.  (App.Evid., Ex. O ¶ 17.)  He also agrees that "Brux" causes dentists to think of bruxism.  (*Id*.)  Dr. Goldstein does not state that he requires imagination or multistage reasoning to recognize that "BruxZir" indicates a zirconia crown for bruxers. Tellingly, even the untimely declarations of Glidewell's own dentist-customers do not dispute this fact.  (*Id* Exs. A–F & Q.)

Glidewell disregards the significance of the pronunciation of BruxZir, which is identical to the well-known dental term "bruxer."  Glidewell cannot rebut Keating's evidence that Glidewell's own employees pronounce the words the same.  (Van Hoosear Decl. (Docket 110), Exs. V-1, V-2, V-3, V-4, V-5.)

Dr. Eggleston, Keating's expert witness and a practicing prosthodontist, immediately understands a BruxZir crown to indicate a zirconia crown for

treating bruxers.   (Eggleston Decl., Ex. 65 at 14; Ex. 67 at 5.)  Glidewell has failed to create a genuine dispute on the conceptual weakness of its mark.

### b.   The BruxZir Mark Is Commercially Weak

Glidewell devotes ten pages of its opposition brief arguing that the mark BruxZir is commercially strong.  (Opp'n at 3–13.)  Yet Glidewell cites to no probative evidence that dentists around the U.S. view the mark as a source of goods.   The only personal perspectives on the mark come from Glidewell employees, such as Mr. Shuck and Dr. DiTolla, and untimely statements from friendly dentist-customers of Glidewell who were never disclosed to Keating as witnesses during discovery.  Glidewell further relies upon an unauthenticated email from Catherine Bonser regarding "brand research" purportedly performed by her employer, Dentsply, that relates in some way to the BruxZir mark. (Opp'n at 11 (citing to SGI 121–123 (citing to App.Evid., Ex. 6)).)  Glidewell is not relying upon Ms. Bonser as a witness, and it has failed to produce documentation, or any other witness, that relates to the brand research allegedly conducted by Dentsply.  As a further sign of desperation, Glidewell even resorts to mischaracterizing testimony from Shaun Keating, the non-dentist CEO of the defendant, as evidence of how dentists around the U.S. view the BruxZir mark. (Opp'n at 10.)  Mr. Keating was testifying about the goliath size of Glidewell as a dental lab, not the strength of its BruxZir mark in the minds of dentists.

Glidewell goes so far as to suggest that its BruxZir brand is as famous as "Coca Cola." (Opp'n at 10–12.)  If this truly were the case, Glidewell could and should have hired an objective expert in marketing to conduct a rigorous objective survey of dentists.  Glidewell chose not to do so.   The lack of such a survey, by itself, may be used to draw an inference that the results of the survey would have been unfavorable.  *Playboy Enters. v. Netscape Communs. Corp.*, 55 F. Supp. 2d 1070, 1084 (C.D. Cal. 1999); *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1041–42 (C.D. Cal. 1998).

In place of evidence of what disinterested dentists actually think of the mark, Glidewell relies on the mere fact that it uses the name in its marketing to dentists across the U.S. (Opp'n at 8–12.) Glidewell, for example, compares itself to the marks "Century 21" and "UGG" for real estate services and apparel goods because those marks have been deemed strong by virtue of millions of dollars of advertising. (Opp'n at 12.) Yet those are examples of strong marks that are arbitrary or fanciful, with no descriptive meaning whatsoever to the goods and services to which they are applied. For such marks, advertising expenditures may be probative of how customers are likely to view the mark when used in commerce. Here, in contrast, Glidewell has a mark that dentists immediately view as generic, or at best highly descriptive, for the product. For such marks, effort to promote a mark, by itself, does not indicate strength. Strength is determined by how the relevant customer population views the mark. For descriptive marks, a marketing campaign can be substantial without achieving success in customers viewing the mark as a source of goods. Such is the case here.

Documents from Glidewell and other dental labs reveal that the term BruxZir is used in a manner that suggests a type of product (an all-zirconia dental restoration) rather than a source of goods.

Dental labs provide dentists with dozens of different crown options for them to consider for use with their patients. This is true for Glidewell, Keating, and most if not all of the other thousands of dental labs in the U.S. The prescription forms dentists use to order crowns from dental labs identify BruxZir crowns as a type of crown they may order. This includes Glidewell itself (2nd Jankowski (Docket 125), Ex. 38) and other competing dental labs, including Apex Dental Milling (Eggleston, Exs. 136–137 at KDA-2867); Artiste Dental (*id*. at KDA-2877); BDL Prosthetics (*id*. at KDA-2885); Beverly Hills Dental (*id*. at KDA-2888); Continental Dental (*id*. at KDA-2917); Eliason

Dental (*id.* at KDA-2990); G&H Dental Arts (*id.* at KDA-3002); Gnathodontics (*id.* at KDA-3004); Green Dental (*id.* at KDA-3011); Ideal Dental (*id.* at KDA-3021); Las Vegas Dental Studio (*id.* at KDA-3140); Midtown Dental (*id.* at KDA-3155); Natural Arts Dental (*id.* at KDA-3167); Thoele Dental (*id.* at KDA-3269); and Trachsel Dental Studio (*id.* at KDA-3275).

These dental labs are not using the term BruxZir as a brand, but rather as a reference to a type of product: an all-zirconia crown.  In addition to BruxZir-type crowns, these labs also offer other common crown types, such as gold crowns and PFM crowns. (Same cites as above.)

Dental labs provide their dentist-customers with descriptions of BruxZir-type crowns that further reinforce the understanding that BruxZir is a type of crown.  Examples include:

- Bigler Dental Ceramics (Eggleston Decl., Ex. 136 at KDA-4797 ("BruxZir Solid Zirconiais a full contoured monolithic zirconia restoration with no porcelain overlay. . . .  Once sintered, the nearly 'bulletproof' BruxZir crown is stained and glazed to the finished product."));

- Thompson Suburban Dental Laboratory (*Id.* Ex. 95 ("BruxZir is a full contoured zirconia restoration with no porcelain overlay."));

- Dental Art Laboratories (Id. Ex. 35 ("BruxZir Solid Zirconia crowns or bridges are indicated for bruxers and grinders when PFM metal occlusal or full-cast restorations are not desired.");

- MobileTek Dental Labs (*Id.* at KDA-3161 ("BruxZir Solid Zirconia is indicated for crowns, bridges, implants, inlays and onlays.  It is an esthetic alternative to PFM metal occlusal/lingual or full-cast restorations."));

- Scrimpshire Dental Studio (*Id.* at KDA-3237 ("Solid zirconia crowns and bridges, milled to full contour using the latest CADCAM technology, Bruxzir restorations provide a precision fit. . . .")); and

- Precision Ceramic Dental Laboratory (Id., Ex. 92 ("Let BruxZir impress you with its beauty and brawn. These virtually unbreakable

crowns are full contoured zirconia . . . so they are completely chip-proof.")).

(*See also* Eggleston Decl. (Docket 93), Exs. 85–88, 91.)  These dental labs use the term BruxZir in a way that conveys to dentists a type of product: an all-zirconia crown.

As a result of this extensive non-trademark use of the mark, the dental community uses the term BruxZir generically, not as a source of goods.  By way of example, in February 2011, prior to Keating's release of its KDZ Bruxer all-zirconia crowns, dentist Dr. Cynthia Jetter wrote a blog post about her experience with one of her patients who had fractured the porcelain on a crown: "This particular patient was also a bruxer so I decided to change their restoration to a solid zirconia or BruxZir crown."  (Jankowski Decl. (Docket 91), Ex. 40.)

Dental labs also use the term "Bruxer" as a name for an all-zirconia crown.  (*See, e.g.,* Eggleston Decl. (Docket No. 93), Exs. 115, 116 & 118.)  By way of example, in April 2011, a dental lab posted the following on-line message:

> As we know there are different kinds of crowns available now a days.  Metal crowns, ceramic crowns even they have different types. <u>Bruxer is one of them</u>.  Bruxer is Solid Zirconia is a monolithic solid zirconia crown restoration with no porcelain overlay.

(*Id*., Ex. 118 (emphasis added).)

Glidewell argues that the extensive use of Brux and Zir in product names of a crowd of other companies is irrelevant to the strength of its mark because the names were used on products other than crowns and did not use names that are "confusing similar."  (Opp'n at 5.)  While the number of companies in the crowd and the closeness of the marks are relevant, Glidewell is wrong in arguing that the strength of its mark is unaffected by third party use of "Brux" on products for bruxers and "Zir" on products for dental zirconia.  By so arguing, Glidewell seeks to interpret the relevant "field" so narrowly that the

germane crowd disappears.  *See Halo Mgmt., LLC v. Interland, Inc.*, 308 F. Supp. 2d 1019, 1034 n15 (N.D. Cal. 2003) ("The court does not believe that [plaintiff] can tailor the 'field' in a way that proves most strategically advantageous").

Regardless, Keating has provided evidence of 180 competing dental labs that sell their own versions of all-zirconia crowns using the BruxZir name. There are no written contracts between Glidewell and these so-called "authorized" labs, and Glidewell does not inspect their facilities.  (Jankowski Decl. Ex. 5 at 63.)  To become an authorized lab, a dental lab need only buy zirconia milling blanks from Glidewell.  (*Id.* at 58–59; 98–99.)  Glidewell does not review samples of finished crowns made by these labs unless asked to do so by the labs, and Glidewell does not have a monitoring system in place for the labs.  (*Id.* at 63-64.)  Authorized labs do not need to achieve any particular level of quality to become or remain an authorized lab.  (*Id.* at 64–65.)  Authorized labs are not required to provide Glidewell with data on product defects or product returns.  (*Id.* at 69.)

In contrast to Glidewell's lack of control over the quality of all-zirconia crowns made and sold by the authorized laboratories under the BruxZir name, Glidewell requires demanding quality control measures for its own all-zirconia crowns.  To ensure crowns are of sufficiently high quality, new hires at Glidewell historically received six months of training with models before working on production crowns. (Mangum Decl. Ex. 52 at 19–21.)  More recently the educational program was improved so new hires could be trained in three months.  (*Id.* at 34–35.)  For Glidewell's BruxZir crowns, quality control is a top priority. (*Id.* at 54-55.)

The absence of an agreement between Glidewell and the other labs with provisions restricting or monitoring the quality of goods or services produced under the BruxZir trademark dictates that Glidewell has engaged in "naked

licensing" of its mark.  *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 597 (9th Cir. 2002).  Naked licensing results in a mark ceasing to function as a symbol of quality and a controlled source.  *Id.* at 596 (citing McCarthy § 18:48).  Naked licensing is "*inherently deceptive* and constitutes abandonment of any rights to the trademark by the licensor." *Id.* at 598. "Consequently, where the licensor fails to exercise adequate quality control over the licensee, 'a court may find that the trademark owner has abandoned the trademark, in which case the owner would be estopped from asserting rights to the trademark.' " *Id.* at 596 (quoting *Moore Business Forms v. Ryu*, 960 F.2d 486, 489 (1992)).

Glidewell's opposition also fails to rebut Keating's testimony from Dr. Eggleston (Eggleston Decl. Ex. 65 at 16-18; Ex. 66 at 3-7) and thirteen additional dentists that consider BruxZir to be a generic reference to an all-zirconia crown.  (*See* Belton, Brady, Murphy, Myers, Nussear, Scott, Tobin ¶¶ 9-11; Campbell, Colleran, Richardson, Stephens ¶¶ 10-12; Jacquinot, Sweet at ¶¶ 9-10.)  Glidewell also fails to rebut the testimony from the officer of Showcase Dental, a third party dental lab unaffiliated with Glidewell or Keating, that has received numerous orders from dentists who write BruxZir on prescription forms as a generic reference to Showcase Dental's all-zirconia crown. (Frattura Decl. ¶¶ 6-12, 18.)

Glidewell argues it has amassed an array of industry awards and recognition (Opp'n at 1, 12), relying on exhibits attached to the Shuck Declaration. (App.Evid., Ex. G ¶¶ 30-36.)  In fact, the assembled documents do not reflect objective praise for Glidewell's BruxZir crown:

- Ex. 26: Dr. Christensen comments on all-zirconia crowns generally.  The beginning of the post uses BruxZir as a generic name for an all-zirconia crown: "he [Dr. Christensen] had very positive things to say about EMAX and BruxZir (full contour zirconia)."

-12-

- Exs. 27–30 are advertisements from "authorized" dental labs (who purchase zirconia from Glidewell) offering BruxZir-type crowns.

- Ex. 31 is a promotional article written by Dr. DiTolla, Glidewell's in-house dentist.

- Ex. 32 discusses full-contour crowns generally.

- Ex. 33 is a reprint of a Glidewell press release. (*Compare with* Jankowski Decl., Ex. 14 at 5-6.)

- Ex. 34 discusses all-zirconia crowns in general.  It mentions Glidewell's product and "10 or more" others available on the market.

- Ex. 35 is a blog post from an admitted "friend" of Glidewell comparing an all-zirconia crown and a PFM crown; it is not specifically laudatory towards Glidewell's all-zirconia product.

- Ex. 36 is the same article as Ex. 32.

- Ex. 37 is an article about monolithic restorations in general, listing BruxZir as one such example.

Glidewell attempts to distinguish *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1164–1165 (9th Cir. 2009) on the grounds that the strength of the mark factor was found to favor the plaintiff despite the defendant's evidence of a crowded field.  (Opp'n at 13.)  Glidewell ignores that the plaintiff in that case had a fanciful mark entitled to "strong protection."  *One Indus*. 578 F.3d at 1164-1165.  Despite that strong protection, the court recognized the importance of the marks of the four other companies, concluding that "[s]uch use of other 'O' symbols weakens the [plaintiff's] Rounded O mark.  Based upon these offsetting considerations, we agree with the district court's apparent view that the first Sleekcraft factor, at best, weighs slightly in favor of finding confusion." *Id*.  Here, in contrast to *One Indus*., Glidewell begins with a mark that is, at best, highly descriptive and weak as a mark.  From this weak starting

/ / /

1    point, the existence of a crowd of other "Brux" and "Zir" marks in the dental
2    industry further shrinks the strength of the mark.

3        For the many reasons above, Glidewell has failed to rebut Keating's
4    showing that this factor weighs in Keating's favor.

5        **2.    Proximity of Relatedness of Goods**

6        The proximity or relatedness of the goods factor is not in dispute.

7        **3.    Glidewell Fails To Show Similarity of the Marks**

8        Glidewell argues that the marks are "quite similar" based on a self-
9    serving analysis that is both legally and factually flawed in its disregard of the
10   many distinctions that exist between the marks.  (Opp'n at 14–15.)

11       Glidewell's analysis fails to properly treat Keating's mark in its entirety
12   as used in commerce, in violation of the anti-dissection rule.  *See*, *e.g.*,
13   MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, 4TH EDITION, § 23:41.
14   Keating's mark includes a first part ("KDZ") that provides an express indicator
15   of source ("Keating Dental Zirconia") and a second part ("Bruxer") that
16   provides an express description of the goods associated with the mark (a crown
17   for bruxers).

18       While Glidewell argues that the "KDZ" portion of Keating's mark serves
19   no source-identifying function (Opp'n at 15), Keating has continuously used
20   KDZ as a house mark for a family of zirconia-based products since May 2011
21   (Keating Decl. (Docket 95) ¶ 11.), and Keating began using KDZ before
22   Glidewell began using BruxZir.  (Keating Decl. ¶ 12; Exs. A-E; Mangum Decl.,
23   Ex. 54 at 43:15-45:12.)  The KDZ house mark greatly reduces, if not eliminates
24   entirely, any likelihood of confusion. *See Cohn v. Petsmart, Inc.*, 281 F.3d 837,
25   842 (9th Cir. 2002) (no confusion where distinctive house mark displayed and
26   accused mark used as "tagline").

27       Regarding the "Bruxer" portion of Keating's mark, the likelihood of
28   confusion is greatly reduced because Keating is using the proper spelling of a

-14-

term well known to dentists that Keating—and others—are allowed to use to describe the nature of their products.  In this regard, Keating has presented extensive evidence of third party dental labs describing their all-zirconia crowns as a good choice for bruxers.  (Docket 87-1, ¶¶ 39-40; Docket 88-1 ¶ 48.)  In its pending trademark application for its "KDZ Bruxer" mark, Keating expressly disclaimed the word "Bruxer" as generic because it is used to describe a characteristic of the product.  (Boatright Decl. (Docket 94) Ex. A at ¶¶ 40, 45, 53, 60; Ex. C.)

Glidewell's analysis also fails to consider Keating's mark in its entirety by wholly ignoring the distinctive and prominent "oval" that surrounds the words KDZ and Bruxer/Ultra/Max in Keating's KDZ family of marks.

  

See Self-Insurance Inst. of America, Inc. v. Software & Information Indus. Ass'n, 208 F. Supp. 2d 1058, 1071 (C.D. Cal. 2000) (parties' "SIIA" marks look dissimilar when considered in their entirety due to visual elements around the marks); SG Services Inc. v. God's Girls Inc., 2007 U.S. Dist. LEXIS 61970 at *16 (C.D. Cal. 2007) (marks dissimilar in part because plaintiff's mark features an image of a woman's head, while defendant's logo has no bodily image).

Glidewell argues that court cases are "legion" in which similar marks share only a suffix (Opp'n at 16).  This argument is flawed both because Glidewell, again, disregards the anti-dissection rule, and further because Keating's mark and Glidewell's mark do not share a suffix.  Keating's suffix is an "er" ending, which is not identical, or confusingly similar to Glidewell's "Zir" ending.

/ / /

-15-

Keating distinguished the *Apple Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521 (9th Cir. 1984) and *Conversive, Inc. v. Conversagent, Inc.*, 433 F. Supp. 2d 1079, 1094 (C.D. Cal. 2006) cases in its opposition to Glidewell's motion for summary judgment of infringement.   The other cases cited by Glidewell at page 16 of its opposition (EARTHQUAKE vs. CARQUAKE and ADVICOR vs. ALTOCOR) are readily distinguishable as well.

Finally, Glidewell dismisses the many cases Keating cites in its opening brief in which courts have found marks to be dissimilar despite sharing common descriptive or generic portions in their marks.   Glidewell deems such cases inapposite because "'Brux' is neither generic nor highly descriptive in the market for full contour zirconia crowns."   (Opp'n at 17.)   Glidewell's position is undermined by its admission in this case that "brux" is a well-known word in the dental industry for the verb associated with bruxism and bruxers, and the extensive marketing done by Glidewell for its BruxZir crowns as "ideal for bruxers." (Docket 87-1, ¶¶ 39-40)

For all of the above reasons, Glidewell has failed to rebut Keating's showing that this factor favors Keating.

**4.   Glidewell Fails to Present Even A Single Incident of Actual Confusion**

Glidewell argues in its opposition that there is "pervasive" evidence of actual confusion in this case, including as many as eighty-six instances. (Opp'n at 17.)   As explained at length in Keating's opposition to Glidewell's motion for summary judgment of infringement, the actual number of incidents of actual confusion in this case is <u>zero</u>.   Glidewell relies on mischaracterizations of Keating's business records and witness testimony and, from its own files, a "smoking gun" document never produced during discovery and a changed story by the Glidewell employee who purportedly authored the document.

/ / /

-16-

Tellingly, Glidewell commissioned no surveys of dentists to establish a likelihood of confusion.  For a market leader like Glidewell, the absence of survey evidence itself may be used to infer that the results of the survey would be unfavorable.  *Playboy Enters. v. Netscape Communs. Corp.*, 55 F. Supp. 2d 1070, 1084 (C.D. Cal. 1999).

Glidewell's first example of alleged confusion is based on a phone call between Glidewell employee Nicole Fallon and Ms. Carlisle, an employee in the Florida dental lab of Dr. Jade Le.  Yet the evidence presented by Glidewell to the Court (in the form of a declaration from Ms. Fallon) flatly contradicts the version of the incident that Glidewell provided to Keating during discovery. (*See* Jankowski, Ex. 1 at 7–10 (responses to Rogs 7 & 12); Ex. 2 at 7 (response to Rog 23).)  Specifically:

- Ms. Fallon's story changed so that Ms. Carlisle now initiated the contact.  (Fallon Decl. (Docket 90), Ex. M ¶ 4 ("Ms. Michelle Carlisle . . . called me to request a Glidewell discount. . . .").)

- Her story changed so that now she spoke directly to Dr. Jade Le.  (*Id*. ¶ 5 ("Dr. Le joined the phone conversation . . . .")

- Her story changed so that now Dr. Le makes an express statement of confusion between the parties' marks.  (*Id*. ¶ 5 ("Dr. Le . . . said that she thought 'BruxZir' and 'Bruxer,' from Keating, 'were the same thing.'").)

- Her story changed so that now she was capable of producing the facsimile containing a copy of the Keating invoice from Dr. Le. (*Id*. ¶ 4; App.Evid., Ex. 1.)

- Her story changed so that now she memorialized her conversation in a "note report" that "accurately reflects" her conversation and "was maintained in the ordinary course of Glidewell's business."  (*Id*. ¶¶ 9– 10; App.Evid., Ex. 2.)

-17-

Despite purportedly being part of Glidewell's business records in existence since April 2012, Glidewell did not produce Exhibits 1 and 2 referenced in Ms. Fallon's declaration until Friday, November 16, 2012, several weeks after the close of discovery and three days before Glidewell filed its motion. (2nd Jankowski Decl., Ex. 154.)

Even if the Court were to allow Glidewell to rely on Ms. Fallon's hearsay statements attributable to Ms. Carlisle, the only confusion apparent from the original account of Ms. Fallon's communications is that Ms. Carlisle was confused as to the nature of the coupon offer being made by Ms. Fallon.  It is insufficient for Glidewell to show confusion in the abstract.  Relevant confusion is that which affects purchasing decisions.  *See Echo Drain v. Newsted*, 307 F. Supp. 2d 1116, 1126–27 (C.D. Cal. 2003).  Here, there is no evidence of confusion that would affect a purchasing decision.

The remaining incidents alleged by Glidewell are based on prescription forms provided to Keating to order all-zirconia crowns on which the dentists had written BruxZir, or some variation thereof.  (Opp'n at 18–19.)  Keating has presented declarations from thirteen dentists stating that they were not confused as to source, or intending to order a crown affiliated with Glidewell, and that they had written Bruxzir as a generic reference to an all-zirconia crown.

Glidewell argues that Keating's evidence is insufficient because Keating does not have a declaration for every example in which a dentist wrote BruxZir.[2]  Glidewell has it backwards.  The telling fact is that Glidewell has presented <u>not a single declaration</u> from these dentists demonstrating that their writing of BruxZir on the form reflected an example of actual confusion.

/ / /

---

[2] There are eighty-three different prescription forms presented to the Court for which a dentist wrote BruxZir, or something similar, on the form. These eighty-three forms were submitted to Keating by fifty-seven different dentists. (2nd Mangum Decl. ¶ 5.)

Glidewell also argues that even if these dentists knew they were ordering from Keating, as they testify, "it is likely that Keating has benefited from 'initial interest confusion.'" (Opp'n at 19.)  This too ignores the evidence in the case. The dentists stated that they were preexisting customers of Keating when they placed their orders.  (Belton ¶¶ 3, 8-9; Brady ¶¶ 3, 8-9; Campbell ¶¶ 3, 9-10; Colleran ¶¶ 3, 9-10; Jacquinot ¶¶ 3, 8-9; Murphy ¶¶ 3, 8-9; Myers ¶¶ 3, 7–8; Nussear ¶¶ 3, 8-9; Richardson ¶¶ 3, 9-10; Scott ¶¶ 3, 8-9; Stephens ¶¶ 3, 9-10; Sweet ¶¶ 3, 7-8; Tobin ¶¶ 3, 8-9.)

Other dentists who wrote BruxZir, or similar generic references to all-zirconia crowns, are also long-time Keating customers.  (Brandon Decl. ¶ 9.) Simply put, all of the evidence points to the same thing: these dentists' prescription forms are evidence of the genericness of the term BruxZir, not evidence of actual confusion between the parties' marks.

Glidewell also mischaracterizes Keating's policy of calling these dentists after receiving to confirm their orders for all-zirconia crowns.  To Glidewell, the calls were necessary to address the dentists' confusion.  (Opp'n at 17–18.)  In fact, Keating initiated its policy of calling dentists after getting sued by Glidewell as a mitigation measure, to ensure it did not mistakenly fulfill any prescriptions from dentists wanting to purchase an all-zirconia crown from Glidewell.  (Brandon Decl. ¶¶ 2-4.)  Each and every time Keating called one of these dentists, the dentist confirmed that they were not confused, and that they were indeed ordering Keating's all-zirconia crown.  (Brandon Decl. ¶ 5.)

For all of the above reasons, Glidewell has failed to rebut Keating's showing that this factor weighs in Keating's favor.

### 5.    Marketing Channels

The marketing channels factor is not in dispute.

/ / /

/ / /

**6.**      **Glidewell Fails to Apply an Appropriate Degree of Consumer Care**

Glidewell's opposition argues that the standard of care applied by dentists is low, based on the properties of the crowns being "highly similar" and the price differential of the product, $99 for Glidewell vs. $139 for Keating, which Glidewell argues is "not so great as to reward focused attention on the brand under which the crowns are marketed." (Opp'n at 21–22.)  Glidewell is wrong, both because all customers care about a 40% difference in price, and further because dentists are concerned about the quality of crowns they purchase—price notwithstanding—because ultimately they are the ones responsible for the health and well-being of the users of the crowns, their patients.  (Eggleston Decl. ¶ 11.) Glidewell's argument that the standard of care is low is not only self-serving—chosen to make a likelihood of confusion easier to show—it is also demeaning to the professionalism of dentists.

Glidewell claims it has evidence that dentists are not discerning shoppers, based on a hearsay statement by a Glidewell employee, Dr. DiTolla, that "many dentists may regard them [all-zirconia crowns] as interchangeable." (App.Evid., Ex. I ¶ 21.)  Contrary to Glidewell's assertion, Keating presented evidence that dentists do not view dental labs as interchangeable, and that they order crowns from dental labs with which they have had a good experience with product quality and customer service, and they avoid dental labs with which they have had a bad experience. (Eggleston Decl. ¶ 12; Murphy Decl. ¶ 3; Scott Decl. ¶ 3; Stephens Decl. ¶ 3.)

Glidewell has failed to rebut Keating's showing that this factor weighs in Keating's favor.

**7.**      **Glidewell Has Not Rebutted Keating's Showing of Good Intent**

Glidewell argues that Keating is using the mark "KDZ Bruxer" in bad faith for the purpose of free-riding on Glidewell's good will.  (Opp'n at 21–23.)

To the contrary, Keating made a very reasonable selection of a mark for its product that includes a clear indicator of Keating Dental [Arts] Zirconia as the source ("KDZ") with a follow up term that describes the primary intended user (a bruxer).  Other dental labs have also sought to use the term "Bruxer" in the names of their all-zirconia crowns for bruxers, all of whom have been accused by Glidewell of bad faith.  Examples include Fusion Dental ("Full Solid Bruxer Zirconia" (*see* Jankowski Decl., Ex. 24)); Pittman Dental ("Bruxer All-Zirconia Crowns" (*Id*., Ex. 25)); China Dental ("Bruxer All Zirconia" (*Id*., Ex. 29)); and Showcase Dental ("Zir-Bruxer Crown" (*Id*., Ex. 30)).

Glidewell attempts to twist Keating's retention of counsel to conduct a trademark search—a clear showing of good faith—as an indication of bad faith because Keating does not possess a copy of the search results.  Mr. Keating relied upon the advice of his trademark counsel on this issue, not on his own review of search results.  Even had Mr. Keating reviewed search results showing Glidewell's mark, which is not the case here, that would be insufficient by itself to support a finding of bad intent.  *See M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d 1073, 1085 (9th Cir. 2005) (intent factor favors defendant relying on counsel even though a trademark search was performed that uncovered plaintiff's mark).

Glidewell argues that it is irrelevant that Keating began using "KDZ" three years before Glidewell began using "BruxZir."  But of course that fact is highly relevant to show that Keating did not include the "Z" in "KDZ" to copy the "Z" in BruxZir, an argument that Glidewell has made in this case.  When questioned on this point, Glidewell's General Counsel and Rule 30(b)(6) witness saw bad intent in Keating's using the "KDZ" prefix:

Q. What about the KDZ part?  [Is] That part confusing?

A. Definitely the Z.  Sounds like the zirconia they probably heard about. (Jankowski, Ex. 6 (Depo. Tr. of Keith Allred) at 204:17–20.).

1   Glidewell also argues that Keating's introduction of the KDZ family of
2   products does not negative bad intent.  Glidewell's example is that it would be
3   improper for a competitor of Coca-Cola to introduce "Phil's Coca-Cola" and
4   two other "Phil's" sodas at the same time.  To better fit Glidewell's analogy to
5   the facts of this case, Glidewell would be the holder of the mark "CoLuh" for a
6   cola beverage.   Keating would be the holder of the mark "Shaun's Cola."
7   Because "cola" is a generic term for the beverage, Keating should be entitled to
8   offer his new beverage as "Shaun's Cola" despite Glidewell's use of "CoLuh"
9   as a name.[3]

10   Glidewell has failed to rebut Keating's showing that this factor weighs in
11   its favor.

12   ### 8.     Likelihood of Expansion
13   The marketing channels factor is not in dispute.

14   ### 9.     Summary of Sleekcraft Factors
15   Glidewell has not rebutted Keating's showing of undisputed material
16   facts demonstrating that the most important *Sleekcraft* factors weigh in
17   Keating's favor.  Summary judgment of no infringement of Glidewell's mark as
18   a matter of law is thus proper.

19   ## C.   Keating Has Satisfied the Requirements of the Fair Use Defense

20   Glidewell argues that Keating's use of "Bruxer" is not protected by the
21   fair use defense because it fails at least two of the three elements necessary for
22   the defense: defendant's use must be (1) other than as a trademark, and (2) only
23   to describe Keating's product.  (Opp'n at 23.)  Glidewell is wrong on both.

24   Glidewell argues that Keating is using "Bruxer" as a trademark because it
25   has applied for a trademark in the name "KDZ Bruxer."  Glidewell ignores that

26
27   [3] Actually, the name "CoLuh" would be an invalid mark for use with cola
28   beverages because it is a phonetic equivalent of the generic name for the product.

-22-

the "Bruxer" portion of the mark does not identify Keating, it describes the primary indication for the product: bruxers.   In its trademark application, Keating has expressly disclaimed the term "Bruxer" as being generic. (Boatright Decl. (Docket 94), Ex. A at ¶¶ 40, 45, 53, 60; Ex. C.)

The requirement that a fair use be "otherwise than as a mark" does not mean that a descriptive term cannot be included as part of a name or mark.   To qualify for the fair use defense, the use of the descriptive term must be <u>to describe the characteristics or qualities of the goods</u> rather than to identify and distinguish the goods and services as those of the defendant.  *See Microware Systems Corp. v. Apple Computer, Inc.*, 238 F.3d 989 (8th Cir. 2001) *aff'g* 126 F. Supp. 2d 1207 (S.D. Iowa 2000) (Apple's use of "Mac OS 9" was a fair use against the trademark "OS-9" for software products); *Leathersmith of London, Ltd. v. Alleyn*, 695 F.2d 27 (1st Cir. 1982) ("TANTALUS Custom Leathersmiths & Bookbinders" was a fair use against asserted trademark "Leathersmith"); *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178 (5th Cir. 1980) (use of "larvicide" in the names "Rabon Oral Larvicide" and "Shell Poultry Spray & Larvicide" was a fair use, notwithstanding the existence of a registration for the term "Larvacide" for a grain fumigant); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir. 1976) (boots with names "Camel Safari," "Hippo Safari," and "Chukka Safari" were fair uses against "Safari" trademark for outer garments, sporting goods, and apparel); *White Swan v. Nature Co.,* No. 93-35213, 1994 U.S. App. LEXIS 17791, *3 (9th Cir. July 15, 1994 (unpublished)) (use of "Hummingbird Seed Mix" was a fair use even though "Hummingbird Garden" was a registered mark for the same product);

Here, Keating's use of "Bruxer" is not as a mark because it is not being used to identify *and distinguish*.  "Bruxer" alone does not distinguish Keating's product from the product of any other dental lab that offers a crown meant to be

-23-

used for bruxers. It describes the class of intended users which makes it a descriptive term within Keating's mark. "[W]ords that describe the characteristics of goods, services, or business are descriptive. So too are words describing . . . the class of intended purchasers." RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 14 cmt. a (1995); *see also* Trademark Manual of Examining Procedures § 1209.03(i); Boatright Decl. (Docket 94) Ex. A at ¶ 48.)

For these reasons, the Court should find that Keating has established the Fair Use Defense even if it finds that Glidewell's mark is valid and that there is a likelihood of confusion.

**D.** **Glidewell Has Failed To Rebut Keating's Showing That Summary Judgment Is Appropriate On Its Second and Third Causes of Action**

Glidewell does not dispute that its second and third causes of action rise and fall with its first cause of action. (Opp'n at 25.) Accordingly, Keating's showing that it is entitled to summary judgment of no infringement as a matter of law further dictates that it is entitled to summary judgment as a matter of law on Glidewell's second and third causes of action as well.

## IV. CONCLUSION

For the reasons set forth above and in Keating's opening brief, Keating respectfully requests that the Court grant its motion in its entirety.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: December 3, 2012      By: /s/ David G. Jankowski
                              Lynda J. Zadra-Symes
                              Jeffrey L. Van Hoosear
                              David G. Jankowski

                              Attorneys for Defendant/Counter-Plaintiff,
                              KEATING DENTAL ARTS, INC.

14403833

-24-