Lynda J. Zadra-Symes (SBN 156,511)
Lynda.Zadra-Symes@kmob.com
Jeffrey L. Van Hoosear (SBN 147,751)
Jeffrey.VanHoosear@kmob.com
David G. Jankowski (SBN 205,634)
David.Jankowski@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Defendant/Counter-Plaintiff,
KEATING DENTAL ARTS, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JAMES R. GLIDEWELL DENTAL CERAMICS, INC. dba GLIDEWELL LABORATORIES, <br><br> Plaintiff, <br><br> v. <br><br> KEATING DENTAL ARTS, INC. <br><br> Defendant. <br><br> AND RELATED COUNTERCLAIMS. | Civil Action No. SACV11-01309-DOC(ANx) <br><br> **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT CANCELING GLIDEWELL'S TRADEMARK REGISTRATION** <br><br> Date: December 17, 2012 <br> Time: 8:30 a.m. <br> Location: Courtroom 9D <br><br> Honorable David O. Carter |

<u>TABLE OF CONTENTS</u>

<u>Page No.</u>

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ......................... 1

II.   ARGUMENT ......................................................................................... 2

    A.   The BruxZir Registration Is Invalid And Should
        Be Canceled ........................................................................... 2

        1.   Keating's Evidence Rebuts Presumption of
             Validity ...................................................................... 2

    B.   Glidewell Has Failed To Satisfy Its Burden On
        Summary Judgment Of Proving A Protectable
        Mark ....................................................................................... 3

        1.   BruxZir Is A Misspelling of Bruxer ......................... 5

             a.   BruxZir Identifies A Type Of Crown
                 For Bruxers, Not A Source ........................... 5

        2.   Pre and Post May 2011 Evidence Shows
             Genericness ............................................................... 7

        3.   Keating's Alternative Argument Of Mere
             Descriptiveness Is Not An Admission Of
             Validity .................................................................... 10

        4.   Glidewell Mischaracterizes Keating
             Evidence ................................................................. 10

        5.   Keating Internal Documents Do Not
             Establish That Glidewell's Mark Is
             Protectable ............................................................. 12

        6.   Evidence Of Generic Use From Showcase
             Dental Lab .............................................................. 13

        7.   Undisclosed Glidewell Customer/Dentists'
             Testimony And Untimely Expert Testimony
             Is Inadmissible ....................................................... 13

        8.   Glidewell Employee Declarations Are Not
             Evidence Of Primary Significance Of Mark
             To Relevant Consumers .......................................... 15

    C.   Glidewell's Generic Use Confirms Genericness Of
        BruxZir ............................................................................... 16

    D.   Use of BruxZir By "Authorized Labs" Is Not
        Controlled And Does Not Identify Glidewell As A
        Source ................................................................................. 17

## TABLE OF CONTENTS
(continued)

Page No.

E.   Evidence Establishes Widespread Third Party Marks Including "Brux", "Zir" And "Bruxer" For Zirconia Crowns .................................................. 18

F.   Widespread Use Of Brux And Zir In Dental Industry Shows Those Terms Do Not Indicate Source ................................................................. 18

G.   Glidewell's Mark, If Not Generic, Is Merely Descriptive ............................................................... 19

   1.   Dentists Do Not Need Any Mental Leap Of Imagination To Recognize BruxZir As Meaning Zirconia Crowns For Bruxers ..................... 19

   2.   The Evidence Establishes Competitors Do In Fact Use Brux  And Bruxer And Have A Competitive Need To Do So ............................... 21

H.   Glidewell Has Not Presented Any Admissible Evidence Of Secondary Meaning .............................. 22

   1.   Glidewell Has Not Submitted Any Evidence Of Effect Of Advertising On Consumers ....................................................... 22

   2.   Undisclosed Dentist Witness Testimony Is Inadmissible ...................................................... 23

   3.   Length & Manner of Glidewell's Use Disproves Secondary Meaning ........................... 24

   4.   Glidewell's Use of The Mark Was Not Exclusive ................................................................... 24

   5.   The Evidence Establishes Keating Did Not Copy Glidewell's Mark ...................................... 25

III.   CONCLUSION ....................................................... 25

1

<u>TABLE OF AUTHORITIES</u>

2

<u>Page No.</u>

3

4

*1st Source Bank v. First Resource Fed. Credit Union*,
    167 F.R.D. 61 (N.D. Ind. 1996)..................................................... 14

5

*Avery Dennison Corp. v. Acco Brands, Inc.*,
    CV99-1877, 1999 U.S. Dist. LEXIS 21464 (C.D. Cal.
    Oct. 12, 1999) ........................................................................ 11

7

*Barcamerica Int'l USA Trust v. Tyfield Imps., Inc.*,
    289 F.3d 589 (9th Cir. 2002) ..................................................... 17

9

*Burger King Corp. v. Pilgrim's Pride Corp.*,
    705 F. Supp. 1522 (S.D. Fla. 1988)............................................. 7

11

*Cairns v. Franklin Mint Co.*,
    24 F. Supp. 2d 1013 (C.D. Cal. 1998)......................................... 22

13

*Carter-Wallace, Inc. v. Procter & Gamble Co.*,
    434 F.2d 794 (9th Cir. 1970) ..................................................... 23

15

*CG Roxane LLC v. Fiji Water Co. LLC*,
    569 F. Supp. 2d 1019 (N.D. Cal. 2008)............................... passim

17

*Classic Foods Int'l, Corp., v. Kettle Foods, Inc.*,
    *468 F. Supp. 2d 1181 (C.D. Cal. 1181)*................................ 7, 10

19

*Colt Def. LLC v. Bushmaster Firearms, Inc.*,
    486 F.3d 701 (1st Cir. 2007) ..................................................... 16

21

*Cont'l Lab. Prods. v. Medax Int'l*,
    114 F. Supp. 2d 992 (S.D. Cal. 2000) ......................................... 23

23

*Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*,
    198 F.3d 1143 (9th Cir. 1999) ......................................... 4, 9, 10, 14

25

*First Brands Corp. v. Fred Meyer, Inc.*,
    809 F.2d 1378 (9th Cir. 1987)..................................................... 23

27

*Fu v. Owens*,
    622 F.3d 880 (8th Cir. 2010) ..................................................... 14

28

<u>TABLE OF AUTHORITIES</u>
(continued)

<u>Page No(s).</u>

*Halo Mgmt., LLC v. Interland, Inc.*,
 308 F. Supp. 2d 1019 (N.D. Cal. 2003)......................................................... 25

*Harris v. Del Taco, Inc.*,
 396 F. Supp. 2d 1107 (C.D. Cal. 2005)......................................................... 15

*Hodgdon Powder Co. v. Alliant Techsystems, Inc.*,
 512 F. Supp. 2d 1178 (D. Kan. 2007) .......................................................... 15

*In Hyuk Suh v. Choon Sik Yang*,
 987 F. Supp. 783 (N.D. Cal. 1997)............................................................... 22

*In re Phoseon Tech. Inc.*,
 103 U.S.P.Q. 2d (BNA) 1822 (TTAB 2012)................................................. 24

*In re Promo Ink*,
 78 U.S.P.Q.2d (BNA) 1301 (TTAB 2006).................................................... 3

*In re Redken Labs.*,
 170 U.S.P.Q. (BNA) 526 (TTAB 1971)........................................................ 4

*In re Reed Elsevier Props.*,
 482 F.3d 1376 (Fed. Cir. 2007) .................................................................... 3

*Interactive Health LLC v. King Kong USA, Inc.*,
 CV06-1902, 2008 U.S. Dist. LEXIS 123559 (C.D. Cal.
 July 24, 2008) ....................................................................................... 10, 11

*Japan Telecom, Inc. v. Japan Telecom Am., Inc.*,
 287 F.3d 866 (9th Cir. 2002) ................................................................. 15, 23

*Jarritos, Inc. v. Reyes*,
 345 Fed. Appx. 215 (9th Cir. 2009) ............................................................. 14

*Kennedy v. Allied Mut. Ins. Co.*,
 952 F.2d 262 (9th Cir. 1991) ....................................................................... 15

*Lahoti v. VeriCheck, Inc.*,
 586 F.3d 1190 (9th Cir. 2009)...................................................................... 21

### TABLE OF AUTHORITIES
(continued)

Page No(s).

*Levi Strauss & Co. v. Blue Bell, Inc.*,
    778 F.2d 1352 (9th Cir. 1985) ................................................................. 24

*M2 Software, Inc. v. Madacy Entm't*,
    421 F.3d 1073 (9th Cir. 2005) ................................................................. 15

*Maloney v. Scottsdale Ins. Co.*,
    256 Fed. Appx. 29 (9th Cir. 2007) ........................................................... 10

*Miller Brewing Co. v. G. Heileman Brewing Co.*,
    561 F.2d 75 (7th Cir. 1977) ...................................................................... 5

*Nartron Corp. v. STMicroelectronics, Inc.*,
    305 F.3d 397 (6th Cir. 2002) cert denied, 538 U.S. 907,
    123 S Ct. 1486, 155 L. Ed. 228 (2003) ................................................ 9, 24

*Nightlight Sys., Inc., v. Nitelites Franchise Sys., Inc.*,
    No. 1:04-CV-2112, 2007 WL 4563873 (N.D. Ga. 2007) ............................ 7

*Norm Thompson Outfitters, Inc. v. GM Corp.*,
    448 F.2d 1293 (9th Cir. 1971) .............................................................. 4, 14

*Nupla Corp. v. IXL Mfg. Co.*,
    114 F.3d 191 (Fed. Cir. 1997) .................................................................. 5

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*,
    469 U.S. 189 (1985) ................................................................................ 4

*Playboy Enters. V. Netscape Commc'ns Corp.*,
    55 F. Supp. 2d 1070 (C.D. Cal. 1999) ..................................................... 22

*Retail Servs. v. Freebies*,
    364 F.3d 535 (4th Cir. 2004) .......................................................... 5, 9, 16

*Rudolph Int'l v. Realys Inc.*,
    482 F.3d 1195 (9th Cir. 2007) ......................................................... 5, 16

*Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*,
    680 F. Supp. 2d 1107 (N.D. Cal. 2010) ................................................... 24

<u>TABLE OF AUTHORITIES</u>
(continued)

<u>Page No(s).</u>

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization*,
    59 F.3d 902 (9th Cir. 1995) ................................................................ 4, 14, 15

*Soweco, Inc. v. Shell Oil Co.*,
    617 F.2d 1178 (5th Cir. 1980) ........................................................ 5

*Surgicenters of America, Inc. v. Medical Dental Surgeries Co.*,
    601 F.2d 1011 (9th Cir. 1979) ........................................................ 4

*Tie Tech Inc. v. Kinedyne Corp.*,
    296 F.3d 778 (9th Cir. 2002) ........................................................ 2, 3

*Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc.*,
    419 F.3d 925 (9th Cir. 2005) ........................................................ 3, 4

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001) ........................................................ 14

*Zobmondo Entm't, LLC v. Falls Media, LLC*,
    602 F.3d 1108 (9th Cir. 2010) ........................................................ 2, 3

<u>OTHER AUTHORITIES</u>

15 U.S.C. § 1064 ................................................................................ 4

15 U.S.C. § 1065 ................................................................................ 4

Fed. R. Civ. P. 8 ................................................................................ 10

Fed. R. Civ. P. Rule 37 ................................................................ 6, 7, 14

Fed. R. Evid. 407 ........................................................................ 10, 13

Fed. R. Evid. 701 ................................................................................ 7

Fed. R. Evid. 702 ................................................................................ 7

MCCARTHY ON TRADEMARKS, 4TH EDITION, § 11:16 ......................... 21

MCCARTHY ON TRADEMARKS, 4TH EDITION, § 12:13 ......................... 16

TABLE OF AUTHORITIES
(continued)

Page No(s).

MCCARTHY ON TRADEMARKS, 4TH EDITION, § 12:38 ............................................. 5

MCCARTHY ON TRADEMARKS, 4TH EDITION, § 18:48 ......................................... 17

MCCARTHY ON TRADEMARKS, 4TH EDITION, § 32:158 ...................................... 15

RESTATEMENT (THIRD) OF UNFAIR COMPETITION
        § 14 (1995)............................................................................................... 19

## I.  <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

Glidewell has failed to present sufficient admissible evidence for a reasonable jury to find that BruxZir is a valid mark for zirconia dental crowns intended for bruxers.  The undisputed evidence establishes that the primary significance of BruxZir to dentists and dental labs is to describe the *type of crown* rather than identify Glidewell.  Thus BruxZir is generic as a matter of law.  At the very least, the mark is merely descriptive and Glidewell has not satisfied its burden of proving secondary meaning.

Glidewell own videos and testimony establish that BruxZir is phonetically equivalent to "bruxer," the intended user of Glidewell's product. Because Glidewell adopted a misspelling of the generic name for its product's user no amount of advertising or sales can turn it into a protectable trademark.

Glidewell evidence in opposition consists of (1) testimony from seven of its own dentist customers, "surprise" witnesses never identified during discovery, (2) an expert opinion from a law professor, David Franklyn, who formed his opinions regarding the BruxZir mark without speaking to a single dentist, (3) an opinion from Dr. Goldstein, a dentist expert never disclosed in discovery, and (4) testimony from several Glidewell employees relating opinions and alleged conversations with dentists touring Glidewell's facility or asking questions after Glidewell presentations. Such evidence is not probative and is inadmissible, particularly in view of the Court's denial of Glidewell's *Ex Parte* attempt to extend discovery deadlines.  (DOC #74).

If not generic, BruxZir is merely descriptive and still not protectable because Glidewell has failed to establish secondary meaning. BruxZir does not require "multistep reasoning" by dentists to know what it is.  Glidewell's own witnesses testified that "it stands for bruxism and zirconia"; "it's a crown for bruxers"; "if you see brux or you identify somebody with bruxism, think of zirconium.  So we put brux and zir together."

The BruxZir registration has no presumption of secondary meaning because Glidewell did not submit secondary meaning evidence to the Trademark Examiner.  Glidewell chose not to conduct a survey and responded "None" to Keating's discovery request for such survey evidence.  Glidewell's advertising promotes "BruxZir" as a *type of crown* for bruxers, not a source, and Glidewell failed to produce any admissible evidence of the effect of its advertising on the relevant consumers.  Glidewell's legal expert testified that he **had never spoken to a dentist except regarding his own teeth and his own bruxer crown**.  He also ignored or was unaware of much of the third party evidence submitted by Keating, including evidence of third party use and registrations of marks including "brux" and "bruxer" that predate Glidewell's mark.  (Eggleston Decl., Ex. 67 at 3-5; Boatright Decl., Ex. A ¶ 78).

Thus, Keating has satisfied its burden of rebutting the presumption of validity by a preponderance of the evidence.  In contrast, Glidewell has woefully failed to meet its burden of establishing a valid protectable mark, and the BruxZir registration should be canceled.

## II.  ARGUMENT

### A.    The BruxZir Registration Is Invalid And Should Be Canceled

#### 1.    Keating's Evidence Rebuts Presumption of Validity

Keating has submitted more than a preponderance of evidence to rebut the presumption of validity of the BruxZir trademark registration.[1]   Thus, the evidentiary presumption created by the registration has "burst" and Glidewell has the burden of proving validity in order to survive summary judgment. *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1115 (9th Cir. 2010) (citing *Tie

---

[1] Keating has presented the Court with evidence in support of the present motion (DOC ##085, 087, 087-1, 89, 91-110), in support of Keating's co-pending motion for summary judgment of non-infringement (DOC #084), and in opposition to Glidewell's motions for summary judgment (DOC ##75-77, 83-85, 87, 89, 91-110, 75-77, 88-89, 84, 86, 91-110, 112, 115-124, 128).

*Tech Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002)); *CG Roxane LLC v. Fiji Water Co. LLC*, 569 F. Supp. 2d 1019, 1030 (N.D. Cal. 2008).

The presumption afforded a registered trademark assumes that the PTO has reviewed the facts upon which to render a classification of suggestiveness/inherent distinctiveness, rather than genericness or descriptiveness. *See Zobmondo Entm't*, 602 F.3d at 1121 ("[d]eference to the PTO's classification decision is sensible because the PTO has special expertise that we lack on this fact-intensive issue.").

No such facts were before the Examiner of Glidewell's application for BruxZir. The Examiner failed to follow the usual procedures of asking if the term had any meaning in the industry. (TMEP §§ 814 and 1209.2; Keating SOF DOC #087-1 ¶¶ 90-91,94; Boatright Decl., Ex. A ¶ 44). The Examiner also failed to conduct an Internet search or at least consult Glidewell's website in accordance with usual practice. (Boatright Decl., Ex. B; Boatright Decl., Ex. A ¶¶ 39, 34, 42, 44-47; TMEP § 710.01(b) Internet Evidence ("The examining attorney should check applicant's own website for information about the goods/services); *see In re Promo Ink*, 78 U.S.P.Q.2d (BNA) 1301, 1303 (TTAB 2006); *In re Reed Elsevier Props.*, 482 F.3d 1376, 1379 (Fed. Cir. 2007). Keating knew the Examiner was not a dentist and would not be aware that "brux" means teeth grinding and "zir" means zirconia. (Keating SOF DOC #087-1 ¶¶ 4-5, 60). The Examiner was also unaware that BRUXZIR is phonetically identical to "bruxer," the user of Glidewell's dental crowns (Keating SOF DOC #087-1 ¶¶ 47-53, 6-8), as referenced in Glidewell's marketing materials ("ideal" for bruxers). (SOF DOC #087-1 ¶¶ 40, 44-46).

**B.  Glidewell Has Failed To Satisfy Its Burden On Summary Judgment Of Proving A Protectable Mark**

It is settled law that registered marks may become generic and subject to cancellation at any time. *Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc.*, 419

-3-

F.3d 925, 928 (9th Cir. 2005); *Surgicenters of America, Inc. v. Medical Dental Surgeries Co.*, 601 F.2d 1011 (9th Cir. 1979); 15 U.S.C. §§ 1064(3), 1065(4); *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985) ("a registered mark may be canceled at any time on the grounds that it has become generic"); *CG Roxane*, 569 F. Supp. 2d at 1026.

Glidewell did not submit any survey evidence to establish that the *primary significance* of the BruxZir mark is to identify Glidewell and not the product itself.  Other than the mere fact of its registration, the only admissible evidence that Glidewell presents to the Court consists of statements from its own employees. Such statements from interested witnesses are insufficient to satisfy Glidewell's burden on summary judgment.  *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1152 (9th Cir. 1999) ('trademark law is skeptical of the ability of an associate of a trademark holder to transcend personal biases to give an impartial account of the value of the holder's mark.') (citing *Self-Realization*, 59 F.3d at 910). (citing *Norm Thompson Outfitters, Inc. v. GM Corp.*, 448 F.2d 1293, 1297 (9th Cir. 1971) (testimony from persons closely associated with the plaintiff does not adequately reflect the views of the buying public)); *In re Redken Labs.*, 170 U.S.P.Q. (BNA) 526, 529 (TTAB 1971) ("The statement by applicant's president that the [mark] has become distinctive of applicant's services is, at best, a self-serving statement which standing alone carries little weight in persuading us that the term in question functions as an indication of origin."); *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 910 (9th Cir. 1995) (declarations from trademark plaintiff's employees and wholesalers had "little probative value regarding the assessment of consumer perception).

Glidewell has therefore failed to submit sufficient evidence to satisfy its burden on summary judgment.

/ / /

-4-

### 1.   BruxZir Is A Misspelling of Bruxer

One need only watch Glidewell's promotional videos and videorecorded testimony of Glidewell's witnesses to hear the phonetic equivalency of BruxZir with bruxer.   (Van Hoosear Decl. DOC #110, Ex. V-1, V-2, V-3, V-4). Glidewell admits that "bruxer" is the generic name for a person who bruxes and the intended user of Glidewell's BruxZir crowns.  (Keating SOF DOC #087-1 ¶¶ 39-46).   As the phonetic equivalency of, and a misspelling of the generic name for the intended user, the mark is generic as a matter of law.  *See* MCCARTHY ON TRADEMARKS, 4TH EDITION, § 12:38, "Misspelling of generic terms"; *Nupla Corp. v. IXL Mfg. Co.*, 114 F.3d 191, 196 (Fed. Cir. 1997) (affirming Central District of California conclusion as a matter of law that plaintiff's registered mark CUSH-N-GRIP is invalid as a generic misspelling of "cushion grip" for cushioned tool handles); *Rudolph Int'l v. Realys Inc.*, 482 F.3d 1195, 1198 (9th Cir. 2007) (citing *Nupla Corp.*, 114 F.3d 191 ("'cush-n'grip' is generic adjective for cushion-gripped tools"); *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 79-81 (7th Cir. 1977) ("Lite Beer" phonetic equivalent to generic "light beer"); *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1186 n.24 (5th Cir. 1980) ("Plaintiff's using the phonetic equivalent of the generic term 'larvicide' in its mark 'Larvacide,' i.e., misspelling it, does not render the mark protectable." (citing *Miller Brewing*, 561 F.2d at 79-81) ("Using the phonetic equivalent of a common descriptive word, i.e., misspelling it, is of no avail."). Using a misspelling of the intended user name also renders a mark generic.  *Retail Servs. v. Freebies*, 364 F.3d 535, 547 (4th Cir. 2004).

### a.   BruxZir Identifies A Type Of Crown For Bruxers, Not A Source

Keating submitted substantial evidence that dentists and dentist professionals identify the primary significance of the term BruxZir as a type of crown for bruxers, not Glidewell as the source.  (*See, e.g.*, Jankowski Decl.,

Exs. 36-43; Eggleston Decl., Ex 65 at 14-18; Ex. 66 at 3-7; Exs. 98, 107; Belton Decl. ¶¶ 9-11; Brady Decl. ¶¶ 9-12; Campbell Decl. ¶¶ 10-12; Colleran Decl. ¶¶ 10-12; Jacquinot Decl. ¶¶ 9-11; Murphy Decl. ¶¶ 8-11; Myers Decl. ¶¶ 10-11; Nussear Decl. ¶¶ 9-11; Richardson Decl. ¶¶ 9-12; Scott Decl. ¶¶ 9-11; Stephens Decl. ¶¶ 10-12; Sweet Decl. ¶¶ 8-10; Tobin Decl. ¶¶ 9-11, Frattura Decl. ¶¶ 7-9, 12, 18; Request for Judicial Notice Ex. A-N).

The evidence of long-standing use of "bruxer" to refer to a bruxism patient (the intended user of Glidewell's BruxZir crowns), corroborates this understanding in the industry. (Keating SOF DOC #087-1 ¶¶ 6-8, 60-62). In addition, the evidence from Glidewell and other dental labs reveals that the term Bruxzir is widely used to identify a type of product (a zirconia crown for bruxers) rather than a source of goods. This includes prescription forms and advertising from dental labs, including Glidewell and other competing dental labs, (Eggleston Decl., Exs. 136-137). These dental labs are not using the term BruxZir as a brand, but rather as a reference to a type of product: an all zirconia crown, commonly used for bruxers.

Glidewell cites to no probative evidence that dentists around the U.S. view the BruxZir mark as a source of goods. Its employee declarations are not probative and the seven Glidewell dentist customer declarations are inadmissible as the witnesses were never disclosed during discovery. Accordingly, such evidence cannot support Glidewell's opposition on this motion. Fed. R. Civ. P. Rule 37(c).

Glidewell's legal expert, Professor Franklyn's testimony is equally inadmissible. He formed his opinion without speaking with any dentists. (2nd Jankowski Decl., Ex. 153 (Franklyn Dep. Tr.), at 133:6-8 ("**I have not spoken to any dentists about anything other than my own teeth and my own bruxer crown**.") His subsequent declarations, based on untimely rebuttal reports discussing interviews with previously undisclosed dentist witnesses are

1    inadmissible.   Fed. R. Civ. P. Rule 37(c).   His legal opinions are also

2    inadmissible pursuant to Fed. R. Evid. Rule 701, 702.   (*See* Keating's

3    Objections to Evidence, DOC #120).   Likewise, Dr. Goldstein's declaration is

4    inadmissible as he was never disclosed during discovery and did not submit a

5    timely expert report.   (Fed. R. Civ. P. Rule 37(c); *see* Keating's Objections to

6    Evidence, DOC #121 and Objections to Supplemental Evidence).

7        Glidewell relies on the mere fact that it uses BruxZir in its marketing to

8    dentists across the U.S.   (Opp. at 23-25), and attempts to equate its mark with

9    several famous marks, such as Ford and Coca Cola.   (Opp. at 11).   Such famous

10   marks are arbitrary or fanciful, with no descriptive meaning of the goods or

11   intended users of the products.   In stark contrast, Glidewell chose a mark that

12   dentists immediately view as generic, or at least highly descriptive, for the product,

13   and Glidewell has submitted no probative evidence of the *primary significance* of

14   its mark in the minds of relevant consumers. Glidewell's sales and advertising

15   efforts, by themselves do not establish that relevant purchasers view BruxZir as

16   identifying Glidewell as *the source*, rather than *a type of crown* for bruxers.

17       **2.**   **Pre and Post May 2011 Evidence Shows Genericness**

18       Glidewell argues that portions of Keating's voluminous evidence of

19   generic use is not admissible, because it is not dated prior to Keating's entrance

20   into the market in May 2011 with it KDZ Bruxer product.   (Opp. p. 7-8, 14-16).

21   While Glidewell is attempting to exclude admissible evidence existing post

22   April 2011 based on an overly rigid application of Ninth Circuit law,[2] the

23   evidence of genericness prior to and including May 2011 is overwhelming.

24

_____

25      [2] For example, courts may consider surveys conducted during the
     litigation, and after the defendant entered the market with its allegedly
26   infringing mark.   *See Classic Foods Int'l, Corp., v. Kettle Foods, Inc., 468 F.
     Supp. 2d 1181 (C.D. Cal. 1181); Nightlight Sys., Inc., v. Nitelites Franchise
27   Sys., Inc.*, No. 1:04-CV-2112, 2007 WL 4563873 (N.D. Ga. 2007); *see also
     Burger King Corp. v. Pilgrim's Pride Corp.*, 705 F. Supp. 1522, 1525 (S.D. Fla.
28   1988).

At the end of March 2011, Keating drafted a form letter to send to all of its current clients announcing changes in its fee schedule as well as a new "Family of Products" which included the KDZ Bruxer, KDZ Ultra, and KDZ Max. (Keating Decl., Ex. F). The letter informed Keating's clients that the changes were to be effective in May 2011. (*Id.*) While Keating had sold some all zirconia crowns prior to May 2011, those were sales only to existing customers to help Keating test its new product and were not made available to the general public. (2nd Mangum Decl., Ex. 160 (Donich Dep. Tr.), at 8:18-9:3). The first official sales of the KDZ Bruxer product occurred on May 10, 2011. (*See* Mangum Decl., Ex. 53 (Brandon Dep. Tr.), at 36:1-16; *see also* Mangum Decl., Ex. 53 (Brandon Dep. Tr.), at 25:25-26:20).

There is voluminous evidence prior to May 2011 showing (a) use of "bruxer" to identify a bruxism patient in U.S. Patents dating back as far as the 1980's (*see* Keating's Req. for Jud. Notice, Exs. A-F); (b) use of "bruxer" to identify bruxism patients in dental industry journals dating back to the 1990's (*see* Eggleston Decl., Exs. 68-78); (c) third party trademark registrations including "brux" and "zir" for dental products that pre-date Glidewell's mark (*see* Keating's Req. for Jud. Notice, Exs. F-I; (d) third party uses of "brux," "bruxer" and "zir" in connection with identification or description of similar products (*see* Eggleston Decl., Exs. 93-94, 96, 99-106, 108-114, 117, 119-135; Jankowski Decl., Exs. 24, 27-32, 34, 37-39, 42-43; (e) evidence of Dentists' and dental professionals' use of "bruxer" to refer to bruxism patients. (Jankowski Decl., Ex. 4 (DiTolla Dep. Tr.), at 186:20-21; Mangum Decl., Ex. 50 (Shuck Dep. Tr.), at 199-200; Eggleston Decl., ¶ 16; Eggleston Decl., Ex 65, at 12-14; Jankowski Decl., Ex. 1 at 5 (Interrogatory No. 2); Jankowski Decl., Ex. 3 at 8 (Request for Admission No. 9; Campbell Decl., ¶¶ 10, 12; Colleran Decl. ¶ 7; Jacquinot Decl., ¶ 11; Myers Decl. ¶ 11; Nussear Decl. ¶ 11; Scott Decl. ¶ 11; Stephens Decl. ¶¶ 10, 12; Sweet Decl., ¶ 8).

In addition, Glidewell admits that the mark BRUXZIR was adopted, in part, to connote a product that is useful for bruxers and that the product is composed of zirconia.   (Jankowski Decl., Ex. 3 at 6).   Glidewell also prominently promoted its new all-zirconia crown as "ideal" for bruxer patients in its marketing materials and in technical articles authored by its Vice President of R&D, Mr. Carden.  (Mangum Decl., Ex. 50 (Shuck Dep. Tr.), at 87-88, 176-178; Jankowski Decl., Ex. 8; Ex. 10 at 3, 12, 23, 26; Ex. 11 at 1, 3, 5-6; Ex. 12; Ex. 13; Ex. 15-17; Eggleston Decl., Exs. 79-84).[3]

Furthermore, the evidence of continuing generic use post May 2011 corroborates the generic understanding of the term "bruxzir" in the industry. (See e.g., Frattura Decl., Ex. A p 1-9, 11, 18; Belton Decl., Ex. A; Brady Decl., Ex. A; Campbell Decl., Ex. A; Colleran Decl. Ex. A; Jacquinot Decl., Ex. A; Murphy Decl., Ex. A; Myers Decl., Ex. A; Richardson Decl., Ex. A; Scott Decl., Ex. A; Stephens Decl., Ex. A; Sweet Decl., Ex. A; Tobin Decl., Ex. A; Eggleston Decl., Exs. 112, 116, 118, 120; Keating SOF DOC #087-1 ¶¶ 6, 60, 61, 62; Jankowski Decl., Exs. 36-44).

Glidewell's argument that BruxZir is not generic because its phonetic equivalent, "bruxer," is the generic term for the intended user, rather than the crown itself is meritless.  Such a "razor-thin" distinction is insignificant.  *Retail Servs.*, 364 F.3d at 547 ("even though defendants do not directly distribute free products or "freebies," their business nonetheless revolves around "freebies" in the generic sense of the word). Here, Glidewell's distinction that BruxZir's phonetic analogue, "bruxer," is generic for the intended user rather than a crown

/ / /

---

[3] Contrary to Glidewell's argument (Opp. at 18) the absence of the term "bruxer" from the dictionary is *not* determinative.  *Filipino Yellow Pages*, 198 F.3d at 1148; *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 407 (6th Cir. 2002) cert denied, 538 U.S. 907, 123 S Ct. 1486, 155 L. Ed. 228 (2003) (numerous terms have been found generic despite absence from the dictionary).

is not persuasive.  Glidewell's business revolves around selling the BruxZir crown for use by bruxers.

### 3.    Keating's Alternative Argument Of Mere Descriptiveness Is Not An Admission Of Validity

Glidewell's argument that Keating's alternative argument of mere descriptiveness somehow constitutes an admission of non-genericness is entirely meritless.  Alternative arguments do not constitute admissions.  *Maloney v. Scottsdale Ins. Co.*, 256 Fed. Appx. 29, 31 (9th Cir. 2007); Fed. R. Civ. P. 8(d)(2)-(3).  The court's ability to find a mark generic is certainly not abrogated by an alternative argument that the mark is descriptive.  *See Filipino Yellow Pages*, 198 F.3d 1143 (holding mark generic after considering alternative genericness and descriptiveness arguments); *CG Roxane*, 569 F. Supp. 2d 1019 (holding mark generic after considering alternative genericness and descriptiveness arguments).  Moreover, the argument that a mark contains a descriptive portion and therefore cannot be generic has consistently been rejected by the courts.  *Classic Foods Int'l Corp. v. Kettle Foods, Inc.*, 468 F. Supp. 2d 1181 (C.D. Cal. 2007) (citations omitted).  "[A]ssuming that any element of description within a mark automatically precludes that mark from being found to be generic is factually and legally inaccurate. . ." *Id.*.  A generic designation is simply the "'ultimate in descriptiveness.'"  *Id.*  Therefore, Glidewell's argument is entirely baseless.

### 4.    Glidewell Mischaracterizes Keating Evidence

As a sign of desperation, Glidewell resorts to mischaracterizing the testimony of Keating's witnesses to argue that their awareness of Glidewell's registration and actions since the filing of the suit somehow is evidence of the validity of Glidewell's mark.  (Opp., pp. 1, 6-7).

Under Fed. R. Evid. 407, evidence of actions taken by defendants to reduce potential liability cannot be relied upon as an admission.  *Interactive*

*Health LLC v. King Kong USA, Inc.*, CV06-1902, 2008 U.S. Dist. LEXIS 123559, \*20 (C.D. Cal. July 24, 2008) (excluding evidence offered by plaintiffs of defendants' sale of different products in lieu of accused models); *Avery Dennison Corp. v. Acco Brands, Inc.*, CV99-1877, 1999 U.S. Dist. LEXIS 21464, 22 (C.D. Cal. Oct. 12, 1999) (excluding evidence offered by plaintiffs of defendant's change in its packaging).

After being sued by Glidewell, Keating initiated a policy of calling dentists who wrote "Bruxzir" or variations thereof on their prescription forms submitted to Keating to (1) educate the dentists as to the existence of BruxZir as a trademark of a competing dental lab, and (2) to confirm that the dentists wanted Keating's all-zirconia crown, and not another dental lab's product. (Keating SOF DOC #087-1 ¶¶ 72-75; Mangum Decl., Ex. 53 (Brandon Dep. Tr.), at 47:12 – 48:20).  As part of its policy, Keating had its employees inform each dentist who wrote "BruxZir," or variations thereof on their prescription forms that a competing dental lab has a registered mark in the name BruxZir. (Keating SOF #087-1 ¶ 74 DOC).  That is a factual statement, not a party admission as to the validity of Glidewell's registration.

Every time, the dentists confirmed they were indeed ordering Keating's product and were not confused in any way.  (Keating SOF #087-1 ¶ 75 DOC, Belton Decl., ¶¶ 9-11; Brady Decl., ¶¶ 9-11; Campbell Decl., ¶¶ 10-12; Colleran Decl. ¶¶ 10-12; Jacquinot Decl., ¶ 9; Murphy Decl., ¶ 11; Myers Decl., ¶¶ 9; Nussear Decl., ¶¶ 9-11; Richardson Decl., ¶ 10-12; Scott Decl., ¶¶ 9-11; Stephens Decl., ¶¶ 10-12; Sweet Decl., ¶¶ 8-10; Tobin Decl., ¶¶ 9-11).  Indeed, the fact that Keating had to tell the dentists that a competitor owned the mark "BruxZir" just emphasizes that those dentists were not aware it was a trademark. Such evidence shows that dentists view the term generically as the name of the *type of crown* and not as an indication that Glidewell is the source.

/ / /

Although Mr. Brandon did testify that he knew BruxZir was a tradename of Glidewell, he also stated he could not testify as to what Dr. Nussear understood when he ordered a BruxZir zirconia crown from Keating.   Mr. Brandon stated that he should have called the doctor to clarify because Keating was "getting sued over it."   (Mangum Decl., Ex. 53 (Brandon Dep. Tr.), at 48:17-20).   So Mr. Brandon's comment was directed to Keating's policy after this suit was filed of calling dentists who wrote "bruxzir" on their prescription forms.   It did not relate to any action by Keating in May 2011 as Glidewell is now claiming.

Glidewell severely mischaracterizes Mr. Keating's deposition testimony (Opp. p. 1, 6). On the pages cited, Mr. Keating testified that "Doctors have been using the name "bruxer" for a strong crown forever, be it gold, be it zirconia. Now it's kind of a generic name for an all-full model of the crown.  You can see it on the Internet and everything else for bruxer crowns. . . .  I just think it's for grinding patients, a full contoured monolithic zirconia crown for bruxers." (2nd. Jankowski Decl., Ex. 145 (Keating Dep. Tr.) DOC #125, at 113-115; App. Ev. 85). When Mr. Keating stated the word BruxZir is not "used in any other way in the industry" he was referencing his responses to the entire line of questions, including his preceding testimony that the mark was a generic term in the industry for full monolithic zirconia crowns. (*Id.*)

## 5.   <u>Keating Internal Documents Do Not Establish That Glidewell's Mark Is Protectable</u>

Glidewell references two documents that Keating's personnel generated referencing the BruxZir mark as a "proprietary name." (Opp. p. 6).  Again, these documents, generated on October 18, 2011 and March 8, 2012, respectively, reference Keating's policy after this suit was filed of calling dentists to confirm that they wished to order a Keating KDZ Bruxer crown.  It does not establish that Glidewell has a protectable trademark.  Rather, as

mentioned above, such efforts of subsequent remedial measures taken by a defendant to reduce potential liability are inadmissible.  (Fed. R. Evid. 407).

### 6.   Evidence Of Generic Use From Showcase Dental Lab

Glidewell mischaracterizes the evidence offered in Ms. Frattura's declaration.  First Ms. Frattura herself testifies that Showcase Dental Lab used the term "Zir-Bruxer" starting at the end of 2010 because "it readily described the product for which it was named. . . . The 'Bruxer' suffix identified that the crown was an all-zirconia crown . . . strong enough to be used as a bruxer crown, or a crown for bruxer patients. . . ." (Frattura Decl. ¶ 12).  Additionally, while some of the prescription forms Ms. Frattura attached are for orders placed in 2012, and show dentists' continued use of bruxzir as a generic term, many of them show such generic use in 2011 and even 2010.  For example, an order from September 2010 asks for a "BRUX zirconia" crown, two orders from May 2011 ask for "Bruxzir crowns" and "Brux zirconia," a form from June 2011 states "Bruxzir" and "Bruxeer," and two more in August 2011 state "Bruxir" and "Bruxzir."  (Frattura Decl., Ex. A at 10, 11, 14, 16-18).

### 7.   Undisclosed Glidewell Customer/Dentists' Testimony And Untimely Expert Testimony Is Inadmissible

During discovery, Glidewell failed to identify (1) any third party dentists to testify regarding their understanding of the BruxZir mark; (2) any survey data regarding third party dentists' understanding of the mark; or (3) any expert witnesses to testify about survey data or dentists' understanding of the mark. Glidewell now relies upon (1) seven declarations from dentist/customers of Glidewell first noticed by Glidewell as witnesses seventeen minutes before Midnight on Discovery Cutoff, October 29 2012 (*see* App. Evid. Exs. A-F & Q); (2) expert opinion from Glidewell's in-house dentist, Dr. DiTolla, notice of which was received by Keating nine minutes before Midnight on Discovery Cutoff, October 29, 2012; and (3) three expert reports received by Keating

seven minutes before Midnight on Discovery Cutoff, October 29, 2012 (2nd Jankowski Decl. ¶ 11; 2nd Jankowski Decl., Exs. 148, 150-152).

The testimonies of the seven dentist witnesses, who are Glidewell customers, are inadmissible because they were not disclosed during discovery. (Fed. R. Civ. P. Rule 37(c)).   Moreover, as Glidewell customers, their testimonies are not probative. *See Filipino Yellow Pages*, 198 F.3d at 1151-52 (citing *Norm Thompson Outfitters*, 448 F.2d at 1297); *Self-Realization*, 59 F.3d at 910.  Likewise, Dr. DiTolla's declaration, based on his untimely designation as an expert, is inadmissible and not probative as he is a Glidewell employee.

Professor Franklyn, a law professor, repeats language from his untimely rebuttal reports where he claims to have interviewed 10 dentist witnesses who were not previously disclosed during the discovery period or in his initial report dated September 15, 2012, or in his deposition on October 12, 2012. Indeed, at his deposition, Professor Franklyn testified repeatedly that he had never spoken to a dentist or dental lab in connection with this case and had no experience in the dental industry.  (2nd Jankowski Decl., Ex. 153 (Franklyn Dep. Tr.) at 29:11-17;  44-45;  96-97;  106-107;  133:6-8;  151-152).   Thus, the Franklyn Declarations and untimely rebuttal reports are entirely improper and should be excluded.   Likewise, Dr. Goldstein's declaration is based on an untimely rebuttal report, and Dr. Goldstein was never disclosed during discovery.  Thus, Dr. Goldstein's declaration should also be excluded.  (*See* Keating's Objections to Evidence, DOC #121, and Objections to Supplemental Evidence submitted herewith).  *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); *Jarritos, Inc. v. Reyes*, 345 Fed. Appx. 215, 217 (9th Cir. 2009); *1st Source Bank v. First Resource Fed. Credit Union*, 167 F.R.D. 61, 64 (N.D. Ind. 1996); *see also Fu v. Owens*, 622 F.3d 880, 883-84 (8th Cir. 2010). Professor Franklyn's testimony should also be excluded because his legal opinions and conclusory testimony are inadmissible under Fed. R. Evid. 701,

702.  (*See* Keating's Objections to Evidence DOC #120, and Objections to Supplemental Evidence submitted herewith).

### 8. <u>Glidewell Employee Declarations Are Not Evidence of Primary Significance Of Mark To Relevant Consumers</u>

Glidewell's employee declarations (Jim Shuck, Dr. DiTolla, Rudy Ramirez, Robin Carden, Dr. DiTolla and Robin Bartolo)[4] do not establish, as required by law, that the *primary significance* of the mark in the minds of the relevant purchasing public is to identify Glidewell as the source of the product. Also, such employee declarations are insufficient to defeat Keating's motion for summary judgment.  *Japan Telecom, Inc. v. Japan Telecom Am., Inc.*, 287 F.3d 866, 873 (9th Cir. 2002); *Self-Realization*, 59 F.3d at 910.  Such evidence has "had little probative value . . . to [prove] secondary meaning".  (*Id.* at 911). Furthermore, opinions set forth in these declarations regarding dentists' perceptions are not probative because, in addition to being hearsay, they fail to follow rigorous standards required for admissible survey data.  *See* MCCARTHY ON TRADEMARKS, 4TH EDITION, § 32:158 at 32-341; *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1087 (9th Cir. 2005); *Hodgdon Powder Co. v. Alliant Techsystems, Inc.*, 512 F. Supp. 2d 1178, 1181 (D. Kan. 2007).

The testimony is also contrary to the undisputed evidence of widespread use of "bruxer," "brux" and "zir" to identify types of crowns.  The declaration testimony also contradicts prior deposition testimony and is also inadmissible on those grounds.  *Harris v. Del Taco, Inc.*, 396 F. Supp. 2d 1107, 1111 (C.D. Cal. 2005); *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).  (*See* Keating's Objections to Supplemental Evidence, submitted herewith).

/ / /

---

[4] Keating has objected to these declarations (*see* Keating Objections to Evidence,  DOC # 122, and Objections to Glidewell's Supplemental Evidence submitted herewith).

## C.    Glidewell's Generic Use Confirms Genericness Of BruxZir

Glidewell's own generic use of the mark BruxZir is further evidence of the mark's invalidity.

> "'[C]ourts will also look to the trademark holder's own use of the mark to determine genericness.' . . . 'This evidence is "relevant because '[a] kind of estoppel arises when the proponent of [a] trademark use is proven to have itself used the term before the public as a generic name.'"

*CG Roxane*, 569 F. Supp. 2d 1019 (citing *Colt Def. LLC v. Bushmaster Firearms, Inc.*, 486 F.3d 701, 707 (1st Cir. 2007) (citing MCCARTHY ON TRADEMARKS, 4TH EDITION, § 12:13)); *Rudolph*, 482 F.3d at 1198; *Retail Servs.*, 364 F.3d at 545.

Glidewell's own videos use the term 'bruxzir' pronounced identically to 'bruxer' to refer to sold zirconia crowns, often as a noun for the product, not to identify Glidewell as the source.  (Keating SOF DOC #087-1 ¶¶ 47-53, 57, 85).  Additionally, presentations by Glidewell employees establish Glidewell's own generic use of the term "BruxZir" to identify the product, not the source.  Dr. DiTolla even states "one can even get a couple of BruxZirs put in." (Keating SOF DOC #087-1 ¶ 58).  Such evidence of the owner's generic use "is strong evidence of genericness."  MCCARTHY ON TRADEMARKS, 4TH EDITION, § 12:13.

Glidewell's analogy to Coca Cola is misplaced. (Opp. p. 11).  Unlike BruxZir, Coke or Coca is not phonetically equivalent to the person who drinks Coca Cola. A better analogy is "gold" or "porcelain-fused-to-metal (PFM)" the two generic designations for the types of crowns to which Glidewell compares its BruxZir crowns (pronounced "bruxer crowns."), and which Dr. DiTolla in Glidewell's videos call "a BruxZir," (pronounced "a bruxer"). (DOC #75,76; Van Hoosear Decl., Exs. V-1, V-2, V-3, V-4, V-5).  Thus, the law Glidewell relies upon for use of famous marks as nouns is completely inapposite. Unlike those marks, Glidewell chose a mark that is phonetically equivalent to the

generic name bruxer, identifying the intended user, and also admittedly describing characteristics of the product, i.e. use for bruxers or bruxism and zirconia.

**D.   Use of BruxZir By "Authorized Labs" Is Not Controlled And Does Not Identify Glidewell As A Source**

Contrary to Glidewell's statements, the evidence establishes that:

(a) lists of "Authorized BruxZir Labs" list Glidewell as one of many different competitors offering the same type of BruxZir crowns (Jankowski Decl., Ex. 8);

(b) Glidewell's Rx booklets sent to approximately 120,000 dentists across the country do NOT reference Glidewell as the source (Jankowski Decl., Ex. 10);

(c) Glidewell's "E-blasts" and letter campaigns "to bring the awareness of the BruxZir brand and its benefits and what makes it better" do not reference Glidewell as the source. (Jankowski Decl., Exs. 7, 10) (here again, Glidewell demonstrates its use of "BruxZir" to refer to a thing, not a source).

In addition, Glidewell's own witnesses testified that they did not have any license agreements or systems in place for controlling quality of crowns made by the "authorized labs" or the manner in which the "authorized labs" used the BruxZir mark.  (Jankowski Decl., Ex. 5 (Bartolo Dep. Tr.), at 63).  To become an authorized lab, a dental lab need only buy zirconia milling blanks from Glidewell.  (*Id*. at 58-59, 98-99).  Glidewell does not review samples of finished crowns made by these labs unless asked to do so by the labs, and Glidewell dos not have a monitoring system in place for the labs.  (*Id*. at 64).  Such "naked licensing" with no quality control results in a mark ceasing to function as a symbol of quality and a controlled source.  *Barcamerica Int'l USA Trust v. Tyfield Imps., Inc.*, 289 F.3d 589, 596-97 (9th Cir. 2002) (citing MCCARTHY ON TRADEMARKS, 4TH EDITION, § 18:48).

-17-

Because of the uncontrolled use of the mark BruxZir by 180 authorized labs, the manner in which the mark is used by those labs to describe a type of crown, not a source, and the appearance of 180 different competitors, alongside Glidewell as just one of the competitors, BruxZir serves no source identifying function, and there is no trademark recognition that "inures to the benefit" of Glidewell.  (Jankowski Decl., Ex. 5 (Bartolo Dep. Tr.), at 46:15-20; Jankowski Decl., Ex. 8).

**E.** **Evidence Establishes Widespread Third Party Marks Including "Brux", "Zir" And "Bruxer" For Zirconia Crowns**

Glidewell asks the Court to ignore its enforcement activities against marks that include "Brux," claiming that the existence of third party "brux" marks do not affect the validity of its mark.  (Opp. p 25)  If that is correct, then Glidewell's registration is not enforceable against third party "brux" marks.  As Glidewell has repeatedly sent cease and desist letters to owners of such third party marks (Jankowski Decl., Ex. 6 (Allred Dep. Tr.) at 213:19-264:13 & Exs. 19-34), they should certainly be considered in assessing genericness and/or descriptiveness of Glidewell's mark.  Moreover, the prevalence of such third party use both before Glidewell adopted its mark, and in the short time since June 2009, when Glidewell first used its mark, is further evidence that the mark cannot be associated with Glidewell as a single source.

**F.** **Widespread Use Of Brux And Zir In Dental Industry Shows Those Terms Do Not Indicate Source**

The widespread third party use of "brux" and "zir" in trademarks for similar products shows that relevant consumers do not associate those terms with one source.  Simply because Glidewell put them together to form a word that sounds identical to the generic word "bruxer," the user of the products identified in Glidewell's registration, cannot bestow Glidewell with valid trademark rights.

### G. Glidewell's Mark, If Not Generic, Is Merely Descriptive

#### 1. Dentists Do Not Need Any Mental Leap Of Imagination To Recognize BruxZir As Meaning Zirconia Crowns For Bruxers

"Words that describe the characteristics of goods, services, or business are descriptive.  So too are words describing . . . the class of intended purchasers."  (RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 14 (1995); *see also* TMEP § 1209.03(i); Boatright Decl. DOC #94, Ex. A at ¶ 48). Glidewell argues that the mark BruxZir is suggestive, requiring dentists to engage in multistage reasoning to identify the characteristics of the product that are being suggested.  (Opp. p. 1, 16, 18).  Yet Glidewell cites to no admissible probative evidence that dentists viewing the mark find it suggestive.  Glidewell relies on party statements from Mr. Shuck, Dr. DiTolla, Mr. Ramirez and Mr. Bartolo, untimely expert opinion from Dr. Goldstein and Dr. DiTolla, and conclusory expert opinion from Mr. Franklyn, a law professor.  With the exception of Dr. Goldstein, the testimony of these witnesses is not probative because it fails to provide the perspective of dentists who are not affiliated with Glidewell.

Even if Dr. Goldstein's untimely expert opinion is considered (and it should not be), it fails to establish that BruxZir is suggestive.  Dr. Goldstein states that "dentists would be able to identify the material in the product— zirconia—through the use of "Zir" as the second half of the name BruxZir." (App. Evid., Ex. O, ¶ 17).  Dr. Goldstein thus agrees that dentists would immediately understand that "Zir" means zirconia, without imagination or multistage reasoning.  He also agrees that "Brux" causes dentists to think of bruxism.  (*Id.*)  Dr. Goldstein does not state that he requires imagination or multistage reasoning to recognize that "BruxZir" indicates a zirconia crown for bruxers.  Tellingly, even the untimely declarations of Glidewell's own dentist-customers do not dispute this fact.  (App. Evid., Exs. A-F & Q).  Glidewell's in-

-19-

house dentist, Dr. DiTolla (whose expert designation was also untimely), admits that the terms bruxer and bruxism are taught in dental school, and Dr. Goldstein likewise knows that dentists recognize the term immediately.  (Keating SOF DOC #087-1 ¶ 5; App. Evid., Ex. O ¶ 14).

Dr. Eggleston, Keating's expert witness and a practicing prosthodontist immediately understands a BruxZir crown to indicate a zirconia crown for treating bruxers.  (Eggleston Decl., Ex. 66 at 3; Eggleston Decl., Ex. 65 at 14-16).  Glidewell's own witnesses testified repeatedly that Glidewell chose the name "BruxZir" because dentists would know immediately what it means.  Jim Shuck, who actually conceived of the mark, said:

> "That's why we picked the name, because it told dentists to maximize the benefit of strength, if you see brux or you identify somebody with brux or bruxism, think of zirconium.  So we put brux and zir together."

(Keating DOC #087-1 SOF ¶ 31).

Mr. Friebauer, (Glidewell's Director of R&D) testified: "To me, it stands for bruxism and zirconia.  It makes sense to me." (Keating DOC #087-1 SOF ¶ 31).  Dr. DiTolla testified: "The name BruxZir talks about the function of the crown and not the esthetics."  (Keating SOF ¶ 33).  Dr. DiTolla further testified: "So, I liked it, thought it was clever because of the "zir" for "zirconia"; that the dentist was going to know what was in there."  (Keating DOC #087-1 SOF ¶ 34).

Glidewell admitted in its responses to Keating's Requests for Admissions that the mark "BruxZir" was, at least in part, adopted to connote a product useful for bruxers and that it is composed of zirconia.  (Keating SOF DOC #087-1 ¶ 38).

Glidewell's argument that its crowns can also be used on non-bruxer patients is also meritless. A mark is classified as merely descriptive if it

-20-

describes one of the characteristics of the goods, including the intended user.  It does not have to describe every possible user.  See *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1201 (9th Cir. 2009); 2 McCarthy, 4th ed. § 11:16.

### 2. The Evidence Establishes Competitors Do In Fact Use Brux And Bruxer And Have A Competitive Need To Do So

Contrary to Glidewell's claims, the evidence shows that not only do Glidewell's competitors need to use the terms brux and bruxer, they actually use the terms currently.  Glidewell points to Drake's mark "ZIR-CAST" as a competitive product.  (Opp at 19-20).  Even this single example actually does use half of the mark—"Zir".  Moreover, Glidewell ignores the evidence of widespread competitors' use of brux, bruxer and zir, even those to which Glidewell itself sent cease and desist letters.  (Keating SOF DOC #087-1 ¶ 60-63; Jankowski Decl. DOC #91, Ex. 44; Eggleston Decl. DOC #93, Ex. 66 at 3-7; Ex. 107).  Keating has also submitted a declaration from a third party dental lab unaffiliated with Glidewell or Keating, Showcase Dental Laboratory, that also receives (and fills) orders from dentist-customers who write "BruxZir" on prescription forms as a generic reference to an all-zirconia crown.  (*See* Frattura Decl., ¶¶ 6-9, 18).  Keating has also submitted substantial evidence showing widespread third party use of the terms "bruxer" and "brux" in connection with dental crowns.  (Keating SOF DOC #087-1 ¶¶ 60-62; Jankowski Decl. DOC #91, Ex. 41; Eggleston Decl. DOC #93, Ex. 65 at 16-18; Ex. 66 at 3-7; Ex. 107).

The evidence establishes that Glidewell's competitors do indeed need and use "brux," "bruxer" and "zir" to describe their own products.[5]

/ / /

_____

[5] Such third party descriptive use is acknowledged by Glidewell in their Opposition to Keating's Motion for Summary Judgment of Noninfringement stating that the use of "Bruxer" in reference to a zirconia crown "is used descriptively to refer to a full zirconia crown that could be used for a patient with bruxism rather than in a trademark sense." (DOC. #113 at 8.)  Glidewell acknowledges multiple examples of this descriptive use. (*Id.* at 7-8.)

**H.      Glidewell Has Not Presented Any Admissible Evidence Of Secondary Meaning**

Glidewell has submitted no survey to rebut Keating's genericness and descriptiveness evidence.    Glidewell's employee declarations are not sufficiently probative to meet Glidewell's burdens on summary judgment, its untimely expert rebuttal reports and declarations are inadmissible, and the declarations of previously undisclosed dentist witnesses/Glidewell customers are also inadmissible.  By contrast, Keating has submitted extensive undisputed and timely evidence showing the generic use by dentists and dental labs of "brux" and "zir as well as generic use of "bruxer" and "bruxzir" in connection with dental crowns and users of such crowns.

**1.      Glidewell Has Not Submitted Any Evidence Of Effect Of Advertising On Consumers**

Although not required, survey evidence has become "de rigueur" in cases involving genericness of trademarks.  *In Hyuk Suh v. Choon Sik Yang*, 987 F. Supp. 783, 791 (N.D. Cal. 1997).  The absence of a survey from Glidewell, particularly in view of Glidewell's financial ability to conduct a survey, raises the inference that such a survey would not have been favorable to Glidewell. *See Playboy Enters. V. Netscape Commc'ns Corp.*, 55 F. Supp. 2d 1070, 1084 (C.D. Cal. 1999); *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1041-42 (C.D. Cal. 1998).

In the absence of a survey, Glidewell heavily relies on evidence of its sales and advertising. However, such evidence is only relevant if it can be shown to have affected the connection of the mark in the mind of the consumer. "Naturally, a 'large expenditure of money does not in itself create legally protectable rights."    Secondary meaning is established by how effective the effort to create it has been. *CG Roxane*, 569 F. Supp. 2d at 1031 ("[P]laintiff's advertisements do not emphasize the mark as a distinct way to identify the

producer of the product, which would be very difficult considering the mark's widespread use in the industry") (citing *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 800-02 (9th Cir. 1970)); *Cont'l Lab. Prods. v. Medax Int'l*, 114 F. Supp. 2d 992, 1002-03 (S.D. Cal. 2000) ("Popularity of a product is not synonymous with secondary meaning."); *see also First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987) (plaintiff's advertising, although extensive, did not emphasize the mark in such a way as to support an inference of secondary meaning).

Glidewell has failed to offer the required evidence of a connection in the mind of the consumer because it simply does not exist.

## 2. <u>Undisclosed Dentist Witness Testimony Is Inadmissible</u>

Glidewell relies upon declarations of seven dentists (Opp. p. 8, 16, 23-24; SUF 13-14, 32-35, 55, 59), all Glidewell customers (App. Evid. Exs. A-F & Q), at least one of whom has recently toured Glidewell's facility (App. Evid. Ex. B). None of these witness names were disclosed to Keating during discovery. Glidewell has offered no excuse for its failure to disclose the witness names, nor for its legal expert Professor Franklyn's failure to disclose them in his expert report or during his deposition.  Accordingly, for this and other reasons stated in Keating's Objections to Evidence, the dentists' testimony is inadmissible, particularly in view of the Court's denial of Glidewell's *Ex Parte* Application to extend discovery.

In any event, the dentists' testimony is based on their existing relationship with Glidewell and is therefore not persuasive evidence that a significant number of consumers have formed a similar mental association.    *Japan Telecom*, 287 F.3d at 874-75.

/ / /

/ / /

/ / /

### 3.   Length & Manner of Glidewell's Use Disproves Secondary Meaning

Being first to market with a product does not render the product's name distinctive.  *See In re Phoseon Tech. Inc.*, 103 U.S.P.Q. 2d (BNA) 1822 (TTAB 2012). Secondary meaning must be established through evidence existing at the time the alleged infringer began using the allegedly infringing mark.  *Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*, 680 F. Supp. 2d 1107, 1117 (N.D. Cal. 2010) (citing *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985)).

At the time Keating began selling its KDZ Bruxer product in May 2011, Glidewell had used the BRUXZIR mark for less than two years.  Moreover, in this very short time, numerous third parties were already using the terms "brux," "zir," "bruxer" and "bruxzir" in connection with all zirconia crowns.  This short period, coupled with evidence of third party use, establishes that Glidewell did not develop any appreciable secondary meaning.  *See e.g., Nartron Corp.*, 305 F.3d at 405.

### 4.   Glidewell's Use of The Mark Was Not Exclusive

Glidewell relies on the Franklyn declaration for the statement that "BruxZir mark does not exist in a crowded field of similar marks."  (Opp. p. 25).  This statement is contrary to the overwhelming evidence.  Even if admissible (which is denied), Professor Franklyn's declaration ignores the undisputed evidence of widespread third party use and registration of marks including "brux," "zir" and "bruxer" and "bruxzir".   He also ignored the evidence of phonetic equivalence of the mark BruxZir with bruxer, the intended user of Glidewell's crowns. At his deposition, Professor Franklyn testified that he had no dental industry experience, had not read any dental industry journals and had never spoken to a dentist in connection with this case. (*see* Objections to Franklyn Evidence submitted herewith; 2nd Jankowski Decl., Ex. 153).

-24-

Professor Franklyn is improperly attempting to "tailor the field" in a way that is strategically advantageous to Glidewell.  *See Halo Mgmt., LLC v. Interland, Inc.*, 308 F. Supp. 2d 1019, 1034 (N.D. Cal. 2003).

Glidewell's reliance on its cease and desist communications for evidence of secondary meaning is also misplaced (Opp. at 25).  Those communications state that "BRUXZIR and BRUXER sound the same." (Keating SOF DOC #087-1 ¶ 52). The undisputed evidence establishes that Glidewell's use of its mark has not been exclusive.

5. **The Evidence Establishes Keating Did Not Copy Glidewell's Mark**

Keating has provided uncontested evidence as to the rationale behind Mr. Keating's choice of "KDZ Bruxer".  (Keating SOF DOC #087-1 ¶¶ 79-80) Keating had been marketing zirconia based crowns under the term KDZ, which stands for Keating Dental Zirconia, since 2006.  (Keating Decl. ¶ 12; Mangum Decl., Ex. 53 (Brandon Dep. Tr.), 20:15-16; 26:21-27:4; 38:10-12).  Because the new all-zirconia crown was specifically designed to replace gold crowns for bruxer patients, Mr. Keating wanted to call the new crown the "KDZ Bruxer." (Keating SOF DOC #087-1 ¶ 80).  He sought advice of counsel as to the availability of the mark "KDZ Bruxer" and, after a trademark search, was informed that it was.  This evidence of good faith is unrebutted, and a simple comparison of the KDZ Bruxer mark with Glidewell's BruxZir mark, as used in the marketplace, exposes the weakness of Glidewell's copying argument.

III. **CONCLUSION**

For the reasons set forth above and in Keating's opening brief, Keating respectfully requests that the Court grant its motion in its entirety.

/ / /

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: December 3, 2012        By: /S/ Lynda J. Zadra-Symes
                                    Lynda J. Zadra-Symes
                                    Jeffrey L. Van Hoosear
                                    David G. Jankowski

                                Attorneys for Defendant/Counter-Plaintiff,
                                KEATING DENTAL ARTS, INC.

14403782