SNELL & WILMER L.L.P.
Philip J. Graves (SBN 153441)
pgraves@swlaw.com
Greer N. Shaw (SBN 197960)
gshaw@swlaw.com
Christopher B. Pinzon (SBN 254110)
cpinzon@swlaw.com
350 South Grand Avenue, Suite 2600
Two California Plaza
Los Angeles, CA 90071
Telephone: (213) 929-2500
Facsimile: (213) 929-2525

Attorneys for Plaintiff
James R. Glidewell Dental Ceramics, Inc.
d/b/a Glidewell Laboratories

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| JAMES R. GLIDEWELL DENTAL CERAMICS, INC., | Case No. SACV11-01309-DOC(ANx) |
| Plaintiff, | **JAMES R. GLIDEWELL DENTAL CERAMICS, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT RE TRADEMARK MISUSE, UNFAIR COMPETITION, UNCLEAN HANDS, FAIR USE, AND ESTOPPEL** |
| vs. | |
| KEATING DENTAL ARTS, INC., | |
| Defendant. | |
| AND RELATED COUNTERCLAIMS. | Hearing<br><br>Date: December 17, 2012<br>Time: 8:30 a.m.<br>Ctrm: 9D, Hon. David O. Carter<br><br>Pre-Trial Conf.: January 28, 2013<br>Jury Trial: February 26, 2013 |

Glidewell Reply re: MSJ re: Patent Misuse,
Unfair Competition, Unclean Hands, Fair Use, and Estoppel
CASE NO. SACV11-01309 DOC (ANx)

16222805.1

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

# TABLE OF CONTENTS

**Page**

I.    LEGAL DISCUSSION ................................................................................. 1

     A.    Keating's Third Counterclaim for Misuse of Trademark Fails to State a Legally Cognizable Claim ............................................. 1

     B.    Keating Lacks Standing to Raise Its Second Counterclaim for Unfair Competition Under the UCL ...................................... 4

         1.    Keating has Offered No Evidence of Economic Harm Caused By the Alleged Unfair Competition ............................. 4

         2.    To the Extent Keating is Now Claiming This Lawsuit Constitutes Unfair Competition, Keating's Claim is Barred by the Litigation Privilege and Noerr-Perrington Doctrine ......................................................................... 6

         3.    Keating's Evidence Does Not Prove Economic Damages Caused by This Lawsuit .................................................... 8

     C.    Keating's Counterclaim for Unfair Competition Fails on the Merits ......................................................................... 10

     D.    Keating's Counterclaim for Unclean Hands Fails on the Merits ........ 12

     E.    Keating's Fifth Affirmative Defense of Fair Use Fails Because Keating is Using "Bruxer" as a Trademark and Not Solely to Describe Its Goods ...................................................... 17

     F.    Keating's Third Affirmative Defense of Estoppel Fails ..................... 21

     G.    Glidewell Adequately Met and Conferred Under Local Rule 7.3 ...... 22

II.    CONCLUSION ..................................................................... 23

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abercrombie & Fitch Co. v. Hunting World, Inc.*
537 F.2d 4 (2d Cir. 1976) ................................................................................20

*Action Apartment Ass'n, Inc. v. City of Santa Monica*
41 Cal. 4th 1232 (2007) ...................................................................................6

*Cairns v. Franklin Mint Co.*
292 F.3d 1139 (9th Cir. 2002) .........................................................................18

*Citizens Financial Group, Inc. v. Citizens Nat. Bank of Evans City*
383 F.3d 110 (3d Cir. 2004) ............................................................................13

*Clorox Co. v. Sterling Winthrop, Inc.*
117 F.3d 50, (2d Cir. 1997) ........................................................................1, 2

*Copelands' Enterprises, Inc. v. CNV, Inc.*
945 F.2d 1563 (Fed. Cir. 1991) ......................................................................16

*Empress LLC v. City & County of San Francisco*
419 F.3d 1052 (9th Cir. 2005) .........................................................................7

*Guichard v. Mandalay Pictures, LLC*
2005 WL 2007883 (N.D. Cal. 2005) .................................................................1

*Hall v. Time Inc.*
158 Cal. App. 4th 847 (2008) ...........................................................................5

*JL Beverage Co., LLC v. Beam, Inc.*
__ F.Supp.2d __, 2012 WL 4472097 (D. Nev. Sept. 25, 2012) .......................18

*Juno Online Services v. Juno Lighting, Inc.*
979 F.Supp. 684 (N.D. Ill. 1997) .....................................................................11

*Kashian v. Harriman*
98 Cal.App.4th 892 (2002) ...............................................................................6

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*
624 F.3d 1083 (9th Cir. 2010) .......................................................................5, 6

*Laster v. T-Mobile USA, Inc.*
407 F. Supp. 2d 1181 (S.D. Cal. 2005)
aff'd, 252 F. App'x 777 (9th Cir. 2007) ...........................................................5

*Leathersmith of London, Ltd. v. Alleyn*
695 F.2d 27 (1st Cir. 1982).........................................................................19, 20

*Lyng v. Payne*
476 U.S. 926 (1986).........................................................................................21

Glidewell MSJ re: Patent Misuse,
Unfair Competition, and Unclean Hands
CASE NO. SACV11-01309 DOC (ANx)

16222805.1

**TABLE OF AUTHORITIES**
(continued)

Page

*Manistee Town Ctr. v. City of Glendale*
227 F.3d 1090 (9th Cir. 2000) ................................................................. 7

*Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*
290 F. Supp. 2d 1083 (C.D. Cal. 2003) ................................................... 8

*MedImmune, Inc. v. Genentech, Inc.*
2003 WL 25550611 (C.D. Cal. 2003) ...................................................... 7

*Microware Systems Corp. v. Apple Computer, Inc.*
238 F.3d 989 (8th Cir. 2001)
aff'd 126 F. Supp. 2d 1207 (S.D. Iowa 2000) ....................................... 19

*Norris v. Baxter Healthcare Corp.*
397 F.3d 878 (10th Cir. 2005) ................................................................ 9

*Oei v. N. Star Capital Acquisitions, LLC*
486 F. Supp. 2d 1089 (C.D. Cal. 2006) ................................................... 7

*Pom Wonderful LLC v. Welch Foods, Inc.*
737 F.Supp.2d 1105 (C.D. Cal. 2010) ...................................... 13, 14, 15

*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*
508 U.S. 49 (1993) .................................................................................. 7

*Rubin v. Green*
4 Cal. 4th 1187 (1993) ............................................................................ 6

*Schwarzkopf v. John H. Breck, Inc.*
340 F.2d 978 (C.C.P.A. 1965) .............................................................. 18

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization*
59 F.3d 902 (9th Cir. 1995) ................................................................... 18

*Silberg v. Anderson*
50 Cal.3d 205 (1990) .............................................................................. 6

*Sleeper Lounge Co. v. Bell Mfg. Co.*
253 F.2d 720 (9th Cir. 1958) ................................................................ 18

*Soweco, Inc. v. Shell Oil Co.*
617 F.2d 1178 (5th Cir. 1980) .............................................................. 20

*Sze v. I.N.S.*
153 F.3d 1005 (9th Cir. 1998) ................................................................ 9

*TYR Sport, Inc. v. Warnaco Swimwear, Inc.*
709 F.Supp.2d 821 (C.D. Cal. 2010) .................................................... 10

# TABLE OF AUTHORITIES
(continued)

**Page**

*U-Haul Int'l, Inc. v. Jartran, Inc.*
522 F. Supp. 1238 (D. Ariz. 1981)
*aff'd*, 681 F.2d 1159 (9th Cir. 1982)..................................................13

*United Mine Workers of America, Dist. 12 v. Illinois State Bar Ass'n*
389 U.S. 217 (1967)...................................................................7

*United States v. Georgia-Pacific Co.*
421 F.2d 92 (9th Cir. 1970)..........................................................22

*Wasco Products, Inc. v. Southwall Technologies, Inc.*
435 F.3d 989 (9th Cir. 2006)...........................................................6

*White Swan v. Nature Co.*
29 F.3d 638 (9th Cir. 1994)...........................................................19

## STATUTES

15 U.S.C. § 1115(b)(4) ...........................................................17, 21

California Business & Professions Code § 17200 ...............................7, 22

California Business & Professions Code § 17204 .....................................4

California Civil Code § 47(b) ........................................................4, 6

## OTHER

3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition
(4th ed. 2010) § 19:146................................................................16

William E. Ridgway, *Revitalizing the Doctrine of Trademark Misuse,*
21 BERKELEY TECH. L.J. 1547 (2006) ...........................................1, 2

Trademark Manual of Examining Procedure (Oct. 2012) § 808.01 ...................14

Trademark Manual of Examining Procedure (Oct. 2012) § 809..........................14

# I. LEGAL DISCUSSION

A.  **Keating's Third Counterclaim for Misuse of Trademark Fails to State a Legally Cognizable Claim**

Keating acknowledges, as it must, that no court has recognized an affirmative claim for trademark misuse.  What Keating ignores is the reason why: because trademark rights simply do not confer the market leverage needed to force a monopoly.  *Clorox Co. v. Sterling Winthrop, Inc.*, 117 F.3d 50, 56 (2d Cir. 1997) ("A trademark, unlike other intellectual property rights, does not confer a legal monopoly on any good or idea; it confers rights to a name only. Because a trademark merely enables the owner to bar others from use of the mark, as distinguished from competitive manufacture and sale of identical goods bearing another mark, the opportunity for effective antitrust misuse of a trademark . . . is so limited that it poses a far less serious threat to the economic health of the nation [than does patent misuse]." Internal quotes omitted.); *Guichard v. Mandalay Pictures*, LLC, 2005 WL 2007883 (N.D. Cal. 2005) ("As a matter of law, possessing and asserting priority of trademark rights does not harm competition in the market associated with the mark.").

Undeterred, Keating starts with the assertion that Glidewell has enforced its mark against direct competitors using variations of "brux" or "bruxer" in their trademark, and leaps directly to the conclusion that "Glidewell is attempting to use its trademark registration to gain something akin to patent rights, seeking to prevent competitors from selling all-zirconia crowns for use with bruxers or in brux cases." (Dkt. #127 [Deft's Opp.], p. 9)  The problem with Keating's theory is there is neither legal authority nor evidence to support it.

As Keating acknowledges, an affirmative trademark misuse claim has been universally rejected by the courts.  Not only has it been rejected by the courts, however, but the only source to which Keating cites also rejects Keating's position. William E. Ridgway, *Revitalizing the Doctrine of Trademark Misuse*, 21

Glidewell Reply re: MSJ re: Patent Misuse,
Unfair Competition, Unclean Hands, Fair Use, and Estoppel
CASE NO. SACV11-01309 DOC (ANx)

- 1 -

16222805.1

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1    BERKELEY TECH. L.J. 1547 (2006) (the "Ridgway article").  While the Ridgway

2    article does go beyond any court in endorsing the creation of a modest trademark

3    misuse doctrine, it specifically excludes anticompetitive conduct from the scope of

4    the proposed claim because trademarks do not confer sufficient market leverage to

5    threaten a monopoly:

> When compared to patents and, to some extent,
> copyrights, trademarks only rarely generate market
> power. As the court articulated in *Clorox Co. v. Sterling
> Winthrop, Inc.* [117 F.3d 50 (2d Cir. 1997)],
>
> > A trademark, unlike other intellectual property
> > rights, does not confer a legal monopoly on any
> > good or idea; it confers rights to a name only.
> > Because a trademark "merely enables the owner to
> > bar others from use of the mark, as distinguished
> > from competitive manufacture and sale of identical
> > goods bearing another mark," "the opportunity for
> > effective antitrust misuse of a trademark . . . is so
> > limited that it poses a far less serious threat to the
> > economic health of the nation [than does patent
> > misuse]."
>
> Thus, in accordance with the general trend in misuse
> jurisprudence, this Article opposes the adoption of an
> antitrust-based doctrine of trademark misuse.

20   *Id.* at 1565.  But that is exactly the theory Keating advances here:  a trademark

21   misuse doctrine based on Glidewell's alleged attempt to secure a monopoly.  Not

22   only has no court endorsed Keating's theory, therefore, but even the one lone

23   purportedly supporting law review article that Keating cites opposes it.[1]  In other

---

[1]   The Ridgway article endorses a trademark misuse doctrine for situations where a
mark holder attempts to suppress the first-amendment rights of individuals or
companies with few resources.  The example offered repeatedly in the article is
a situation where a blogger criticizes a company and the company then attempts
to silence the criticism with a bogus trademark claim.  Nothing of the sort has
occurred here.

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1    words, Keating provides this Court with absolutely no reason to break new legal

2    ground and recognize a novel claim for trademark misuse.

3          Moreover, even if Keating had come forward with a compelling argument for

4    the Court to adopt its novel claim, its Third Counterclaim would still be subject to

5    dismissal because Keating has no evidence to support the claim.

6          First, it is demonstrably not true that Glidewell has attempted to enforce the

7    BruxZir mark against every competitor that uses the term "Brux" or "Bruxer" in

8    connection with its promotion of dental crowns and bridges.  Glidewell does not

9    attempt to enforce its rights in the BruxZir mark against competitors that use the

10   term "Bruxer" descriptively rather than as a mark or brand.  For example, in one

11   instance Glidewell sent a cease and desist letter to a competitor using the mark

12   "Bruxer All Zirconia."   That company stopped using that mark and instead simply

13   described their product as "good for bruxers," which satisfied Glidewell.

14   (Jankowski Decl. Ex. 6 (Allred Depo.) at 244:20-245:17).  More generally, when

15   the Glidewell employees involved in enforcement were asked in their depositions

16   whether competitors could use those terms to describe their product, they affirmed

17   that Glidewell does not object to competitors describing their product as indicated

18   or ideal for bruxers or patients with bruxism.  (Jankowski Decl. Ex. 5 (Bartolo

19   Decl.) at 82:19-83:5 ("there's nothing wrong with [competitors] describing in their

20   own materials that they have a crown which is, for example, indicated for bruxers . .

21   ."), 143:11-19 ("a non-authorized lab certainly can describe a monolithic zirconia

22   dental restoration in their advertising as being suitable for bruxers . . ."; Allred

23   Depo. at 211:8-12 (competitors can "use the word bruxer in their promotional

24   materials to refer to patients with bruxism . . .").  So there is simply no evidence

25   that Glidewell is trying to preclude others from describing their products using the

26   terms "brux" or "bruxers."

27          Second, there is not a shred of evidence, because it is not true, that any

28   competitor of Glidewell was forced to stop, or scale back from, selling zirconia

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1   crowns as a result of Glidewell's enforcement conduct.  There is no evidence that

2   Glidewell even attempted to accomplish that end.  The only thing that happened as

3   a result of Glidewell's enforcement activity is what one would expect:  the

4   infringers changed the name of their product.  But competition is alive and well.

5     Accordingly, the Court should grant partial summary judgment in favor of

6   Glidewell with respect to Keating's Third Counterclaim for Trademark Misuse.

7   **B.** **Keating Lacks Standing to Raise Its Second Counterclaim for Unfair**

8     **Competition Under the UCL**

9     Keating claims for the first time in its opposition brief that it has suffered the

10  requisite economic injury to have standing to sue under the UCL because, *as a*

11  *result of this lawsuit*, its sales have allegedly declined, and two dentists have

12  allegedly stopped purchasing Keating's product.  (Opposition at 9-10).  As set forth

13  in greater detail below, Keating's alleged economic harm does not confer standing

14  for at least three reasons.  First, the *lawsuit* is not the alleged unfair competition

15  Keating claims in its counterclaim, nor is it the alleged unfair competition Keating

16  proceeds to complain about in its discussion on the merits.  Damages as a result of

17  the lawsuit, therefore, cannot confer standing.  Second, if Keating is now basing its

18  UCL claim on this lawsuit, Keating's claim is absolutely barred by California's

19  litigation privilege (Civil Code § 47(b)) and the federal *Noerr-Pennington* doctrine,

20  both of which preclude liability for the act of filing a lawsuit.  Third, Keating has

21  proffered no evidence that this lawsuit caused it economic damages in any event.

22    **1.** **Keating has Offered No Evidence of Economic Harm Caused By**

23     **the Alleged Unfair Competition**

24    Keating contends it has standing because this lawsuit caused it economic

25  harm.  But the unfair competition Keating complains about is *not* this lawsuit.  This

26  dooms Keating's argument because Keating must prove it "suffered injury in fact

27  and lost money or property *as a result of* the unfair competition."  Cal. Bus. & Prof.

28  Code § 17204 (emphasis added).  This requirement "imposes a causation

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

Glidewell Reply re: MSJ re: Patent Misuse,
Unfair Competition, Unclean Hands, Fair Use, and Estoppel
CASE NO. SACV11-01309 DOC (ANx)

- 4 -

16222805.1

1   requirement. The phrase 'as a result of' in its plain and ordinary sense means

2   'caused by' and requires a showing of a causal connection or reliance on the alleged

3   [unfair competition]." *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855 (2008); *Laster*

4   *v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005) aff'd, 252 F.

5   App'x 777 (9th Cir. 2007) ("The language of the UCL, as amended by Proposition

6   64, makes clear that a showing of causation is *required* . . ."). Keating, therefore,

7   must show that Glidewell's alleged acts of unfair competition caused it economic

8   harm.

9        The unfair competition Keating complains of, however, is not the lawsuit that

10   allegedly caused economic harm. In its Second Counterclaim, the unfair

11   competition Keating complains of is that Glidewell allegedly obtained an unlawful

12   registration as "'cover' for asserting that Glidewell's competitors could NOT use

13   the generic term BRUX." (SAA ¶ 62). But nowhere does Keating allege that this

14   *lawsuit* constitutes unfair competition.

15        Further, even in Keating's opposition brief, Keating does not claim that that

16   the *lawsuit* is the unfair competition. Instead Keating discusses the cease and desist

17   letter that Glidewell sent Keating, cease and desist letters that Glidewell sent third

18   parties, Glidewell's alleged prevention of third parties from using the terms "brux"

19   and "bruxer," and Glidewell's alleged attempt to monopolize the market for

20   zirconia crowns. (Opposition at 10-12). Keating proffers no evidence, however,

21   that it has suffered any injury as a result of any of these allegedly improper acts.

22   And since this lawsuit is not the unfair competition Keating alleges, evidence of

23   injury caused by the lawsuit does not confer standing under the UCL as a matter of

24   law.

25        Further, even if Keating were trying to change the gravamen of its Second

26   Counterclaim, Keating cannot do so at this late stage, after three successively more

27   elaborate attempts at stating counterclaims in this action, attempting to change. *La*

28   *Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083,

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1089 (9th Cir. 2010)  ("Given its inadequate pleading regarding organizational standing, [plaintiff] may not effectively amend its Complaint by raising a new theory of standing in its response to a motion for summary judgment."); *Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.").

> **2.**     **To the Extent Keating is Now Claiming This Lawsuit Constitutes Unfair Competition, Keating's Claim is Barred by the Litigation Privilege and *Noerr-Perrington* Doctrine**

Even if Keating could assert for the first time in its opposition brief that this lawsuit constitutes unfair competition, Keating's claim would be absolutely barred by the litigation privilege (Civil Code § 47(b)) and the federal *Noerr-Pennington* doctrine, both of which preclude liability for the act of filing a lawsuit.

The litigation privilege imposes an "absolute bar" to liability. *Rubin v. Green*, 4 Cal. 4th 1187, 1201 (1993) (holding the litigation privilege barred a UCL claim).  It "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal.3d 205, 212 (1990).  The filing of a lawsuit is the quintessential communication protected by the privilege:  "We contemplate no communication that is more clearly protected by the litigation privilege than the filing of a legal action." *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1249 (2007).  Further, Keating cannot avoid the litigation privilege by attempting to show that this lawsuit is a sham (which it is not). *Kashian v. Harriman,* 98 Cal.App.4th 892, 917 (2002) (holding the "fil[ing][of] meritless lawsuits on behalf of 'sham plaintiffs' " was "essentially communicative conduct" to which the litigation privilege applied, "even though it also may have involved noncommunicative acts").  The litigation privilege applies

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1   in federal court.  E.g., *Oei v. N. Star Capital Acquisitions, LLC*, 486 F. Supp. 2d

2   1089, 1103 (C.D. Cal. 2006) (litigation privilege barred claim of intentional

3   infliction of emotional distress).  Accordingly, as section 17200 is a California

4   cause of action, the litigation privilege absolutely bars Keating's Second

5   Counterclaim.

6       The First Amendment also immunizes a party from liability for filing a

7   lawsuit under the *Noerr-Pennington* doctrine.  "The Supreme Court has described

8   the right to petition as 'among the most precious of the liberties safeguarded by the

9   Bill of Rights' and 'intimately connected, both in origin and in purpose, with other

10  First Amendment rights of free speech and free press.'"  *Empress LLC v. City &*

11  *County of San Francisco*, 419 F.3d 1052, 1056 (9th Cir. 2005) (quoting *United*

12  *Mine Workers of America, Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222

13  (1967)).  "Under the *Noerr-Pennington* doctrine, '[t]hose who petition government

14  for redress are generally immune from antitrust liability.'"  *Manistee Town Ctr. v.*

15  *City of Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000) (citing *Professional Real*

16  *Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993).

17  The only exception is for "sham" lawsuits, which applies when "(1) the petitioner's

18  lawsuit is objectively baseless and (2) the baseless lawsuit conceals a subjective

19  attempt to interfere directly with the business relationships of a competitor."

20  *Manistee Town Ctr.*, 227 F.3d at 1094; see also *MedImmune, Inc. v. Genentech,*

21  *Inc.*, 2003 WL 25550611 (C.D. Cal. 2003) (applying *Noerr-Pennington* doctrine to

22  state unfair competition claim).  These circumstances are obviously not applicable

23  here.

24      Here, Keating's only attempt to establish standing is to argue that this *lawsuit*

25  caused it to lose business.  (Opposition at 9-10).  But under the litigation privilege

26  and *Noerr-Perrington* doctrine, Glidewell cannot, as a matter of law, be liable for

27  damages caused by the filing of this lawsuit.  There is no "sham" exception to the

28  litigation privilege, so there can be no question that Keating's claim is absolutely

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1    barred by the litigation privilege.  But even under the *Noerr-Perrington* doctrine,

2    this lawsuit is plainly not objectively baseless.  Glidewell has a federally registered

3    trademark, which is thus presumptively valid, and is enforcing it against a direct

4    competitor with a similar trademark.  This lawsuit is plainly not a sham.

5          Keating is left, therefore, with no evidence of economic harm caused by

6    cognizable acts of unfair competition. Thus Keating has no standing and the Court

7    should grant partial summary judgment in favor of Glidewell on Keating's Second

8    Counterclaim for Unfair Competition.

9          **3.**     **Keating's Evidence Does Not Prove Economic Damages Caused by**

10                   **This Lawsuit**

11          Finally, even if Keating could overcome the legal and logical obstacles to

12    establishing that damages resulting from this lawsuit could confer standing, Keating

13    has presented no substantial evidence that this lawsuit has caused it damages.

14    Keating offers two pieces of evidence.

15          First, Keating presents evidence that since this lawsuit started, it has chosen

16    to significantly reduce its marketing expenditures to mitigate any potential damages

17    from the lawsuit.  At the same time, Keating's sales have stagnated and then

18    declined.  (Donich Decl. ¶ 3-4, Ex. A).  Keating claims this is evidence that the

19    lawsuit has caused Keating economic harm.  There are a number of problems with

20    this argument.

21          First, it is simply not true.  Exhibit A to the Donich Declaration shows that

22    Keating's product sales did not stagnate and decline.  On the contrary, sales from

23    May 2012 onward are equal to or *greater than* sales from May 2011 onward.  In

24    other words, sales are actually up, and Keating's claim is demonstrably false.  A

25    party cannot manufacture an issue of fact by simply contradicting its own evidence.

26    *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083,

27    1091 (C.D. Cal. 2003) ("[Plaintiff] cannot manufacture disputes of material facts by

28    contradicting itself.").

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1   Next, the obvious problem with this argument is that even were Keating's
2   factual assertion true, any temporary decline in sales is fully explained by Keating's
3   decision to reduce its marketing.  And Keating's decision to reduce its marketing
4   was just that, Keating's decision.  Glidewell is not responsible for that decision.
5   Indeed, the fact that Keating chose to reduce its marketing as a mitigation strategy
6   only shows that this lawsuit, in fact, does have merit.

7   Finally, even if there were a brief decline in sales after the filing of the
8   lawsuit, that would establish only a correlation, not that this lawsuit *caused* the
9   decline.  Keating has presented no evidence that the lawsuit in fact caused any
10  temporary decline in sales.  There is, for example, no evidence that Glidewell
11  contacted Keating's customers to inform them of the lawsuit or dissuade them from
12  buying Keating's product.  There is no evidence that Keating's customers even
13  know about this lawsuit.  In other words, even if Keating presented sales figures
14  showing a decline in sales, that would show only a correlation between the lawsuit
15  and the decline in sales, but that is not enough to prove causation.  See *Sze v. I.N.S.*,
16  153 F.3d 1005, 1008 (9th Cir. 1998) ("Plaintiffs have demonstrated no more than
17  correlation; they have not shown causation."); *Norris v. Baxter Healthcare Corp.*,
18  397 F.3d 878, 885 (10th Cir. 2005) ("A correlation does not equal causation.").

19  In Keating's second piece of evidence, Keating presents a list of 12 dentists
20  who submitted prescription forms to Keating with "BruxZir" or something similar
21  written on it.  (Brandon Decl. ¶¶ 2-6).  Since being sued by Glidewell, Keating
22  states that its policy in such cases has been to call the dentist and confirm that the
23  dentist wants KDZ Bruxer and not some other brand, and also inform the dentist
24  that "BruxZir" is a trade name being used by a competing lab.  (Brandon Decl. ¶¶
25  2-6).  Of the 12 dentists, two have not reordered KDZ Bruxer since being told
26  BruxZir is Glidewell's mark.  (Brandon Decl. ¶ 9).  From this, Keating concludes,
27  "Keating has . . . lost business from dentists who stopped ordering Keating's KDZ
28  Bruxer product once they learned that Keating was defending a lawsuit brought

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

Glidewell Reply re: MSJ re: Patent Misuse,
Unfair Competition, Unclean Hands, Fair Use, and Estoppel
CASE NO. SACV11-01309 DOC (ANx)

16222805.1

1   against it based on the KDZ Bruxer product." (Opposition at 10).

2          Again, Keating's claim does not hold water.  First, the Brandon declaration

3   does *not* say he informed the dentists about this lawsuit.  He only says he informed

4   the dentists of the existence of Glidewell and that Glidewell uses "BruxZir" as a

5   trade name.  (Brandon Decl. ¶¶ 2-6).  Since there is no evidence the two dentists

6   knew about the lawsuit, there is no evidence the lawsuit caused the dentists to stop

7   ordering Keating's product.  Additionally, even if Keating had informed the

8   dentists of the lawsuit, it is pure speculation on Keating's part that the two dentists

9   who stopped ordering product did so *because* of the lawsuit.  Keating did not

10  submit declarations from the dentists, so we have no idea why they stopped

11  ordering product.  Perhaps they grew dissatisfied with the quality of Keating's

12  product.  Perhaps another lab offered a better price.  The mere fact that the two

13  dentists stopped ordering product does not prove causation.  It proves, at most,

14  correlation.  It is certainly not sufficient to create a genuine issue of fact.

15         Ultimately, even if proving damages as a result of this lawsuit were a legal

16  and logical way to establish standing (which it is not), Keating has failed to offer

17  that proof.  Thus Keating does not have standing to bring a UCL claim.  The Court

18  should grant partial summary judgment to Glidewell on Keating's Second

19  Counterclaim for Unfair Competition.

20  **C.**     **Keating's Counterclaim for Unfair Competition Fails on the Merits**

21         Keating claims Glidewell engaged in "unfair" conduct under the UCL

22  because Glidewell's enforcement of its mark "violate[s] 'the policy or spirit' of the

23  trademark and antitrust laws and threaten[s] and harms competition." (Opposition

24  at 11).  Keating slipped the word "trademark" into that quote.  Unfair competition

25  under the UCL, however, cannot be proven by showing a threatened violation of

26  *trademark* law, only antitrust law.  *TYR Sport, Inc. v. Warnaco Swimwear, Inc.*, 709

27  F.Supp.2d 821, 838 (C.D. Cal. 2010) ("Conduct is 'unfair' if it 'threatens an

28  incipient violation of an antitrust law, or violates the policy or spirit of one of those

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1  laws because its effects are comparable to or the same as a violation of the law, or

2  otherwise significantly threatens or harms competition.'"").  Keating's evidence,

3  moreover, reveals no actual or potential harm to competition.

4      Keating ignores the ample case law cited in Glidewell's motion that

5  trademark law simply does not confer the sort of market power needed to leverage a

6  monopoly.  *E.g.*, *Juno Online Services v. Juno Lighting, Inc.*, 979 F.Supp. 684

7  (N.D. Ill. 1997) ("in trademark law, the mark holder usually does not have the

8  ability to destroy competition.  The holder can only keep competitors from using

9  the mark and, in most circumstances, cannot keep them from selling a directly

10  competing product."); see Dkt. #79-1 (Glidewell Motion) at 14-18.  The evidence in

11  this case bears that out.  The only evidence Keating relies on is the fact that

12  Glidewell sent cease-and-desist letters to direct competitors using variations on

13  "brux" and "bruxer" in trademarks.  The evidence shows that, at least with some of

14  them, the competitors chose to change the name of the products they were offering.

15  (Jankowski Decl. Ex. 6 at 213:19 -264:13).  But importantly, *there is no evidence*

16  *that any competitor stopped offering, or reduced their offering of, zirconia crowns.*

17  The competition is still there, alive and well; the only effect of the cease and desist

18  letters is that Glidewell's competitors changed the brand name of their products.

19  Accordingly, there is no violation of the letter, policy or spirit of the antitrust laws.

20      Further, there is no evidence to support Keating's claim that Glidewell is

21  plotting to prevent competitors from describing their products using "brux" or

22  "bruxer."  The evidence shows only that Glidewell has enforced its trademark

23  against competitors using "brux" or "bruxer" *in a mark*.  As noted above, when

24  asked in their depositions whether competitors could use those terms to describe

25  their product, the Glidewell employees involved in enforcement affirmed that

26  Glidewell does not object to competitors describing their product as indicated or

27  ideal for bruxers or patients with bruxism.  (Jankowski Decl. Ex. 5 (Bartolo Decl.)

28  at 82:19-83:5 ("there's nothing wrong with [competitors] describing in their own

Glidewell Reply re: MSJ re: Patent Misuse,
Unfair Competition, Unclean Hands, Fair Use, and Estoppel
CASE NO. SACV11-01309 DOC (ANx)

- 11 -

16222805.1

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600  Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1   materials that they have a crown which is, for example, indicated for bruxers . . ."),

2   143:11-19 ("a non-authorized lab certainly can describe a monolithic zirconia

3   dental restoration in their advertising as being suitable for bruxers . . ."; Ex. 6

4   (Allred Depo.) at 211:8-12 (competitors can "use the word bruxer in their

5   promotional materials to refer to patients with bruxism . . ."). Indeed, in at least one

6   instance of trademark enforcement, Glidewell was satisfied when a competitor

7   stopped using the mark "Bruxer All Zirconia" and instead simply described their

8   product as "good for bruxers." (Jankowski Decl. Ex. 6 (Allred Depo.) at 244:20-

9   245:17). So there is simply no evidence that Glidewell is trying to preclude others

10  from describing their products using the terms "brux" or "bruxers."

11      Ultimately, even if Keating had standing to bring a UCL claim related to

12  Glidewell's trademark policing against *third parties* (which it does not), there is

13  simply no evidence that Glidewell threatens to hamper competition. At most,

14  Glidewell requires competitors who infringe Glidewell's trademark to change their

15  names. As many courts have recognized, however, that is not a threat to

16  competition. Accordingly, Glidewell has not engaged in "unfair" conduct under the

17  UCL. Thus the Court should enter partial summary judgment in favor of Glidewell

18  on Keating's Second Counterclaim for Unfair Competition.

19  **D.   Keating's Counterclaim for Unclean Hands Fails on the Merits**

20      Keating claims the Court should throw Glidewell out of court under the

21  unclean hands defense for three reasons. First, in registering the BruxZir mark,

22  Glidewell failed to disclose certain facts to the examiner that, puzzlingly, Keating

23  admits Glidewell had no duty to disclose. Second, Glidewell made a single false

24  statement to an unrelated third party that Glidewell had filed a lawsuit against the

25  third party when Glidewell had not. Third, Glidewell improperly used the ®

26  symbol in a few instances.

27      None of these allegations warrant the extreme remedy of denying Glidewell

28  all relief under its trademark. Keating ignores the applicable standard governing an

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

- 12 -

Glidewell Reply re: MSJ re: Patent Misuse,
Unfair Competition, Unclean Hands, Fair Use, and Estoppel
CASE NO. SACV11-01309 DOC (ANx)

16222805.1

unclean hands defense: "courts require clear, convincing evidence of 'egregious' misconduct before invoking the doctrine of unclean hands." *Citizens Fin. Group, Inc. v. Citizens Nat. Bank of Evans City*, 383 F.3d 110, 129 (3d Cir. 2004). "[C]ourts are reluctant to apply the unclean hands doctrine in all but the most egregious situations. It will be applied only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation." *U-Haul Int'l, Inc. v. Jartran, Inc.*, 522 F. Supp. 1238, 1255 (D. Ariz. 1981) *aff'd*, 681 F.2d 1159 (9th Cir. 1982) "'The unclean hands maxim is not a search warrant authorizing the defendant to probe into all the possible types of inequitable conduct ever engaged in by the plaintiff." *Pom Wonderful LLC v. Welch Foods, Inc.*, 737 F. Supp. 2d 1105, 1109 (C.D. Cal. 2010). The unclean hands defense "is not a license to destroy the rights of persons whose conduct is unethical. The rule is that unrelated bad conduct is not to be considered against the plaintiff. It is only when the plaintiff's improper conduct is the source, or part of the source . . . of his equitable claim, that he is to be barred because of this conduct. What is material is not that the plaintiff's hands are dirty, but that he dirties them in acquiring the right he now asserts." *U-Haul Int'l, Inc.*, 522 F. Supp. at 1254-55. Tellingly, Keating does not cite a single case upholding an unclean hands defense in circumstances analogous to the misconduct Keating claims here. And that is for good reason: none of the alleged misconduct is sufficiently "egregious," or sufficiently related to this lawsuit, to warrant a forfeiture of Glidewell's trademark rights.

Keating's first argument in favor of its unclean hands counterclaim—nondisclosure of certain facts to the trademark examiner—is a study in contradiction. Keating first recognizes that "it is the trademark examiner's responsibility to request the meaning of a mark from the applicant and a trademark applicant has no affirmative duty to disclose a mark's meaning to the trademark owner," but then proceeds to argue that Glidewell is guilty of unclean hands for not

1   doing so.  (Opposition at 13-14).  Keating has answered its own argument.  We

2   agree that no such duty exists, and thus Glidewell cannot be found to have unclean

3   hands for noncompliance with a nonexistent duty.  See Trademark Manual of

4   Examining Procedure (Oct. 2012) §§ 808.01 (applicants need not provide

5   description of marks consisting of standard characters), 809 (meaning of words

6   need be provided only for words of a foreign language).

7       Keating's second argument epitomizes the sort of nit-picking that is excluded

8   by the requirement that the misconduct be "egregious" and that it be directly related

9   to the plaintiff's claim.  Keating proffers evidence that in a single instance

10  involving a third party totally unrelated to this lawsuit, Glidewell incorrectly

11  claimed that an infringement lawsuit had been filed when none had been.

12  Glidewell acknowledges that this occurred, but this isolated incident simply is not

13  the sort of egregious misconduct that warrants forfeiting a party's trademark rights.

14      A case on point is *Pom Wonderful LLC v. Welch Foods, Inc.*, 737 F. Supp. 2d

15  1105 (C.D. Cal. 2010).  There, plaintiff brought a Lanham Act suit against a

16  competitor in the fruit juice market for false advertising and violation of the UCL.

17  In particular, plaintiff alleged defendant's product "Welch's 100% White Grape

18  Pomegranate" contained very little pomegranate juice.  Defendant asserted an

19  unclean hands defense on several bases:  (i) plaintiff had previously advertised a

20  100% pomegranate juice that in fact contained elderberry juice; (ii) plaintiff failed

21  to list water as an ingredient in its 100% juice, where water made up 3/4 of the

22  juice; (iii) plaintiff obscured "from concentrate" on its bottles; and (iv) plaintiff's

23  advertising campaign claimed the juice went straight from the fruit to the bottle,

24  when in fact it did not.  *Id.* at 1109.   The court rejected each allegation as a basis

25  for an unclean hands defense.

26      With respect to (i), the court held "while [defendant] has offered undisputed

27  evidence of [plaintiff's] misleading label, [defendant] has not demonstrated by clear

28  and convincing evidence that [plaintiff's] conduct was 'egregious.'"  *Id.* at 1113.

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

Glidewell Reply re: MSJ re: Patent Misuse,
Unfair Competition, Unclean Hands, Fair Use, and Estoppel
CASE NO. SACV11-01309 DOC (ANx)

- 14 -

16222805.1

The court looked to trademark law where actual deception is required: "The unclean defense can bar recovery in trademark cases if the defendant can establish that the plaintiff used its own trademark (on which its lawsuit is based) to deceive consumers." *Id.* Although defendant had presented evidence of a couple consumers who were confused, there was no evidence "any appreciable number of consumers were confused." *Id.*

With respect to defendant's other contentions, the court held they were not sufficiently related to plaintiff's allegations to qualify as unclean hands: "[Defendant] argues that it need only establish that [Plaintiff] deceptively names, labels, and advertises its juice products such that consumers are led to believe the products have characteristics which they do not. However, the unclean hands defense is not that broad. Rather, it can be applied only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation." *Id.* at 1111 (internal quotes omitted). "[Defendant's] allegations regarding [plaintiff's] marketing of its juice as not from concentrate, while falling within the broad category of 'consumer deception,' are premised on a different deception, different factual allegations, and different types of advertisements. The relationship between these allegations and [plaintiff's] claims is too tenuous to support an unclean hands defense." *Id.*

The same holds true here. Glidewell's incorrect statement about a lawsuit that had not been filed was an isolated incident totally unrelated to the allegations in this lawsuit. Glidewell does not accuse Keating of misrepresenting the existence of a lawsuit, or anything similar to that. Thus Keating's claim is too attenuated from Glidewell's allegations here to come in to play. Additionally, the incident was not at all egregious—it was an isolated bluff, never again repeated, that had no impact on consumers and no impact whatsoever on Keating.  Thus it is insufficient to support an unclean hands defense.

Keating's third argument, that Glidewell misused the ® symbol in a few

16222805.1

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1    instances, ignores the legal standard applicable to use of the ® symbol.  As

2    Glidewell explained in its moving papers, use of the ® symbol in connection with

3    unregistered goods is actionable only if the trademark holder intended to deceive.

4    *Copelands' Enterprises, Inc. v. CNV, Inc.*, 945 F.2d 1563, 1566 (Fed. Cir. 1991)

5    ("The improper use of the registration symbol by an applicant will defeat

6    applicant's right to registration only in those cases where it is conclusively

7    established that the misuse of the symbol was occasioned by an intent to deceive

8    the purchasing public or others in the trade into believing that the mark was

9    registered."); see also 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair

10   Competition (4th ed. 2010) § 19:146 ("[I]n ex parte and interpartes proceedings in

11   the PTO, modern decisions have been extremely lenient in accepting explanations

12   for misuse of the statutory notice. . . . [A]nything less than an intentional or

13   deliberate act to deceive the public is regarded as not constituting misuse of the

14   trademark notice so as to bar relief.").  Keating has presented zero evidence of

15   intent to deceive.

16       Not only is there no evidence of an intent to deceive, but the evidence shows

17   the improper usages of the ® symbol were inadvertent and, where possible,

18   corrected soon after they were brought to Glidewell's attention.  (SUF 14, 15).

19   Keating has proffered no evidence to dispute that.  Keating's only response is to

20   contend that the improper usages were more widespread than Glidewell described

21   in its moving papers.  (Dkt. # 126 (Keating SGI) at ¶ 14).  We acknowledge that

22   Keating has located one additional improper use:  "It Pays to Recycle BruxZir®

23   Solid Zirconia" in connection with milling blanks.  (Jankowski Decl. Ex. 7 at 18).

24   This is trivial.  Keating has nothing more; its remaining allegations of improper use

25   of the symbol are false.  For example, Keating claims that "Authorized BruxZir®

26   Laboratories" and "BruxZir® Solid Zirconia" are improper.  They are not.  The

27   Authorized Labs are authorized to sell BruxZir *crowns*.  Thus that usage is

28   appropriate.  (SUF 2).  And "BruxZir® Solid Zirconia," standing alone, is not

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1   connected to any particular product and thus not misleading.  Thus the evidence

2   shows that Glidewell, which has an annual marketing budget of millions of dollars,

3   has on four occasions since obtaining a registration in January of 2010 added the ®

4   symbol in connection with the wrong products.  But there is absolutely no evidence

5   of a fraudulent intent to deceive.  And since that is what Keating needs to prove,

6   Keating has not furnished evidence of unclean hands related to the ® symbol.

7        None of Keating's evidence amounts to the sort of egregious misconduct that

8   the courts require to support an unclean hands defense.  Therefore, the Court should

9   grant partial summary judgment in favor of Glidewell on Keating's Fourth

10  Affirmative Defense for Unclean Hands.

11  **E.**   **Keating's Fifth Affirmative Defense of Fair Use Fails Because Keating is**

12       **Using "Bruxer" as a Trademark and Not Solely to Describe Its Goods**

13       Keating's use of "Bruxer" is not fair use because Keating is using "Bruxer"

14  as a mark, and not only to describe its goods.  To qualify as fair use, Keating's use

15  of "Bruxer" must be "otherwise than as a mark" and "only to describe the goods

16  and services" of Keating.  15 U.S.C. § 1115(b)(4).

17       Keating has applied to register the mark "KDZ Bruxer."  It follows that

18  "Bruxer" is being used as part of a mark, which disqualifies it as a fair use as a

19  matter of law.  Keating tries to escape that consequence with a divide-and-conquer

20  tactic:  divide "Bruxer" from "KDZ" and argue that "Bruxer," by itself, does not

21  distinguish Keating's goods.  (Opposition at 17 ("'Bruxer' alone does not

22  distinguish Keating's product from the product of any other dental lab . . .")).  In

23  that regard, Keating notes that it has voluntarily disclaimed the term "Bruxer" in its

24  trademark application.  (Opposition at 17).

25       Keating's argument fails, however, because Glidewell does not accuse only

26  the "Bruxer" component of infringement, but rather the entirety of Keating's

27  brand—KDZ Bruxer.  (Dkt. # 1 [Glidewell Complaint] ¶¶ 9-10).  This is as it

28  should be, for in assessing a mark for infringement, the *entire* mark must be

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

considered, not just part of it. *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 912 (9th Cir. 1995) ("The validity and distinctiveness of a composite trademark is determined by viewing the trademark as a whole, as it appears in the marketplace. . . . A court may not review the validity of a composite-term trademark by 'dissecting' the term and reviewing the validity of its component parts individually."); *JL Beverage Co., LLC v. Beam, Inc.*, __ F.Supp.2d __, 2012 WL 4472097 (D. Nev. Sept. 25, 2012) ("under the anti-dissection rule, the validity and distinctiveness of a composite trademark is determined by viewing the trademark as a whole, as it appears in the marketplace.").

This issue arises when, as here, one party disclaims part of a mark.  The cases addressing the issue hold that in assessing whether the mark infringes, the *entire* mark must be considered, not just the nondescriptive portion.  *Schwarzkopf v. John H. Breck, Inc.*, 340 F.2d 978, 979-80 (C.C.P.A. 1965) ("As to the disclaimer, this does not have the effect of removing from the mark sought to be registered, or from our consideration, the [disclaimed] words . . . It disclaims only any exclusive right in those words per se. . . . It is of course well established that disclaimed material forming part of a trademark cannot be ignored in determining whether the marks are confusingly similar."); *Sleeper Lounge Co. v. Bell Mfg. Co.*, 253 F.2d 720, 724 n.1 (9th Cir. 1958) ("Disclaimed material forming part of a registered trade-mark cannot be ignored. It is still part of the composite trade-mark which must be considered in its entirety.").

Here, Glidewell has sued Keating for infringement based on the KDZ Bruxer mark, and Keating has applied to register the entire mark, "KDZ Bruxer," as a trademark.  (Dkt. # 94 [Boatright Decl.] Ex. C).  As a matter of law, Keating's application to register the mark leaves no room for genuine dispute that Keating is using it as a trademark, not merely to describe its goods.  This precludes the fair use defense.  *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002) ("To

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

16222805.1

1   establish a classic fair use defense, a defendant must prove . . . Defendant's use of

2   the term is not as a trademark or service mark . . .").

3        Keating cites several cases in which descriptive terms were used as part of a

4   product name.  None of those cases help Keating, however, because in none of

5   them was the descriptive term being used as a trademark, as in this case.

6        In *White Swan v. Nature Co.*, 29 F.3d 638 (9th Cir. 1994) (unpublished)

7   plaintiff owned the mark "Hummingbird Garden" in connection with seeds to feed

8   hummingbirds.  Defendant began making a similar product "with labels that

9   contained the phrase[]" "Hummingbird Seed Mix."  The court held this was fair

10   use, and emphasized the words were used "not [as] trademarks identifying a source,

11   but instead are descriptive phrases used fairly to describe the nature, qualities and

12   characteristics of the seed mixes." *Id.*  Unlike here, there is no indication

13   "Hummingbird Seed Mix" was being used as a mark at all, much less one for which

14   a registration application was pending.

15        In *Microware Systems Corp. v. Apple Computer, Inc.*, 238 F.3d 989 (8th Cir.

16   2001) *aff'g* 126 F. Supp. 2d 1207 (S.D. Iowa 2000) plaintiff owned a registered

17   trademark for "OS-9" in connection with software products and sued Apple over its

18   use of "OS 9" in its newest operating system, "Mac OS 9."  The court upheld a fair

19   use defense because Apple was using OS 9 in a purely descriptive fashion: "Since

20   at least 1991, Apple has utilized a sequential numbering system to denominate new

21   releases of its operating system for use in its Macintosh personal computer." *Id.* at

22   1210.  Further, "'OS' is widely regarded as industry short-hand for 'operating

23   system.'"  *Id.* at 1213.  The court concluded Apple was not using OS 9 as a mark,

24   but instead it was "used to describe the ninth version of the Macintosh operating

25   system 'Mac OS.'"  Unlike this case, Apple had not registered, or applied to

26   register, any mark with "OS 9" in it, but instead was using it purely descriptively.

27        In *Leathersmith of London, Ltd. v. Alleyn*, 695 F.2d 27 (1st Cir. 1982)

28   plaintiff had registered the mark "Leathersmith."  The court found defendant fairly

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

Glidewell Reply re: MSJ re: Patent Misuse,
Unfair Competition, Unclean Hands, Fair Use, and Estoppel
CASE NO. SACV11-01309 DOC (ANx)

- 19 -

16222805.1

1  used that term in the name of the business, "TANTALUS Custom Leathersmiths &
2  Bookbinders." "[Defendant] did not adopt 'Leathersmith' . . . as a trade or service
3  mark, but rather, as the court below specifically found, as a generic description of
4  his craft." *Id.* at 30 (internal quotes omitted). Unlike here, defendant did not apply
5  to register a mark with "leathersmith" in it, but simply used that term in a purely
6  descriptive sense to describe the business.

7      In *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178 (5th Cir. 1980) the court
8  upheld a jury verdict finding the descriptive term "larvicide" in the product names
9  "Rabon Oral Larvicide" and "Shell Poultry Spray & Larvicide" was fair use against
10  registered trademark "Larvacide" where the products were, in fact, larvicides. The
11  jury found specifically that defendants used "larvicide" "fairly and in good faith
12  [and] used the term only to describe the nature of its products and not as a
13  trademark." *Id.* at 1187. Again, defendants had not attempted to register any mark
14  containing the word "larvicide," but instead simply used that term to describe the
15  product.

16      Finally, *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir.
17  1976) held "Camel Safari" boots, "Hippo Safari" boots, and "Chukka Safari" boots
18  to be a fair use of "Safari." The boots were being sold by a company that arranged
19  safaris and were being sold for use on safaris, and also the term "safari" had
20  become generic in the fashion industry for certain types of fashion. Again,
21  defendant had not tried to register a mark with "safari" in it, but instead was using
22  the term purely descriptively.

23      These cases do not stand for the proposition that a descriptive term can be
24  used *in a trademark* and qualify as fair use. Each of those cases takes pains to
25  emphasize that the term was not being used as a trademark. And in none of those
26  cases was the descriptive term being used in a trademark that was registered, or for
27  which a registration was pending. The terms were simply used to describe a
28  product or service. Because Keating uses "Bruxer" in a trademark, its fair use

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1   defense fails.

2       Additionally, Keating is not using "Bruxer" "only to describe" its goods.  See

3   15 U.S.C. § 1115(b)(4).  As Keating acknowledges, the term "bruxer" is used to

4   refer to "[a] person who suffers from bruxism."  (SAA ¶ 46).  In turn, "bruxism"

5   refers to a condition of a patient who habitually grinds teeth.  (*Id.*).  Keating admits,

6   however, that it uses the term "bruxer" in connection with the sale of "crown[s]

7   made from zirconia."  (SAA ¶ 42).  The term "bruxer," therefore, simply does not

8   describe Keating's product—Keating's product is not a person who grinds teeth.

9   Obviously, there is a relationship between all-zirconia crowns and bruxers—all-

10  zirconia crowns are strong enough to withstand bruxism.  But in trademark law,

11  that is a suggestive mark, not a descriptive one.  Thus Keating's fair use defense

12  fails for the additional reason that Keating is not using "Bruxer" only to describe its

13  goods.

14  **F.**    **Keating's Third Affirmative Defense of Estoppel Fails**

15      Keating's estoppel argument boils down to the claim that Glidewell

16  previously marketed BruxZir crowns as ideal for bruxers, and the entire market for

17  zirconia crowns relied on that marketing in choosing to use variations on "bruxer"

18  in its marks, so Glidewell should be estopped from opposing those marks.

19  (Opposition at 18-20).  The argument may be quickly disposed of for two reasons.

20      First, Keating has no evidence that anyone relied on Keating's marketing

21  campaign in choosing a trademark.  Even *Keating* does not submit declarations

22  attesting to such reliance, much less evidence of third party reliance.  The only

23  evidence Keating points to is evidence that various companies have adopted marks

24  using variations on "bruxer."  But that fact has no bearing on whether those parties

25  chose their marks *in reliance* on Glidewell's marketing.  See *Lyng v. Payne*, 476

26  U.S. 926, 935 (1986) ("An essential element of any estoppel is detrimental reliance

27  on the adverse party's misrepresentations . . .").

28      Second, Keating has no evidence that Glidewell "intentionally led another to

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600  Two California Plaza
Los Angeles, California 90071
(213) 929-2500

Glidewell Reply re: MSJ re: Patent Misuse,
Unfair Competition, Unclean Hands, Fair Use, and Estoppel
CASE NO. SACV11-01309 DOC (ANx)

- 21 -

16222805.1

1  believe a particular circumstance to be true . . ." See *United States v. Georgia-*
2  *Pacific Co.*, 421 F.2d 92, 96 (9th Cir. 1970). Keating points to evidence that
3  Glidewell previously marketed BruxZir as ideal for bruxers. But that is not
4  evidence that Glidewell *intentionally* led others to believe they could use variations
5  on "bruxer" *in their trademarks* despite being confusingly similar to Glidewell's
6  mark.

7        Notably, Keating has not cited a single case recognizing its novel theory of
8  estoppel. In short, there is neither evidence nor legal authority to support Keating's
9  theory of estoppel. Thus the Court should grant partial summary judgment to
10  Glidewell on Keating's Third Affirmative Defense of Estoppel.

11  **G.    Glidewell Adequately Met and Conferred Under Local Rule 7.3**

12        Keating claims Glidewell violated Local Rule 7.3 by not meeting and
13  conferring regarding Glidewell's intention to move for partial summary judgment
14  on Keating's affirmative defenses of unclean hands, fair use, and estoppel.
15  Keating's argument elevates form over substance. Glidewell informed Keating that
16  it would move "(i) . . . for an order finding that Glidewell's registered mark BruxZir
17  is valid; (ii) dismissing Keating's First Counterclaim and for an order finding that
18  Keating has infringed Glidewell's BRUXZIR mark, and (iii) dismissing Keating's
19  Second and Third Counterclaims for (a) unfair competition under Cal. Bus. & Prof.
20  Code § 17200 et seq. and California common law, and (b) misuse of the BRUXZIR
21  mark."

22        Keating's fourth affirmative defense for unclean hands is entitled "Misuse of
23  Trademark/Unclean Hands/Unfair Competition." Glidewell informed Keating it
24  would move on Keating's affirmative claim for trademark misuse. There is no
25  substantive difference between Keating's affirmative claim for trademark misuse
26  and affirmative defense of "Misuse of Trademark/Unclean Hands/Unfair
27  Competition." Obviously, therefore, a motion against the affirmative claim will
28  encompass the affirmative defense. Keating was on notice.

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1    With respect to Keating's fifth affirmative defense of fair use, it is rather

2    hypocritical of Keating to raise this argument since Keating argued fair use in its

3    own summary judgment motion yet *did not meet and confer* regarding that

4    affirmative defense. (Declaration of Greer Shaw, Ex. 116). Ultimately, it is likely

5    both parties would agree that a motion for summary judgment regarding

6    infringement encompasses fair use. And since both parties met and conferred

7    regarding motions pertaining to infringement, both parties adequately met and

8    conferred regarding fair use. Additionally, since Keating raised fair use in its own

9    motion, Keating can hardly claim any prejudice.

10    Finally, Keating's third affirmative defense pertaining to estoppel raises

11    largely the same factual and legal issues as Keating's misuse claim. Thus, Keating

12    was on adequate notice that Glidewell would move as to that affirmative defense as

13    well. Keating's argument to the contrary simply raises form over substance.

14    ## II. <u>CONCLUSION</u>

15    For the foregoing reasons, the Court should enter partial summary judgment

16    for Glidewell on Keating's Second Counterclaim for Unfair Competition, Third

17    Counterclaim for Misuse of Trademark, Third Affirmative Defense of estoppel,

18    Fourth Affirmative Defense of unclean hands, and Fifth Affirmative Defense of fair

19    use.

20    Dated: December 3, 2012          SNELL & WILMER L.L.P.

21

22

23    By: _____

24    Philip J. Graves
      Greer N. Shaw
25    Christopher B. Pinzon

26    Attorneys for Plaintiff
27    James R. Glidewell Dental Ceramics, Inc.
      dba GLIDEWELL LABORATORIES

28

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

Glidewell Reply re: MSJ re: Patent Misuse,
Unfair Competition, Unclean Hands, Fair Use, and Estoppel
CASE NO. SACV11-01309 DOC (ANx)

- 23 -

16222805.1

*Glidewell Laboratories v. Keating Dental Arts, Inc.*
**United States District Court, Central, Case No. SACV11-01309-DOC (ANx)**

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2012, I electronically filed the document described as **JAMES R. GLIDEWELL DENTAL CERAMICS, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT RE TRADEMARK MISUSE, UNFAIR COMPETITION, UNCLEAN HANDS, FAIR USE, AND ESTOPPEL** with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

| | |
|---|---|
| David G. Jankowski<br>Jeffrey L. Van Hoosear<br>Lynda J Zadra-Symes<br>Knobbe Martens Olson and Bear LLP<br>2040 Main Street, 14th Floor<br>Irvine, CA  92614 | **Attorneys for Defendant Keating Dental Arts, Inc.**<br>Tel:  (949) 760-0404<br>Fax: (949) 760-9502<br><br>Jeffrey.vanhoosear@kmob.com<br>David.jankowski@kmob.com<br>Lynda.zadra-symes@kmob.com<br>litigation@kmob.com |

Dated: December 3, 2012        SNELL & WILMER L.L.P.


By: *s/Philip J. Graves*
    Philip J. Graves
    Greer N. Shaw

    Attorneys for Plaintiff
    James R. Glidewell Dental Ceramics, Inc.
    dba GLIDEWELL LABORATORIES

16139994.1

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071