1  SNELL & WILMER L.L.P.
   Philip J. Graves (SBN 153441)
2  pgraves@swlaw.com
   Greer N. Shaw (SBN 197960)
3  gshaw@swlaw.com
   350 South Grand Avenue, Suite 2600
4  Two California Plaza
   Los Angeles, California 90071
5  Telephone: (213) 929-2500
   Facsimile:  (213) 929-2525
6
7  Attorneys for Plaintiff
   James R. Glidewell Dental Ceramics, Inc.
8  d/b/a Glidewell Laboratories

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  SOUTHERN DIVISION

12  JAMES R. GLIDEWELL DENTAL          Case No. SACV11-01309-DOC(ANx)
    CERAMICS, INC.,
13                                     **JAMES R. GLIDEWELL DENTAL
              Plaintiff,               CERAMICS, INC.'S REPLY IN
14                                     SUPPORT OF GLIDEWELL'S
    vs.                                MOTION FOR PARTIAL
15                                     SUMMARY JUDGMENT RE
    KEATING DENTAL ARTS, INC.,         INFRINGEMENT OF A
16                                     FEDERALLY REGISTERED MARK
              Defendant.               (FIRST CAUSE OF ACTION) AND
17                                     DISMISSAL OF DEFENDANT'S
                                       SECOND AFFIRMATIVE DEFENSE
18                                     AND FIRST COUNTERCLAIM**

19                                     Hearing
20  AND RELATED                        Date:  December 17, 2012
    COUNTERCLAIMS.                     Time:  8:30 a.m.
21                                     Ctrm:  9D, Hon. David O. Carter

22                                     Pre-Trial Conf.:   January 28, 2013
                                       Jury Trial:        February 26, 2013
23

24        **HIGHLY CONFIDENTIAL - FILED UNDER SEAL**

25  **(PURSUANT TO PROTECTIVE ORDER DATED JANUARY 30, 2012)**

26

27

28

1

# TABLE OF CONTENTS

2

                                                                                           Page

I.    INTRODUCTION ........................................................................... 1

II.   ARGUMENT .................................................................................. 1

     A.   The Validity of the BruxZir Mark ....................................... 1

     B.   Likelihood of Confusion ...................................................... 1

          1.   Strength of the BruxZir Mark ................................... 1

               a.   Keating's Attack on Glidewell's Evidence ..................... 1

               b.   Conceptual Strength .................................................... 5

               c.   Commercial Strength .................................................. 7

                    (i)    Keating Fails to Address Glidewell's Evidence of Commercial Strength ........................ 7

                    (ii)   Keating's New Naked Licensing Defense ............. 9

          2.   Proximity of the Goods ............................................. 11

          3.   Similarity of the Marks ............................................. 11

               a.   "KDZ" Does Not Render the Marks Dissimilar ............. 11

               b.   The Oval Does Not Render the Marks Dissimilar ......... 12

               c.   Keating's Remaining Arguments Also Fail ................... 14

          4.   Actual Confusion ...................................................... 15

               a.   The Fallon Declaration .............................................. 15

               b.   The 86 Keating Prescription Forms ............................ 17

               c.   Keating's "Policy" of Calling Dentists is Nothing but a Vehicle for Profiting on Initial Interest Confusion ................................................................. 19

               d.   Keating's "Policy" Prior to the Filing of the Lawsuit: Take Advantage of Actual Source Confusion ................................................................. 21

          5.   Marketing Channels .................................................. 22

          6.   Type of Goods and Degree of Care .......................... 23

          7.   Keating's Intent ......................................................... 24

          8.   Likelihood of Expansion of the Product Lines .......... 25

III.  CONCLUSION ........................................................................... 25

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

Page

## CASES

*3Com Corp. v. Realtek Semiconductor Corp.*
   C 03-2177 VRW, 2008 WL 783383 (N.D. Cal. Mar. 24, 2008)..........................3

*Am. Mensa, Ltd. v. Inpharmatica, Ltd.*
   WDQ-07-3283, 2008 U.S. Dist. LEXIS 99394, at *31
   (D. Md. Nov. 6, 2008) .......................................................................................15

*Anderson v. Liberty Lobby, Inc.*
   477 U.S. 242 (1986)........................................................................................2, 4

*B & B Hardware, Inc. v. Hargis Industries, Inc.*
   252 F.3d 1010 (8th Cir. 2001) ...........................................................................6

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*
   174 F.3d 1036 (9th Cir. 1999).....................................................................14, 19

*Cohn v. Petsmart, Inc.*
   281 F.3d 837 (9th Cir. 2002) ...........................................................................12

*Cyntegra, Inc. v. IDEXX Laboratories, Inc.*
   322 F. App'x 569 (9th Cir. 2009) .......................................................................3

*Donovan v. Crisotomo*
   689 F.2d 869 (9th Cir.1982) .............................................................................16

*E. & J. Gallo Winery v. Gallo Cattle Co.*
   967 F.2d 1280 (9th Cir. 1992)...........................................................................24

*Earthquake Sound Corp. v. Bumper Indus.*
   352 F.3d 1210 (9th Cir. 2003)...........................................................................15

*Echo Drain v. Newsted*
   307 F. Supp. 2d 1116.........................................................................................17

*Fancaster, Inc. v. Comcast Corp.*
   832 F. Supp. 2d 380 (D.N.J. 2011).....................................................................5

*Fuji Photo Film Co., Inc. v. Shinohara Shoji Kabushiki Kaisha and Graphic Mach., Inc.*
   754 F.2d 591 (5th Cir. 1985).......................................................................23, 24

*Garvey v. Kmart Corp.*
   C-11-02575-WHA, 2012 U.S. Dist. LEXIS 160006, at *3
   (N.D. Cal. Nov. 6, 2012) ..................................................................................3

*Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*
   523 F.2d 1331 (2d Cir. 1975) .....................................................................19, 20

1

**TABLE OF AUTHORITIES**

2

(continued)

Page

3   *GTFM, Inc. v. Solid Clothing, Inc.*
      215 F. Supp. 2d 273 (S.D.N.Y. 2002) ......................................................... 8

4

5   *Hendricks v. CBE Grp., Inc.*
      11-C-2783, 2012 U.S. Dist. LEXIS 49827, at *13 (N.D. Ill. Apr.
      10, 2012) ......................................................................................................... 16

6

7   *Hokto Kinoko Co. v. Concord Farms, Inc.*
      810 F. Supp. 2d 1013 (C.D. Cal. 2011) ...................................................... 10

8   *Hutchinson v. Essence Communications, Inc.*
      769 F. Supp. 541 (S.D.N.Y. 1991) ............................................................... 5

9

10  *Kenner Parker Toys, Inc. v. Rose Art Indus., Inc.*
      963 F.2d 350 (Fed Cir. 1992) ..................................................................... 15

11  *KOS Pharmaceuticals, Inc. v. Andrix Corp.*
      369 F.3d 700 (3d Cir. 2004) ................................................................. 15, 24

12

13  *Lahoti v. Vericheck, Inc.*
      636 F.3d 501 (9th Cir. 2011) ........................................................................ 6

14  *Metro Publ'g, Inc. v. Surfmet, Inc.*
      C-02-01833-CW, 2002 U.S. Dist. LEXIS 26232, at *27-28 (N.D.

15    Cal. July 3, 2002) ........................................................................................ 15

16  *Miyano Mach. USA, Inc. v. Miyanohitec Mach., Inc.*
      576 F. Supp. 2d 868 (N.D. Ill. 2008) ......................................................... 13

17

18  *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*
      269 F.3d 114 (2d Cir. 2001) .......................................................................... 5

19  *Norm Thompson Outfitters, Inc. v. General Motors Corp.*
      448 F.2d 1293 (9th Cir. 1971) .................................................................... 12

20

21  *Nuance Communications, Inc. v. ABBYY Software House*
      C 08-02912 JSW MEJ, 2012 WL 2838431 (N.D. Cal. July 10,
      2012) ................................................................................................................ 3

22

23  *Orr v. Bank of Am., NT & SA*
      285 F.3d 764 (9th Cir. 2002) ...................................................................... 18

24  *Roe v. Nevada*
      621 F. Supp. 2d 1039 (D. Nev. 2007) ....................................................... 3, 5

25

26  *Russell v. Daiichi-Sankyo, Inc.*
      CV 11-34-BLG-CSO, 2012 WL 1805038 (D. Mont. May 17, 2012).............. 3, 4

27  *Self-Insurance Ins. of Am., Inc. v. Software & Info. Indus. Ass'n*
      208 F. Supp. 2d 1058 (C.D. Cal. 2000) ...................................................... 13

28

1

## TABLE OF AUTHORITIES

2

(continued)

Page

3    *SG Servs. v. God's Girls, Inc.*
      CV-06-989-AHM, 2007 U.S. Dist. LEXIS 61970, at *16
4     (C.D. Cal. May 11, 2007) ....................................................................................... 13

5    *Smith v. Mack Trucks, Inc.*
      505 F.2d 1248 (9th Cir. 1974) ................................................................................ 4
6
     *Transgo, Inc. v. Ajac Transmission Parts Corp.*
7     768 F.2d 1001 (9th Cir. 1985) ........................................................................ 10, 11

8    *UGG Holdings, Inc. v. Severn*
      CV04-1137-JFW FMOX, 2005 WL 5887187 (C.D. Cal.  Feb.  23,
9     2005) ................................................................................................................ 5

10   *Vail Assoc., Inc. v. Vend-Tel-Co., Ltd.*
      516 F.3d 853 , (10th Cir. 2008) ...................................................................... 3, 6
11
     *Volkswagen Astiengesellschaft v. Uptown Motors*
12    91 CIV. 3447(DLC), 1995 WL 605605 (S.D.N.Y.  May 11, 1995) .................... 5

13   *Walter v. Mattel, Inc.*
      210 F.3d 1108 (9th Cir. 2000) .......................................................................... 12
14

15   **STATUTES**

     15 U.S.C. § 1055 .................................................................................................. 18
16
     **RULES**
17
     Fed. R. Evid. 602 .................................................................................................. 18
18

19

20

21

22

23

24

25

26

27

28

# I. INTRODUCTION

In its moving papers, plaintiff James R. Glidewell Dental Ceramics, Inc. ("Glidewell") showed that all of the applicable Sleekcraft factors favor a finding that confusion is likely. Keating Dental Arts, Inc.'s ("Keating's") opposition papers highlight the lack of any evidence sufficient to create a genuine issue regarding the facts supporting summary judgment in favor of Glidewell. Keating's primary focus is on attempting to exclude the evidence proffered by Glidewell; its various attacks on the merits of this case are in most respects half-hearted at best. Indeed, Keating admits that two of the factors – proximity of the goods and of marketing channels – favor Glidewell. Glidewell shows below that its evidence is admissible and that the overwhelming evidence of conceptual and commercial strength (most of which is not seriously contested by Keating), similarity of the marks and actual confusion – including evidence of both initial interest confusion and point of sale confusion – compel a ruling for Glidewell.

# II. ARGUMENT

## A.   The Validity of the BruxZir Mark

Keating asserts that the BruxZir mark is invalid. The mark is valid, for the reasons set forth in Glidewell's Partial Summary Judgment Motion as to Keating's Invalidity Defense and Counterclaim ("Validity Motion") (Dkt. #82) as well as its Opposition to Keating's Motion for Summary Judgment Cancelling Glidewell's Trademark Registration ("Opposition to Keating's Cancellation Motion") (Dkt. #114), both of which are incorporated herein by reference.

## B.   Likelihood of Confusion

### 1.   Strength of the BruxZir Mark

#### a.   Keating's Attack on Glidewell's Evidence

Keating devotes half its brief to attacking Glidewell's showing that the BruxZir mark is strong. Rather than address the merits, Keating focuses on attempting to exclude Glidewell's evidence. Keating's complaints are meritless.

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1   As an initial matter, it bears noting some of the evidence to which Keating
2   does not object.  Keating does not object to most of the declaration of James Shuck,
3   Glidewell's Vice President of Sales and Marketing, which contains much of the
4   evidence concerning the commercial strength of Glidewell's BruxZir mark.
5   Keating does not object to Exhibit 76, which shows that Keating presents its KDZ
6   Bruxer mark in the marketplace without some of the distinguishing characteristics –
7   such as the oval – on which Keating relies to attempt to defeat infringement.
8   Keating does not object to Exhibit 85.



12   Keating does not object to Exhibit 15.

14   And Keating does not object to Exhibit 84.

16   So, even if the Court were to sustain Keating's
17   objections (which it should not), there would still be sufficient evidence in the
18   record to sustain summary judgment in Glidewell's favor.
19   First, Keating contends that the testimony of Dr. Michael DiTolla and Rudy
20   Ramirez, Glidewell's General Manager of Fixed Prosthodontics, is not probative of
21   the strength of the BruxZir mark because their testimony is "not objective."  This is
22   not a basis on which to exclude evidence. *Anderson v. Liberty Lobby, Inc.*, 477
23   U.S. 242, 249 (1986).  Keating also asserts that their testimony relies on
24   inadmissible hearsay.  These objections are meritless, for the reasons set forth in
25   Glidewell's Responses to Keating's Evidentiary Objections, filed concurrently
26   herewith, and in any event do not cover some of the most probative portions of
27   these declarations, including Dr. DiTolla's opinion that "BruxZir" is suggestive
28   (Dkt. #90-1 [DiTolla Decl. ¶14]).  Finally, Keating complains about Dr. DiTolla's

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1   statements concerning his discussions with other dentists, on the ground that these

2   discussions do not constitute properly-constructed survey evidence. That is correct,

3   but immaterial, as Glidewell does not offer Dr. DiTolla's discussions with dentists

4   as survey evidence; while Keating's complaint may go to the weight of Dr.

5   DiTolla's opinions based on those discussions, it does not affect its admissibility.

6   *Vail Assoc., Inc. v. Vend-Tel-Co., Ltd.*, 516 F.3d 853, 861-63, (10th Cir. 2008).

7        Second, Keating asserts that the third party dentists whose declarations were

8   submitted by Glidewell were not timely disclosed. This is false. The Scheduling

9   Order required that discovery be completed by October 29, 2012. Glidewell

10  disclosed all of these dentists as potential witnesses in its First Amended

11  Disclosures served on October 29, 2012. (Dkt. #125-3 [Deft's Ex. 140]) They

12  were therefore timely disclosed. *Roe v. Nevada*, 621 F. Supp. 2d 1039, 1060 (D.

13  Nev. 2007) (rejecting defendant's argument that plaintiff's disclosure of various

14  fact witnesses on last day of discovery was untimely); *Nuance Communications,*

15  *Inc. v. ABBYY Software House*, C 08-02912 JSW MEJ, 2012 WL 2838431 (N.D.

16  Cal. July 10, 2012); *3Com Corp. v. Realtek Semiconductor Corp.*, C 03-2177

17  VRW, 2008 WL 783383 (N.D. Cal. Mar. 24, 2008); *Cyntegra, Inc. v. Idexx*

18  *Laboratories, Inc.*, CV06-4170PSG(CTX), 2007 WL 5193736 (C.D. Cal. Sept. 21,

19  2007) *aff'd, Cyntegra, Inc. v. IDEXX Laboratories, Inc.*, 322 F. App'x 569 (9th Cir.

20  2009); *Russell v. Daiichi-Sankyo, Inc.*, CV 11-34-BLG-CSO, 2012 WL 1805038

21  (D. Mont. May 17, 2012). Keating was not prejudiced by the timing of these

22  disclosures: Glidewell offered to forego any objection based on the passing of the

23  discovery cut-off should Keating seek to depose these witnesses, but Keating

24  declined to do so. (Shaw Decl., ¶ 8, Ex. 115) This offer, incidentally, remains

25  open. Keating, therefore, had (and has) the opportunity to cure any prejudice; it's

26  refusal to take it does not justify exclusion of these witnesses. *Roe*, 621 F. Supp. 2d

27  at 1060 (D. Nev. 2007); *Garvey v. Kmart Corp.*, C-11-02575-WHA, 2012 U.S.

28  Dist. LEXIS 160006, at *3 (N.D. Cal. Nov. 6, 2012).

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

Snell & Wilmer

L.L.P.

LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1    Keating also asserts a grab-bag of objections that amount to nothing.

2    Keating asks that the Court "not rely on" the declarations of the third-party dentists

3    on the ground that they are Glidewell customers, and are testifying about

4    experiences in the past.  These are not grounds to ignore admissible evidence on

5    summary judgment. *Anderson*, 477 U.S. at 249.  Keating also asserts that these

6    declarations are not probative of the understanding of dentists generally due to a

7    "selection bias."  However, Keating fails to proffer any evidence or argument by

8    which one could any selection bias (other than, one supposes, the act of counsel in

9    selecting declarations to submit to the Court) exists with respect to these dentists, or

10   that if it did such a bias would so undermine the probative value of their testimony

11   as applied to the community of dentists of which they are a part as to require

12   exclusion.  Conclusory allegations that a party's evidence is not probative is

13   insufficient to avoid summary judgment, *Smith v. Mack Trucks, Inc.*, 505 F.2d

14   1248, 1249 (9th Cir. 1974), yet that is all that Keating offers.[1]

15   Third, Keating asserts Dr. Goldstein, Dr. DiTolla and certain portions of

16   Prof. Franklyn's declarations should be disregarded because the expert reports of

17   these witnesses were not disclosed as required by the Scheduling Order.  Once

18   again, the premise is false; the Scheduling Order contains no such schedule. (Dkt.

19   #15)  The only limitation on the disclosure of witnesses and expert reports was that

20   contained in the Scheduling Order:  that all discovery, including expert discovery,

21   must be completed by the discovery cut-off, October 29, 2012.  (*Id.*, p. 2:4-6)  So,

22   Glidewell's amended witness disclosures and expert reports, served on October 29,

23   were timely under the Court's Scheduling Order.  The declarations proffered by

24   these witnesses are not, therefore, subject to exclusion. *E.g.*, *Russell v. Daiichi-*

25   *Sankyo, Inc.,* CV 11-34-BLG-CSO, 2012 WL 1805038 (D. Mont. May 17, 2012)

26   (holding disclosure of fact witness made on day of discovery cut-off to be timely).

27

28   [1] It bears noting that this argument cuts both ways: if one side's third party dentist declarations suffer from "selection bias," then so do the other's.

1    Moreover, if Keating were in fact prejudiced by the disclosure of these witnesses on
2    the last day of discovery, the proper remedy would be to provide Keating an
3    opportunity to depose them after the close of discovery. *E.g.*, *Roe v. Nevada*, 621
4    F. Supp. 2d 1039, 1060 (D. Nev. 2007). And that is exactly what Glidewell did:
5    Glidewell informed Keating that it would make the witnesses under its control
6    available for deposition, and would not oppose any effort by Keating to depose
7    those witnesses not under Glidewell's control (i.e., the dentist fact witnesses),
8    despite the fact that discovery had closed. As with the dentist witnesses, Keating
9    declined the offer, which remains open should Keating change its mind. It cannot
10   now be heard to complain of any resulting prejudice.

11          Finally, Keating contends that the opinions expressed by Glidewell's experts
12   are not probative because they fail to follow the standards required for admissible
13   survey data. This argument fails because they are perfectly entitled to rely on their
14   general expertise and discussions with dentists and other third parties, *Nora*
15   *Beverages, Inc. v. Perrier Group of Am., Inc.*, 269 F.3d 114, 123-24 (2d Cir. 2001);
16   *Hutchinson v. Essence Communications*, Inc., 769 F. Supp. 541, 554 (S.D.N.Y.
17   1991); *Fancaster, Inc. v. Comcast Corp.*, 832 F. Supp. 2d 380, 419-20 (D.N.J.
18   2011); *UGG Holdings, Inc. v. Severn*, CV04-1137-JFW FMOX, 2005 WL
19   5887187, at *4 (C.D. Cal. Feb. 23, 2005); *Volkswagen Astiengesellschaft v.*
20   *Uptown Motors*, 91 CIV. 3447(DLC), 1995 WL 605605, at *2 (S.D.N.Y. May 11,
21   1995), and because Glidewell does not offer them as survey experts.

22                    b.    **Conceptual Strength**

23          Keating asserts that Glidewell proffers no admissible evidence as to whether
24   dentists would find the mark suggestive. This is incorrect. Glidewell proffered the
25   declaration of Dr. Goldstein – a dentist – who opined as to how the dental
26   community would understand the BruxZir mark. (Dkt. #90-1 [Goldstein Decl.
27   ¶17]) In addition, Glidwell proffered the declaration of Dr. DiTolla – a dentist –
28   who opined on the matter as well. (Dkt. #90-1 [DiTolla Decl. ¶14]) In any event,

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

Keating's complaint would be trivial even if true, since Glidewell also proffered the declaration testimony of Prof. Franklyn concerning the conceptual strength of the mark (Dkt. #90-1 [Franklyn Decl. ¶42]) and of Shuck and Ramirez, both of whom testified to facts supporting the conclusion that the mark is suggestive. (Dkt. #90-1 [Shuck Decl. ¶9; Ramirez Decl. ¶4]) Keating's assertion that none of these witnesses but Dr. Goldstein are competent to testify regarding facts pertinent to the conceptual strength of the mark is incorrect. Prof. Franklyn is an expert in trademark law and so qualified to opine regarding the conceptual strength of the BruxZir mark. *Vail Assoc., Inc. v. Vend-Tel-Co., Ltd.*, 516 F.3d 853, 861-63, (10th Cir. 2008); *B & B Hardware, Inc. v. Hargis Industries, Inc.*, 252 F.3d 1010, 1012 (8th Cir. 2001). Dr. DiTolla is a dentist and so even under Keating's test he can offer competent evidence. And Shuck and Ramirez testify to facts (not opinions) as people who are well acquainted through years of experience in understanding dental terminology. This is more than sufficient to render them competent.

Keating also contends that Dr. Goldstein's testimony suggests that multi-stage reasoning is not required for dentists to leap from BruxZir to bruxers. That is not an accurate reading of Dr. Goldstein's declaration. (Dkt. #90-1 [Goldstein Decl. ¶17]) In any event, it is not a relevant issue, because the pertinent inquiry is not whether multi-stage reasoning or any amount of imagination is required to travel the distance from "BruxZir" to a potential user, but rather from "BruxZir" to the <u>product</u>, i.e., a full contour zirconia crown indicated for bruxers, among others. The evidence shows that it is, and Keating proffers nothing to the contrary. Keating cites to four of its dentist declarations for the point that the BruxZir mark is not suggestive. However, all of these declarations support Glidewell's position, since they acknowledge that "Brux" suggests a person who suffers from bruxism and "Zir" suggests zirconia. Those facts alone, even putting aside the existence of the registration creating a presumption to the same effect, compel the conclusion that the mark is suggestive. *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 506 (9th Cir. 2011).

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

c.   **Commercial Strength**

(i)   **Keating Fails to Address Glidewell's Evidence of Commercial Strength**

It is telling that in over six pages of text, Keating fails to meaningfully address the substance of Glidewell's evidence of commercial strength. Indeed, Keating admits most of the facts demonstrating the commercial strength of the BruxZir mark, including the amount of money that Glidewell has spent to market goods under the mark (SUF 27-29), the scope and effectiveness of Glidewell's Internet and direct mail advertising under the mark (SUF 31-33), the scope of Glidewell's advertising in dental industry publications and at trade shows (SUF 35-38), Glidewell's recognition in the industry through numerous awards recognizing its BruxZir-brand products (SUF 43), and the volume of sales of BruxZir-brand product over the past 3 ½ years (SUF 44-46). This is compelling evidence of commercial strength, as the *Century 21* and *Conversive* cases hold.

Instead of evidence, Keating offers bromides and distractions. While it is true that marketing campaigns are not always successful, the evidence shows that Glidewell's was – and Keating proffers absolutely no evidence to dispute that fact. Instead, Keating chides Glidewell for failing to produce survey evidence, when it was Glidewell that sought a two month continuance of the discovery cutoff for that very reason and Keating that opposed it. Keating's suggestion that the Court draw an adverse inference here is too clever by half; Glidewell submits that if the Court is to draw any inference under the circumstances of this case, it should run against Keating, which took advantage of the superior resources of its counsel when matched against Glidewell's prior counsel and now seems desperate to avoid having to litigate this case on the merits.

Keating also asserts that dental labs typically offer their customers multiple options when selecting a crown, then points to a partial image of a Glidewell prescription form that offers 23 options. The point of this presentation is not

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1    entirely clear.  Keating observes that Glidewell does not use an ® symbol next to

2    BruxZir; since there is no legal requirement that Glidewell do so, *GTFM, Inc. v.*

3    *Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 306 (S.D.N.Y. 2002), and since

4    Glidewell appends the symbol to its BruxZir mark in its actual advertising (as

5    opposed to its prescription forms), this observation leads nowhere.  It certainly does

6    not suggest that the mark is generic; indeed, at least one of the other "Zirconia

7    Restorations" offered on this form is a registered trademark, (Declaration of Philip

8    J. Graves, ¶ 2, Ex. 118) and Glidewell did not put an ® next to it either.  One of

9    these crowns is named "Lava;" does Keating believe that Glidewell is offering to

10   sell crowns made of lava?  That is the conclusion to which Keating's logic leads.

11         Keating also contends that the roughly 180 Authorized BruxZir Labs

12   promote BruxZir crowns as a type of crown rather than a source identifier.  That

13   would be news to these dental labs, the vast majority of which specifically identify

14   "BruxZir" on their websites as a registered trademark.  This is clearly documented

15   in Keating's own Exhibits 136, to which Keating cites in support of this point; one

16   wonders whether Keating even read its own evidence. (Dkt. #93-72 [Deft's

17   Ex. 136, at, *e.g.*, KDA2862-63, 2865-66, 2873-74, 2879, 2883-84, 2890, 2918,

18   2922-23, 2925-26, 2928-29, 2930, 2933-34]) Keating points to 15 dental lab

19   prescription forms that list "BruxZir" as a crown that may be purchased, and

20   concludes from this that these labs must be using the term to refer to a type of

21   product.  However, this makes no sense; does the fact that restaurants list Coke and

22   Pepsi on their menus without an ® next to them reflect generic use?  Of course not,

23   and no more so here.  While Glidewell could undoubtedly obtain more should the

24   Court desire, a sampling of declarations from four of the Authorized BruxZir Labs

25   to which Keating points in support of its genericness argument demonstrates that

26   the references to BruxZir on the prescription forms are to a particular brand of

27   crown, not to a general type of crown. (Declaration of Jacob Trachsel ("Trachsel

28   Decl."), ¶ 2; Declaration of Glen Yamamoto ("Yamamoto Decl."), ¶ 2; Declaration

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

Glidewell's Reply in Support of Motion for Partial Summary
Judgment re Infringement
CASE NO. SACV11-01309 DOC (ANx)

- 8 -

1   of Scott Bigler ("Bigler Decl."), ¶ 2; Declaration of Kareen Chamberlain

2   ("Chamberlain Decl."), ¶ 2)  Thus, there is simply no basis to infer that BruxZir is

3   used in these forms in a generic sense.  Finally, Keating represents that these dental

4   labs generally do not use an ® next to the BruxZir mark.  Here again, false.  (Dkt.

5   #93-72 [Deft's Ex. 136]; Trachsel Decl. ¶3; Yamamoto Decl. ¶3; Chaimberlain

6   Decl. ¶3)

7       Finally, Keating's reliance on the Eggleston report and the declarations of its

8   thirteen dentists is misplaced for the reasons addressed in Glidewell's co-pending

9   Validity Motion and Opposition to Keating's Cancellation Motion.

10              **(ii)    Keating's New Naked Licensing Defense**

11      Keating next asserts that Glidewell has abandoned the BruxZir mark through

12  "naked licensing," claiming that Glidewell fails to control the quality of the BruxZir

13  brand crowns sold by the Authorized BruxZir Labs.  This is false; Glidewell invests

14  considerable resources into ensuring the quality of the BruxZir brand crowns sold

15  by the authorized labs.  Glidewell imposes a rigorous certification process on any

16  lab that seeks to become an Authorized BruxZir Lab, which includes (1) ensuring

17  that the lab has the proper equipment to prepare BruxZir crowns and bridges as

18  required by Glidewell's Instructions for Use ("IFUs"), (2) training and equipping

19  lab personnel to make BruxZir crowns and bridges that are of the same quality as

20  those made by Glidewell, using the BruxZir-brand zirconia milling blanks sold by

21  Glidewell, (3) sending the IFUs and a test specimen made from a BruxZir-brand

22  zirconia milling blank to the lab and evaluating the specimen after it is processed

23  and returned by the lab, (4) working with any lab that does not pass the validation

24  process to remedy any technical issues, and (5) passing a three-month probation

25  period.  (Dkt. #116-1 [Supp. Carden Decl. ¶¶3-6; Supp. Bartolo Decl. ¶¶4-5])

26      Following certification, the relationship between Glidewell and its

27  Authorized BruxZir Labs remains close.  Current IFUs are routinely distributed to

28  Authorized BruxZir Labs which each milling blank order and by email when

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1   updated. Glidewell also provides in-person training to its Authorized BruxZir Labs
2   by appointment and at BruxZir Summits held at Glidewell, and is in constant
3   contact with the labs through its technical support and Glidewell Direct personnel
4   to respond to any technical issues on a day to day basis. Glidewell oversees the
5   Authorized BruxZir Labs to ensure that they are purchasing BruxZir milling blanks
6   and coloring kits; a pattern of consistent orders provides assurance that the labs are
7   using genuine BruxZir materials to make their BruxZir brand product, which
8   largely ensures that the end-product will have the strength, hardness and aesthetic
9   quality that sets BruxZir brand crowns and bridges apart from the competition. In
10  addition, Glidewell technical support is available to any dentist that purchased a
11  BruxZir crown or bridge from an Authorized BruxZir Lab; this provides a further
12  feedback mechanism for quality assurance. (Dkt. #116-1 [Supp. Carden Decl. ¶¶7-
13  10; Supp. Bartolo Decl. ¶¶6-19]) In sum, Glidewell provides extensive training,
14  support, and instructions to the Authorized BruxZir Labs to ensure that they are
15  making BruxZir brand crowns and bridges that are of equal quality to those made
16  by Glidewell. (Dkt. #116-1 [Supp. Carden Decl. ¶11; Supp. Bartolo Decl. ¶20])

17       This is more than sufficient to avoid invalidation of Glidewell's BruxZir
18  trademark. Keating bears the burden of proving its naked licensing allegation, and
19  the standard of proof is "stringent." *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810
20  F. Supp. 2d 1013, 1040 (C.D. Cal. 2011). Keating cannot do so by pointing to the
21  absence of written license agreements, because such are not required. *Transgo, Inc.*
22  *v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1017-18 (9th Cir. 1985) (no
23  naked license despite lack of written license agreement). With respect to
24  Glidewell's actual quality control oversight, Keating's evidence is tissue-thin – for
25  example, Robin Bartolo explained in his deposition that the Authorized Labs do not
26  have to maintain a particular "level of quality" because if they use the IFUs and the
27  product supplied by Glidewell "[t]hey should get similar results." (Dkt. #91-5
28  [Def't's Ex. 5, p. 64:22 to 65:4]) In other words, quality control is ensured by the

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1    labs' use of the BruxZir brand zirconia milling blocks and coloring liquid pursuant
2    to the IFUs provided and continuously updated by Glidewell. Of course, here there
3    is even more. Glidewell's evidence that it manufactures the zirconia milling blanks
4    and coloring liquid that are the key inputs to the fabrication process, that it provides
5    ongoing updating of the IFUs and training of lab personnel, and that it obtains
6    independent feedback concerning poor-quality BruxZir product, forecloses any
7    argument that it has abandoned the BruxZir mark through naked licensing. *E.g.*,
8    *Transgo*, 768 F.2d at 1017-18.

9        **2.    Proximity of the Goods**

10       Keating admits that its KDZ Bruxer crowns compete directly with those sold
11   by Glidewell under the BruxZir mark. (Dkt. #112-5 [SGI 53]) Accordingly, it is
12   undisputed that this factor favors Glidewell.

13       **3.    Similarity of the Marks**

14           **a.    "KDZ" Does Not Render the Marks Dissimilar**

15       With respect to similarity of the marks, Keating contends that its KDZ
16   "house mark" provides an "express indicator of source." However, Keating
17   proffers vanishingly little evidence to support this assertion. Although Keating
18   submitted thirteen dentist declarations, it cites to only two of them – Drs. Campbell
19   and Stephens – in support of this "fact." (Dkt. #112-5 [SGI 65]) However, Dr.
20   Campbell states that when ordering a different Keating product in 2009 (two years
21   before Keating began using the KDZ Bruxer mark), he understood KDZ to refer to
22   "Keating Dental Zirconia." (Dkt. #99 [Campbell Decl. ¶6]) That leaves Dr.
23   Stephens as Keating's sole support – yet he testifies only as to his own
24   understanding, not as to the understanding of dentists generally. Moreover,
25   although Keating attaches a handful of fee schedules and brochures to the
26   declaration of Shaun Keating (Dkt. #95), the only evidence of actual distribution is
27   that some of these items were distributed to Keating's existing customers. (Dkt.
28   #95, ¶¶4-5, 7-9) Keating proffers no evidence that it has ever engaged in any

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1    promotion of its purported "KDZ" house brand to the dental community outside its

2    own customer base.  There is, therefore, no basis on which to conclude that these

3    three letters serve a source-identifying function in the dental community at large.

4        Keating cites three cases in support of its position, none of which is on point.

5    In *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 841-42 (9th Cir. 2002), the court held that

6    consumers would encounter the marks differently in the marketplace, because <u>both</u>

7    parties used the mark merely as a following tagline to their distinctive business

8    names, which presented the "dominant commercial identity."  This is not the case

9    with BruxZir and KDZ Bruxer because these marks are not presented as mere

10   taglines to company names.  In *Walter v. Mattel, Inc.*, 210 F.3d 1108, 1111 (9th

11   Cir. 2000), the court determined that the Walter's "Pearl Beach" mark was

12   dissimilar to Mattel's "Pearl Beach Barbie," because the Walter's mark was in plain

13   font sometimes accompanied by a monochromatic seashell, whereas Mattel's "Pearl

14   Beach Barbie" was in wavy text with a bright pink clamshell and always

15   incorporated a reference to Barbie, which was the dominant part of the mark.  *Id.*

16   Here, by contrast, the KDZ Bruxer and BruxZir marks are highly textually similar

17   as presented in the marketplace, the BruxZir mark is not accompanied by a

18   distinguishing logo or design, and Keating has presented no evidence that "KDZ"

19   has the source-identifying power that "Barbie" did in the *Walter* case.  Finally,

20   *Norm Thompson Outfitters, Inc. v. General Motors Corp.*, 448 F.2d 1293 (9th Cir.

21   1971), did not even involve the Lanham Act, and the case involved a slogan

22   ("Escape from the Ordinary") that was held to be descriptive and without secondary

23   meaning.  In all of these cases most or all of the other applicable factors disfavored

24   confusion – indeed, in *Norm Thompson* the Ninth Circuit characterized the goods as

25   "so vastly different that is difficult to regard confusion as possible."  *Id.* at 1298.

26   They provide no guidance here.

27        **b.    The Oval Does Not Render the Marks Dissimilar**

28        Keating also asserts that the oval around "KDZ" saves it.  While it is true that

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

Glidewell's Reply in Support of Motion for Partial Summary
Judgment re Infringement
CASE NO. SACV11-01309 DOC (ANx)

- 12 -

1  Glidewell's BruxZir mark does not include an oval, the mere use of a distinguishing
2  design or logo does not necessarily suffice to foreclose infringement; if that were
3  so, then any junior user could appropriate the goodwill of another's mark by simply
4  placing an oval, square or circle around it. *Miyano Mach. USA, Inc. v. Miyanohitec*
5  *Mach., Inc.*, 576 F. Supp. 2d 868 (N.D. Ill. 2008). Keating cites to *Self-Insurance*
6  *Ins. of Am., Inc. v. Software & Info. Indus. Ass'n*, 208 F. Supp. 2d 1058 (C.D. Cal.
7  2000), in support of its "distinctive oval" argument. However, in *Self-Insurance*
8  the plaintiff's mark was a composite consisting of "SIIA" and a large eagle that was
9  the dominant part of the mark; the court held that "SIIA" was a descriptive
10 acronym, and the plaintiff acknowledged that it had no rights in "SIIA" without an
11 accompanying eagle design. The defendant's mark consisted of "SIIA" and a
12 circle, with "Software and Information Industry Association" spelled out
13 underneath. Contrary to Keating's parenthetical, the court did not focus on the
14 "SIIA" component of these marks, but rather on everything but the "SIIA"
15 component. *Id.* at 1071. The facts here compel a different result: Glidewell did not
16 have to rely on some design element in order to obtain a registration for its BruxZir
17 mark and does not submerge "BruxZir" within a composite design-based mark, and
18 Keating does not spell out its company name as part of its mark.

19     In *SG Servs. v. God's Girls, Inc.*, CV-06-989-AHM, 2007 U.S. Dist. LEXIS
20 61970, at *16 (C.D. Cal. May 11, 2007), the district court determined that the
21 plaintiff's mark – a logo consisting of a drawing of a woman's head with "SG"
22 written underneath in stylized font – used to brand the plaintiff's "alterna-porn"
23 website was visually dissimilar to the defendant's mark – "GG" with no drawing
24 and with the "G's" reversed into mirror images of one another. *Id.* at *16. Here,
25 Keating's oval lacks the visual impact of an image of a woman's head – a human
26 visage is a unique image in its own right and calculated to draw the eye,
27 particularly, one would think, in the context of a website dedicated to pornography
28 – and the fonts used in the KDZ Bruxer and BruxZir marks are largely identical. In

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1  addition, the balance of the *Sleekcraft* factors favored the defendant, whereas here

2  they favor Glidewell. *SG Services* is not on point.

### c.   Keating's Remaining Arguments Also Fail

4  Keating also contends that the likelihood of confusion is reduced because

5  Keating is using a descriptive word – Bruxer. Keating here appears to be advancing

6  a version of its fair use argument, which is addressed in Glidewell's Motion for

7  Partial Summary Judgment re Misuse (Dkt. #79-1) and the reply in support of that

8  motion filed concurrently with this brief. The problem here is that "bruxer" does

9  not describe a zirconia crown, but rather a group of potential patients (among

10 several others) for whom the crown may be indicated, as explained in Glidewell's

11 Validity Motion and Opposition to Keating's Cancellation Motion. The word is

12 therefore not descriptive with respect to crowns and bridges, which are the goods at

13 issue in this suit. Neither Glidewell nor Keating sells people who suffer from

14 bruxism; they sell dental crowns and bridges. For the same reason, it is simply

15 irrelevant that some dental labs describe zirconia crowns as a good choice for

16 bruxers, as the term "bruxers" here is not being used to describe the goods (the

17 crowns) but rather a group of people who might use the crowns. This is similar to

18 the *Brookfield* case, in which the Ninth Circuit held that the mark MOVIE BUFF –

19 which described the group of people who would be likely to use the entertainment

20 industry database software offered under the mark – was suggestive, and not

21 descriptive, because it did "not describe either the software product or its purpose."

22 *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d

23 1036, 1058 (9th Cir. 1999).

24 Keating also observes that it disclaimed the work "Bruxer" in its application

25 to register the KDZ Bruxer mark. The relevance of this observation is elusive.

26 While a disclaimer by the owner of an asserted mark may indicate that the

27 disclaimed portion is weak, there is no authority (and Keating cites none)

28 suggesting that a disclaimer by the accused infringer has the same effect.

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1   Keating also chides Glidewell for only citing two cases involving marks that

2   share only a suffix.  The following cases, among others that Glidewell could cite,

3   should suffice to carry the point: *Earthquake Sound Corp. v. Bumper Indus.*, 352

4   F.3d 1210, 1217-18 (9th Cir. 2003) (EARTHQUAKE and CARQUAKE

5   confusingly similar); *KOS Pharmaceuticals, Inc. v. Andrix Corp.*, 369 F.3d 700,

6   714-715 (3d Cir. 2004) (ADVICOR and ALTOCOR confusingly similar); *Kenner*

7   *Parker Toys, Inc. v. Rose Art Indus., Inc.*, 963 F.2d 350, 354-55 (Fed Cir. 1992)

8   (PLAY-DOH and FUN DOUGH confusingly similar); *Metro Publ'g, Inc. v.*

9   *Surfmet, Inc.*, C-02-01833-CW, 2002 U.S. Dist. LEXIS 26232, at *27-28 (N.D. Cal.

10   July 3, 2002) (METRO and SURFMETRO confusingly similar); *Am. Mensa, Ltd. v.*

11   *Inpharmatica, Ltd.*, WDQ-07-3283, 2008 U.S. Dist. LEXIS 99394, at *31 (D. Md.

12   Nov. 6, 2008) ("Admensa" and MENSA confusingly similar).

13   **4.   Actual Confusion**

14   **a.   The Fallon Declaration**

15   First, Keating asserts that the Court should exclude the declaration of Nicole

16   Fallon, because it purportedly contradicts Glidewell's interrogatory responses.



24   (Dkt. #90-1 [Fallon Decl. ¶5])

25   Keating contends that this declaration represents a "new" presentation of

26   Fallon.  However, upon examination the "contradiction" collapses ▮ ▮ ▮▮▮

27   ▮▮▮▮▮▮ ▮▮▮▮ ▮▮▮ In all material respects, Fallon's

28   declaration is perfectly consistent with Glidewell's prior interrogatory responses.

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500



1
2
3 Keating cites no authority for the
4 proposition that a party is precluded from proffering evidence that provides details
5 lacking in its prior interrogatory responses; if that were the rule, the interrogatory
6 process would become unworkable. Absent violation of a court order or an actual
7 material contradiction, courts routinely permit parties to supplement pre-trial
8 disclosures with additional detail in declarations submitted in connection with
9 summary judgment briefing. *Donovan v. Crisotomo,* 689 F.2d 869, 875 (9th
10 Cir.1982); *Hendricks v. CBE Grp., Inc.,* 11-C-2783, 2012 U.S. Dist. LEXIS 49827,
11 at *13 (N.D. Ill. Apr. 10, 2012) (holding declarant's deposition admissible even
12 though it differed from a response in a previous interrogatory). There is no basis to
13 exclude either the Fallon declaration or Exhibits 1-2.
14 Keating also complains that it was not provided an opportunity to examine
15 Fallon.



20 This is not a ground to exclude Fallon's declaration.
21 Turning to the merits, Keating contends that the

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

*Echo Drain v. Newsted*, 307 F. Supp. 2d 1116, 1126–27 (C.D. Cal. 2003), is not on point because it involved letters from real friends and because nothing suggested that members of the public would actually be confused. Here, that is exactly the danger that Keating's KDZ Bruxer mark creates, a danger heightened by the fact that Glidewell's BruxZir-brand crowns are sold not only by Glidewell but also by a network of 180 authorized third party dental labs – <u>dental labs just like Keating</u>.

**b.   <u>The 86 Keating Prescription Forms</u>**

In its moving papers,

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500



the

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

However, even were the Brandon declaration admissible on this point, that would not end the matter.  Even were it true that these dentists intended to order a zirconia crown from Keating, this proves little.  The owner of a mark may properly authorize third parties to sell products under the mark; indeed, when it does so the sales of those products inure to the benefit of the owner of the mark.  15 U.S.C. § 1055.  Here, exactly such a structure is implemented through the network of approximately 180 Authorized BruxZir Labs, which both compete with Glidewell (by selling competitors' and sometimes their own products) and sell BruxZir-brand crowns that they make according to Glidewell's specifications by using the zirconia milling blanks and coloring liquid supplied by Glidewell.  Because of this distribution structure, it would not be at all unusual for a dentist to order a BruxZir-

1    brand crown from a dental lab other than Glidewell. 

2

3

4    The BruxZir mark need not be associated in a

5    dentist's mind with Glidewell or any other particular dental lab in order for it to

6    serve as a sigil of quality and therefore to drive customers to knowingly purchase

7    Keating's crowns under the confusingly similar KDZ Bruxer mark. *Grotrian,*

8    *Helfferich, Schulz, Th. Steinweg Nachf. V. Steinway & Sons*, 523 F.2d 1331, 1341-

9    42 (2d Cir. 1975).

10                    **c.    Keating's "Policy" of Calling Dentists is Nothing but a**

11                    **Vehicle for Profiting on Initial Interest Confusion**



12

13

14

15

16

17

18    The Ninth Circuit recognizes that a party's trademark may be wrongfully

19    appropriated by another to generate "initial interest confusion," in which the senior

20    user's mark is appropriated by a junior user to generate initial interest or credibility

21    among the consuming public, even if consumers are likely to realize that they are

22    dealing with the junior user rather than the senior when the actual sale is made.

23    *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F3d

24    1036, 1057, 1061-65 (9th Cir. 1999). The doctrine has been applied in many cases

25    both in the online context (as in Brookfield) and the bricks and mortar context. *Id.*

26    at 1063-64 (collecting cases). The progenitor of this line of authority, the Second

27    Circuit's opinion in *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway*

28    *& Sons*, 523 F.2d 1331, 1341–42 (2d Cir. 1975), involved a piano company that

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1    sold its goods under the "Grotrian-Steinweg" mark.  The Second Circuit held that

2    actual or potential confusion at the time of purchase need not be shown, as the

3    initial credibility garnered by the confusingly similar junior mark may suffice for

4    infringement:

> The issue here is not the possibility that a purchaser would buy a Grotrian–
> Steinweg thinking it was actually a Steinway or that Grotrian had some
> connection with Steinway and Sons.  The harm to Steinway, rather, is the
> likelihood that a consumer, hearing the "Grotrian–Steinweg" name and
> thinking it had some connection with "Steinway," would consider it on that
> basis.  The "Grotrian–Steinweg" name therefore would attract potential
> customers based on the reputation built up by Steinway in this country for
> many years.

13   *Id.* at 1342.



Glidewell's Reply in Support of Motion for Partial Summary
Judgment re Infringement
CASE NO. SACV11-01309 DOC (ANx)

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500



**d.**   <u>Keating's "Policy" Prior to the Filing of the Lawsuit:</u>

<u>Take Advantage of Actual Source Confusion</u>



KDZ Bruxer ▮▮▮▮▮▮▮▮ lkmire.

5. **Marketing Channels**

Keating admits that its KDZ Bruxer crowns are marketed through nearly

identical channels as are Glidewell's BruxZir-brand crowns. (Dkt. #112-5 [SGI 88-

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

90]) Accordingly, it is undisputed that this factor favors Glidewell.

### 6.   Type of Goods and Degree of Care

Keating does not dispute that the properties of full contour zirconia crowns are highly similar regardless of brand, and that dentists may regard Glidewell's BruxZir brand crowns and Keating's KDZ Bruxer crowns as interchangeable. (Dkt. #112-5 [SGI 91-92]) While Keating criticizes Dr. DiTolla's supporting declaration as hearsay (it is not), it proffers no evidence to contradict Dr. DiTolla's statements on this issue. Accordingly, these facts stand undisputed.

Instead of addressing the issue directly, Keating asserts that dentists are highly educated professionals who care about their patients. This is not disputed, as it is irrelevant. Glidewell does not contend that the standard of care in dentistry is low, but rather that the evidence shows that dentists do not exercise a high degree of care in selecting one brand of full contour zirconia crown over another. Keating states that the price differential between Glidewell and Keating crowns is substantial, but proffers no evidence that any dentist would consider it so. The closest that Keating approaches to probative evidence is paragraph 12 of the Eggleston declaration submitted with its Motion re Non-Infringement, in which Dr. Eggleston states that he is careful in choosing the dental professionals with whom he works, including dental labs. Notably, Dr. Eggleston abjures any broad statement concerning the practices of dentists in general, and speaks only for himself. Thus, Keating's evidence concerning the degree of care exercised by dentists in selecting a dental lab consists solely of the statement of Dr. Eggleston concerning his own practice, nothing more.

Moreover, this evidence, even were it probative of the practices of dentists in general, would still miss the mark, because the issue is not whether dentists are careful in choosing dental labs, but rather the degree of care they exercise in choosing one brand of a specific type of crown – a full contour zirconia crown – over another brand of the same type of crown. *Fuji Photo Film Co., Inc. v.*

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1    *Shinohara Shoji Kabushiki Kaisha and Graphic Mach., Inc.*, 754 F.2d 591, 595-96

2    (5th Cir. 1985); *KOS Pharmaceuticals, Inc. v. Andrx Corp.,* 369 F.3d 700, 716 n.

3    12 (3d Cir. 2004).  Most dental labs sell multiple brands of crowns and bridges, so

4    the selection of a particular dental lab does not result in the selection of a particular

5    brand of crown.  (Dkt. #93-72 [Deft's Ex. 136])  This is the case for Keating, just as

6    it is for Glidewell.  (Dkt. #125-1 [Deft's Ex. 138]; Dkt. #90-4 [Ex. 15, KDA2029])

7    Dr. Eggleston says nothing regarding the degree of care he exercises in choosing

8    one brand of crown over another; that is likely because, as Dr. DiTolla explains,

9    they are largely functionally interchangeable.  Glidewell's evidence is unrebutted.

10        Finally, Glidewell cited several cases in its opening brief squarely rejecting

11   the generalized "doctors are careful" argument that Keating makes here, and

12   Keating responds to none of them.  Glidewell cited the *Conversive* case for the

13   point that actual confusion by sophisticated consumers (such as the dentists here)

14   <u>strengthens</u> the conclusion that confusion is likely; Keating fails to respond.

15   Glidewell noted that initial interest confusion is still a concern even if a high degree

16   of care is exercised (which, the evidence shows, is not the case here); silence from

17   Keating.  Keating proffers neither probative evidence nor legal argument to rebut

18   Glidewell's showing.  The undisputed evidence on the degree of care factor favors

19   Glidewell.

20        **7.    Keating's Intent**

21        In its moving papers, Glidewell proffered evidence that Keating was aware of

22   Glidewell's BruxZir mark when it made the decision to apply the KDZ Bruxer

23   brand to its competing crowns.  ██████ ███ ████████████████

24   ███████ ████ ██ ██ ████ ████ ███ ████ Obviously, if Keating did

25   not in fact know of the mark in early 2011 it could say so now; it says nothing.  The

26   only reasonable conclusion is that Keating knew of the BruxZir mark when it

27   adopted its KDZ Bruxer mark; this supports a finding that Keating intended to

28   confuse.  *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1293 (9th Cir.

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1   1992).

2      Keating's arguments on this issue are specious.  Keating suggests that

3   Glidewell is attacking its decision to engage counsel to conduct a trademark search.

4   Not so; what Glidewell attacks is Keating's decision to go forward with the brand

5   after undoubtedly having been informed of the priority of Glidewell's registered

6   BruxZir mark.  Keating's excuse for its failure to produce the trademark search

7   report – that it never obtained a copy from counsel, an explanation provided for the

8   first time in its opposition brief – merely illustrates a different species of discovery

9   misconduct from that suspected by Glidewell, as Keating was obligated to obtain

10  the search report from its counsel and produce it during discovery.

11     **8.   Likelihood of Expansion of the Product Lines**

12     As Glidewell has located Ninth Circuit authority that indicates that where the

13  parties already directly compete the "likelihood of expansion" factor is

14  unimportant, it concedes that this factor favors neither side.

15                    **III.  CONCLUSION**

16     For the reasons set forth above, the Court should grant Glidewell's Motion

17  for Partial Summary Judgment re Infringement.

18  Dated:   December 3, 2012              SNELL & WILMER L.L.P.

19

20                                          By:

21                                          Philip J. Graves
                                            Greer N. Shaw
22

23                                          Attorneys for Plaintiff
                                            James R. Glidewell Dental Ceramics, Inc. dba
24                                          GLIDEWELL LABORATORIES

25

26

27  16240510.3

28

Snell & Wilmer
L.L.P.
LAW OFFICES
150 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Glidewell Laboratories v. Keating Dental Arts, Inc.*
**United States District Court, Central, Case No. SACV11-01309-DOC (ANx)**

**CERTIFICATE OF SERVICE**

I hereby certify that on December 3, 2012, I electronically filed the document described as **JAMES R. GLIDEWELL DENTAL CERAMICS, INC.'S REPLY IN SUPPORT OF GLIDEWELL'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE INFRINGEMENT OF A FEDERALLY REGISTERED MARK (FIRST CAUSE OF ACTION) AND DISMISSAL OF DEFENDANT'S SECOND AFFIRMATIVE DEFENSE AND FIRST COUNTERCLAIM** with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

David G. Jankowski
Jeffrey L. Van Hoosear
Lynda J Zadra-Symes
Knobbe Martens Olson and Bear LLP
2040 Main Street, 14th Floor
Irvine, CA  92614

**Attorneys for Defendant Keating Dental Arts, Inc.**
Tel:  (949) 760-0404
Fax: (949) 760-9502

Jeffrey.vanhoosear@kmob.com
David.jankowski@kmob.com
Lynda.zadra-symes@kmob.com
litigation@kmob.com

Dated:  December 3, 2012          SNELL & WILMER L.L.P.


By: *s/Philip J. Graves*
      Philip J. Graves
      Greer N. Shaw

      Attorneys for Plaintiff
      James R. Glidewell Dental Ceramics, Inc.
      dba GLIDEWELL LABORATORIES

16139994.1

Certificate of Service
SACV11-01309-DOC (ANx)