1  SNELL & WILMER L.L.P.
   Philip J. Graves (SBN 153441)
2  pgraves@swlaw.com
   Greer N. Shaw (SBN 197960)
3  gshaw@swlaw.com
   350 South Grand Avenue, Suite 2600
4  Two California Plaza
   Los Angeles, California 90071
5  Telephone: (213) 929-2500
   Facsimile: (213) 929-2525
6
   Attorneys for Plaintiff
7  James R. Glidewell Dental Ceramics, Inc.
   d/b/a Glidewell Laboratories
8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11               SOUTHERN DIVISION

12  JAMES R. GLIDEWELL DENTAL          Case No. SACV11-01309-DOC(ANx)
    CERAMICS, INC.,
13                                     **JAMES R. GLIDEWELL DENTAL
                                       CERAMICS, INC.'S REPLY IN
14              Plaintiff,             SUPPORT OF GLIDEWELL'S
                                       MOTION FOR PARTIAL
15  vs.                                SUMMARY JUDGMENT AS TO
                                       KEATING'S INVALIDITY
16  KEATING DENTAL ARTS, INC.,         DEFENSE AND COUNTERCLAIM**

                Defendant.
17                                     Hearing
18  ───────────────────────────
    AND RELATED                        Date:  December 17, 2012
19  COUNTERCLAIMS.                     Time:  8:30 a.m.
                                       Ctrm:  9D, Hon. David O. Carter
20
                                       Pre-Trial Conf.:   January 28, 2013
21                                     Jury Trial:        February 26, 2013

22

23        **HIGHLY CONFIDENTIAL - FILED UNDER SEAL**

24  **(PURSUANT TO PROTECTIVE ORDER DATED JANUARY 30, 2012)**

25

26

27

28

16222890.1

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................................. 1

II.  ARGUMENT ....................................................................................................... 1

A.   The BruxZir Mark Is Not Generic, and Keating Has Failed to
Establish a Genuine Issue of Material Fact to The Contrary ............... 1

1.   Keating's Argument That the Trademark Office Did Not
Properly Examine the BruxZir Mark Is Baseless ..................... 1

2.   Keating's "Phonetic Equivalence" Argument Is
Inapposite, Because Glidewell Is Using The BruxZir
Mark to Sell Crowns and Bridges, Not People Suffering
from Bruxism ................................................................................... 4

3.   Keating Has Provided No Evidence that "BruxZir" is
Generic .............................................................................................. 7

a.   Glidewell Need Not "Establish That the Primary
Significance of Its Mark Is To Identify Glidewell" ......... 7

b.   Keating Ignores the "Crucial Date" For
Determining Genericness ...................................................... 8

(i)   The Egglestron Report Is Not Probative of
Genericness as of April 2011 ................................... 8

(ii)   The Thirteen Dentists' Declarations Are Not
Probative of Genericness as of April 2011 ............ 9

(iii)   The Frattura Declaration Is Not Probative of
Genericness as of April 2011 ................................... 9

(iv)   The "Evidence" of "Third Party Use" Is Not
Probative of Genericness as of April 2011 ............ 9

(a)   Keating's Statement of
Uncontroverted Fact 60, Even If True,
Does Not Support Genericness .................. 10

(b)   Keating's Statement of
Uncontroverted Fact 61, Even If True,
Does Not Support Genericness .................. 11

(c)   Keating's Statement of
Uncontroverted Fact 62, Even If True,
Does Not Support Genericness .................. 12

c.   Keating Has Failed to Produce A Survey ...................... 14

d.   Glidewell's Promotional Materials and Activities
Do Not "Establish Genericness of The Mark" .............. 14

-i-

# TABLE OF CONTENTS
## (continued)

| | | | | | Page |
|---|---|---|---|---|---|
| | | e. | The Use of "BruxZir" by Glidewell's "Authorized" Labs Does Not Render "BruxZir" Generic | | 16 |
| | | 4. | The Testimony Of Third-Party Dentists and Glidewell's Experts Establishes Nongenericness | | 18 |
| | | | a. | Glidewell's Evidence Was Not Untimely | 18 |
| | | | b. | Dentists' Testimony Supports Nongenericness | 20 |
| | | | c. | Experts' Testimony Supports Nongenericness | 21 |
| | B. | Keating Has Failed to Demonstrate a Genuine Issue of Material Fact as to Suggestiveness | | | 21 |
| | C. | Keating Has Failed to Demonstrate a Genuine Issue of Material Fact as to Secondary Meaning | | | 23 |
| III. | CONCLUSION | | | | 25 |

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*3Com Corp. v. Realtek Semi. Corp.*,
  C 03-2177 VRW, 2008 WL 783383
  (N.D. Cal. Mar. 24, 2008) .................................................................. 19

*Advertise.com, Inc. v. AOL Advertising, Inc.*,
  616 F.3d 974 (9th Cir. 2010) ............................................................. 10

*American Sci. Chem., Inc. v. American Hosp. Supply Corp.*,
  690 F.2d 791 (9th Cir. 1982) ............................................................. 25

*Americana Trading Inc. v. Russ Berrie & Co.*,
  966 F.2d 1284 (9th Cir. 1992) ........................................................... 23

*Anderson v. Liberty Lobby*,
  477 U.S. 242 (1986) .................................................................... 6, 15

*Avery Dennison Corp. v. Sumpton*,
  189 F.3d 868 (9th Cir.1999) .............................................................. 23

*Caesars World, Inc. v. Milanian*,
  247 F. Supp. 2d 1171 (D. Nev. 2003) ................................................ 15

*Cairns v. Franklyn Mint Co.*,
  24 F. Supp. 2d 1013 (C.D. Cal. 1998) ............................................... 14

*Cascade Mfg. Sales, Inc. v. Providnet Co. Trust*,
  2008 WL 4889716, at *3 (W.D. Wash. Nov. 12, 2008) ..................... 14

*Conversive, Inc. v. Conversagent, Inc.*,
  433 F. Supp. 2d 1079 (C.D. Cal. 2006) ........................................ 22, 23

*Cyntegra, Inc. v. Idexx Labs., Inc.*,
  CV06-4170PSG(CTX), 2007 WL 5193736 (C.D. Cal. Sept. 21,
  2007),
  *affirmed*, 322 F. App'x 569 (9th Cir. 2009) ..................................... 19

*Garvey v. Kmart Corp.*,
  2012 U.S. Dist. LEXIS 160006, at *3 (N.D. Cal. 2012) .................... 19

*Heroes, Inc. v. Boomer Esiason Hero's Found., Inc.*,
  43 U.S.P.Q.2d 1193 (D.D.C. 1997) ................................................... 14

*In re DC Comics, Inc.*,
  689 F. 2d 1042 (C.C.P.A. 1982) ....................................................... 15

*Interactive Health LLC v. King Kong USA, Inc.*,
  2008 U.S. Dist. LEXIS 123559, *20 (C.D. Cal. July 24, 2008) ........ 24

# TABLE OF AUTHORITIES
(continued)

**Page**

*Lahoti v. Vericheck, Inc.,*
   636 F.3d 501 (9th Cir. 2011) ....................................................................22

*Magic Wand, Inc. v. RDB, Inc.,*
   940 F.2d 638 (Fed. Cir. 1991) .................................................................14

*Maljack Prods., Inc. v. GoodTimes Home Video Corp.,*
   81 F.3d 881 (9th Cir. 1996) ...............................................................8, 16

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.,*
   164 F.3d 736 (2d Cir. 1998) ......................................................................8

*Nuance Comms., Inc. v. ABBYY Software House,*
   C 08-02912 JSW MEJ, 2012 WL 2838431(N.D. Cal. July 10, 2012)...............18

*Nupla Corp. v. IXL Mfg. Co.,*
   114 F.3d 191 (Fed. Cir. 1997) ...............................................................6, 7

*Pfizer Inc. v. Sachs,*
   652 F. Supp. 2d 512 (S.D.N.Y. 2009) .....................................................14

*Playboy Enters. v. Netscape Comms. Corp.,*
   55 F. Supp. 2d 1070 (C.D. Cal. 1999) ....................................................14

*Reno Air Racing Ass'n, Inc. v. McCord,*
   452 F.3d 1126 (9th Cir. 2006) ............................................................10, 14

*Roe v. Nevada,*
   621 F. Supp. 2d 1039 (D. Nev. 2007) .....................................................19

*Russell v. Daiichi-Sankyo, Inc.,*
   CV 11-34-BLG-CSO, 2012 WL 1805038
   (D. Mont. May 17, 2012).........................................................................19

*Soweco, Inc. v. Shell Oil Co.,*
   617 F.2d 1178 (5th Cir. 1980) ...............................................................5, 6

*Vision Sports, Inc. v. Melville Corp.,*
   888 F.2d 609 (9th Cir. 1989) ...................................................................13

*Yellow Cab Co. of Sacramento v. Yellow Cab Co. of Elk Grove, Inc.,*
   419 F.3d 925 (9th Cir. 2005) ...............................................................8, 10

*Zobmondo Enter., LLC v. Falls Media, LLC,*
   602 F.3d 1108, (9th Cir. 2010) ...............................................13, 14, 21, 22, 23

GLIDEWELL'S REPLY ISO MOTION FOR PSJ AS TO
KEATING'S INVALIDITY DEFENSE AND COUNTERCLAIM
CASE NO. SACV11-01309 DOC (ANx)

# TABLE OF AUTHORITIES
### (continued)

**Page**

## STATUTES

Fed. R. Evid. § 407 ...................................................................................24

15 U.S.C. § 1055 ..............................................................................16, 17

15 U.S.C. § 1127 ...............................................................................8, 16

## OTHER

*ESM Techs., LLC v. Biova, LLC,*
No. 10-3009-CV-S-RED (W.D. Mo. Mar. 21, 2012) ..........................19

*Etagz, Inc. v. Quiksilver, Inc.,*
No. SACV 10-300 DOC (MLGx) (C.D. Cal. Nov. 16, 2012) ...........18

2 McCarthy on Trademarks & Unfair Comp., § 12.8 (4th ed.).............15

2 McCarthy on Trademarks & Unfair Comp., § 12:14 (4th ed.)...........14

2 McCarthy on Trademarks & Unfair Comp., § 12:17.50 (4th ed.)........8

2 McCarthy on Trademarks & Unfair Comp., § 15:8 (4th ed.).........8, 16

2 McCarthy on Trademarks & Unfair Comp., § 18:45 (4th ed.)...........17

2 McCarthy on Trademarks & Unfair Comp., § 18:45.50 (4th ed.).......16

Trademark Manual of Examining Procedure, § 1209.02 .........................3

Trademark Manual of Examining Procedure, § 710.01(b)...................2, 4

Trademark Manual of Examining Procedure, § 814 .................................3

# I.   INTRODUCTION

Desperately attempting to undermine the BruxZir mark's presumption of distinctiveness, Keating sets up imaginary shortcomings during the PTO's examination.  Keating first manufactures an Internet search requirement, but none exists.  Keating then says Glidewell withheld information from the Examiner, but admits elsewhere that this never happened.  In truth, the Examiner did his job, the presumption remains strong, and Keating has come woefully short of overcoming it.  Keating's mantra that "BruxZir" and "bruxer" are phonetic equivalents is irrelevant given that one means dental restorations and the other means people with a medical condition.  Keating has precious little evidence that anyone has ever regarded "bruxer" as meaning crowns, and Keating even had to sheepishly retract its statement that the term can be found in dictionaries.  Perhaps most telling of Keating's losing position is the fact the Keating completely ignores the need to prove genericness *as of April 2011*.  Not a shred of Keating's evidence – not the expert reports, the thirteen dentists' declarations, the Frattura declaration, nor the dozens of third party webpages – is probative of genericness at this relevant time.  The undisputed evidence, including Keating's own submissions, proves that BruxZir is both suggestive and has attained strong secondary meaning.  For these reasons, the Court should grant summary judgment in favor of Glidewell as to Keating's First Affirmative Defense, and its Fourth Counterclaim, of invalidity.

# II.   ARGUMENT

**A.**   **The BruxZir Mark Is Not Generic, and Keating Has Failed to Establish a Genuine Issue of Material Fact to The Contrary**

    **1.**   **Keating's Argument That the Trademark Office Did Not Properly Examine the BruxZir Mark Is Baseless**

Because the BruxZir mark is registered, the mark enjoys a "strong presumption" of validity and Keating bears a "heavy" burden to overcome the presumption at summary judgment.  (Dkt. #114 at 3:8-15; Dkt. #82-1 at 5:18-27)

1   Moreover, because the Examiner did not require a showing of secondary meaning,

2   the BruxZir mark is presumed to be inherently distinctive; i.e., at least suggestive.

3   (Dkt. #114 at 3:16-23; Dkt. #82-1 at 5:28-6:11)  Keating attempts to undermine

4   these presumptions by arguing that the Examiner failed to do his job properly.

5   Keating's arguments have neither legal nor evidentiary support.

6   *First*, Keating says that the Examiner "did not do a routine Internet search."

7   (Dkt. #118 at 1:12)  But Keating identifies no requirement for such a search, nor

8   any evidence that one is "routine."  Even Keating's "expert," Boatright, does not

9   say that an Internet search is required.  Rather than requiring an Internet search, the

10  pertinent TMEP provision, § 710.01(b), cautions an Examiner about refusing a

11  registration (or requiring amendments) based upon Internet evidence without

12  adequate precaution.[1]  For example, it states that "the weight given to this evidence

13  must be carefully evaluated, because the source may be unknown," and that "[a] list

14  of Internet search results has little probative value."  TMEP § 710.01(b).  Keating

15  simply imagines that an Internet search is required, much less "routine."

16  Moreover, other than a reference to its own proposed Statement of

17  Uncontroverted Fact ("PSUF") 60, Keating does not say what information the

18  Examiner would have found by an Internet search.  (Dkt. #118 at 5:9)  PSUF 60 is

19  that "[i]n addition to Glidewell and Keating, many other companies have been

20  using 'Brux' to refer to dental products for use with bruxers and 'Z' or 'Zir' to refer

21  to dental products associated with Zirconia," and the cited support is a collection of

22  webpages.  (Dkt. #87-1 at 10:15-11:5)  But this "evidence" is worthless.  First, none

---

[1]  Glidewell applied for the BruxZir mark on June 17, 2009.  Dkt. #90-19 (Ex. 59).
The application was assigned to Examiner Corwin on September 16, approved for
publication on September 17, published in the *Trademark Official Gazette* on
November 5, and registered on January 19, 2010.  Dkt. #90-19 (Ex. 60, at KDA-
002811-002813).  The version of the Trademark Manual of Examining Procedure
("TMEP") that was applicable during the entire course of examination was the 5th
edition, published on September 30, 2007.  *See*
http://tess2.uspto.gov/tmdb/tmep_5ed/ (visited Nov. 30, 2012).  The 5th edition was
replaced by a 6th, published on May 21, 2010.  *See*
http://tess2.uspto.gov/tmdb/tmep_6ed/ (visited November 30, 2012).  References
herein to the TMEP are to the 5th edition unless otherwise indicated.

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

Snell & Wilmer

L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1    of the pages are dated, (Dkt. #93-50; Dkt. #93-57 - #93-71), and there is no proof

2    that they were on the Internet in September 2009 during examination of the BruxZir

3    mark.  Second, the pages are inadmissible for lack of competent authentication.

4    (Dkt. #115 at 1:11-5:1)  Keating's expert does not attest that he printed the pages or

5    when, or that he has personal knowledge of their contents.  (Dkt. #93 at ¶¶ 68, 75-

6    80, 82-90)  Third, the evidence is hearsay, because it is offered to prove the truth of

7    the statements in the webpages.  (Dkt. #115 at 5:2-23)  These problems aside,

8    Keating does not explain how PSUF 60, or the "evidence" supporting it, would

9    have been material to examination of the BruxZir mark, much less caused rejection.

10   *Second*, Keating argues that the Examiner "failed to follow the usual

11   procedure, as recommended in the Trademark Manual of Examining Procedure,

12   §§ 814 and 1209.2 [sic – 1209.02], to ask if the term had any meaning in the

13   industry."  (Dkt. 118 at 5:2-4)  Keating again attempts to impose a non-existent

14   requirement; neither TMEP section requires such an inquiry.  Section 814 states

15   that "sometimes" it is necessary for the examining attorney to request additional

16   information from an applicant, and, if so, the Examiner "may" do so.  Section

17   1209.02 similarly provides that the Examiner "may" request additional explanation

18   to clarify the nature of the goods.  Such requests are optional, not required.[2]

19   Keating has not proven that exercising the option is the "usual procedure."

20   *Third*, Keating argues that the Examiner "could not have known that, to the

21   relevant purchasing public – dentists – 'brux' means teeth grinding and 'zir' means

22   zirconia," and that "bruxers" were among the intended users of Glidewell's BruxZir

23   brand crowns.  (Dkt. #118 at 5:7-13)  This is both speculative and contrary to fact.

24

---

25   [2] Keating suggests that Glidewell hoodwinked the Examiner because Glidewell

26   "did not disclose," and "did not voluntarily offer," the suggestive meaning of

27   "BruxZir."  (Dkt. #118 at 1:9; 5:5-6)  Tellingly, Keating cites no TMEP provision

28   or other obligation requiring such disclosure.  To the contrary, Keating elsewhere
     admits that "a trademark applicant has no affirmative duty to disclose a mark's
     meaning to the trademark examiner."  (Dkt. #127 ay 13:15-16)

GLIDEWELL'S REPLY ISO MOTION FOR PSJ AS TO
KEATING'S INVALIDITY DEFENSE AND COUNTERCLAIM
CASE NO. SACV11-01309 DOC (ANx)

- 3 -

16222890.1

1   TMEP § 710.01(b) provides that "[t]he examining attorney *must* check applicant's

2   own website for information about the goods or services." (emphasis added).

3   During July 1, 2009 - January 19, 2010, Glidewell's website featured the BruxZir

4   mark and descriptions of BruxZir brand restorations, stating that they are made of

5   zirconia and are indicated for "bruxers," i.e., patients suffering from bruxism.

6   Shuck 2nd Suppl. Decl. ¶¶ 3-8.  The Examiner presumably did his job, followed

7   § 710.01(b), and saw these descriptions when he visited Glidewell's website in

8   September of 2009.  Knowing that "bruxers" were among the intended users, he

9   allowed the BruxZir mark without requiring any showing of secondary meaning.

10   *Fourth*, the Examiner performed searches in the PTO's Trademark Electronic

11   Search System ("TESS") that would have turned up several "brux" related

12   trademarks, providing information about the meaning of "brux" in the dental field.

13   In particular, on September 17, 2009, the Examiner entered the following search

14   string:  "*brux*[bi,ti] not dead[ld]." Dkt. #90-19 (Ex. 60, at KDA-002820).

15   Entering this string into TESS search window today results in 28 records.  (Shaw

16   Decl. ¶ 4, Ex. 111).  (For the Examiner, over three years ago, it resulted in 13

17   records.  (Dkt. #90-19 (Ex. 60, at KDA-002820)).  One of the records that would

18   have appeared for the Examiner is the BRUX-EZE mark (Reg. No. 2473238),

19   registered on July 31, 2001 for "[d]ental appliances, namely removable occlusal

20   overlays, fixation devices and the like, used for the treatment of bruxism and

21   temporomandibular joint dysfunctions." (Shaw Decl. ¶ 5, Ex. 112).  Thus, the

22   Examiner's TESS search revealed the association between "brux" and bruxism.

23       **2.**   **<u>Keating's "Phonetic Equivalence" Argument Is Inapposite,</u>**

24           **<u>Because Glidewell Is Using The BruxZir Mark to Sell Crowns and</u>**

25           **<u>Bridges, Not People Suffering from Bruxism</u>**

26       Keating next argues that "Glidewell ignores the undisputed evidence of

27   phonetic equivalency of its mark with the term 'bruxer,' which Glidewell admits is

28   the generic name for a person who bruxes and the intended user of Glidewell's

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

GLIDEWELL'S REPLY ISO MOTION FOR PSJ AS TO
KEATING'S INVALIDITY DEFENSE AND COUNTERCLAIM
CASE NO. SACV11-01309 DOC (ANx)

- 4 -

16222890.1

BruxZir crowns.  As the phonetic equivalency [sic] of the generic name for the intended user of its BruxZir product, the mark is generic as a matter of law." (Dkt. #118 at 5:17-22)  This argument has several fatal flaws.

*First*, and most obviously, Glidewell sells dental restoration products, not people who brux.  "Bruxer" may be a common term for people who suffer from bruxism, but Keating has failed to prove that "bruxer" was a generic term for zirconia dental restorations as of April 2011.  Indeed, the Court will search Keating's PSUFs in vain for a single assertion that "bruxer" is a term that means any type of dental restoration.  (Dkt. #87-1)  After first telling the Court in its opposition brief that "Bruxer [is] in the medical dictionary," Keating was forced retract this erroneous statement by Notice of Errata.  (Dkt. #118 at 20:24; Dkt. #119)  It is undisputed that *none* of the multiple dictionaries before the Court define "bruxer" as a dental restoration.  (SAF 26; Dkt. #124 at 20:22).[3]  Given the absence of evidence that "bruxer" means any type of dental restoration, and given that Glidewell indisputably does not sell bruxers (i.e., people who brux), whether "bruxzir" and "bruxer" are phonetic equivalents is irrelevant to validity.

*Second*, Keating's reliance upon *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178 (5th Cir. 1980), is misplaced.  (Dkt. #118 at 5:22-27)  In that case, the appellate court *reversed* the district court's cancellation of the registered mark "Larvacide" as generic.  617 F.2d 1178, 1190 (5th Cir. 1980).  As the court observed:  "plaintiff used its mark on products that are intended to kill many forms of animal life, not merely larae; it is more properly characterized as a 'varmintcide' than a 'larvacide.'  Nevertheless, since plaintiff's products do kill larvae, its mark may be said to be at least descriptive of its products."  617 F.2d at 1190.  Here, neither Glidewell's nor Keating's product is a "bruxer," and neither of their respective products are

_____

[3] References to the "SAF" are to Glidewell's statement of genuine disputes and additional material facts, more particularly to the portion of that document under heading "II." (Dkt. #114-1 at p. 95 of 130)

GLIDEWELL'S REPLY ISO MOTION FOR PSJ AS TO
KEATING'S INVALIDITY DEFENSE AND COUNTERCLAIM
CASE NO. SACV11-01309 DOC (ANx)

- 5 -

16222890.1

Snell & Wilmer

L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1    marketed exclusively for use in treating patients with bruxism.  Dkt. #90-1 (Ex. A

2    (Doneff Decl., ¶ 11), Ex. B (Newman Decl., ¶ 11), Ex. C (Cohen Decl., ¶ 11), Ex.

3    D (Luke Decl., ¶ 11), Ex. E (Bell Decl., ¶ 11), Ex. F (Toca Decl., ¶ 11), and Ex. Q

4    (Michiels Decl., ¶ 11)); #90-4 (Ex. 11); #90-7 (Exs. 21-22); #91-10; #91-14; #91-

5    48.  *Soweco* is inapposite, other than to support descriptiveness over genericness.

6         *Third*, even if phonetic equivalence of "BruxZir" and "bruxer" were a

7    material issue, which it is not, there is a genuine dispute of fact.  There is evidence

8    that at least some dental labs regard "BruxZir" and "bruxer" as being pronounced

9    differently.  (Dkt. #91-24 at p. 5 of 11; Dkt. #91-6 at 214:3-220:21) ████████

10   ████████████████████████████████████████████████████████████████

11   ██████████████████████  Keating vigorously argues that, in his

12   videos, Dr. DiTolla "pronounces the name BruxZir and the dental term bruxer

13   identically."  (Dkt. #87-1 at ¶ 48) ████████████████████████████████

14   ████████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████████

16   ██ Dr. DiTolla's credibility, and whether the videos show phonetic equivalence,

17   are judgment calls for the fact finder to determine at trial, not for the Court to make

18   at summary judgment.  *E.g.*, *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

19   If phonetic equivalence were a material issue for validity – which, again, it is not –

20   genuine disputes would at least preclude summary judgment for Keating.

21        Finally, Keating asserts that "Glidewell's adoption of a misspelling of

22   'bruxer' for its mark and assertion of its BruxZir mark against competitors using

23   'brux' and 'bruxer' is evidence of genericness because it deprives competitors of

24   the right to identify their products as intended for bruxers."  (Dkt. #118 at 6:7-10)

25   The cited cases do not support this *non sequitur*, and they are, in any event,

26   distinguishable.  For example, in *Nupla Corp. v. IXL Mfg. Co.*, the court affirmed

27   summary judgment of genericness of the CUSH-N-GRIP mark "[b]ased on

28   overwhelming documentary evidence of record showing widespread and long-time

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

GLIDEWELL'S REPLY ISO MOTION FOR PSJ AS TO
KEATING'S INVALIDITY DEFENSE AND COUNTERCLAIM
CASE NO. SACV11-01309 DOC (ANx)

- 6 -

16222890.1

1   prior us of the CUSHION-GRIP mark in the hand tool industry." 114 F.3d 191,

2   196 (Fed. Cir. 1997). There is no comparable evidence as to "bruxer" here; indeed,

3   Keating as submitted *no* admissible evidence that the word was used in the dental

4   industry prior to April of 2011 as a term for dental restorations. In addition,

5   CUSH-N-GRIP and CUSHION-GRIP had the same meaning, differing only in

6   spelling. Here, "BruxZir" and "bruxer" do not mean the same thing; the former is a

7   dental restoration product, while the latter is a person with a medical condition.

8       To the extent Keating is arguing that competitors need to use "bruxzir" or

9   "bruxer" as trademarks for their products, or that Glidewell has sought to eliminate

10   all use by competitors of the word "bruxer," the argument founders on the evidence.

11   As discussed in Glidewell's prior briefs, competitors like Showcase Dental and

12   Drake Precision Laboratory do not need to use these terms as trademarks. (Dkt.

13   #82-1 at 17:13-19:3; Dkt. #114 at 19:3-20:22) These labs, and Keating, remain free

14   to use "bruxer" in a manner *other than as a trademark*. For example, Drake

15   markets its full contour zirconia crown under the mark, ZIR-CAST. (Dkt. #93-32)

16   Among other descriptions of the product, Drake states that the product is

17   "recommended for Bruxers and Grinders." (Dkt. #93-32) Glidewell has agreed

18   that such use is permissible. (Dkt. #91-5 at 82:19-83:5 & 143:11-19; Dkt. #91-6 at

19   211:8-212:12) Thus, Glidewell's trademark enforcement does not "deprive[]

20   competitors of the right to identify their products as intended for bruxers."

21       **3.   Keating Has Provided No Evidence that "BruxZir" is Generic**

22       **a.   Glidewell Need Not "Establish That the Primary**

23       **Significance of Its Mark Is To Identify Glidewell"**

24   Keating misconceives the law when it argues that Glidewell must "establish

25   that the primary significance of its mark is to identify Glidewell." (Dkt. #118 at

26   6:21-22) "'To determine whether a term has become generic, we look to whether

27   consumers understand the word to refer only to a particular producer's goods or

28   whether the consumer understands the word to refer to the goods themselves.'"

GLIDEWELL'S REPLY ISO MOTION FOR PSJ AS TO
KEATING'S INVALIDITY DEFENSE AND COUNTERCLAIM
CASE NO. SACV11-01309 DOC (ANx)

- 7 -

16222890.1

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

*Yellow Cab*, 419 F.3d at 929 (citation omitted).  If a buyer understands the term to be identified with a particular producer's goods, it is not generic. *Id*.  This so even if the source is anonymous to consumers. *See* 15 U.S.C. § 1127; *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 887 (9th Cir. 1996); 2 McCarthy on Trademarks & Unfair Comp., § 15:8 (4th ed.).  So, Glidewell need not "establish that the primary significance of its mark *is to identify Glidewell*."

### b.   Keating Ignores the "Crucial Date" For Determining Genericness

Keating next argues that it as "provided substantial evidence that dentists use the word 'bruxzir' as a generic reference to a type of crown." (Dkt. #118 at 8:13-15)  Keating cites to various types of "evidence," but none is probative of genericness.  Critically, Keating ignores that "[t]he crucial date for the determination of genericness is the date on which the alleged infringer entered the market with the disputed mark or term." *Yellow Cab Co. of Sacramento v. Yellow Cab Co. of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005); *see also Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 744 (2d Cir. 1998); McCarthy § 12:17.50.  Here, Keating "adopted and began using" its KDZ Bruxer mark "[i]n approximately April 2011." (SAF 86).  Keating therefore must show that, *as of April 2011*, dentists understood "bruxzir" to refer to the genus of dental restoration products including crowns, bridges, and the like.  Evidence of dentists' understanding *now*, or at other points *after* April 2011, is irrelevant.

### (i)   The Egglestron Report Is Not Probative of Genericness as of April 2011

Keating first cites the Eggleston expert report. (Dkt. #118 at 8:16)  Aside from the fact that Dr. Eggleston relies largely upon undated and unauthenticated hearsay webpages, his opinion is not probative of genericness because he completely fails to address genericness as of April 2011. (Dkt. #93-1)

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

GLIDEWELL'S REPLY ISO MOTION FOR PSJ AS TO
KEATING'S INVALIDITY DEFENSE AND COUNTERCLAIM
CASE NO. SACV11-01309 DOC (ANx)

16222890.1

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

(ii)     **The Thirteen Dentists' Declarations Are Not Probative**
**of Genericness as of April 2011**

Keating next cites declarations from thirteen dentists that, Keating says, "have written 'BruxZir,' or variations thereof on prescription forms as a generic reference to an all-zirconia crown." (Dkt. #118 at 8:17-23)  This testimony is not probative because not a single one of these doctors say that they regarded "bruxzir" or "bruxer" as being generic terms for zirconia crowns as of April 2011.  Their declarations each reveal that, if they regarded these terms as generic, they did so as of later points in time. (SAF 87)  Such "evidence" is irrelevant, and its admission would be confusing and prejudicial, as it would lead to an assessment of genericness as of the incorrect time period. (Dkt. #115 at 5:24-8:3)

(iii)    **The Frattura Declaration Is Not Probative of**
**Genericness as of April 2011**

Keating next points to a declaration from Carol Frattura of Showcase Dental, which, according to Keating, "also receives (and fills) orders from dentist-customers who write 'BruxZir' on prescription forms as a generic reference to an all-zirconia crown." (Dkt. #118 at 8:23-26)  But the prescription forms attached to Frattura's declaration are not probative of genericness.  The majority post-date April 2011. (SAF 89)  One is undated. (SAF 90)  The remainder show that dentists used terms other than "bruxzir" or "bruxer" when ordering zirconia crowns prior to April 2011. (SAF 91)  This supports Glidewell, not Keating.

(iv)    **The "Evidence" of "Third Party Use" Is Not Probative**
**of Genericness as of April 2011**

Finally, Keating cites what it characterizes as "substantial evidence showing widespread third party use of the terms 'bruxer' and 'brux' in connection with dental crowns." (Dkt. #118 at 8:27-9:2)  But whether the terms "bruxer" and "brux" have been used "in connection with dental crowns" is not the issue.  The issue is whether, as of the "crucial date … [of when] the alleged infringer entered

GLIDEWELL'S REPLY ISO MOTION FOR PSJ AS TO
KEATING'S INVALIDITY DEFENSE AND COUNTERCLAIM
CASE NO. SACV11-01309 DOC (ANx)

- 9 -

16222890.1

the market with the disputed mark or term," "'consumers underst[ood] the word to refer only to a particular producer's goods or whether the consumer[s] underst[ood] the word to refer to the goods themselves.'" *Yellow Cab*, 419 F.3d at 928-29. Keating's proffered "evidence" – contained in Keating's PSUF 60-62 (Dkt. #118 at 9:2) – is not probative of this.

> **(a)** *Keating's Statement of Uncontroverted Fact 60,*
> *Even If True, Does Not Support Genericness*

Keating's PSUF 60 is that, "[i]n addition to Glidewell and Keating, many other companies have been using 'Brux' to refer to dental products for use with bruxers and 'Z' or 'Zir' to refer to dental products associated with zirconia." (Dkt. #87-1 at 10:15-17) Keating then lists third-party product names, purportedly evidenced by a collection of third-party webpages. (Dkt. #87-1 at 10:18-11:5) Even putting aside the fatal evidentiary problems,[4] the import of this "evidence" is unclear. None of the listed product names includes "bruxzir" or "bruxer," so this "evidence" says nothing about whether these terms were generic as of April 2011. At most, the "evidence" supports Glidewell's argument that the BruxZir mark is suggestive because "brux" and "zir" suggest certain features to dentists.

In any event, as noted in Glidewell's opening brief (Dkt. #82-1 at 13:4-19), the Court must focus on the trademark as a whole, because a composite mark may be distinctive even though its components individually are not. *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1135 (9th Cir. 2006); *see also Advertise.com, Inc. v. AOL Advertising, Inc.*, 616 F.3d 974, 978 (9th Cir. 2010) ("[T]he combination of generic terms may, in some instances, result in a distinctive mark."). Here, Glidewell's registered mark is BruxZir, not "brux" or "zir." Keating's mark is KDZ Bruxer, not "brux" or "zir." Whether "brux" or "zir" alone

---

[4] As explained in more detail in Glidewell's Statement of Objections to Evidence Submitted in Support of Keating's Motions for Summary Judgment, the evidence that Keating cites in support of PSUF 60-62 is inadmissible for three independent reasons: (1) it has not been competently authenticated, (2) it is hearsay, and (3) it is irrelevant and prejudicial. (Dkt. #115)

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

GLIDEWELL'S REPLY ISO MOTION FOR PSJ AS TO
KEATING'S INVALIDITY DEFENSE AND COUNTERCLAIM
CASE NO. SACV11-01309 DOC (ANx)

16222890.1

1    are protectable, or are immune from infringement liability, are not at issue.

2    **(b)**    *Keating's Statement of Uncontroverted Fact 61,*

3    *Even If True, Does Not Support Genericness*

4    Keating's PSUF 61 is that, "[i]n addition to Glidewell and Keating, many

5    other dental laboratories have been offering all-zirconia crowns under a variety of

6    names, including names with "Brux," "Zir," or variations thereon." (Dkt. #87-1 at

7    11:7-9)  Following this assertion is a list of third parties and associated product

8    names, again purportedly proven with webpages.  (Dkt. #87-1 at 11:10-18)  Once

9    again, Keating's supporting "evidence" does not support genericness.

10    First, according to PSUF 61, more than half of the listed labs do not use

11    "bruxzir" or "bruxer" at all, whether alone or in combination with other words.

12    These include Assured Dental Lab (Z-Brux), Authentic Dental Lab (Brux), Barth

13    Dental Lab (Z-Brux), Burbank Dental (Zir-Max), California Dental Arts (ZirFit),

14    CDLLab (ZerisBRUX), Continental Dental (Full Zirconia for Bruxing Patients),

15    Diadem Precision Technology (Diazir), Drake Dental (Zir-Cast), Expertec (Full-Z),

16    GPS Dental Lab (GPS BruxArt), Kastle Mills (ZirCrown), Pittman Dental

17    (ZirCAM All-Zirconia), R-dent Dental Laboratory (R-Brux), Somer Dental Labs

18    (Full Contour Zir), Summers Dental Lab (BruxThetix), Sun Dental Labs (Suntech

19    Full Zirconia), Technics Dental Lab (Tech/ZIR FC), and Zahn Dental (Zirlux).

20    (Dkt. #87-1 at 11:10-18)  Even if these companies were selling these products as of

21    April 2011 – which Keating has not proven – this says nothing about whether

22    "bruxzir" or "bruxer" were generic for zirconia dental restorations as of April 2011.

23    Second, the proffered evidence as to the majority of the remaining listed labs

24    is not probative of genericness of "bruxzir" or "bruxer" as of April 2011, because it

25    either post-dates April 2011 or is undated. *See* Dkt. #91-31 (Advanced Dental Lab

26    (BruxZir), Mar. 2012); Dkt. #91-29 (China Dental Outsourcing (Bruxer All

27    Zirconia), May 2011); Dkt. #91-39 (China Dental Outsourcing (All Zirconia for

28    Bruxers), Sept. 2012); Dkt. #93-55 (Cosmetic Dentistry of SA (Bruxer Crown),

GLIDEWELL'S REPLY ISO MOTION FOR PSJ AS TO
KEATING'S INVALIDITY DEFENSE AND COUNTERCLAIM
CASE NO. SACV11-01309 DOC (ANx)

- 11 -

16222890.1

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

Sept. 2012); Dkt. #93-44 (Infinity Dental Lab (Bruxer Crowns), Sept. 2012); Dkt. #91-32 (Old Dominion Milling Corp. (Bruxzer), Aug. 2012); Dkt. #91-30 & 91-38 (Showcase Dental Lab (Zir-Bruxer), Jan. 2012); Dkt. #93-47 (York Dental Lab (Bruxer), Aug. 2012); Dkt. #91-43 (Dani Dental (Full Zirconia (Bruxer)), undated ); Dkt. #93-56 (Pittman Dental (Bruxer Crown), undated); Dkt #91-42 (Trachsel Dental (All Zirconia Bruxer), undated).  Keating's failure to substantiate that any of these labs were using "bruxzir" or "bruxer" as of or prior to April 2011 renders this evidence worthless for proving that these terms are generic at the relevant time.

Finally, the proffered evidence as to the remaining two listed labs is insufficient to defeat summary judgment for Glidewell.  As to Mascola Esthetics (Xtreme Bruxer), Keating has submitted only a prescription form that its expert purportedly pulled from the internet. (Dkt. #93 at ¶ 64; Dkt. #93-46)  For the reasons stated in Glidewell's statement of evidentiary objections, this "evidence" is inadmissible hearsay that also lacks authentication. (Dkt. #115)  Even aside from that problem, it is not probative of *when* Mascola Esthetics began using "Xtreme Bruxer," for how long it used "Xtreme Bruxer," and whether such use evidences generic use rather than intentional infringement.  As for Fusion Dental Lab, the proffered evidence establishes at most that the lab used "Full Solid Bruxer Zirconia" in January 2011, was asked by Glidewell in January 2011 and again in April 2011 to cease such use, and that Fusion Dental Lab thereafter stopped using "Full Solid Bruxer Zirconia."  (SAF 100).  This is not probative of whether Fusion Dental Lab used "bruxer" generically or instead intentionally infringed Glidewell's mark.  Likewise, it says nothing about whether *dentists* regarded "bruxzir" or "bruxer" as generic terms for zirconia crowns as of April 2011.  For all these reasons, this evidence is insufficient to support a finding of genericness.

                    **(c)**     *Keating's Statement of Uncontroverted Fact 62, Even If True, Does Not Support Genericness*

Finally, PSUF 62 states: "[t]hese dental laboratories prominently promote

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

GLIDEWELL'S REPLY ISO MOTION FOR PSJ AS TO
KEATING'S INVALIDITY DEFENSE AND COUNTERCLAIM
CASE NO. SACV11-01309 DOC (ANx)

- 12 -

16222890.1

1    their all-zirconia crowns for use by bruxers," followed by a subset of the labs listed

2    in PSUF 61, with citations to the same inadmissible webpage evidence.  (Dkt. #87-

3    1 at 12:19-13:5)  Again putting aside the evidentiary problems, this "evidence" does

4    not prove that "bruxer" or "bruxzir" were generic as of April 2011.

5           First, all of the cited evidence is either undated or it post-dates the relevant

6    time period by more than a year.  (Dkt. #91-37 (Barth Dental Labs, Aug. 2012);

7    Dkt. #93-39 (California Dental Arts, undated); Dkt. #91-39 (China Dental

8    Outsourcing, Sept. 2012); Dkt. #93-32 (Drake Dental, undated); Dkt. #93-29

9    (Expertec, undated); Dkt. #93-44 (Infinity Dental Lab, Sept. 2012); Dkt. #93-30

10   (Sun Dental Labs, undated); Dkt. #93-47 (York Dental Lab, Aug. 2012))

11          Second, aside from three – China Dental Outsourcing, Infinity Dental Lab,

12   and York Dental Lab – the listed labs do *not* use the terms "bruxer" or "bruxzir"

13   within their trademarks.  This shows that the BruxZir mark is suggestive rather than

14   generic or descriptive.  *See Zobmondo Enter., LLC v. Falls Media, LLC*, 602 F.3d

15   1108, 1117 (9th Cir. 2010) (noting that evidence that competitors do not need to use

16   the mark can "strongly favor" suggestiveness).  At least one of the remaining three,

17   York Dental Lab, is clearly a Glidewell knock-off.  (Dkt. #93-47 (copying

18   Glidewell's tagline, "more brawn than beauty")).  This supports distinctiveness, not

19   genericness.  *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 615 (9th Cir. 1989)

20   ("[P]roof of copying strongly supports an inference of secondary meaning.").

21          Finally, to the extent that this evidence tends to show that labs "promote their

22   all-zirconia crowns for use by bruxers," as Keating contends, the evidence also

23   shows that "bruxer" means *patients who suffer from bruxism*, and does not mean

24   zirconia dental restorations.  The generic term for the latter is exactly the term

25   Keating uses in PSUF 62: "all-zirconia crowns."  The evidence additionally

26   bolsters the point made above, that Glidewell's trademark does not foreclose

27   competitors from using the term "bruxer" to describe their products, as long as they

28   do not use the word in a *trademark* that is confusingly similar to BruxZir.

Snell & Wilmer

L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

GLIDEWELL'S REPLY ISO MOTION FOR PSJ AS TO
KEATING'S INVALIDITY DEFENSE AND COUNTERCLAIM
CASE NO. SACV11-01309 DOC (ANx)

- 13 -

16222890.1

Snell & Wilmer

L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

### c.   **Keating Has Failed to Produce A Survey**

As Keating states, "[s]urveys are commonly used to probe consumer perceptions as to the generic-trademark dividing line." (Dkt. #118 at 7:9-10) Because the BruxZir mark is registered, Keating bears a "heavy" burden to overcome the "strong presumption" of distinctiveness. *Zobmondo Enter.*, 602 F.3d at 1113, 1115, 1121; *see also, e.g.*, *Reno Air Racing*, 452 F.3d at 1135. Many courts have noted the importance of proffering competent survey evidence to overcome this presumption. *E.g.*, *Pfizer Inc. v. Sachs*, 652 F. Supp. 2d 512, 521 (S.D.N.Y. 2009) ("Overcoming this presumption of validity requires evidence such as properly conducted consumer surveys and proof of generic use of the mark by competitors, the mark's owner, or third parties."); *see also Magic Wand, Inc. v. RDB, Inc.*, 940 F.2d 638 (Fed. Cir. 1991); *Cascade Mfg. Sales, Inc. v. Providnet Co. Trust*, 2008 WL 4889716, at *3 (W.D. Wash. Nov. 12, 2008); *Heroes, Inc. v. Boomer Esiason Hero's Found., Inc.*, 43 U.S.P.Q.2d 1193 (D.D.C. 1997). As McCarthy notes, "[c]onsumer surveys have become almost de rigueur in litigation over genericness.... A litigant who alleges that a designation is not a valid trademark because it is perceived as a generic name of a product or service and does not introduce a survey to support this challenge may be viewed as less than serious by some judges." McCarthy § 12:14.

Presuming an interest in appearing fully "serious" to the Court, it is surprising that Keating has introduced no genericness survey. The absence of a survey, in view of Keating's financial ability to obtain one, raises an inference that the results would not have been favorable to Keating. *See Playboy Enters. v. Netscape Comms. Corp.*, 55 F. Supp. 2d 1070, 1084 (C.D. Cal. 1999); *Cairns v. Franklyn Mint Co.*, 24 F. Supp. 2d 1013, 1041-42 (C.D. Cal. 1998).

### d.   **Glidewell's Promotional Materials and Activities Do Not "Establish Genericness of The Mark"**

Keating next says that Glidewell's videos and presentations by Glidewell

GLIDEWELL'S REPLY ISO MOTION FOR PSJ AS TO
KEATING'S INVALIDITY DEFENSE AND COUNTERCLAIM
CASE NO. SACV11-01309 DOC (ANx)

- 14 -

16222890.1

1    employees "establish[] genericness of the mark." (Dkt. #118 at 9:3-4)  In

2    particular, Keating argues that Glidewell's pronunciation of "BruxZir" in these

3    materials, and occasional use of the term as a noun, "establish Glidewell's own

4    generic use." (Dkt. #118 at 9:18-25)  The argument is frivolous.[5]

5           That a product may be called by its given name does not negate its function

6    as a mark or render it generic, so long it is used to identify a product of a single

7    source. *See In re DC Comics, Inc.*, 689 F. 2d 1042, 1054 (C.C.P.A. 1982).  "The

8    fact that buyers often call for or order a product by a term does not necessarily

9    evidence that the term is a 'generic name.'  For example, if at a lunch counter one

10   says, 'I'll have a cheeseburger and a COKE.'  Or if a new care buyer brags to a

11   neighbor, 'I've just been polishing up my new FORD!'  Does the neighbor respond,

12   'FORD? A FORD what?'  The generic names 'cola' and 'car' are understood and

13   so, dropped in common speech.  Such usage does not evidence genericness of

14   COKE or FORD—quite the contrary.  It shows that the terms are such strong, well-

15   known trademarks that they need no generic name to convey the message.  The

16   generic name is understood by all and dropped off." McCarthy § 12.8.  Similarly,

17   "occasional generic usage does not destroy a trademark.  Indeed, often the use of a

18   trademark as a generic noun illustrates the power of a trademark." *Caesars World,*

19   *Inc. v. Milanian*, 247 F. Supp. 2d 1171, 1194 (D. Nev. 2003).

20          Here, the BruxZir mark "is like Coca-Cola to dentists as it is a source

21   identifier for products offered by the predominant supplier of solid zirconia crowns

22   and material used to make solid zirconia crowns." (SAF 94)  Even assuming that

23   Glidewell occasionally uses the BruxZir mark as a noun in its videos or other

24   promotional materials, if this made the BruxZir mark generic, then "Ford" would be

---

[5] Also frivolous is Keating's disparagement of testimony from Glidewell employees
as "self-serving" and therefore "entitled to little weight," (Dkt. #118 at 9:8-9), and
of the dentists' testimony as "not persuasive" because it is "based on their existing
relationship with Glidewell," (Dkt. #118 at 23:15-16).  "Credibility determinations,
the weighing of the evidence, and the drawing of legitimate inferences from the
facts are jury functions, not those of a judge, whether he is ruling on a motion for
summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255.

GLIDEWELL'S REPLY ISO MOTION FOR PSJ AS TO
KEATING'S INVALIDITY DEFENSE AND COUNTERCLAIM
CASE NO. SACV11-01309 DOC (ANx)

- 15 -

16222890.1

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1   generic because of television commercials exhorting consumers to "put a Ford in
2   the driveway this holiday season," and "Coke" would be generic because of
3   advertisements exhorting consumers to "have a Coke and a smile."  This would be
4   absurd, particularly given that the uses Keating points to as being "generic" are all
5   in Glidewell's *own promotional materials*.  This context reinforces for consumers
6   that there is a single source (Glidewell) of the BruxZir brand products promoted
7   therein, particularly given that the mark is presented in association with the
8   Glidewell Labs name.  (SAF 92).  It is implausible that a dentist would watch one
9   of Dr. DiTolla's videos, or attend a Glidewell presentation, and conclude that the
10  BruxZir products discussed therein were anything other than Glidewell's products.

**e.**   **The Use of "BruxZir" by Glidewell's "Authorized" Labs**
**Does Not Render "BruxZir" Generic**

13          Keating next argues that Glidewell's "authorized labs" program somehow
14  "reinforces" that "the BruxZir mark *is not an indication of Glidewell as the*
15  *source.*"  (Dkt. #118 at 18:5 (emphasis in original))  The premise of this argument –
16  that that consumers must know the identity of the source of goods sold under a
17  mark in order for the mark to be distinctive and nongeneric – is legally incorrect.  It
18  is enough that consumers associate the mark with a single, albeit anonymous,
19  source. *See* 15 U.S.C. § 1127; *Maljack*, 81 F.3d at 887; McCarthy § 15:8.
20          Keating's argument is faulty in another important respect.  "Where a
21  registered mark … is … used legitimately by related companies, such use shall
22  inure to the benefit of the registrant …, and such use shall not affect the validity of
23  such mark or of its registration …."  15 U.S.C. § 1055.  "The term 'related
24  company' means any person whose use of a mark is controlled by the owner of the
25  mark with respect to the nature and quality of the goods or services on or in
26  connection with which the mark is used."  15 U.S.C. § 1127.  "[P]roperly licensed
27  use by licensees will serve to fortify the legal and commercial strength of the
28  licensed mark."  McCarthy § 18:45.50.  "[T]here is no necessity for the name of the

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

GLIDEWELL'S REPLY ISO MOTION FOR PSJ AS TO
KEATING'S INVALIDITY DEFENSE AND COUNTERCLAIM
CASE NO. SACV11-01309 DOC (ANx)

16222890.1                                          - 16 -

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1   licensor to appear on licensed uses of a mark owned by the licensor.  That is,

2   licensed uses may properly contain only the licensed mark and the name of the

3   licensee." McCarthy § 18:45.  Here, Glidewell permits the authorized labs to use

4   the BruxZir mark and Glidewell exercises control over the nature and quality of

5   crowns they sell under the BruxZir brand.  (SAF 95).  Contrary to Keating's

6   assertions, there is no "naked licensing" here.  As a matter of law, the authorized

7   labs' use of the mark "inure[s] to the benefit" of Glidewell, and it "shall not affect

8   the validity of [the] mark or of its registration."  15 U.S.C. § 1055.

9        Keating's argument is also factually unsupported.  Virtually all of the

10  authorized lab web pages Keating submitted show that the authorized labs use the

11  BruxZir mark in a manner so as to indicate that it is associated with a single source.

12  (SAF 96).  For example, many, such as OralDesigns, expressly identify themselves

13  as an "Authorized BruxZir Laboratory," thereby conveying that they have been

14  "authorized" by a single source.  (SAF 97).  Others, such as Continental Dental

15  Labs of California, expressly identify Glidewell as the source, such as by stating

16  that "BruxZir® is a registered trademark of Glidewell Laboratories."  (SAF 98).

17  All or virtually all of the labs use the "®" symbol with the BruxZir mark, thereby

18  indicating to consumers that the mark is owned by a single source.

19       Moreover, Keating has submitted no evidence that the absence of the

20  Glidewell name from an authorized lab's website has actually caused any dentists

21  to conclude that the lab's BruxZir brand products have no association with a single

22  source (whether Glidewell or an anonymous single source).  In fact, Glidewell

23  actively informs dentists of this association by (a) maintaining a public list of

24  authorized labs on its website; (b) sending, on a quarterly basis, an "Rx booklet" to

25  approximately 120,000 dentists across the country, listing all the authorized labs

26  and encouraging the dentists to use them to obtain BruxZir brand products; and

27  (c) doing periodic "E-blasts" and letter campaigns  to "to bring the awareness of the

28  BruxZir brand and its benefits and what makes it better."  (SAF 99).

GLIDEWELL'S REPLY ISO MOTION FOR PSJ AS TO
KEATING'S INVALIDITY DEFENSE AND COUNTERCLAIM
CASE NO. SACV11-01309 DOC (ANx)

- 17 -

16222890.1

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

4. **The Testimony Of Third-Party Dentists and Glidewell's Experts Establishes Nongenericness**

    a. **Glidewell's Evidence Was Not Untimely**

Keating devotes a considerable portion of its brief to attempting to exclude Glidewell's evidence of nongenericness, including the testimony of third party dentists as well as the expert testimony of Dr. Goldstein, Dr. DiTolla, and Prof. Franklyn. (Dkt. #118 at 13:19-14:14; 15:14-17:28) Keating's main thrust is that this evidence was "untimely" because it was first disclosed on October 29. As to the expert reports of Dr. Goldstein, Dr. DiTolla, and Prof. Franklyn, Keating also argues that "opening reports were due on September 15, 2012 and rebuttal reports were due on October 15, 2012." (Dkt. #118 at 15:15-16) But the Scheduling Order requires only that all discovery, including expert discovery, be completed by the discovery cut-off, October 29, 2012. (Dkt. #15) Although the parties, in their Rule 26(f) report, had proposed the expert report deadlines Keating cites, they were not adopted by the Court and are not in the Scheduling Order. *Cf.* Order, *Etagz, Inc. v. Quiksilver, Inc.*, No. SACV 10-300 DOC (MLGx) (C.D. Cal. Nov. 16, 2012), ECF No. 179 ("The Minute Order from the scheduling conference sets only one date, November 5, 2012, as the expert discovery cutoff. The Court declines to find that the Minute Order also adopted all the sub-deadlines that were contained in the 26(f) Report, given that the Minute Order only includes the November 5, 2012, expert discovery cutoff date.") (Shaw Decl., ¶ 6, Ex. 113).

Glidewell's amended witness disclosures and expert reports were served by the discovery cut-off, October 29, 2012. They are not, therefore, subject to exclusion as "untimely." *See* Order, *Etagz, Inc. v. Quiksilver, Inc.*, No. SACV 10-300 DOC (MLGx) (C.D. Cal. Nov. 16, 2012), ECF No. 179 (denying motion to strike expert reports as untimely because report was served before discovery cut-off date) (Shaw Decl., ¶ 6, Ex. 113); *see also Nuance Comms., Inc. v. ABBYY Software House*, C 08-02912 JSW MEJ, 2012 WL 2838431 (N.D. Cal. July 10, 2012)

GLIDEWELL'S REPLY ISO MOTION FOR PSJ AS TO
KEATING'S INVALIDITY DEFENSE AND COUNTERCLAIM
CASE NO. SACV11-01309 DOC (ANx)

- 18 -

16222890.1

1   (denying motion to strike 25 witnesses disclosed on last day of discovery); *Russell*

2   *v. Daiichi-Sankyo, Inc.*, CV 11-34-BLG-CSO, 2012 WL 1805038 (D. Mont. May

3   17, 2012) (holding that disclosure of fact witness made on day of discovery cut-off

4   was timely) (Shaw Decl., ¶ 7, Ex. 114); Order, *ESM Techs., LLC v. Biova, LLC*,

5   No. 10-3009-CV-S-RED (W.D. Mo. Mar. 21, 2012), ECF No. 209 (holding expert

6   declaration and report filed on last day of discovery to be timely); *3Com Corp. v.*

7   *Realtek Semi. Corp.*, C 03-2177 VRW, 2008 WL 783383 (N.D. Cal. Mar. 24, 2008)

8   (denying motion in limine to preclude testimony from third-party witnesses first

9   disclosed on the final day of fact discovery); *Cyntegra, Inc. v. Idexx Labs., Inc.*,

10  CV06-4170PSG(CTX), 2007 WL 5193736 (C.D. Cal. Sept. 21, 2007) (holding

11  service of expert reports on the last day of discovery to be timely), *affirmed,* 322 F.

12  App'x 569 (9th Cir. 2009); *Roe v. Nevada*, 621 F. Supp. 2d 1039, 1060 (D. Nev.

13  2007) (holding disclosure of fact witnesses on last day of discovery to be timely).

14        Moreover, if Keating were truly prejudiced by disclosure of these witnesses

15  on the last day of discovery, it is prejudice that Keating manufactured.  Glidewell

16  informed Keating that it would make the witnesses under its control available for

17  deposition, and would not oppose any effort by Keating to depose those witnesses

18  not under Glidewell's control (i.e., the dentist fact witnesses).  (Shaw Decl.¶ 8, Ex.

19  115).  Keating declined the offer.  (Shaw Decl.¶ 8, Ex. 115).  Excluding Glidewell's

20  witnesses would be particularly inappropriate under these circumstances. *See*

21  *Garvey v. Kmart Corp.*, 2012 U.S. Dist. LEXIS 160006, at *3 (N.D. Cal. 2012)

22  (denying a motion to exclude fact witness disclosed after the discovery deadline,

23  noting that movant had declined to depose the witness); *3Com Corp. v. Realtek*

24  *Semiconductor Corp.*, C 03-2177 VRW, 2008 WL 783383 (N.D. Cal. Mar. 24,

25  2008) (denying motion in limine to exclude third-party witnesses disclosed on last

26  day of fact discovery because movant never sought agreement or leave of court to

27  subpoena witnesses after discovery cut-off); *cf. Roe v. Nevada*, 621 F. Supp. 2d

28  1039, 1060 (D. Nev. 2007) (rejecting defendant's argument that disclosure of fact

GLIDEWELL'S REPLY ISO MOTION FOR PSJ AS TO
KEATING'S INVALIDITY DEFENSE AND COUNTERCLAIM
CASE NO. SACV11-01309 DOC (ANx)

16222890.1

witnesses on last day of discovery was untimely, and noting that "Defendants have sat on their rights to bring any motion to reopen discovery on account of Plaintiffs' last-minute disclosure…. [A]ny prejudice is caused by Defendants' own dilatory conduct."). Additional reasons not to exclude this evidence are set forth in Glidewell's currently filed responses to Keating's evidentiary objections.

### b.   Dentists' Testimony Supports Nongenericness

Keating also contends that the testimony of Drs. Doneff, Newman, Cohen, Luke, Bell, Toca, and Michiels is "insufficient to support the validity" of the BruxZir mark because it supposedly is only evidence of "minority use." (Dkt. #118 at 14:17-24) Keating is either confused or is attempting to confuse the Court. Of course these seven dentists are but a "minority" of the thousands of dentists in the United States, but that does not render their testimony evidence of mere "minority use." These dentists testify that they have known, both before and after April 2011, and through various communications with other dentists, are aware that other dentists have known, that the BruxZir mark is a brand or trademark that signifies a single source of zirconia crowns and bridges. (SAF 13). They also attest to the fact that, both before and after April 2011, they, and other dentists with whom they regularly communicate, used the term 'bruxer' exclusively to refer to a person who suffers from bruxism (i.e., habitual and destructive grinding of the teeth and clenching of the jaw) and not to refer to zirconia crowns and bridges as a type or category of product. (SAF 14).[6] Given that Keating's thirteen dentists (and Eggleston) each fails to testify as to genericness of "bruxzir" or "bruxer" *as of April 2011*, the testimony of Drs. Doneff, et al. is unrebutted by any contrary dentist testimony. There is no basis to view it as evidencing mere "minority use" among dentists.

---

[6] When referring to zirconia crowns and bridges as a type or category of product generally, these dentists, and the dentists that they communicate with, use "zirconia crowns," "all zirconia crowns," "monolithic zirconia crowns," "full zirconia crowns," or "solid zirconia crowns." (SAF 14). This is the same terminology seen in the declarations from Keating's thirteen dentists. (SAF 88)

Snell & Wilmer

L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

GLIDEWELL'S REPLY ISO MOTION FOR PSJ AS TO
KEATING'S INVALIDITY DEFENSE AND COUNTERCLAIM
CASE NO. SACV11-01309 DOC (ANx)

- 20 -

16222890.1

### c.   **Experts' Testimony Supports Nongenericness**

Dr. Goldstein opines that "dentists do not refer to solid zirconia crowns as 'bruxers' or 'bruxer crowns,'" and that "dentists do not understand the mark BruxZir to refer to solid zirconia crowns from any source, but rather … dentists understand the mark BruxZir to identify the source of solid zirconia crowns and material to make solid zirconia crowns – the solid zirconia crowns supplied by Glidewell." (SAF 22). Keating has little to say in rebuttal, other than that other parts of Goldstein's testimony support descriptiveness rather than suggestiveness. (Dkt. 118 at 16:3-19) This hardly undermines his testimony as to nongenericness.

In addition, Dr. DiTolla opines that "'bruxer' is not a commonly used term in the dental field for crowns. Instead, the term 'bruxer' refers to an individual who suffers from bruxism …." Dkt. 90-1 (Ex. P, DiTolla Decl., ¶ 12). He also opines that "the BruxZir name has attained in the minds of dentists a strong identifying source with Glidewell." Dkt. 90-1 (Ex. P, DiTolla Decl., ¶ 11). Keating's brief is silent as to this, other than the meaningless comment that Dr. DiTolla "admits that the terms bruxer and bruxism are taught in dental school." (Dkt. #118 at 16:17-18)

Finally, Keating lodges a litany of attacks on Prof. Franklyn's testimony, most centering on procedural aspects such as purported untimeliness. Glidewell responds to each of Keating's evidentiary objections in its concurrently filed Response to Defendant Keating Dental Arts, Inc.'s Objections to Declaration and Expert Reports of David Franklyn Submitted in Support of Glidewell's Motions for Partial Summary Judgment. If the Court overrules Keating's objections, as it should, Franklyn's testimony also strongly supports nongenericness.

## B.   **Keating Has Failed to Demonstrate a Genuine Issue of Material Fact as to Suggestiveness**

Keating admits that neither "bruxzir" nor "bruxer" are found in dictionaries. Dkt. #124, at 20:22-27. Keating also admits that its marketing materials include explanatory language with its KDZ Bruxer mark. Dkt. #124, at 21:2-16. Both facts

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

16222890.1

1  indicate suggestiveness. *Zombondo Enter.*, 602 F.3d at 1116; *id.* at 1120 n.12

2  (noting that infringer's use of explanatory language with its mark "cuts against the

3  … argument that [the mark] is a well-established, culturally-pervasive concept").

4      Keating argues that "no imagination or mental leap is necessary with

5  BruxZir," (Dkt. #118 at 20:21-22), but the "imagination test" is not so easily

6  flunked as Keating supposes.  In *Lahoti v. Vericheck, Inc.*, the Ninth Circuit

7  affirmed a finding that VERICHECK was suggestive, observing that "consumers

8  must separate 'veri' from 'check' and reason that 'veri' is short for verification

9  services.'"  636 F.3d 501, 506 (9th Cir. 2011); *see also Conversive, Inc. v.*

10  *Conversagent, Inc.*, 433 F. Supp. 2d 1079, 1088 (C.D. Cal. 2006) (finding

11  CONVERSIVE and CONVERSIVE AGENT suggestive for computer software that

12  allowed for interaction between a human website user and a computer-generated

13  customer service "agent").  Here, to understand the mark's relationship to the

14  product, dentists must first separate "brux" from "zir."  They must then reason that

15  "brux" suggests strength and possible uses for the product (e.g., treating patients

16  with bruxism).  They must also reason that "zir" is short for zirconia.  They must

17  then reason that "zir" suggests the product's material.  As with the mark considered

18  in *Lahoti*, the BruxZir mark does not describe the product's features or nature, but

19  merely suggests them, requiring multi-step reasoning by the consumer.  That it

20  might convey some information about the product does not render it descriptive or

21  preclude it from being suggestive. *Zombondo Enter.*, 602 F.3d at 1114, 1119.

22      Keating next argues that "the evidence shows that not only do Glidewell's

23  competitors need to use the terms brux and bruxer, they actually use the terms

24  currently." (Dkt. #118 at 21:13-15)  But Keating's cited evidence of this –Drake's

25  ZIR-CAST mark – contains neither brux nor bruxer.  Keating then cites its SUF 60-

26  62, already addressed above, which does not support descriptiveness over

27  suggestiveness.  Oddly, Keating ignores the Frattura declaration, which describes

28  Showcase Dental as a "direct competitor" of Keating and Glidewell.  (SAF 100).

GLIDEWELL'S REPLY ISO MOTION FOR PSJ AS TO
KEATING'S INVALIDITY DEFENSE AND COUNTERCLAIM
CASE NO. SACV11-01309 DOC (ANx)

- 22 -

16222890.1

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1   Frattura does not say that Showcase needs to use "bruxer" or "bruxzir," and in fact

2   her testimony establishes the opposite by pervasively using "full contour zirconia

3   crown" and "all-zirconia crown," rather than "bruxer crown" or "bruxzir crown," to

4   describe zirconia crown products.  (SAF 102).  Moreover, when asked by Glidewell

5   in January of 2012 to stop using the name "Zir-Bruxer," Frattura did not protest that

6   Showcase needed to use "bruxer."  She instead responded that "[a] name of a crown

7   is not going to change a single part of my customer's satisfaction of my products or

8   whether they use my lab *or even request this product*."  (SAF 103). (emphasis

9   added).   Shortly after, Showcase announced: "We have hereby changed the name

10  of our product to reflect the shape and product make-up: 'Full Contour Zirconia.'"

11  (SAF 104).  Obviously, it did not *need* to use "bruxzir" or "bruxer" *in its mark.*

**C.   Keating Has Failed to Demonstrate a Genuine Issue of Material Fact as to Secondary Meaning**

14         Keating contends that "Glidewell "is not entitled to a presumption of

15  secondary meaning unless the Trademark Examiner required proof of secondary

16  meaning as part of the application for registration of the mark."  (Dkt. #118 at 22:9-

17  12)  It is true that a footnote in *Zobmondo* supports this.  *See Zobmondo Enter.*, 602

18  F.3d 1108 at 1114 n.7.  But it is also true that long-standing Ninth Circuit precedent

19  is to the contrary, and it is doubtful that the Ninth Circuit intended to overrule itself

20  by footnote.  *See Americana Trading Inc. v. Russ Berrie & Co.*, 966 F.2d 1284,

21  1287 (9th Cir. 1992) ("[R]egistration carries a presumption of secondary meaning.

22  [Defendant] therefore had the burden to prove that secondary meaning had not

23  attached if it wished to argue that [plaintiff's] mark was weak."); *see also Avery*

24  *Dennison Corp. v. Sumpton*, 189 F.3d 868, 876 (9th Cir.1999); *Conversive*, 433

25  F. Supp. 2d at 1088; Ninth Cir. Model Jury Instr. 15.10, cmt. (incorporating

26  *Americana Trading* in a model instruction "approved 11/2010," after *Zobmondo*).

27         But even if the burden rests with Glidewell and not Keating, Glidewell has

28  easily carried it by submitting copious evidence on the secondary meaning factors,

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

GLIDEWELL'S REPLY ISO MOTION FOR PSJ AS TO
KEATING'S INVALIDITY DEFENSE AND COUNTERCLAIM
CASE NO. SACV11-01309 DOC (ANx)

- 23 -

16222890.1

1  including evidence specific to the period through April 2011. (Dkt. 82-1 at 20:1-

2  24:12; Dkt. #114 at 22:4-25:16)  This evidence is largely unrebutted, at least

3  substantively.  Keating's complaints about timeliness and admissibility are

4  addressed in Glidewell's concurrently filed responses to Keating's various

5  evidentiary objections, and Glidewell's arguments need not be repeated here.

6      One final point.  In its brief, Keating asserts that, after it was sued in August

7  2011, it "initiated a policy" of "calling dentists who wrote 'BruxZir' … on their

8  prescription forms submitted to Keating" in order to educate them that "BruxZir" is

9  Glidewell's trademark and to confirm that the dentists wanted Keating's product

10  and not another lab's product.[7]  (Dkt. #118 at 11:16-21)  Perhaps so, but manifestly

11  this was *not* Keating's policy during the several months between the introduction of

12  "KDZ Bruxer" in April 2011 and the filing of the lawsuit in August.



7  Keating argues that, "[u]nder Fed. R. Evid. 407, evidence of actions taken by
defendants taken to reduce potential liability cannot be relied upon as an
admission." (Dkt. #118 at 11:6-13)  This argument is misplaced; Keating's own
authority states that Rule 407 does not exclude evidence of remedial measures if
proffered for a purpose other than proving "negligence, culpable conduct, a defect
in a product, a defect in a product's design, or a need for a warning or instruction."
*Interactive Health LLC v. King Kong USA, Inc.*, 2008 U.S. Dist. LEXIS 123559,
*20 (C.D. Cal. July 24, 2008).  Here, Glidewell proffered evidence showing
Keating's acknowledgement that "BruxZir" is Glidewell's proprietary mark, and
that Keating has had to correct confusion.  This is permissible under Rule 407.

GLIDEWELL'S REPLY ISO MOTION FOR PSJ AS TO
KEATING'S INVALIDITY DEFENSE AND COUNTERCLAIM
CASE NO. SACV11-01309 DOC (ANx)

- 24 -

16222890.1

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500



Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

### III.   CONCLUSION

For the reasons set forth above and in Glidewell's opening brief, Glidewell respectfully moves the Court to enter summary judgment in favor of Glidewell as to Keating's First Affirmative Defense and its Fourth Counterclaim (for cancellation of Registration No. 3,739,663).

Dated: December 3, 2012

SNELL & WILMER L.L.P.

By:

Philip J. Graves
Greer N. Shaw

Attorneys for Plaintiff
James R. Glidewell Dental Ceramics, Inc. dba
GLIDEWELL LABORATORIES

GLIDEWELL'S REPLY ISO MOTION FOR PSJ AS TO
KEATING'S INVALIDITY DEFENSE AND COUNTERCLAIM
CASE NO. SACV11-01309 DOC (ANx)

- 25 -

16222890.1

1

2

*Glidewell Laboratories v. Keating Dental Arts, Inc.*
**United States District Court, Central, Case No. SACV11-01309-DOC (ANx)**

3

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2012, I electronically filed the document

described as **JAMES R. GLIDEWELL DENTAL CERAMICS, INC.'S REPLY**

**IN SUPPORT OF GLIDEWELL'S MOTION FOR PARTIAL SUMMARY**

**JUDGMENT AS TO KEATING'S INVALIDITY DEFENSE AND**

**COUNTERCLAIM** with the Clerk of the Court using the CM/ECF System which

will send notification of such filing to the following:

David G. Jankowski
Jeffrey L. Van Hoosear
Lynda J Zadra-Symes
Knobbe Martens Olson and Bear LLP
2040 Main Street, 14th Floor
Irvine, CA  92614

**Attorneys for Defendant Keating Dental Arts, Inc.**
Tel:  (949) 760-0404
Fax: (949) 760-9502

Jeffrey.vanhoosear@kmob.com
David.jankowski@kmob.com
Lynda.zadra-symes@kmob.com
litigation@kmob.com

Dated:  December 3, 2012          SNELL & WILMER L.L.P.

By: *s/Philip J. Graves*
_____
Philip J. Graves
Greer N. Shaw

Attorneys for Plaintiff
James R. Glidewell Dental Ceramics, Inc.
dba GLIDEWELL LABORATORIES

16139994.1

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071