Intellectual Property Library

# Trademark Manual of Examining Procedure

## 8th Edition

WEST

EXHIBIT 161
-22-

# Trademark Manual of Examining Procedure

## 8th Edition

## Issued October 2011

KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 MAIN ST.
14TH FLOOR
IRVINE, CA 92614

**WEST.**
A Thomson Reuters business

For Customer Assistance Call 1-800-328-4880

Mat #41243546

EXHIBIT 161
-23-

Cover Design Copyright 2011

© 2011 Thomson Reuters

The trademarks used throughout this publication are used herein under license.

Copyright is not claimed in any works of the United States Government.

For authorization to photocopy, please contact the **Copyright Clearance Center** at 222 Rosewood Drive, Danvers, MA 01923, USA (978) 750-8400; fax (978) 646-8600 or **West's Copyright Services** at 610 Opperman Drive, Eagan, MN 55123, fax (651) 687-7551. Please outline the specific material involved, the number of copies you wish to distribute and the purpose or format of the use.

This publication was created to provide you with accurate and authoritative information concerning the subject matter covered; however, this publication was not necessarily prepared by persons licensed to practice law in a particular jurisdiction. The publisher is not engaged in rendering legal or other professional advice and this publication is not a substitute for the advice of an attorney. If you require legal or other expert advice, you should seek the services of a competent attorney or other professional.

ISBN 978-0-314-60695-2

EXHIBIT 161
-24-

# Chapter 700
# Procedure for Examining Applications

701    Statutory Authority for Examination

702    Order of Work

    702.01    Order of Examination

    702.02    "Special" Applications

    702.03    Related Applications

        702.03(a)    Companion Applications

            702.03(a)(i)    Companion Applications Not Previously Assigned for the Same or Similar Marks

            702.03(a)(ii)    Companion Applications Previously Assigned

            702.03(a)(iii)    Companion Registrations

            702.03(a)(iv)    Classification and Identification in Companion Applications That Have Registered or Been Published for Opposition

        702.03(b)    Conflicting Applications

703    USPTO Does Not Issue Duplicate Registrations

704    Initial Examination

    704.01    Initial Examination Must be Complete

    704.02    Examining Attorney's Search

    704.03    Supervisory Examining Attorney May Indicate Action for Non-Signatory Examining Attorney

705    The Examining Attorney's Letter or Action

    705.01    Language in Examining Attorney's Letter

    705.02    Examining Attorneys Should Not Volunteer Statements

    705.03    Citation of Conflicting Marks

    705.04    Reference to Matter in Printed or Online Publications

| 710 | Evidence |
|---|---|
| 710.01 | Evidence Supporting Refusal or Requirement |

In general, the examining attorney must always support his or her action with relevant evidence and ensure that proper citations to the evidence are made in the Office action.

All evidence that the examining attorney relies on in making a requirement or refusal must be placed in the record and copies must be sent to the applicant.

In appropriate cases, the examining attorney may also present evidence that may appear contrary to the USPTO's position, with an appropriate explanation as to why this evidence was not considered controlling. In some cases, this may foreclose objections from an applicant and present a more complete picture if there is an appeal. Cf. *In re Federated Department Stores Inc.*, 3 USPQ2d 1541, 1542 n.2 (TTAB 1987).

| 710.01(a) | Evidence From Research Database |
|---|---|

If evidence is obtained from a research database, the record should include an indication of the specific search that was conducted. The record should indicate the libraries and/or files that were searched and the results. If the examining attorney does not review all of the documents located in a search, the record should indicate the number of documents that were reviewed. The search summary should be made a part of the record and will provide most of this information. Information not indicated on the search summary, such as the number of documents viewed, should be stated in narrative in the Office action. The Office action should include a citation to the research service, indicating the service, the library and the file searched, and the date of the search (e.g., "LEXIS®, News and Business, All News (Sept. 25, 2009)").

When evidence is obtained from a research database, the examining attorney does not have to make all stories of record. It is sufficient to include only a portion of the search results, as long as that portion is a representative sample of what the entire search revealed. *In re Vaughan Furniture Co. Inc.*, 24 USPQ2d 1068, 1069 n.2 (TTAB 1992). See also *In re Federated Department Stores Inc.*, 3 USPQ2d 1541, 1542 n.2 (TTAB 1987).

See TMEP §710.01(b) regarding evidence originating in foreign publications.

| 710.01(b) | Internet Evidence |
|---|---|

Articles downloaded from the Internet are admissible as evidence of information available to the general public, and of the way in which a term is being used by the public. However, the weight given to this evidence must be carefully evaluated, because the source may be unknown. See *In re Total Quality Group Inc.*, 51 USPQ2d 1474, 1475-76 (TTAB 1999); *Raccioppi v.*

EXHIBIT 161
-26-

*Apogee Inc.*, 47 USPQ2d 1368, 1370-71 (TTAB 1998). When making Internet evidence part of the record, the examining attorney must both (1) provide complete information as to the source or context of the evidence, citing any information that would aid a party in locating the relevant document (e.g., the complete URL address of the website, the time and date the search was conducted, and the terms searched), and (2) download and attach the evidence to the Office action. Because of the transitory nature of Internet postings, websites referenced only by links may be modified or deleted at a later date without notification. Thus, the information identified only by links would not be available for verification by the applicant to corroborate or refute. See *Safer Inc. v. OMS Investments Inc.*, 94 USPQ2d 1031, 1039 (TTAB 2010).

A list of Internet search results generally has little probative value, because such a list does not show the context in which the term is used on the listed web pages. See *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 967, 82 USPQ2d 1828, 1833 (Fed. Cir. 2007) (GOOGLE® search results that provided very little context of the use of ASPIRINA deemed to be "of little value in assessing the consumer public perception of the ASPIRINA mark"); *In re Tea and Sympathy, Inc.*, 88 USPQ2d 1062, 1064 n.3 (TTAB 2008) (truncated Google® search results entitled to little probative weight without additional evidence of how the searched term is used); *In re Thomas*, 79 USPQ2d 1021 (TTAB 2006) (Board rejected an applicant's attempt to show weakness of a term in a mark through citation to a large number of GOOGLE® "hits" because the "hits" lacked sufficient context); *In re King Koil Licensing Co. Inc.*, 79 USPQ2d 1048 (TTAB 2006); *In re Remacle*, 66 USPQ2d 1222, 1223 n.2 (TTAB 2002); *In re Fitch IBCA Inc.*, 64 USPQ2d 1058 (TTAB 2002). The examining attorney should attach copies of the website pages that show how the term is actually used.

As long as it is written in the English language, information originating on foreign websites or in foreign news publications that are accessible to the United States public may be relevant to discern United States consumer impression of a proposed mark. The probative value of such evidence will vary depending upon the context and manner in which the term is used. In *Bayer*, NEXIS® evidence that originated in foreign publications was deemed to be of "some probative value with respect to prospective consumer perception in the United States," the Court noting "the growing availability and use of the internet as a resource for news, medical research results, and general medical information." 488 F.3d at 969, 82 USPQ2d at 1835. In *Remacle*, the Board held evidence from a website in Great Britain admissible, noting that:

> [I]t is reasonable to assume that professionals in medicine, engineering, computers, telecommunications and many other fields are likely to utilize all available resources, regardless of country of origin or medium. Further, the Internet is a resource that is widely

EXHIBIT 161
-27-

available to these same professionals and to the general public in the United States. Particularly in the case before us, involving sophisticated medical technology, it is reasonable to consider a relevant article from an Internet web site, in English, about medical research in another country, Great Britain in this case, because that research is likely to be of interest worldwide regardless of its country of origin.

66 USPQ2d at 1224 n.5. However, the weight given to such evidence may vary depending upon the context and manner in which the term is used. In *King Koil*, the Board gave only "limited probative value" to the contents of websites of commercial entities outside the United States showing use of the term "breathable" in relation to mattresses and bedding, stating that:

> [C]onsumers may visit foreign web sites for informational purposes, even if they are more likely to focus on internet retailers that can easily ship items or make items available for pick up in a store in a location convenient to the purchaser. That would appear especially likely in a case such as this, where the item in question, a mattress, is large and potentially more expensive to ship than a smaller item. Accordingly, while we do not discount entirely the impact of foreign web sites in this case, we find them of much more limited probative value than in the *Remacle* case.

79 USPQ2d at 1050. See also In re Cell Therapeutics, Inc., 67 USPQ2d 1795, 1797-98 (TTAB 2003) (relying on several NEXIS® items from foreign wire services to support a refusal and distinguishing earlier decisions that accorded such evidence little probative value given the sophisticated public and the widespread use of personal computers that increase access to such sources).

With respect to evidence taken from the online Wikipedia® encyclopedia, at www.wikipedia.org, the Board has noted that "[t]here are inherent problems regarding the reliability of Wikipedia entries because Wikipedia is a collaborative website that permits anyone to edit the entries," and has stated as follows:

> [T]he Board will consider evidence taken from Wikipedia so long as the non-offering party has an opportunity to rebut that evidence by submitting other evidence that may call into question the accuracy of the particular Wikipedia information. Our consideration of Wikipedia evidence is with the recognition of the limitations inherent with Wikipedia (e.g., that anyone can edit it and submit intentionally false or erroneous information)....

> As a collaborative online encyclopedia, Wikipedia is a secondary source of information or a compilation based on other sources. As recommended by the editors of Wikipedia, the information in a

EXHIBIT 161
-28-

particular article should be corroborated. The better practice with respect to Wikipedia evidence is to corroborate applicant's Wikipedia evidence....

*In re IP Carrier Consulting Group*, 84 USPQ2d 1028, 1032 (TTAB 2007).

Given its inherent limitations, any information obtained from Wikipedia® should be treated as having limited probative value. If the examining attorney relies upon Wikipedia® evidence and makes it of record, then additional supportive and corroborative evidence from other sources should also be made of record, especially when issuing final actions.

The examining attorney must check applicant's own website for information about the goods/services. *See In re Promo Ink,* 78 USPQ2d 1301, 1303 (TTAB 2006), where the Board rejected applicant's argument that it was improper for the examining attorney to rely on evidence obtained from applicant's website when the application was based on intent to use and no specimens were yet required. According to the Board, "The fact that applicant has filed an intent-to-use application does not limit the examining attorney's evidentiary options, nor does it shield an applicant from producing evidence that it may have in its possession." *See also In re Reed Elsevier Properties Inc.*, 482 F.3d 1376, 82 USPQ2d 1378 (Fed. Cir. 2007).

When a document found on the Internet is not the original publication, the examining attorney or Trademark Law Library staff should try to obtain a copy of the originally published document, if practicable. Electronic-only documents are considered to be original publications, and scanned images are considered to be copies of original publications. *See* notice at 64 Fed. Reg. 33056, 33063 (June 21, 1999).

*See also* TBMP §1208.03.

### 710.01(c)    Record Must Be Complete Prior to Appeal

The record in any application must be complete prior to appeal. 37 C.F.R. §2.142(d). Accordingly, if an examining attorney or applicant attempts to introduce new evidence at the time of the appeal, the new evidence will generally be excluded from the record. TBMP §§1207–1207.06. *See Rexall Drug Co. v. Manhattan Drug Co.*, 284 F.2d 391, 128 USPQ 114 (C.C.P.A. 1960); *In re Psygnosis Ltd.*, 51 USPQ2d 1594 (TTAB 1999). However, the Board may consider evidence submitted after appeal, despite its untimeliness, if the non-offering party: (1) does not object to the evidence; *and* (2) discusses the evidence or otherwise treats it as being of record. *See* TBMP §1207.03 and cases cited therein. Therefore, examining attorneys and applicants should either consider or object to new evidence.

Whenever an examining attorney objects to evidence submitted by an applicant, the objection should be raised as soon as possible and continued

# Chapter 800
# Application Requirements

801     Types of Applications
   801.01     Single or Combined Application
      801.01(a)     Single (Single-Class) Application
      801.01(b)     Combined (Multiple-Class) Application
   801.02     Principal Register or Supplemental Register
      801.02(a)     Act of 1946, Principal Register
      801.02(b)     Act of 1946, Supplemental Register

802     Application Form

803     Applicant
   803.01     Who May Apply
   803.02     Name of Applicant
      803.02(a)     Individual
      803.02(b)     Partnership, Joint Venture, or Other "Firm"
      803.02(c)     Corporation and Association
   803.03     Legal Entity of Applicant
      803.03(a)     Individual or Sole Proprietorship
      803.03(b)     Partnership, Joint Venture, or Other "Firm"
      803.03(c)     Corporation, Association, Organization, and Company
      803.03(d)     Joint Applicants
      803.03(e)     Trusts, Conservatorships, and Estates
         803.03(e)(i)     Business Trusts
      803.03(f)     Governmental Bodies and Universities
      803.03(g)     Banking Institutions

EXHIBIT 161
-30-

Generally, if the name or likeness is such that an inquiry would have been required as to whether it identifies a living individual (see TMEP §1206.03), and the applicant states that the mark does not identify a living individual, then the statement that the name or likeness does not identify a living individual should be printed.

The examining attorney must ensure that the TRAM database is updated, if necessary. See TMEP §813.01(c).

If the applicant owns a valid registration for a mark comprised in whole or in part of the same name, portrait, or signature for any goods or services, and the record for the registration contains a statement that the name or likeness is *not* that of a living individual, the applicant should claim ownership of the registration and advise the examining attorney that the statement is of record therein. The examining attorney may then enter the same statement in the record for the application, even if applicant does not resubmit or reference the statement. It is not necessary to issue an inquiry in this situation.

### 813.01(c)    Updating TRAM Database

All statements in the TRAM database as to whether a mark comprises the name, portrait, or signature of a living individual whose consent is of record will automatically be printed in the *Official Gazette* and on the certificate of registration. Accordingly, when an examining attorney determines that such a statement should be printed, the examining attorney must ensure that the statement is entered into the database. Where consent is presumed from signature (TMEP §1206.04(b)), the examining attorney must also enter a note in the "Notes-to-the-File" section of the record indicating that the statement must be printed.

When an examining attorney determines that such a statement should *not* be printed, the examining attorney must ensure that the statement is deleted from the database. The examining attorney must also enter a note in the "Notes-to-the-File" section of the record indicating that the statement has been deleted. The document containing the information deleted from TRAM will remain of record for informational purposes. See TMEP §817 regarding preparation of an application for publication or issuance.

### 814    Requesting Additional Information

Sometimes, it is necessary for the examining attorney to request additional information from an applicant in order to examine the application properly, pursuant to 37 C.F.R. §2.61(b). If the applicant does not comply with a requirement for information, registration may be refused.

If the applicant does not comply with the examining attorney's request for information, the requirement should be repeated and, if appropriate, made final. See *In re DTI Partnership LLP*, 67 USPQ2d 1699 (TTAB 2003)

EXHIBIT 161
-31-

Where the mark comprises a portrait, first name, pseudonym, nickname, or surname of an individual who is well known in the field relating to the goods or services (see TMEP §1206.03), surname preceded by initials (e.g., "J.C. Jones"), or title of a living individual, the record must clearly identify the actual name of the individual and indicate that the name shown in the mark identifies that individual. A legible signature on the consent statement may in itself be sufficient to identify the individual's name. If the actual name is unclear, the examining attorney must issue an inquiry. The name may be entered by examiner's amendment, if appropriate.

Where the mark comprises the name or likeness of a living individual whose consent is of record, the consent statement must always be printed, even if the name that appears in the mark is that of the applicant. The statement must also be printed if consent is presumed from signature of the application (TMEP §1206.04(b)), or if consent is of record in a valid registration owned by applicant (TMEP §1206.04(c)).

Where consent is presumed from signature (TMEP §1206.04(b)), the examining attorney must ensure that the required statement is entered in the Office's database. The examining attorney must also enter a note in the "Notes-to-the-File" section of the record indicating that the statement must be printed. No prior approval by the applicant or the applicant's qualified practitioner is required.

The examining attorney must ensure that the TRAM database is updated, if necessary. See TMEP §813.01(c).

### 813.01(b)    Name or Likeness Is Not That of a Living Individual

If a name or likeness that could reasonably be perceived as that of a living individual is *not* that of a specific living individual, a statement to that effect must be printed in the *Official Gazette* and on the registration certificate. The statement should read as follows:

> "_____ does not identify a living individual."

The applicant should explain any additional relevant circumstances. For example, if the matter identifies a certain character in literature or a deceased historical person, then a statement of these facts in the record may be helpful, but this information will not be printed in the *Official Gazette* or on the registration certificate.

No statement should be printed unless the name or portrait might *reasonably* be perceived as that of a specific living individual. This is true even if the applicant submits an unsolicited statement that a particular name or portrait does not identify a living individual.

EXHIBIT 161
-32-

# Chapter 1200
# Substantive Examination of Applications

1201    Ownership of Mark
  1201.01    Claim of Ownership May Be Based on Use By Related Companies
  1201.02    Identifying the Applicant in the Application
    1201.02(a)    Identifying the Applicant Properly
    1201.02(b)    Application Void if Wrong Party Identified as the Applicant
    1201.02(c)    Correcting Errors in How the Applicant Is Identified
    1201.02(d)    Operating Divisions
    1201.02(e)    Changes in Ownership After Application Is Filed
  1201.03    Use by Related Companies
    1201.03(a)    Use Solely by Related Company Must be Disclosed
    1201.03(b)    No Explanation of Applicant's Control Over Use of Mark by Related Companies Required
    1201.03(c)    Wholly Owned Related Companies
    1201.03(d)    Common Stockholders, Directors, or Officers
    1201.03(e)    Sister Corporations
    1201.03(f)    License and Franchise Situations
  1201.04    Inquiry Regarding Parties Named on Specimens or Elsewhere in Record
  1201.05    Acceptable Claim of Ownership Based on Applicant's Own Use
  1201.06    Special Situations Pertaining to Ownership
    1201.06(a)    Applicant Is Merely Distributor or Importer

EXHIBIT 161
-33-

field of mechanical, structural, metallurgical, and metal failures, fires and explosions; engineering services in the field of mechanical design and risk analysis" and "consulting engineering services in the metallurgical field," found to be merely descriptive of applicant's services rather than incapable of distinguishing them from those of others; evidence submitted by applicant held sufficient to demonstrate acquired distinctiveness under §2(f)).

### 1209.02 Procedure for Descriptiveness and/or Genericness Refusal

The examining attorney must consider the evidence of record to determine whether a mark is merely descriptive or whether it is suggestive or arbitrary. See *In re Noble Co.*, 225 USPQ 749, 750 (TTAB 1985). The examining attorney may request that the applicant submit additional explanation or materials to clarify the meaning of the mark or the nature of the goods or services. 37 C.F.R. §2.61(b); TMEP §814. This would be especially appropriate for goods or services where the meaning of the mark or the nature of the goods or services would be readily apparent only to someone knowledgeable in that field. The examining attorney should also do any necessary research to determine the nature of the use of the designation in the marketplace. To the fullest extent possible, the examining attorney will examine §1(b) applications for registrability under §2(e)(1) according to the same procedures and standards that apply to any other application. See *In re Am. Psychological Ass'n*, 39 USPQ2d 1467, 1469 (Comm'r Pats. 1996); TMEP §§1102 and 1102.01. "[T]he fact that applicant has filed an intent-to-use application does not limit the examining attorney's evidentiary options, nor does it shield an applicant from producing evidence that it may have in its possession." *In re Promo Ink*, 78 USPQ2d 1301, 1303 (TTAB 2006). If the examining attorney refuses registration, he or she must support the refusal with appropriate evidence. See generally *In re Stereotaxis Inc.*, 429 F.3d 1039, 77 USPQ2d 1087 (Fed. Cir. 2005) (finding a press release cited by the examining attorney relevant to show the public's perception of the goods in an intent-to-use application).

In all cases, the examining attorney should try to make the Office action as complete as possible, so that the applicant may respond appropriately.

### 1209.02(a) Descriptive Marks – Advisory Statement That Mark Appears to Be Generic

A designation that is merely descriptive must be refused registration under §2(e)(1) of the Trademark Act, 15 U.S.C. §1052(e)(1). The examining attorney must not initially issue a refusal in an application for registration on the Principal Register on the ground that a mark is a generic name for the goods or services, unless the applicant asserts that the mark has acquired distinctiveness under §2(f) in the application itself. See TMEP §1209.02(b). Even if it appears that the mark is generic, the proper basis for the initial

refusal is §2(e)(1) descriptiveness. If there is strong evidence that the proposed mark is generic, a statement that the subject matter appears to be a generic name for the goods or services should be included in conjunction with the refusal on the ground that the matter is merely descriptive. It has been said that a generic term is "the ultimate in descriptiveness." *H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 989, 228 USPQ 528, 530 (Fed. Cir. 1986), quoting *Weiss Noodle Co. v. Golden Cracknel & Specialty Co.*, 290 F.2d 845, 847, 129 USPQ 411, 413 (C.C.P.A. 1961).

If, on the other hand, the mark appears to be capable, the examining attorney should provide appropriate advice concerning a possible amendment to the Supplemental Register or assertion of a claim of acquired distinctiveness. See TMEP §1102.03 concerning ineligibility of the proposed mark in a §1(b) application for the Supplemental Register prior to filing an acceptable amendment to allege use under 15 U.S.C. §1051(c) or statement of use under 15 U.S.C. §1051(d). The examining attorney should also advise the applicant regarding any incapable portion of the mark for which a disclaimer would be required in connection with an amendment to the Supplemental Register or assertion of a claim of acquired distinctiveness. If the applicant responds by amending to the Supplemental Register or asserting acquired distinctiveness, but does not submit the disclaimer, the examining attorney must issue a nonfinal Office action. Prior to the applicant's amendment, information regarding the disclaimer requirement is merely advisory. Failure to submit the disclaimer thus would constitute a new issue requiring a nonfinal Office action.

If the record is unclear as to whether the designation is capable of functioning as a mark, the examining attorney must refrain from giving any advisory statement. In general, the examining attorney should make every effort to apprise applicants as early as possible of the prospects for registration through appropriate amendments, if feasible. *NOTE: A mark in a §66(a) application cannot be registered on the Supplemental Register under any circumstances. 15 U.S.C. §1141h(a)(4); 37 C.F.R. §§2.47(c) and 2.75(c).*

If, in response to a first-action refusal under §2(e)(1), the applicant merely argues that the mark is registrable on the Principal Register without claiming acquired distinctiveness or amending to the Supplemental Register, the examining attorney must issue a final refusal under §2(e)(1), on the ground that the proposed mark is merely descriptive, if he or she is not persuaded by the applicant's arguments.

### 1209.02(a)(i)   Amendment to Supplemental Register in Response to Office Action

If the applicant responds to a §2(e)(1) descriptiveness refusal by amending its application to the Supplemental Register, this amendment presents a new issue requiring consideration by the examining attorney (unless the

EXHIBIT 161
-35-

Case 8:11-cv-01309-DOC-AN   Document 139-2   Filed 12/03/12   Page 15 of 15   Page ID #:5591

*Inc. v. IMDISI Inc.*, 70 USPQ2d 1172 (TTAB 2003) (TIA found to be substantially synonymous with "time impact analysis"); *In re The Yacht Exch., Inc.*, 214 USPQ 406 (TTAB 1982) (MLS held descriptive for multiple listing services for yachts and boats); *cf. In re Harco Corp.*, 220 USPQ 1075 (TTAB 1984) (record insufficient to establish that CPL would be commonly understood as no more than an abbreviation of "computerized potential log").

### 1209.03(i)   Intended Users

A term that identifies a group to whom the applicant directs its goods or services is merely descriptive. *See In re Planalytics, Inc.*, 70 USPQ2d 1453 (TTAB 2004) (GASBUYER merely descriptive of risk management services in the field of pricing and purchasing natural gas); *Hunter Publ'g Co. v. Caulfield Publ'g Ltd.*, 1 USPQ2d 1996 (TTAB 1986) (SYSTEMS USER found merely descriptive of a trade journal directed toward users of large data processing systems; evidence sufficient to establish distinctiveness under §2(f)); *In re Camel Mfg. Co., Inc.*, 222 USPQ 1031 (TTAB 1984) (MOUNTAIN CAMPER held merely descriptive of retail mail-order services in the field of outdoor equipment and apparel).

### 1209.03(j)   Phonetic Equivalent

A slight misspelling of a word will not turn a descriptive or generic word into a non-descriptive mark. *See C-Thru Ruler Co. v. Needleman*, (E.D. Pa. 1976) (C-THRU held to be the equivalent of "see-through" and, therefore, merely descriptive of transparent rulers and drafting aids); *In re Carlson*, 91 USPQ2d 1198, 1203 (TTAB 2009) (URBANHOUZING, in standard character form, would be perceived by consumers as the equivalent of the descriptive term URBAN HOUSING, rather than as including the separate word ZING); *In re Ginc UK Ltd.*, 90 USPQ2d 1472, 1475 (TTAB 2007) ("The generic meaning of "togs" not overcome by the misspelling of the term as TOGGS..."); *In re Hubbard Milling Co.*, 6 USPQ2d 1239 (TTAB 1987) (MINERAL-LYX held generic for mineral licks for feeding livestock).

### 1209.03(k)   Laudatory Terms

Laudatory terms, those that attribute quality or excellence to goods or services, are merely descriptive under §2(e)(1). *See In re Phillips-Van Heusen Corp.*, 63 USPQ2d 1047, 1052 (TTAB 2002) (concluding that "if the word 'super' is combined with a word which names the goods or services, or a principal component, grade or size thereof, then the composite term is considered merely descriptive of the goods or services, but if such is not strictly true, then the composite mark is regarded as suggestive of the products or services."); *In re Nett Designs Inc.*, 236 F.3d 1339, 57 USPQ2d 1564 (Fed. Cir. 2001) (THE ULTIMATE BIKE RACK found to be merely descriptive and, therefore, subject to disclaimer); *In re Boston Beer Co. L.P.*, 198 F.3d 1370, 53 USPQ2d 1056 (Fed. Cir. 1999) (THE BEST BEER IN

EXHIBIT 161
-36-