SNELL & WILMER L.L.P.
Philip J. Graves (SBN 153441)
pgraves@swlaw.com
Greer N. Shaw (SBN 197960)
gshaw@swlaw.com
Deborah S. Mallgrave (SBN 198603)
dmallgrave@swlaw.com
350 South Grand Avenue, Suite 2600
Two California Plaza
Los Angeles, CA  90071
Telephone: (213) 929-2500
Facsimile:  (213) 929-2525

Attorneys for Plaintiff
James R. Glidewell Dental Ceramics, Inc.
d/b/a Glidewell Laboratories

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| JAMES R. GLIDEWELL DENTAL CERAMICS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> KEATING DENTAL ARTS, INC., <br><br> Defendant. | Case No. SACV11-01309-DOC(ANx) <br><br> **JAMES R. GLIDEWELL DENTAL CERAMICS, INC.'S NOTICE OF MOTION AND MOTION IN LIMINE #3 TO EXCLUDE THE PROPOSED EXPERT TESTIMONY OF KEATING DENTAL ARTS, INC.'S EXPERT DR. DAVID W. EGGLESTON; MEMORANDUM OF POINTS AND AUTHORITIES** |
| AND RELATED COUNTERCLAIMS. | <u>Hearing</u> <br><br> Date:   January 28, 2013 <br> Time:  8:30 a.m. <br> Ctrm:  9D, Hon. David O. Carter <br><br> Pre-Trial Conf.:   January 28, 2013 <br> Jury Trial:       February 26, 2013 |

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2  **PLEASE TAKE NOTICE** that on January 28, 2013, at 8:30 a.m., in the

3  courtroom of the Honorable David O. Carter of the above-entitled Court, Plaintiff

4  and Counterdefendant James R. Glidewell Dental Ceramics, Inc. ("Glidewell") will

5  and hereby does move *in limine* pursuant to Federal Rule of Evidence Rules 702

6  and 403, for an order precluding Defendant and Counterclaimant Keating Dental

7  Arts, Inc. ("Keating") from introducing testimony from its expert, Dr. David W.

8  Eggleston, that the terms "Bruxzir" or "bruxer" are generic terms for certain types

9  of dental crowns.  Glidewell believes that Keating will likely proffer such testimony

10  at trial because Dr. Eggleston made such assertions in his expert reports, in his

11  declarations submitted in connection with the parties' cross-motions for summary

12  adjudication, and in his deposition.  Dr. Eggleston's assertions that the terms

13  "Bruxzir" and its purported phonetic equivalent, "bruxer," are generic terms for all

14  zirconia dental crowns fails to meet the standards for admissibility under Federal

15  Rule of Evidence 702 and under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,*

16  509 U.S. 579 (1993).  For this reason the Court should exclude Dr. Eggleston's

17  testimony on the issue of the validity of the BruxZir mark, including that the mark

18  is generic or descriptive without secondary meaning.  Glidewell also moves *in*

19  *limine* to exclude Dr. Eggleston from offering any opinions that were not included

20  in his expert reports, his declarations, or his deposition, including as to likelihood of

21  confusion between Glidewell's registered BruxZir mark and Keating's KDZ Bruxer

22  mark.

23  This motion is made following the Local Rule 16-2 Meeting of Counsel

24  Before Final Pretrial Conference and the discussion of evidentiary matters pursuant

25  to Local Rule 16-2.6, which took place on December 19, 2012 (in-person meeting)

26  and Local Rule 7-3 Conference of Counsel Prior to Filing of Motions, which took

27  place on December 31, 2012 (telephonically) and continued on January 2, 2013

28  (telephonically).  The parties' counsel discussed the issues presented by this

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

GLIDEWELL'S MIL NO. 3
CASE NO. SACV11-01309 DOC (ANx)

Motion, but could not reach agreement.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and all exhibits thereto, the pleadings, records, and papers on file with the Court, all matters upon which the Court may take judicial notice, and such oral arguments as the Court may receive.

Dated: January 17, 2013                    SNELL & WILMER L.L.P.


                                   By: *s/Greer N. Shaw*
                                   Philip J. Graves
                                   Greer N. Shaw
                                   Deborah S. Mallgrave

                                    Attorneys for Plaintiff
                                   James R. Glidewell Dental Ceramics, Inc.
                                   dba Glidewell Laboratories

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

GLIDEWELL'S MIL NO. 3
CASE NO. SACV11-01309 DOC (ANx)

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................1

I. INTRODUCTION ..................................................................................1

II. STATEMENT OF FACTS ......................................................................2

III. ARGUMENT ........................................................................................4

    A. The Legal Standard ...................................................................4

    B. Dr. Eggleston's Opinions Are Not Relevant ...........................5

        1. Dr. Eggleston Ignores the "Crucial Date" for
           Determining Genericness ..............................................8

        2. Dr. Eggleston Does Not Opine on the Primary
           Significance of BruxZir (or bruxer) to a Majority
           of the Relevant Consumers ...........................................9

    C. Dr. Eggleston's Opinions Are Not Reliable .........................10

    D. The Probative Value of Dr. Eggleston's Testimony is
       Outweighed by Its Prejudicial Effect....................................12

    E. The Court Should Preclude Dr. Eggleston From Rendering Any
       Opinions Not Included In His Expert Reports........................13

IV. CONCLUSION ....................................................................................14

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Allison v. McGhan Medical Corp.*,
 184 F.3d 1300 (11th Cir.1999) ..................................................... 5, 12

*Apple, Inc. v. Amazon.com Inc.*,
 C 11-1327 PJH, 2011 WL 2638191 (N.D. Cal. July 6, 2011) ...................... 7, 10

*Bourjaily v. United States*,
 483 U.S. 171 (1987) ...................................................................... 5

*Burger King Corp. v. Pilgrim's Pride Corp.*,
 705 F.Supp. 1522 (S.D. Fla. 1988) ................................................... 9

*Classic Foods Intern. Corp. v. Kettle Foods, Inc.*,
 468 F. Supp. 2d 1181 n.10 (C.D. Cal. 2007) ....................................... 7

*Colony Holdings, Inc. v. Texaco Ref. & Mktg., Inc.*,
 SACV00217DOC(MLGX), 2001 WL 1398403
 (C.D. Cal. Oct. 29, 2001) ............................................................. 14

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
 509 U.S. 579 (1993) ............................................................... 4, 5, 12

*Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*,
 198 F.3d 1143 (9th Cir. 1999) ....................................................... 6

*In re Paoli R.R. Yard PCB Litig.*,
 35 F.3d 717 (3d Cir.1994) ............................................................ 5

*King-Seely Thermos Co. v. Aladdin Industries, Inc.*,
 321 F.2d 577 (2d Cir. 1963) .................................................... 6, 7, 10

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
 408 F.3d 596 (9th Cir. 2005) ........................................................ 6

*Kumho Tire Co. v. Carmichael*,
 526 U.S. 137 (1999) ................................................................... 4

*Lifshitz v. Walter Drake & Sons, Inc.*,
 806 F.2d 1426 (9th Cir. 1986) ...................................................... 12

*Maljack Prods., Inc. v. GoodTimes Home Video Corp.*,
 81 F.3d 881 (9th Cir. 1996) ......................................................... 6

*Monotype Corp. PLC v. Int'l Typeface Corp.*,
 43 F.3d 443 (9th Cir. 1994) ........................................................ 12

*Nightlight Sys., Inc. v. Nitelites Franchise Sys., Inc.*,8
 2007 WL 4563873 (N.D. Ga. 2007) ............................................... 9

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

GLIDEWELL'S MIL NO. 3
CASE NO. SACV11-01309 DOC (ANx)

# TABLE OF AUTHORITIES
### (continued)

Page

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.,*
164 F.3d 736 (2nd. Cir. 1998) .................................................................. 7

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,*
469 U.S. 189 (1985) ................................................................................. 6

*Rudolph Int'l, Inc. v. Realys, Inc.,*
482 F.3d 1195 (9th Cir. 2007) ................................................................. 6

*Sanderson v. Int'l Flavors & Fragrances, Inc.,*
950 F. Supp. 981 (C.D. Cal. 1996) ........................................................ 11

*Steinberg v. Sunbelt Transformer Co.,*
CV0704226MMMAJWX, 2008 WL 5429587
(C.D. Cal. June 6, 2008) ......................................................................... 13

*Sundance Image Tech., Inc. v. Cone Editions Press, Ltd., No. CV,*
02–2258 JM (AJB), 2007 WL 935703 (S.D. Cal. Mar. 7, 2007) ............. 4

*Turner v. Burlington N. Santa Fe R.R. Co.,*
338 F.3d 1058 (9th Cir. 2003) ............................................................ 5, 11

*Ty Inc. v. Softbelly's Inc., 00 C,*
5230, 2006 WL 5111124  (N.D. Ill. Apr. 7, 2006) ............................. 10, 11

*United States v. Hankey,*
203 F.3d 1160 (9th Cir. 2000) ................................................................. 5

*United States v. Kaplan,*
490 F.3d 110, 122 (2d Cir. 2007) .......................................................... 12

*United States v. Prime,*
431 F.3d 1147 (9th Cir. 2005) ................................................................. 4

*United States v. Ravich,*
421 F.2d 1196, 1204 n.10 (2d Cir. 1970) .............................................. 12

*Viterbo v. Dow Chem. Co.,*
646 F. Supp. 1420(E.D. Tex. 1986)
aff'd, 826 F.2d 420 (5th Cir. 1987) ....................................................... 11

*Viterbo v. Dow Chemical Co.,*
826 F.2d 420 (5th Cir. 1987) ................................................................... 5

*Walker v. Contra Costa County, No. C ,*
03–3723 TEH, 2006 WL 3371438 (N.D. Cal. Nov. 21, 2006) ................. 5

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GLIDEWELL'S MIL NO. 3
CASE NO. SACV11-01309 DOC (ANx)

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Yellow Cab Co. of Sacramento v. Yellow Cab Co. of Elk Grove, Inc.*,
419 F.3d 925 (9th Cir. 2005) ............................................................. 1, 5, 6, 7, 8, 9

*Zobmondo Enter., LLC v. Falls Media, LLC*,
602 F.3d 1108 (9th Cir. 2010) .................................................................. 5

## FEDERAL STATUTES

15 U.S.C. § 1064(3) ............................................................................... 6

## FEDERAL RULES

Fed. R. Civ. P. 403 ............................................................................... 12

Fed. R. Evid. 403 ............................................................................. 5, 12

Fed. R. Evid. 702 ........................................................................ 1, 4, 8, 10

Fed. R. Evid. 703 .................................................................................. 5

Fed. R. Evid. 702(a) ............................................................................... 8

## OTHER

2 J. Thomas McCarthy, *McCarthy on Trademarks and
Unfair Competition* § 12:6 (2012) .................................................... 7, 10

2 J. Thomas McCarthy, *McCarthy on Trademarks and
Unfair Competition* § 12:17.50 (2012) .................................................. 7

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

The Court should exclude the testimony of Keating's expert, Dr. David W. Eggleston regarding whether Glidewell's registered trademark, "Bruxzir" – or the purportedly phonetically equivalent term, "bruxer" – are generic terms for dental crowns.  The Court also should preclude Dr. Eggleston from offering any new opinions that were not previously included in his expert reports, including any opinions or testimony regarding likelihood of confusion between Glidewell's "BruxZir" mark and Keating's "KDZ Bruxer" mark.

Glidewell contends that Keating's use of "KDZ Bruxer" infringes Glidewell's trademark for "BruxZir," which is registered in connection with dental restoration products, such as crowns and bridges.  Keating contends that Glidewell's "BruxZir" mark is a generic term for such products.  "The crucial date for the determination of genericness is the date on which the alleged infringer entered the market with the disputed mark or term."  *Yellow Cab Co. of Sacramento v. Yellow Cab Co. of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005).  Here, Keating admits that it "adopted and began using" its KDZ Bruxer mark "[i]n approximately April 2011."  (Dkt. #67 at 13:11-12).  To support its genericness argument, Keating proffers the testimony of Dr. Eggleston, who, relying largely upon unauthenticated hearsay webpages and prescription orders that post-date April 2011 (or are undated), opines that the terms "Bruxzir" and "bruxer" are generic terms among dentists for all zirconia crowns.  What Dr. Eggleston fails to address in his reports, his declarations, and his deposition is whether these terms were generic *as of April 2011*, the "crucial date" under Ninth Circuit law.

Dr. Eggleston's proposed testimony on issued related to genericness do not meet the requirements of Federal Rule of Evidence 702.  Dr. Eggleston's testimony is not based on sufficient facts or data, because he relies on no facts or data probative of genericness as of the relevant time period.  In addition, Dr. Eggleston's

testimony is not the product of reliable principles and methods, because he relies almost entirely upon material (third party webpages) that lack authenticity, are hearsay, and are not probative of genericness as of the relevant time period. Even if he were permitted at trial to go beyond his expert reports and proffer opinions as to whether "bruxzir" or "bruxer" were generic terms for crowns as of April 2011 – and he should not be so permitted – he could not do so by reliably applying any sound principles and methods to the facts of the case. Instead, all he could do is speculate as to the state of affairs nearly two years ago based on undated or much more recent materials (i.e., third party webpages printed in the Fall of 2012). By definition, speculation is not reliable testimony.

Finally, Dr. Eggleston's expert reports address only purported genericness of the BruxZir mark. They do not address other aspects of the parties' claims or defenses, including whether there is a likelihood of confusion between BruxZir and KDZ Bruxer. Keating should not be permitted to do so at the time of trial.

## II.  STATEMENT OF FACTS

Keating retained Dr. Eggleston, a dentist in Newport Beach, as an expert witness to opine on the genericness of the terms "Bruxzir" and "bruxer" in the dental industry. (Dkt #93-1 [Expert Report of Dr. David W. Eggleston] at 1:4-6.) Not surprisingly, Dr. Eggleston opines that the terms "Bruxzir" and "bruxer" are indeed generic. (*Id.* at 12:1-9.) For example, Dr. Eggleston opines, among other things, that "[d]entists and other professionals in the dental industry refer to an all zirconia crown as a 'bruxer crown' or alternatively a 'bruxir crown.'" (*Id.* at 12:8-9.)

Dr. Eggleston claims that his opinion that the terms "Bruxzir" and "bruxer" are generic for all zirconia dental crowns is supported by "many materials that are found online, advertisements by Glidewell Laboratories, Keating Dental Arts, and other labs, as well as prescription orders that have been placed with dental labs." (*Id.* at 16:15-18.) These materials were apparently provided to Dr. Eggleston by

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

Keating's lawyers and attached to the first declaration Dr. Eggleston submitted in support of Keating's motions for summary judgment. (Dkt# 135 [Second Declaration of Dr. David Eggleston] at ¶2; Dkt# 93, Exs. 85-137.) All of the websites and prescription forms Dr. Eggleston relies upon[1] either post-date April 2011[2] or are undated.[3]

In this action, Dr. Eggleston has submitted three expert reports (an initial report dated September 14, 2012, a rebuttal report dated October 12, 2012, and a first supplemental report dated October 12, 2012), two declarations (the first on November 19, 2012, and the second on December 3, 2012), and had his deposition taken on October 22, 2012. (Dkt## 93-1, 93-2, 93-3 and 135.) Nowhere in his reports, his declarations, or in his deposition does Dr. Eggleston offer an opinion regarding the genericness of the terms "Bruxzir" or "bruxer" as of April 2011. Nor does Dr. Eggleston offer an opinion regarding genericness as of May 10, 2011, the date Keating contends that it first sold crowns under the KDZ Bruxer mark.

---

[1] There are only two third party websites that Dr. Eggleston claims he relies upon to form his opinion that the terms "Bruxzir" and "bruxer" are generic for all zirconia dental crowns that purportedly pre-date April 2011. One is an unauthenticated hearsay posting on twitter.com from Pittman Dental Lab which purports to have been posted on November 29, 2010. (Dkt# 93, Ex. 120.) The other is an unauthenticated hearsay prescription order form from Mascola Esthetics in San Antonio, Texas which purports to be dated June 2010. (Dkt# 93, Ex. 110.) Keating has not and cannot authenticate these webpages; i.e., Keating cannot prove that the dates on these webpages accurately indicate when they were posted on the Internet. *See* Glidewell Motion In Limine No. 1 at II.

[2] *See* Dkt. #195 at Trial Exhibits 22, 24, 28, 31, 75, 1008, 1010, 1178, 1451, 2081, 2083, 2085, 2091, 2094, 2098, 2104, 2112-2115, 2167-2169.

[3] *See* Dkt #195 at Trial Exhibits 20, 67, 91, 560, 1000, 1001-1007, 1011-1018, 1021-1028, 1044-1045, 1047, 1055-1057, 1059, 1061, 1170-1172, 1174-1177, 1179-1191, 1194-1195, 1197-1198, 1200-1201, 1203-1204, 1206, 1207-1209, 1211-1216, 1219-1226, 1228-1239, 1241-1242, 1244-1247, 1249-1251, 1253, 1256-1320, 1322-1341, 2087, 2089-2090, 2093, 2096-2102, 2105, 2109-2111, 2117, 2122-2124, 2128-2130, 2170, 2172, 2203.

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

GLIDEWELL'S MIL NO. 3
CASE NO. SACV11-01309 DOC (ANx)

### III.  ARGUMENT

**A.     The Legal Standard.**

Expert testimony is only admissible if it is both relevant (*i.e.*, will assist the trier of fact to understand the evidence or to determine a fact in issue) and reliable. Fed. R. Evid. 702; *Daubert*, 509 U.S. at 590.  Under the Federal Rules of Evidence:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

This Rule imposes a "gatekeeper" role on the trial judge to ensure that unreliable testimony is excluded.  *Daubert*, 509 U.S. at 589.  Although *Daubert* sets forth several factors (peer review, publication, potential error rate, etc.) regarding reliability, they are not a definitive checklist or test.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999); *United States v. Prime*, 431 F.3d 1147, 1152 (9th Cir. 2005) (noting that the factors set forth in *Daubert* are not exhaustive).

Ultimately, "[t]he party offering the expert bears the burden of establishing that Rule 702 is satisfied."  *Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.,* No. CV 02–2258 JM (AJB), 2007 WL 935703, *4 (S.D. Cal. Mar. 7, 2007),

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

*citing Allison v. McGhan Medical Corp.,* 184 F.3d 1300, 1306 (11th Cir.1999), *in turn citing Daubert,* 509 U.S. at 592 n. 10)); *see also Walker v. Contra Costa County,* No. C 03–3723 TEH, 2006 WL 3371438, *1 (N.D. Cal. Nov. 21, 2006) (same, citing *Bourjaily v. United States,* 483 U.S. 171, 172 (1987), and *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 744 (3d Cir.1994)).

Federal Rule of Evidence 403 also allows the trial court to exclude evidence when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  Fed. R. Evid. 403; *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000); *see also Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987) ("lack of reliable support [for expert opinion] may render it more prejudicial than probative, making it inadmissible under Fed. R. Evid. 403").

Similarly, Federal Rule of Evidence 703 prohibits experts from disclosing to the jury facts or data that are otherwise inadmissible "if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."  Fed. R. Evid. 703 advisory committee's note (2000) (noting that there is a presumption against disclosure to the jury of inadmissible information used as the basis for expert's opinion); *see also Turner v. Burlington N. Santa Fe R.R. Co*., 338 F.3d 1058, 1061 (9th Cir. 2003) (upholding the trial court's exclusion of inadmissible hearsay used as the basis of opinion where the probative value was minimal and the prejudice from admission substantial under Rule 703).

**B.**     **Dr. Eggleston's Opinions Are Not Relevant.**

To be valid and protectable, a mark must be "distinctive."  *Zobmondo Enter., LLC v. Falls Media, LLC,* 602 F.3d 1108, 1113 (9th Cir. 2010).  "Distinctiveness measures 'the primary significance of the mark to the purchasing public.'"  *Id.* There are five categories of trademarks: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful.  *E.g.*, *Yellow Cab Co. of Sacramento*, 419 F.3d at 927.  "The latter three categories are deemed inherently distinctive and are

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

automatically entitled to protection because they naturally 'serve[] to identify a particular source of a product ….'" *Id.* (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005)).  A generic mark carries no protection, while a descriptive mark, although not inherently distinctive, can receive protection if it has acquired distinctiveness by establishing "secondary meaning" in the marketplace.  *See id.*

"Marks that constitute a common descriptive name are referred to as generic. A generic term is one that refers to the genus of which the particular product is a species." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985). "'To determine whether a term has become generic, we look to whether consumers understand the word to refer only to a particular producer's goods or whether the consumer understands the word to refer to the goods themselves.'" *Yellow Cab*, 419 F.3d at 929 (citation omitted).  If a buyer understands the term as being identified with a particular producer's goods or services, it is not generic.  *Id.*  This so even if consumers do not know the identity of the source.  *E.g.*, *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 887 (9th Cir. 1996) (mark may be distinctive even if source is anonymous).

"The *primary significance* of the registered mark to the relevant public … shall be the test for determining whether the registered mark has become the generic name of goods or services on or in connection with which it has been used." 15 U.S.C. § 1064(3) (emphasis added); *Rudolph Int'l, Inc. v. Realys, Inc.*, 482 F.3d 1195, 1198 (9th Cir. 2007), *quoting Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1147 (9th Cir. 1999) ("[i]f the primary significance of the trademark is to describe the *type of product* rather than the *producer,* the trademark [is] a generic term and [cannot be] a valid trademark") (emphasis in original).  The test for genericness is not whether some portion of the relevant public views a term as generic, but whether the term's primary significance to a *substantial majority* of the relevant public is as a generic term.  *See King-Seely*

GLIDEWELL'S MIL NO. 3
CASE NO. SACV11-01309 DOC (ANx)

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

1    *Thermos Co. v. Aladdin Indus., Inc.*, 321 F.2d 577, 581 (2d Cir. 1963); *Apple, Inc.*

2    *v. Amazon.com Inc.*, C 11-1327 PJH, 2011 WL 2638191 (N.D. Cal. July 6, 2011)

3    ("Put another way, generic terms are common names that a substantial majority of

4    the relevant public understand primarily as describing the genus of goods or

5    services at issue."); *see also* 2 J. Thomas McCarthy, *McCarthy on Trademarks and*

6    *Unfair Competition* § 12:6 (2012).

7         "The ***crucial date*** for the determination of genericness is the date on which

8    the alleged infringer entered the market with the disputed mark or term." *Yellow*

9    *Cab Co. of Sacramento*, 419 F.3d at 928 (emphasis added); *see also Classic Foods*

10   *Intern. Corp. v. Kettle Foods, Inc.*, 468 F. Supp. 2d 1181, 1188 n.10 (C.D. Cal.

11   2007) ("The crucial date for the determination of genericness in this case is 1999,

12   the date [the junior user] first entered the market with the disputed mark."); *see also*

13   *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 744 (2nd. Cir.

14   1998);  2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*

15   § 12:17.50, p. 12-61 (2012) ("The Second and Ninth Circuits have held that the

16   crucial date for the determination of genericness is the date on which the alleged

17   infringer entered the market with the disputed mark or term.")

18        Here, the crucial date for determining genericness is April 2011, the date

19   Keating admits that it "adopted and began using" its KDZ Bruxer mark.  (Dkt #67

20   at 13:11-12; *see also* Dkt. # 95, ¶ 9 & Ex. F [March 31, 2011 announcement that

21   Keating's CAD/CAM family of products "now consists" of, among other products,

22   KDZ Bruxer].)  Keating has not disputed that the crucial date for determining

23   genericness is the date that it entered the market using the "KDZ Bruxer" mark;

24   Keating has merely disputed whether that crucial date was May 10, 2011 as

25   opposed to April 2011.  (Dkt. #141 at 9:8-10)  Although the former may be the date

26   that Keating first sold a KDZ Bruxer-brand crown, the pertinent question is when

27   Keating "entered the market with the disputed mark." *Yellow Cab*, 419 F.3d at 928.

28   Here, by Keating's own admission, that date is April 2011.  (Dkt. #67 at 13:11-12.)

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

1.    **Dr. Eggleston Ignores the "Crucial Date" for Determining Genericness**

Dr. Eggleston does not opine as to whether the terms "Bruxzir" or "bruxer" were generic terms in the dental industry for all zirconia crowns as of the "crucial date" of April 2011.  Nor could he.  The vast majority of the materials that he relies upon either post-dated April 2011 or are undated.  *See* footnotes 1-3, *supra.*  Even putting aside its lack of reliability – addressed below – Eggleston's testimony that BruxZir (or bruxer) are generic terms for zirconia crowns *now* does not "help the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702(a), given that the pertinent "fact in issue" is whether BruxZir was generic as of nearly two years ago.  The proposed testimony is irrelevant and should be excluded under Rule 702.

In an effort to cobble together some reason why post-"crucial date" evidence of genericness is relevant, Keating has claimed, without any supporting authority, that evidence dated after the crucial date may nevertheless be relevant: (i) to "[e]stablish a comprehensive timeline of the use of the BruxZir name"…"to understand the status of BruxZir at the time of Keating's entry"; and (ii) to "corroborate[] prior evidence."  (Dkt. #141 at 9:11-21.)  These arguments make no sense in light of *Yellow Cab* or the evidence.  Keating has developed *no* admissible evidence that BruxZir (or bruxer) was generic prior to April 2011.  (Dkt #137 at II.A.3.)  Accordingly, purported evidence of how "BruxZir" (or "bruxer") may have come to be used *after* this "crucial date" cannot possibly "establish a comprehensive timeline" that includes April 2011 or earlier periods.  Nor can such evidence "corroborate[] prior evidence," given that there is nothing to corroborate.  In any event, Dr. Eggleston does not opine as to the purported generic meaning of the term BruxZir "over time."  Instead, he opines on the use of the term as of the date of his expert report, prepared in September 2012, over a year and a half after the "crucial date."

GLIDEWELL'S MIL NO. 3
CASE NO. SACV11-01309 DOC (ANx)

At the summary judgment stage, Keating cited two cases from Georgia and Florida – *Nightlight Sys., Inc. v. Nitelites Franchise Sys., Inc.,* 2007 WL 4563873 (N.D. Ga. 2007) and *Burger King Corp. v. Pilgrim's Pride Corp.*, 705 F.Supp. 1522, 1525 (S.D. Fla. 1988) – indicating that surveys conducted after the alleged infringer entered the market could be probative of genericness, with the timing of the survey going to weight rather than admissibility.  (Dkt. #141 at 9:11-10:4)  But these district court opinions are not controlling and are inapposite here.  Georgia and Florida are, of course, in the Eleventh Circuit rather than the Ninth Circuit. Neither case purports to apply the Ninth Circuit's *Yellow Cab* rule regarding the "crucial date" for determining genericness, and neither case articulates any basis for an exception to *Yellow Cab* here.[4]  In any event, Dr. Eggleston's reports are not surveys, and Dr. Eggleston does not purport to be a survey expert.  The non-controlling survey cases from district courts in Georgia and Florida do not salvage Dr. Eggleston's irrelevant opinions.

### 2. Dr. Eggleston Does Not Opine on the Primary Significance of BruxZir (or bruxer) to a Majority of the Relevant Consumers

Dr. Eggleston's analysis is fatally flawed for another reason: he does not opine as to the *primary significance* of "BruxZir" (or "bruxer") to a *majority* of dentists, the relevant consumers, as of April 2011.  Yet that is exactly what is required to determine genericness.  The test for genericness is not whether some portion of the relevant public views a term as generic – or in Dr. Eggleston's case whether some undated or post-April 2011 dated internet material purportedly

---

[4] The *Nightlight Systems* court, citing McCarthy, noted that "there are three possibilities for the critical date when genericness is to be tested:  (1) the date when the proponent of the trademark rights first began the alleged trademark use, (2) just before the date when the accused infringer first entered the market, and (3) the current date of the litigation."  2007 WL 4563873, at *9.  Citing *Burger King*, the *Nightlight* court elected the third option.  *Id.*  This is clearly contrary to the *Yellow Cab* rule – essentially, option two – applicable in the Ninth Circuit.

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

support his genericness conclusions – but whether the term's primary significance to a *substantial majority* of the relevant public is as a generic term. *King-Seely Thermos Co. v. Aladdin Industries, Inc.*, 321 F.2d 577, 581 (2d Cir. 1963); *Apple, Inc. v. Amazon.com Inc.*, C 11-1327 PJH, 2011 WL 2638191 (N.D. Cal. July 6, 2011) ("Put another way, generic terms are common names that a substantial majority of the relevant public understand primarily as describing the genus of goods or services at issue."); *see also* 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 12:6 (2012). Dr. Eggleston's testimony should be excluded because he does not opine that, nor does he rely on anything that is probative of whether, the *primary significance* of "BruxZir" (or "bruxer") to a majority of the relevant consumers is as a name for a genus of zirconia dental restoration products rather as an identifier of a single source of such products (which source may be unknown to consumers).

## C.   Dr. Eggleston's Opinions Are Not Reliable.

Expert opinion must be reliable and be based on "sufficient facts or data." Fed. R. Evid. 702.  But here, not only does Dr. Eggleston, an expert hired to opine on genericness, fail to render an opinion as of the "crucial date" for determining genericness, he bases his opinion largely on post-April 2011 or undated, unauthenticated hearsay websites and prescription forms that were provided to him by Keating's counsel.  As discussed in detail in a companion motion *in limine* (*See* Glidewell Motion In Limine No. 1) the unauthenticated hearsay websites proffered by Keating should be excluded.  So too should Dr. Eggleston's opinions that are based on the excludable websites.

In *Ty Inc. v. Softbelly's Inc.*, for example, plaintiff in a trademark infringement action sought to exclude defendant's linguist expert who offered the opinion that the word "Beanie(s)" is generic." *Ty Inc. v. Softbelly's Inc.*, 00 C 5230, 2006 WL 5111124 at *1 (N.D. Ill. Apr. 7, 2006).  Defendant's expert had

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

reviewed "more than 14,000 pages of documents involving the results of Internet searches, copies of newspaper and magazine articles, legal proceedings, and the like, which also were provided by defense counsel," but that focused on use of the term "Beanie" with products unrelated to the plaintiff. *Id.* at *2. The district court determined that "[q]uantity…does not establish quality, much less reliability." *Id.* Reasoning that "[b]ecause [defendant's expert] failed to demonstrate the reliability of the sources on which he relied for his opinion, [defendant's expert] cannot establish the reliability of his opinion." *Id.* at *3. The district court granted plaintiff's motion and excluded the expert's testimony. *Id.*; *see also Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1061 (9th Cir.2003) (upholding the trial court's exclusion of inadmissible hearsay used as the basis of expert opinion where the probative value was minimal and the prejudice from admission substantial); *Viterbo v. Dow Chem. Co.*, 646 F. Supp. 1420, 1425 (E.D. Tex. 1986) aff'd, 826 F.2d 420 (5th Cir. 1987) (excluding expert testimony where opinion based on data that was "not sufficiently reliable, and lacks probative force, and therefore must be held inadmissible"); *see Sanderson v. Int'l Flavors & Fragrances, Inc.,* 950 F. Supp. 981, 1004 (C.D. Cal. 1996) (excluding expert testimony because proponent failed to show testimony was based on reliable sources).

The reliability of the materials upon which Dr. Eggleston relies is on far shakier ground than the supporting evidence that defendant's expert relied upon in *Ty.* As detailed in Glidewell's companion motion *in limine*, none of the internet material upon which Dr. Eggleston relies has been or can be properly authenticated, and it all constitutes inadmissible hearsay. *See* Glidewell Motion In Limine No. 1 at II. Because Keating and Dr. Eggleston fail to demonstrate the reliability of the sources on which Dr. Eggleston relies for his opinion, Dr. Eggleston cannot establish the reliability of his opinion.

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

**D.** **The Probative Value of Dr. Eggleston's Testimony is Outweighed by Its Prejudicial Effect.**

Even if Dr. Eggleston's proposed testimony were at all probative of genericness as of April 2011 – which it is not – the testimony still should be excluded because "its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, [and] misleading the jury." Fed. R. Civ. P. 403; *Monotype Corp. PLC v. Int'l Typeface Corp.*, 43 F.3d 443, 449 (9th Cir. 1994) (affirming district court's exclusion of evidence under Rule 403 because even if evidence was relevant, "it would be prejudicial and confuse the jury."); *Lifshitz v. Walter Drake & Sons, Inc.*, 806 F.2d 1426, 1432 (9th Cir. 1986)(district court's exclusion of evidence proper where probative value of the evidence was outweighed by the considerable amount of time its admission would consume and the confusion it would cause the jury).

"Unfair prejudice" in the context of Rule 403 means an undue tendency to suggest decisions on an improper basis. Fed R. Evid. 403 ad. com. notes. Improper bases include unsupported inferences. *See United States v. Kaplan*, 490 F.3d 110, 122 (2d Cir. 2007) (concluding that risk of unfair prejudice substantially outweighed probative value because the "jury was required to draw a series of inferences, unsupported by other evidence…"); *United States v. Ravich*, 421 F.2d 1196, 1204 n.10 (2d Cir. 1970) ("The length of the chain of inferences necessary to connect the evidence with the ultimate fact to be proved necessarily lessens the probative value of the evidence, and may therefore render it more susceptible to exclusion as unduly confusing, prejudicial, or time-consuming ...").

The Supreme Court recognized in *Daubert* the role of Rule 403 in determining the admissibility of expert testimony when it noted that expert testimony could be "both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595; *see also Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1301 (11th Cir. 1999).

1    Here, allowing the jury to hear Dr. Eggleston's opinions regarding the

2    purported genericness of "BruxZir" (and "bruxer") *now*, and allowing Keating to

3    argue that such evidence is probative of the terms' primary significance as of April

4    2011 and earlier, poses a substantial risk of unfair prejudice and misleading of the

5    jury.  Simply put, the jury would be asked to, or inevitably misled to, determine

6    genericness as of a time period other than the period that the Ninth Circuit has said

7    is "crucial."  It would do this by drawing unsupported inferences about the primary

8    significance of "bruxzir" (or "bruxer") in April 2011 based on Dr. Eggleston's

9    testimony about these terms' meaning in February 2013 (the time of trial).  This is

10   the epitome of unfair prejudice within the meaning of Rule 403.

11   Allowing the jury to hear Dr. Eggleston's opinions would also pose a

12   substantial risk of confusing the issues.  The jury very likely would be confused as

13   whether it should determine genericness as of when Glidewell introduced the

14   BruxZir mark, as of when Keating entered the market with KDZ Bruxer, as of when

15   Eggleston formed his opinions, as of trial, or as of some combination or all of these

16   periods.  The jury also would likely be confused as to how evidence of a later

17   period can "corroborate" non-existent evidence of an earlier period.  Such

18   confusion is particularly likely given that Keating has *no evidence* of genericness as

19   of April 2011.

20   **E.    The Court Should Preclude Dr. Eggleston From Rendering Any**

21   **Opinions Not Included In His Expert Reports.**

22   Dr. Eggleston's opinions, as expressed in his reports, his declarations and his

23   deposition, are exclusively devoted to the determination of genericness.  (Trial

24   Exhibits 2183 and 2187.)  Dr. Eggleston does not offer an opinion regarding

25   likelihood of confusion, and should not be allowed to do so at the time of trial.  An

26   expert opinion that is not disclosed in an expert report should be excluded from

27   testimony at trial.  *See Steinberg v. Sunbelt Transformer Co.*,

28   CV0704226MMMAJWX, 2008 WL 5429587 (C.D. Cal. June 6, 2008) (limiting

Snell & Wilmer
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

expert testimony to opinions expressed in original report); *Colony Holdings, Inc. v. Texaco Ref. & Mktg., Inc.*, SACV00217DOC(MLGX), 2001 WL 1398403 (C.D. Cal. Oct. 29, 2001)(granting motion to exclude expert opinions after court limited expert's testimony to provided report and materials).

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Glidewell respectfully requests that the Court grant this Motion and issue an order (i) precluding Keating from introducing testimony from its expert, Dr. David W. Eggleston, that the terms "Bruxzir" or "bruxer" were or are generic terms for zirconia dental restoration products, and (ii) precluding Keating from introducing opinion testimony from Dr. Eggleston, including but not limited to opinions regarding the presence or absence of likelihood of confusion between BruxZir and KDZ Bruxer, beyond that which was included in his expert reports.

Dated: January 17, 2013

SNELL & WILMER L.L.P.

By: *s/Greer N. Shaw*
_____
Philip J. Graves
Greer N. Shaw
Deborah S. Mallgrave

 Attorneys for Plaintiff
James R. Glidewell Dental Ceramics, Inc.
dba Glidewell Laboratories

GLIDEWELL'S MIL NO. 3
CASE NO. SACV11-01309 DOC (ANx)

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

*Glidewell Laboratories v. Keating Dental Arts, Inc.*
**United States District Court, Central, Case No. SACV11-01309-DOC (ANx)**

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2013, I electronically filed the document described as **JAMES R. GLIDEWELL DENTAL CERAMICS, INC.'S NOTICE OF MOTION AND MOTION IN LIMINE #3 TO EXCLUDE THE PROPOSED EXPERT TESTIMONY OF KEATING DENTAL ARTS, INC.'S EXPERT DR. DAVID W. EGGLESTON; MEMORANDUM OF POINTS AND AUTHORITIES** with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

David G. Jankowski
Jeffrey L. Van Hoosear
Lynda J Zadra-Symes
Darrell L. Olson
Knobbe Martens Olson and Bear LLP
2040 Main Street, 14th Floor
Irvine, CA 92614

**Attorneys for Defendant Keating Dental Arts, Inc.**
Tel: (949) 760-0404
Fax: (949) 760-9502

Jeffrey.VanHoosear@kmob.com
David.Jankowski@kmob.com
Lynda.Zadra-symes@kmob.com
Darrell.Olson@knobbe.com
litigation@kmob.com

David A. Robinson
James Azadian
Enterprise Counsel Group
Three Park Plaza, Suite 1400
Irvine, CA 92614

**Attorneys for Defendant Keating Dental Arts, Inc.**
Tel: (949)833-8550
Fax: (949) 833-8540

drobinson@enterprisecounsel.com
jazadian@enterprisecounsel.com

Dated: January 17, 2013

SNELL & WILMER L.L.P.

By: *s/Greer N. Shaw*
_____
Philip J. Graves
Greer N. Shaw
Deborah S. Mallgrave

Attorneys for Plaintiff
James R. Glidewell Dental Ceramics, Inc.
dba GLIDEWELL LABORATORIES

16381690

GLIDEWELL'S MIL NO. 3
CASE NO. SACV11-01309 DOC (ANx)

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071