Darrell L. Olson (SBN 77,633)
Darrell.Olson@kmob.com
Lynda J. Zadra-Symes (SBN 156,511)
Lynda.Zadra-Symes@kmob.com
Jeffrey L. Van Hoosear (SBN 147,751)
Jeffrey.VanHoosear@kmob.com
David G. Jankowski (SBN 205,634)
David.Jankowski@kmob.com
KNOBBE, MARTENS, OLSON & BEAR
2040 Main Street, Fourteenth Floor
Irvine, California 92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

David A. Robinson (SBN 107,613)
drobinson@enterprisecounsel.com
James S. Azadian (SBN 225,864)
jazadian@enterprisecounsel.com
ENTERPRISE COUNSEL GROUP ALC
Three Park Plaza, Suite 1400
Irvine, California 92614
Phone: (949) 833-8550
Facsimile: (949) 833-8540

Attorneys for Defendant/Counter-Plaintiff,
KEATING DENTAL ARTS, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DISTRICT

| | |
|---|---|
| JAMES R. GLIDEWELL DENTAL CERAMICS, INC. dba GLIDEWELL LABORATORIES,<br><br>Plaintiff,<br><br>v.<br><br>KEATING DENTAL ARTS, INC.<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS. | Civil Action No.<br>SACV11-01309-DOC(ANx)<br><br>Honorable David O. Carter<br><br>**DEFENDANT AND COUNTER-PLAINTIFF KEATING DENTAL ARTS, INC.'S OMNIBUS OPPOSITION AND RESPONSE TO PLAINTIFF AND COUNTER-DEFENDANT JAMES R. GLIDEWELL DENTAL CERMANICS, INC.'S MOTIONS *IN LIMINE* NOS. 1–4**<br><br>Trial Date:  February 26, 2013<br>Time:  8:30 a.m.<br>Location:  Courtroom 9D |

**TABLE OF CONTENTS**

**Page No.**

I.    GLIDEWELL'S MOTION *IN LIMINE* NO. 1 SHOULD BE
      DENIED BECAUSE EVIDENCE FROM THE PERIOD
      AFTER APRIL 2011 IS RELEVANT TO THE
      DETERMINATION OF GENERICNESS ................................................ 1

II.   GLIDEWELL'S MOTION *IN LIMINE* NO. 2 SHOULD BE
      DENIED BECAUSE KEATING CAN AND WILL
      AUTHENTICATE THE WEB-PAGES AT ISSUE ............................... 4

      A.    Website Printouts May Be Authenticated By The
            Proponent Attorney Declaring That S/He Accessed The
            Website And Printed The Documents ........................................ 5

      B.    Glidewell's Cases Are Conspicuously Distinguishable
            Because They Each Stand For Propositions Inapplicable
            To This Case. ...................................................................... 7

      C.    Keating's Counsel and Dr. Eggleston Had, and Continue
            to Have, the Personal Knowledge Necessary to
            Authenticate the Website Printouts Because They
            Personally Accessed the Websites. ....................................... 10

      D.    The Web-Page Printouts Are Not Hearsay Because They
            Are Not Being Offered To Prove The Truth Of The
            Matter Asserted ................................................................ 11

      E.    Keating's Web-Page Printouts Are Not Irrelevant Merely
            Because They May be Dated after April of 2011 ...................... 12

III.  GLIDEWELL'S MOTION *IN LIMINE* NO. 3 SHOULD BE
      DENIED BECAUSE DR. EGGLESTON'S TESTIMONY IS
      PROPER UNDER FEDERAL RULE OF EVIDENCE 702 ............... 12

      A.    Dr. Eggleston's Testimony is Relevant To the Issue of
            BruxZir's Genericness ....................................................... 12

      B.    Dr. Eggleston's Testimony Is Based on Reliable and
            Authenticated Sources ....................................................... 15

      C.    The Probative Value of Dr. Eggleston's Testimony
            Outweighs Any Prejudicial Effect on Glidewell ...................... 16

      D.    Dr. Eggleston Provided Testimony Directly Relevant to
            the Issue of Likelihood of Confusion .................................... 17

IV.   GLIDEWELL'S MOTION *IN LIMINE* NO. 4 SHOULD BE
      DENIED BECAUSE LORI BOATRIGHT'S TESTIMONY IS
      PROPER UNDER FEDERAL RULE OF EVIDENCE 702 ............... 18

-i-

1

**TABLE OF CONTENTS**
(*cont'd*)

2

3

**Page No.**

4        A.    Boatright Did Not Misapply The TMEP.................................... 18

5        B.    Boatright's Testimony is Not Unsupported Speculation ............ 20

6        C.    Boatright's Testimony is Relevant To the Issue of
              BruxZir's Genericness................................................................ 21

7

8        D.    The Probative Value of Boatright's Testimony
              Outweighs Any Prejudicial Effect on Glidewell ....................... 22

9        E.    Boatright Provided Testimony Directly Relevant to the
              Issue of Likelihood of Confusion............................................... 23

10   V.    CONCLUSION .................................................................. 24

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page No(s).**

*AMF Inc. v. Sleekcraft Boats,*
   599 F.2d 341 (9th Cir. 1979)...............................................................17, 18

*Burger King Corp. v. Pilgrim's Pride Corp.,*
   705 F. Supp. 1522 (S.D. Fla. 1988)...................................................3, 14, 22

*Committee for Idaho's High Desert v. Yost,*
   92 F.3d 814 (9th Cir. 1996)..............................................................3, 14, 22

*Costa v. Keppel Singmarine Dockyhard PTE, Ltd.,*
   No. CV 01-11015MMM, 2003 WL 24242419
   (C.D. Cal. April 24, 2003) ..........................................................................9

*Daubert v. Merrell Dow Pharms., Inc.,*
   509 U.S. 579 (1993)...................................................................................16

*Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.,*
   198 F.3d 1143 (9th Cir. 1999).......................................................3, 14, 22

*In re Homestore.com, Inc. Sec. Litig.,*
   347 F. Supp. 2d 769 (C.D. Cal. 2004)........................................................8

*In re Noble Co.,*
   225 USPQ 749 (TTAB 1985).................................................................19, 20

*Internet Specialties West, Inc. v. ISPWEST,*
   No. CV 05-3296 FMC AJWx, 2006 WL 4568796
   (C.D. Cal. Sept. 19, 2006)........................................................................8, 9

*Jarritos, Inc. v. Los Jarritos,*
   C05-02380 JSW, 2007 WL 1302506
   (N.D. Cal. May 2, 2007) ....................................................................*passim*

*Jarritos, Inc. v. Reyes,*
   345 Fed. Appx. 215 (9th Cir. 2009) ........................................................5, 6

*Nightlight Sys., Inc., v. Nitelites Franchise Sys., Inc.,*
   2007 WL 4563873 (N.D. Ga. 2007)................................................3, 14, 22

# TABLE OF AUTHORITIES
### (cont'd)

**Page No(s).**

*Orr v. Bank of America NT & SA,*
    285 F.3d 764 (9th Cir. 2002) ......................................................................5

*Osborn v. Butler,*
    712 F. Supp. 2d 1134 (D. Idaho 2010) .....................................................10

*Perfect 10, Inc. v. Cybernet Ventures, Inc.,*
    213 F. Supp. 2d 1146 (C.D. Cal. 2002) ...................................6, 7, 10, 15

*Premier Nutrition, Inc. v. Organic Food Bar, Inc.,*
    No. SACV 06-0827 AG(RNBx), 2008 WL 1913163
    (C.D. Cal. March 27, 2008) ........................................................................7

*Rearden LLC v. Rearden Commerce, Inc.,*
    597 F. Supp. 2d 1006 (N.D. Cal. 2009), overruled on
    other grounds, 683 F.3d 1190 (9th Cir. 2012) ..............................6, 9, 10, 15

*Ty Inc. v. Softbelly's Inc.,*
    No. 00 C 5230, 2006 WL 5111124 (N.D. Ill Apr. 7, 2006) ........................16

*United States v. Tank,*
    200 F.3d 627 (9th Cir. 2000) ...........................................................6, 7, 15

*Wady v. Provident Life. Wady v. Provident Life and Accident Ins. Co. of
    Am.,*
    216 F. Supp. 2d 1060 (C.D. Cal. 2002) ...................................................8, 9

*Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.,*
    419 F.3d 925 (9th Cir. 2005) .............................................................passim

## OTHER AUTHORITIES

Fed. R. Evid. 702 ...........................................................12, 13, 18, 21

Fed. R. Evid. 703 ...................................................................16, 17

Fed. R. Evid. 801 ...........................................................................11

Fed. R. Evid. 401 .............................................................................2

DEFENDANT/COUNTER-PLAINTIFF KEATING DENTAL ARTS, INC.'S OMNIBUS OPPOSITION AND
RESPONSE TO PLAINTIFF/COUNTER-DEFENDANT'S MOTIONS *IN LIMINE* NOS. 1-4

# TABLE OF AUTHORITIES
### (*cont'd*)

**Page No(s).**

Fed. R. Evid. 403 ...............................................................................4

37 C.F.R. §2.61...............................................................................19

Trademark Manual of Examining Procedure ("TMEP") ...................................19

2 J. Thomas McCarthy, Trademarks and Unfair Competition
     (4th ed. 1997).....................................................................3, 14, 22

-v-

DEFENDANT/COUNTER-PLAINTIFF KEATING DENTAL ARTS, INC.'S OMNIBUS OPPOSITION AND
RESPONSE TO PLAINTIFF/COUNTER-DEFENDANT'S MOTIONS *IN LIMINE* NOS. 1-4

In light of the highly abbreviated time period for Defendant and Counter-Plaintiff Keating Dental Arts, Inc. ("Keating") to oppose the nine motions *in limine* filed late last night by Defendant James R. Glidewell Dental Ceramics, Inc. ("Glidewell"), Keating hereby files this consolidated Omnibus Opposition and Response to Glidewell's Motion *In Limine* Nos. 1–4.[1]

## I.  GLIDEWELL'S MOTION *IN LIMINE* NO. 1 SHOULD BE DENIED BECAUSE EVIDENCE FROM THE PERIOD AFTER APRIL 2011 IS RELEVANT TO THE DETERMINATION OF GENERICNESS

Glidewell cites *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005) for the proposition that the "crucial date for the determination of genericness is the date on which the alleged infringer entered the market with the disputed mark or term." Glidewell argues any evidence as to the genericness of Glidewell's mark "BruxZir" dated after April of 2011—the date Glidewell asserts Keating introduced its all-zirconia product into the market under the KDZ Bruxer name—is irrelevant and should be excluded from trial. (Glidewell's MIL No. 1 at 1-2.) Specifically, Glidewell seeks to exclude third-party website printouts, the testimony of Carol Frattura (Docket Nos. 96 & 118), prescription forms from Showcase Dental (Docket No. 96), the testimony of thirteen third-party dentists (Docket Nos. 97-109), and prescription forms submitted to Keating (Docket Nos. 90-4 (Ex. 15), 195) because Glidewell argues that this evidence does not address whether the term "BruxZir" was generic as of April 2011. (*Id.* at 3-5.)

For multiple reasons, Glidewell's argument that evidence of genericness dated after April 2011 is irrelevant is meritless. First, Glidewell wrongly assumes April 2011 as the date when Keating began commercializing an all-zirconia crown using the KDZ Bruxer name. In fact, Keating did not begin

---

[1] Keating presents its opposition and response to Glidewell's Motion In Limine Nos. 5–9 in a separate document filed concurrently herewith.

DEFENDANT/COUNTER-PLAINTIFF KEATING DENTAL ARTS, INC.'S OMNIBUS OPPOSITION AND RESPONSE TO PLAINTIFF/COUNTER-DEFENDANT'S MOTIONS *IN LIMINE* NOS. 1-4

selling product under that name until May 10, 2011. Therefore, Keating's evidence up to and including May 10, 2011 (which Glidewell seeks to exclude through its motion) plainly falls within the "crucial date" for determination of genericness.

Second, despite Glidewell's claims to the contrary, *Yellow Cab* stands only for the proposition that the "crucial date" for determining genericness is the date the alleged infringer introduced his competing product. *Yellow Cab Co. of Sacramento*, 419 F.3d at 928. The Ninth Circuit did not hold that evidence dated after the "crucial date" could not be used to prove genericness on the "crucial date," or that any evidence dated after the "crucial date" was irrelevant. Indeed, Glidewell fails to cite any case where a court excluded evidence dated after the "crucial date" as irrelevant to the determination of genericness at the time of the "crucial date."

Under Rule 401, evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. Fed. R. Evid. 401. "Any tendency" makes a finding of relevance very easy to meet, and Keating's evidence meets that standard here.

Evidence dated after the "crucial date" is relevant to the extent it corroborates prior evidence.[2] For example, post-May 2011 evidence can show that after Keating's entry into the market and after start of this litigation, Glidewell failed to properly police the use of its mark. This tends to show that Glidewell has consistently failed to monitor the use of its mark and that it has not changed any of its practices. The finder of fact can use this to support a

/ / /

---

[2] Glidewell's claim that there is no prior corroborative evidence is directly contradicted by footnote 3 of Glidewell's Motion *in limine* No. 3, where Glidewell admits there are at least two documents evidencing the genericness of the terms "BruxZir" and "bruxer" before April 2011: (1) a website posting from Pittman Dental Lab dated November 29, 2010 (Docket No. 93, Ex. 120); and (2) a prescription from Mascola Esthetics in San Antonio (Docket No. 93, Ex. 110).

finding that the BruxZir mark, or its phonetic equivalent, has been generic for so long that Glidewell has no ability to salvage the mark.

Establishing a comprehensive timeline of the use of the BruxZir name is also relevant to understanding the status of BruxZir at the time of Keating's entry into the market. As detailed in Keating's Reply Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment Cancelling Glidewell's Trademark Registration (Docket No. 132), evidence dated after the crucial genericness date is still relevant to the analysis of genericness. Expert surveys, for example, are necessarily dated after the onset of litigation (and therefore after the crucial date), but nevertheless are relied upon considerably in trademark cases. *Committee for Idaho's High Desert v. Yost*, 92 F.3d 814, 822 (9th Cir. 1996) ("survey evidence is . . .one of the most persuasive ways to prove secondary meaning"); *see also Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc*., 198 F.3d 1143, 1151 (9th Cir. 1999) ("Secondary meaning can be established in many ways, including (but not limited to) . . . survey evidence . . . . See 2 J. Thomas McCarthy, Trademarks and Unfair Competition § 15:30 (4th ed. 1997)); *Nightlight Sys., Inc., v. Nitelites Franchise Sys., Inc.*, 2007 WL 4563873 (N.D. Ga. 2007) (finding that deficiencies in the timeliness of a survey does not necessarily bar its admissibility); see also *Burger King Corp. v. Pilgrim's Pride Corp.*, 705 F. Supp. 1522, 1525 (S.D. Fla. 1988) (holding that a survey taken after the crucial date may not have its validity challenged for that reason).[3]

---

[3] Glidewell claims *Nightlight Sys., Inc.* and *Burger King Corp.* are inapposite, because the 11th Circuit does not follow the "crucial date" principle. However, regardless of whether the 11th Circuit follows the "crucial date" principle, these cases demonstrate that surveys (which are necessarily created after the crucial date) can still be persuasive indicators of genericness at a date prior to the survey. Furthermore, Glidewell criticizes these decisions, but fails to a cite a single Ninth Circuit case to support its theory. Notably, Glidewell makes no attempt to address *Committee for Idaho's High Desert*, a Ninth Circuit case, which also indicates that surveys (one example of evidence dated after the crucial date) are persuasive indicators of genericness or lack of secondary meaning. 92 F.3d at 822. Moreover, as previously noted, Glidewell simply

1

2

3

4

5

6

7

8

9

Glidewell also objects that exposing the fact finder to evidence dated after the crucial date may unfairly prejudice Glidewell and mislead the jury by causing them to determine genericness at the incorrect time period. (Glidewell's MIL No. 1 at 7:24-8:5.)   However, once the Court decides the "crucial date" for determining genericness (i.e., May 10, 2011, the date Keating began selling its bruxer product), the Court will communicate that to the trier of fact, who is to readily abide by that date.   Contrary to Glidewell's suggestion, organizing two time frames is not complicated or beyond the abilities of the average person.

10

11

12

13

14

15

16

Likewise, Glidewell misses the point in arguing that Keating's evidence would confuse and mislead the fact finder so substantially as to outweigh the probative value of the evidence under Federal Rule of Evidence ("F.R.E.") 403. (Glidewell's MIL No. 1 at 8:6-15.)   Again, there are only two timeframes at issue—before Keating's entry into the market and after Keating's entry into the market.   It is unlikely that anyone would find that confusing, and Glidewell does not elaborate beyond its conclusory objection.

17

18

For the foregoing reasons, Glidewell's Motion *In Limine* No. 1 should be denied.

19

20

21

## II.  GLIDEWELL'S MOTION *IN LIMINE* NO. 2 SHOULD BE DENIED BECAUSE KEATING CAN AND WILL AUTHENTICATE THE WEB-PAGES AT ISSUE

22

23

24

25

26

Glidewell seeks to exclude evidence or argument relating to web-page printouts from sources other than the parties or Authorized BruxZir Labs. Specifically, Glidewell argues that such web-pages (1) cannot be authenticated by a person with personal knowledge; (2) are inadmissible hearsay; and (3) are

27

28

ignores the Ninth Circuit's express holding in *Yellow Cab* that the "crucial date" for determining genericness is the date the alleged infringer introduced his competing product.  419 F.3d at 928.

irrelevant because they are dated after April of 2011.  As described in detail below, Glidewell misstates and misapplies the appropriate law.  According to the proper application of the law, the web-pages can be properly authenticated by any competent witness with personal knowledge of the content of the web-page printouts, including Keating's expert witnesses or attorneys.  Because Keating has competent witnesses testifying to the authenticity of the web page print outs, the Court should deny Glidewell's Motion *In Limine* No. 2.

**A.  <u>Website Printouts May Be Authenticated By The Proponent Attorney Declaring That S/He Accessed The Website And Printed The Documents</u>**

The authentication requirement is satisfied when "'the trial judge determines that there is . . . evidence sufficient to support a finding that the matter in question is what its proponent claims.'"  *Jarritos, Inc. v. Reyes*, 345 Fed. Appx. 215, 218 (9th Cir. 2009) (quoting *Orr v. Bank of America NT & SA*, 285 F.3d 764, 773, n.6 (9th Cir. 2002)).  With respect to authentication of websites printouts, the trial court practice is to allow authentication by declaration of the individual who accessed the website.

For example, the trial court in *Jarritos, Inc. v. Los Jarritos* held that a mere explanation by the plaintiff's counsel was sufficient to authenticate a website printout.  *Jarritos, Inc. v. Los Jarritos*, C05-02380 JSW, 2007 WL 1302506 at *10 (N.D. Cal. May 2, 2007) (overruled on other grounds, *Jarritos, Inc.*, 345 Fed. Appx. 215).  On a motion for summary judgment, the plaintiff offered a printout of the defendant's website to show that the defendant was improperly using plaintiff's trademark.  The trial court found that the websites were properly authenticated when the plaintiff's counsel explained that he personally typed in the web address, accessed the website, and printed the page. The explanation was provided in the plaintiff's response to the evidentiary objections, and was sufficient to overcome the objection. Id. at *10.

1  Glidewell repeatedly asserts the undisputed point that there needs to be
2  authentication by someone with "personal knowledge of the contents of the
3  various webpages" (Glidewell's MIL No. 2 at 6:2-3), but Glidewell then
4  provides an improper definition of "personal knowledge." Glidewell suggests
5  that someone with "personal knowledge" must be someone actually affiliated
6  with the website or even "owners of those websites." (*Id.* at 1:13-14.)

7  There is no foundation for Glidewell's inventive limitation, and courts
8  have rejected this argument. For example, in *Rearden v. Rearden Commerce*,
9  the trial court dismissed this argument, remarking:

> Each of the denied objections is based upon the nonsensical
> proposition that an attorney cannot authenticate a print-out from
> a publicly accessible website. Plaintiffs repeatedly object that
> [the attorney] 'has no personal knowledge of any of the
> information contained' in the exhibits. [The attorney's]
> declarations are not offered for the purposes of testifying to the
> substance of the various news articles and documents—they are
> offered to authenticate the source of those documents, i.e., that
> they were actually downloaded from the internet addresses
> indicated.

*Rearden LLC v. Rearden Commerce, Inc.*, 597 F. Supp. 2d 1006, 1027 (N.D.
Cal. 2009), overruled on other grounds, 683 F.3d 1190 (9th Cir. 2012).[4]

Other courts have agreed with the *Rearden* court. For example, in *Perfect
10, Inc. v. Cybernet Ventures*, the court found that website printouts were
sufficiently authenticated simply where the proponent declared that they were
"true and correct copies of pages printed from the Internet that were printed by
[the proponent] or under his direction." *Perfect 10, Inc. v. Cybernet Ventures,
Inc.*, 213 F. Supp. 2d 1146, 1153-54 (C.D. Cal. 2002) (citing *United States v.*

---

[4] Instead of addressing the merits of *Rearden*, Glidewell merely states that *Rearden* does not address Glidewell's *ipse dixit* or Glidewell's handful of inapposite authorities and that, on this basis alone, this Court should disregard *Rearden* as unpersuasive. (Glidewell's MIL No. 2 at 4:18-22.) Glidewell makes the same circular claim regarding *Jarritos*, without addressing the merits or facts of the case. (*Id.* at 4:11-15.)

1
2
3
4
5
6
7
8

*Tank*, 200 F.3d 627, 630 (9th Cir. 2000)) (holding followed by *Premier Nutrition, Inc. v. Organic Food Bar, Inc.*, No. SACV 06-0827 AG(RNBx), 2008 WL 1913163 at *6 (C.D. Cal. March 27, 2008). The court found it additionally persuasive that "computer printouts [were] the only practical method by which the allegations of the complaint [could] be brought before the Court," suggesting that requiring anything more to authenticate the documents would be impracticable, especially given the number of website pages produced. *Id.* at 1154.

9
10
11
12
13

Each of these cases describes and confirms the routine trial court practices in admitting website printouts as evidence. Proper authentication of the web-page printouts is as simple as a declaration from the attorney (provided even in response to an objection) that the attorney printed the page from the website address and did not alter the form of the page maintained at the website address.

14
15

**B.** **Glidewell's Cases Are Conspicuously Distinguishable Because They Each Stand For Propositions Inapplicable To This Case.**

16
17
18
19
20
21

The law is well settled that authenticating web-page printouts takes nothing more than a declaration from the person printing out the web pages from the website address/domain. Glidewell points to a smattering of cases attempting to support Glidewell's *ipse dixit* that an employee of the website holder must authenticate the printouts, but Glidewell fails to disclose the *narrow* circumstances to which each of these cases apply.

22
23
24
25
26
27
28

Glidewell's collection of cases all fall within a narrow exception to the general rule of web-page authentication. That narrow exception does not apply here. Specifically, those cases reason that when a *party* offers the website printout as a statement of the *other party*, then a higher showing of authentication is needed. In each case cited by Glidewell, the proponent offered the website printouts effectively as evidence of statements made by the adverse party.

- 7 -

1    In the matter of *Homestore.com*, the plaintiffs tried to use earnings

2    statements and press releases downloaded from the defendant's website as

3    evidence for their claims of fraud in the defendant's accounting practices.  *In re*

4    *Homestore.com, Inc. Sec. Litig.*, 347 F. Supp. 2d 769 (C.D. Cal. 2004).  The

5    trial court concluded that such documents, *which otherwise may be self-*

6    *authenticating*, could not be *self-*authenticating when downloaded from a

7    website.   *Id.*, at 782-83.   Because the documents were offered as a

8    communication made by the defendant to the public, the trial court required a

9    heightened level of authentication that the statements in the document were in

10   fact made by the defendant.  *Id.* at 782-83.  It is also important to note that those

11   printouts were not being used by the plaintiffs merely to show that the earnings

12   and press releases were on the website, but rather to prove the intricate details

13   contained therein.

14   The very same narrow circumstances apply in *Wady v. Provident Life*.

15   *Wady v. Provident Life and Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060

16   (C.D. Cal. 2002).   In that case, the plaintiff sought to use printouts from the

17   defendant's website as the defendant's statements.  *Id.* at 1064.  The trial court

18   required a heightened standard of authentication for the printouts when used for

19   that purpose, because it had to be shown that the defendant actually authored the

20   statements in the documents.    *Id.* at 1064.    Contrary to Glidewell's

21   representation, the trial court did not deem the documents inadmissible merely

22   because they were printouts from a website.

23   Although the trial court's opinion in *Internet Specialties West v.*

24   *ISPWEST* is factually bare, it is readily understood that the trial court in that

25   case relied exclusively on *Wady* and *In re Homestore.com*, which, as established

26   above, are factually distinct from this case.  *Internet Specialties West, Inc.  v.*

27   *ISPWEST*, No. CV 05-3296 FMC AJWx, 2006 WL 4568796 (C.D. Cal. Sept.

28   19, 2006).  Significantly, the *Internet Specialties West* trial court did note that

"[c]ertainly, a qualified expert may rely on information he obtained off the internet, even if hearsay, in forming his opinions." *Id.* at *1.

The final case relied on by Glidewell is likewise distinguishable. In *Costa v. Keppel Singmarine Dockyhard*, the plaintiff offered printouts from the defendant's website as evidence of the defendant's corporate structure, which was at issue in the case. *Costa v. Keppel Singmarine Dockyhard PTE, Ltd.*, No. CV 01-11015MMM, 2003 WL 24242419 (C.D. Cal. April 24, 2003). The web pages were being used essentially as a statement and admission of the defendant regarding its corporate structure. *Id.* at *7, n. 74. Accordingly, the trial court found that there needed to be some authentication that these were in fact statements of the defendant before holding the defendant liable for those statements, citing *Wady*. *Id.* at n. 74.

In each of Glidewell's cases, a party sought to use website content against the other party as a statement made by that other party. In each case, the court deemed it important to establish the identity of the author of the statements accessed on the website (which often required authentication by someone from the party's company). That is not the case here. Keating is not using the website evidence to prove statements made by Glidewell, or to prove that any statements on the third party websites are true. Keating is using the third party website printouts to show the manner in which words are used, including the BruxZir mark, within web pages presented by companies in the dental industry. The websites establish, for example, the existence of companies in the dental field using the BruxZir mark on their websites without attributing any connection to Glidewell. It is the mere fact that these web-pages exist that is relevant to Keating's position. *Rearden LLC*, 597 F. Supp. 2d at 1027.

For the third-party web pages relied on by Keating, the well settled standard for authenticating web printouts applies—the web documents may be authenticated by anyone with competent personal knowledge about the accuracy

- 9 -

of the document as compared to the website pages.  This may be provided, for example, by declaration, such as those filed in support of Keating's summary judgment motions.

**C.**     **Keating's Counsel and Dr. Eggleston Had, and Continue to Have, the Personal Knowledge Necessary to Authenticate the Website Printouts Because They Personally Accessed the Websites.**

As detailed in their declarations filed in support of Keating's Summary Judgment Motions, Keating's counsel, Messrs. Rustin Mangum Nathan Wenk, and Keating's expert witness, Dr. David Eggleston, have the personal knowledge necessary to authenticate the third-party website printouts.  (Docket Nos. 135, 138, 139.)  It is well established that the individual who accesses the website and prints out the pages has the "personal knowledge" to authenticate the printouts.  *Rearden LLC*, 597 F. Supp. 2d at 1027 (finding plaintiff's argument that an attorney cannot authenticate a publicly accessible website "nonsensical"); *see also Osborn v. Butler*, 712 F. Supp. 2d 1134, 1146 (D. Idaho 2010); *Jarritos*, 2007 WL 1302506 at *10.

Messrs. Mangum and Wenk personally accessed the web pages, personally printed them out, and have verified that they have not made any changes to the printouts.  They have additionally provided a detailed account of the web addresses of each of the website printouts as well as when the website was accessed and the printout created.  *Osborn v. Butler*, 712 F. Supp. 2d 1134, 1146 (D. Idaho 2010); *Jarritos*, 2007 WL 1302506 at *10; *Perfect 10*, 213 F. Supp. 2d at 1153-54.

Similarly, Dr. Eggleston has verified that he has visited each of the websites and confirmed that the web-page printouts are the same as the websites he accessed. He has provided a detailed account of the web addresses, the actions taken, and the dates he accessed them. (Docket No. 135.)  Accordingly, the personal knowledge condition for authentication of the website printouts is

1    satisfied.  Moreover, the declarations from Messrs. Mangum and Wenk and Dr.

2    Eggleston include the information necessary to authenticate the website

3    printouts.  See *Jarritos*, 2007 WL 1302506 at *10 (finding that the plaintiff's

4    counsel properly and timely authenticated the documents when his explanation

5    was produced in response to the defendant's evidentiary objections).

6    **D.    The Web-Page Printouts Are Not Hearsay Because They Are Not**

7            **Being Offered To Prove The Truth Of The Matter Asserted**

8            Glidewell objects to the website printouts as hearsay.  To be considered

9    hearsay, the party offering the evidence must be using it to "prove the truth of

10   the matter asserted in the statement."  Fed. R. Evid. 801(c)(2).  The third party

11   website printouts introduced by Keating into evidence are being used to show

12   the landscape of the dental field.  For example, the printouts (1) portray dental

13   professionals' use of terms such as BruxZir, bruxer, brux, zir, and zirconia; (2)

14   show how dental professionals are promoting the marks and services; and

15   (3) show instances where Glidewell's mark is being used without a "circle-R"

16   (®) to denote a registered trademark.  (*See* Docket No. 93 (Eggleston Decl. ¶¶

17   32-92, Exs. 79-137); Docket No. 91 (Jankowski Decl. ¶¶ 35-40, 44).)

18          Glidewell admits that these are Keating's uses for the evidence.  (Docket

19   No. 115 at 5:15-23.)  Keating is not offering the third-party web-page printouts

20   to prove the truth of the statements on the third-party websites.  For example,

21   many of the websites include laudatory comments about commercial products.

22   For Keating's purposes, it is irrelevant whether the dental professionals are

23   being truthful in the services that they offer on their websites or in how they use

24   words like BruxZir, bruxer, brux, zir or zirconium.  It is only relevant that they

25   are portraying themselves and their products to the public through the use the

26   words BruxZir, bruxer, brux, zir or zirconium.  Accordingly, the website

27   printouts are not inadmissible as hearsay.

28   / / /

**E.   Keating's Web-Page Printouts Are Not Irrelevant Merely Because They May be Dated after April of 2011**

As explained above, in Keating's opposition to Glidewell's Motion *In Limine* No. 1, evidence dated after April 2011 is not categorically irrelevant. (*See* Keating's Opposition to Glidewell's Motion *In Limine* No. 1, above at Section I.)  For those same reasons, Glidewell's Motion *In Limine* No. 2 should be denied.

**III.   GLIDEWELL'S MOTION *IN LIMINE* NO. 3 SHOULD BE DENIED BECAUSE DR. EGGLESTON'S TESTIMONY IS PROPER UNDER FEDERAL RULE OF EVIDENCE 702**

**A.   Dr. Eggleston's Testimony is Relevant To the Issue of BruxZir's Genericness**

Glidewell again argues that any evidence dated after April 2011—the "crucial date" Glidewell asserts that Keating introduced its all-zirconia product into the market using the KDZ Bruxer name—is irrelevant to the determination of whether Glidewell's BruxZir mark was generic as of April 2011.[5]  Thus, Glidewell argues that Dr. Eggleston's testimony regarding the genericness of the terms "bruxzir" and "bruxer should be excluded because he does not discuss whether those terms were generic in the dental industry as of April 2011. (Glidewell's MIL No. 3 at 1:22-28.)   Specifically, Glidewell argues that Dr. Eggleston's testimony does not meet the requirements of F.R.E. 702 "because he relies on no facts or data probative of genericness as of the relevant time period." (*Id.*)  These arguments are meritless.

As discussed in Keating's Opposition to Glidewell's Motion *In Limine* No. 1, evidence dated after April 2011 is not categorically irrelevant. (*See*

---

[5]  As explained *supra*, Keating first sold its all-zirconia product in the marketplace under the name KDZ Bruxer on May 10, 2011.  (*See* Section I, above.)

Keating's Opposition to Glidewell's Motion *In Limine* No. 1, above at Section I.)  Despite Glidewell's argument to the contrary, *Yellow Cab* stands only for the proposition that the "crucial date" for determining genericness is the date the alleged infringer introduced his competing product into the market.  *Yellow Cab Co. of Sacramento*, 419 F.3d at 928.  The Ninth Circuit did not hold that evidence dated after the "crucial date" could not be used to prove genericness on the "crucial date."  Nor did it hold that any evidence dated after the "crucial date" could not possibly "help the trier of fact to understand the evidence or determine a fact in issue" pursuant to F.R.E. 702(a).  Indeed, Glidewell fails to cite any case where a court excluded evidence dated after the "crucial date" as irrelevant or unhelpful to the trier of fact as to the determination of genericness at the time of the "crucial date."

Evidence dated after the "crucial date" is relevant to the extent it corroborates prior evidence.[6]  For example, post-May 2011 evidence can show that after Keating's entry into the market and after start of this litigation, Glidewell failed to properly police the use of its mark.  This tends to show that Glidewell has consistently failed to monitor the use of its mark and that it has not changed any of its practices.  The trier of fact may use this to support a finding that the BruxZir mark, or its phonetic equivalent, has been generic for so long that Glidewell has no ability to salvage the mark.

Establishing a comprehensive timeline of the use of the BruxZir name is also relevant to understanding the status of BruxZir at the time of Keating's entry into the market.  As detailed in Keating's Reply Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment

---

[6] In footnote 3 of Glidewell's Motion *in limine* No. 3, Glidewell admits there are at least two documents relied on by Dr. Eggleston evidencing the genericness of the terms "BruxZir" and "bruxer" before April 2011: (1) a website posting from Pittman Dental Lab, dated November 29, 2010 (Docket No. 93, Ex. 120); and (2) a prescription from Mascola Esthetics in San Antonio (Docket No. 93, Ex. 110.)

Cancelling Glidewell's Trademark Registration (Docket No. 132), evidence dated after the crucial genericness date is still relevant to the analysis of genericness. Expert surveys, for example, are necessarily dated after the onset of litigation (and therefore after the crucial date), but nevertheless are relied upon considerably in trademark cases. *Committee for Idaho's High Desert v. Yost*, 92 F.3d 814, 822 (9th Cir. 1996) ("survey evidence is . . . one of the most persuasive ways to prove secondary meaning"); *see also Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999) ("Secondary meaning can be established in many ways, including (but not limited to) . . . survey evidence . . . . See 2 J. Thomas McCarthy, Trademarks and Unfair Competition § 15:30 (4th ed. 1997)); *Nightlight Sys., Inc., v. Nitelites Franchise Sys., Inc.*, 2007 WL 4563873 (N.D. Ga. 2007) (noting that deficiencies in the timeliness of a survey does not necessarily bar its admissibility); *Burger King Corp.*, 705 F. Supp. at 1525 (holding that a survey taken after the crucial date may not have its validity challenged for that reason).

Furthermore, Glidewell's suggestions that Dr. Eggleston's testimony should be excluded because he did not opine on the primary significance of the BruxZir mark is equally baseless. The notion that an expert's testimony should be excluded in its entirety for something s/he *didn't* say (as opposed to the normal scenario where a party seeks to exclude testimony for something a witness *did* say,) in his expert reports or declarations is rather strange.

Moreover, Dr. Eggleston's testimony, and the evidence he relied on to provide that testimony, directly addresses the primary significance of the terms "bruxzir" and "bruxer" to the relevant dental community. Specifically, based on a plethora of examples of dentists using the terms "bruxer" and "bruxzir" in promotional materials, prescriptions, and scholarly articles (among other things) available in the marketplace, Dr. Eggleston concluded "dentists and other professionals in the dental profession refer to an all-zirconia crown as 'bruxer

- 14 -

crown' or alternatively a 'bruxzir crown." (Docket No. 93-1, Ex. 65 at 16-18, 18:23-25.)   After reviewing additional evidence regarding the primary significance of the BruxZir mark, Dr. Eggleston stated, "Dental professional view "bruxzir" as a reference to a crown made of zirconia, whether or not the crown was made by Glidewell and whether or not the crown was made from zirconia made by Glidewell." (Docket No. 93-2, Ex. 66 at 5:17-21; *see also* Docket No. 93-3, Ex. 67 at 3-5.) In other words, Dr. Eggleston did testify that the primary significance of the term "bruxzir" was as "a name for a genus of zirconia dental restoration productions." (Glidewell Motion No. 3 at 10:8-13.) Accordingly, Dr. Eggleston's expert testimony is directly relevant to the issue of genericness.

## B.   Dr. Eggleston's Testimony Is Based on Reliable and Authenticated Sources

In addition, Glidewell finds Dr. Eggleston's testimony to be unreliable because it is based on "post-April 2011 or undated, unauthenticated hearsay websites and prescription forms." (Glidewell Motion No. 3 at 10:15-20.) Glidewell also quibbles that "none of the internet material upon which Dr. Eggleston relies has been or can be properly authenticated." Accordingly, Glidewell argues Dr. Eggleston's sources are unreliable and, therefore, his testimony is unreliable as well. (Glidewell Motion No. 3 at 11:20-28.)

However, as discussed in Keating's Opposition to Glidewell's Motion *In Limine* No. 2, the website materials relied on by Dr. Eggleston have been properly authenticated by both Dr. Eggleston and counsel for Keating. (See Section II, *supra*; Docket Nos. 135, 138, 139; *Jarritos, Inc.,* 2007 WL 1302506 at *10; *Rearden LLC,* 597 F. Supp. 2d at 1027; *Perfect 10, Inc.,* 213 F. Supp. 2d at 1153-54 (citing *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000).) Moreover, Glidewell fails to cite any cases that hold an expert's reliance on third party website material is grounds for excluding that expert's testimony in

- 15 -

its entirety.   Glidewell's objections are further baseless because it is well-established that an expert may rely on hearsay evidence to assist in forming opinions.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993); Fed. R. Evid. 703.   Here, Keating's expert, Dr. Eggleston, is relying upon website printouts and dental lab prescription forms in forming his opinion. More specifically, experts may reasonably rely on third party websites when forming opinions relating to the use of trademarks.[7]  *See* Fed. R. Evid. 703. Accordingly, even if the documents were hearsay—which they are not—the documents would still be admissible as foundational documents for use by Dr. Eggleston.

Moreover, Dr. Eggleston did not rely only on third-party website information.   He also based his expert opinions on the documents produced during discovery in this matter, scholarly articles, and his 42 years of experience in the dental industry, among other things.   (Docket Nos. 93-1, 93-2, 93-3.) Notably, Glidewell does not contest the reliability of these sources.

**C.**   **The Probative Value of Dr. Eggleston's Testimony Outweighs Any Prejudicial Effect on Glidewell**

Glidewell argues that allowing Dr. Eggleston to testify as to the genericness of "BruxZir" and "bruxer" poses a substantial risk of unfair prejudice because the jury would be misled by Dr. Eggleston to determine

---

[7] Glidewell cites *Ty Inc. v. Softbelly's Inc.*, No. 00 C 5230, 2006 WL 5111124 at *1 (N.D. Ill Apr. 7, 2006) for the proposition that reliance on Internet material renders expert testimony unreliable.   However, in addition to being an ,out-of-circuit case, *Ty Inc.* is easily distinguished from this case.   In *Ty Inc.*, the trial court determined the expert testimony was unreliable, not because of the expert's reliance on Internet material, but because the material was almost entirely provided by counsel (who had a strong interest in the expert's conclusions) and because the search terms used in the Internet searches were too narrowly focused and excluded contraindicative results.   Here, Dr. Eggleston conducted independent Internet research, in addition to his review of scholarly articles and the actual practices of dentists in the industry.   Glidewell has introduced no evidence to show that Dr. Eggleston's research was narrow, biased, or unreliable in the same manner as that of the *Ty Inc.*'s expert.

1    genericness at a time period other than the crucial date of April 2011.

2    (Glidewell's MIL No. 3 at 12-13.)    Moreover, Glidewell argues that Dr.

3    Eggleston's testimony would confuse issues.    (*Id.*)    These arguments are

4    baseless.

5        Once the Court decides the "crucial date" for determining genericness,

6    the Court will communicate that date to the trier of fact, who will readily abide

7    by that date.    Contrary to Glidewell's suggestion, organizing two time frames

8    (before Keating's entry into the market and after Keating's entry into the

9    market) is not complicated beyond the abilities of the average person.

10       It is unlikely that anyone would find that concept confusing.

11   **D.    Dr. Eggleston Provided Testimony Directly Relevant to the Issue of**

12   **Likelihood of Confusion**

13       Glidewell argues that Dr. Eggleston has not offered an opinion regarding

14   the likelihood of confusion as to BruxZir and KDZ Bruxer and, thus, should not

15   be allowed to offer an opinion on the likelihood of confusion at trial.

16   (Glidewell's MIL No. 3 at 13-14.)    Once again, Glidewell is mistaken.    Dr.

17   Eggleston did provide testimony regarding the likelihood of confusion.

18       The Ninth Circuit's decision in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d

19   341, 348-49 (9th Cir. 1979), sets out the eight non-exclusive factors for

20   determining whether there is a likelihood of confusion between marks: (1)

21   strength or weakness of plaintiff's mark; (2) defendant's use of the mark; (3)

22   similarity of plaintiff's and defendant's marks; (4) actual confusion; (5)

23   defendant's intent; (6) marketing/advertising channels; (7) consumer's degree of

24   care; and (8) product line expansion.    Here, Dr. Eggleston addressed a number

25   of these issues.

26       For example, Dr. Eggleston discussed the similarities between BruxZir

27   and KDZ Bruxer (Docket No. 93-1 at 14-18.), the strength of Glidewell's mark

28   (*id.* at 12-18), and Glidewell's use of the mark (*id.* at 12-18).    Thus, Dr.

- 17 -

1   Eggleston has offered testimony relevant to the determination of whether there

2   is a likelihood of confusion between BruxZir and KDZ Bruxer.   Accordingly,

3   Dr. Eggleston's testimony to that effect should not be excluded from trial.

4        For all the foregoing reasons, Glidewell's Motion *In Limine* No. 3 should

5   be denied.

6   ## IV.  GLIDEWELL'S MOTION *IN LIMINE* NO. 4 SHOULD BE

7   ## DENIED BECAUSE LORI BOATRIGHT'S TESTIMONY

8   ## IS PROPER UNDER FEDERAL RULE OF EVIDENCE 702

9        Glidewell argues that the testimony of Keating's expert, Lori Boatright

10  ("Boatright"), should be excluded because (1) she misapplied the Trademark

11  Manual of Examining Procedure ("TMEP") standards; (2) she provided

12  improper speculation as to what a trademark examiner should have done in this

13  matter; and (3) she failed to provide testimony as to the genericness of BruxZir

14  as of April 2011.  Glidewell's criticisms of expert Boatright are meritless.

15  ### A.  Boatright Did Not Misapply The TMEP

16       Glidewell argues Boatright misapplied the practices and procedures of the

17  PTO in her Rebuttal Report to the Report of David J. Franklyn ("Rebuttal

18  Report") by stating or strongly suggesting the TMEP required the Examiner to

19  take certain actions in evaluating Glidewell's trademark application for BruxZir.

20  (Docket No. 94-1.)   In support of this argument, Glidewell references three

21  sentences of one paragraph in Boatright's thirty-page Rebuttal Report.   That

22  paragraph provides:

23       The PTO should have inquired as to whether BRUXZIR had any

24       meaning in the relevant trade; a proper web search for meaning
         by the Examining Attorney would have disclosed 'bruxer' as

25       having meaning as the intended user of Glidewell's dental
         crowns.  Had the Examining Attorney learned of this meaning

26       (of 'bruxer') either by search, by making the proper inquiry, or

27       by Glidewell volunteering such information, Glidewell's
         application would then have been refused registration as both

28

'merely descriptive' (initial refusal) and if on the Supplemental Register or under Section 2(f) of the Trademark Act, then 'generic'. . . .

(Docket No. 94-1 at ¶ 39.)

According to Glidewell, "Boatright states that the Examiner did not do a routine Internet search. But Boatright identifies no requirement for such a search, nor any evidence that is 'routine.'"  (Glidewell's MIL No. 4 at 5.)  Glidewell's interpretation of the report does not comport with its plain meaning. Boatright merely stated that the Examiner should have made a proper inquiry. She indicated an Internet search would have revealed the meaning of "bruxer," but she did not claim that the TMEP required the Examiner to perform such an Internet search.

Second, citing the same paragraph of Boatright's Rebuttal Report, Glidewell fustigates Boatright's statement that the Examiner "should have inquired as to whether BRUXZIR had any meaning in the relevant trade." (Glidewell's MIL No. 4 at 5.)  Glidewell argues that the Examiner was under no such obligation.  However, as Boatright states in her Rebuttal Report (Docket No. 94-1 at ¶ 44), TMEP section 814 (Docket No. 139-2) provides: "[s]ometimes, it is necessary for the examining attorney to request additional information from an applicant in order to examine the application properly, pursuant to 37 C.F.R. §2.61(b)."  Furthermore, TMEP section 1209.02 (Docket No. 139-2) provides: "[t]he examining attorney must consider the evidence of record to determine whether a mark is merely descriptive or whether it is suggestive or arbitrary.  *See In re Noble Co*., 225 USPQ 749, 750 (TTAB 1985). The examining attorney may request that the applicant submit additional explanation or materials to clarify the meaning of the mark or the nature of the goods or services."  (Docket No. 94-1 at ¶ 44.)  Put simply, because the Examiner is under an obligation to "examine the application properly" and

"consider the evidence of record to determine whether a mark is merely descriptive," Boatright's statement that the Examiner should have made a proper inquiry as to the meaning of BruxZir is consistent with the TMEP.

Third, Glidewell argues that Boatright suggested Glidewell "hoodwinked" the Examiner by failing to disclose the meaning of "BruxZir." (Glidewell's MIL No. 4 at 6.) However, Boatright did not state or even suggest that Glidewell was obligated by the TMEP to disclose the meaning of the term "BruxZir."

Overall, even if Glidewell's criticisms were well-founded (which they are not), Glidewell's objections to three sentences of one paragraph of Boatright's thirty-page Rebuttal Report are not sufficient to exclude Boatright's entire testimony from trial.

**B.**   **Boatright's Testimony is Not Unsupported Speculation**

Glidewell argues Boatright's testimony regarding the steps the Examining Attorney normally takes, and should have taken in reviewing Glidewell's trademark application for BruxZir, is unsupported speculation. (Glidewell's MIL No. 4 at 6.) Glidewell argues that the majority of Boatright's Rebuttal Report merely states what the Examining Attorney should have done in reviewing Glidewell's trademark application. However, Glidewell only cites three sentences from Boatright's Rebuttal Report in support of its claim. (*Id.* at 5-6.) Moreover, the only case law Glidewell cites is either out of circuit or unreported.

Furthermore, Boatright's statements are not unsupported opinion. Her conclusions about what the Trademark Examining Attorney in this case should have done are based on her experience as a Trademark Examining Attorney at the U.S. Patent & Trademark Office ("USPTO"), where she examined over 2,500 trademark applications, and her decades of experience working with trademark applications and law. (Docket No. 94-1 ¶¶ 4-9.) Indeed, Boatright's

- 20 -

testimony regarding the trademark approval process is directly relevant to the claims at issue in this case, including Keating's Fourth Counterclaim for Cancellation of Glidewell's BruxZir trademark registration.   Moreover, Boatright's testimony will assist the trier of fact in understanding the issues in this case.

**C.   Boatright's Testimony is Relevant To the Issue of BruxZir's Genericness**

Glidewell argues that Boatright's testimony is irrelevant because she does not address whether the terms "bruxer" and "BruxZir" were generic at the crucial date of April 2011.   (Glidewell's MIL No. 4 at 10.)   This claim is meritless.

As discussed in Keating's Opposition to Glidewell's Motion *In Limine* No. 1, evidence dated after April 2011 is not categorically irrelevant.   (*See* Keating's Opposition to Glidewell's Motion *In Limine* No. 1, above at Section I.)   Despite Glidewell's claims to the contrary, *Yellow Cab* stands only for the proposition that the "crucial date" for determining genericness is the date the alleged infringer introduced his competing product into the market.   *Yellow Cab Co. of Sacramento*, 419 F.3d at 928.   The Ninth Circuit did not hold that evidence dated after the "crucial date" could not be used to prove genericness on the "crucial date."   Nor did it hold that any evidence dated after the "crucial date" could not possibly "help the trier of fact to understand the evidence or determine a fact in issue" pursuant to F.R.E. 702(a).   Indeed, Glidewell fails to cite any case where a court excluded evidence dated after the "crucial date" as irrelevant or unhelpful to the trier of fact as to the determination of genericness at the time of the "crucial date."

Evidence dated after the "crucial date" is relevant to the extent it corroborates prior evidence.   For example, post-May 2011 evidence can show that after Keating's entry into the market and after start of this litigation,

1    Glidewell failed to properly police the use of its mark.  This tends to show that

2    Glidewell has consistently failed to monitor the use of its mark and that it has

3    not changed any of its practices.  The trier of fact may use this to support a

4    finding that the BruxZir mark, or its phonetic equivalent, has been generic for so

5    long that Glidewell has no ability to salvage the mark.

6         Establishing a comprehensive timeline of the use of the BruxZir name is

7    also relevant to understanding the status of BruxZir at the time of Keating's

8    entry into the market.  As detailed in Keating's Reply Memorandum of Points

9    and Authorities in Support of Defendant's Motion for Summary Judgment

10   Cancelling Glidewell's Trademark Registration (Docket No. 132), evidence

11   dated after the crucial genericness date is still relevant to the analysis of

12   genericness.  Expert surveys, for example, are necessarily dated after the onset

13   of litigation (and therefore after the crucial date), but nevertheless are relied

14   upon considerably in trademark cases. *Committee for Idaho's High Desert*, 92

15   F.3d at 822 ("survey evidence is . . . one of the most persuasive ways to prove

16   secondary meaning"); *see also Filipino Yellow Pages, Inc.*, 198 F.3d at 1151

17   ("Secondary meaning can be established in many ways, including (but not

18   limited to) . . . survey evidence . . . . See 2 J. Thomas McCarthy, Trademarks

19   and Unfair Competition § 15:30 (4th ed. 1997)); *Nightlight Sys., Inc., v. Nitelites

20   Franchise Sys., Inc.*, 2007 WL 4563873 (N.D. Ga. 2007) (noting that

21   deficiencies in the timeliness of a survey does not necessarily bar its

22   admissibility); *Burger King Corp.*, 705 F. Supp. at 1525 (holding that a survey

23   taken after the crucial date may not have its validity challenged for that reason).

24   **D.   <u>The Probative Value of Boatright's Testimony Outweighs Any</u>**

25        **<u>Prejudicial Effect on Glidewell</u>**

26        Glidewell argues that allowing Boatright to testify as to the genericness of

27   "BruxZir" and "bruxer" poses a substantial risk of unfair prejudice because the

28   jury would be misled by Boatright to determine genericness at a time period

- 22 -

other than the crucial date of April 2011.  (Glidewell's MIL No. 4 at 12-13.)
Glidewell also argues that Dr. Eggleston's testimony would confuse issues.
(*Id.*)  Glidewell's arguments are baseless.

Once the Court decides the "crucial date" for determining genericness,
the Court will communicate that date to the trier of fact, who will readily abide
by that date.  Contrary to Glidewell's suggestion, organizing two time frames
(before Keating's entry into the market using the KDZ Bruxer name and after
that entry) is not complicated beyond the abilities of the average person.

It is unlikely that anyone would find that concept confusing.

**E.      Boatright Provided Testimony Directly Relevant to the Issue of Likelihood of Confusion**

Glidewell also argues that Boatright's trial testimony regarding the
likelihood of confusion as to BruxZir and KDZ Bruxer should be limited to the
opinions she disclosed in her expert report.  (Glidewell's MIL No. 4 at 13.)
Keating disagrees.  Boatright should be able to provide testimony on the topics
addressed in her declarations as well.  (Docket Nos. 94 and 130.)

For all of the foregoing reasons, Glidewell's Motion *In Limine* No. 4
should be denied.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

- 23 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V.  CONCLUSION

In conclusion, for the foregoing reasons, Keating respectfully requests that the Court deny Glidewell's Motions *In Limine* Nos. 1–4.

Respectfully submitted,
KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: January 18, 2013          By: /s/ David G. Jankowski
                                     Darrell L. Olson
                                     Lynda J. Zadra-Symes
                                     Jeffrey L. Van Hoosear
                                     David G. Jankowski

                                 ENTERPRISE COUNSEL GROUP ALC
                                     David A. Robinson
                                     James S. Azadian

                                 Attorneys for Defendant and Counter-Plaintiff
                                 KEATING DENTAL ARTS, INC.

DEFENDANT/COUNTER-PLAINTIFF KEATING DENTAL ARTS, INC.'S OMNIBUS OPPOSITION AND
RESPONSETO PLAINTIFF/COUNTER-DEFENDANT'S MOTIONS *IN LIMINE* NOS. 1-4