Darrell L. Olson (SBN 77,633)
Darrell.Olson@kmob.com
Lynda J. Zadra-Symes (SBN 156,511)
Lynda.Zadra-Symes@kmob.com
Jeffrey L. Van Hoosear (SBN 147,751)
Jeffrey.VanHoosear@kmob.com
David G. Jankowski (SBN 205,634)
David.Jankowski@kmob.com
KNOBBE, MARTENS, OLSON & BEAR
2040 Main Street, Fourteenth Floor
Irvine, California 92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

David A. Robinson (SBN 107,613)
drobinson@enterprisecounsel.com
James S. Azadian (SBN 225,864)
jazadian@enterprisecounsel.com
ENTERPRISE COUNSEL GROUP ALC
Three Park Plaza, Suite 1400
Irvine, California 92614
Phone: (949) 833-8550
Facsimile: (949) 833-8540

Attorneys for Defendant/Counter-Plaintiff,
KEATING DENTAL ARTS, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DISTRICT

| | |
|---|---|
| JAMES R. GLIDEWELL DENTAL CERAMICS, INC. dba GLIDEWELL LABORATORIES, <br><br> Plaintiff, <br><br> v. <br><br> KEATING DENTAL ARTS, INC. <br><br> Defendant. <br><br> AND RELATED COUNTERCLAIMS. | Civil Action No. SACV11-01309-DOC(ANx) <br><br> Honorable David O. Carter <br><br> **DEFENDANT AND COUNTER-PLAINTIFF KEATING DENTAL ARTS, INC.'S OMNIBUS OPPOSITION AND RESPONSE TO PLAINTIFF AND COUNTER-DEFENDANT JAMES R. GLIDEWELL DENTAL CERMANICS, INC.'S MOTION *IN LIMINE* NOS. 5–9** <br><br> Trial Date: February 26, 2013 <br> Time: 8:30 a.m. <br> Location: Courtroom 9D |

## <u>TABLE OF CONTENTS</u>

Page No.

I.   GLIDEWELL'S MOTION *IN LIMINE* NO. 5 SHOULD BE DENIED BECAUSE EVIDENCE RELATING TO CERTAIN TRADEMARK OFFICE PROCEEDINGS IS BOTH RELEVANT AND HIGHLY PROBATIVE ............................................. 1

    A.   Evidence of the PTO's Pending Actions are Relevant ................... 1

    B.   The Probative Value of the PTO Proceedings is Not Outweighed By the Danger of Unfair Prejudice and Jury Confusion ....................................................................................... 3

    C.   The PTO Proceedings are Not Hearsay ......................................... 5

II.  GLIDEWELL'S MOTION *IN LIMINE* NO. 6 SHOULD BE DENIED BECAUSE EVIDENCE OF THE ADVICE OF COUNSEL DEFENSE WAS INTRODUCED DURING DISCOVERY ............................................................................................ 5

    A.   Keating Informed Glidewell That It Relied Upon the Advice of Counsel Early In Discovery .......................................... 6

    B.   The Deposition Testimony of Bob Brandon and Shaun Keating Further Disclosed that Keating Relied on Advice of Counsel ...................................................................................... 7

    C.   Keating's Argument That Keating's Attorney Is Not Listed On Keating's Witness List is Irrelevant Because Both Keating and Brandon are Listed on the Witness List ............. 8

III. GLIDEWELL'S MOTION *IN LIMINE* NO. 7 SHOULD BE DENIED BECAUSE GLIDEWELL'S SIZE AND RESOURCES ARE RELEVANT TO THE CLAIMS AND DEFENSES IN THE CASE ................................................................... 9

IV.  GLIDEWELL'S MOTION *IN LIMINE* NO. 8 IS UNOPPOSED, AS ALREADY COMMUNICATED TO GLIDEWELL'S COUNSEL DURING THE LOCAL RULE 7-3 CONFERENCE OF COUNSEL ........................................... 12

V.   GLIDEWELL'S MOTION *IN LIMINE* NO. 9 IS UNOPPOSED, AS COMMUNICATED TO GLIDEWELL'S COUNSEL DURING THE LOCAL RULE 7-3 CONFERENCE OF COUNSEL ............................................................. 12

VI.  CONCLUSION ..................................................................... 14

- i -

DEFENDANT/COUNTER-PLAINTIFF KEATING DENTAL ARTS, INC.'S OMNIBUS OPPOSITION AND RESPONSE TO PLAINTIFF/COUNTER-DEFENDANT'S MOTIONS *IN LIMINE* NOS. 5-9

1

## **TABLE OF AUTHORITIES**

2

**Page No(s).**

3

*Cairns v. Franklin Mint Co.,*

4
    24 F. Supp. 2d 1013 (C.D. Cal.1998) .................................................. 9, 10

5

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.,*

6
    543 U.S. 111, 125 S. Ct. 542 (2004) ....................................................... 11

7

*Playboy Enters. v. Netscape Communs. Corp.,*
    55 F. Supp. 2d 1070 (C.D. Cal. 1999) ...................................................... 9

8

9

10

## **OTHER AUTHORITIES**

11

F.R.E. 403 ............................................................................................... 3, 4, 5

12

F.R.E. 408 ................................................................................................... 13

13

Fed. R. Evid. 801 ........................................................................................ 5

14

Fed. R. Civ. P. 37 ..................................................................................... 5, 7

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT/COUNTER-PLAINTIFF KEATING DENTAL ARTS, INC.'S OMNIBUS OPPOSITION AND
RESPONSE TO PLAINTIFF/COUNTER-DEFENDANT'S MOTIONS *IN LIMINE* NOS. 5-9

In light of the highly abbreviated time period for Defendant and Counter-Plaintiff Keating Dental Arts, Inc. ("Keating") to oppose the nine motions *in limine* filed late last night by Defendant James R. Glidewell Dental Ceramics, Inc. ("Glidewell"), Keating hereby files this consolidated Omnibus Opposition and Response to Glidewell's Motions *In Limine* Nos. 5–9.[1]

## I. GLIDEWELL'S MOTION *IN LIMINE* NO. 5 SHOULD BE DENIED BECAUSE EVIDENCE RELATING TO CERTAIN TRADEMARK OFFICE PROCEEDINGS IS BOTH RELEVANT AND HIGHLY PROBATIVE

Glidewell argues that any evidence relating to Keating's filings and the U.S. Patent and Trademark Office's (PTO) actions in Proceeding No. 92056050 and Proceeding No. 91202891 (collectively, "PTO Proceedings") is both irrelevant and prejudicial. Specifically, Glidewell argues that the PTO Proceedings "say nothing about the validity of the BruxZir mark or the merits of Keating's purported defenses," and that the "jury may wrongly conclude that its decision will be second guessed." (Glidewell's MIL No. 5 at 1:18-23.) These arguments are without merit.

### A. Evidence of the PTO's Pending Actions are Relevant

Glidewell hypothesizes that Keating will introduce items from the PTO Proceedings as evidence, and argument that the PTO is second-guessing the grant of Glidewell's BruxZir mark and may cancel or deny it registration. (*Id.* at 3:26-28.) Glidewell cites case law stating that PTO decisions and pending proceedings are of limited or no relevance to trademark infringement actions. (*Id.* at 3:6-8.) By Glidewell's own logic, any mention of a decision from the PTO, including the decision to *grant* a trademark at all, is irrelevant to a

/ / /

---

[1] Keating presents its opposition and response to Glidewell's Motion *In Limine* Nos. 1–4 in a separate document filed concurrently herewith.

trademark infringement action.  Glidewell's tautology would preclude Glidewell from informing the jury of the existence of its BruxZir trademark.

Glidewell fails to recognize the reason the PTO Proceedings are relevant to this case.  Glidewell has introduced evidence, and made arguments, relating to its use of the BruxZir name on products other than dental restorations, most notably its zirconia milling blanks.  By way of example, in its motions for summary judgment Glidewell included as purported evidence of commercial strength of the mark BruxZir the advertising monies spent by Glidewell on advertising the BruxZir name when used with its zirconia milling blanks.   It is important that the jury understand that (1) Glidewell's registered mark is only registered for use on a limited scope of goods and services (i.e., dental restorations); and (2) while Glidewell has used the BruxZir name as a trademark for other goods and services (e.g., zirconia milling blanks), it does not have a registration for such use, and Keating is not being accused of infringing the BruxZir name for these other uses.

Keating anticipates from Glidewell's contributions to the Joint Exhibit List and from its conduct in this case that Glidewell will introduce evidence and argument informing the jury that Glidewell has filed an application to register BruxZir as a trademark for use with its zirconia milling blanks.  Accordingly, it is further relevant for the jury to receive evidence and argument relating to the fact that (1) Glidewell's application to use the name BruxZir in connection with its milling blanks has not resulted in a registration, (2) the application is suspended pending the outcome of this lawsuit, and (3) Keating has filed an opposition with the PTO to that application.  This evidence is relevant to establish that a pending application is not support for a previously granted one, and that Keating has not been negligent, acquiescing, or otherwise standing by while Glidewell pursues protection for the BruxZir name.

/ / /

Keating anticipates that Glidewell may also introduce evidence and make arguments at trial that the PTO publishes pending trademark applications to afford the public the opportunity to oppose the pending trademarks prior to registration.   Keating believes Glidewell may argue to the jury that, because Keating did not oppose Glidewell's application to register BruxZir for its dental restorations, Keating was either negligent or acquiesced to Glidewell's application.   Accordingly, Keating would need to introduce the PTO Proceedings evidence to rebut any suggestion of negligence or acquiescence on the part of Keating made by Glidewell—not as evidence of the Proceedings' value or merit.

**B.**   **The Probative Value of the PTO Proceedings is Not Outweighed By the Danger of Unfair Prejudice and Jury Confusion**

Glidewell argues that introduction of the PTO Proceedings would cause unfair prejudice in the context of F.R.E. 403, because it would cause the jury to have improper grounds for unsupported inferences.  (Glidewell's MIL No. 5 at 6:14-16.)  Additionally, Glidewell argues that evidence of the PTO Proceedings is likely to confuse the jury and encourage a decision on an improper basis." (*Id.* at 6:26-27.)   Despite these arguments, *without providing legal basis*, Glidewell argues that the decision of the PTO to allow the registration of the BruxZir mark is presumed to be correct—and presumably should be allowed. (*Id.* at 7:17-22.)

Respectfully, Glidewell cannot have it both ways.   Keating fails to understand how Glidewell can claim that PTO Proceedings will provide an improper basis for unsupported inferences and confuse the jury, but claim that the PTO's positive factors for Glidewell will not provide an improper basis for unsupported inferences and confusion.   The reasoning is contradictory and underscores the hollow nature of Glidewell's argument.   Furthermore, as discussed in section V.A., *supra*, the PTO Proceedings will not confuse the jury

1   as to Keating's lack of negligence regarding opposition to the BruxZir mark,
2   and refusal to acquiesce to the might of Glidewell.

3         Glidewell goes on to argue the PTO Proceedings will prejudice the jury.
4   (*Id.* at 8:5-8.)  Once again, Glidewell argues that it is appropriate for it to parade
5   its favorable PTO dealings, which could be prejudicial to Keating, while at the
6   same time arguing that PTO Proceedings are entirely prejudicial.  (*Id.* at 8:12-
7   16.)   Glidewell's reasoning suggests that it is permissible for Glidewell to
8   proffer evidence that by its own arguments is "prejudicial," but not for Keating
9   to rebut this evidence.  What is more, the evidence is not prejudicial because
10  Keating is not seeking to introduce the language, but evidence of Keating's
11  action and resistance against the Glidewell trademark and Glidewell's
12  application in connection with the milling blanks.  The PTO Proceedings are not
13  prejudicial in so far as they are rebuttal evidence to Glidewell's own PTO
14  evidence.

15        Finally, Glidewell hypothesizes as follows:

16      Keating's sole purposes in admitting evidence of the PTO
17      Proceedings would be to convey to the jury that the validity of the
    BruxZir mark is somehow undermined or weakened merely
18      because Keating has sought its cancellation in the PTO.  There is a
19      substantial risk that the jury would be confused as to the legal
    import, if any, of Keating's PTO filings, and will draw unwarranted
20      inferences about the significance of these filings.  In addition, or
21      alternatively, the jury would be invited to conclude that it need not
    take its job seriously, because PTO will ultimately set things right
22      or overrule the jury's decisions.

23  (*Id.* at 8:17-24.)  As discussed above, this does not accurately present why
24  Keating may admit evidence of the PTO Proceedings.  Additionally, the
25  evidence would also rebut any suggestion by Glidewell that because it has
26  another trademark pending for its milling blanks, there is somehow a
27  presumption that its previous trademark is proper.  These purposes are unlikely
28  to either confuse or prejudice the jury.  Glidewell's argument that the jury may

not "take its job seriously" should the PTO Proceedings be introduced is an unwarranted fear that could nonetheless be addressed and mitigated by the jury instructions.  As such, the PTO Proceedings are unlikely to confuse or prejudice the jury in violation of Rule 403.

## C.   The PTO Proceedings are Not Hearsay

Glidewell correctly states the definition of hearsay.  Hearsay is evidence introduced to prove the fact of the matter asserted.  Fed. R. Evid. 801.  Here, Glidewell ignores that the PTO Proceedings are not to be introduced for their truth.  As discussed above, the PTO Proceedings would be offered to establish the scope of Glidewell's trademark rights (which goods and services are covered by Glidewell's registration (i.e., dental restorations) and which goods and services are not (e.g., zirconia milling blanks)) and that Keating has not been negligent or acquiescing to Glidewell's pursuit of trademark rights in the BruxZir name.  Additionally, the PTO Proceedings may be introduced to help establish that a pending trademark is not evidence of the validity of a registered trademark.  Because the PTO Proceedings would not be introduced for their truth of the matter asserted (i.e., the specific statements within the Proceedings), the above uses do not qualify as hearsay. Glidewell's Motion *In Limine* No. 5 should be denied.

## II.   GLIDEWELL'S MOTION *IN LIMINE* NO. 6 SHOULD BE DENIED BECAUSE EVIDENCE OF THE ADVICE OF COUNSEL DEFENSE WAS INTRODUCED DURING DISCOVERY

Glidewell argues that Keating's advice of counsel defense and the related evidence should be excluded.  (*See* Glidewell's MIL No. 6.)  Glidewell argues that Keating failed to disclose any such advice and that this advice could cause jury speculation.  Essentially, Glidewell's argument boils down to its assertion that Keating did not provide the specific advice of its counsel during the discovery phase and should be precluded, under Rule 37(c), from introducing

and relying on such advice of counsel at trial to show (1) Keating's intent (one of the *Sleekcraft* factors in assessing likelihood of confusion) and (2) that Keating did not willfully infringe (going to the issue and element of damages). These arguments fail as early in discovery Keating informed Glidewell that counsel was involved in Keating's selection of the name, and both Bob Brandon and Shaun Keating each subsequently testified to such advice of counsel in their depositions.

A.   **Keating Informed Glidewell That It Relied Upon the Advice of Counsel Early In Discovery**

Early in discovery, in March 2012, Glidewell served Keating with a set of interrogatories seeking, among other things, information on Keating's selection of the KDZ Bruxer name.   In April 2012, Keating provided substantive responses to the interrogatories, including putting Glidewell on notice that Keating consulted with counsel as part of its selecting and adopting of the name KDZ Bruxer.   Specifically, Glidewell's Interrogatory No. 16 sought the identities of the persons most knowledgeable about Keating's selection and adoption of KDZ Bruxer.   Keating responded with "Shaun Keating, in consultation with Defendant's attorney Thomas Gourde."  (Docket 90-30 at 11.)

Similarly, Glidewell's Interrogatory No. 19 requested information on investigations conducted relating to Keating's adoption of the KDZ Bruxer name for its all-zirconia crown.   Keating responded with "opinion of other attorneys, including other trademark attorneys."  (Docket 90-30 at 12.)

At the time Glidewell received these interrogatory responses, Glidewell had six months of time available to take further discovery on this issue.   The only discovery it chose to pursue was a limited set of questions posed to Shaun Keating and his General Manager, Bob Brandon.

/ / /

/ / /

**B.**     **The Deposition Testimony of Bob Brandon and Shaun Keating**
           **Further Disclosed that Keating Relied on Advice of Counsel**

Glidewell argues that there is nothing in the record to substantiate that Keating received the go-ahead or "green light" from its counsel to use the KDZ Bruxer mark.  Glidewell argues further that there is nothing in the record to suggest Keating relied on the advice of counsel and that such evidence should therefore be excluded under Rule 37(c).  That is flat wrong. The deposition testimony of Keating's General Manager, Bob Brandon, and Keating's President and CEO, Shaun Keating, each clearly show that Keating did rely on the advice of counsel.  In fact, Glidewell admits as much, noting in its Motion *In Limine* No. 6:

> Keating's General Manager, Robert Brandon, was asked at deposition "whether or not any kind of search was done to determine whether or not [the KDZ Bruxer] mark was available to use." (Dkt. #189, Ex. 53 (Brandon Depo., at 93:4-6)) *Mr. Brandon acknowledged that "our attorney did that" and that Brandon saw "results from that search" "at one point in time."* (Dkt. #189, Ex. 53 (Brandon Depo., at 93:7-11)) At his deposition two days later, Shaun Keating was asked: "What about selecting 'Bruxer,' how did you choose that one?" (Dkt. #189. Ex 54 (Keating Depo., at 43:15-16)) *Mr. Keating responded: "We kind of sent it out, let lawyers look at it to see what they came up with, if the name could be used and this and that.  And with the information I got, felt good with it, and I went ahead and proceeded with using that."* (Dkt. #189, Ex. 54 (Keating Depo., at 44:4-8)

(Glidewell MIL No. 6 at 4:2-12 (emphasis added).)  Glidewell goes on to state that Keating, during his deposition, did not disclose what specific "information" the "lawyers" told him about as to whether "the name could be used." (*Id.* at 4:13-14).  At a deposition, it is the responsibility of the questioning counsel to ask and probe with questions, not the responsibility of the deposition witness to volunteer information.  Clearly, during the depositions (depositions being a well-established and integral part of the discovery process) both Keating and

- 7 -

Brandon disclosed that Keating relied on the advice of Keating's IP counsel and moved forward with the use of the "bruxer" mark only after performing and completing such legal due diligence.

Glidewell is splitting hairs by arguing that Keating and Brandon did not specifically state, word-for-word, the advice of counsel they received. A plain reading of the above quoted deposition testimony establishes that Shaun Keating said that the company submitted the inquiry to its IP attorney, the IP attorney performed the required search, and based on the IP attorney's advice, Keating then moved forward with the use of the KDZ Bruxer mark. No follow-up questions were asked, and that is because the record was, and remains quite clear on this point: Keating solicited and received the advice of its IP counsel to make sure it could lawfully use the "bruxer" term in marketing its all-zirconia crowns for the treatment of bruxers.

## C.   Keating's Argument That Keating's Attorney Is Not Listed On Keating's Witness List is Irrelevant Because Both Keating and Brandon are Listed on the Witness List

Glidewell also points to the fact that Keating's trademark counsel (Thomas Gourde) is not listed on Keating's witness list as further support for the exclusion of the advice of counsel defense. However, Glidewell ignores that Shaun Keating and Bob Brandon are on the witness list. As confirmed by their depositions, Shaun Keating and Bob Brandon have personal knowledge of, and can speak to, the advice of counsel and Keating's reliance thereon.

For the foregoing reasons, Glidewell's Motion *In Limine* No. 6 should be denied.

/ / /

/ / /

/ / /

/ / /

- 8 -

### III.  GLIDEWELL'S MOTION *IN LIMINE* NO. 7 SHOULD BE DENIED BECAUSE GLIDEWELL'S SIZE AND RESOURCES ARE RELEVANT TO THE CLAIMS AND DEFENSES IN THE CASE

Glidewell seeks to exclude evidence that Glidewell believes is "likely to excite sympathy for Keating based on the parties' relative size and financial resources."   (Glidewell MIL No. 7 at 1.)   Citing out-of-circuit unreported decisions, Glidewell argues that references to a company's finance and size are irrelevant. (*Id.* at 3.)  To the contrary, in this case Glidewell's size and resources are relevant to an analysis of the Ninth Circuit's *Sleekcraft* factors and to Keating's affirmative defenses or counterclaims.

First, when considering the Ninth Circuit's *Sleekcraft* factors, Glidewell chose in this case not to produce survey evidence of confusion between Glidewell's mark and Keating's mark.  It likewise chose not to produce survey evidence of the strength of the BruxZir mark in the minds of the relevant consumer population (dentists around the country).   For a company like Glidewell with enormous resources, the absence of survey evidence may be used to infer that the results of such a survey would be unfavorable.  *See Playboy Enters. v. Netscape Communs. Corp.*, 55 F. Supp. 2d 1070, 1084 (C.D. Cal. 1999); *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1041–42 (C.D. Cal. 1998) ("[A] plaintiff's failure to conduct a consumer survey, assuming it has the financial resources to do so, may lead to an inference that the results of such a survey would be unfavorable.")

Second, the relative size and resources of Glidewell are directly relevant to Keating's Fourth Affirmative Defense of Misuse of Trademark, Unclean Hands, and Unfair Competition, and Third Counterclaim for Misuse of Trademark.  The Court is presented with facts for which a trademark misuse claim is proper.  Glidewell has been attempting to destroy competition for all-zirconia crowns by relying on its trademark registration to prevent competitors

from using generic and descriptive terms, such as "brux" and "bruxer" to identify and describe such products.  Significantly, Glidewell sent cease-and-desist letters to numerous dental labs to prevent them from using the terms "brux" and "bruxer" in their name.  (Docket No. 91-24 – 91-32.)  In each instance, the dental lab chose to change its name rather than face the risk of a lawsuit in federal court initiated by Glidewell.  (*Id.* at 91-6.)

In the case of Keating, Glidewell has attempted to require it to buy Glidewell products in order to avoid this lawsuit.  (Docket No. 91-19.)  When encountering competitor dental labs using "Bruxer" in the name of their all-zirconia crowns, Glidewell has tried to get the competitor to purchase zirconia from Glidewell.  (Docket No. 91-19,24-34.)  In one such instance, Glidewell falsely informed the competitor that it had filed a lawsuit against that competitor.  (Docket No. 9-6 (Allred Dep. Tr.) at 221:5-222:16; Docket No. 9-24.)  As the largest dental lab in the United States, Glidewell's volume of sales of all-zirconia crowns far exceeds that of other labs.  (*Compare* Docket No. 96, ¶ 5 *with* Docket No. 91-4 (DiTolla Dep. Tr.) at 233:10-15.)  Glidewell knows that other dental laboratories lack the resources to bear the litigation costs associated with contesting a trademark infringement claim in federal court.  Glidewell has used this awareness to stop other labs from using marks containing terms such as "Bruxer" and "Brux" to refer to their all-zirconia crowns for bruxers, thereby hampering their ability to compete with Glidewell in the market share for all-zirconia crowns.  All of this background helps explain why competitors are not using the generic and descriptive "bruxer" term to describe such commonly manufactured zirconia dental crowns.

Glidewell has widely promoted its all-zirconia crowns as "ideal for bruxers," and the record is clear that Glidewell's intent when launching the product was to provide a crown "indicated for bruxers."  (Docket No. 91-18, 91-4 at 75:7-16, 85:15-87:5; Docket No. 92, Ex. 50 at 15:8-15.)  As the Supreme

- 10 -

Court has explained, the Lanham Act was not meant "to deprive commercial speakers of the ordinary utility of descriptive words." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122, 125 S. Ct. 542, 550 (2004). The Court also discussed "the undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first." *Id.* That is exactly what Glidewell is trying to do with its "bruxzir" mark.

In explaining its efforts to prevent others from using the descriptive terms "brux" and "bruxer," Glidewell argued it has the right to do so because it was the first to offer a crown indicated for bruxers and to indicate that term in the name of their product. (Docket No. 92, Ex. 50 at 41:1-42:3; 86:8-87:7; 176:19-178:22.)   This admission illustrates that Glidewell is attempting to use its trademark registration to gain something akin to patent rights, seeking to prevent competitors from selling all-zirconia crowns for use with bruxers or in brux cases.   This is counter to the trademark law policy of promoting competition.

If Glidewell can become the only provider of all-zirconia crowns that is able to use "brux" or "bruxer" in the name to describe to dentists that its product is a crown indicated for bruxers, dentists will only find Glidewell when searching for such a crown.  This is Glidewell's strategy: to destroy competition and increase its market share through misuse of its improperly issued trademark registration.  Evidence of Glidewell's relative size to its competitors is crucial to demonstrating Glidewell has the ability to carry out this strategy.

Furthermore, the size and resources of Glidewell are relevant to the issue of witness bias in this case.  Because of Glidewell's relative size and resources, witnesses in the dental industry might be inclined to alter their testimony to ingratiate themselves to the market leader.  Thus, the trier of fact should be aware of Glidewell's size and resources in order to more accurately evaluate the testimony of witnesses in the dental industry.

For the foregoing reasons, Glidewell's Motion *In Limine* No. 7 should be denied.

## IV.  GLIDEWELL'S MOTION *IN LIMINE* NO. 8 IS UNOPPOSED, AS ALREADY COMMUNICATED TO GLIDEWELL'S COUNSEL DURING THE LOCAL RULE 7-3 CONFERENCE OF COUNSEL

Glidewell's Motion *In Limine* No. 8 is unnecessary.  Glidewell asserts that "[t]he parties' counsel discussed the issues presented by this Motion, but could not reach agreement."  (Glidewell MIL No. 8 at i:21-27.)  This is incorrect.  Counsel for Keating told counsel for Glidewell during the meet-and-confer that they agreed with Glidewell about this evidentiary concern and that a motion *in limine* on this issue would be unnecessary.

Glidewell now asks that the Court exclude evidence of the Court's prior statements, order, and rulings on: (a) Keating's Motion for Summary Judgment; (b) Keating's Motion for Reconsideration; (c) Keating's Motion for Leave to File Second Amended Answer; and (d) the parties' cross-motions for summary judgment, heard by the Court on December 21, 2012, including the Court's verbally-delivered tentative ruling as to some of those motions.  (*Id.* at 5:12-19.)  A cursory glance at the parties' Joint Exhibit List clearly demonstrates that Keating has no intention of introducing said evidence—this evidence is not on the list.  (*See* Docket No. 195.)  Keating fails to understand why Glidewell would waste the valuable time of this Court, as well as the resources and finances of both Keating and Glidewell, to prepare and file an unnecessary motion *in limine*.

## V.  GLIDEWELL'S MOTION *IN LIMINE* NO. 9 IS UNOPPOSED, AS COMMUNICATED TO GLIDEWELL'S COUNSEL DURING THE LOCAL RULE 7-3 CONFERENCE OF COUNSEL

Glidewell's Motion In Limine No. 9 is also unnecessary.  Glidewell asserts that "[t]he parties' counsel discussed the issues presented by this Motion,

- 12 -

but could not reach agreement." (Glidewell MIL No. 9 at i:15-17.)  Again, this is incorrect.  Counsel for Keating told counsel for Glidewell during the meet-and-confer that it was unnecessary to bring this motion *in limine*.  No one disputes that evidence relating to settlement communications is inadmissible at trial under F.R.E. 408.

Glidewell now seeks an order from the Court to exclude: (a) the November 17, 2011 email from Keating's counsel to Glidewell's counsel; (b) the February 2, 2012 Settlement Conference Order; (c) the February 7 2012 letter from Glidewell's counsel to Keating's counsel; (d) the February 13 2012 letter from Keating's counsel to Glidewell's counsel; (e) the February 15, 2012 communication from Glidewell's counsel to Keating's counsel; (f) Glidewell's March 30, 2012 Confidential Settlement Statement; and (g) the December 27, 2012 letter from Glidewell's counsel.  (Glidewell MIL No. 9 5:2-10.)  A review of the parties' Joint Exhibit List plainly demonstrates Keating has no intention of introducing said evidence—these items are not on the list.  (*See* Docket No. 195.)  Glidewell should not be wasting the valuable time of this Court, as well as the resources and finances of both Keating and Glidewell, to prepare and file an unnecessary motion *in* limine.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

DEFENDANT/COUNTER-PLAINTIFF KEATING DENTAL ARTS, INC.'S OMNIBUS OPPOSITION AND RESPONSETO PLAINTIFF/COUNTER-DEFENDANT'S MOTIONS *IN LIMINE* NOS. 5-9

# VI.  CONCLUSION

For the foregoing reasons, Keating respectfully requests that the Court deny Glidewell's Motion *In Limine* Nos. 5–9.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: January 18, 2013     By: /s/ David G. Jankowski
                                Darrell L. Olson
                                Lynda J. Zadra-Symes
                                Jeffrey L. Van Hoosear
                                David G. Jankowski

ENTERPRISE COUNSEL GROUP ALC
    David A. Robinson
    James S. Azadian

Attorneys for Defendant and Counter-Plaintiff
KEATING DENTAL ARTS, INC.

14694478