SNELL & WILMER L.L.P.
Philip J. Graves (SBN 153441)
pgraves@swlaw.com
Greer N. Shaw (SBN 197960)
gshaw@swlaw.com
Deborah S. Mallgrave (SBN 198603)
dmallgrave@swlaw.com
350 South Grand Avenue, Suite 2600
Two California Plaza
Los Angeles, CA  90071
Telephone: (213) 929-2500
Facsimile:  (213) 929-2525

Attorneys for Plaintiff
James R. Glidewell Dental Ceramics, Inc.
d/b/a Glidewell Laboratories

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| JAMES R. GLIDEWELL DENTAL CERAMICS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> KEATING DENTAL ARTS, INC., <br><br> Defendant. <br><br> AND RELATED COUNTERCLAIMS. | Case No. SACV11-01309-DOC(ANx) <br><br> **JAMES R. GLIDEWELL DENTAL CERAMICS, INC.'S OPPOSITION TO KEATING DENTAL ARTS, INC.'S MOTION IN LIMINE # 1** <br><br> <u>Hearing</u> <br><br> Date:  January 28, 2013 <br> Time:  8:30 a.m. <br> Ctrm:  9D, Hon. David O. Carter <br><br> Pre-Trial Conf.:  January 28, 2013 <br> Jury Trial:  February 26, 2013 |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................. 1

II.   ARGUMENT ........................................................................................ 2

      A.    Franklyn's Rebuttal Reports Were Timely Disclosed ..................... 2

      B.    Even if Franklyn's Rebuttal Reports Had Been Untimely, Which
            They Were Not, Any Delay Was Harmless and Substantially
            Justified .................................................................................... 4

            1.    There is No Real Prejudice or Surprise to Keating and
                  Keating had the Opportunity to Cure any Purported
                  Prejudice or Surprise ........................................................ 5

            2.    The Content of Franklyn's Rebuttal Reports Will Not
                  Disrupt the Trial ............................................................... 7

            3.    The Disputed Portion of Franklyn's Testimony is
                  Important ........................................................................... 8

            4.    Glidewell Timely Served Franklyn's Rebuttal Reports in
                  Response to Boatright's and Dr. Eggleston's Reports .......... 8

      C.    Franklyn's Testimony is Proper ................................................... 9

            1.    Legal Standard for Admissibility of Expert Testimony ......... 9

            2.    Franklyn is Qualified to Offer Testimony Relating to
                  Genericness and Likelihood of Confusion ........................ 10

            3.    Franklyn Relies on Proper Methodologies and Analysis to
                  Support His Expert Opinions ........................................... 13

            4.    Franklyn Does Not Offer Improper Legal Opinions ........... 15

III.  CONCLUSION ................................................................................ 17

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GLIDEWELL'S OPPOSITION TO KEATING'S
MOTION IN LIMINE #1
CASE NO. SACV11-01309 DOC (ANx)

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*3Com Corp. v. Realtek Semiconductor Corp.,*
  C 03-2177 VRW, 2008 WL 783383 (N.D. Cal. Mar. 24, 2008) .....................4, 7

*A.J. Canfield Co. v. Honickman,*
  808 F.2d 291 (3d Cir. 1986) ...........................................................13

*Adobe Sys. Inc. v. One Stop Micro, Inc.,*
  84 F. Supp. 2d 1086 (N.D. Cal. 2000) ...............................................11

*B & B Hardware, Inc. v. Hargis Industries, Inc.,*
  252 F.3d 1010 (8th Cir. 2001) .........................................................16

*Brandwynne v. Combe Int'l Ltd.,*
  74 F. Supp. 2d 364 (S.D.N.Y. 1999) .................................................13

*Charter Nat. Bank & Trust v. Charter One Fin., Inc., 01 C,*
  0905, 2001 WL 1035721 (N.D. Ill. Sept. 4, 2001) ...............................12

*Children's Med. Center v. Columbia Hosp.,*
  No. 3-04-2436-BD, 2006 U.S. Dist. LEXIS 9752
  (N.D. Tex. March 10, 2006) .......................................................11, 12

*Crosspointe, LLC v. Integrated Computing, Inc.,*
  2004 WL 5487401 (M.D. Fla. Aug. 18, 2004) .......................................9

*Cyntegra, Inc. v. Idexx Laboratories, Inc.,*
  CV06-4170PSG(CTX), 2007 WL 5193736 (C.D. Cal. Sept. 21, 2007)
  *aff'd, Cyntegra, Inc. v. IDEXX Laboratories, Inc.,* 322 F. App'x 569
  (9th Cir. 2009) ...........................................................................3

*Daubert v. Merrell Dow,*
  Pharms., 509 U.S. 579 (1993) .......................................................9, 10

*Dey, L.P v. Ivax Pharm., Inc.,*
  233 F.R.D. 567 (C.D. Cal. 2005) .....................................................4

*Doctor's Hosp. of Jefferson, Inc. v. Se. Med. Alliance, Inc.,*
  878 F. Supp. 884 (E.D. La. 1995) ...............................................14, 15

*Entrepreneur Media, Inc. v. Smith,*
  279 F.3d 1135 (9th Cir. 2002) .........................................................15

*ESM Techs., LLC v. Biova, LLC,*
  No. 10-3009-CV-S-RED (W.D. Mo. Mar. 21, 2012) ...........................3, 4

*Estate of Gilliam v. City of Prattville,*
  667 F. Supp. 2d 1276 (M.D. Ala. 2009) .............................................9

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Estate of Gonzalez v. Hickman,*
  05-00660 MMM (RCX), 2007 WL 3237635 (C.D. Cal. June 28, 2007)............9

*Etagz, Inc. v. Quiksilver, Inc.,*
  No-10-300-CV-DOC (C.D. Cal. Nov. 16, 2012) ...............................2

*Fancaster, Inc. v. Comcast Corp.,*
  832 F. Supp. 2d 380 (D.N.J. 2011) ........................................11

*Gable v. Nat'l Broad. Co.,*
  Inc., 727 F. Supp. 2d 815 (C.D. Cal. 2010)...............................12

*Galentine v. Holland Am. Line-Westours, Inc.,*
  333 F. Supp. 2d 991 (W.D. Wash. 2004) ....................................6

*Gander Mountain Co. v. Cabela's, Inc.,*
  540 F.3d 827 (8th Cir. 2008) .............................................16

*Garvey v. Kmart Corp.,*
  2012 U.S. Dist. LEXIS 160006 (N.D. Cal. 2012) ............................7

*Genesee Brewing Co. v. Stroh Brewing Co.,*
  124 F.3d 137 (2d Cir. 1997) ..............................................13

*Globalaw Ltd. v. Carmon & Carmon Law Office & Globalaw,*
  Inc., 452 F. Supp. 2d 1 (D.D.C. 2006) ....................................13

*HealthOne of Denver, Ind. v. UnitedHealth Group Inc.,*
  No. 10-CV-01633-WYD-BNB, 2012 WL 94678
  (D. Colo. Jan. 12, 2012).................................................11

*House of Hunan, Inc. v. Hunan at Pavilion,*
  CIV.A. 85-1591, 1986 WL 1180894 (D.D.C. July 25, 1986) ...................14

*In re Cardizem CD Antitrust Litig.,*
  2000 U.S. Dist. LEXIS 18839 (E.D. Mich. Oct. 25, 2000)...................8, 9

*In re Fleming Cos., Inc., Contract Litigation,*
  2000 WL 35612913 (W.D. Mo. Nov. 30, 2000) ................................8

*Jarritos, Inc. v. Reyes,*
  345 F. App'x 215 (9th Cir. 2009)..........................................3

*Jonathan Browning, Inc. v. Venetian Casino Resort LLC,*
  2009 U.S. Dist. LEXIS 57665 (N.D. Cal. June 18, 2009)...................16, 17

*Kanawha-Gauley Coal & Coke Co. v. Pittston Minerals Group., Inc.,*
  2:09-CV-01278, 2011 WL 320909 (S.D.W. Va. Jan. 28, 2011).................7

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Kennedy v. Collagen Corporation,*
  161 F.3d 1226 (9th Cir.1998), *cert. denied*, 119 S.Ct. 1577 (1999) .................. 14

*Kumho Tire Co. v. Carmichael,*
  526 U.S. 137 (1999)......................................................................................9, 10

*Levi Strauss & Co. v. Blue Bell, Inc.,*
  778 F.2d 1352 (9th Cir. 1985) ......................................................................... 15

*Nietech Corp. v. CBS Data Servs.,*
  2004 U.S. Dist. LEXIS 30318, at *41 (N.D. Cal. Mar. 1, 2004) ...................... 13

*Nora Beverages, Inc. v. Perrier Group of Am., Inc.,*
  269 F.3d 114 (2d Cir. 2001) ............................................................................ 14

*Nuance Communications, Inc. v. ABBYY Software House, C ,*
  08-02912 JSW MEJ, 2012 WL 2838431 (N.D. Cal. July 10, 2012).................... 3

*Pickern v. Pier 1 Imports (U.S.), Inc.,*
  457 F.3d 963, n.5 ............................................................................................... 3

*Primiano v. Cook,*
  598 F.3d 558 (9th Cir. 2010) ........................................................................... 14

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Services, Inc.,*
  C-95,-20091 RMW, 1997 WL 34605244 (N.D. Cal. Jan. 6, 1997).................... 17

*Roe v. Nevada,*
  621 F. Supp. 2d 1039 (D. Nev. 2007) ........................................................ 3, 6, 7

*Russell v. Daiichi-Sankyo, Inc.,*
  CV 11-34-BLG-CSO, 2012 WL 1805038 (D. Mont. May 17, 2012).................. 4

*Semtech Corp. v. Royal Ins. Co. of Am., CV,*
  03-2460-GAF PJWX, 2005 WL 6192906 (C.D. Cal. Sept. 8, 2005)................... 7

*Specht v. Jensen,*
  835 F.2d 805 (10th Cir. 1988) ......................................................................... 15

*Tenneco Auto. Operating Co., Inc. v. Kingdom Auto Parts,*
  2010 WL 4365580  (6th Cir. Oct. 28, 2010) .................................................... 16

*Thomas v. Newton Int'l Enterprises,*
  42 F.3d 1266 (9th Cir. 1994) ............................................................................. 9

*Ticketmaster Corp. v. Tickets.com, Inc.,*
  CV 99-07654HLH (VBKX), 2003 WL 25781901
  (C.D. Cal. Feb. 10, 2003) ............................................................................... 16

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

GLIDEWELL'S OPPOSITION TO KEATING'S
MOTION IN LIMINE #1
CASE NO. SACV11-01309 DOC (ANx)

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Tuna Processors, Inc. v. Haw. Int'l Seafood, Inc.,*
  No. Civ. 05-517 BMK, 2007 WL 433547 (D.Haw. Feb. 5, 2007) ..............5, 8, 9

*UGG Holdings, Inc. v. Severn,*
  CV04-1137-JFW FMOX, 2005 WL 5887187 (C.D. Cal. Feb. 23, 2005) ........14

*United States v. Bedford,*
  536 F.3d 1148 (10th Cir. 2008) ..................................................................15

*United States v. Flocker,*
  10-10435, 2012 WL 5385217 (9th Cir. Nov. 5, 2012).................................14

*United States v. Hankey,*
  203 F.3d 1160 (9th Cir. 2000) ....................................................................10

*United States v. Prime,*
  431 F.3d 1147 (9th Cir. 2005) ......................................................................9

*United States v. Sayre,*
  434 F. Appx. 622(9th Cir. 2001) ................................................................12

*Vail Assoc., Inc. v. Vend-Tel-Co., Ltd.,*
  516 F.3d 853 (10th Cir. 2008) ..................................................11, 15, 16

*Volkswagen Astiengesellschaft v. Uptown Motors,*
  91 CIV. 3447(DLC), 1995 WL 605605 (S.D.N.Y. May 11, 1995) .................14

*Waco Int'l, Inc. v. KHK Scaffolding Houston Inc.,*
  278 F.3d 523 (5th Cir. 2002) ......................................................................16

*Wong v. Regents of Univ. of California,*
  410 F.3d 1052 (9th Cir. 2005) ......................................................................3

*Xtreme Lashes, LLC v. Xtended Lashes, LLC,*
  576 F.3d 221 (5th Cir. 2009) ......................................................................16

*Yellow Cab Co. of Sacramento v. Yellow Cab Co. of Elk Grove, Inc.,*
  419 F.3d 925 (9th Cir. 2005) ......................................................................15

*Zobmondo Enter., LLC v. Falls Media, LLC,*
  602 F.3d 1108 (9th Cir. 2010) ....................................................................15

**FEDERAL STATUTES**

15 U.S.C. § 1052(d) ..........................................................................................13

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

GLIDEWELL'S OPPOSITION TO KEATING'S
MOTION IN LIMINE #1
CASE NO. SACV11-01309 DOC (ANx)

# TABLE OF AUTHORITIES
## (continued)

**Page**

## FEDERAL RULES

Fed. R. Civ. P. 26 .................................................................................................8

Fed. R. Civ. P. 26(a)(2)(B) ...................................................................................4

Fed. R. Civ. P. 26(a)(2)(C)(ii) ..............................................................................1

Fed. R. Civ. P. 26(a)(2)(D)(ii) ..............................................................................8

Fed. R. Civ. P. 26(f) ..............................................................................................2

Fed. R. Civ. P. 37 ..................................................................................................4

Fed. R. Civ. P. 37(c)(1) .........................................................................................4

Fed. R. Evid. 702 ...................................................................................................9

## FEDERAL REGULATIONS

37 C.F.R. § 2.32(a)(6) ..........................................................................................13

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

# I. INTRODUCTION

James R. Glidewell Dental Ceramics, Inc. ("Glidewell") opposes Keating Dental Arts, Inc.'s ("Keating") Motion In Limine no. 1 to exclude the expert testimony of Professor David J. Franklyn. Keating's attack on Franklyn is comprised of two distinct arguments, one procedural and one substantive. Both arguments are factually incorrect, contrary to the law, and mischaracterize the character of Franklyn's testimony. Both arguments fail.

First, Keating tries to preclude Franklyn from testifying regarding the content of the latter two of the three expert reports Franklyn submitted in this case. Keating contends that these rebuttal reports were untimely and therefore portions of Franklyn's testimony is based on improper new evidence. This is wrong. The challenged testimony is not based on improper new evidence. The dentists Franklyn interviewed were disclosed in Franklyn's rebuttal reports, and in an amended disclosure on October 29, 2012, before the discovery period closed under the Court's Scheduling Order. The rebuttal reports were timely under Fed. R. Civ. Proc. 26(a)(2)(C)(ii) and the Court's Scheduling Order. (Dkt. #15; *see also* Dkt. #14 [Minute Order].) The rebuttal reports and amended disclosure were timely and, even if they were not, caused no prejudice. Franklyn's testimony should be viewed in its totality.

Second, Franklyn's testimony is proper under Federal Rule of Evidence 702. Keating tries its best to characterize Franklyn as anything other than what he is in this case – a trademark expert. Keating's red-herrings should be ignored – *i.e.*, that Franklyn is not an expert on trademark practices, or is not a survey expert, or is not a dental expert. Franklyn is qualified to testify on issues of genericness and likelihood of confusion. These are issues of fact that are regularly the accepted subject of expert testimony. His opinions do not constitute improper legal conclusions. To the contrary, they are based on proper methodologies and analysis. Keating's motion should be denied.

GLIDEWELL'S OPPOSITION TO KEATING'S
MOTION IN LIMINE #1
CASE NO. SACV11-01309 DOC (ANx)

## II. ARGUMENT

**A.**     <u>**Franklyn's Rebuttal Reports Were Timely Disclosed**</u>

Keating tries to improperly limit Franklyn's testimony to his initial report, and preclude him from testifying as to the content of his two rebuttal reports, by asserting that the rebuttal reports were not timely disclosed.  This is false.

While Keating correctly identifies that Franklyn's rebuttal reports must be disclosed by the deadline ordered by the Court, Keating incorrectly identifies the deadline.  The Court's Scheduling Order set forth the following four dates:

| | |
|---|---|
| Discovery Cut-Off Date | October 29, 2012 |
| Motion Cut-Off Date | December 17, 2012 |
| Setting Final Pretrial Conference | January 28, 2013 |
| Setting Jury Trial Date | February 26, 2013 |

(Dkt. #15; see also Dkt. #14) *The Scheduling Order contains no separate deadlines for expert reports.*  (Dkt. #15)  Instead, the Scheduling Order states that "expert discovery must also be completed by the discovery cut-off date."  (Dkt. #15, at 2:5-6.)  Keating's argument that Franklyn's rebuttal reports were untimely appears to be based on the parties' *proposed* deadlines for exchange of reports.  In their Joint Rule 26(f) Report, the parties proposed September 15, 2012 as the deadline for opening expert reports and October 15, 2012 for rebuttal reports.  (Dkt. #11 at 13.)  The Court, however, did *not* adopt these dates and they are *not* in the Scheduling Order.  (Dkt. #15.)  Franklyn's rebuttal reports were not subject to either "deadline" because these were not applicable deadlines at all.  *See Order, Etagz, Inc. v. Quiksilver, Inc.*, No-10-300-CV-DOC (C.D. Cal. Nov. 16, 2012), ECF No. 179 (denying defendant's motion to strike expert reports as untimely, because report was served before the discovery cut-off date and the expert report deadlines proposed in the parties' Rule 26(f) Report had not been incorporated into the Court's scheduling order).

In support of its motion, Keating has not pointed to a single case where,

GLIDEWELL'S OPPOSITION TO KEATING'S
MOTION IN LIMINE #1
CASE NO. SACV11-01309 DOC (ANx)

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

absent an order setting earlier dates for the exchange of expert reports, an expert report was considered late where it was served by the close of discovery.  Keating's cited authorities are easily distinguishable because in each, the proffered expert report was served after a court-ordered deadline.  *See Wong v. Regents of Univ. of California*, 410 F.3d 1052, 1058 (9th Cir. 2005) (expert reports excluded as untimely because court ordered counsel to disclose the names of any experts they proposed to offer at trial "not later than 45 days before the close of discovery"); *Jarritos, Inc. v. Reyes*, 345 F. App'x 215, 217 (9th Cir. 2009) (expert reports excluded as untimely pursuant to specific court order setting deadline to disclose expert witnesses); *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, n.5 (expert report was not served by deadline set forth in scheduling order).

Accordingly, the deadline for the parties to disclose expert reports, along with all other discovery material, was October 29, 2012.  This should be the end of the matter.  As it is undisputed that Franklyn's rebuttal expert reports were provided to Keating's counsel on October 29, 2012, along with the amended disclosure identifying the ten dentist witnesses discussed in Franklyn's rebuttal reports, the reports were timely disclosed.  *Roe v. Nevada*, 621 F. Supp. 2d 1039, 1060 (D. Nev. 2007) (rejecting defendant's argument that plaintiff's disclosure of various fact witnesses on last day of discovery was untimely because defendant's never sought to re-open discovery and "defendants, until now, gave no indication of their desire to depose these witnesses, and therefore any prejudice is caused by Defendants' own dilatory conduct"); *Cyntegra, Inc. v. Idexx Laboratories, Inc.*, CV06-4170PSG(CTX), 2007 WL 5193736 (C.D. Cal. Sept. 21, 2007) *aff'd*, *Cyntegra, Inc. v. IDEXX Laboratories, Inc.*, 322 F. App'x 569 (9th Cir. 2009) (finding defendant's service of two expert reports on the last day of discovery timely); *Nuance Communications, Inc. v. ABBYY Software House*, C 08-02912 JSW MEJ, 2012 WL 2838431 (N.D. Cal. July 10, 2012) (denying motion to strike 25 witnesses disclosed after the close of business on the last day of discovery); *ESM Techs., LLC v. Biova,*

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

1  *LLC*, No. 10-3009-CV-S-RED (W.D. Mo. Mar. 21, 2012), ECF No. 209 (holding

2  expert declaration and report filed on last day of discovery to be timely); *3Com*

3  *Corp. v. Realtek Semiconductor Corp.*, C 03-2177 VRW, 2008 WL 783383 (N.D.

4  Cal. Mar. 24, 2008) (denying motion in limine to preclude defendant from

5  proffering witnesses first disclosed on the final day of fact discovery because

6  plaintiff never requested defendant's agreement or leave of court to subpoena the

7  third-party witnesses past the discovery cut-off); *Russell v. Daiichi-Sankyo, Inc.*,

8  CV 11-34-BLG-CSO, 2012 WL 1805038 (D. Mont. May 17, 2012) (holding

9  disclosure of fact witness made on day of discovery cut-off to be timely); *cf.* Fed.

10  R. Civ. Proc. 26(a)(2)(B) (absent court order or stipulation, expert disclosures due

11  90 days before trial).

**B.**    **Even if Franklyn's Rebuttal Reports Had Been Untimely, Which They**

13      **Were Not, Any Delay Was Harmless and Substantially Justified**

14       Even if Franklyn's rebuttal reports had been disclosed after the discovery

15  cutoff (which they were not), this does not automatically give rise to the exclusion

16  of Franklyn's testimony that is based on his rebuttal reports.  Rather, under Rule 37,

17  a party may still use the information or witness if the late disclosure was

18  "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1); *see also* Fed. R.

19  Civ. P. 37(c)(1) committee notes 1993 ("[L]imiting the automatic sanction to

20  violations without substantial justification, coupled with the exception for

21  violations that are harmless, is needed to avoid unduly harsh penalties in a variety

22  of situations.") (internal quotations omitted).

23       In determining whether to preclude introduction of evidence pursuant to Rule

24  37, courts consider "(1) the surprise to the party against whom the evidence would

25  be offered; (2) the ability of that party to cure the surprise; (3) the extent to which

26  allowing the evidence would disrupt the trial; (4) the importance of the evidence,

27  and (5) the nondisclosing party's explanation for its failure to disclose the

28  evidence." *Dey, L.P v. Ivax Pharm., Inc.*, 233 F.R.D. 567, 571 (C.D. Cal. 2005)

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

1    (applying factors and declining to preclude late produced evidence).  Considering

2    the totality of the circumstances, even assuming Glidewell's disclosure of the

3    Franklyn rebuttal reports was untimely, the Court should not exclude those portions

4    of Franklyn's testimony that relies on the rebuttal reports for the reasons set forth

5    below.

6        1.    **There is No Real Prejudice or Surprise to Keating and Keating**

7            **had the Opportunity to Cure any Purported Prejudice or Surprise**

8        Keating has articulated no cognizable prejudice.  Prejudice does not exist

9    simply because a party has the burden of dealing with additional information or

10   witnesses. *See Tuna Processors, Inc. v. Haw. Int'l Seafood, Inc.*, No. Civ. 05-517

11   BMK, 2007 WL 433547, *2 (D.Haw. Feb. 5, 2007) ("The failure to properly

12   disclose is harmless where there is no prejudice to the opposing party. There is

13   generally no prejudice where the untimely evidence does not raise any new issues

14   in the case.")

15       Keating contends that it made "decisions" regarding its own experts and

16   defense strategy based on what Glidewell had provided before the "cut-off," here

17   apparently referring to the expert report exchange dates proposed by the parties but

18   never adopted by the Court.  This fails for at least two reasons. First, this vague

19   complaint falls far short of a showing of cognizable prejudice – for example,

20   Keating fails to explain what those "decisions" were and why it would be

21   prejudiced by having to revisit those decisions in light of Franklyn's rebuttal

22   reports.  In truth, this complaint is bootless.  Franklyn's rebuttal reports were

23   produced to Keating more than two and a half months ago, as was the identity of

24   the ten dentist witnesses, and prior to the close of discovery.  Franklyn's declaration

25   was provided with the summary judgment briefing almost two months ago.

26   Keating has had ample time in which to analyze the reports and develop any

27   response that it might seek to make at trial.  Keating engaged and provided a so-

28   called rebuttal expert report from a trademark lawyer, so it was not prejudiced with

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

GLIDEWELL'S OPPOSITION TO KEATING'S
MOTION IN LIMINE #1
CASE NO. SACV11-01309 DOC (ANx)

1    respect to its ability to prosecute its case through expert opinion testimony.

2    Second, if Keating really did make important decisions based on expert report dates

3    that were never adopted by the Court, Keating alone should bear the consequences

4    of such reckless behavior. Since Keating fails to articulate any cognizable

5    prejudice, this factor weighs against exclusion.

6         Keating also seems to contend that it was prejudiced because it did not have

7    an opportunity to re-depose Franklyn. This is false; as explained below, Keating's

8    complaint that it failed to re-depose Franklyn is a problem of Keating's own

9    creation. Keating had in October 2012 an opportunity to cure any prejudice

10   resulting from its inability to re-depose Franklyn prior to the discovery cutoff.

11   Glidewell offered to make Franklyn available for deposition by Keating despite the

12   fact that discovery had closed – not once, but three times. (Dkt. #142, [Shaw Decl.,

13   ¶ 8, Ex. 115].) First, on November 16, 2012 Glidewell's counsel informed Keating

14   that it would make Franklyn again available for deposition and would not oppose

15   any document request served on Franklyn on the ground that it was served after the

16   close of discovery. Keating declined the offer. (*Id.*) This offer remained open

17   during the summary judgment briefing, and was articulated again in response to

18   Keating's objections to Franklyn's declarations on December 3, 2012. (Dkt. # 153,

19   p.6) Keating failed to respond.

20        Thus, even if Keating had articulated some cognizable prejudice in

21   connection with the date that Glidewell served Franklyn's rebuttal reports, it is at

22   this point prejudice that Keating has fostered and nurtured for tactical purposes.

23   This is not the type of prejudice that will justify exclusion of relevant expert

24   testimony. *Galentine v. Holland Am. Line-Westours, Inc.*, 333 F. Supp. 2d 991, 994

25   (W.D. Wash. 2004) (refusing to exclude expert report served eleven days past the

26   deadline because "the potential prejudice that Defendant claims it will suffer is not

27   so severe as to warrant exclusion, especially given the possibility of ameliorating

28   that prejudice [through limited discovery and a deposition of the expert]"); *Roe v.*

SNELL & WILMER
L.L.P.
330 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

1  *Nevada*, 621 F. Supp. 2d 1039, 1060 (D. Nev. 2007) (rejecting defendant's

2  argument that disclosure of fact witnesses on last day of discovery was untimely,

3  and noting that "Defendants have sat on their rights to bring any motion to reopen

4  discovery on account of Plaintiffs' last-minute disclosure…. [A]ny prejudice is

5  caused by Defendants' own dilatory conduct."); *Semtech Corp. v. Royal Ins. Co. of*

6  *Am.*, CV 03-2460-GAF PJWX, 2005 WL 6192906 (C.D. Cal. Sept. 8, 2005) (late

7  disclosed supplemental expert report not excluded under Rule 37 because the "harm

8  would not warrant the extreme sanction of exclusion" and any potential harm could

9  be cured by allowing a deposition of the expert); *Garvey v. Kmart Corp.*, 2012 U.S.

10  Dist. LEXIS 160006, at *3 (N.D. Cal. 2012) (denying a motion to exclude fact

11  witness disclosed after the discovery deadline, noting that movant had declined to

12  depose the witness); *3Com Corp. v. Realtek Semiconductor Corp.*, C 03-2177

13  VRW, 2008 WL 783383 (N.D. Cal. Mar. 24, 2008) (denying motion in limine to

14  exclude third-party witnesses disclosed on last day of fact discovery because

15  movant never sought agreement or leave of court to subpoena witnesses after

16  discovery cut-off). Accordingly, this factor weighs against exclusion.

17   **2.  The Content of Franklyn's Rebuttal Reports Will Not Disrupt the**

18    **Trial**

19   The third factor, disruption to the trial, also weighs in favor of Glidewell.

20  Keating had Franklyn's opening and supplemental reports by October 29, 2012,

21  four months before trial. This is not a case of supplemental reports surfaced on the

22  eve of trial. *Cf. Kanawha-Gauley Coal & Coke Co. v. Pittston Minerals Group.,*

23  *Inc.*, 2:09-CV-01278, 2011 WL 320909 (S.D.W. Va. Jan. 28, 2011) (third factor

24  inapplicable where supplemental expert report served after expert disclosure

25  deadline but still four months before trial). As mentioned above, Keating was able

26  to review and respond to the declaration for its response to Glidewell's motions for

27  partial summary judgment, and, by the time of trial, Keating will have had four

28  months to strategize regarding how to handle Franklyn at trial.

SNELL & WILMER
L.L.P.
330 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

1    **3.**    <u>**The Disputed Portion of Franklyn's Testimony is Important**</u>

2        The disputed portions of Franklyn's testimony are important.  Franklyn

3  testifies how his interviews with the dentist witnesses corroborate his opinions as to

4  the generic terms for solid zirconia crowns, the strength of Glidewell's BruxZir

5  mark, and the overlap in markets and likelihood of confusion between Glidewell's

6  BruxZir mark and Keating's KDZ Bruxer mark.  Franklyn's testimony relates to

7  issues of genericness and likelihood of confusion.  The issues and topics to which

8  Franklyn provides testimony are not new to the parties.  *See Tuna Processors, Inc.*,

9  No. Civ. 05-517 BMK, 2007 WL 433547, at *2 ("The failure to properly disclose is

10  harmless where there is no prejudice to the opposing party. There is generally no

11  prejudice where the untimely evidence does not raise any new issues in the case").

12    **4.**    <u>**Glidewell Timely Served Franklyn's Rebuttal Reports in Response**</u>

13         <u>**to Boatright's and Dr. Eggleston's Reports**</u>

14        Glidewell served Franklyn's rebuttal to Dr. Eggleston's report and

15  Boatright's so-called rebuttal report[1] within the deadline permitted under Rule

16

17  [1]  In a footnote, Keating argues that Franklyn's rebuttal report to Boatright is an

18  improper sur-rebuttal and that any testimony based on the sur-rebuttal should be
    excluded.  Keating is wrong.  Franklyn's rebuttal report was not a sur-rebuttal

19  nor improper.  Boatright's October 15, 2012 report (Dkt. #94, Ex. A) is not a

20  rebuttal report.  Boatright does not even address Franklyn's initial report until
    the twenty-second page of her report (Dkt. #94, Ex. A at ¶ 61).  Boatright's

21  report is not "intended *solely* to contradict or rebut" Franklyn's initial report.

22  Fed. R. Civ. Proc. 26(a)(2)(D)(ii) (emphasis added).  Rather, it is a thinly-veiled
    opening expert report, served at a point at which Keating (incorrectly) contends

23  such reports were untimely.  Franklyn's rebuttal report is therefore proper under

24  Rule 26(a)(2)(D)(ii).  And even if Franklyn's rebuttal report could properly be
    characterized as a "sur-rebuttal," sur-rebuttal reports are not procedurally

25  improper.  The Scheduling Order entered here does not preclude them.  Rule

26  26(a)(2)(C)(ii) is silent on the propriety of sur-rebuttal reports.  Any many
    courts allow sur-rebuttal reports, and some even *insist* that parties file such

27  reports.  *See In re Fleming Cos., Inc., Contract Litigation*, 2000 WL 35612913,
    at *1 (W.D. Mo. Nov. 30, 2000) (agreeing that Rule 26 permits sur-rebuttal

28  reports); *In re Cardizem CD Antitrust Litig.*, 2000 U.S. Dist. LEXIS 18839, at

1    26(a)(2)(D)(ii) and, in any event, only two weeks after receiving the reports.

2        A review of the factors above demonstrates that any late disclosure by

3    Glidewell of Franklyn's rebuttal reports was harmless.  Late disclosed evidence that

4    is harmless should not be excluded.  *Estate of Gonzalez v. Hickman*, 05-00660

5    MMM (RCX), 2007 WL 3237635 (C.D. Cal. June 28, 2007) (untimely disclosure

6    of three expert reports justified and harmless and not excluded); *Tuna Processors,*

7    *Inc.*, No. Civ. 05-517 BMK, 2007 WL 433547, *2 (D.Haw. Feb. 5, 2007) ("The

8    failure to properly disclose is harmless where there is no prejudice to the opposing

9    party. There is generally no prejudice where the untimely evidence does not raise

10    any new issues in the case"); *Crosspointe, LLC v. Integrated Computing, Inc.*, 2004

11    WL 5487401, at *1 (M.D. Fla. Aug. 18, 2004) (court allowed belated disclosure of

12    supplemental expert report because the opposing party did not show "with

13    sufficient specificity how they are prejudiced").

14    **C.**    **Franklyn's Testimony is Proper**

15        **1.**    **Legal Standard for Admissibility of Expert Testimony**

16        Expert testimony is admissible where the witness is qualified, the evidence

17    will assist the trier of fact to understand the evidence or determine a fact in issue,

18    and if the proposed testimony is reliable.  Fed. R. Evid. 702; *Daubert v. Merrell*

19    *Dow Pharms.*, 509 U.S. 579, 590 (1993).  Federal Rule of Evidence 702

20    "contemplates a broad conception of expert qualifications." *Thomas v. Newton Int'l*

21    *Enterprises*, 42 F.3d 1266, 1269 (9th Cir. 1994).  Expertise must be established by

22    knowledge, skill, experience, training, or education. *Estate of Gilliam v. City of*

23    *Prattville*, 667 F. Supp. 2d 1276, 1294 (M.D. Ala. 2009).

24        A determination of the reliability of expert testimony depends on the

25    particular circumstances of the particular case. *Kumho Tire Co. v. Carmichael*, 526

26    U.S. 137, 150 (1999); *United States v. Prime*, 431 F.3d 1147, 1152 (9th Cir. 2005)

27
28        *6 (E.D. Mich. Oct. 25, 2000) (granting request to submit sur-rebuttal expert
report).

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

1   (factors set forth in *Daubert* are not definitive or exhaustive).  Not only does the

2   trial court have "considerable leeway" in the method on which it bases its reliability

3   inquiry, but also the ultimate determination of whether the proposed expert

4   testimony is reliable.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999).

5   Thus, the trial court can consider the specific Daubert factors depending on the

6   facts of the case.  *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000).

### 2.   Franklyn is Qualified to Offer Testimony Relating to Genericness and Likelihood of Confusion

9   Glidewell is offering Franklyn as a trademark expert.  Yet Keating devotes a

10  significant portion of its motion propping Franklyn up as an expert in something

11  that he is not just in order to knock him down.  For instance, Keating asserts that

12  Franklyn "is not a qualified expert on trademark practices."  (Dkt. #207 at 6:18).

13  Glidewell is not offering Franklyn as a trademark practices expert.  Keating claims

14  that Franklyn is not a "dental expert."  (*Id.* at 7:25.)  Franklyn does not purport to

15  be a dental expert.  Glidewell does to proffer him as such an expert.  Keating also

16  claims that Franklyn "cannot be admitted as a trademark survey expert."  (*Id.* at

17  8:1).  Franklyn is not a survey expert and Glidewell does not offer him as a survey

18  expert.  Keating repeatedly mischaracterizes Franklyn's expert status because it

19  cannot dispute the fact that Franklyn *is qualified* as a trademark expert.

20   Franklyn is imminently qualified to provide expert testimony in a trademark

21  case.  He is a tenured, full professor of law, specializing in intellectual property and

22  trademark law, at the University of San Francisco School of Law ("USF").  (Dkt.

23  #90-1, Exh. N at ¶ 2 [Franklyn Declaration]; Dkt. #90-18, Ex. 47 [Franklyn CV].)

24  He serves as the Executive Director of the McCarthy Institute for Intellectual

25  Property and Technology Law at USF and Director of the Center for the Empirical

26  Study of Trademark Law (CEST) in the McCarthy Institute.  (*Id.*)  He is the

27  Director of the Masters of Law Program for U.S. and foreign lawyers in Intellectual

28  Property Law at USF.  (*Id.*)  He is the editor in chief and co-author of McCarthy's

SNELL & WILMER
L.L.P.
330 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

1    Desk Encyclopedia of Intellectual Property Law, and has written articles about

2    trademark law published in the Harvard Journal of Law and Technology

3    (forthcoming), Hastings Law Review, Wisconsin Law Review, Southern California

4    Law Review and the Case Western Law Review. (*Id.*) He also is a licensed

5    attorney who has consulted and/or served as an expert witness in dozens of

6    trademark cases throughout the country. (*Id.*)

7        Keating, nevertheless, makes much of the fact that Franklyn is not a

8    trademark practitioner. Why this should matter is not clear. Engaging experts that

9    are attorneys to proffer opinion testimony concerning such matters as the strength

10   of a mark, similarity between marks, the potential for customer confusion, and other

11   specialized issues pertinent to a trademark case is a commonly accepted practice.

12   *See, e.g., Vail Assoc., Inc. v. Vend-Tel-Co., Ltd.,* 516 F.3d 853, 861-63 (10th Cir.

13   2008) (attorney/adjunct professor in trademark and unfair competition practice

14   provided expert testimony as to: strength of a service mark, similarity between

15   service marks, possibility of consumer confusion, evidence of intent to utilize or

16   trade on the reputation of a company through use of a similar service mark, and

17   whether the companies were in competition with one another). So too is allowing

18   law professors to serve as experts in trademark infringement cases. *See e.g., Adobe*

19   *Sys. Inc. v. One Stop Micro, Inc.,* 84 F. Supp. 2d 1086, 1091 (N.D. Cal. 2000)

20   (Raymond T. Nimmer, a professor of law at the University of Houston, serves as an

21   expert in a suit involving copyright and trademark infringement); *HealthOne of*

22   *Denver, Ind. v. UnitedHealth Group Inc.,* No. 10-CV-01633-WYD-BNB, 2012 WL

23   94678 (D. Colo. Jan. 12, 2012) (denying motion to exclude trademark law professor

24   who opined on search reports); *Fancaster, Inc. v. Comcast Corp.,* 832 F. Supp. 2d

25   380, 408 (D.N.J. 2011) (law professor allowed to testify on "the system of Internet

26   domain names" in a trademark dispute); *Children's Med. Center v. Columbia*

27   *Hosp.,* No. 3-04-2436-BD, 2006 U.S. Dist. LEXIS 9752, at *5 (N.D. Tex. March

28   10, 2006) (denying challenge to trademark law professor's opinion on the strength

SNELL & WILMER
L.L.P.
330 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

GLIDEWELL'S OPPOSITION TO KEATING'S
MOTION IN LIMINE #1
CASE NO. SACV11-01309 DOC (ANx)

1    of a mark based on the results of a trademark search report obtained by the
2    plaintiffs because "[a]n expert may base an opinion on facts or data of a type
3    reasonably relied upon by experts in the particular field in forming opinions or
4    inferences upon the subject" and the expert stated that search reports are "generally
5    relied upon by trademark practitioners when advising clients as to the availability of
6    marks for use and registration").

7         Keating relies on three cases, *Charter National Bank & Trust*, *United States*
8    *v. Sayre*, and *Gable v. Nat'l Broad. Co.*, for the proposition that a trademark law
9    professor, lacking practical experience defending or prosecuting trademarks, is an
10   improper expert in a trademark case.  None of these cases stand for this proposition.
11   In *Charter Nat. Bank & Trust*, the court did not make any sweeping prohibitions
12   against the introduction of expert testimony from trademark professors. To the
13   contrary, the court merely found that the expert at issue was not a professor in
14   trademark law, had never published any material on trademark law, lacked practical
15   work experience regarding trademark registrations, and had never drafted, defended
16   or prosecuted a trademark registration application. *Charter Nat. Bank & Trust v.*
17   *Charter One Fin., Inc.*, 01 C 0905, 2001 WL 1035721 (N.D. Ill. Sept. 4, 2001).  In
18   *Gable v. Nat'l Broad. Co.*, the issue was not whether a trademark professor could
19   provide expert testimony on trademark issues but whether a qualified expert in the
20   field of copyright law was also qualified to give an "expert literary analysis"
21   comparing two works of fiction in the case of a disputed screenplay. *Gable v. Nat'l*
22   *Broad. Co., Inc.*, 727 F. Supp. 2d 815, 833 (C.D. Cal. 2010). He was not.  *Id.*  But
23   such testimony so clearly outside the scope of the witness' expertise has no
24   application here.  Nor does *Sayre*, a criminal securities fraud case regarding who
25   qualifies as a "reasonable investor" and what sorts of information the "reasonable
26   investor relies upon." *United States v. Sayre*, 434 F. Appx. 622, 624 (9th Cir. 2001)
27   *cert. denied* 132 S. Ct. 353(2001).
28

SNELL & WILMER
L.L.P.
130 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

GLIDEWELL'S OPPOSITION TO KEATING'S
MOTION IN LIMINE #1
CASE NO. SACV11-01309 DOC (ANx)

**3.  Franklyn Relies on Proper Methodologies and Analysis to Support His Expert Opinions**

Keating's claim that Franklyn's methodology is unreliable and incorrect is two-fold: (1) Keating attacks Franklyn's PTO searches regarding genericness; and (2) Keating attacks Franklyn's dentist interviews on the ground that it constitutes improper survey evidence.  Keating is wrong on both points.

First, the types of evidence upon which the Court may look to evaluate Keating's allegation that the BruxZir mark is generic are not as limited as Keating implies.  They include: "(1) dictionary definitions; (2) generic use of the term by competitors and other persons in the trade; (3) plaintiff's own generic use; (4) generic use in the media; and (5) consumer surveys."  *See Brandwynne v. Combe Int'l Ltd.*, 74 F. Supp. 2d 364, 381 (S.D.N.Y. 1999).  "In addition to these factors, it is necessary to determine whether there are commonly used alternative means to describe the product or service." *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 144 (2d Cir. 1997); *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 305-06 (3d Cir. 1986).  More specifically, courts can rely on the type of PTO searches conducted by Franklyn.  For example, in *Nietech Corp. v. CBS Data Servs.*, 2004 U.S. Dist. LEXIS 30318, at *41 (N.D. Cal. Mar. 1, 2004), the court denied plaintiffs motion for preliminary injunction.  In evaluating the strength of plaintiff's mark, the court specifically relied on the "numerous instances of the use of [the mark] in the PTO's Trademark Electronic Search System ('TESS') database..." *See also Globalaw Ltd. v. Carmon & Carmon Law Office & Globalaw, Inc.*, 452 F. Supp. 2d 1, 36 (D.D.C. 2006) (allowing defendant to use TESS search to argue that the mark was not generic).  Further, a trademark applicant must specifically identify the goods and services relevant to the applicant's potential mark to enable the USPTO to properly classify the goods and services and to properly evaluate likelihood of confusion.  15 U.S.C. § 1052(d); 37 C.F.R. § 2.32(a)(6). Consequently, the absence of an alleged generic term in the goods and services

GLIDEWELL'S OPPOSITION TO KEATING'S
MOTION IN LIMINE #1
CASE NO. SACV11-01309 DOC (ANx)

1   description in the TESS database is relevant to whether a mark is generic.  In any

2   event, Keating's nit-picking of Franklyn's methodologies is not sufficient to

3   exclude Franklyn's testimony, but is rather an issue to be raised at trial on cross-

4   examination.  *See United States v. Flocker*, 10-10435, 2012 WL 5385217 (9th Cir.

5   Nov. 5, 2012) (minor deviations in expert's methodology went to weight of

6   testimony and not threshold admissibility); *Primiano v. Cook*, 598 F.3d 558, 565

7   (9th Cir. 2010) ("When an expert meets the threshold established by Rule 702 as

8   explained in Daubert, the expert may testify and the jury decides how much weight

9   to give that testimony."); *Kennedy v. Collagen Corporation*, 161 F.3d 1226, 1230-

10  31 (9th Cir.1998), *cert. denied*, 119 S.Ct. 1577 (1999) (noting that faults in an

11  expert's use of a specific methodology go to the weight, not admissibility of the

12  testimony).

13          Second, Glidewell does not contend that Franklyn is a survey expert or that

14  the interviews that he conducted constitute survey evidence.  Rather, the interviews

15  conducted provide relevant anecdotal evidence that supports Franklyn's opinions

16  regarding the strength of the BruxZir mark and the risk of consumer confusion.

17  Indeed, such anecdotal evidence is routinely evaluated in considering both

18  genericness and infringement.  *See e.g., UGG Holdings, Inc. v. Severn*, CV04-1137-

19  JFW FMOX, 2005 WL 5887187, at *4 (C.D. Cal. Feb.  23, 2005) (assessing

20  anecdotal evidence to determine whether the term "ug boots" has been used

21  generically); *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 269 F.3d 114,

22  123-24 (2d Cir. 2001) (noting that "anecdotal evidence is admissible to establish

23  actual consumer confusion"); *Volkswagen Astiengesellschaft v. Uptown Motors*, 91

24  CIV. 3447(DLC), 1995 WL 605605, at *2 (S.D.N.Y.  May 11, 1995) ("Typically,

25  actual confusion is proven either through anecdotal evidence or surveys."); *House*

26  *of Hunan, Inc. v. Hunan at Pavilion*, CIV.A. 85-1591, 1986 WL 1180894 (D.D.C.

27  July 25, 1986) (trademark expert properly testified as to interviews with 29 persons

28  related to issues of genericness); *Doctor's Hosp. of Jefferson, Inc. v. Se. Med.*

SNELL & WILMER
L.L.P.
330 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

1   *Alliance, Inc.*, 878 F. Supp. 884, 887 (E.D. La. 1995) (denying motion *in limine* to

2   exclude expert testimony based on interviews finding that interviews go toward the

3   weight rather than admissibility of the opinion).

### 4. Franklyn Does Not Offer Improper Legal Opinions

5   Citing two cases involving *copyright law*, Keating argues that Franklyn's

6   testimony regarding genericness of the BruxZir mark, the strength of the BruxZir

7   mark, and the risk of consumer confusion constitutes improper legal opinion. This

8   is not so. While "[a]n expert may not state legal conclusions drawn by applying the

9   law to the facts, [a]n expert may ... refer to the law in expressing his or her opinion.

10  " *United States v. Bedford,* 536 F.3d 1148, 1158 (10th Cir. 2008). Indeed, an expert

11  witness "may properly be called upon to aid the jury in understanding the facts in

12  evidence even though reference to those facts is couched in legal terms." *Specht v.*

13  *Jensen,* 835 F.2d 805, 809 (10th Cir. 1988).

14  This is precisely what Franklyn was engaged to do and will be the subject of

15  his testimony at trial. Whether a mark is generic, descriptive, arbitrary or fanciful is

16  a *question of fact. Zobmondo Enter., LLC v. Falls Media, LLC*, 602 F.3d 1108,

17  1113 (9th Cir. 2010); *see also Yellow Cab Co. of Sacramento v. Yellow Cab Co. of*

18  *Elk Grove, Inc.*, 419 F.3d 925 (9th Cir. 2005) (noting that whether a mark is generic

19  is a question of fact). Similarly, "[t]he ultimate question of likelihood of confusion

20  is predominantly factual in nature, as is each factor within the Sleekcraft likelihood

21  of confusion test." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th

22  Cir. 2002); *see Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1355 (9th Cir.

23  1985) ("The issue of likelihood of confusion is a mixed question which appears to

24  be predominantly factual in nature.").

25  Engaging experts (including attorneys like Franklyn) to proffer opinion

26  testimony concerning such matters as the strength of a mark, similarity between

27  marks, the potential for customer confusion, and other specialized issues pertinent

28  to a trademark case is a commonly accepted practice. *See, e.g., Vail Assoc., Inc.*,

516 F.3d at 861-63 (attorney/adjunct professor in trademark and unfair competition practice provided expert testimony as to: strength of a service mark, similarity between service marks, possibility of consumer confusion, evidence of intent to utilize or trade on the reputation of a company through use of a similar service mark, and whether the companies were in competition with one another); *B & B Hardware, Inc. v. Hargis Industries, Inc.*, 252 F.3d 1010, 1012 (8th Cir. 2001) (attorney expert testified as to the distinction of a suggestive mark versus a descriptive mark, and gave his opinion that the mark in question was merely descriptive); *Waco Int'l, Inc. v. KHK Scaffolding Houston Inc.*, 278 F.3d 523, 533 (5th Cir. 2002) (holding that district court did not err by permitting attorney to testify despite arguments that attorney was testifying as to matters of law); *Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 832 (8th Cir. 2008) (allowing expert testimony from both parties regarding customary content of perpetual trademark licenses); *Xtreme Lashes, LLC v. Xtended Lashes, LLC*, 576 F.3d 221, 232 (5th Cir. 2009) (expert testimony considered in determining whether EXTEND YOUR BEAUTY was descriptive or suggestive mark); *Tenneco Auto. Operating Co., Inc. v. Kingdom Auto Parts*, 2010 WL 4365580 at *10-12 (6th Cir. Oct. 28, 2010) (finding trademark attorney's opinion as an expert persuasive as to whether product numbers were protectable marks).

Thus, Keating's legal conclusion argument is meritless as Franklyn's testimony is the subject of proper expert testimony.  Indeed, each of the cases that Keating cites is inapplicable. *Ticketmaster Corp. v. Tickets.com, Inc.*, CV 99-07654HLH (VBKX), 2003 WL 25781901, at *1 (C.D. Cal. Feb. 10, 2003) (only excluded the expert's legal conclusions that were "within the sole province of the court" and items "solely directed toward the dismissed claims," but admitted a law professor's testimony on the possibility of confusion because the professor's "years of background and experience with the internet qualify him to describe the workings of the items at issue in this case"); *Jonathan Browning, Inc. v. Venetian*

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

1  *Casino Resort LLC*, 2009 U.S. Dist. LEXIS 57665, at *2 (N.D. Cal. June 18, 2009);

2  *Religious Tech. Ctr. v. Netcom On-Line Commc'n Services, Inc.*, C-95-20091

3  RMW, 1997 WL 34605244 (N.D. Cal. Jan. 6, 1997) (excluding inadmissible

4  declarations that were only "reciting case law and legal conclusions").

5      Finally, it bears noting that Keating itself is proffering the testimony from

6  Lori Boatright, an attorney, who opines that, among other things, the BruxZir mark

7  is generic and weak and that the mark should have been denied registration by the

8  PTO. (Dkt. #94, Ex. A.) Certainly if portions of Franklyn's testimony are

9  excluded as improper legal conclusions, so too should Boatright's testimony.

10  However, the correct outcome here is to reject Keating's argument that Franklyn's

11  testimony constitutes improper legal conclusions.

**III. CONCLUSION**

13      For the reasons set forth above, the Court should deny Keating's Motion In

14  Limine #1.

15  Dated: January 18, 2013                    SNELL & WILMER L.L.P.

16

17

18                              By: *s/Greer N. Shaw*
                                Philip J. Graves
19                              Greer N. Shaw
                                Deborah S. Mallgrave
20

21                              Attorneys for Plaintiff
                                James R. Glidewell Dental Ceramics, Inc.
22                              dba Glidewell Laboratories

23

24

25

26  16465822.3

27

28

GLIDEWELL'S OPPOSITION TO KEATING'S
MOTION IN LIMINE #1
CASE NO. SACV11-01309 DOC (ANx)

*Glidewell Laboratories v. Keating Dental Arts, Inc.*
**United States District Court, Central, Case No. SACV11-01309-DOC (ANx)**

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2013, I electronically filed the document described as **JAMES R. GLIDEWELL DENTAL CERAMICS, INC.'S OPPOSITION TO KEATING DENTAL ARTS, INC.'S MOTION IN LIMINE #1** the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

| | |
|---|---|
| David G. Jankowski<br>Jeffrey L. Van Hoosear<br>Lynda J Zadra-Symes<br>Darrell L. Olson<br>Knobbe Martens Olson and Bear LLP<br>2040 Main Street, 14th Floor<br>Irvine, CA  92614 | **Attorneys for Defendant Keating Dental Arts, Inc.**<br>Tel:  (949) 760-0404<br>Fax: (949) 760-9502<br><br>Jeffrey.VanHoosear@kmob.com<br>David.Jankowski@kmob.com<br>Lynda.Zadra-symes@kmob.com<br>Darrell.Olson@knobbe.com<br>litigation@kmob.com |
| David A. Robinson<br>James Azadian<br>Enterprise Counsel Group<br>Three Park Plaza, Suite 1400<br>Irvine, CA  92614 | **Attorneys for Defendant Keating Dental Arts, Inc.**<br>Tel:  (949)833-8550<br>Fax:  (949) 833-8540<br><br>drobinson@enterprisecounsel.com<br>jazadian@enterprisecounsel.com |

Dated: January 18, 2013         SNELL & WILMER L.L.P.


By: *s/Greer N. Shaw*
_____
Philip J. Graves
Greer N. Shaw
Deborah S. Mallgrave

Attorneys for Plaintiff
James R. Glidewell Dental Ceramics, Inc.
dba GLIDEWELL LABORATORIES

16139994

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071