SNELL & WILMER L.L.P.
Philip J. Graves (SBN 153441)
pgraves@swlaw.com
Greer N. Shaw (SBN 197960)
gshaw@swlaw.com
Deborah S. Mallgrave (SBN 198603)
dmallgrave@swlaw.com
350 South Grand Avenue, Suite 2600
Two California Plaza
Los Angeles, CA 90071
Telephone: (213) 929-2500
Facsimile: (213) 929-2525

Attorneys for Plaintiff
James R. Glidewell Dental Ceramics, Inc.
d/b/a Glidewell Laboratories

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JAMES R. GLIDEWELL DENTAL CERAMICS, INC. dba GLIDEWELL LABORATORIES, a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>KEATING DENTAL ARTS, INC.,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS. | Case No. SACV11-01309-DOC(ANx)<br><br>**JAMES R. GLIDEWELL DENTAL CERAMICS, INC.'S OPPOSITION TO KEATING DENTAL ARTS, INC.'S MOTION IN LIMINE # 9**<br><br>Hearing<br>Date: January 28, 2013<br>Time: 8:30 a.m.<br>Ctrm: 9D, Hon. David O. Carter<br><br>Pre-Trial Conf.: January 28, 2013<br>Jury Trial: February 26, 2013 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................... 1
II. ARGUMENT .................................................................................................. 1
   A. Keating Failed to Meet and Confer Regarding this Motion ................ 1
   B. Keating Seeks to Exclude Numerous Documents that were Produced Prior to the Discovery Cut-Off ............................................ 2
   C. The Court Should Not Exclude the Remaining Documents Produced by Glidewell After the Discovery Cut-Off ........................... 3
      1. Keating Articulates no Credible Prejudice Resulting from the Production of these Documents .......................................... 4
         a. Printouts From The Parties' Webpages ........................... 6
         b. Glidewell Marketing Materials ........................................ 7
         c. Glidewell's Financial Information Relating To Bruxzir Branded Products ..................................................... 8
         d. Prescription Forms From Dentists Identified By Keating In Its Initial Disclosures .................................... 10
         e. Miscellaneous Other Documents Produced Pursuant To FRCP 26(e) .................................................. 10
      2. Keating Had the Opportunity to Cure any Purported Prejudice or Surprise .................................................................. 11
      3. Use of the Documents Will Not Disrupt the Trial ................... 12
      4. The Documents are Important .................................................. 12
      5. There was No Bad Faith ........................................................... 13
III. CONCLUSION ............................................................................................. 14

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*3Com Corp. v. Realtek Semiconductor Corp.*,
C 03-2177 VRW, 2008 WL 783383 (N.D. Cal. Mar. 24, 2008) ........................ 12

*Crosspointe, LLC v. Integrated Computing, Inc.*,
2004 WL 5487401 (M.D. Fla. Aug. 18, 2004) ........................................... 5

*Dey, L.P v. Ivax Pharm., Inc.*,
233 F.R.D. 567 (C.D. Cal. 2005) .............................................................. 3

*Estate of Gonzalez v. Hickman*,
05-00660 MMM (RCX), 2007 WL 3237635 (C.D. Cal. June 28, 2007) ............ 4

*Galentine v. Holland Am. Line-Westours, Inc.*,
333 F. Supp. 2d 991 (W.D. Wash. 2004) .................................................. 5

*Katz v. Cont'l Airlines, Inc. (In re Katz Interactive Call Processing Patent Litig.)*, 2009 U.S. Dist. LEXIS 129933 (C.D. Cal. July 2, 2009) ................... 3

*Lanard Toys Ltd. v. Novelty, Inc.*,
375 Fed. Appx. 705 (9th Cir. 2010) ..................................................... 3, 13

*San Francisco Baykeeper v. W. Bay Sanitary Dist.*,
791 F. Supp. 2d 719 (N.D. Cal. 2011) ...................................................... 3

*SEC v. Richie*,
2006 U.S. Dist. LEXIS 57258 (C.D. Cal. Aug. 14, 2006) .............................. 2

*Semtech Corp. v. Royal Ins. Co. of Am., CV*,
03-2460-GAF PJWX, 2005 WL 6192906 (C.D. Cal. Sept. 8, 2005) ................. 4

*Singer v. Live Nation Worldwide, Inc.*,
2012 U.S. Dist. LEXIS 5196 (C.D. Cal. Jan. 13, 2012) ................................ 1

*Star Direct Telecom, Inc. v. Global Crossing Bandwith, Inc.*,
272 F.R.D. 350 (W.D. N.Y. 2011) ........................................................... 11

*Tuna Processors, Inc.*,
supra, No. Civ. 05-517 BMK, 2007 WL 433547 (D.Haw. Feb.5, 2007) ......... 4, 6

*United States v. 14.30 Acres of Land*,
2011 U.S. Dist. LEXIS 49832 at *5 (S.D. Cal. May 10, 2011) ....................... 7

**FEDERAL RULES**

Fed.R.Civ.P. 26(e) ....................................................................... 4, 10, 11, 14

Fed.R.Civ.P. 37 ...................................................................................... 3

Fed.R.Civ.P. 37(c)(1) ............................................................................. 3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Keating seeks to exclude numerous documents relevant to this case on the sole ground that Glidewell produced the documents after the discovery deadline. Keating does not suggest that is has suffered any prejudice from the production of documents, or that they are not important or relevant to the case, or even that Glidewell intentionally withheld the documents in bad faith until after the discovery deadline had passed.  If anything, Keating implies that it has not even looked at the documents, even a cursory review so it could describe with any specificity why Keating has been prejudiced or why the documents should be excluded.  Indeed, Keating did not even consider filing its motion in a timely manner so as to meet and confer on the motion as required by Central District Local Rule 7-3.

While the motion could be denied on this ground alone, it should be denied for the additional reasons, as more particularly described below, that Glidewell was substantially justified in producing the documents after the discovery deadline, Keating has not suffered prejudice as a result, the production will not disrupt the trial, the evidence produced is important, and Glidewell has not acted in bad faith.

## II.  ARGUMENT

**A.**     **Keating Failed to Meet and Confer Regarding this Motion**

Although Keating's counsel told Glidewell's counsel during their Local Rule 7-3 conference of counsel that Keating intended to file nine motions in limine, this was not one of them.  (Declaration of Philip Graves ("Graves Decl."), ¶ 5.)  Indeed, Keating's motion does not even include a statement that the motion is made following the conference of counsel pursuant to L.R. 7-3, as required under the rule. For this reason alone, the motion should be denied.  *See Singer v. Live Nation Worldwide, Inc.*, 2012 U.S. Dist. LEXIS 5196 (C.D. Cal. Jan. 13, 2012) (J. Carter) (denying defendant's motion for summary judgment because the defendant failed to

1  prove that a substantive conference of counsel took place in accordance with Local
2  Rule 7-3); *SEC v. Richie*, 2006 U.S. Dist. LEXIS 57258 (C.D. Cal. Aug. 14, 2006)
3  (denying defendant's motion for reconsideration because defendant failed to
4  comply with Local Rule 7-3).

5        The prejudice to Glidewell from Keating's failure to meet and confer is
6  manifest. Given the deadlines concerning motions in limine, Glidewell is left with
7  only 24 hours to respond to Keating's motion[1]—a motion for which it had no prior
8  notice. With its motion, Keating seeks to exclude documents that Glidewell
9  produced over two months ago, going back to November 9, 2012. Certainly,
10 Keating would have known by the time the parties conducted their meet and confer,
11 on December 31, 2012, and January 2, 2013, that it would be filing this
12 motion. Yet no mention, other than a vague reference to reserving a right to file a
13 motion, was ever made. Accordingly, the Court should deny Keating's Motion in
14 Limine #9.

15 **B.**    **<u>Keating Seeks to Exclude Numerous Documents that were Produced
16 Prior to the Discovery Cut-Off</u>**

17       Many of the documents produced by Glidewell after the discovery cut-off
18 were previously produced in the case, but lacked an appropriate bates number and
19 party designation. Glidewell reproduced these documents for the convenience of
20 the parties and the Court. (Declaration of Deborah S. Mallgrave ("Mallgrave
21 Decl."), ¶ 3.) These documents include deposition exhibits 8-9, 13-15, 29-30, 73-
22 74, 85-89, 100, 106-107, 118, 119, 121, 140, 530-534, 537, accounting for
23 approximately 200 pages of the production. The production also included
24 documents previously produced by one of Glidewell's designated experts, Professor

---

[1] As Keating is fully aware, between the Court's Scheduling Order [Dkt. #15] and the federal holiday on Monday, January 21, 2013, both party's oppositions to motions in limine are due Friday, January 18, 2013, just one day after the motions themselves were filed.

David Franklyn, which were reproduced as FRANKLYN0001 - FRANKLYN000797. Glidewell also reproduced documents that were produced by its prior counsel earlier in the case, but without appropriate numbering. These documents were labeled GDC00000001-373. In total, these documents account for approximately 1370 pages of the documents about which Keating complains and which Keating now seeks to exclude. (*Id.*, ¶ 3.) Because these documents were produced prior to the discovery cut-off, they should not be excluded.

### C. The Court Should Not Exclude the Remaining Documents Produced by Glidewell After the Discovery Cut-Off

The late disclosure of Glidewell's documents does not lead to the automatic exclusion of their testimony. Under Rule 37, a party may still use late-disclosed evidence if the late disclosure was "substantially justified" or "harmless." Fed.R.Civ.P. 37(c)(1); *see also* Fed.R.Civ.P. 37(c)(1) committee notes 1993 ("[L]imiting the automatic sanction to violations without substantial justification, coupled with the exception for violations that are harmless, is needed to avoid unduly harsh penalties in a variety of situations.") (internal quotations omitted).

In determining whether to exclude evidence pursuant to FRCP 37, courts consider (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; (4) the importance of the evidence; and (5) bad faith or willfulness involved in not timely disclosing the evidence. *See Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705, 713 (9th Cir. 2010); *San Francisco Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 733 (N.D. Cal. 2011); *Dey, L.P v. Ivax Pharm., Inc.*, 233 F.R.D. 567, 571 (C.D. Cal. 2005) (applying factors and declining to preclude late produced evidence); *Katz v. Cont'l Airlines, Inc.* (*In re Katz Interactive Call Processing Patent Litig.*), 2009 U.S. Dist. LEXIS 129933 (C.D. Cal. July 2, 2009). Application of these factors to the documents produced by

- 3 -

GLIDEWELL'S OPPOSITION TO KEATING'S
MOTION IN LIMINE #9
CASE NO. SACV11-01309 DOC (ANx)

16453424

Glidewell–which Keating conspicuously fails to do–compels the conclusion that the production of these documents after the discovery cut-off was harmless.

The documents produced by Glidewell after the discovery cut-off generally fall into the following categories:

- Printouts from the parties' websites (approximately 175 pages);
- Additional Glidewell marketing materials (similar to those previously produced and disclosed during discovery) (approximately 956 pages);
- More detailed financial and expense information for BruxZir branded products supplementing information previously disclosed (approximately 4687 pages);
- Prescription forms from dentists identified by Keating in its third amended initial disclosure (approximately 478 pages);
- Miscellaneous other documents produced pursuant to FRCP 26(e) (approximately 75 pages).

These documents should not be excluded for the reasons set forth below.

### 1. **Keating Articulates no Credible Prejudice Resulting from the Production of these Documents**

The burden of dealing with additional information or witnesses alone is not prejudice. *E.g.*, *Tuna Processors, Inc.*, *supra*, No. Civ. 05-517 BMK, 2007 WL 433547, *2 (D.Haw. Feb.5, 2007) ("The failure to properly disclose is harmless where there is no prejudice to the opposing party. There is generally no prejudice where the untimely evidence does not raise any new issues in the case.").

Courts regularly reject requests to exclude late-disclosed evidence absent a compelling showing of prejudice. *E.g.*, *Estate of Gonzalez v. Hickman*, 05-00660 MMM (RCX), 2007 WL 3237635 (C.D. Cal. June 28, 2007) (late expert reports not excluded absent prejudice); *Semtech Corp. v. Royal Ins. Co. of Am.*, CV 03-2460-GAF PJWX, 2005 WL 6192906 (C.D. Cal. Sept. 8, 2005) (late disclosed

supplemental expert report not excluded because the "harm would not warrant the extreme sanction of exclusion" and any potential harm could be cured by allowing a deposition of the expert); *Galentine v. Holland Am. Line-Westours, Inc.*, 333 F. Supp. 2d 991, 994 (W.D. Wash. 2004) (refusing to exclude expert report served eleven days past the deadline because "the potential prejudice that Defendant claims it will suffer is not so severe as to warrant exclusion, especially given the possibility of ameliorating that prejudice [through limited discovery and a deposition of the expert]"); *Crosspointe, LLC v. Integrated Computing, Inc.*, 2004 WL 5487401, at *1 (M.D. Fla. Aug. 18, 2004) (court allowed belated disclosure of supplemental expert report because the opposing party did not show "with sufficient specificity how they are prejudiced").

Here, Keating's only argument for prejudice is that Glidewell's delay in producing the documents deprived it of the opportunity to review the documents. This is not true. Keating has had ample opportunity and time to review these documents. Keating has at least six current attorneys from two different law firms appearing in the case, any of whom could have reviewed these documents in a short period of time. (Mallgrave Decl., ¶ 4.) Additionally, Keating has had many of these documents for over two months now. (Dkt. #210 (p. 2).) Knobbe Martens Olson & Bear, Keating's principal counsel, is a large law firm with over 275 lawyers; surely Keating's counsel could secure sufficient resources to review a few thousand pages of largely repetitive documents over the span of two month.

Keating's contention that reviewing the production would be a significant undertaking is also off base. As more particularly described below, of the approximately 8600 pages of new documents produced by Glidewell after the discovery cut-off, more than half (i.e., 4687 pages) consist of financial and expense reports that merely provide additional detail to summary reports that were already produced. (Mallgrave Decl., ¶ 5.) The remaining roughly 4,000 pages of materials

- 5 -

could easily be digested by a junior associate in a couple of days. Presumably Keating hired Knobbe Martens in order to ensure that it had sufficient resources to perform routine document review; in any event, Keating's protestation that between two law firms its counsel are incapable of reviewing three banker's boxes of material is not credible.

As detailed below, the majority of these documents simply provide additional detail regarding facts already investigated in written discovery and deposition. They raise no new issues or topics. Accordingly, it is difficult to see what Keating would have done with them if they had been produced earlier; certainly, apart from its bogus assertion of incapacity, Keating fails to articulate any resulting prejudice. Thus, the production of these documents after the discovery cut-off did not prejudice Keating, and there is no ground for exclusion. *See Tuna Processors, Inc. v. Haw. Int'l Seafood, Inc.*, No. Civ. 05-517 BMK, 2007 WL 433547, *2 (D.Haw. Feb.5, 2007) ("The failure to properly disclose is harmless where there is no prejudice to the opposing party. There is generally no prejudice where the untimely evidence does not raise any new issues in the case").

### a. Printouts From The Parties' Webpages

Glidewell's post-October 29 production includes numerous printouts of webpages from Keating's and Glidewell's websites. (Mallgrave Decl., ¶ 6.) Keating was not prejudiced by the production of these documents for a number of reasons. First, Keating obviously cannot contend that it was prejudiced by the production, for document control purposes, of pages from its own website. Moreover, the documents produced from Keating's website consist of marketing and advertising images relating to Keating's use of the KDZ Bruxer name, which are responsive to Glidewell's discovery requests and which Keating itself should have produced. (Mallgrave Decl., ¶¶ 6-7.) Similarly, the production of pages from Glidewell's website cannot credibly be said to have prejudiced Keating, as Keating

1  is obviously aware of Glidewell's website and in fact produced numerous pages
2  from Glidewell's website; indeed, Keating used pages from Glidewell's website at
3  the depositions of Glidewell employees Dr. Michael DiTolla and James Shuck (for
4  example, deposition exhibits 6, 16, 25).  (Mallgrave Decl., ¶¶ 8-9.)

Second, some of the pages from Glidewell's website were produced in response to Keating's naked licensing argument, which was clearly articulated for the first time in Keating's November 26, 2012 opposition to Glidewell's motions for summary judgment—well after the discovery cut-off.  (Dkt. # 118.)  These documents include "Instructions for Use" that are sent to Authorized BruxZir Labs and instructional videos concerning the fabrication of BruxZir crowns that are posted on Glidewell's website.  (Mallgrave Decl., ¶ 10.)

Third, the pages of Keating's and Glidewell's websites are of course publicly available.[2]  Given that these materials were therefore equally available to Keating and Glidewell, Keating can show no prejudice.  *See United States v. 14.30 Acres of Land*, 2011 U.S. Dist. LEXIS 49832 at *5 (S.D. Cal. May 10, 2011) (denying plaintiff's motion in limine to exclude evidence disclosed after the discovery cut-off where the information was publicly available).

### b.  Glidewell Marketing Materials

There is no prejudice or surprise to Keating from the marketing materials produced by Glidewell after the discovery cut-off.  The manner in which Glidewell markets its BruxZir branded products is not a new issue in the case; this is, after all, a case that largely turns on the manner in which the parties market their products. Numerous Glidewell marketing materials were produced prior to the discovery cut-off by both parties, including advertisements, articles, pages from Glidewell's

---

[2] Some of the documents and videos from Glidewell's website are in a password protected area, for Glidewell's Authorized BruxZir Labs, but the password was produced to Keating during discovery.  (Mallgrave Decl., ¶ 11.)

websites, and presentations related to BruxZir crowns and bridges. Indeed, as with the website materials, Keating itself produced and used Glidewell marketing materials at Dr. DiTolla's and Mr. Shuck's depositions (for example, deposition exhibits 7, 8, 11, 12, 13, 14, 15, and 35). (Mallgrave Decl., ¶ 12.) Furthermore, Glidewell's marketing efforts were discussed at length in various depositions, including Dr. DiTolla and Mr. Shuck, and were the subject of various interrogatories. (Dkt. #91-1.) In response to this discovery, Glidewell disclosed its marketing efforts and the channels used to market its BruxZir branded products, including its website, direct mailers, magazines (including its own Chairside Magazine), and trade shows, to name a few. (Mallgrave Decl., ¶ 12.) The marketing materials produced by Glidewell after the discovery cut-off merely provide more examples of Glidewell's marketing of BruxZir branded products, including more Chairside magazines, articles by Glidewell employees Dr. DiTolla and Robin Carden and third parties relating to BruxZir branded products, additional advertisements from the Glidewell website and other magazines, and statistics on the number of viewers of Glidewell's website and videos. (Mallgrave Decl., ¶ 13.)

### c. Glidewell's Financial Information Relating To Bruxzir Branded Products

Glidewell's productions also include financial information relating to the sales and costs of BruxZir branded products. The vast majority of these materials are comprised of weekly production and sales reports that include information concerning Glidewell's BruxZir brand crowns and bridges. Because these reports were generated on a weekly basis over the course of more than three and a half years, they encompass more than 4,000 pages of Glidewell's production. (Mallgrave Decl., ¶ 14.) The burden of reviewing these documents is minimal, since they are simply repetitive weekly reports showing sales and production volume.

1  Keating cannot claim to have been prejudiced by the production of these
2  materials after the discovery cut-off, because they merely supplement and provide
3  more detailed support for sales and marketing information that was previously
4  disclosed in summary form, including spreadsheets and charts that were produced
5  and used in depositions of Glidewell witnesses (for example, deposition exhibits
6  37, 38, 39, 118, 119, 121). These previously-produced financial documents
7  disclosed Glidewell's net sales for BruxZir branded products, broken down by
8  month and product, and show comparisons for sales of BruxZir branded crowns as
9  compared to other Glidewell crowns. Similarly, Glidewell had previously disclosed
10 information relating to its sales and marketing expenses in response to Keating's
11 interrogatory requests. (Mallgrave Decl., ¶ 15.) These previously produced
12 documents were addressed at the deposition of Keith Allred, Glidewell's general
13 counsel. (Mallgrave Decl., ¶ 16.) During the deposition, Keating asked Allred if
14 he could locate and produce additional financial information showing the unit sale
15 breakdowns associated with the sales numbers, and asked for the same information
16 to show costs of goods sold and profitability for BruxZir branded crowns. Allred
17 testified that he could get the information broken down by week and month; that is
18 exactly what Glidewell produced.

19 Much of the financial information produced after the discovery cut-off
20 contained the additional information requested by Keating—weekly sales and
21 monthly production reports (and summaries of each), as well as spreadsheets
22 showing costs of goods sold and profitability calculations. Further, the additional
23 documents relating to Glidewell's marketing expenses merely supplement the
24 information previously provided by Glidewell during discovery (showing detailed
25 expenses, and support for certain expenses such as mailing lists, trade shows, DVD
26 marketing, and ad placements). (Mallgrave Decl., ¶ 17.)

### d. Prescription Forms From Dentists Identified By Keating In Its Initial Disclosures

Glidewell's post-October 29 production also contains prescription forms submitted to Glidewell by dentists identified by Keating in its third amended initial disclosure (accounting for approximately 478 pages). (Dkt. #218-1 (Ex. 3).) Glidewell did not become aware of the significance of these dentists until after the discovery cut-off, when Keating submitted declarations from these dentists in support of its summary judgments briefs. (*E.g.*, Dkt. ##105, 106, 108, and 109.) Realizing it might have prescription forms from these same dentists, dentists who were also customers of Glidewell, Glidewell searched for and produced the prescription forms. (Mallgrave Decl., ¶ 18.) As these dentists are also Keating customers, and mostly dentists from whom Keating itself had obtained declarations, Keating likely could have requested and obtained these documents from the dentists itself. While Glidewell did not discover these documents until after the discovery cut-off date, as discussed more below, Glidewell has on ongoing obligation to produce documents as they are discovered. Given that these documents come from Keating's own witnesses, there can be no surprise and no prejudice exists.

### e. Miscellaneous Other Documents Produced Pursuant To FRCP 26(e).

In addition to the above, Glidewell's post-October 29 productions also consisted of a few miscellaneous documents that were produced as part of Glidewell's obligation to supplement its production pursuant to FRCP 26(e) (accounting for approximately 75 pages). (Mallgrave Decl., ¶ 19.) FRCP 26(e) requires that, "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the correct information has not otherwise been made known to the other parties during the discovery process or in writing" the party "must supplement or correct its disclosure or response." Fed. R. Civ. P.

26(e) (emphasis added). The duty to supplement continues even after the close of discovery. *See Star Direct Telecom, Inc. v. Global Crossing Bandwith, Inc.*, 272 F.R.D. 350, 358 (W.D. N.Y. 2011). That is exactly what Glidewell did with respect to these documents.

For example, on November 16, 2012 Glidewell produced a one-page call report by its employee Nicole Fallon; the admissibility of this report is addressed in Glidewell's Opposition to Keating's Motion in Limine #3. Glidewell also produced e-mails between Dr. DiTolla and third party dentists regarding BruxZir. These e-mails were produced after Keating asked Dr. DiTolla at his deposition to locate and produce them. (Mallgrave Decl., ¶ 19.) Thus, there is no surprise or prejudice by the production of these documents. Glidewell also produced a certified copy of the trademark registration for its BruxZir mark. (Mallgrave Decl., ¶ 19.) Keating itself requested that the Court take judicial notice of its own certified copy of BruxZir registration when it filed its motions for summary judgment. (Dkt. # 89-10.) Keating has made clear its contention that it does not believe BruxZir should be a registered trademark, but it has never disputed the mark was in fact registered. There is simply no prejudice connected with Glidewell's production of its own certified copy of the registered trademark.

In short, Keating has failed to articulate any reason, other than its spurious inability to review documents, that the production of these documents after the discovery cut-off prejudiced Keating. That is because Keating has not in fact been prejudiced. Keating's ability to prepare for trial, or even its motions in limine or other pre-trial filings, has not been hindered in any way.

**2. <u>Keating Had the Opportunity to Cure any Purported Prejudice or Surprise</u>**

As discussed above, Keating has had ample time, and its counsel have ample resources, with which to review these documents. In any event, even assuming that

Keating had suffered some prejudice, Keating could have tried to alleviate the prejudice by requesting a deposition to address any issues raised in the documents that it considered important, but it did not do so. This similarly indicates that exclusion is not warranted. *See 3Com Corp. v. Realtek Semiconductor Corp.*, C 03-2177 VRW, 2008 WL 783383 (N.D. Cal. Mar. 24, 2008) (denying motion *in limine* to exclude third-party witnesses disclosed on last day of fact discovery because movant never sought agreement or leave of court to subpoena witnesses after discovery cut-off).

### 3. Use of the Documents Will Not Disrupt the Trial

The third factor is whether admission of the evidence will disrupt the trial. Once again, Keating does not even argue, much less substantiate, that the trial will be disrupted. Nor could it, because as discussed below, the issues and topics to which the documents relate—commercial strength, actual confusion, and other factors for likelihood of confusion and damages—are already before the court. And as demonstrated by the evidence Glidewell filed in connection with the parties' motions for summary judgment, ample evidence relating to these factors has already been produced (by both sides). (Dkt. ## 78-9, 85-1, 86-1, 90, 111-9, 116.) In addition, the productions in November occurred three months before the scheduled trial, providing Keating ample time to review the documents. Even for the documents produced in early January, it was still almost eight weeks before the trial. Keating has had sufficient time to continue its review of the documents and strategize concerning its further response to this evidence at trial (or at least determine some specific prejudice it has suffered to support is motion in limine).

### 4. The Documents are Important

The documents produced by Glidewell after the discovery cut-off are all important. For example, the printouts from Keating's website show the commercial use of the KDZ Bruxer name and marketing channels used by Keating, facts

relevant to likelihood of confusion. The printouts also refute Keating's assertions that it always uses an oval around KDZ Bruxer and that KDZ Bruxer is marketed as intended for patients with bruxism. Printouts from Glidewell's website refute Keating's naked licensing argument and show the marketing channels used by Glidewell, factors related to likelihood of confusion and genericness.

Similarly, the marketing materials and expenses show Glidewell's extensive advertising and promotion of the BruxZir mark, the marketing channels used by Glidewell, and the commercial strength of the BruxZir mark, factors related to likelihood of confusion and genericness. Likewise, articles written by Glidewell employees and third parties relating to BruxZir show marketing channels used by Glidewell and the commercial strength of the BruxZir mark.

Glidewell's financial information is important because it also demonstrates the commercial strength of the mark and support Glidewell's potential damages.

The Glidewell prescription forms, showing orders from Keating's dentist witnesses to Glidewell for BruxZir branded crowns, are relevant to the issue of actual confusion and to rebut anticipated testimony from Keating's dentists concerning their use and understanding of the BruxZir mark.

Similarly, the Fallon call notes are important because they corroborate Ms. Fallon's testimony concerning the actual confusion described to her by a Keating customer between BruxZir and KDZ Bruxer. (Dkt. # 90-1 (Declaration of Nicole Fallon in Support of Glidewell's Motions for Summary Judgment) Exhs. 1-2.)

### 5. There was No Bad Faith

The final factor is whether any tardiness in disclosure is attributable to bad faith. *Lanard Toys*, 375 Fed. Appx. at 713; *Dey*, 233 F.R.D. at 571. Like the other factors, Keating does not argue that there was any bad faith. Keating has presented no evidence of bad faith, because none exists. Snell & Wilmer L.L.P. was engaged in this matter on the eve of the discovery cut-off. In particular, this firm was

retained by Glidewell late in the day on October 25, 2012, and substituted in for Glidewell's previous counsel soon thereafter. (*See* Dkt. #69 (Ex Parte Application to Amend the Scheduling Order).) Glidewell then began producing additional documents as soon as Glidewell's counsel reviewed the case file and determined that additional documents were required under FRCP 26(e) and would be helpful. (Dkt. # 142 (Declaration of Greer Shaw in Support of Glidewell's Motions for Summary Judgment) ¶¶ 11-12.) Simply put, this is not a case of ambush.

### III. CONCLUSION

Based on the foregoing, Glidewell respectfully requests that the Court deny Keating's Motion in Limine #9 on the ground that there was substantial justification for the disclosure of documents after the discovery cut-off and the late disclosure did not prejudice Keating.

Dated: January 18, 2013              SNELL & WILMER L.L.P.


By: *s/Greer N. Shaw*
Philip J. Graves
Greer N. Shaw
Deborah S. Mallgrave

Attorneys for Plaintiff
James R. Glidewell Dental Ceramics, Inc.
dba Glidewell Laboratories

*Glidewell Laboratories v. Keating Dental Arts, Inc.*
United States District Court, Central, Case No. SACV11-01309-DOC (ANx)

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2013, I electronically filed the document described as **JAMES R. GLIDEWELL DENTAL CERAMICS, INC.'S OPPOSITION TO KEATING DENTAL ARTS, INC.'S MOTION IN LIMINE #9** the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

| | |
|---|---|
| David G. Jankowski<br>Jeffrey L. Van Hoosear<br>Lynda J Zadra-Symes<br>Darrell L. Olson<br>Knobbe Martens Olson and Bear LLP<br>2040 Main Street, 14th Floor<br>Irvine, CA 92614 | **Attorneys for Defendant Keating Dental Arts, Inc.**<br>Tel: (949) 760-0404<br>Fax: (949) 760-9502<br><br>Jeffrey.VanHoosear@kmob.com<br>David.Jankowski@kmob.com<br>Lynda.Zadra-symes@kmob.com<br>Darrell.Olson@knobbe.com<br>litigation@kmob.com |
| David A. Robinson<br>James Azadian<br>Enterprise Counsel Group<br>Three Park Plaza, Suite 1400<br>Irvine, CA 92614 | **Attorneys for Defendant Keating Dental Arts, Inc.**<br>Tel: (949)833-8550<br>Fax: (949) 833-8540<br><br>drobinson@enterprisecounsel.com<br>jazadian@enterprisecounsel.com |

Dated: January 18, 2013          SNELL & WILMER L.L.P.


By: *s/Greer N. Shaw*
     Philip J. Graves
     Greer N. Shaw
     Deborah S. Mallgrave

     Attorneys for Plaintiff
     James R. Glidewell Dental Ceramics, Inc.
     dba GLIDEWELL LABORATORIES

16139994

SNELL & WILMER L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071

Certificate of Service
SACV11-01309-DOC (ANx)