SNELL & WILMER L.L.P.
Philip J. Graves (SBN 153441)
pgraves@swlaw.com
Greer N. Shaw (SBN 197960)
gshaw@swlaw.com
Deborah S. Mallgrave (SBN 198603)
dmallgrave@swlaw.com
350 South Grand Avenue, Suite 2600
Two California Plaza
Los Angeles, CA 90071
Telephone: (213) 929-2500
Facsimile: (213) 929-2525

Attorneys for Plaintiff
James R. Glidewell Dental Ceramics, Inc.
d/b/a Glidewell Laboratories

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JAMES R. GLIDEWELL DENTAL CERAMICS, INC. dba GLIDEWELL LABORATORIES, a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>KEATING DENTAL ARTS, INC.,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS. | Case No. SACV11-01309-DOC(ANx)<br><br>**DECLARATION OF DEBORAH S. MALLGRAVE IN SUPPORT OF JAMES R. GLIDEWELL DENTAL CERAMICS, INC.'S OPPOSITION TO KEATING DENTAL ARTS, INC.'S MOTION IN LIMINE # 9**<br><br>Hearing<br><br>Date: January 28, 2013<br>Time: 8:30 a.m.<br>Ctrm: 9D, Hon. David O. Carter<br><br>Pre-Trial Conf.: January 28, 2013<br>Jury Trial: February 26, 2013 |

I, Deborah S. Mallgrave, declare as follows:

1. I am an attorney licensed to practice law in the State of California and counsel with the law firm of Snell & Wilmer L.L.P., attorneys for Plaintiff James R. Glidewell Dental Ceramics, Inc. ("Plaintiff") in the above-entitled action. I have first-hand, personal knowledge of the facts stated herein and, if called to testify, could and would competently testify to those facts.

2. This declaration is submitted in support of James R. Glidewell Dental Ceramics, Inc.'s Opposition To Keating Dental Arts, Inc.'s Motion In Limine # 9, filed concurrently herein.

3. I reviewed all of the documents produced by Glidewell in this matter as well as all the deposition exhibits. Many of the documents produced by Glidewell after the discovery cut-off were previously produced in the case, but lacked an appropriate bates number and party designation. My office reproduced these documents for the convenience of the parties and the Court. These documents include deposition exhibits 8-9, 13-15, 29-30, 73-74, 85-89, 100, 106-107, 118, 119, 121, 140, 530-534, 537, accounting for approximately 200 pages of the production. The production also included documents previously produced by one of Glidewell's designated experts, Professor David Franklyn, which were reproduced as FRANKLYN0001 - FRANKLYN000797. My office also reproduced documents that were produced by Glidewell's prior counsel earlier in the case, but without appropriate numbering. These documents were labeled GDC00000001-373. In total, these documents account for approximately 1370 pages of the documents about which Keating complains and which Keating now seeks to exclude.

4. Based upon my review of the online docket for this case, Keating has at least six current attorneys from two different law firms representing it in this case.

5. Of the approximately 8600 pages of new documents produced by Glidewell after the discovery cut-off, more than half (i.e., 4687 pages) consist of financial and expense reports that merely provide additional detail to summary reports that were already produced.

6. The documents produced by Glidewell after the discovery cut-off also include numerous printouts of webpages from Keating's and Glidewell's websites. The printouts from Keating's website consist of marketing and advertising images relating to Keating's use of the KDZ Bruxer name.

7. I reviewed Keating's responses to Glidewell's first set of request for production of documents. In its responses, Keating agreed to produce documents responsive to Glidewell's request for all documents and things relating to all uses of the designation KDZ Bruxer by Keating (RFP No. 3). Despite this, Keating did not produce numerous pages from its website showing use of the KDZ Bruxer mark, which Glidewell ultimately produced.

8. I reviewed the documents produced by Keating in discovery. Among the documents produced by Keating are numerous pages from Glidewell's website.

9. I reviewed the deposition transcripts of Dr. Michael DiTolla and James Shuck. At Dr. DiTolla's and Mr. Shuck's depositions, Keating introduced as exhibits pages from Glidewell's website. The exhibits included deposition exhibits 6, 16, and 25.

10. Once our office learned that Keating was making a naked licensing agreement, we worked with our client to locate and produce documents from Glidewell's websites relevant to the issue. These documents include "Instructions for Use" that are sent to Authorized BruxZir Labs and instructional videos concerning the fabrication of BruxZir crowns that are posted on Glidewell's website.

11. Some of the documents and videos from Glidewell's websites are in a password protected area, for Glidewell's Authorized BruxZir Labs, but the password was produced to Keating during discovery.

12. Numerous Glidewell marketing materials were produced prior to the discovery cut-off by both parties, including advertisements, articles, pages from Glidewell's websites, and presentations related to BruxZir brand crowns and bridges. Indeed, as with the website materials, Keating itself produced and used Glidewell marketing materials at Dr. DiTolla's and Mr. Shuck's depositions (for example, deposition exhibits 7, 8, 11, 12, 13, 14, 15, and 35). Furthermore, Glidewell's marketing efforts were discussed at length in various depositions, including Dr. DiTolla and Mr. Shuck, and were the subject of Glidewell's responses to Keating's interrogatories. In response to this discovery, Glidewell disclosed its marketing efforts and the channels used to market its BruxZir brand products, including its websites, direct mailers, magazines (including its own Chairside Magazine), and trade shows, to name a few.

13. The marketing materials produced by Glidewell after the discovery cut-off merely provide more examples of Glidewell's marketing of BruxZir branded products, including more Chairside magazines, articles by Glidewell employees Dr. DiTolla and Robin Carden and third parties relating to BruxZir branded products, additional advertisements from the Glidewell website and other magazines, and statistics on the number of viewers of Glidewell's website and videos.

14. Glidewell's productions also include financial information relating to the sales and costs of BruxZir brand products. The vast majority of these materials are comprised of weekly production and sales reports that include information concerning Glidewell's BruxZir brand crowns and bridges. Because these reports were generated on a weekly basis over the course of more than three and a half years, they encompass more than 4,000 pages of Glidewell's production.

15. Prior to the discovery cut-off, Glidewell disclosed sales and marketing information for BruxZir branded products in summary form, including spreadsheets and charts that were produced and used in depositions of Glidewell witnesses (for example, deposition exhibits 37, 38, 39, 118, 119, 121). These previously-produced financial documents disclosed Glidewell's net sales for BruxZir branded products, broken down by month and product, and shows comparisons for sales of BruxZir branded crowns as compared to other Glidewell crowns. Similarly, Glidewell previously disclosed information relating to its sales and marketing expenses in response to Keating's interrogatory numbers 5 and 11.

16. I reviewed the deposition transcript of Keith Allred, which occurred on October 25, 2012. Information relating to Glidewell's sales and marketing expenses relating to BruxZir branded products was discussed at Mr. Allred's deposition. While asking Mr. Allred about Glidewell's financial documents, Keating asked Mr. Allred if he could locate and produce additional financial information showing the unit sale breakdowns associated with the sales numbers, and asked for the same information to show costs of goods sold and profitability for BruxZir brand crowns. Mr. Allred testified that he could get the information broken down by week and month, which is exactly what Glidewell produced.

17. Much of the financial information produced by Glidewell after the discovery cut-off contained the additional information requested by Keating—weekly sales and monthly production reports (and summaries of each), as well as spreadsheets showing costs of goods sold and profitability calculations. Further, the additional documents relating to Glidewell's marketing expenses merely supplements the information previously provided by Glidewell during discovery (showing detailed expenses, and support for certain expenses such as mailing lists, trade shows, DVD marketing, and ad placements).

18. Glidewell also produced prescription forms submitted to Glidewell by dentists identified by Keating in its third amended initial disclosure. Glidewell did

not become aware of the significance of these dentists until after the discovery cut-off, when Keating submitted declarations from them in support of their summary judgments motions. At this point, Glidewell searched for and produced prescription forms submitted by these same dentists to Glidewell.

19. Glidewell's productions after the discovery cut-off also consisted of a few miscellaneous documents that were produced as part of Glidewell's obligation to supplement its production pursuant to FRCP 26(e). For example, Glidewell produced a one-page call report by its employee Nicole Fallon. Glidewell also produced e-mails between Dr. DiTolla and third party dentists regarding BruxZir brand crowns. These e-mails were produced after Keating asked Dr. DiTolla at his deposition to locate and produce them. Glidewell also produced a certified copy of the trademark registration for its BruxZir mark.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 18, 2013, at Costa Mesa, California.

_Deborah S. Mallgrave_
Deborah S. Mallgrave

*Glidewell Laboratories v. Keating Dental Arts, Inc.*
United States District Court, Central, Case No. SACV11-01309-DOC (ANx)

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2013, I electronically filed the document described as **DECLARATION OF DEBORAH S. MALLGRAVE IN SUPPORT OF JAMES R. GLIDEWELL DENTAL CERAMICS, INC.'S OPPOSITION TO KEATING DENTAL ARTS, INC.'S MOTIONS IN LIMINE#9** the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

| | |
|---|---|
| David G. Jankowski<br>Jeffrey L. Van Hoosear<br>Lynda J Zadra-Symes<br>Darrell L. Olson<br>Knobbe Martens Olson and Bear LLP<br>2040 Main Street, 14th Floor<br>Irvine, CA 92614 | **Attorneys for Defendant Keating Dental Arts, Inc.**<br>Tel: (949) 760-0404<br>Fax: (949) 760-9502<br><br>Jeffrey.VanHoosear@kmob.com<br>David.Jankowski@kmob.com<br>Lynda.Zadra-symes@kmob.com<br>Darrell.Olson@knobbe.com<br>litigation@kmob.com |
| David A. Robinson<br>James Azadian<br>Enterprise Counsel Group<br>Three Park Plaza, Suite 1400<br>Irvine, CA 92614 | **Attorneys for Defendant Keating Dental Arts, Inc.**<br>Tel: (949)833-8550<br>Fax: (949) 833-8540<br><br>drobinson@enterprisecounsel.com<br>jazadian@enterprisecounsel.com |

Dated: January 18, 2013

SNELL & WILMER L.L.P.

By: /s/Greer N. Shaw
Philip J. Graves
Greer N. Shaw
Deborah S. Mallgrave

Attorneys for Plaintiff
James R. Glidewell Dental Ceramics, Inc.
dba GLIDEWELL LABORATORIES

16139994

Certificate of Service
SACV11-01309-DOC (ANx)