1   Lynda J. Zadra-Symes (SBN 156,511)
    Lynda.Zadra-Symes@kmob.com
2   Jeffrey L. Van Hoosear (SBN 147,751)
    Jeffrey.VanHoosear@kmob.com
3   David G. Jankowski (SBN 205,634)
    David.jankowski@kmob.com
4   KNOBBE, MARTENS, OLSON & BEAR
    2040 Main Street, Fourteenth Floor
5   Irvine, California 92614
    Phone: (949) 760-0404
6   Facsimile: (949) 760-9502

7   David A. Robinson (SBN 107,613)
    drobinson@enterprisecounsel.com
8   James S. Azadian (SBN 225,864)
    jazadian@enterprisecounsel.com
9   ENTERPRISE COUNSEL GROUP ALC
    Three Park Plaza, Suite 1400
10  Irvine, California 92614
    Phone: (949) 833-8550
11  Facsimile: (949) 833-8540

12
    Attorneys for Defendant/Counter-Plaintiff,
13  KEATING DENTAL ARTS, INC.

14

15              IN THE UNITED STATES DISTRICT COURT

16          FOR THE CENTRAL DISTRICT OF CALIFORNIA

17                     SOUTHERN DIVISION

18

| | |
|---|---|
| JAMES R. GLIDEWELL DENTAL CERAMICS, INC. dba GLIDEWELL LABORATORIES, | Civil Action No. SACV11-01309-DOC(ANx) |
| Plaintiff, | Honorable David O. Carter |
| v. | **DEFENDANT/COUNTER-PLAINTIFF KEATING DENTAL ARTS, INC.'S DISPUTED PROPOSED JURY INSTRUCTIONS** |
| KEATING DENTAL ARTS, INC. | |
| Defendant. | Trial Date: February 26, 2013 Time: 8:30 a.m. |
| AND RELATED COUNTERCLAIMS. | Location: Southern Division, Courtroom 9D |

# COURT'S INSTRUCTION NUMBER 2

To help you follow the evidence, I will give you a brief summary of the positions of the parties.

The plaintiff in this case is James R. Glidewell Dental Ceramics, Inc., which does business under the name Glidewell Laboratories.  You may hear me, the attorneys and the witnesses refer to Glidewell Laboratories as "Glidewell" or "plaintiff."  The defendant in this case is Keating Dental Arts, Inc.  You may hear me, the attorneys and the witnesses refer to Keating Dental Arts as "Keating" or "defendant."  Glidewell and Keating compete by selling dental restoration products, such as dental crowns and bridges.  This case involves the trademarks under which Glidewell and Keating sell crowns and bridges made of a material called zirconia.  Glidewell sells its products under the mark "BruxZir."  Keating sells its products under the mark "KDZ Bruxer."

Glidewell claims that Keating has infringed and continues to infringe Glidewell's rights in its "BruxZir" trademark by Keating's sale of competing goods under the name "KDZ Bruxer."  Glidewell has the burden of proving this claim.  Keating denies this claim and contends that: (1) Glidewell's "BruxZir" mark, when used with its dental crowns and bridges, is invalid because (a) the dentists use "BruxZir" generically to refer to an all-zirconia dental restoration, (b) "BruxZir" is pronounced identically to the dental term "bruxer," which refers to a patient who subconsciously grinds his or her teeth, (c) "BruxZir" describes the product at issue, namely a crown or bridge for bruxer patients made entirely of zirconia, and (d) Glidewell abandoned any trademark rights that might have attached to "BruxZir" through "naked licensing" of the "BruxZir" mark for use by competing dental laboratories that sell all-zirconia crowns and bridges in competition with Glidewell and Keating; (2) Keating's use of its "KDZ Bruxer" mark is not likely to cause confusion among an appreciable number of dentists regarding the source,

sponsorship, affiliation, or approval of Keating's goods; and (3) Keating's use of "KDZ Bruxer" is protected by the doctrine of "fair use."

Glidewell denies Keating's claims.

**Source:**

Ninth Circuit Model Jury Instructions Civil, No. 1.2.

# COURT'S INSTRUCTION NUMBER 3

Glidewell seeks damages against Keating for trademark infringement. Keating denies infringing the trademark and contends the BruxZir trademark is invalid.  To help you understand the evidence that will be presented in this case, I will explain some of the legal terms you will hear during this trial.

## DEFINITION OF A TRADEMARK

A trademark is any word, name, symbol, device, or any combination thereof, used by a person to identify and distinguish that person's goods from the goods of others and to indicate the source of the goods, even if that source is generally unknown.  The owner of a trademark has the right to exclude others from using that trademark in a manner that is likely to cause confusion among a appreciable number of dentists as to the source, sponsorship, affiliation, or approval of the goods.

## HOW A TRADEMARK IS OBTAINED

A person acquires the right to exclude others from using a trademark by being the first to use it in the marketplace, or by using it before the alleged infringer.  Rights in a trademark are obtained only through commercial use of the mark.

## TRADEMARK REGISTRATION

Once the owner of a trademark has obtained the right to exclude others from using the trademark, the owner may obtain a certificate of registration issued by the United States Patent and Trademark Office.  Thereafter, when the owner brings an action for infringement, the owner may rely solely on the registration certificate to prove that the owner has the right to exclude others from using the trademark in connection with the type of goods specified in the certificate.

/ / /

/ / /

## **GLIDEWELL'S BURDEN OF PROOF**

Glidewell contends that Keating has infringed Glidewell's BruxZir trademark.  Glidewell has the burden of proving by a preponderance of the evidence that Glidewell is the owner of a valid trademark and that Keating infringed that trademark.

## **KEATING'S BURDEN OF PROOF**

Keating contends: (1) Glidewell's "BruxZir" mark is invalid; and (2) Keating's use of "Bruxer" is protected by the doctrine of "fair use."  Keating has the burden of proving by a preponderance of the evidence that these claims are true.

**Source:**

Ninth Circuit Model Jury Instructions Civil, No. 15.0.

**COURT'S INSTRUCTION NUMBER 26**

As I explained at the start of the case, Glidewell seeks damages against Keating for infringement of the BruxZir trademark.  Keating denies infringing the BruxZir trademark and contends: (1) Glidewell's "BruxZir" mark, when used with its dental crowns and bridges, is invalid because (a),the relevant consumers use "BruxZir" generically to refer to an all-zirconia dental restoration, (b) "BruxZir" is pronounced identically to the dental term "bruxer," which refers to a patient who subconsciously grinds his or her teeth (c) "BruxZir" describes the product at issue, namely a crown or bridge for bruxer patients made entirely of zirconia, and (d) Glidewell abandoned any trademark rights that might have attached to "BruxZir" through "naked licensing" of the "BruxZir" mark for use by competing dental laboratories that sell all-zirconia crowns and bridges in competition with Glidewell and Keating; (2) Keating's use of its "KDZ Bruxer" mark is not likely to cause confusion among a appreciable number of relevant consumers regarding the source, sponsorship, affiliation, or approval of Keating's goods; and (3) Keating's use of "KDZ Bruxer" is protected by the doctrine of "fair use."

1 **Source:**

2 Ninth Circuit Model Jury Instructions Civil, No. 15.0.

## COURT'S INSTRUCTION NUMBER 29

The owner of a trademark may enter into an agreement that permits another to use the trademark.  This type of agreement is called a license, and the person permitted to use the trademark is called a licensee.  Where a registered mark is used legitimately by related companies, such use benefits the registrant, and does not affect the validity of the mark or of its registration, provided the mark is not used in such manner as to deceive the public.

A related company, for the purpose of this instruction, is any person or company whose use of a mark is controlled by the owner of the mark with respect to the nature and quality of the goods or services on or in connection with which the mark is used.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Source:**

Ninth Circuit Model Jury Instructions Civil, No. 15.14; 15 U.S.C. §§ 1055, 1127.

# COURT'S INSTRUCTION NUMBER 32

How distinctively a trademark indicates that a good comes from a particular source is an important factor to consider in assessing its validity and in assessing Instruction 34 for determining whether Keating's use of the KDZ Bruxer mark in connection with its zirconia crowns and bridges creates a likelihood of confusion among a appreciable number of relevant consumers as to the source, sponsorship, affiliation, or approval of the goods sold under the KDZ Bruxer mark.

Glidewell asserts that BruxZir is a valid and protectable trademark for its dental crowns and bridges.  Glidewell also contends that Keating's use of its KDZ Bruxer mark in connection with Keating's dental crowns and bridges infringes Glidewell's BruxZir trademark.  Keating contends that Glidewell's "BruxZir" mark is invalid because (a) the relevant consumers use "BruxZir" generically to refer to an all-zirconia dental restoration, (b) "BruxZir" is pronounced identically to the dental term "bruxer," which refers to a patient who subconsciously grinds his or her teeth, (c) "BruxZir" describes the product at issue, namely a crown or bridge for bruxer patients made entirely of zirconia, and (d) Glidewell abandoned any trademark rights that might have attached to "BruxZir" through "naked licensing" of the "BruxZir" mark for use by competing dental laboratories that sell all-zirconia crowns and bridges in competition with Glidewell and Keating.

In order to determine if Glidewell has met its burden of showing that "BruxZir" is a valid trademark, you should classify it on the spectrum of trademark distinctiveness that I will explain in this instruction.

## Spectrum of Marks

Trademark law provides great protection to distinctive or strong trademarks.  Conversely, trademarks not as distinctive or strong are called "weak" trademarks and receive less protection from infringing uses.  Trademarks that are not distinctive are not entitled to any trademark protection.  For deciding trademark

protectability, trademarks are grouped into four categories according to their relative strength or distinctiveness.  These four categories are, in order of strength or distinctiveness:  arbitrary (which is inherently distinctive), suggestive (which is also inherently distinctive), descriptive (which is protected only if it acquires in consumers' minds a "secondary meaning" which I explain in Instruction 33) and generic names (which are entitled to no protection).

**Arbitrary Marks.**  The first category is "inherently distinctive" trademarks.  They are considered strong trademarks and are clearly protectable.  They involve the arbitrary, fanciful or fictitious use of a word or phrase to designate the source of a product.  Such a trademark is a word that in no way describes or has any relevance to the particular product it is meant to identify.  It may be a common word used in an unfamiliar way.  It may be a newly created (coined) word or parts of common words that are applied in a fanciful, fictitious or unfamiliar way, solely to function as a trademark.

For instance, the common word "apple" became a strong and inherently distinctive trademark when used by a company to identify the personal computers that company sold.  The company's use of the word "apple" was arbitrary or fanciful because "apple" did not describe and was not related to what the computer was, its components, ingredients, quality, or characteristics.  "Apple" was being used in an arbitrary way to designate for consumers that the computer comes from a particular manufacturer or source.

**Suggestive Marks.**  The next category is suggestive marks.  These trademarks are also inherently distinctive but are considered weaker than arbitrary trademarks.  Unlike arbitrary trademarks, which are in no way related to what the product is or its components, quality, or characteristics, suggestive trademarks suggest some characteristic or quality of the product to which they are attached.  If the consumer must use imagination or any type of multi-stage reasoning to understand the trademark's significance, then the trademark does not describe the

product's features, but suggests them.

A suggestive use of a word involves consumers associating the qualities the word suggests to the product to which the word is attached. For example, when "apple" is used not to indicate a certain company's computers, but rather "Apple–A–Day" Vitamins, it is being used as a suggestive trademark. "Apple" does not describe what the vitamins are. However, consumers may come to associate the healthfulness of "an apple a day keeping the doctor away" with the supposed benefits of taking "Apple–A–Day" Vitamins.

**Descriptive Marks.** The third category is descriptive trademarks. These marks directly identify or describe some aspect, characteristic, or quality of the product to which they are affixed in a straightforward way that requires no exercise of imagination to be understood by the relevant consumers.

For instance, the word "apple" is descriptive when used in the trademark "CranApple" to designate a cranberry-apple juice. It directly describes ingredients of the juice. Other common types of descriptive trademarks identify where a product comes from, or the name of the person who makes or sells the product. Thus, the words "Apple Valley Juice" affixed to cider from the California town of Apple Valley is a descriptive trademark because it geographically describes where the cider comes from.

**Generic Names.** The fourth category is entitled to no protection at all. They are called generic names and they refer to a general name of the product, as opposed to plaintiff's brand for that product. Generic names are part of our common language that we need to identify all such similar products. A generic name is a name for the product on which it appears.

If the primary significance of the alleged mark to the relevant consumer is to name the type of product rather than the manufacturer, the term is a generic name and cannot be a valid trademark. If the majority of relevant consumers would understand the term to name the type of product rather than the manufacturer, the

1  primary significance of the term is generic and not entitled to protection as a
2  trademark.

3    Clearly, the word apple can be used as a generic name and not be entitled to
4  any trademark protection.  This occurs when the word is used to identify the fruit
5  from any apple tree.

6    The computer maker who uses the word "apple" as a trademark to identify its
7  personal computer, or the vitamin maker who uses that word as a trademark on
8  vitamins, has no claim for trademark infringement against the grocer who used that
9  same word to indicate the fruit sold in a store.  As used by the grocer, the word is
10  generic and does not indicate any particular source of the product.  As applied to
11  the fruit, "apple" is simply a commonly used name for what is being sold.

12  **Mark Distinctiveness and Validity**

13    If you decide that Glidewell's "BruxZir" mark is arbitrary or suggestive, it is
14  considered to be inherently distinctive.  An inherently distinctive trademark is valid
15  and protectable.  Where the PTO issues a registration without requiring proof of
16  secondary meaning, the presumption is that the mark is inherently distinctive.
17  However, this presumption created by Glidewell's registration can be overcome by
18  sufficient evidence to the contrary.  Specifically, if Keating proves by a
19  preponderance of the evidence that Glidewell's registered BruxZir mark is generic
20  or descriptive, then Glidewell's registration no longer creates a presumption that the
21  mark is inherently distinctive.

22    If you determine that Glidewell's BruxZir trademark is or has become
23  generic, it cannot be distinctive and therefore the mark is not valid or protectable.
24  The beginning date for the determination of genericness is the date on which
25  Keating entered the market by using its KDZ Bruxer mark on all-zirconia crowns
26  and bridges.  If you determine that Glidewell's registered BruxZir trademark was
27  not generic on that beginning date, you may still determine that the registered
28  trademark became generic after that date due to the term becoming generic for the

category of goods (all-zirconia crowns and bridges) in the minds of the majority of the relevant consumers and/or due to abandonment of the mark due to Glidewell's failure to properly police the use of its mark.  If the mark is or has become generic, you must render a verdict for Keating on the charge of infringement in Instruction 30.

If you decide that Glidewell's "BruxZir" trademark is descriptive, you will not know if the trademark is valid or invalid until you consider if it has gained distinctiveness by the acquisition of secondary meaning, which I explain in Instruction 33.

**Source:**

Ninth Circuit Model Jury Instructions Civil, No. 15.9; *Zobmondo Enter., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113-14 (9th Cir. 2010); *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 760 (9th Cir. 2006); 15 U.S.C. § 1064(3); 15 U.S.C. § 1127; *Yellow Cab Co. of Sacramento v. Yellow Cab Co. of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005); *Maljack Prods. Inc. v. Goodtimes Home Video Corp.*, 81 F.3d 881, 887 (9th Cir. 1996); *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 903 (9th Cir.2002) ("Some trademarks enter our public discourse and become an integral part of our vocabulary."); 2 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 12:1 (2007).

# COURT'S INSTRUCTION NUMBER 33

If you determined in Instruction 31 that the BruxZir mark is descriptive, you must consider the recognition that the mark has among consumers in order to determine whether it is valid and protectable even though it is descriptive.  This market recognition is called the trademark's "secondary meaning."

A word acquires a secondary meaning when it has been used in such a way that its primary significance in the minds of consumers is not the product itself, but the identification of the product with a single source, regardless of whether consumers know who or what that source is.  You must find that the preponderance of the evidence shows that a significant number of the relevant consumers associate BruxZir with a single source, in order to find that it has acquired secondary meaning.

When you are determining whether BruxZir has acquired a secondary meaning, consider the following factors:

1.      Consumer Perception.  Whether the people who purchase the product that bears the BruxZir mark associate the trademark with a single source;

2.      Advertisement.  To what degree and in what manner Glidewell may have advertised under the claimed trademark;

3.      Demonstrated Utility.  Whether Glidewell successfully used its BruxZir mark to increase the sales of its product;

4.      Extent of Use.  The length of time and manner in which Glidewell used the BruxZir mark;

5.      Exclusivity.  Whether Glidewell's use of the  BruxZir mark was exclusive;

6.      Copying.  Whether Keating intentionally copied Glidewell's BruxZir mark; and

/ / /

7.      Actual Confusion.  Whether Keating's use of the KDZ Bruxer mark has led to actual confusion among a appreciable number of relevant consumers as to the source, sponsorship, affiliation, or approval of Keating's goods.

The presence or absence of any particular factor should not necessarily resolve whether the BruxZir mark has acquired secondary meaning.

Descriptive marks are protectable only to the extent you find they acquired distinctiveness through secondary meaning by the relevant consumers coming to associate the mark with a particular source, even if the source is generally unknown.  Descriptive marks are entitled to protection only as broad as the secondary meaning they have acquired, if any.  If they have acquired no secondary meaning, they are entitled to no protection and cannot be considered a valid mark.

The mere facts that (a) Glidewell is using the "BruxZir" mark on all-zirconia crowns and bridges, (b) Glidewell began using the "BruxZir" mark on all-zirconia crowns and bridges before Keating began using its "KDZ Bruxer" mark on such products, and (c) Glidewell received a registration in "BruxZir" for use with all-zirconia crowns, does not mean, or create a presumption, that the trademark has acquired secondary meaning in the minds of the relevant consumers.

**Source:**

Ninth Circuit Model Jury Instructions Civil, No. 15.10; *Americana Trading Inc. v. Russ Berrie & Co.*, 966 F.2d 1284, 1287 (9th Cir. 1992); *see also Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 876 (9th Cir.1999); *Conversive, Inc. v. Conversagent, Inc.*, 433 F. Supp. 2d 1079, 1088 (C.D. Cal. 2006); *Zobmondo Enter., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113-14, fn. 7 (9th Cir. 2010).

### COURT'S INSTRUCTION NUMBER 34

You must consider whether Keating's use of the KDZ Bruxer mark in connection with its zirconia crowns and bridges is likely to cause confusion among a appreciable number of relevant consumers about the source, sponsorship, affiliation, or approval of Glidewell or Keating's goods.

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

1. Strength or Weakness of Glidewell's Mark. The more that consumers in the relevant market recognize Glidewell's BruxZir trademark as an indication that products sold under the BruxZir mark originate from Glidewell or a particular source, the more likely it is that consumers would be confused about the source of Keating's goods if Keating uses a similar mark.

2. Relatedness or Proximity of the Products. If Keating and Glidewell use their trademarks on the same, related, or complementary kinds of goods there may be a greater likelihood of confusion about the source of the goods than otherwise.

3. Similarity of Glidewell's and Keating's Marks. If the overall impression created by Keating's KDZ Bruxer trademark in the marketplace is similar to that created by Glidewell's BruxZir trademark in appearance, sound, or meaning, there is a greater chance of likelihood of confusion. Similarities in appearance, sound or meaning weigh more heavily than differences in finding the marks are similar.

4.   Actual Confusion.  If use by Keating of the KDZ Bruxer mark has led to instances of actual confusion, this strongly suggests a likelihood of confusion.  However actual confusion is not required for a finding of likelihood of confusion.  Even if actual confusion did not occur, Keating's use of the trademark may still be likely to cause confusion.  As you consider whether the trademark used by Keating creates for consumers a likelihood of confusion with Glidewell's trademark, you should weigh any instances of actual confusion against the opportunities for such confusion.  If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion.  If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

5.   Keating's Intent.  Knowing use by Keating of Glidewell's BruxZir mark to identify similar goods may strongly show an intent to derive benefit from the reputation of Glidewell's mark, suggesting an intent to cause a likelihood of confusion.  On the other hand, even in the absence of proof that Keating acted knowingly, the use of Glidewell's BruxZir mark to identify similar goods may indicate a likelihood of confusion.

6.   Marketing/Advertising Channels.  If Glidewell's and Keating's goods are likely to be sold through the same or similar outlets, or advertised in the same or similar media, this may increase the likelihood of confusion.

7.   Type of Goods and Consumer's Degree of Care.  The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent

/ / /

purchaser exercising ordinary caution may be.  They may be less likely to be confused by similarities in Glidewell's and Keating's trademarks.

**Source:**

Ninth Circuit Model Jury Instructions Civil, No. 15.16; *Official Airlines Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993); *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F .2d 149, 161 (9th Cir. 1963) ("In determining whether there is a likelihood of confusion we must remember that the members of the purchasing public have only general impressions which must guide them in the selection of products."); *Sicilia Di R. Biebow & Co. v. Cox*, 732 F.2d 417, 433 (5th Cir. 1984) ("The inability [of consumers] to compare the products side by side and observe the precise differences in appearance may increase the likelihood of confusion. When making a decision to purchase the consumer must rely on memory rather than a visual comparison."); *KOS Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 716 n.13 (3d Cir. 2004) ("medical expertise is not enough, in and of itself, to lessen the likelihood of confusion in prescription drug cases.").

**COURT'S INSTRUCTION NUMBER 39**

The owner of a trademark cannot exclude others from making a "fair use" of that trademark.  A defendant makes fair use of a mark when the defendant uses it as other than a trademark, to accurately describe the defendant's own product.

Keating contends that it fairly used, and continues to use, the term "Bruxer" (a phonetic equivalent to Glidewell's registered trademark) to describe Keating's all-zirconia crowns and bridges.  Keating has the burden of proving its "fair use" of the term "Bruxer" by a preponderance of the evidence.

Keating makes fair use of the term "Bruxer" when it:

> (1)  used the term other than as a trademark;

> (2)  used the term fairly and in good faith; and

> (3)  used the term only to describe Keating's goods as those of Keating, and not at all to describe Glidewell's products.

**Source:**

Ninth Circuit Model Jury Instructions Civil, No. 15.22.

## COURT'S INSTRUCTION NUMBER 41

Keating also contends that Glidewell violated California's Unfair Competition Law, which prohibits business practices that are unlawful, fraudulent or unfair.  For the purposes of the Unfair Competition Law, an "unlawful business act or practice" may include any business practice that violates state or federal law. For the purposes of the Unfair Competition Law, a "fraudulent business act or practice" means any conduct that is likely to confuse or deceive members of the public.  For the purposes of the Unfair Competition Law, an "unfair business act or practice" means conduct that threatens a violation of antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of law, or otherwise significantly threatens or harms competition.  A practice may be considered "unfair" even if it is not "unlawful" or "fraudulent" and vice versa.

Therefore, you should find that Glidewell violated the Unfair Competition Law if Keating proves by a preponderance of the evidence that Glidewell committed business practices that are unlawful, fraudulent or unfair, including, but not limited to, misuse of trademark.

1

**Source:**

California Business and Profession Code § 17200; *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal.4th 163, 180 (1992); *Comm. on Children's Television v. Gen. Foods Corp.*, 35 Cal.3d 197, 211 (1983); William L. Stern, Bus. & Prof. C. § 17200 Practice, §§ 3:!2-3:13 (2010) (paraphrased).

**COURT'S INSTRUCTION NUMBER 42**

Misuse of the trademark by Glidewell serves an independent reason for why Keating did not infringe Glidewell's trademark.  If you find that Glidewell misused its BruxZir mark, then Glidewell may not assert a trademark infringement claim against Keating based on Glidewell's BruxZir mark.  On Keating's claim that Glidewell misused its BruxZir trademark, Keating has the burden of proving each of the following two elements by a preponderance of the evidence:

    (1)    Glidewell incorrectly asserted its rights to its "BruxZir" mark against Keating; and

    (2)    with an improper purpose.

If you find that both of the elements on which Keating has the burden of proof have been proved, your verdict should be for Keating.  If, on the other hand, Keating has not proven either of these elements, your verdict on the trademark misuse claim should be for Glidewell.

**Source:**

*In re Napster*, 191 F. Supp. 2d 1087, 1105 (N.D. Cal. 2002).

## COURT'S INSTRUCTION NUMBER 43

For the purposes of these Instructions, the phrase "relevant consumers" means and refers to dentists.

[While this instruction is listed as number 43, if the Court agrees to include this instruction, Keating proposes it be inserted after instruction number 3, which is the first time the jury instructions used the phrase "relevant consumers". As an alternative, Keating proposes the parenthetical "(dentists)" be inserted immediately following all occurrences of the phrase "relevant consumers" in these Instructions.]

**Source:**

*Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1214 (9th Cir. 2012).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated: February 19, 2013          By: /s/ David G. Jankowski
                                      Lynda J. Zadra-Symes
                                      Jeffrey L. Van Hoosear
                                      David G. Jankowski

                                  ENTERPRISE COUNSEL GROUP ALC
                                      David A. Robinson
                                      James S. Azadian

                                  Attorneys for Defendant and Counter-Plaintiff
                                  KEATING DENTAL ARTS, INC.