SNELL & WILMER L.L.P.
Philip J. Graves (SBN 153441)
pgraves@swlaw.com
Greer N. Shaw (SBN 197960)
gshaw@swlaw.com
Deborah S. Mallgrave (SBN 198603)
dmallgrave@swlaw.com
350 South Grand Avenue, Suite 2600
Two California Plaza
Los Angeles, California  90071
Telephone: (213) 929-2500
Facsimile:  (213) 929-2525

Attorneys for Plaintiff
James R. Glidewell Dental Ceramics, Inc.
d/b/a Glidewell Laboratories

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| JAMES R. GLIDEWELL DENTAL CERAMICS, INC. dba GLIDEWELL LABORATORIES, a California corporation,<br><br>                    Plaintiff,<br><br>vs.<br><br>KEATING DENTAL ARTS, INC., a California corporation,<br><br>                    Defendant.<br><br>AND RELATED COUNTERCLAIMS. | Case No. SACV11-01309 DOC (ANx)<br>Hon. David O. Carter, Ctrm. 9D<br><br>**TRIAL BRIEF OF PLAINTIFF JAMES R. GLIDEWELL DENTAL CERAMICS, INC.**<br><br><br><br><br><br>Pre-Trial Conf.:     February 26, 2013<br>Jury Trial:            February 26, 2013 |

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   STATEMENT OF FACTS ................................................................. 2

III.  ARGUMENT ..................................................................................... 4

    A.    Keating Infringed Glidewell's Registered BruxZir Mark ................... 4

        1.    Glidewell Owns the BruxZir Trademark Registration .............. 4

        2.    Glidewell's BruxZir Mark is Valid ........................................ 4

            a.    The BruxZir Mark Is Presumptively Inherently Distinctive ...................................................................... 4

            b.    The BruxZir Mark Is Not Generic ................................. 5

                (i)    The BruxZir Mark Identifies a Source, Not a Genus of Products ................................... 5

                (ii)   Keating's "Phonetic Equivalence" Argument is Inapposite ................................................... 8

            c.    The BruxZir Mark is Suggestive and Therefore Inherently Distinctive .............................................. 8

            d.    Even if Descriptive, the BruxZir Mark Is Distinctive Because It Has Attained Secondary Meaning ...................................................................... 10

        3.    A Likelihood of Confusion Exists Between Glidewell's BruxZir Mark and Keating's Use of KDZ Bruxer ................... 11

            a.    Strength of the BruxZir Mark ......................................... 12

            b.    Proximity of Glidewell's and Keating's Goods ............. 14

            c.    Similarity of the Marks .................................................. 14

            d.    Evidence of Actual Confusion ....................................... 16

            e.    Marketing Channels ....................................................... 16

            f.    Type of Goods and Degree of Care ................................ 17

            g.    Keating's Intent in Selecting the Mark .......................... 17

            h.    Conclusion: Confusion is Likely .................................... 19

    B.    Keating's Use of KDZ Bruxer is not Protected as Fair Use .............. 19

    C.    Keating's Claim for Unfair Competition Fails for Lack of Standing and Evidentiary Support ................................................. 20

    D.    Keating Fails to State a Legally Cognizable Claim for Misuse ........ 21

    E.    Keating's Estoppel Defense Lacks Evidentiary Support ................... 23

    F.    Glidewell is Entitled to Damages, a Permanent Injunction, and Attorneys' Fees ....................................................................... 23

IV.  CONCLUSION ............................................................................ 24

GLIDEWELL'S TRIAL BRIEF
CASE NO. SACV11-01309 DOC (ANx)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Alfacell Corp. v. Anticancer Inc.*,
    71 U.S.P.Q.2d 1301 (T.T.A.B. 2004) ................................................................. 17

*Alphaville Design, Inc. v. Knoll, Inc.*
    627 F. Supp. 2d 1121 (N.D. Cal. 2009) .............................................................. 10

*AMF Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979) ....................................... 11, 12, 15, 17, 18

*Brookfield Comms., Inc. v. West Coast Entertainment Corp.*,
    174 F.3d 1036 (9th Cir. 1999) .............................................. 4, 10, 24

*Brother Records, Inc. v. Jardine*,
    318 F.3d 900 (9th Cir. 2003) .............................................................. 19

*Century 21 Real Estate Corp. v. Sandlin*,
    846 F.2d 1175 (9th Cir. 1988) ...................................................... 13, 17

*Citizens Fin. Group, Inc. v. Citizens Nat. Bank of Evans City*,
    383 F.3d 110 (3d Cir. 2004) .............................................................. 22

*Columbia Pictures Indus., Inc. v. Krypton Broadcasting of Birmingham, Inc.*,
    259 F.3d 1186 (9th Cir. 2001) .......................................................... 19

*Conversive, Inc. v. Conversagent, Inc.*,
    433 F. Supp.2d 1079 (C.D. Cal. 2006) ......................................... 14, 18

*Copelands' Enterprises, Inc. v. CNV, Inc.*,
    945 F.2d 1563 (Fed. Cir. 1991) ......................................................... 23

*Dreamwerks Prod. Grp., Inc. v. SKG Studio*,
    142 F.3d 1127 (9th Cir.1998) ............................................................ 12

*E. & J. Gallo Winery v. Consorzio del Gallo Nero*,
    782 F. Supp. 457 (N.D. Cal. 1991) .................................................... 12

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
    967 F.2d 1280 (9th Cir. 1992) ...................................................... 12, 18

*Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*,
    198 F.3d 1143 (9th Cir. 1999) ........................................................... 11

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Fleischmann Distilling Corp. v. Maier Brewing Co.*,
   314 F.2d 149 (9th Cir. 1963) .......................................................... 15, 16

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
   618 F.3d 1025 (9th Cir. 2010) ....................................................... 19, 20

*GoTo.com, Inc. v. Walt Disney Co.*,
   202 F.3d 1199 (9th Cir. 2000) ............................................................. 12

*Juno Online Services v. Juno Lighting, Inc.*,
   979 F.Supp. 684 (N.D. Ill. 1997)................................................... 21, 22

*Kendall-Jackson Winery, Ltd. v. E.&J. Gallo Winery*,
   150 F.3d 1042 n.8 (9th Cir. 1998) .......................................................... 9

*KOS Pharmaceuticals, Inc. v. Andrx Corp.*,
   369 F.3d 700 (3d Cir. 2004) ................................................................ 17

*KP Permanent Make-Up., Inc. v. Lasting Impression I, Inc.*,
   408 F.3d 596, 604 (9th Cir. 2005) .......................................................... 6

*Lahoti v. Vericheck, Inc.*,
   586 F.3d 1190 (9th Cir. 2009) ............................................................... 5

*Lahoti v. Vericheck, Inc.*,
   636 F.3d 501 (9th Cir. 2011) ......................................................... 13, 14

*Lindy Pen Co. v. Bic Pen Corp.*,
   982 F.2d 1400 (9th Cir. 1993) ............................................................. 24

*Lyng v. Payne*,
   476 U.S. 926 (1986)............................................................................. 23

*Maljack Prods. Inc. v. GoodTimes Home Video Corp.*,
   81 F.3d 881 (9th Cir. 1996) ............................................................. 8, 10

*Manistee Town Ctr. v. City of Glendale*
   227 F.3d 1090 (9th Cir. 2000) ............................................................. 21

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH*,
   & Go., 571 F.3d 873 (9th Cir. 2009) .................................................... 24

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*,
   164 F.3d 736 (2d Cir. 1998) .................................................................. 6

*Official Airline Guides, Inc. v. Goss*,
   6 F.3d 1385 (9th Cir.1993) .................................................................. 15

**TABLE OF AUTHORITIES**
(continued)

Page

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*,
    469 U.S. 189 (1985)............................................................................5

*Perfumebay.com Inc. v. Ebay, Inc.*,
    506 F.3d 1165 (9th Cir. 2007) ........................................................15

*Playboy Enterprises, Inc. v. Netscape Communications Corp.*,
    354 F.3d 1020 (9th Cir.2004) ..........................................................12

*Pom Wonderful LLC v. Welch Foods, Inc.*,
    737 F. Supp. 2d 1105 (C.D. Cal. 2010) ...........................................22

*Quiksilver, Inc. v. Kymsta Corp.*,
    466 F.3d 749 (9th Cir. 2006) ...........................................................10

*Rearden LLC v. Rearden Commerce, Inc.*,
    683 F.3d 1190 (9th Cir. 2012) ...................................................12, 14

*Retail Servs., Inc. v. Freebies*,
    Publ'g, 364 F.3d 535 (4th Cir. 2004) ................................................5

*Rubin v. Green*,
    4 Cal. 4th 1187 (1993) .....................................................................21

*Rudolph Int'l v. Realys, Inc.*,
    482 F.3d 1195 (9th Cir. 2007) ...........................................................9

*Schering Corp. v. Alza Corp.*,
    207 U.S.P.Q. 504 (T.T.A.B. 1980)...................................................17

*Schwarzkopf v. John H. Breck, Inc.*,
    340 F.2d 978 (C.C.P.A. 1965) .........................................................20

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization*,
    59 F.3d 902 (9th Cir. 1995) ...............................................................9

*Sicilia Di R. Biebow & Co. v. Cox*,
    732 F.2d 417 (5th Cir. 1984) ...........................................................16

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
    739 F.2d 1415 (9th Cir. 1984) .........................................................19

*Sleeper Lounge Co. v. Bell Mfg. Co.*,
    253 F.2d 720 n.1 (9th Cir. 1958) .....................................................20

*Thane Int'l., Inc. v. Trek Bicycle Corp.*,
    305 F.3d 894 (9th Cir.2002) ............................................................16

**TABLE OF AUTHORITIES**

(continued)

**Page**

*UGG Holdings, Inc. v. Severn,,*
  2005 U.S. Dist. LEXIS 45783  (C.D. Cal. Feb. 23, 2005) ............................ 12, 18

*U-Haul Int'l, Inc. v. Jartran, Inc.,*
  522 F. Supp. 1238(D. Ariz. 1981) ........................................................ 22

*UMG Recordings, Inc. v. Mattel, Inc.,*
  100 U.S.P.Q.2d 1868, 2011 WL 5014005 (T.T.A.B. 2011) ............................... 15

*United States v. Georgia-Pacific Co.,*
  421 F.2d 92 (9th Cir. 1970) ............................................................... 23

*Weinberger v. Romero-Barcelo,*
  456 U.S. 305 (1982) ....................................................................... 24

*Wella Corp. v. Cal. Concept Corp.,*
  558 F.2d 1019 (C.C.P.A. 1977) ............................................................ 15

*Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.,*
  419 F.3d 925 (9th Cir. 2005) ............................................................ 4, 6

*Zobmondo Enter., LLC v. Falls Media, LLC,*
  602 F.3d 1108 (9th Cir. 2010) ........................................................ 5, 9, 10

**Federal Statutes**

15 U.S.C. § 1052(f) .......................................................................... 10

15 U.S.C. § 1055 ............................................................................. 8

15 U.S.C. § 1115(b)(4) ...................................................................... 19

15 U.S.C. § 1117(a) ...................................................................... 24, 25

15 U.S.C. § 1127 ............................................................................. 8

**State Statutes**

Cal. Bus. & Prof. Code § 17200 .............................................................. 4

Cal. Bus. & Prof. Code § 17204 ............................................................. 21

Cal. Civ. Code § 47(b) ..................................................................... 21

**Other Authorities**

2 J. Thomas McCarthy, *McCarthy on Trademarks*
  *and Unfair Competition* § 11:72 ........................................................... 9

2 J. Thomas McCarthy, *McCarthy on Trademarks*
  *and Unfair Competition* § 12:17.50 ........................................................ 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES
### (continued)

**Page**

2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 15:8 ............................................................ 8, 10

2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 18:45 ................................................................ 8

2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 18:45.50 ........................................................... 8

6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* (4th ed. 2010) § 31:44 .............................................. 22

# I.

## INTRODUCTION

The principal disputed issues in this case are:  (1) does Glidewell Dental Ceramics, Inc. dba Glidewell Laboratories ("Glidewell") have a protectable trademark right in the BruxZir mark; and (2) does Keating Dental Arts, Inc.'s ("Keating's") use of the name KDZ Bruxer infringe that right?  The evidence will demonstrate the answer to both questions is yes.

For the validity of Glidewell's registered BruxZir trademark, the relevant question is whether "BruxZir" is (i) suggestive (in which case the mark is inherently distinctive and therefore valid), (ii) descriptive (in which case the mark is valid if it has secondary meaning, but not otherwise), or (iii) generic (in which case the mark is not valid).  As a starting point, the BruxZir mark is registered, and the registration was granted without requiring a showing of secondary meaning.  As a result, a strong presumption exists that the BruxZir mark is at least suggestive, and the mark enjoys a presumption of validity.  With this presumption, the burden shifts to Keating to prove the mark is invalid.  The evidence, however, does not support a finding of invalidity; to the contrary, the evidence demonstrates that the mark has a strong secondary meaning to consumers in the relevant market (*e.g.*, dentists).  At trial, the evidence will show that, as of the date Keating entered the market using KDZ Bruxer, by no later than April 2011, BruxZir was understood by dentists to refer to a brand of all zirconia crowns.  This evidence will come from the testimony of various dentists, Glidewell's employees, and even Keating's own witnesses who admit that BruxZir is Glidewell's name for a monolithic zirconia crown and the name is not used in any other way in the industry.  That BruxZir may be the phonetic equivalent of "bruxer" is beside the point.  While bruxer is known to mean a person with bruxism (the condition of grinding one's teeth), BruxZir refers to a product—a dental restoration.

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

16595148.3

As to the question of infringement, the relevant evidence includes proof of Glidewell's significant marketing efforts, its successful sales numbers, its brand recognition with dentists, the competitive nature of the goods offered under the BruxZir and KDZ Bruxer marks, the similarity of Glidewell's BruxZir mark and Keating's KDZ Bruxer mark, the numerous instances of actual confusion that have already been discovered, the overlapping marketing channels through which the branded products are marketed, evidence of Keating's intent to free-ride on the goodwill of the BruxZir brand, and the degree of care used by dentists in selecting brands of solid zirconia crown.  Altogether, the evidence reveals that Keating's use of KDZ Bruxer infringes Glidewell's BruxZir trademark.

In addition, Keating asserts counterclaims and defenses for unfair competition, misuse, fair use and estoppel.  Evidence related to these claims should be excluded because the claims are not legally or factually cognizable; in any event, Keating lacks any support for these allegations.

Finally, as a result of Keating's infringement, Glidewell is entitled to monetary damages, injunctive relief, and attorneys' fees (for willful infringement).

## II.

## STATEMENT OF FACTS

Glidewell is a leading provider of dental restoration products to dentists. Among the products that Glidewell sells are dental crowns and bridges.  A crown is a type of dental restoration product that completely caps a tooth.  It is typically bonded to the tooth using dental cement or resin.

In the past, crowns were principally fashioned either from gold (which has favorable tensile characteristics but is considered aesthetically unappealing by many people) or from porcelain veneers fused to a metal casting (which is aesthetically appealing but tends to crack when subjected to heavy pressure or grinding).  More recently, dental laboratories began to fashion crowns made of a veneer fused or adhered to a hard ceramic such as zirconia.  However, these crowns

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

16595148.3

1    too tended to crack when subjected to heavy grinding.

2    Beginning in around 2007, Glidewell began developing a solid zirconia

3    crown. The advantages of this new monolithic (or "full contour") zirconia crown

4    were that it was extremely hard—sufficiently hard to be used in applications

5    requiring a material with high tensile and compressive strength, including treating

6    patients with "bruxism," a parafunctional activity in which a person repeatedly and

7    habitually grinds his teeth—and that it could be milled from a block of zirconia

8    based on a digital representation of the patient's mouth. The disadvantage was that

9    zirconia is an unattractive material, due to its extreme whiteness and lack of

10   translucency. Ultimately, Glidewell largely overcame the aesthetic challenges of

11   the material, devising a process for fabricating a full contour zirconia crown that

12   was sufficiently appealing that it could be used in a variety of applications.

13   In June 2009, Glidewell conceived the name for its new line of solid zirconia

14   dental restoration products: BruxZir. The name was chosen in large part because it

15   suggested the primary characteristics of the product: that it was sufficiently strong

16   and durable to be used in a variety of applications, including treating patients with

17   bruxism ("Brux"), and that the material from which the crown was fashioned is

18   zirconia ("Zir"). The product line was launched under the BruxZir mark in June

19   2009. Since its introduction in 2009, the BruxZir line of restoration products

20   (primarily dental crowns and bridges) has been phenomenally popular, generating

21   high revenues by anyone's count from July 2009 through the present. Glidewell

22   has promoted the product line heavily, investing significant sums in advertising its

23   products under the mark from June 2009 to the present.

24   Glidewell applied to register the BruxZir mark on June 7, 2009 for use in

25   connection with dental bridges, dental caps, dental crowns, dental inlays, dental

26   onlays, and dental prostheses. The mark was registered on the Principal Register on

27   January 19, 2010, as Reg. No. 3,739,663.

28   In April 2011, Keating began to offer competing full contour zirconia dental

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

GLIDEWELL'S TRIAL BRIEF
CASE NO. SACV11-01309 DOC (ANx)

16595148.3

crowns and bridges under the brand "KDZ Bruxer."  Keating's product competes directly with Glidewell's BruxZir product—the products are offered to the same universe of consumers (*e.g.*, dentists) through the same marketing channels (*e.g.*, Internet, direct mail, ads in dental industry journals) and at similar price points ($99 v. $139).  Not surprisingly, in a sampling of 22 dentists identified by Keating as KDZ Bruxer customers, nine—*i.e.*, 41%—were former Glidewell BruxZir customers.

On August 30, 2011, Glidewell filed suit against Keating alleging infringement of its registered BruxZir mark (Dkt. #1).[1]

### III.

### ARGUMENT

**A.   Keating Infringed Glidewell's Registered BruxZir Mark**

To prevail on its claim for infringement, Glidewell must show (1) that it owns a valid, protectable mark; and (2) likelihood of confusion arising from defendant's use of the mark.  *Brookfield Comms., Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1047, 1053 (9th Cir. 1999).

#### 1.   Glidewell Owns the BruxZir Trademark Registration

Glidewell owns the trademark registration for BruxZir on the class of goods including dental crowns and bridges.  This evidence of registration is sufficient to establish ownership and shifts the burden of proof (not just production) on the issue of validity to Keating, by a preponderance of the evidence.  *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005).

#### 2.   Glidewell's BruxZir Mark is Valid

For the reasons set forth below, Keating cannot prove that the BruZir mark is generic and or descriptive without secondary meaning, and therefore invalid.

---

[1] Glidewell also filed suit for unfair competition under section 43(a) of the Lanham Act and unfair competition under California Business & Professions Code section 17200, but in an effort to streamline its case, Glidewell is no longer pursuing those claims against Keating.

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

Snell & Wilmer

L.L.P.

LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

### a.   The BruxZir Mark Is Presumptively Inherently Distinctive

First, "'the fact that a mark is registered is *strong evidence* that the mark satisfies the statutory requirements for distinctiveness necessary for trademark protection.'"  *Zobmondo Enter., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1121 (9th Cir. 2010) (quoting *Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 542 (4th Cir. 2004) (emphasis added)).  Accordingly, a federal registration entitles Glidewell to a "*strong presumption* that the mark is a protectable mark." *Zobmondo Enter.*, 602 F.3d at 1113 (emphasis added).  Further, "[w]here the PTO issues a registration without requiring proof of secondary meaning, the presumption is that the mark is inherently distinctive." *Id.* at 1113-14.  As the Ninth Circuit has explained, "'[d]eference to the PTO's classification decision is sensible because the PTO has special expertise that we lack on this fact-intensive issue.'"  *Id.* at 1121 (quoting *Lahoti v. Vericheck, Inc.*, 586 F.3d 1190, 1199 (9th Cir. 2009)).

Here, the evidence will show that the BruxZir mark is a registered mark.  The mark was registered on the Principal Register on January 19, 2010, as Reg. No. 3,739,663.  The PTO issued the mark without requiring any showing of secondary meaning.  Thus, under controlling Ninth Circuit law, "strong evidence" exists that the BruxZir mark is inherently distinctive for its registered class (Dental bridges; Dental caps; Dental crowns; Dental inlays; Dental onlays; Dental prostheses)—*i.e.*, it is at least suggestive—and the mark enjoys a "strong presumption" of validity.

### b.   The BruxZir Mark Is Not Generic

Second, the evidence shows that the BruxZir mark is <u>not</u> generic.

### (i)   The BruxZir Mark Identifies a Source, Not a Genus of Products

"Marks that constitute a common descriptive name are referred to as generic. A generic term is one that refers to the genus of which the particular product is a species." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985). "'To determine whether a term has become generic, we look to whether consumers

1    understand the word to refer only to a particular producer's goods or whether the

2    consumer understands the word to refer to the goods themselves.'" *Yellow Cab Co.*

3    *of Sacramento v. Yellow Cab Co. of Elk Grove, Inc.*, 419 F.3d 925, 929 (9th Cir.

4    2005) (quoting *KP Permanent Make-Up., Inc. v. Lasting Impression I, Inc.*, 408

5    F.3d 596, 604 (9th Cir. 2005).  If a buyer understands the terms as being identified

6    with a particular producer's goods or services, it is not generic.  *Id.*

7         "The crucial date for the determination of genericness is the date on which

8    the alleged infringer entered the market with the disputed mark or term." *Yellow*

9    *Cab*, 419 F.3d at 928; *see also Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*,

10   164 F.3d 736, 744 (2d Cir. 1998) (holding that the relevant date for judging

11   genericness is the date upon which Perrier, the competitor, introduced its competing

12   product into the market); 2 J. Thomas McCarthy, *McCarthy on Trademarks and*

13   *Unfair Competition* § 12:17.50, pp. 12-61 (2012) ("The Second and Ninth Circuits

14   have held that the crucial date for the determination of genericness is the date on

15   which the alleged infringer entered the market with the disputed mark or term.").

16        Here, the evidence will show that Keating adopted and began using its KDZ

17   Bruxer name in approximately April 2011.  Keating admits this fact in its own

18   pleading (Dkt. #57-1 at 13:11-12).  While Keating has tried to run from this fact,

19   there is no evidence (except testimony from self-serving employees) to challenge

20   the company admission.  As it stands, Keating must show that, as of April 2011, the

21   relevant consumers (*e.g.*, dentists) understood the word BruxZir to refer to the

22   genus of products comprising zirconia dental restoration products, and that they did

23   *not* understand the BruxZir mark to refer to only a particular producer's goods.

24        The evidence will show that as of April 2011, the BruxZir name was not

25   generic, but was understood to refer to Glidewell's brand of all zirconia crowns.

26   For example, Glidewell's witnesses (including Glidewell's Director of Clinical

27   Education & Research, Dr. Michael DiTolla, and Jim Shuck, Glidewell's Vice

28   President of Sales and Marketing) will testify that the BruxZir name is not generic,

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

16595148.3

but is understood as a brand or trademark identifying a source of all zirconia crowns and bridges from a single source (Glidewell), and that the BruxZir name is not just another term for an all zirconia crown or bridge. Keating argues that Dr. DiTolla uses the term "BruxZir" as a noun in Glidewell's promotional videos, but Dr. DiTolla will testify that he is referring to BruxZir brand crowns in these videos, not crowns generally, and that he has "never used the term 'bruxer' to commonly refer to a crown."

Indeed, Keating's own witnesses will testify to industry recognition of BruxZir as referring to Glidewell's brand: Keating's General Manager (Robert Brandon) admits that BruxZir (a) was known to be "a specific trade name of a product" and (b) identified a product "made by Glidewell;" and Keating's founder and CEO (Shaun Keating) admits that BruxZir is "Glidewell's name for their monolithic crown" and that the word is not "used in any other way in the industry." Further, Keating has call notes with dentists in which Keating employees refer to BruxZir as Glidewell's "proprietary name" and a "trade name from another lab."

Glidewell's experts Dr. Ronald Goldstein and Dr. DiTolla will testify that dentists do not refer to solid zirconia crowns as "bruxers" or "bruxer crowns," and a third expert, Professor David Franklyn, will give his opinion that the BruxZir mark is not generic based his exhaustive trademark and Internet search efforts, his review of the documentary evidence (including trademark search reports commissioned by Keating's counsel), evidence supporting the fact that the BruxZir mark is suggestive, and his interviews of dentists and leading practitioners in the field.

Keating's argument that Glidewell's "authorized labs" program somehow reinforces that the BruxZir mark is not an indication of Glidewell as the source, but that BruxZir is a product also lacks legal and evidentiary support. The premise of this argument—that consumers must know the identity of the source of goods sold under a mark for the mark to be distinctive and nongeneric—is legally incorrect. It is enough that consumers associate the mark with a single, albeit anonymous,

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

16595148.3

source.  *See* 15 U.S.C. § 1127; *Maljack Prods. Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 887 (9th Cir. 1996); McCarthy § 15:8.

Further, "[w]here a registered mark … is … used legitimately by related companies, such use shall inure to the benefit of the registrant …, and such use shall not affect the validity of such mark or of its registration …."  15 U.S.C. § 1055.  "The term 'related company' means any person whose use of a mark is controlled by the owner of the mark with respect to the nature and quality of the goods or services on or in connection with which the mark is used."  15 U.S.C. § 1127.  "[P]roperly licensed use by licensees will serve to fortify the legal and commercial strength of the licensed mark."  McCarthy § 18:45.50.  "[T]here is no necessity for the name of the licensor to appear on licensed uses of a mark owned by the licensor.  That is, licensed uses may properly contain only the licensed mark and the name of the licensee."  McCarthy § 18:45.  Here, Glidewell permits the authorized labs to use the BruxZir mark and Glidewell exercises control over the nature and quality of crowns they sell under the BruxZir brand.  Contrary to Keating's assertions, there is no "naked licensing" here.  As a matter of law, the authorized labs' use of the mark "inure[s] to the benefit" of Glidewell, and it "shall not affect the validity of [the] mark or of its registration."  15 U.S.C. § 1055.

### (ii) Keating's "Phonetic Equivalence" Argument is Inapposite

Glidewell sells dental restoration products, not people who brux.  "Bruxer" may be a common term for people who suffer from bruxism, but Keating cannot establish that "bruxer" was a generic term for zirconia dental restorations as of April 2011 (or at any other time).  The evidence will show that between the various dictionaries submitted as exhibits between the parties, not one defines "bruxer" as a dental restoration.  Given the absence of evidence that "bruxer" means any type of dental restoration, and given that Glidewell indisputably does not sell bruxers (*i.e.*, people who brux), whether "BruxZir" and "bruxer" are phonetic equivalents is

1  irrelevant to validity.  Thus, the evidence does not support a finding that the

2  BruxZir mark is generic.

3          c.          **The BruxZir Mark is Suggestive and Therefore Inherently**

4                      **Distinctive**

5          A suggestive mark is one for which "'a consumer must use imagination or

6  any type of multistage reasoning to understand the mark's significance … the mark

7  does not *describe* the product's features, but *suggests* them.'"  *Zobmondo Enter.*,

8  602 F.3d at 1114 (quoting *Kendall-Jackson Winery, Ltd. v. E.&J. Gallo Winery*,

9  150 F.3d 1042, 1047 n.8 (9th Cir. 1998)).  "[A] mark can be suggestive and still

10  convey information about a product."  *Zobmondo Enter.*, 602 F.3d at 1119; *see,*

11  *e.g.*, 2 McCarthy § 11:72 (listing marks that have been found "suggestive,"

12  including "CITIBANK" for an urban bank, "CLASSIC COLA" for a soft drink,

13  "DIAL-A-MATTRESS" for mattress sales, and "FLORIDA TAN" for suntan

14  lotion).  Application of the two "tests" used in the Ninth Circuit to determine

15  whether a mark is suggestive or merely descriptive, the "imagination test" and the

16  "competitors' needs" test supports that the BruxZir mark is suggestive.

17          The imagination test asks whether "'imagination or a mental leap is required

18  in order to reach a conclusion as to the nature of the product being referenced.'"

19  *Zobmondo Enter.*, 602 F.3d at 1115 (quoting *Rudolph Int'l v. Realys, Inc.*, 482 F.3d

20  1195, 1198 (9th Cir. 2007)).  "[I]f the mental leap between the word and the

21  product's attribute is not almost instantaneous, this strongly indicates

22  suggestiveness, not direct descriptiveness."  *Self-Realization Fellowship Church v.*

23  *Ananda Church of Self-Realization*, 59 F.3d 902, 911 (9th Cir. 1995).

24          Here, the BruxZir mark does not contain the words "crown," "bridge,"

25  "caps," "prostheses," "restoration," or even "dental."  The mark is a combination of

26  "brux" and "zir"—"Brux" suggests to relevant consumers (*e.g.*, dentists) that

27  BruxZir brand products are strong and durable, and are suitable for use in dental

28  applications requiring superior strength and durability, such as for treating patients

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

16595148.3

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

with bruxism. "Zir" suggests that the products comprise zirconia, a hard and durable material successfully used in dental products. Thus, the BruxZir mark does not describe the product's features or nature, but merely suggests them. Moreover, a composite mark can be suggestive. *See Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999) (holding that "MovieBuff" was a suggestive mark because it required a mental leap from the mark to the product, computer software for researching movies through a database).

The second test for assessing suggestiveness, known as the "competitors' needs" test, "focusses on the extent to which a mark is actually needed by competitors to identify their goods or services." *Zobmondo Enter.*, 602 F.3d at 1117. The evidence will show that competitors do not need the name "BruxZir" to identify their goods and services, but can and do use other names to describe their all zirconia crowns. Consequently, the evidence supports a finding that the BruxZir mark is suggestive.

### d. Even if Descriptive, the BruxZir Mark Is Distinctive Because It Has Attained Secondary Meaning

"[A] merely descriptive mark can become protectable if it has acquired distinctiveness 'as used on or in connection with the applicant's goods in commerce.'" *Zobmondo Enter.*, 602 F.3d at 1113 (quoting 15 U.S.C. § 1052(f)). This acquired distinctiveness is referred to as "secondary meaning." *Id.* "Secondary meaning is used generally to indicate that a mark … 'has come through use to be uniquely associated with a specific source.'" *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 760 (9th Cir. 2006) (citation omitted). It is not required that consumers know the identity of the source; a single but anonymous source will suffice. *E.g.*, *Maljack Prods.*, 81 F.3d at 887; *Alphaville Design, Inc. v. Knoll, Inc.*, 627 F. Supp. 2d 1121, 1128 (N.D. Cal. 2009); 2 McCarthy § 15:8 (4th ed. 2012). Determining whether a descriptive mark has secondary meaning requires consideration of (1) whether actual purchasers of the product bearing the mark

16595148.3

associate the mark with the producer; (2) the degree and manner of advertising under the mark; (3) the length and manner of use of the mark; and (4) whether the use of the mark has been exclusive. *Id.* at 930.  Additional pertinent factors include the mark holder's amount of sales and number of customers, and intentional copying by the infringer.  *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999).  All support secondary meaning here.

First, the evidence will show that actual purchasers associate the BruxZir mark specifically with Glidewell.  Second, Glidewell extensively advertises and promotes the BruxZir mark, and has been doing so since its initial product launch in 2009.  Glidewell advertises the BruxZir mark in a wide variety of ways, including via the company's website (www.bruxzir.com) and blog, press releases, patient and doctor education brochures, videos, advertisements in dental publications, direct mailers, email blasts, and trade shows.  Glidewell's extensive promotion of the BruxZir brand products was very successful even as of April 2011, as evidenced through Glidewell's sales figures.  Third, Glidewell has consistently used the BruxZir mark for crowns and bridges for over three years, since the launch of the product line in 2009.  Fourth, the evidence shows that Glidewell has used the mark BruxZir exclusively, and has enforced its rights in the mark against infringers such as Keating.  In addition, Keating itself has intentionally copied the BruxZir mark in that Keating picked the KDZ Bruxer name while knowing of the existence and success of Glidewell's BruxZir mark.  The pertinent factors all support finding secondary meaning.

### 3. A Likelihood of Confusion Exists Between Glidewell's BruxZir Mark and Keating's Use of KDZ Bruxer

The Ninth Circuit applies eight factors, known as the *Sleekcraft* factors,  in determining whether a likelihood of confusion exists in a case for trademark infringement: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines (which is not relevant here since the companies' products already directly compete). *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012); *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979). These factors are applied in a flexible fashion, not as a rote checklist; in other words, "we do not count beans." *Dreamwerks Prod. Grp., Inc. v. SKG Studio,* 142 F.3d 1127, 1129 (9th Cir.1998). However, evidence of actual confusion, at least on the part of an appreciable portion of the actual consuming public, constitutes strong support for a finding of "likelihood of confusion." *See, e.g., Playboy Enterprises, Inc. v. Netscape Communications Corp.,* 354 F.3d 1020, 1026 (9th Cir.2004). The evidence will show that all seven of the applicable *Sleekcraft* factors weigh in Glidewell's favor.

### a.  <u>Strength of the BruxZir Mark</u>

The strength of a mark for the purpose of evaluating likelihood of confusion is evaluated in terms of its conceptual strength and its commercial strength. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000). A strong trademark is entitled to a greater degree of protection than a weak mark. *Id.*

For conceptual strength, the strength of a mark depends, at least in part, on where it falls on the spectrum of conceptual strength, the guideposts of which are fanciful (the strongest), arbitrary, suggestive, descriptive and generic (the weakest). *E. & J. Gallo Winery v. Gallo Cattle Co.,* 967 F.2d 1280, 1291 (9th Cir. 1992). Because Glidewell's BruxZir mark is registered, the "mark is 'presumed to be distinctive and should be afforded the utmost protection.'" *E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F. Supp. 457, 462 (N.D. Cal. 1991); *UGG Holdings, Inc. v. Severn*, 2005 U.S. Dist. LEXIS 45783 at *23 (C.D. Cal. Feb. 23, 2005). Further, as set forth above, the evidence at trial will show that Glidewell's BruxZir mark is at least suggestive, and would therefore be inherently distinctive even if it

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

lacked the benefit of federal registration.  Because the mark is inherently distinctive, this factor weighs in favor of finding that confusion is likely.

A mark is commercially strong when it is widely recognized by relevant consumers in a particular market. *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 508 (9th Cir. 2011).  Thus, a registrant's efforts to promote the mark in association with its goods or services can augment the strength of its mark as a source identifier. *Id.*; *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1179 (9th Cir. 1988) ("Marks may be strengthened by extensive advertising, length of time in business, public recognition, and uniqueness.").  As already stated, the evidence will show that Glidewell promotes its dental crowns and bridges under the BruxZir mark through a broad range of channels and has spent large sums of money to do so.  The evidence will also show that Glidewell's BruxZir branded products have received wide recognition and acclaim in the dental industry, through various articles, awards, and accolades.  The commercial strength of the BruxZir mark is also demonstrated by the volume of goods sold under the mark and testimony will show that BruxZir is the number one prescribed brand of full zirconia dental crowns in the country.

Glidewell's mark is also relatively unique in its field.  Keating attacks the commercial strength of Glidewell's BruxZir mark, contending that the mark is weak because "many" companies have used "Brux" and "Z" or "Zir" to refer to products for use by bruxers and products associated with zirconia, respectively.  Keating, however, lacks evidence of such widespread use, which does not in fact exist.  Any evidence that Keating will present, in the form of third party websites, is inadmissible (none of the websites are authenticated and all constitute inadmissible hearsay).  Further, even if this evidence is admissible, Keating offers no evidence regarding how these marks are promoted in the marketplace or that any of these marks have any commercial strength or impact at all; no evidence that any goods offered under these marks are promoted through any channels other than the

GLIDEWELL'S TRIAL BRIEF
CASE NO. SACV11-01309 DOC (ANx)

16595148.3

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1    Internet; and <u>no</u> evidence regarding how long any products have been promoted

2    under any of these marks.  In attempting to demonstrate that a mark has been

3    weakened by substantial third party use, it is not enough for the defendant to merely

4    present the allegedly crowding uses; he must present evidence that the uses have

5    impaired the strength of the plaintiff's mark.  *Lahoti*, 636 F.3d at 508-9.

6         Moreover, Keating fails to proffer evidence of a sufficient number of

7    "crowding" uses to undermine the strength of the BruxZir mark.  Of the 40

8    companies pointed to by Keating in its summary judgment papers, the testimony

9    will show that only two have marks that appear to be trademark uses directed to the

10   relevant market and Glidewell has already sent one a cease and desist letter.  In any

11   event, two uses in the relevant market, unsupported by any evidence of advertising,

12   sales or actual impairment of the commercial strength of the BruxZir mark, falls far

13   short of the showing required to justify a judgment on the basis of a "crowded

14   market." *E.g., Lahoti*, 636 F.3d at 508-09 (three "crowding" uses insufficient to

15   overcome commercial strength).  Accordingly, the evidence will show the BruxZir

16   mark is commercially strong.

**b.    Proximity of Glidewell's and Keating's Goods**

17

18        Directly competing goods are in the closest proximity under the likelihood of

19   confusion analysis." *Conversive, Inc. v. Conversagent, Inc.,* 433 F. Supp.2d 1079,

20   1091 (C.D. Cal. 2006).  If goods directly compete, "confusion will usually arise . . .

21   ." *Id.*  The evidence on this factor is not challenged—Keating admits that its dental

22   crowns and bridges directly compete with Glidewell's dental crowns and bridges.

23   Thus, this factor indicates that confusion is likely.  *Lahoti*, 636 F.3d at 508; *Century*

24   *21*, 846 F.2d at 1179; *Conversive,* 433 F. Supp.2d at 1091.

**c.    Similarity of the Marks**

25

26        To evaluate the similarity of the marks, courts look to the "sight, sound and

27   meaning" of the marks, and recognize that "any similarities weigh more heavily

28   than differences." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1211

GLIDEWELL'S TRIAL BRIEF
CASE NO. SACV11-01309 DOC (ANx)

16595148.3

1    (9th Cir. 2012).  When evaluating the similarities between marks, a lesser degree of

2    similarity is required when the goods are directly competitive.  *AMF, Inc. vs.*

3    *Sleekcraft Boats,* 599 F.2d 341, 350 (9th Cir. 1979); *Official Airline Guides, Inc. v.*

4    *Goss,* 6 F.3d 1385, 1392 (9th Cir.1993).  In addition, when a mark is strong, a

5    lesser degree of similarity will suffice to establish likely confusion.  *E.g.,*

6    *Perfumebay.com Inc. v. Ebay, Inc.*, 506 F.3d 1165, 1174 (9th Cir. 2007).

7         The evidence will show that the marks at issue here are quite similar—the

8    fonts are similar and the B of the "Bruxer" component of the mark is capitalized.

9    While Keating asserts that it uses a logo containing an oval that purportedly

10   differentiates its mark from the BruxZir mark, the fact is that Keating does not

11   consistently use its logo and even when it does, the oval fails to differentiate

12   Keating's brand from Glidewell's mark.  *Wella Corp. v. Cal. Concept Corp.*, 558

13   F.2d 1019, 1022-23 (C.C.P.A. 1977).  Keating has merely prefaced a root word

14   ("Bruxer") that is nearly identical to the entirety of Glidewell's mark ("BruxZir")

15   with a three-letter acronym ("KDZ") that does not on its face serve any source-

16   identifying function.  While Keating has apparently attempted to highlight the

17   "KDZ" portion of its mark in some of its advertising, the fact that KDZ is an

18   opaque acronym means that it cannot merely rely on the prefix to differentiate; in

19   any event, in the text of its advertisements the term is no more prominent than the

20   "Bruxer" root of its mark.  Indeed, if Keating's addition of "KDZ" to the root

21   "Bruxer" is likely to accomplish anything in this context, it is to suggest to dentists

22   some association or affiliation between Keating and Glidewell.  *UMG Recordings,*

23   *Inc. v. Mattel, Inc.*, 100 U.S.P.Q.2d 1868, 2011 WL 5014005 (T.T.A.B. 2011).

24        The likelihood that the similarities of the marks will confuse consumers is

25   heightened by the fact that buyers in the relevant market (*e.g.*, dentists) are not

26   likely to consider the marks side by side as a shopper would two competing brands

27   in a supermarket; instead, they are likely to consider the marks separately at

28   different points in time.  *See Fleischmann Distilling Corp. v. Maier Brewing Co.,*

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

16595148.3

314 F.2d 149, 161 (9th Cir. 1963) ("In determining whether there is a likelihood of confusion we must remember that the members of the purchasing public have only general impressions which must guide them in the selection of products."); *Sicilia Di R. Biebow & Co. v. Cox*, 732 F.2d 417, 433 (5th Cir. 1984) ("The inability [of consumers] to compare the products side by side and observe the precise differences in appearance may increase the likelihood of confusion.").

### d.   Evidence of Actual Confusion

"Evidence of actual confusion constitutes persuasive proof that future confusion is likely." *Thane Int'l., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 902 (9th Cir.2002). The evidence of actual confusion in this case is pervasive. For example: On April 2, 2012, Michelle Carlisle, an office manager from the dental office of Dr. Jade Le, DMD, called Nicole Fallon, a Glidewell Technical Advisor, and asked for a Glidewell discount because Dr. Le believed she had purchased a BruxZir zirconia crown. However, when Carlisle sent Fallon a fax of the invoice, it was an invoice from Keating showing Dr. Le's purchase of a KDZ Bruxer crown. Fallon then called Carlisle back and told her that she had sent a Keating invoice and that Keating does not make BruxZir zirconia crowns. Dr. Le then joined the conversation and said that she thought "BruxZir" and "Bruxer," from Keating, "were the same thing." When Fallon explained to Dr. Le that Glidewell is the originator of the BruxZir-branded crown, Dr. Le said that "that's pretty sneaky of them to advertise the almost identical product, with the name just spelled slightly different," or words to that effect. (*See* Trial Exhibits 556, 557.)

In addition, documentary evidence of actual confusion exists from Keating's own files in the form of prescription forms and lab notes. These documents will show numerous additional instances in which dentists ordered a "BruxZir" crown or some close variant thereof. (*See* Trial Exhibit 569.) These instances of actual confusion suggest that such confusion between the two brands will continue in the future.

Snell & Wilmer

L.L.P.

LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

Snell & Wilmer

L.L.P.

LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

e.      **Marketing Channels**

"Convergent marketing channels increase the likelihood of confusion." *Sleekcraft*, 599 F.2d at 353.  Here, Keating admits that the marketing channels used by Glidewell and Keating to promote their goods under their respective BruxZir and KDZ Bruxer marks overlap.  Indeed, they are nearly identical.  This strongly supports a finding that confusion is likely.  *Century 21*, 846 F.2d at 1179.

f.      **Type of Goods and Degree of Care**

Even sophisticated consumers, such as dentists, are not immune from mistaking one mark for another.  *Schering Corp. v. Alza Corp.*, 207 U.S.P.Q. 504 (T.T.A.B. 1980) (finding that while physicians and pharmacists are knowledgeable in their fields, they are not necessarily knowledgeable as to marks, thus not immune from mistaking one mark for another); *Alfacell Corp. v. Anticancer Inc.*, 71 U.S.P.Q.2d 1301 (T.T.A.B. 2004) ("[T]here is no reason to believe that medical expertise as to pharmaceuticals will ensure that there will be no likelihood of confusion as to source or affiliation."); *KOS Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 716 n.13, 717 (3d Cir. 2004).

The evidence will show that a dentist's selection of one full contour zirconia crown over another is not a decision that inherently requires a high degree of care. While there are aesthetic differences between different brands of full contour zirconia crown, the properties of these crowns are highly similar because all of these crowns are made of the same material—zirconia.  The price differential between Glidewell's BruxZir-brand crowns and Keating's KDZ Bruxer crowns ($99 v. $139) is not so great as to reward focused attention on the brand under which the crowns are marketed.  So, this factor too suggests that confusion is likely.

Further, even if there were evidence that a high degree of care were used by dentists in selecting a particular brand of monolithic zirconia crown, that would not be the end of the matter.  Where there is evidence that sophisticated consumers are actually confused (as there is here), the likelihood of confusion based on the degree

of care factor is enhanced. *Conversive*, 433 F.Supp.2d at 1093. Moreover, even where a high degree of care is exercised, initial interest confusion may still exist. *Id.* That is exactly the situation here.

### g. Keating's Intent in Selecting the Mark

Although proof of intent to deceive consumers is not necessary to establish trademark infringement, intent is relevant because, "[w]here an alleged infringer chooses a mark he knows to be similar to another, one can infer an intent to confuse." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1293 (9th Cir.1992) (*citing Sleekcraft*, 599 F.2d at 354). This rule also applies where the junior user continues to use a mark that it previously selected after having been informed of the senior mark. *UGG Holdings*, 2005 U.S. Dist. LEXIS 45783 at *27.

Here, the evidence will show that Keating was aware of Glidewell's BruxZir mark when it made the decision to begin selling competing products under the KDZ Bruxer mark. By the time Keating selected its KDZ Bruxer mark, Glidewell's BruxZir mark was already well known in the industry. Further, Keating performed tasks in connection with its brand selection process that would have led it to Glidewell's use of the BruxZir mark. Given that the BruxZir mark was registered on the Principal Register in January 2010, a trademark search report undoubtedly contained a reference to Glidewell's BruxZir mark. Moreover, given the extensive advertising that Glidewell had already conducted under its BruxZir mark, from 2009 through early 2011, there is overwhelming evidence that Keating was either already aware of Glidewell's BruxZir mark, or became aware of it through the brand selection process, prior to selecting its KDZ Bruxer brand.

Moreover, it is undisputed that Keating was informed of the Glidewell BruxZir mark by no later than August 9, 2011, and despite its knowledge of Glidewell's senior mark continued to promote its competing crowns and bridges under the KDZ Bruxer brand.

Nevertheless, Keating contends that it acted with no bad intent. Keating

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

16595148.3

1   contends that it began using the "KDZ" prefix with different suffixes on different

2   types of products in 2006 and that it chose the "KDZ Bruxer" name as part of a

3   family of new "KDZ" product names.  While this may be true, it fails to negate bad

4   intent.  Keating has also suggested it will assert an advice of counsel defense—that

5   it sought advice of counsel in connection with the selection of the KDZ Bruxer

6   brand.  However, Keating fails to reveal what that advice was; accordingly, it

7   cannot hide behind its counsel's skirt.  *Columbia Pictures Indus., Inc. v. Krypton*

8   *Broadcasting of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001).  This

9   factor favors Glidewell.

10              **h.      Conclusion: Confusion is Likely**

11          Thus, the evidence will establish that Keating's use of the name KDZ Bruxer

12   to market and sell its zirconia crowns infringes Glidewell's BruxZir mark.  The

13   *Sleekcraft* factors strongly support a finding that confusion is likely.

14   **B.      Keating's Use of KDZ Bruxer Is Not Protected as Fair Use**

15          Keating claims that it is entitled to use "Bruxer" even if its use causes

16   consumer confusion because the use is protected by the "classic" fair use defense.

17   There are three elements to the "classic" fair-use defense: (1) defendant's use of the

18   term is not as a trademark or service mark; (2) defendant uses the term "fairly and

19   in good faith;" and (3) defendant uses the term "only to describe" its goods or

20   services.  15 U.S.C. § 1115(b)(4).  Thus, the "classic fair use" defense applies

21   where a party uses a descriptive term not as a trademark but instead to describe its

22   own goods.  *Sierra On-Line, Inc. v. Phoenix Software, Inc.,* 739 F.2d 1415, 1423

23   (9th Cir. 1984); *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 908 (9th Cir.

24   2003).  Keating's use of the term "Bruxer" fails at least two of the above elements:

25   it is used as a trademark, and it is not used "only to describe" Keating's goods.

26          "To determine whether a term is being used as a mark [for purposes of the

27   fair-use defense], we look for indications that the term is being used to associate it

28   with a manufacturer."  *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand*

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1   *Mgmt., Inc.*, 618 F.3d 1025, 1040 (9th Cir. 2010).  Courts often have to look to

2   circumstantial evidence of whether a term is being used as a trademark.  *Id.*

3   ("Indications of trademark use include whether the term is used as a symbol to

4   attract public attention, which can be demonstrated by the lettering, type style, size

5   and visual placement and prominence of the challenged words.").

6       The evidence will show that Keating actually admits to using the term

7   "bruxer" as a trademark: it applied to the Patent and Trademark Office to *register*

8   the mark "KDZ BRUXER," admitted that it uses the mark as a trademark, and

9   repeatedly referred to the KDZ BRUXER mark as a "trademark" in its Second

10  Amended Answer.  That Keating disclaimed "Bruxer" in its trademark application

11  for KDZ Bruxer does not remove the disclaimed term from the mark.  *Sleeper*

12  *Lounge Co. v. Bell Mfg. Co.*, 253 F.2d 720, 724 n.1 (9th Cir. 1958); *Schwarzkopf v.*

13  *John H. Breck, Inc.*, 340 F.2d 978, 979-80 (C.C.P.A. 1965).

14      Further, Keating is not using "Bruxer" only in its descriptive sense.  As

15  Keating has acknowledged, the term "Bruxer" is used to refer to a person who

16  suffers from bruxism; "bruxism" refers to a condition of a patient who habitually

17  grinds teeth.  Keating uses the term "bruxer," however, in connection with the sale

18  of "crown[s] made from zirconia."  Thus the term "Bruxer" simply does not

19  describe Keating's product – Keating's product is not a person who grinds teeth.

20  Instead, Keating's use of the term "Bruxer" suggests a crown that is sufficiently

21  strong to withstand the grinding of teeth.  Thus, Keating is, *in its trademark*,

22  attempting to utilize *the exact same meaning* associated with Glidewell's registered

23  BruxZir mark.  This is the opposite of fair use.

24  **C.    Keating's Claim for Unfair Competition Fails for Lack of Standing and**

25      **Evidentiary Support**

26      Keating's claim for unfair competition will fail because Keating lacks

27  standing to bring this claim.  The claim requires a showing of both injury in fact

28  and economic loss, and Keating has no evidence to establish either element.  This

GLIDEWELL'S TRIAL BRIEF
CASE NO. SACV11-01309 DOC (ANx)

16595148.3

*Snell & Wilmer*
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1    issue was fully briefed by the parties in Glidewell's Motion for Partial Summary

2    Judgment re Trademark Misuse, Unfair Competition, Unclean Hands, Fair Use, and

3    Estoppel (Dkt. #79).  According to Keating, its requisite injury is a decrease in sales

4    that it attributes to this lawsuit.  The lawsuit, however, is not the unfair competition

5    of which Keating complains and, as such, cannot be used to convey standing.  *See*

6    Cal. Bus. & Prof. Code § 17204 (party must prove it "suffered injury in fact and

7    lost money or property *as a result of* the unfair competition") (emphasis added).  If

8    Keating has changed the basis for its unfair competition claim, then its claim is

9    absolutely barred by California's litigation privilege (Civil Code § 47(b)) and the

10   federal *Noerr-Pennington* doctrine, both of which preclude liability for the act of

11   filing a lawsuit.  *See Rubin v. Green*, 4 Cal. 4th 1187, 1201 (1993); *Manistee Town

12   Ctr. v. City of Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000).  In any event,

13   Keating has proffered no evidence that this lawsuit caused it economic damages.

14        As alleged in its Second Counterclaim, Keating claims Glidewell violated the

15   unfair competition statute by obtaining an unlawful registration as "cover" for

16   asserting that its competitors could not use the generic term BRUX, and thus

17   threatens to harm competition.  Trademark law, however, simply does not confer

18   the sort of market power needed to leverage a monopoly.  *See*, *e.g.*, *Juno Online

19   Services v. Juno Lighting, Inc.*, 979 F.Supp. 684 (N.D. Ill. 1997) ("in trademark

20   law, the mark holder usually does not have the ability to destroy competition.  The

21   holder can only keep competitors from using the mark and, in most circumstances,

22   cannot keep them from selling a directly competing product."). The only evidence

23   Keating relies on is the fact that Glidewell sent cease-and-desist letters to direct

24   competitors using variations on "brux" and "bruxer" in trademarks.  There is no

25   evidence that any competitor stopped offering, or reduced their offering of, zirconia

26   crowns.  Further, there is no evidence to support Keating's claim that Glidewell is

27   plotting to prevent competitors from describing their products using "brux" or

28   "bruxer"—Glidewell has only enforced its trademark against competitors using

Snell & Wilmer

L.L.P.

LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

GLIDEWELL'S TRIAL BRIEF
CASE NO. SACV11-01309 DOC (ANx)

"brux" or "bruxer" as a mark. There is simply no evidence that Glidewell threatens to hamper competition. Accordingly, Glidewell has not engaged in "unfair" conduct and there is no violation of the letter, policy or spirit of the antitrust laws.

**D.      Keating Fails to State a Legally Cognizable Claim for Misuse**

Keating's allegations that Glidewell has misused its trademark also lack merit. Keating's counterclaim for misuse fails because no such claim exists. *See Juno Online Services v. Juno Lighting, Inc.*, 979 F.Supp. 684 (N.D. Ill. 1997); 6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition (4th ed. 2010) § 31:44.

As an affirmative defense, Keating's allegations of misuse (or unclean hands) lack merit because none of Keating's allegations warrant the extreme remedy of denying Glidewell all relief under its trademark. "[C]ourts require clear, convincing evidence of 'egregious' misconduct before invoking the doctrine of unclean hands." *Citizens Fin. Group, Inc. v. Citizens Nat. Bank of Evans City*, 383 F.3d 110, 129 (3d Cir. 2004). "[C]ourts are reluctant to apply the unclean hands doctrine in all but the most egregious situations. It will be applied only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation." *U-Haul Int'l, Inc. v. Jartran, Inc.*, 522 F. Supp. 1238, 1255 (D. Ariz. 1981) *aff'd*, 681 F.2d 1159 (9th Cir. 1982).

First, Keating argues that Glidewell is guilty of unclean hands for not disclosing the purported "meaning" of BruxZir to the examiner; this assertion suffers from a number of deficiencies, chief among them that Glidewell had no obligation to do so. Second, Keating points to a single situation, unrelated to the present lawsuit, where Glidewell incorrectly claimed that an infringement lawsuit had been filed when none had been. This isolated incident simply is not the sort of egregious misconduct that warrants forfeiting a party's trademark rights. *See Pom Wonderful LLC v. Welch Foods, Inc.*, 737 F. Supp. 2d 1105 (C.D. Cal. 2010).

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

16595148.3

1   Keating's third argument, that Glidewell misused the ® symbol in a few instances,

2   ignores the legal standard that use of the ® symbol in connection with unregistered

3   goods is actionable only if the trademark holder intended to deceive.  *Copelands'*

4   *Enterprises, Inc. v. CNV, Inc.*, 945 F.2d 1563, 1566 (Fed. Cir. 1991).  Here, the

5   evidence will show that any misuse by Glidewell was unintentional and inadvertent,

6   and, where possible, was corrected soon after the misuses were brought to

7   Glidewell's attention.

8   **E.**   **Keating's Estoppel Defense Lacks Evidentiary Support**

9   Keating's estoppel argument boils down to the claim that Glidewell

10   previously marketed BruxZir crowns as ideal for bruxers, and the entire market for

11   zirconia crowns relied on that marketing in choosing to use variations on "bruxer"

12   in its marks, so Glidewell should be estopped from opposing those marks.  Keating

13   has no evidence, however, that anyone relied on Glidewell's marketing campaign in

14   choosing a trademark.  The only evidence Keating points to is evidence that various

15   companies have adopted marks using variations on "bruxer."  But that fact has no

16   bearing on whether those parties chose their marks *in reliance* on Glidewell's

17   marketing.  *See Lyng v. Payne*, 476 U.S. 926, 935 (1986) ("An essential element of

18   any estoppel is detrimental reliance on the adverse party's misrepresentations . . .").

19   Keating also has no evidence that Glidewell "intentionally led another to

20   believe a particular circumstance to be true . . ."  *See United States v. Georgia-*

21   *Pacific Co.*, 421 F.2d 92, 96 (9th Cir. 1970).  Keating points to evidence that

22   Glidewell previously marketed BruxZir as ideal for bruxers.  But that is not

23   evidence that Glidewell *intentionally* led others to believe they could use variations

24   on "bruxer" *in their trademarks* despite being confusingly similar to Glidewell's

25   mark.

26   **F.**   **Glidewell is Entitled to Damages, a Permanent Injunction, and**

27      **Attorneys' Fees**

28   After establishing Keating's liability for infringement, Glidewell is entitled to

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

16595148.3

recover damages resulting from Keating's infringement in the form of Glidewell's lost profits and Keating's own profits from the infringing sales.  *See* 15 U.S.C. § 1117(a); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993).  Here, the evidence will show that Glidewell lost profits as a result of Keating's infringing activity, as measured both by Glidewell's lost profits and by Keating's own sales of infringing products, and that Keating made significant sales as a result of its infringement of Glidewell's BruxZir trademark.  To recover Keating's profits from the sale of infringing products, Glidewell need only prove Keating's gross revenues, attributable to the sale of those products.  *Lindy Pen Co.*, 982 F.2d at 1408.  The burden is on Keating to prove "which, if any, of its total sales are not attributable to the infringing activity, and, additionally, any permissible deductions for overhead."  *Id.*

Further, to prevent future infringement, Glidewell is also entitled to a permanent injunction to stop Keating's continued use of the name KDZ Bruxer, or any other name that is confusingly similar to BruxZir, as part of any trademark, service mark, brand name, trade name, or other business or commercial designation, in connection with the sale, offering for sale, distribution, advertising, or promotion of any all-zirconia (or solid zirconia, monolithic zirconia, full contour zirconia, or other name similarly styled) crowns, bridges, or other dental restorations or dental restoration products.  Glidewell is entitled to the injunction because Glidewell will suffer irreparable injury from continued infringement, the remedies available at law are inadequate to compensate for Glidewell's injuries, the balance of hardships between Glidewell and Keating favors Glidewell, and the public interest would not be disserved by a permanent injunction.  *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-313 (1982); *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Go.*, 571 F.3d 873 (9th Cir. 2009); *Brookfield Communications, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir. 1999).

Finally, as the evidence will show that Keating's infringement is intentional,

Snell & Wilmer

L.L.P.

LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1  Glidewell will request that the Court enter an award of attorneys' fees under 15
2  U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney
3  fees to the prevailing party").

**IV.**

**CONCLUSION**

When this trial is concluded the evidence will show Glidewell is entitled to
judgment in its favor.

Dated: February 19, 2013            SNELL & WILMER L.L.P.


                                    By: *s/Deborah S. Mallgrave*
                                    Philip J. Graves
                                    Greer N. Shaw
                                    Deborah S. Mallgrave

                                    Attorneys for Plaintiff
                                    James R. Glidewell Dental Ceramics, Inc. dba
                                    Glidewell Laboratories

GLIDEWELL'S TRIAL BRIEF
CASE NO. SACV11-01309 DOC (ANx)

16595148.3

Snell & Wilmer
——— L.L.P. ———
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

*Glidewell Laboratories v. Keating Dental Arts, Inc.*
**United States District Court, Central, Case No. SACV11-01309-DOC (ANx)**

## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2013, I electronically filed the document described as **TRIAL BRIEF OF PLAINTIFF JAMES R. GLIDEWELL DENTAL CERAMICS, INC.** the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

David G. Jankowski
Jeffrey L. Van Hoosear
Lynda J Zadra-Symes
Darrell L. Olson
Knobbe Martens Olson and Bear LLP
2040 Main Street, 14th Floor
Irvine, CA 92614

**Attorneys for Defendant Keating Dental Arts, Inc.**
Tel: (949) 760-0404
Fax: (949) 760-9502

Jeffrey.VanHoosear@kmob.com
David.Jankowski@kmob.com
Lynda.Zadra-symes@kmob.com
Darrell.Olson@knobbe.com
litigation@kmob.com

David A. Robinson
James Azadian
Enterprise Counsel Group
Three Park Plaza, Suite 1400
Irvine, CA 92614

**Attorneys for Defendant Keating Dental Arts, Inc.**
Tel: (949)833-8550
Fax: (949) 833-8540

drobinson@enterprisecounsel.com
jazadian@enterprisecounsel.com

Dated: February 19, 2013          SNELL & WILMER L.L.P.

By: *s/Deborah S. Mallgrave*
     Philip J. Graves
     Greer N. Shaw
     Deborah S. Mallgrave

     Attorneys for Plaintiff
     James R. Glidewell Dental Ceramics, Inc.
     dba GLIDEWELL LABORATORIES

16139994.1