SNELL & WILMER L.L.P.
Philip J. Graves (SBN 153441)
pgraves@swlaw.com
Greer N. Shaw (SBN 197960)
gshaw@swlaw.com
Deborah S. Mallgrave (SBN 198603)
dmallgrave@swlaw.com
350 South Grand Avenue, Suite 2600
Two California Plaza
Los Angeles, California  90071
Telephone: (213) 929-2500
Facsimile:  (213) 929-2525

Attorneys for Plaintiff
James R. Glidewell Dental Ceramics, Inc.
d/b/a Glidewell Laboratories

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JAMES R. GLIDEWELL DENTAL CERAMICS, INC. dba GLIDEWELL LABORATORIES, a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>KEATING DENTAL ARTS, INC., a California corporation,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS. | Case No. SACV11-01309-DOC (ANx)<br>Hon. David O. Carter, Ctrm. 9D<br><br>**PLAINTIFF JAMES R. GLIDEWELL DENTAL CERAMICS, INC.'S DISPUTED PROPOSED JURY INSTRUCTIONS**<br><br><br><br><br>Pre-Trial Conf.:   February 26, 2013<br>Jury Trial:          February 26, 2013 |

*Snell & Wilmer*
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

Plaintiff James R. Glidewell Dental Ceramics, Inc. ("Glidewell") proposes the following jury instructions, which are disputed by defendant Keating Dental Arts, Inc. ("Keating").  Glidewell is filing separately the jury instructions upon which the parties agree.

Dated: February 19, 2013                    SNELL & WILMER L.L.P.


By: *s/Deborah S. Mallgrave*

Philip J. Graves
Greer N. Shaw
Deborah S. Mallgrave

Attorneys for Plaintiff
James R. Glidewell Dental Ceramics, Inc. dba
Glidewell Laboratories

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

16644136.1

Jury Instructions Proposed by Glidewell
CASE NO. SACV11-01309 DOC (ANx)

**COURT'S INSTRUCTION NUMBER 2**

To help you follow the evidence, I will give you a brief summary of the positions of the parties.

The plaintiff in this case is James R. Glidewell Dental Ceramics, Inc., which does business under the name Glidewell Laboratories.  You may hear me, the attorneys and the witnesses refer to Glidewell Laboratories as "Glidewell" or "plaintiff."  The defendant in this case is Keating Dental Arts, Inc.  You may hear me, the attorneys and the witnesses refer to Keating Dental Arts as "Keating" or "defendant."  Glidewell and Keating compete by selling dental restoration products, such as dental crowns and bridges.  This case involves the trademarks under which Glidewell and Keating sell crowns and bridges made of a material called zirconia.  Glidewell sells its products under the mark "BruxZir."  Keating sells its products under the mark "KDZ Bruxer."

Glidewell claims that Keating has infringed and continues to infringe Glidewell's rights in its BruxZir trademark by Keating's sale of competing goods under the name KDZ Bruxer.  Glidewell has the burden of proving this claim.  Keating denies this claim and contends that Glidewell's BruxZir mark is invalid and is not infringed.  Keating also contends that the BruxZir mark is unenforceable.  Glidewell denies Keating's claims.

- 1 -

**Source:**

Ninth Circuit Model Jury Instructions Civil, No. 1.2.

16644162.1

## COURT'S INSTRUCTION NUMBER 3

Glidewell seeks damages against Keating for trademark infringement. Keating denies infringing the trademark and contends the BruxZir trademark is invalid.  To help you understand the evidence that will be presented in this case, I will explain some of the legal terms you will hear during this trial.

## DEFINITION OF A TRADEMARK

A trademark is any word, name, symbol, device, or any combination thereof, used by a person to identify and distinguish that person's goods from those of others and to indicate the source of the goods, even if that source is generally unknown.  The owner of a trademark has the right to exclude others from using that trademark in a manner that is likely to cause confusion among relevant consumers as to the source, sponsorship, affiliation, or approval of the goods.

## HOW A TRADEMARK IS OBTAINED

A person acquires the right to exclude others from using a trademark by being the first to use it in the marketplace, or by using it before the alleged infringer.  Rights in a trademark are obtained only through commercial use of the mark.

## TRADEMARK REGISTRATION

Once the owner of a trademark has obtained the right to exclude others from using the trademark, the owner may obtain a certificate of registration issued by the United States Patent and Trademark Office.  Thereafter, when the owner brings an action for infringement, the owner may rely solely on the registration certificate to prove that the owner has the right to exclude others from using the trademark in connection with the type of goods specified in the certificate.

- 3 -

## **GLIDEWELL'S BURDEN OF PROOF**

Glidewell contends that Keating has infringed Glidewell's BruxZir trademark. Glidewell has the burden of proving by a preponderance of the evidence that Glidewell is the owner of a valid trademark and that Keating infringed that trademark.

## **KEATING'S BURDEN OF PROOF**

Keating contends that Glidewell's BruxZir mark is invalid and not infringed. Keating has the burden of proving by a preponderance of the evidence that these claims are true.

Keating also contends that the BruxZir mark is unenforceable due to abandonment. Keating has the burden of proving by clear and convincing evidence that this claim is true.

- 4 -

16644162.1

**Source:**

Ninth Circuit Model Jury Instructions Civil, No. 15.0.

- 5 -

16644162.1

**COURT'S INSTRUCTION NUMBER 26**

As I explained at the start of the case, Glidewell seeks damages against Keating for infringement of the BruxZir trademark.  Keating denies infringing the BruxZir trademark and contends that the mark is invalid.  Keating also contends that the BruxZir mark is unenforceable.

- 6 -

16644162.1

**Source:**

Ninth Circuit Model Jury Instructions Civil, No. 15.0.

16644162.1

# COURT'S INSTRUCTION NUMBER 29

The owner of a trademark may permit another to use the trademark.  Where a registered mark is used legitimately by related companies, such use benefits the registrant, and does not affect the validity of the mark or of its registration, provided the mark is not used in such manner as to deceive the public.

A related company, for the purpose of this instruction, is any person or company whose use of a mark is controlled by the owner of the mark with respect to the nature and quality of the goods on or in connection with which the mark is used.

- 8 -

16644162.1

**Source:**

15 U.S.C. §§ 1055, 1127.

- 9 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SNELL & WILMER
L.L.P.
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

## COURT'S INSTRUCTION NUMBER 32

How distinctively a trademark indicates that a good comes from a particular source, even if the source is unknown, is an important factor to consider in assessing its validity and for determining whether Keating's use of the KDZ Bruxer creates for relevant consumers a likelihood of confusion with Glidewell's BruxZir trademark.

Glidewell asserts that BruxZir is a valid and protectable trademark for its dental restoration products, including crowns and bridges.  Glidewell also contends that Keating's use of its KDZ Bruxer mark in connection with Keating's dental crowns and bridges infringes Glidewell's BruxZir trademark.  Keating contends that Glidewell's BruxZir trademark is invalid because it is generic or is descriptive and lacks secondary meaning.

In order to determine if Glidewell has met its burden of showing that BruxZir is a valid trademark, you should classify it on the spectrum of trademark distinctiveness that I will explain in this instruction.

### Spectrum of Marks

Trademark law provides great protection to distinctive or strong trademarks. Conversely, trademarks not as distinctive or strong are called "weak" trademarks and receive less protection from infringing uses.  Trademarks that are not distinctive are not entitled to any trademark protection.  For deciding trademark protectability, trademarks are grouped into four categories according to their relative strength or distinctiveness.  These four categories are, in order of strength or distinctiveness:  arbitrary (which is inherently distinctive), suggestive (which is also inherently distinctive), descriptive (which is protected only if it acquires in consumer's minds a "secondary meaning" which I explain in Instruction __) and generic names (which are entitled to no protection).

- 10 -

16644162.1

**Arbitrary Marks.**  The first category is "inherently distinctive" trademarks. They are considered strong trademarks and are clearly protectable.  They involve the arbitrary, fanciful or fictitious use of a word or phrase to designate the source of a product.  Such a trademark is a word that in no way describes or has any relevance to the particular product it is meant to identify.  It may be a common word used in an unfamiliar way.  It may be a newly created (coined) word or parts of common words that are applied in a fanciful, fictitious or unfamiliar way, solely to function as a trademark.

For instance, the common word "apple" became a strong and inherently distinctive trademark when used by a company to identify the personal computers that company sold.  The company's use of the word "apple" was arbitrary or fanciful because "apple" did not describe and was not related to what the computer was, its components, ingredients, quality, or characteristics.  "Apple" was being used in an arbitrary way to designate for consumers that the computer comes from a particular manufacturer or source.

**Suggestive Marks.**  The next category is suggestive marks.  These trademarks are also inherently distinctive but are considered weaker than arbitrary trademarks.  Unlike arbitrary trademarks, which are in no way related to what the product is or its components, quality, or characteristics, suggestive trademarks suggest some characteristic or quality of the product to which they are attached.  If the consumer must use imagination or any type of multi-stage reasoning to understand the trademark's significance, then the trademark does not describe the product's features, but suggests them.

A suggestive use of a word involves consumers associating the qualities the word suggests to the product to which the word is attached.  For example, when "apple" is used not to indicate a certain company's computers, but rather "Apple–

- 11 -

A–Day" Vitamins, it is being used as a suggestive trademark. "Apple" does not describe what the vitamins are. However, consumers may come to associate the healthfulness of "an apple a day keeping the doctor away" with the supposed benefits of taking "Apple–A–Day" Vitamins.

**Descriptive Marks.** The third category is descriptive trademarks. These marks directly identify or describe some aspect, characteristic, or quality of the product to which they are affixed in a straightforward way that requires no exercise of imagination to be understood by the relevant consumers.

For instance, the word "apple" is descriptive when used in the trademark "CranApple" to designate a cranberry-apple juice. It directly describes ingredients of the juice. Other common types of descriptive trademarks identify where a product comes from, or the name of the person who makes or sells the product. Thus, the words "Apple Valley Juice" affixed to cider from the California town of Apple Valley is a descriptive trademark because it geographically describes where the cider comes from.

**Generic Names.** The fourth category is entitled to no protection at all. They are called generic names and they refer to a general name of the product, as opposed to plaintiff's brand for that product. Generic names are part of our common language that we need to identify all such similar products. A generic name is a name for the product on which it appears.

If the primary significance of the alleged mark to the relevant consumer is to name the type of product rather than the manufacturer, the term is a generic name and cannot be a valid trademark. If the majority of relevant consumers would understand the term to name the type of product rather than the manufacturer, the primary significance of the term is generic and not entitled to protection as a trademark. A registered mark shall not be deemed to be the generic name of goods

- 12 -

16644162.1

solely because such mark is also used as a name of or to identify a unique product.

Clearly, the word apple can be used as a generic name and not be entitled to any trademark protection. This occurs when the word is used to identify the fruit from any apple tree.

The computer maker who uses the word "apple" as a trademark to identify its personal computer, or the vitamin maker who uses that word as a trademark on vitamins, has no claim for trademark infringement against the grocer who used that same word to indicate the fruit sold in a store. As used by the grocer, the word is generic and does not indicate any particular source of the product. As applied to the fruit, "apple" is simply a commonly used name for what is being sold.

The crucial date for the determination of genericness is the date on which the alleged infringer entered the market with the disputed mark or term.

### Mark Distinctiveness and Validity

If you decide that Glidewell's BruxZir mark is arbitrary or suggestive, it is considered to be inherently distinctive. An inherently distinctive trademark is valid and protectable. Where the PTO issues a registration without requiring proof of secondary meaning, the presumption is that the mark is inherently distinctive.

On the other hand, if you determine that Glidewell's BruxZir trademark is generic, it cannot be distinctive and therefore is not valid or protectable. You must render a verdict for Keating on the charge of infringement in Instruction *[insert number of instruction regarding Trademark Elements and Burden of Proof, e.g., 15.5]*.

If you decide that Glidewell's BruxZir trademark is descriptive, you will not know if the trademark is valid or invalid until you consider if it has gained distinctiveness by the acquisition of secondary meaning, which I explain in Instruction *[insert number of instruction regarding secondary meaning,*

- 13 -

16644162.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*e.g., 15.10]*.

SNELL & WILMER
——— L.L.P. ———
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

- 14 -

**Source:**

Ninth Circuit Model Jury Instructions Civil, No. 15.9; *Zobmondo Enter., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113-14 (9th Cir. 2010); *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 760 (9th Cir. 2006); 15 U.S.C. § 1064(3); 15 U.S.C. § 1127; *Yellow Cab Co. of Sacramento v. Yellow Cab Co. of Elk Grove, Inc*., 419 F.3d 925, 928 (9th Cir. 2005); *Maljack Prods. Inc. v. Goodtimes Home Video Corp.*, 81 F.3d 881, 887 (9th Cir. 1996).

- 15 -

16644162.1

**COURT'S INSTRUCTION NUMBER 33**

If you determined in Instruction *[insert number of instruction e.g. 15.9]* that the BruxZir mark is descriptive, you must consider the recognition that the mark has among consumers in order to determine whether it is valid and protectable even though it is descriptive.  This market recognition is called the trademark's "secondary meaning."

A word acquires a secondary meaning when it has been used in such a way that its primary significance in the minds of consumers is not the product itself, but the identification of the product with a single source, regardless of whether consumers know who or what that source is.  You must find that the preponderance of the evidence shows that a significant number of relevant consumers associates BruxZir with a single source, in order to find that it has acquired secondary meaning.

When you are determining whether BruxZir has acquired a secondary meaning, consider the following factors:

1.       Consumer Perception.  Whether the people who purchase the product that bears the BruxZir mark associate the trademark with a single source;

2.       Advertisement.  To what degree and in what manner Glidewell may have advertised under the claimed trademark;

3.       Demonstrated Utility.  Whether Glidewell successfully used its BruxZir mark to increase the sales of its product;

4.       Extent of Use.  The length of time and manner in which Glidewell used the BruxZir mark;

5.       Exclusivity.  Whether Glidewell's use of the BruxZir mark was exclusive;

- 16 -

16644162.1

6.	Copying.  Whether Keating intentionally copied Glidewell's BruxZir mark; and

7.	Actual Confusion.  Whether Keating's use of the KDZ Bruxer mark has led to actual confusion among a significant number of relevant consumers .

The presence or absence of any particular factor should not necessarily resolve whether the BruxZir mark has acquired secondary meaning.

Descriptive marks are protectable only to the extent you find they acquired distinctiveness through secondary meaning by the relevant consumers coming to associate the mark with a particular source, even if the source is generally unknown.  Descriptive marks are entitled to protection only as broad as the secondary meaning they have acquired, if any.  If they have acquired no secondary meaning, they are entitled to no protection and cannot be considered a valid mark.

The mere fact that Glidewell is using the BruxZir mark, or that Glidewell began using the BruxZir mark before Keating began using its KDZ Bruxer mark, does not mean that the trademark has acquired secondary meaning.  There is no particular length of time that a trademark must be used before it acquires a secondary meaning.

The BruxZir mark is registered.  Registration carries a presumption of secondary meaning.  Keating has the burden of proving by a preponderance of the evidence that the BruxZir mark lacks secondary meaning.

- 17 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Source:**

Ninth Circuit Model Jury Instructions Civil, No. 15.10; *Americana Trading Inc. v. Russ Berrie & Co.*, 966 F.2d 1284, 1287 (9th Cir. 1992); *see also Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 876 (9th Cir.1999); *Conversive, Inc. v. Conversagent, Inc.*, 433 F. Supp. 2d 1079, 1088 (C.D. Cal. 2006).

SNELL & WILMER
L.L.P.
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

- 18 -

16644162.1

## COURT'S INSTRUCTION NUMBER 34

You must consider whether Keating's use of the KDZ Bruxer mark in connection with its zirconia crowns and bridges is likely to cause confusion among relevant consumers as to the source, sponsorship, affiliation, or approval of the goods sold under the mark.

Confusion in the marketplace can occur at three distinct times: before the purchase (also called "initial interest" confusion), at the moment of the purchase (also called "point of sale" confusion), and after the purchase (also called "post-sale" confusion).

I will suggest some factors you should consider in deciding likelihood of confusion. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

1. Strength or Weakness of Glidewell's Mark. The more that consumers in the relevant market recognize Glidewell's BruxZir trademark as an indication that products sold under the BruxZir mark originate from Glidewell or a particular source, the more likely it is that consumers will be confused about the source of Keating's goods if Keating uses a similar mark.

2. Relatedness or Proximity of the Products. If Keating and Glidewell use their trademarks on the same, related, or complementary kinds of goods there may be a greater likelihood of confusion about the source of the goods than otherwise.

3. Similarity of Glidewell's and Keating's Marks. If the overall impression created by Keating's KDZ Bruxer trademark in the

- 19 -

marketplace is similar to that created by Glidewell's BruxZir

trademark in appearance, sound, or meaning, there is a greater chance

of likelihood of confusion.  Similarities in appearance, sound or

meaning weigh more heavily than differences in finding the marks are

similar.  The likelihood that any similarities of the marks will cause

confusion may be heightened where consumers in the relevant market

are not likely to consider the marks side by side as a shopper would

two competing brands in a supermarket.

4.    Actual Confusion.  If use by Keating of the KDZ Bruxer mark has led

to instances of actual confusion, this strongly suggests a likelihood of

confusion.  However actual confusion is not required for a finding of

likelihood of confusion.  Even if actual confusion did not occur,

Keating's use of the trademark may still be likely to cause confusion.

As you consider whether the trademark used by Keating creates for

consumers a likelihood of confusion with Glidewell's trademark, you

should weigh any instances of actual confusion against the

opportunities for such confusion.  If the instances of actual confusion

have been relatively frequent, you may find that there has been

substantial actual confusion.  If, by contrast, there is a very large

volume of sales, but only a few isolated instances of actual confusion

you may find that there has not been substantial actual confusion.

5.    Keating's Intent.  Knowing use by Keating of a mark that is

confusingly similar to Glidewell's BruxZir trademark, to identify

similar goods, may strongly show an intent to derive benefit from the

reputation of Glidewell's mark, suggesting an intent to cause a

likelihood of confusion.  On the other hand, even in the absence of

- 20 -

SNELL & WILMER
L.L.P.
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

proof that Keating acted knowingly, the use of a mark confusingly similar to Glidewell's BruxZir mark to identify similar goods may indicate a likelihood of confusion.

6. Marketing/Advertising Channels.  If Glidewell's and Keating's goods are likely to be sold through the same or similar outlets, or advertised in the same or similar media, this may increase the likelihood of confusion.

7. Type of Goods and Consumer's Degree of Care.  The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be.  They may be less likely to be confused by similarities in Glidewell's and Keating's trademarks. The possession of medical expertise does not necessarily mean that a consumer is less likely to be confused as to source, sponsorship, affiliation or approval of goods purchased by that consumer.

- 21 -

16644162.1

**Source:**

Ninth Circuit Model Jury Instructions Civil, No. 15.16; *Official Airlines Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993); *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 161 (9th Cir. 1963) ("In determining whether there is a likelihood of confusion we must remember that the members of the purchasing public have only general impressions which must guide them in the selection of products."); ("The inability [of consumers] to compare the products side by side and observe the precise differences in appearance may increase the likelihood of confusion. When making a decision to purchase the consumer must rely on memory rather than a visual comparison."); *KOS Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 716 n.13 (3d Cir. 2004) ("medical expertise is not enough, in and of itself, to lessen the likelihood of confusion in prescription drug cases.").

- 22 -

16644162.1

**COURT'S INSTRUCTION NUMBER 39**

The owner of a trademark cannot exclude others from making a fair use of that trademark.  A defendant makes fair use of a mark when the defendant uses it as other than a trademark, to accurately describe the defendant's own product.

Keating contends that it fairly used the KDZ Bruxer mark to describe Keating's product.  Keating has the burden of proving fair use by a preponderance of the evidence.

A defendant makes fair use of a trademark when the defendant:

(1)  used the mark other than as a trademark;

(2)  used the mark fairly and in good faith; and

(3)  used the mark only to describe the defendant's goods as those of the defendant's, and not at all to describe the plaintiff's products.

- 23 -

16644162.1

**Source:**

Ninth Circuit Model Jury Instructions Civil, No. 15.22.

- 24 -

**COURT'S INSTRUCTION NUMBER 44**

You will be provided with a general verdict form that includes specific written questions on issues of fact that you must decide.  You must render a general verdict and also answer each of the questions in writing.

SNELL & WILMER
L.L.P.
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

- 25 -

**Source:**

Fed. R. Civ. P. 49(b).

- 26 -

*Glidewell Laboratories v. Keating Dental Arts, Inc.*
**United States District Court, Central, Case No. SACV11-01309-DOC (ANx)**

### CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2013, I electronically filed the document described as **JURY INSTRUCTIONS PROPOSED BY PLAINTIFF JAMES R. GLIDEWELL DENTAL CERAMICS, INC.'S** the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

| | |
|---|---|
| David G. Jankowski<br>Jeffrey L. Van Hoosear<br>Lynda J Zadra-Symes<br>Darrell L. Olson<br>Knobbe Martens Olson and Bear LLP<br>2040 Main Street, 14th Floor<br>Irvine, CA 92614 | **Attorneys for Defendant Keating Dental Arts, Inc.**<br>Tel: (949) 760-0404<br>Fax: (949) 760-9502<br><br>Jeffrey.VanHoosear@kmob.com<br>David.Jankowski@kmob.com<br>Lynda.Zadra-symes@kmob.com<br>Darrell.Olson@knobbe.com<br>litigation@kmob.com |
| David A. Robinson<br>James Azadian<br>Enterprise Counsel Group<br>Three Park Plaza, Suite 1400<br>Irvine, CA 92614 | **Attorneys for Defendant Keating Dental Arts, Inc.**<br>Tel: (949)833-8550<br>Fax: (949) 833-8540<br><br>drobinson@enterprisecounsel.com<br>jazadian@enterprisecounsel.com |

Dated: February 19, 2013                SNELL & WILMER L.L.P.


By: *s/Deborah S. Mallgrave*
Philip J. Graves
Greer N. Shaw
Deborah S. Mallgrave

Attorneys for Plaintiff
James R. Glidewell Dental Ceramics, Inc.
dba GLIDEWELL LABORATORIES

16139994.1

SNELL & WILMER
L.L.P.
350 SOUTH GRAND AVENUE
SUITE 2600
TWO CALIFORNIA PLAZA
LOS ANGELES, CALIFORNIA 90071