O

1

2

3

4

5

6

7

8        **UNITED STATES DISTRICT COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA**

10       **SOUTHERN DIVISION**

11

| | |
|---|---|
| **JAMES R. GLIDEWELL DENTAL CERAMICS, INC.,** | Case No.: SACV 11-1309-DOC(ANx) |
| **Plaintiff,** | **ORDER ON PLAINTIFF'S AND DEFENDANT'S MOTIONS AND CROSS MOTIONS FOR SUMMARY JUDGMENT** |
| **vs.** | |
| **KEATING DENTAL ARTS, INC.,** | |
| **Defendant.** | |

12

13       Before the Court are several filings: (1) a Motion for Partial Summary Judgment as to

14   Trademark Misuse, Unfair Competition, Unclean Hands, Fair Use, and Estoppel (Dkt. 79) filed

15   by Plaintiff James R. Glidewell Dental Ceramics, Inc. ("Plaintiff"); (2) Plaintiff's Motion for

16   Partial Summary Judgment as to Infringement of a Federally Registered Mark (Dkt.81); (3)

17   Plaintiff's Motion for Partial Summary Judgment as to Keating Dental Arts, Inc.'s Invalidity

18   Defense (Dkt. 82); (4) a Motion for Summary Judgment Canceling Glidewell's Trademark

19   Registration (Dkt. 83) filed by Defendant Keating Dental Arts, Inc. ("Defendant"); and (5)

1    Defendant's Motion for Summary Judgment as to No Infringement of Glidewell's Registered

2    Trademark (Dkt. 84).

3            Oral arguments were presented to the Court on December 21, 2012.  After considering all

4    the moving papers and oral arguments, the Court orders the following:

5            (1)        Defendant's Motion for Summary Judgment as to No Infringement

6                       (Dkt. 84) is GRANTED;

7            (2)        Defendant's Motion for Summary Judgment Canceling Plaintiff's

8                       Registration (Dkt. 83) is DENIED;

9            (3)        Plaintiff's Motion for Summary Judgment as to Trademark Misuse,

10                      Unfair Competition, Unclean Hands, Fair Use, and Estoppel (Dkt. 79) is

11                      GRANTED IN PART and DENIED IN PART;

12           (4)        Plaintiff's Motion for Partial Summary Judgment as to Trademark

13                      Infringement (Dkt. 81) is DENIED;

14           (5)        Plaintiff's Motion for Partial Summary Judgment as to Defendant's

15                      Invalidity Defense and Counterclaim (Dkt. 82) is GRANTED.

16   **I.     Jurisdiction**

17           The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. §

18   1331, 1338; and 2201; and supplemental jurisdiction over state law claims pursuant to 28 U.S.C.

19   § 1367(a).  The parties do not contest personal jurisdiction.

20   **II.    Background**

21           As difficult as it may be to imagine any unpleasantness associated with a trip to the

22   dentist, this case reminds us that discord and painful friction may invade even society's most

23   cheerful and unsullied icon of good times and happy memories: the dentist's chair.  The parties

24   in this lawsuit are dental laboratories who, among other things, receive and fill orders for crowns

25   from dentists.  In 2009, Plaintiff began marketing an all-zirconia crown under the "BruxZir"

26   trademark. In 2011, Defendant began marketing its own all-zirconia crown using the mark

27   "KDZ Bruxer" and an associated logo.

1       Neither party has introduced any evidence reasonably challenging the following facts: (1)

2   "bruxism" is a well-known term of art in the dental community that describes a condition in

3   which the dental patient grinds or gnashes her teeth, sometimes unconsciously and/or at night;

4   (2) "bruxers" are people suffering from or experiencing bruxism; and (3) "to brux" means "to

5   grind ones teeth."   If a bruxer has a tooth that is ground down or cracked, her dentist may

6   prepare a dental crown.  An all-zirconia crown is particularly suited for this use, since zirconia is

7   strong enough to withstand the wear-and-tear associated with inveterate bruxing.

8                 **a.  Plaintiff's Three Causes of Action in Its Complaint**

9       Plaintiff brings three causes of action, all based on the same alleged acts by Defendant.

10   First, Plaintiff alleges that Defendant's trademark, "KDZ Bruxer," infringes Plaintiff's federally-

11   registered (as of January 19, 2010) trademark, "BruxZir," under the Lanham Act, 15 U.S.C. §

12   1051 et seq.  Compl. (Dkt. 1) at 5-6.  Second, Plaintiff alleges that Defendant's acts giving rise

13   to the infringement claim also constitute false designation of origin within the meaning of

14   Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a).  *Id.* at 6-7.  Finally, Plaintiff

15   alleges that these acts constitute unfair competition under California Business & Professions

16   Code 17200 et seq. *Id.* at 7-8.

17                         **b.  Defendant's Counterclaims**

18       Defendant brings four counterclaims against Plaintiff.  First, Defendant seeks a

19   declaratory judgment of non-infringement of Plaintiff's trademark.  *See* Def's Second Amended

20   Answer and Counterclaims (Dkt. 67) at 14.  Second, Defendant brings a claim for unfair

21   competition under California Business & Professions Code 17200, *et seq.*, and California

22   common law.  *Id.* at 14-15.  Third, Defendant brings a claim for Misuse of Trademark. *Id.* at 15-

23   16.  Fourth, Defendant makes a claim for the cancellation of Plaintiff's trademark registration

24   pursuant to 15 U.S.C. § 1052(e)(1).  *Id.* at 17.

25                 **c.  Previous Motion for Summary Judgment**

26       Early on in this case, Defendant brought a Motion for Partial Summary Judgment as to

27   Non-infringement (Dkt. 26) that was denied by the Court because, at the time, Defendant "failed

1  to meet its burden" in attempting to establish non-infringement.  Order Denying Defendant's

2  Motion for Partial Summary Judgment (Dkt. 48) at 11.  However, that order made it clear that

3         . . . the Court is not holding that the facts of this case preclude summary judgment

4         for Defendant.  The Court is merely holding that Defendant's failure to cite to

5         relevant law – that is, cases analyzing an infringement claim where plaintiff

6         alleges that its composite mark is infringed by defendant's composite mark and the

7         marks share only a portion of letters – prevents this Court from granting summary

8         judgment.

9  *Id.*

10       In denying Defendant's subsequent Motion to Reconsider (Dkt. 50), the Court elaborated:

11         [T]he Court will provide Defendant with another opportunity to move for

12         summary judgment in the future.  The Court provides Defendant with a second

13         opportunity because this is a straight-forward trademark infringement case.  As

14         such, it is highly unlikely that there will be any genuine issues of material fact and

15         it is entirely possible that Defendant could show in its second motion that it wins

16         as a matter of law – if Defendant would just cite analogous cases finding no

17         infringement of a plaintiff's composite mark by a defendant's composite mark

18         where the marks share only a portion of letters.

19  May 1, 2012, Minute Order (Dkt. 52) at 1-2.

20       On November 19, 2012, the parties submitted their current motions and cross motions for

21  summary judgment.  Arguments were heard before the Court on December 21, 2012.

22      **III.   Legal Standard**

23       Summary judgment is proper if "the movant shows that there is no genuine dispute as to

24  any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

25  56(c).  The court must view the facts and draw inferences in the manner most favorable to the

26  non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v.*

27  *Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992).  The moving party bears the initial burden of

28  demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove

1   the other party's case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*

2   *Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  When the non-moving party bears the burden of

3   proving the claim or defense, the moving party can meet its burden by pointing out that the non-

4   moving party has failed to present any genuine issue of material fact.  *Musick v. Burke*, 913 F.2d

5   1390, 1394 (9th Cir. 1990).

6          Once the moving party meets its burden, the opposing party must set out specific facts

7   showing a genuine issue for trial; merely relying on allegations or denials in its own pleading is

8   insufficient.  *See Anderson,* 477 U.S. at 248-49.  A party cannot create a genuine issue of

9   material fact simply by making assertions in its legal papers.  *S.A. Empresa de Viacao Aerea Rio*

10  *Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982).  Rather, there

11  must be specific, admissible evidence identifying the basis for the dispute.  *Id.*  The Supreme

12  Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there

13  must be evidence on which the jury could reasonably find for [the opposing party]."  *Anderson*,

14  477 U.S. at 252.  A court is "not required to comb the record to find some reason to deny a

15  motion for summary judgment."  *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026,

16  1029 (9th Cir. 2001).

17         Summary judgment may be appropriate in the trademark litigation context because a

18  likelihood of confusion between marks can be determined as a matter of law.  *See Murray v.*

19  *Cable Nat'l Broad. Co.*, 86 F.2d 858, 860 (9th Cir. 1996).

20  **IV.    Discussion**

21          **a.   Defendant's and Plaintiff's Motions for Summary Judgment regarding (1)**

22               **No Infringement of Plaintiff's Registered Trademark; (2) No Violation of**

23               **Section 43(a) of the Lanham Act; (3) No Unfair Competition Under**

24               **California Law**

25         Defendant has shown that Plaintiff has failed to establish at least one element of

26  Plaintiff's first claim of trademark infringement, namely, that there is a likelihood of confusion

27  between the parties' marks.  The confusion analysis for Plaintiff's second claim of false

28  designation of origin under Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125, is

1   the same as the analysis for infringement of a registered trademark under 15 U.S.C. § 1114.  *See*

2   *Brookfield Commc'n, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046-47  n. 8 (9th Cir.

3   1999) (applying same analysis to claims under Sections 1114 and 1125).  Regarding Plaintiff's

4   third claim of unfair competition, the "test" for harm under the "unfair competition [law] is

5   exactly the same as for trademark infringement," namely, likelihood of confusion.  *Century 21*

6   *Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988).  Accordingly, the Court's

7   analysis applies to all three of Plaintiff's claims.  *See New West Corp. v. NYM Co. of California,*

8   *Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979) ("Whether we call the violation infringement, unfair

9   competition or false designation of origin, the test is identical: is there a 'likelihood of

10   confusion?'").

11        Regarding the test for likelihood of confusion, the Ninth Circuit considers eight

12   "*Sleekcraft*" factors in its analysis: "[1] strength of the [plaintiff's] mark; [2] proximity of the

13   goods; [3] similarity of the marks; [4] evidence of actual confusion; [5] marketing channels

14   used; [6] type of goods and the degree of care likely to be exercised by the purchaser; [7]

15   defendant's intent in selecting the mark; and [8] likelihood of expansion of the product lines."

16   *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011)

17   (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979)); *see also* 4 McCarthy on

18   Trademarks and Unfair Competition § 24:39 (4th ed.).  However, "the list is not exhaustive,"

19   nor is it exclusive, and "[o]ther variables may come into play depending on the particular facts

20   presented." *Network Automation*, 638 F.3d at 1145; *see also Echo Drain v. Newsted*, 307 F.

21   Supp. 2d 1116, 1123 (C.D. Cal. 2003) ("The presence or absence of a particular factor does not

22   necessarily drive the determination of a likelihood of confusion."). Ultimately, the "burden of

23   proving likelihood of confusion rests with the plaintiff."  *KP Permanent Make-Up, Inc. v.*

24   *Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004).

25        Under the "anti-dissection rule," the likelihood of confusion between two marks "is

26   determined by viewing the trademark as a whole, as it appears in the marketplace."  *Official*

27   *Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1389, 1392 (9th Cir. 1993) (holding that district court

28   committed "error" when it "analyzed the strength of [plaintiff's] mark by examining . . . the

1   term 'Travel Planner,' standing alone" where plaintiff alleged that its mark "OAG TRAVEL

2   PLANNER" was infringed by defendants' marks  "THE TRAVEL PLANNER USA" and "USA

3   TRAVEL PLANNER"); *see also China Healthways Institute, Inc. v. Wang*, 491 F.3d 1337,

4   1340 (Fed. Cir. 2007) ("It is incorrect to compare marks by eliminating portions thereof and

5   then simply comparing the residue."); 4 McCarthy on Trademarks and Unfair Competition §

6   23:41 (4th ed.) ("Conflicting composite marks are to be compared by looking at them as a

7   whole, rather than breaking the marks up into their component parts for comparison."); 15

8   U.S.C. § 1052(d) (referring to a whole "mark" and not portions of a mark when stating that no

9   protection exists where "a mark . . . so resembles [another] a mark . . . as to be likely . . . to

10  cause confusion").  The rationale behind the anti-dissection rule is that the "commercial

11  impression of a trade-mark is derived from it as a whole, not from its elements separated and

12  considered in detail."  *Estate of P.D. Beckwith, Inc., v. Comm'r of Patents*, 252 U.S. 538, 545-46

13  (1920).

14       The Court considers each *Sleekcraft* factor in turn.

15                      **i.  Strength of Plaintiff's Mark**

16       Trademarks are classified by courts "along a spectrum of increasing distinctiveness: (1)

17  generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful." *Instant Media, Inc. v.*

18  *Microsoft Corp.*, 2007 WL 2318948 at *12 (N.D. Cal. Aug. 13, 2007) (internal quotations

19  omitted).  Here, Defendant claims that Plaintiff's mark is either generic or descriptive, and

20  Plaintiff claims that it is suggestive.  Neither claims that the "BruxZir" mark is arbitrary or

21  fanciful.

22       A descriptive mark "specifically describes a characteristic or ingredient of an article or

23  service (*i.e.*, "Park 'N Fly")," while a suggestive mark "suggests, rather than describes, an

24  ingredient, quality or characteristic (*i.e.*, Sleekcraft)."  *Id.*   A suggestive mark is one for which

25  "'a consumer must use imagination or any type of multistage reasoning to understand the mark's

26  significance ... the mark does not describe the product's features, but suggests them.'"

27  *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1114 (9th Cir. 2010) (quoting

28  *Kendall-Jackson Winery, Ltd. v. E.&J.  Gallo Winery*, 150 F.3d 1042, 1047 n.8 (9th Cir.  1998)).

1    *see also* 2 McCarthy § 11:72 (listing marks that have been found "suggestive," including

2    "CITIBANK" for an urban bank, "CLASSIC COLA" for a soft drink, "DIAL-A-MATTRESS"

3    for mattress sales, and "FLORIDA TAN" for suntan lotion).

4          The Court finds that "BruxZir" is suggestive, not descriptive, because it suggests, but

5    falls short of explicitly describing, Plaintiff's zirconia crown product.  It is a zirconia product

6    made for bruxers, or tooth-grinders, but "a mental leap is required" to understand that the

7    product is a dental crown.  *See Zobmondo Entm't*., 602 F.3d at 1116.  The mark does not contain

8    any unequivocally descriptive term, like "crown" or "cap," but rather combines the prefix "brux-

9    ", from "bruxer" or "bruxism," with the prefix "zir-", from "zirconia."[1]   This is similar to other

10    composite marks that have been found suggestive by other courts.  *See, e.g., Surfvivor Media,*

11    *Inc.  v.  Survivor Prods.*, 406 F.3d 625,632 (9th Cir. 2005) ("Surfvivor" was held to be

12    suggestive because imagination was required to associate it with beach-related goods.); *Network*

13    *Automation, Inc. v. Advanced Sys.  Concepts*, 638 F.3d 1137, 1150 (9th Cir. 2011)

14    ("ActiveBatch" was held suggestive because of the mental leap required to understand the

15    product, which was scheduling software); *Brookfield Communs., Inc. v. W. Coast Entm 't Corp.*,

16    174 F.3d 1036, 1058 (9th Cir. 1999) ("MovieBuff" was suggestive in the context of computer

17    software for researching movies through a database).

18          The Ninth Circuit has "recognized that, unlike arbitrary or fanciful marks which are

19    typically strong, suggestive marks are presumptively weak." *Brookfield Communications*, 174

20    F.3d at 1058 (citing *Nutri/Sys., Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 605 (9th Cir. 1987)).

21    Like the court in *Nutri/Sys., Inc.*, this Court determines that Plaintiff's suggestive mark

22    "BruxZir" is weak, since it is a composite that includes two commonly-used terms describing,

23    respectively, the general malady the product is intended to treat and the material used to

24    manufacture it.  *See Nutri/Sys., Inc.*, 809 F.2d at 605 (affirming the district court's determination

---

[1] The composite also contains a phonetic double meaning, since "BruxZir" may be pronounced similarly to (or exactly the same as) "bruxer," but when the mark is viewed as written it suggests that the product is made out of zirconia.

1  that the plaintiff's mark was weak in part because "those in the food and health products field

2  commonly use 'Nutri-' as a prefix").   A suggestive mark will receive protection "if the

3  infringing mark is quite similar and the goods or services they connote are closely related." *Id.*

4  (citing *Sleekcraft,* 599 F.2d at 350).

5                                    **ii.  Similarity of the Marks**

6           The Court finds that Defendant's mark is not "quite similar" to Plaintiff's mark—it is

7  substantially different.  The district court considers the marks and names "as a whole, in their

8  entirety, and as they appear in the market place." *Alpha Industries, Inc. v. Alpha Steel Tube &*

9  *Shapes, Inc.*, 616 F.2d 440, 445 (9th Cir. 1980).  Relevant characteristics include appearance,

10  sound, and meaning when determining similarity.  *Sleeckcraft,* 599 F.2d at 351.

11          Regarding appearance, Plaintiff argues that, because they share the common four-letter

12  sequence "Brux", the marks "BruxZir" and "KDZ Bruxer" appear very similar.  Defendant

13  argues that the marks as they appear in advertisements and in the marketplace look drastically

14  different.  Defendant emphasizes that, in the official logo associated with "KDZ Bruxer," the

15  letters "KDZ" are many times larger than the smaller word "Bruxer," and the entire phrase is

16  surrounded by a distinctive oval.  *See* Def's Mem. in Support of Motion for Summary Judgment

17  (Dkt. 86) at 17.  BruxZir, in contrast, appears without any similar oval, and the capitalized "Z"

18  in "BruxZir" overlaps and appears in the foreground in front of "Brux," with all the letters

19  approximately the same size.  *Id.*  In addition, Defendant's "KDZ Bruxer" sometimes appears in

20  the context of other "KDZ"-branded products ("KDZ Max" and "KDZ Ultra"), also surrounded

21  by the distinctive oval, and also displaying an oversized "KDZ" followed by a relatively small

22  second word, which share no common origins or similarities with BruxZir.  *See id.* at 7, 17.

23          The Court finds that, to the eye, the appearance of the logos and the words "KDZ Bruxer"

24  and "BruxZir" are not similar, and are in fact substantially distinct.  In the context of logos, there

25  is almost no visual similarity between the marks.  While the Court recognizes that significant

26  trade name uses exist that do not involve stylized logo versions of the parties' respective marks,

27  as in written communications, newspaper typeface, or simple-text advertisements, the Court

28  finds that the marks look substantially different above and beyond the graphic and context-

1    related differences of the parties' logos.  Defendant's mark begins with an all-caps three-letter

2    phrase, "KDZ," which is entirely absent from Plaintiff's mark, and the composite mark ends

3    with the letters "xer," whereas Plaintiff's mark ends with "Zir."  *See Alpha Industries,* 616 F.2d

4    at 444 (where appellant used the word "Alpha" alone and in a distinctive logo, appellee's use of

5    the word "Alpha" in conjunction with another word or words was considered dissimilar).

6         Sound is also an important factor in a similarity analysis "because reputation is often

7    conveyed by word of mouth." *Nutri/Sys., Inc. v. Con-Stan Indus., Inc.*, 1985 WL 72061 (C.D.

8    Cal. Sept. 30, 1985) *aff'd*, 809 F.2d 601 (9th Cir. 1987) (citing *Sleekcraft*, 599 F.2d at 351).

9    Here, while the words "bruxer" and "BruxZir" are pronounced the same or similarly,

10   Defendant's mark begins with an entirely separate identifying series of letters that create a

11   wholly distinct first three syllables: *kay dee zee* ("KDZ").  Nowhere in Plaintiff's mark do any

12   of these sounds appear.  Also, to the extent that Plaintiff argued at hearing that "BruxZir" is

13   pronounced with an emphasis on the "Z," so that it sounds more like *bruck-ZEER*, Plaintiff's

14   argument would only augment the Court's conclusion that the marks sound substantially

15   different.

16        The Court also examines similarities of meaning.  *Sleekcraft,* 599 F.2d at 352.  While

17   both marks share a component that references "bruxers," the intended user of the product, the

18   Court must consider the meaning of each mark *as a whole*, and Defendant's mark includes the

19   separate component "KDZ," meaning "Keating Dental Zirconia," specifically identifying for

20   purchasers the source of the goods as Defendant Keating.  *See Brockmeyer v. Hearst Corp.*, 248

21   F. Supp. 2d 281, 296 (S.D.N.Y 2003) (the meaning of defendant's "O" is a reference to Oprah

22   Winfrey).

23        The fact that the commonly-used dental term "brux" is the predominant similarity

24   between the two marks weighs against a finding of a likelihood of similarity.  When the

25   commonality between composite marks is a term that is, by itself, descriptive, courts find the

26   likelihood of confusion reduced.  *California Security Alarms v. Escobar's Security Plus Alarm*

27   *Systems*, 1996 U.S. Dist. LEXIS 14913 (N.D. Cal. 1996) (finding the parties' marks dissimilar

28   where the commonality, "Security," describes the parties' services); *Alchemy II, Inc. v. Yes!*

1   *Entertainment Corp.*, 844 F.Supp. 560, 569 (C.D. Cal. 1994) (finding the marks "Teddy

2   Ruxpin" and "TV Teddy" dissimilar where the commonality, "Teddy," describes the parties'

3   products: plush, talking teddy bears); *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531

4   F.3d 1, 25 (1st Cir. 2008) (finding the marks "Boston Duck Tours" and "Super Duck Tours"

5   dissimilar where the commonality, "Duck Tours" describes the parties' services); *Am. Cyanamid*

6   *Corp. v. Connaught Labs., Inc.*, 800 F.2d 306, 309 (2d Cir. 1986) (finding the marks HibVAX

7   and HIB-IMUNE dissimilar where the commonality, "Hib," describes the parties' Haemophilus

8   influenzae type b vaccine); *Water Pik, Inc. v. Med-Systems, Inc.*, 848 F. Supp. 2d 1262, 1272

9   (D. Col. 2012) (finding the marks SinuCleanse and SinuSense dissimilar where the

10   commonality, "sinu," is common in the sinus irrigation market); *Smithkline Beckman Corp. v.*

11   *Proctor & Gamble Co.*, 591 F. Supp. 1229, 1238 (N.D.N.Y. 1984) (finding the marks

12   ECOTRIN and ENCAPRIN dissimilar where the commonality, "RIN," is derivative of the

13   generic term "aspirin"); *see also*  McCarthy on Trademarks and Unfair Competition, 4th  Ed., §

14   23:49 (when the common element of two trademarks is a generic term, the likelihood of

15   confusion is reduced, as the public has come to expect that element on different products).

16   Accordingly, this factor weights strongly in favor of Defendant.

17                     **iii.   Degree of Consumer Care**

18          Consumers of the parties' competing products are dentists who install zirconia crowns in

19   their patients' mouths.  In assessing whether there is a likelihood of confusion, courts look to the

20   reasonably prudent purchaser exercising ordinary caution. *Sleekcraft,* 599 F.2d at 353.

21   However, "[i]t is generally assumed that consumers with expertise or who are buying expensive

22   products or services exercise a greater degree of care when doing so and are thus less easily

23   confused." *Edge Wireless, LLC v. U.S. Cellular Corp.*, 312 F. Supp. 2d 1325, 1333 (D. Or.

24   2003) (citing *Brookfield Comm's*, 174 F.3d at 1060).  In this case, dentists are the consumers of

25   the products at issue, and they have expertise in the area of selecting and installing dental

26   crowns.  *See Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1537 (9th Cir. 1989)

27   (holding that a consumer care analysis weighed against a finding of likelihood of confusion

28   where purchasers were highly specialized professionals expected to exercise a high degree of

1    care).  Furthermore, dentists are repeat purchasers who may buy dental crowns for different

2    patients many times over a number of years, not one-time casual buyers. *See id.*   In addition,

3    while Plaintiff's "BruxZir" crowns sell for $99, Defendant's "KDZ Bruxer" crowns sell for

4    $139, fully 140% of the price of Plaintiff's product.  No matter whether the dentists themselves,

5    their patients, or their patients' insurance might be covering the cost, the significant price

6    differential and significant cost further distinguishes the products and weighs against a

7    likelihood of confusion.

8           Plaintiff argues that dentists are not experts, nor are they particularly careful, when

9    choosing between two *brands* of the same all-zirconia dental crown product.  *See Schering*

10   *Corp.  v. Alza Corp.*, 207 U.S.P.Q. 504 (T.T.A.B.  1980) (finding that while physicians and

11   pharmacists are knowledgeable in their fields, they are not necessarily knowledgeable as to

12   marks, thus not immune from mistaking one mark for another); *Alfacell Corp.  v.  Anticancer*

13   *Inc.*, 71  U.S.P.Q.2d 1301  (T.T.A.B. 2004) ("[T]here is no reason to believe that medical

14   expertise as to pharmaceuticals will ensure that there will be no likelihood of confusion as to

15   source or affiliation."); *KOS Pharmaceuticals, Inc.  v.  Andrx Corp.*, 369 F.3d 700, 716 n.l3, 717

16   (3d Cir. 2004).

17          The Court disagrees with Plaintiff.  While it is true that dentists, like physicians, are "not

18   immune" from mistaking one mark for another in the abstract, in this case the only similarity

19   between Plaintiff's mark and Defendant's mark happens to be the fact that both contain the term

20   "brux."  The particular expertise of dentists includes being familiar with the terms used to

21   describe common dental maladies, including "brux."  Accordingly, the Court finds that a

22   "reasonably prudent" dentist can be expected to exhibit a relatively high degree of care and

23   knowledge when purchasing dental crowns containing terms related to the particular maladies

24   that they are designed to treat, and that this factor weighs against a likelihood of confusion

25   between the marks.

26                              **iv.  Defendant's intent in selecting the mark**

1    While Plaintiff does not attempt to argue that it has presented direct evidence of

2    deceptive intent on the part of the Defendant in selecting the mark "KDZ Bruxer," it asserts that

3    "[w]here an alleged infringer chooses a mark he knows to be similar to another, one can infer an

4    intent to confuse," *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002), and

5    argues that "Keating was aware of Glidewell's BruxZir mark when it made the decision to begin

6    selling competing products under the KDZ Bruxer mark." Pl's Mot. (Dkt. 81) at 23.  Referring

7    to a timeline that establishes that Plaintiff Glidewell's "BruxZir" mark was registered, well-

8    known, and well-advertised before Defendant Keating's "KDZ Bruxer" came on the market in

9    2011, Plaintiff argues that "substantial evidence of Keating's intent to free-ride on Glidewell's

10   good will" exists. *Id.* at 24.

11   Plaintiff's argument is not persuasive.  First, because Plaintiff has failed to establish that

12   Defendant's KDZ Bruxer mark is similar to Plaintiff's BruxZir mark, as discussed in Section

13   IV(a)(ii), *supra*, and because this Court has held that the marks are substantially distinct, the

14   *Smith* inference of bad intent is not available.  *See Smith*, 279 F.3d at 1148 ("a mark *he knows to*

15   *be similar to another*") (emphasis added).  The only direct evidence related to Keating's intent

16   shows that 1) Keating began using the "KDZ" prefix in 2006, three years prior to Plaintiff's

17   introduction of the BruxZir mark, Mangum Decl. Ex. 54 (Keating Dep.) at 43:15-45:12; 2) that

18   Shaun Keating states that he expanded the "KDZ" line of products to include "KDZ Bruxer"

19   because the all-zirconia crown would be appropriate for "bruxers," *id.*; and 3) that Keating

20   retained counsel to conduct a trademark search before settling on the mark "KDZ Bruxer." *Id.*;

21   Keating Decl. ¶ 10.  Here, as in *Official Airline Guides*, even if "Defendants knew about"

22   Plaintiff's product, Plaintiff "failed to establish that defendants entered the field in order to

23   deceive the public by causing confusion."  *Official Airline Guides, Inc. v. Churchfield*

24   *Publications, Inc.*, 756 F. Supp. 1393, 1403 (D. Or. 1990), *aff'd* 6 F.3d 1385, 1394 (9th Cir.

25   1993); *see also M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d 1073, 1085 (9th Cir.

26   2005) (evidence of defendant's attorney conducting a trademark search and discovering

27   plaintiff's mark, but still believing that defendant could "carve out" a non-infringing mark,

28   contributed to this *Sleekcraft* factor leaning towards defendant).

1    Accordingly, this factor also weighs in favor or non-infringement.

2                              **v.  Actual Confusion**

3    Even taking all evidence presented in the light most favorable to Plaintiff, this factor does

4    not weigh heavily in the Plaintiff's favor.  While Plaintiff argues that "the evidence of actual

5    confusion in this case is pervasive," Pl's Opp'n (Dkt 113) at 17, the Court agrees with

6    Defendant's contention that virtually all of Plaintiff's evidence does not support a finding of

7    actual confusion.  To the extent that actual confusion has been suggested, it is "de minimis" and

8    "does not . . . establish a likelihood of confusion."  *Official Airline Guides, Inc. v. Churchfield*

9    *Publications, Inc.*, 756 F. Supp. 1393, 1403 (D. Or. 1990) *aff'd sub nom. Official Airline Guides,*

10   *Inc. v. Goss*, 6 F.3d 1385 (9th Cir. 1993) (seven misdirected listing forms sent to plaintiff

11   instead of defendant was "at best, weak" evidence of actual confusion).

12   First, Plaintiff failed to provide a consumer survey showing a likelihood of confusion,

13   which "warrants a presumption that the results would have been unfavorable."  *Playboy*

14   *Enterprises, Inc. v. Netscape Communications Corp.*, 55 F. Supp. 2d 1070, 1084 (C.D. Cal.

15   1999) *aff'd*, 202 F.3d 278 (9th Cir. 1999) (citing *Cairns v. Franklin Mint Co.,* 24 F.Supp.2d

16   1013, 1041–42 (C.D. Cal.1998) ("Survey evidence is not required to establish likelihood of

17   confusion, but it is often the most persuasive evidence. Consequently, a plaintiff's failure to

18   conduct a consumer survey, assuming it has the financial resources to do so, may lead to an

19   inference that the results of such a survey would be unfavorable.")).  Here, Plaintiff Glidewell

20   clearly had the financial resources to conduct a survey,[2] and it did not submit one.

21   Instead, in support of its claim of infringement, Plaintiff submits evidence of an incident

22   in which an employee of Plaintiff Glidewell "randomly called" a dentist's office to offer a

---

[2] Glidewell has stated that it has an annual overall marketing budget of approximately $8.2 million, and that it

spent nearly $3 million marketing the BruxZir brand alone from June 2009 through June 2012.  *See* Pl's

Statement of Additional Material Facts (Dkt. 114-1) at 112 (stating that $2,957,009.07 spent on "BruxZir"

represented approximately 12% of Glidewell's overall marketing budget for the three years from June 2009

through June 2012).

1   discount on BruxZir crowns, and "was asked whether the discount could apply to a previous

2   order that had actually been submitted to Defendant for a KDZ Bruxer Crown."  Jankowski

3   Decl. (Dkt. 91) Ex. 2 (Plaintiff's Answers to Defendant's Interrogatories) at 7.   As the

4   Defendant points out, the confusion in this incident appears to stem from the fact that Plaintiff's

5   "BruxZir" mark, when spoken over the phone to a listener who cannot see Plaintiff's mark's

6   distinctive spelling, may sound identical to the word "bruxer."  Evidence that a consumer asked

7   about the applicability of a discount to her past purchase of the phonetic equivalent of a "bruxer

8   crown" does not establish actual confusion between Plaintiff's and Defendant's marks.[3]

9       Even assuming that the dentist may have been confused about the (aurally experienced)

10  mark, her confusion does not suggest that "members of the buying public would *mistakenly*

11  *purchase* [Defendant's product] believing it was [Plaintiff's product] or vice versa."  *Echo*

12  *Drain v. Newsted*, 307 F.Supp.2d 1116, 1126 (C.D. Cal. 2003) (citing *Sunenblick v. Harrell*, 895

13  F.Supp. 616, 631 (S.D.N.Y. 1995) (noting that "the relevant confusion to be avoided is that

14  which affects purchasing decisions, not confusion generally")); *see also Cohn v. Petsmart*, 281

15  F.3d 837, 843 n.7 (9th Cir. 2002) (holding that "Cohn received several dozen inquiries over the

16  years about whether the parties were related. Without some other evidence of actual confusion,

17  however, these inquiries are too ambiguous to demonstrate actual confusion"); J. McCarthy, 3

18  McCarthy on Trademarks and Unfair Competition § 23:16 (noting that "while enquiry evidence

19  is admissible and relevant, standing alone with no other evidence it is insufficient to prove actual

20  confusion").

21      Plaintiff's other purported evidence of actual confusion is a set of 83 prescription forms

22  submitted by 57 different dentists to Defendant Keating that contain the word "BruxZir" (or

---

[3] To the extent that Plaintiff attempted to introduce evidence, after the close of discovery, that appears to both

contradict its earlier Interrogatory Response and contain inadmissible hearsay evidence of the Glidewell

employee's recollection of what the consumer dentist said over the phone, the Court will not consider the portions

of the Fallon Declaration (Dkt. 90-1 Ex. M) that contradict timely-produced discovery documents, and the Court

will not consider inadmissible hearsay.

1   "Bruxzir" or "bruxzir"), even though those dentists were ordering KZD Bruxer crowns from

2   Defendant.  While these prescription forms, standing alone, could support an inference that these

3   dentists were confusing Defendant's product for Plaintiff's, Defendant has submitted

4   declarations from thirteen of those dentists stating that they were not confused as to the source

5   of the products that they were ordering, that they intended to order Defendant Keating's KDZ

6   Bruxer product, that they were preexisting Keating customers when they placed the orders, and

7   that they used "BruxZir" or "bruxzir" generically to refer to an all-zirconia crown.  *See* Def's

8   Reply (Dkt. 131) at 18-19 (citing declarations).  Plaintiff has submitted no declarations from any

9   dentist stating that he or she was actually confused, and has not rebutted Defendant's showing

10  that the prescription forms at issue do not represent instances of actual confusion as to the source

11  of the product being ordered.  *See Official Airline Guides, Inc. v. Goss*, 6 F.3d at 1393

12  (upholding a district court's finding of "no persuasive evidence of actual confusion" when seven

13  of defendant's listing forms were mailed to plaintiff but evidence suggested that senders often

14  used listing forms in a generic manner and several "travel agents and advertisers testified that

15  they have not confused" plaintiff's and defendant's marks).

16      Plaintiff suggests that, even if actual confusion has not been established, the receipts are

17  evidence of "initial interest confusion," wherein "the infringing mark captures initial attention

18  from consumers who then realize that the product is different from that sold under the dominant

19  brand but go ahead and purchase the product anyway."  Pl's Opp'n (Dkt. 113) at 19 (citing

20  *Brookfield Commc'ns, Inv. V. W. Coast Entm't Corp.*, 174 F.3d 1036, 1062 (9th Cir. 1999)).

21  However, as discussed in the previous paragraph, Defendant has submitted voluminous evidence

22  showing that consumers who filled out the disputed receipts were neither confused about the

23  parties' marks nor were they originally seeking to purchase Plaintiff's product.  Rather, they

24  were repeat customers of Defendants who were never confused about the source of the all-

25  zirconia crown they sought to purchase.   Plaintiff has presented no evidence to refute this

26  showing.

1    Accordingly, the Court finds that Plaintiff's evidence of actual confusion is "at best,

2    weak," and "does not establish a likelihood of confusion."  *Official Airline Guides, Inc. v.*

3    *Churchfield Publications, Inc.*, 756 F. Supp. at 1403.

4    **vi.  Proximity of the goods, marketing channels used, and likelihood of**

5    **expansion of the product lines.**

6    The first two factors in this section weigh in favor of the likelihood of confusion, and the

7    third is irrelevant.  The goods are substantially identical (all-zirconia crowns designed for tooth-

8    grinders), the two parties use similar marketing channels to distribute their goods, and because

9    the products are already in direct competition, the Court need not consider the potential for

10   expansion into product lines that will compete in the future.

11   **vii.  The *Sleekcraft* factors, taken together**

12   A consideration of all *Sleekcraft* factors, taken together, weighs strongly against a finding

13   of likelihood of confusion, due particularly to the lack of similarity between the marks.

14   Obviously, the factors named in Section IV(a)(vi) of this Order would weigh in favor of a

15   finding of likelihood of confusion for *all* similar products that compete for a similar type of

16   consumer, and yet all competing products do not involve instances of trademark infringement.

17   Taken as a whole, the dissimilarity of the marks and the weakness of Plaintiff's mark,

18   along with the expertise of the consumer base, far outweigh the similarity of the products and

19   their existence in the same marketplace.  Ultimately, the *Sleekcraft* factors "are intended to

20   guide the court in assessing the basic question of likelihood of confusion," *Echo Drain v.*

21   *Newsted*, 307 F. Supp. at 1123, and here the Court finds that, making all inferences in favor of

22   the Plaintiff on the facts presented, there is no likelihood of confusion between Plaintiff's

23   "BruxZir" mark and Defendant's "KDZ Bruxer" mark.

24   Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment (Dkt. 84)

25   as to 1) No Infringement of Plaintiff's Registered Trademark; (2) No Violation of Section 43(a)

26   of the Trademark Act; and (3) No Unfair Competition Under California Law.  For the same

27   reasons stated above, the Court DENIES Plaintiff's Motion for Partial Summary Judgment as to

28   Trademark Infringement (Dkt. 81).

1                **b. Plaintiff's Motion for Partial Summary Judgment as to Trademark**

2                    **Misuse, Unfair Competition, Unclean Hands, Fair Use, and Estoppel is**

3                    **Granted in Part and Denied in Part**

4                        **i. Plaintiff's Motion for Partial Summary Judgment on Defendant's**

5                          **Third Counterclaim for Misuse of Trademark**

6       Regarding Defendant's Third Counterclaim for Misuse of Trademark, Plaintiff argues

7 that "no such affirmative claim exists." Pl's Mot. Regarding Trademark Misuse, etc., at 6

8 (citing 6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition (4th ed. 2010)

9 § 31:44 ("Unclean hands, or trademark misuse, is purely an affirmative defense and does not

10 form the basis for an affirmative claim for recovery."); *Juno Online Services v. Juno Lighting,*

11 *Inc.*, 979 F.Supp.2d 684 (N.D. Ill. 1997); *Ford Motor Co. V. Obsolete Ford Parts, Inc.*, 318

12 F.Supp.2d 516, 521 (E.D. Mich. 2004) ("Plaintiff cites no case law to support its theory that

13 trademark misuse can be an independent basis for relief. The court declines to announce or

14 create an independent cause of action for trademark misuse and finds that Defendant's claim is

15 more appropriately cast as a potential affirmative defense."); *Dunn Computer Corp. v.*

16 *Loudcloud, Inc.*, 133 F.Supp.2d 823, 830 (E.D. Va. 2001) ("Trademark misuse is not an

17 independent cause of action, but is, instead, only an affirmative defense to a trademark

18 infringement claim."); *Loblaw Companies Ltd. V. Azimi*, 2001 WL 36028016 at *16 (N.D. Cal.

19 2001) (finding "no independent cause of action for reverse domain name hijacking," which is "a

20 variant of the doctrine of trademark misuse"); *Santander Consumer USA Inc. v. Walsh*, 762

21 F.Supp.2d 217, 239 (D. Mass. 2010) (citing McCarthy and stating, "It is well settled that

22 'trademark misuse is purely an affirmative defense and does not form the basis for an

23 affirmative claim for recovery.'"). *Loblaw*, the only case Plaintiff cites from within this circuit,

24 notes that the *Juno* court "undertook an exhaustive examination of the doctrine of trademark

25 misuse and concluded that it could not be asserted as an independent claim." 2001 WL

26 36028016 at *16 (citing *Juno*, 979 F.Supp.2d at 687-91).

27       Defendant does not persuade the Court that trademark misuse may be an independent

28 cause of action. Defendant's strongest support for its argument is dicta in *Juno* stating that

1  "[p]erhaps a court may choose to recognize a new cause of action in a situation in which the

2  mark holder does attempt to destroy its competitors through the use of its mark," 979 F.Supp.2d

3  at 690, along with a journal article allegedly urging its recognition.[4]  *See* Def's Opp'n (Dkt. 127)

4  (citing William E. Ridgway, *Revitalizing the Doctrine of Trademark Misuse*, 21 Berkeley Tch.

5  L.J. 1547 (2006)).  Defendant then argues that "Glidewell has been attempting to destroy

6  competition for all-zirconia crowns" by using its trademark, its deep pockets and its legal

7  resources to pressure smaller competitors either to abandon using descriptive terms related to

8  "bruxers" and "bruxism" or to buy Glidewell materials and become a licensee.  *See* Def's Opp'n

9  (Dkt. 127) at 7-9.  While such facts are relevant to Defendant's defenses against Plaintiff's

10  trademark infringement claims, the Court is not persuaded that a heretofore nonexistent cause of

11  action is required to address such behavior.  Here, as in *Juno*, Defendant "has adequate remedies

12  at its disposal," and it has failed to persuade the Court "to create a new cause of action."  *See*

13  *Juno*, 979 F.Supp.2d at 690-91.

14     Accordingly, Plaintiff's Motion for Partial Summary Judgment is GRANTED as to

15  Defendant's Third Counterclaim for Misuse of Trademark.

16          **ii.  Plaintiff's Motion for Partial Summary Judgment on Defendant's**

17              **Second Counterclaim for Unfair Competition Under the UCL and**

18              **California Common Law.**

19              **1.  Defendant's Statutory Claim**

20     Plaintiff argues that Defendant Keating lacks standing to raise its Second Counterclaim

21  for Unfair Competition under California Business & Professions Code 17200, *et seq.*, because

22  "Keating has not suffered economic harm as a result of Glidewell's alleged acts of unfair

23  competition."  Pl's Mot. Regarding Patent Misuse at 11.  Plaintiff further argues that, even if

---

[4]     The Court agrees with Plaintiff that the Ridgway article cited by Defendant does not appear to endorse

the type of trademark misuse cause of action that Defendant urges, going so far as to state that "this Article

opposes the adoption of an antitrust-based doctrine of trademark misuse."  Ridgway, 21 Berkeley Tch. L.J. at

1565.

1   Defendant has standing to bring its UCL Counterclaim, that claim must fail on the merits at the

2   summary judgment stage.  Pl's Mot Regarding Trademark Misuse at 12-21.

3       In order to show standing under the California UCL, a party must "(1) establish a loss or

4   deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and

5   (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice

6   or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51

7   Cal.4th 310, 322 (2011).

8       Defendant argues that it has produced evidence showing an economic injury because (1)

9   "sales stagnated and declined" for its KDZ Bruxer product after Glidewell initiated this lawsuit;

10   (2) Defendant has scaled back advertising for the KDZ Bruxer "to mitigate any liability" arising

11   from this lawsuit; and (3) Defendant has "lost business from dentists who stopped ordering

12   Keating's KDZ Bruxer product once they learned that Keating was defending a lawsuit brought

13   against it based on the KDZ Bruxer product." Def's Opp'n (Dkt. 127) at 10.

14       To the extent that each of Defendant's examples of alleged economic harm resulted from

15   Plaintiff's initiation of the present litigation, Keating's claim is barred by the litigation  privilege,

16   Cal. Civ. Code § 47(b), and federal *Noerr-Pennington* doctrine, both of which preclude liability

17   for the act of filing a lawsuit.  The litigation privilege imposes an "absolute bar" to liability.

18   *Rubin v. Green*, 4 Cal. 4th 1187,1201 (1993) (holding the litigation privilege barred a UCL

19   claim). It "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2)

20   by litigants or other participants  authorized  by law; (3) to achieve the objects  of the litigation;

21   and (4) that have some connection or logical relation to the action." *Silberg v.  Anderson*, 50

22   Ca1.3d 205, 212 (1990); *see also Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal.

23   4th 1232,1249  (2007) ("We contemplate no communication  that is more clearly protected  by

24   the litigation privilege than the filing of a legal action."); *Kashian  v. Harriman*, 98 Cal.App.4th

25   892, 917 (2002) (holding  that even the "fil[ing] [of] meritless lawsuits on behalf of 'sham

26   plaintiffs'" was "essentially communicative conduct"  to which the litigation privilege applied,

27   "even though it also may have involved noncommunicative  acts").

1    Similarly, "[u]nder the *Noerr-Pennington* doctrine, '[t]hose who petition government for

2    redress are generally immune from antitrust liability.'" *Manistee Town Ctr. v. City of Glendale*,

3    227 F.3d 1090, 1092 (9th Cir. 2000) (citing *Professional Real Estate Investors, Inc. v. Columbia*

4    *Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993)).  Outside of antitrust statutes, *Noerr-Pennington*

5    doctrine "stands for a generic rule of statutory construction, applicable to any statutory

6    interpretation that could implicate the rights protected by the Petition Clause."  *Sosa v.*

7    *DIRECTV, Inc.*, 437 F.3d 923, 931 (9th Cir. 2006) (citing *White v. Lee*, 227 F.3d 1214, 1231

8    (9th Cir.2000) (holding that because it "is based on and implements the First Amendment right

9    to petition," the *Noerr-Pennington* doctrine is not limited to the antitrust context, but "applies

10   equally in all contexts")).  In the litigation context, "not only petitions sent directly to the court

11   in the course of litigation, but also conduct incidental to the prosecution of the suit" is protected

12   by the *Noerr-Pennington* doctrine.  *Id.* at 934 (quotations omitted); *see also Medlmmune, Inc. v.*

13   *Genentech, Inc.*, 2003 WL 25550611 (C.D. Cal. 2003) (applying *Noerr-Pennington* doctrine to a

14   state unfair competition claim).

15   There is an exception for "sham" lawsuits, which applies when "(1) the petitioner's

16   lawsuit is objectively baseless and (2) the baseless lawsuit conceals a subjective attempt to

17   interfere directly with the business relationships of a competitor." *Manistee Town Ctr.*, 227

18   F.3d at 1094.  The first prong requires that "no reasonable litigant could realistically expect

19   success on the merits." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508

20   U.S. 49, 60 (1993)

21   Here, because Defendant's only attempt to establish economic injury rests on the

22   allegation that Plaintiff's lawsuit caused it to lose business, the Court finds that the litigation

23   privilege and *Noerr-Pennington* doctrine apply.  Furthermore, Defendant fails to allege, and

24   fails to make any showing, that Plaintiff's lawsuit is a "sham" as defined by the Ninth Circuit in

25   *Prof'l Real Estate Investors*—to the extent that Plaintiff owns a federally-registered trademark

26   and is attempting to enforce it against a competitor with an arguably similar mark, Defendant

27   cannot state that "no reasonable litigant" could expect success on the merits of Plaintiff's claim.

To the extent that Defendant asserts that other non-litigation activities of the Plaintiff are grounds for its UCL claim—activities including the cease-and-desist letter that Plaintiff sent Defendant, similar letters that Plaintiff sent to third parties, and Defendant's alleged attempt to monopolize the market for zirconia crowns—Defendant fails to present any evidence that it has suffered an economic injury as a result of any of these acts. Defendant's only proffered evidence of causation regarding any alleged economic harm is related to Plaintiff's filing the present litigation.

Accordingly, because Defendant lacks standing to make its statutory UCL claim, Plaintiff's Motion for Partial Summary Judgment as to Defendant's Second Counterclaim for Unfair Competition is GRANTED.

### 2. Defendant's Common Law Claim

Defendant "does not oppose the portion of [Plaintiff's] motion that seeks dismissal of [Defendant's] unfair competition claim under California common law." Def's Opp'n (Dkt. 127) at 2. Accordingly, the Court GRANTS Plaintiff's Motion for Partial Summary Judgment as to Defendant's Second Counterclaim for Unfair Competition under California common law.

### iii. Defendant's Affirmative Defenses

The remainder of Plaintiff's Motion for Partial Summary Judgment as to Trademark Misuse, Unfair Competition, Unclean Hands, Fair Use, and Estoppel (Dkt. 79) is related to Defendant's affirmative defenses. Because the Court finds that Defendant is entitled to summary judgment on the issue of non-infringement, as discussed in Section IV(a) *supra*, and because the Court makes this decision based solely on a finding that there is no likelihood of confusion between the marks, the portions of Plaintiff's motion related to Defendant's affirmative defenses upon which this Court did not rely are DENIED AS MOOT.

### c. Defendant's Motion for Summary Judgment Canceling Plaintiff's Trademark Registration and Plaintiff's Motion for Summary Judgment as to the Mark's Validity

By counterclaim and by affirmative defense, and in a lively display of pique, Defendant Keating challenges the validity of Plaintiff's federally registered "BruxZir" mark and asks this

1   Court to order that Glidewell's U.S. Trademark Registration No. 3,739,663 be canceled.  *See*

2   Def's Mem. in Support of Motion for Summary Judgment Canceling Plaintiff's Mark (Dkt. 85)

3   at 2 (seeking summary judgment on Defendant's Fourth Counterclaim); Def's Second Am.

4   Answer and Counterclaims (Dkt. 67) at 4 (arguing that Glidewell's BruxZir mark is "invalid

5   and/or unenforceable" because the mark is "generic and/or descriptive").

6        Defendant acknowledges that, because "BruxZir" is a registered trademark, "a

7   presumption of validity places the burden of proving genericness upon" the Defendant.

8   *Advertise.com, Inc. v. AOL Advertising, Inc.*, 616 F.2d 974, 977 (9th Cir. 2010)(citing *Filipino

9   Yellow Pages, Inc. v. Asian Journal Publs. Inc.*, 198 F.3d 1143, 1146 (9th Cir. 1999); *see also*

10  15 U.S.C. § 1057(b) (registration is "prima facie evidence of the validity of the registered

11  mark"); *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir.

12  2010)("[F]ederal registration . . . entitles the plaintiff to a strong presumption that the mark is a

13  protectable mark.")(internal quotations omitted).  The only way for the Defendant to prevail in

14  its counterclaim is thus to show, by a preponderance of the evidence, that Plaintiff's mark is

15  either generic or descriptive and lacking secondary meaning.  *Yellow Cab Co. of Sacramento v.

16  Yellow Cab of Elk Grove, Inc.*, 419  F.3d 925, 928 (9th Cir. 2005), *Surgicenters of America, Inc.

17  v. Medical Dental Surgeries, Co.*, 601 F.2d 1011, 1014 (9th Cir. 1979). "The crucial date for the

18  determination of genericness is the date on which the alleged infringer entered the market with

19  the disputed mark or term." *Yellow Cab*, 419 F.3d at 928.

20       Here, Defendant's counterclaim for cancelation must fail because the Court has

21  determined that Plaintiff's "BruxZir" mark is and always has been *suggestive*, not generic or

22  descriptive.  As discussed at length in Section IV(a)(i) of this Order, *supra*, the mark suggests,

23  but falls short of describing, the product with which it is associated.  A suggestive mark is

24  "inherently distinctive and [is] automatically entitled to protection. . . ." *Yellow Cab*, 419 F.3d

25  at 927.

26       Accordingly, the Court DENIES Defendant's Motion for Summary Judgment Canceling

27  Plaintiff's Trademark Registration and GRANTS Plaintiff's Motion for Partial Summary

28  Judgment as to Keating's Invalidity Defense and Counterclaim.

-23-

**V.      Disposition**

For the foregoing reasons, the Court:

(1)      GRANTS Defendant's Motion for Summary Judgment as to No
Infringement (Dkt. 84);

(2)      DENIES Defendant's Motion for Summary Judgment Canceling
Plaintiff's Registration (Dkt. 83);

(3)      GRANTS IN PART AND DENIES IN PART Plaintiff's Motion for
Summary Judgment as to Trademark Misuse, Unfair Competition,
Unclean Hands, Fair Use, and Estoppel (Dkt. 79).

a.   The Court GRANTS Plaintiff's Motion for Partial Summary
Judgment as to Defendant's Second Counterclaim for Unfair
Competition under the UCL and under California law;

b.   The Court GRANTS Plaintiff's Motion for Partial Summary
Judgment as to Defendant's Third Counterclaim for Misuse
of Trademark;

c.   The Court DENIES AS MOOT Plaintiff's Motion for Partial
Summary Judgment as to the affirmative defenses of Unclean
Hands, Classic Fair Use, and Estoppel;

(4)      Plaintiff's Motion for Partial Summary Judgment as to Trademark
Infringement (Dkt. 81) is DENIED;

(5)      Plaintiff's Motion for Partial Summary Judgment as to Defendant's
Invalidity Defense and Counterclaim (82) is GRANTED.

Accordingly, because this Order has resolved all issues set for trial, the trial on this
matter is hereby REMOVED from the Court's calendar and a Judgment on the matter
will be issued.

1

2          DATED:        February 21, 2013

3                                                    _____

4                                                    DAVID O. CARTER
5                                                    UNITED STATES DISTRICT JUDGE